# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Grace Smith, Esq.                    }
Michael O. Smith, J.D.               }
J.A. Smith (minor child)             }
203 Dorset Road                      }
Tobyhanna, PA 18466                  }
            Plaintiffs       }
            v.               }
                                  }
St. Luke's Hospital University       }
Healthcare Network                   }
Anderson Campus                      }
1872 St. Lukes Blvd.                 }          **CIVIL ACTION**
Easton, PA 18045                     }          NO. _____
            Defendant        }
                                  }
     and              }
                                  }
Dr. Teresa Marlino, M.D.             }
1872 St. Lukes Blvd.                 }
Easton, PA 18045                     }
            Defendant        }
                                  }
     and              }
                                  }
Dr. Cynthia M. Shultz, M.D.          }
1872 St. Lukes Blvd.                 }
Easton, PA 18045                     }
            Defendant        }
                                  }
     and              }
                                  }
Dr. Patrick Philpot, D.O.            }
1872 St. Lukes Blvd.                 }
Easton, PA 18045                     }
            Defendant        }
                                  }
     and              }
                                  }
Dr. Dianne R. Jacobetz, M.D.         }
1872 St. Lukes Blvd.                 }

Easton, PA 18045                             }
                          Defendant          }
                                             }
          and                                }
                                             }
Dr. Shadi N. Malaeb, M.D.                    }
1872 St. Lukes Blvd.                         }
Easton, PA 18045                             }
                          Defendant          }
                                             }
          and                                }
                                             }
Dr. Marilyn E. Ekonomidis, M.D.              }
1872 St. Lukes Blvd.                         }
Easton, PA 18045                             }
                          Defendant          }
                                             }
          and                                }
                                             }
Dr. Hannah Milthorpe, M.D.                   }
1872 St. Lukes Blvd.                         }
Easton, PA 18045                             }
                          Defendant          }
                                             }
          and                                }
                                             }
Dr. Beth A. Maisel, M.D.                     }
1872 St. Lukes Blvd.                         }
Easton, PA 18045                             }
                          Defendant          }
                                             }
          and                                }
                                             }
Dr. Denese Brown, M.D.                       }
1872 St. Lukes Blvd.                         }
Easton, PA 18045                             }
                          Defendant          }
                                             }
          and                                }
                                             }
Dr. Kimberly A. Costello, D.O.               }
1872 St. Lukes Blvd.                         }
Easton, PA 18045                             }
                          Defendant          }
                                             }
          and                                }

Dr. Gilberto I. Santiago, M.D.                                    }
1872 St. Lukes Blvd.                                              }
Easton, PA 18045                                                 }
           Defendant                                }
                                                             }
    and                                       }
                                                             }
Dr. Chaminie Wheeler, D.O.                                       }
1872 St. Lukes Blvd.                                              }
Easton, PA 18045                                                 }
           Defendant                                }
                                                             }
    and                                       }
                                                             }
Ms. Patricia Bates, CRNP                                         }
1872 St. Lukes Blvd.                                              }
Easton, PA 18045                                                 }
           Defendant                                }
                                                             }
    and                                       }
                                                             }
Ms. Kimberly A. Bardis, CRNP                                     }
1872 St. Lukes Blvd.                                              }
Easton, PA 18045                                                 }
           Defendant                                }
                                                             }
    and                                       }
                                                             }
Ms. Kimberly A. Butz, RN                                         }
1872 St. Lukes Blvd.                                              }
Easton, PA 18045                                                 }
           Defendant                                }
                                                             }
    and                                       }
                                                             }
Ms. Lisa Ferro, RN                                               }
1872 St. Lukes Blvd.                                              }
Easton, PA 18045                                                 }
           Defendant                                }
                                                             }
    and                                       }
                                                             }
Mr. Steve Lanshe, Esq.                                           }
1872 St. Lukes Blvd.                                              }
Easton, PA 18045                                                 }

```
                      Defendant          }
                                         }
           and                           }
                                         }
Mr. Robert L. Wax, Esq.                  }
1872 St. Lukes Blvd.                     }
Easton, PA 18045                         }
                      Defendant          }
                                         }
           and                           }
                                         }
Mrs. Darla Frack                         }
1872 St. Lukes Blvd                      }
Easton, PA 18045                         }
                      Defendant          }
                                         }
           and                           }
                                         }
Ms. Dawn Hoffman                         }
1872 St. Lukes Blvd.                     }
Easton, PA 18045                         }
                      Defendant          }
                                         }
           and                           }
                                         }
Onsite Neonatal Partners, Inc.           }
1000 Haddonfield-Berlin Road., Unit 210  }
Voorhees, NJ 08043                       }
                      Defendant          }
                                         }
           and                           }
                                         }
Dr. Jerry Hric, M.D.                     }
1000 Haddonfield-Berlin Road., Unit 210  }
Voorhees, NJ 08043                       }
                      Defendant          }
                                         }
           and                           }
                                         }
Anderson Laboratories, Inc.              }
1700 St. Luke's Blvd.                    }
Easton, PA 18045                         }
                      Defendant          }
                                         }
           and                           }
                                         }
```

Dr. Emily Miller, M.D.                          }
1700 St. Luke's Blvd.                           }
Easton, PA 18045                                }
                        Defendant               }
                                                }
          and                                   }
                                                }
OBHG PA Pennsylvania, PC (OBHG PA)              }
777 Lowndes Hill Rd., Bldg 1.                   }
Greenville, SC 29607                            }
                        Defendant               }
                                                }
          and                                   }
                                                }
OBHG PA Pennsylvania, PC (OBHG PA)              }
305 W. North St.                                }
Nazareth, PA 18064                              }
                        Defendant               }
            and                                 }
                                                }
Bethlehem Neonatal Associates (BNA)            }
801 Ostrum St.                                  }
Bethlehem, PA 18015                             }
                        Defendant               }
                                                }
          and                                   }
                                                }
St. Luke's Obstetrics and Gynecology           }
Associates                                      }
487 E Moorestown Rd #106                        }
Wind Gap, PA 18091                              }
                        Defendant               }
                                                }
          and                                   }
                                                }
County of Monroe                                }
One Quaker Plaza                                }
Stroudsburg PA 18360                            }
                        Defendant               }
                                                }
          and                                   }
                                                }
Ms. Adelaide W. Grace                           }
Monroe County                                   }
Children & Youth                                }
730 Phillips St                                 }

Stroudsburg, PA 18360          }
                   Defendant     }
                                  }
      and                   }
                                    }

Mr. Tim Shaw            }
Monroe County           }
Children & Youth         }
730 Phillips St           }
Stroudsburg, PA 18360    }
                   Defendant     }
                                  }
      and                   }
                                  }

Mr. Jorge Manteria      }
Monroe County           }
Children & Youth         }
730 Phillips St           }
Stroudsburg, PA 18360    }
                   Defendant     }
                                  }
      and                   }
                                  }

Northampton County     }
669 Washington Street    }
Easton, Pennsylvania 18042 }
                   Defendant     }
                                  }
      and                   }
                                  }

Bethlehem Township     }
4225 Easton Avenue     }
Bethlehem, Pa. 18020    }
                   Defendant     }
                                  }
      and                   }
                                  }

Officer Andrew Keyock            }
Bethlehem Township Police Department }
4225 Easton Ave,               }
Bethlehem, PA 18020          }
                   Defendant     }
                                  }
      and                   }
                                  }

Officer Thomas A. Smith    }

Bethlehem Township Police Department    }
4225 Easton Ave.    }
Bethlehem, PA 18020    }
              Defendant    }
    }
      and    }
    }
Corporal Kirk Harryn    }
Bethlehem Township Police Department    }
4225 Easton Ave.    }
Bethlehem, PA 18020    }
              Defendant    }
    }
      and    }
    }
Chief Daniel G. Pancoast    }
Bethlehem Township Police Department    }
4225 Easton Ave.    }
Bethlehem, PA 18020    }
              Defendant    }
_____    }

JURISDICTION ................................................................................................................ 23

VENUE ............................................................................................................................ 23

Parties to the Following Claims ..................................................................................... 24

Facts of the Case ........................................................................................................... 37

    I.       Facts I:  Case in Chronology ......................................................................... 37

    II.      Facts II:  Additional Necessary Points of Fact ........................................... 74

Legal Counts—Violations of U.S. Constitution & §1983 Claims .................................. 79

    I.       First Amendment ......................................................................................... 79

        Mrs. Grace Smith v. St. Luke's Hospital, Onsite Neonatal, Ms. Kimberly A. Butz, RN, Ms. Patricia Bates, CRNP, & Ms. Dawn Hoffman ...................................................................... 79

    II.      First Amendment ......................................................................................... 83

        Mrs. Grace Smith v. Monroe County, Ms. Adelaide. W. Grace, & Mr. Tim Shaw ............... 84

    III.     First Amendment ......................................................................................... 88

        Mr. Michael O. Smith v. Monroe County, Ms. Adelaide. W. Grace, Mr. Tim Shaw, & Mr. Jorge Manteria ........................................................................................................................ 88

    IV.    Fourth Amendment ..................................................................................... 92

        Smith, *et al.* v. Northampton County, Bethlehem Township Officers Andrew Keyock and Thomas A. Smith, Corporal Kirk Harryn, & Chief Daniel G. Pancoast .......................................... 92

    V.      Fourth Amendment ..................................................................................... 96

        Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team", & Mr. Jerry Hric, MD ................................................. 96

    VI.    Fourth Amendment ................................................................................... 101

        Mrs. Smith v. St. Luke's Hospital, "Security Guard 'Freddy'", "Security Guard 'Joe'", "Security Guard 'Nate'", "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" ...................................................................................................................... 102

    VII.    Fourth Amendment ................................................................................... 107

        Mrs. Grace Smith & Newborn baby J.A.S. v. St. Luke's Hospital, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology Associates, Ms. Marilyn Ekonomidis, MD, & Mr. Christopher Gilbert, MD ...................................................................................................................................... 107

    VIII.   Fourth Amendment ................................................................................... 111

        Mrs. Grace Smith v. Monroe County, Ms. Adelaide Grace & Mr. Tim Shaw ................... 111

    IX.    Fourth Amendment ................................................................................... 114

        Newborn baby J.A.S. v. Monroe County, Ms. Adelaide Grace & Mr. Tim Shaw .............. 114

    X.      Fourteenth Amendment ............................................................................ 117

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Ms. Dianne Jacobetz, MD, Mr. Patrick Philpot, DO, Mr. Shadi Malaeb, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, Ms. Kimberly A. Butz, RN, & Mr. Jerry Hric, MD, Monroe County, Mr. Tim Shaw & Ms. Adelaide W. Grace ................................................ 117

XI.      Fourteenth Amendment ....................................................................................... 122

Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", "Security Guard 'Freddy", "Security Guard 'Joe'", "Security Guard 'Nate'", "Security Guards 'Unknown'", "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Jerry Hric, MD, Monroe County, Northampton County, Mr. Tim Shaw & Ms. Adelaide W. Grace ........................................................................... 123

XII.     Fourteenth Amendment ....................................................................................... 129

Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Ms. Dianne Jacobetz, MD, Mr. Patrick Philpot, DO, Mr. Shadi Malaeb, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, Ms. Kimberly A. Butz, RN,  Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", "Security Guard 'Freddy", "Security Guard 'Joe'", "Security Guard 'Nate'", "Security Guards 'Unknown'", "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Jerry Hric, MD, Monroe County, Northampton County, Mr. Tim Shaw & Ms. Adelaide W. Grace .......................... 129

XIII.    Fourteenth Amendment ....................................................................................... 135

Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Monroe County, Mr. Tim Shaw & Ms. Adelaide W. Grace ................................................................................................. 136

XIV.     Fourteenth Amendment ....................................................................................... 140

Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Monroe County, Mr. Tim Shaw & Ms. Adelaide W. Grace ................................................................................................. 140

XV.      Fourteenth Amendment ....................................................................................... 144

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD ................................................. 144

XVI.     Fourteenth Amendment ....................................................................................... 150

Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Monroe County, Mr. Tim Shaw & Ms. Adelaide W. Grace ................................................................................................. 151

XVII.    Fourteenth Amendment ....................................................................................... 154

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, & OBHG PA ........................... 155

XVIII.   Fourteenth Amendment ....................................................................................... 158

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly Nardis, CRNP, Mr, Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD ........................................................................................... 158

XIX.       Fourteenth Amendment ...................................................................................... 166

Smith, *et al*. v. Monroe County & St. Luke's Hospital ............................................. 166

XX.        Fourteenth Amendment ...................................................................................... 169

Smith et al. v. Northampton County, Bethlehem Township, Officer Andrew Keyock, Officer Thomas A. Smith, Corporal Kirk Harryn, & Chief Daniel Pancoast .................................. 169

XXI.       Fourteenth Amendment ...................................................................................... 179

Smith, *et al*. v. Monroe County, Northampton County, Bethlehem Township & St. Luke's Hospital .......................................................................................................................... 179

XXII.      Fourteenth Amendment ...................................................................................... 182

Mrs. Grace Smith & Newborn baby J.A.S. v. Monroe County, Northampton County, & St. Luke's Hospital .............................................................................................................. 182

XXIII.     Fourteenth Amendment ...................................................................................... 185

Smith, *et al*. v. Northampton County, Officers Andrew Keyock & Thomas A. Smith, Corporal Kirk Harryn, & Chief Daniel Pancoast ...................................................................... 185

XXIV.      Fourteenth Amendment ...................................................................................... 190

Smith, *et al*. v. Monroe County, Ms. Adelaide. W. Grace, & Mr. Tim Shaw ..................... 190

XXV.       Fourteenth Amendment ...................................................................................... 195

Smith, *et al*. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA PA, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, & Mr. Jerry Hric, MD ................................................... 195

XXVI.      Fourteenth Amendment ...................................................................................... 200

Smith, et al. v. Anderson Labs & Ms. Emily Miller, MD ................................................ 200

XXVII.     Fourteenth Amendment ...................................................................................... 205

Mrs. Grace Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physician's Group, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology Associates, Monroe County, Ms. Adelaide W. Grace, & Mr. Tim Shaw .................................................................... 205

XXVIII.    Fourteenth Amendment ...................................................................................... 210

Mrs. Grace Smith v. St. Luke's Hospital, "Security Guard 'Freddy'", "Security Guard 'Joe'", "Security Guard 'Nate'", "Security Guard(s) 'Unknown'", "Security Supervisor 'Unknown'", "Head of Hospital

Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, & the "Hospital Leadership Team" ................................................................... 210

XXIX.      42 U.S.C. § 1983 ....................................................................................... 214

Smith, *et al.* v. Northampton County, Bethlehem Township, Officers Andrew Keyock and Thomas A. Smith, Corporal Kirk Harryn, & Chief Daniel G. Pancoast ................................................. 215

XXX.      42 U.S.C. § 1983 ....................................................................................... 219

Smith, *et al.* v. Northampton County, Bethlehem Township, Officer Andrew Keyock, Corporal Kirk Harryn, & Chief Daniel Pancoast ................................................................................. 219

XXXI.      42 U.S.C. § 1983 ....................................................................................... 223

Smith, *et al.* v. Northampton County, Bethlehem Township, Officer Thomas A. Smith, Corporal Kirk Harryn, & Chief Daniel Pancoast ................................................................................. 223

XXXII.      42 U.S.C. § 1983 ....................................................................................... 227

Smith, et al. v. Monroe County, Ms. Adelaide W. Grace, & Mr. Tim Shaw ..................................... 227

Violations of U.S. Federal Statutory Law ....................................................................... 231

I.      Title III of the Americans with Disabilities Act (ADA) ........................................... 231

Mrs. Grace Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physician's Group, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology Associates & Mr. Jerry Hric, MD ........ 231

Violations of Pennsylvania Constitutional Law ................................................................. 238

I.      Article I, § 8 ........................................................................................ 238

Mrs. Smith v. Monroe County ..................................................................................... 238

II.      Article I, § 8 ........................................................................................ 240

Newborn baby J.A.S. v. Monroe County ........................................................................... 240

Violations of Pennsylvania Statutory Law ....................................................................... 243

I.      § 6315 Child Protective Services .................................................................. 243

Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Monroe County, Mr. Tim Shaw & Ms. Adelaide W. Grace ........................................... 243

II.      § 6315 Child Protective Services .................................................................. 246

Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Monroe County, Mr. Tim Shaw & Ms. Adelaide W. Grace ........................................................................................... 246

III.      § 6315 Child Protective Services ................................................................. 248

Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Monroe County, Mr. Tim Shaw & Ms. Adelaide W. Grace ........................................................................................... 249

IV.      § 6315 Child Protective Services .................................................................. 251

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Monroe County, Mr. Tim Shaw & Ms. Adelaide W. Grace ............................................................................................................ 252

V.        § 6315 Child Protective Services ........................................................................... 255

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Monroe County, Mr. Tim Shaw & Ms. Adelaide W. Grace ............................................................................................................ 255

VI.       § 28 Pa. Code, Newborn Care & Policies ............................................................... 258

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates ............................................. 258

VII.      § 28 Pa. Code, Newborn Care & Policies ............................................................... 261

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD & Mr. Jerry Hric, MD ......................................................................................... 261

VIII.     § 28 Pa. Code, Newborn Care & Policies ............................................................... 264

Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD & Mr. Jerry Hric, MD ......................................................................................... 264

IX.       § 28 Pa. Code, Newborn Care & Policies ............................................................... 267

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD ................................................ 267

X.        § 28 Pa. Code, Newborn Care & Policies ............................................................... 271

Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD ................................................ 271

XI.       § 28 Pa. Code, Newborn Care & Policies ............................................................... 275

Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD & Mr. Jerry Hric, MD ......................................................................................... 275

XII.      § 28 Pa. Code, Newborn Care & Policies ............................................................... 278

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb,

MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD................................................278

XIII.        § 5100.53 Pa. Code, Patients' Bill of Rights...........................................................................282

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD & Mr. Jerry Hric, MD, Northampton County, Officers Andrew Keyock and Thomas A. Smith, Corporal Kirk Harryn, & Chief Daniel G. Pancoast ...............................................282

XIV.        § 5100.53 Pa. Code, Patients' Bill of Rights...........................................................................287

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, & Mr. Jerry Hric, MD.......................................................................................................................................288

XV.        § 5100.53 Pa. Code, Patients' Bill of Rights...........................................................................290

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD................................................291

XVI.        § 5100.53 Pa. Code, Patients' Bill of Rights...........................................................................295

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD................................................295

XVII.        § 5100.53 Pa. Code, Patients' Bill of Rights...........................................................................301

Newborn baby J.A.S. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD................................................301

XVIII.        § 5100.53 Pa. Code, Patients' Bill of Rights...........................................................................306

Smith, et al. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms.

Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD ................................................ 306

XIX.       § 5100.53 Pa. Code, Patients' Bill of Rights ............................................................ 311

Smith, et al. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team",  Mr. Jerry Hric, MD, Northampton County, Officer Andrew Keyock, Officer Thomas A. Smith, Corporal Kirk Harryn, & Chief Daniel G. Pancoast ........ 312

XX.        § 5100.14 Pa. Code, Patients' Bill of Rights ............................................................ 317

Smith, *et al.* v. St. Luke's Hospital, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" ................................................ 317

XXI.       § 5100.52 Pa. Code, Patients' Bill of Rights ............................................................ 320

Mr. & Mrs. Smith v. St. Luke's Hospital ................................................................................ 321

XXII.      § 42 Pa. C. S. § 8343, Defamation - Libel I ............................................................ 323

Newborn baby J.A.S. and Mrs. Smith v. St. Luke's Hospital, OBHG PA, & Ms. Teresa Marlino, MD 323

XXIII.     § 42 Pa. C. S. § 8343, Defamation - Libel II ........................................................... 343

Newborn baby J.A.S. and Mrs. Grace Smith v. St. Luke's Hospital, Onsite Neonatal, & Ms. Cynthia Shultz, MD ................................................................................................................ 344

XXIV.      § 42 Pa. C. S. § 8343, Defamation - Libel III .......................................................... 364

Newborn baby J.A.S. and Mrs. Grace Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Patricia Bates, CRNP & Mr. Patrick Philpot, DO .................................................................. 364

XXV.       § 42 Pa. C. S. § 8343, Defamation - Libel IV .......................................................... 385

Newborn baby J.A.S. and Mrs. Grace Smith v. St. Luke's Hospital, Onsite Neonatal, Ms. Chaminie Wheeler, DO, & Mr. Gilberto I. Santiago, MD .......................................................................... 385

XXVI.      § 42 Pa. C. S. § 8343, Defamation - Libel V ........................................................... 405

Mr. Michael O. Smith v. St. Luke's Hospital, OBHG PA, & Ms. Teresa Marlino, MD ........................ 405

XXVII.     § 42 Pa. C. S. § 8343, Defamation - Libel VI .......................................................... 429

Mr. Michael O. Smith v. St. Luke's Hospital, Onsite Neonatal, & Ms. Cynthia Shultz, MD .............. 429

XXVIII.    § 42 Pa. C. S. § 8343, Defamation - Libel VII ......................................................... 451

Mr. Michael O. Smith v. St. Luke's Hospital, Onsite Neonatal, & Mr. Patrick Philpot, DO .............. 451

XXIX.      § 42 Pa. C. S. § 8343, Defamation - Slander I ....................................................... 471

Newborn baby J.A.S. and Mrs. Smith v. St. Luke's Hospital, OBHG PA, & Ms. Teresa Marlino, MD 471

XXX.      § 42 Pa. C. S. § 8343, Defamation - Slander II .......................................................... 491

Mr. Michael O. Smith v. St. Luke's Hospital, OBHG PA, & Ms. Teresa Marlino, MD ........................ 491

XXXI.     § 42 Pa. C. S. § 8343, Defamation - Slander III ......................................................... 511

Newborn baby J.A.S. and Mrs. Grace Smith v. St. Luke's Hospital, Onsite Neonatal, & Ms. Cynthia
Shultz, MD ........................................................................................................................... 511

XXXII.    § 42 Pa. C. S. § 8343, Defamation - Slander IV ........................................................ 532

Mr. Smith v. St. Luke's Hospital, Onsite Neonatal, & Ms. Cynthia Shultz, MD ................................ 532

Violations of Pennsylvania Common Law .................................................................................... 552

I.        Battery ...................................................................................................................... 552

Newborn baby J.A.S. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group,
Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms.
Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb,
MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms.
Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD,
Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly Nardis, CRNP, & Mr. Jerry Hric,
MD .................................................................................................................................... 553

II.       False Imprisonment ................................................................................................... 561

Newborn baby J.A.S. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms.
Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn
Hoffman, the "Hospital Leadership Team", & Mr. Jerry Hric, MD .................................................... 561

III.      Breach of Physician-Patient Confidentiality .............................................................. 566

Smith, et al. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia
Shultz, MD, & Mr Jerry Hric, MD ............................................................................................ 566

IV.       Negligence I .............................................................................................................. 570

Smith, et al. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia
Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,
and the "Hospital Leadership Team" .......................................................................................... 570

V.        Negligence II ............................................................................................................. 574

Smith, et al. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia
Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,
and the "Hospital Leadership Team" .......................................................................................... 574

VI.       Negligence III ............................................................................................................ 578

Smith, et al. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia
Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,
and the "Hospital Leadership Team" .......................................................................................... 578

VII.      Negligence IV ............................................................................................................ 583

Smith, et al. v. Anderson Labs, & Ms. Emily Miller, MD ................................................................ 583

VIII.       Negligence V ............................................................................................................. 586

Smith, *et al*. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, DO & Ms. Patricia Bates, CRNP .. 586

IX.       Negligence VI ............................................................................................................. 590

Smith, *et al*. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" ...................................................................... 590

X.       Negligence VII ............................................................................................................ 596

Smith, *et al*. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" .......................... 596

XI.       Negligence VIII .......................................................................................................... 602

Smith, *et al*. v. St. Luke's Hospital, Onsite Neonatal, St. Luke's Physician Group, Ms. Chaminie Wheeler, DO, Mr. Gilberto I. Santiago, MD, & Ms. Dianne R. Jacobetz, MD................................... 602

XII.       Negligence IX ............................................................................................................. 606

Smith, *et al*. v. St. Luke's Hospital, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" ............................................................ 607

XIII.       Negligence X ............................................................................................................. 611

Smith, *et al*. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, & Ms. Cynthia Shultz, MD ........................................................................................................................... 611

XIV.       Negligence XI ............................................................................................................. 615

Smith, *et al*. v. St. Luke's Hospital, & Hospital Social Worker "Vanessa" ......................................... 615

XV.       Negligence XII .......................................................................................................... 619

Smith, *et al*. v. St. Luke's Hospital, "Security Guard 'Freddy'", Security Guard 'Joe'", Security Guard 'Nate'" "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"................................................................................................................................................ 619

XVI.       Negligence XIII .......................................................................................................... 623

Mrs. Smith v. St. Luke's Hospital ...................................................................................................... 623

XVII.       Negligence XIV ......................................................................................................... 627

Smith, *et al*. v. Monroe County, Ms. Adelaide W. Grace, Mr. Tim Shaw & Mr. Jorge Manteria ...... 627

XVIII.     Negligence XV ......................................................................................................... 631

Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and Gynecology Associates, Monroe County, Northampton County, Ms. Adelaide Grace, Mr. Tim Shaw, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown', Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" ............... 632

XIX.     Negligence XVI ....................................................................................................... 638

Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, & Ms. Kimberly A. Nardis, CRNP ................................................................................................................. 638

XX.     Negligence XVII ...................................................................................................... 644

Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, & Ms. Teresa Marlino, MD .......... 644

XXI.     Negligence XVIII ..................................................................................................... 648

Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, & Ms. Kimberly A. Nardis, CRNP ................................................................................................................. 648

XXII.     Negligent Infliction of Emotional Distress I ............................................................ 654

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" ............................................................ 654

XXIII.     Negligent Infliction of Emotional Distress II .......................................................... 661

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" ............................................................ 661

XXIV.     Negligent Infliction of Emotional Distress III ........................................................ 668

Smith, *et al*. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" ............................................................ 668

XXV.     Negligent Infliction of Emotional Distress IV ........................................................ 675

Mr. & Mrs. Smith v. Anderson Labs & Ms. Emily Miller, MD ........................................... 675

XXVI.     Negligent Infliction of Emotional Distress V ......................................................... 681

Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, DO & Ms. Patricia Bates, CRNP ..................................................................................................................... 681

XXVII.     Negligent Infliction of Emotional Distress VI ....................................................... 688

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" ............................................... 688

XXVIII.     Negligent Infliction of Emotional Distress VII ...................................................... 697

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" ................. 697

XXIX.     Negligent Infliction of Emotional Distress VIII ..................................................... 706

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, St. Luke's Physician Group, Ms. Chaminie Wheeler, DO, Mr. Gilberto I. Santiago, MD, & Ms. Dianne R. Jacobetz, MD .................................... 706

XXX.     Negligent Infliction of Emotional Distress IX ....................................................... 713

Mr. Smith v. St. Luke's Hospital, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman & the "Hospital Leadership Team" .................................................. 713

XXXI.     Negligent Infliction of Emotional Distress X ........................................................ 720

Mr. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, & Ms. Cynthia Shultz, MD ...................................................................................................... 721

XXXII.     Negligent Infliction of Emotional Distress XI ....................................................... 728

Mrs. Smith v. St. Luke's Hospital & Social Worker "Vanessa" ......................................... 728

XXXIII.     Negligent Infliction of Emotional Distress XII ...................................................... 733

Mr. & Mrs. Smith v. St. Luke's Hospital, "Security Guard 'Freddy'", "Security Guard 'Joe'", "Security Guard 'Nate'", "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman & the "Hospital Leadership Team" ................................................................................................... 734

XXXIV.     Negligent Infliction of Emotional Distress XIII ..................................................... 741

Mr. & Mrs. Smith v. St. Luke's Hospital.........................................................................................741

XXXV.    Negligent Infliction of Emotional Distress XIV.........................................................747

Smith, *et al.* v. Monroe County, Ms. Adelaide W. Grace, Mr. Tim Shaw & Mr. Jorge Manteria ...... 748

XXXVI.    Negligent Infliction of Emotional Distress XV............................................................755

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and Gynecology Associates, Monroe County, Ms. Adelaide Grace, Mr. Tim Shaw, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, "Security Supervisor 'Unknown,'" "Head of Hospital Security 'Unknown', Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"....................................................................755

XXXVII.    Negligent Infliction of Emotional Distress XVI...........................................................765

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP ............................................................................................................................................765

XXXVIII.    Negligent Infliction of Emotional Distress XVII........................................................773

Mr. & Mrs. Smith v. St. Luke's Hospital, OBHG PA, Onsite Neonatal & Ms. Teresa Marlino, MD....773

XXXIX.    Negligent Infliction of Emotional Distress XVIII........................................................780

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, & Ms. Kimberly A. Nardis, CRNP....................................................................................................................780

XL.    Intentional Infliction of Emotional Distress I.............................................................789

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team", & Mr. Jerry Hric, MD....................................................789

XLI.    Intentional Infliction of Emotional Distress II............................................................795

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team", & Mr. Jerry Hric, MD....................................................795

XLII.      Intentional Infliction of Emotional Distress III .......................................................... 802

Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team", & Mr. Jerry Hric, MD ...................................................... 802

XLIII.     Intentional Infliction of Emotional Distress IV .......................................................... 809

Mr. & Mrs. Smith v. Anderson Labs & Ms. Emily Miller, MD ........................................... 810

XLIV.     Intentional Infliction of Emotional Distress V .......................................................... 815

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, DO & Ms. Patricia Bates, CRNP ........................................................................................................................ 816

XLV.      Intentional Infliction of Emotional Distress VI .......................................................... 822

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Bethlehem Neonatal, St. Luke's Physician's Group, St. Luke's Obstetrics and Gynecological Assoc., Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team" & Mr. Jerry Hric, MD ................................... 822

XLVI.     Intentional Infliction of Emotional Distress VII .......................................................... 832

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Bethlehem Neonatal, St. Luke's Physician's Group, St. Luke's Obstetrics and Gynecological Assoc., Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team" & Mr. Jerry Hric, MD .......................................................................................................................... 832

XLVII.    Intentional Infliction of Emotional Distress VIII .......................................................... 841

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, St. Luke's Physician Group, Ms. Chaminie Wheeler, DO, Mr. Gilberto I. Santiago, MD, & Ms. Dianne R. Jacobetz, MD ................................... 841

XLVIII.   Intentional Infliction of Emotional Distress IX .......................................................... 848

Mr. & Mrs. Smith v. St. Luke's Hospital, Mr. Steve Lanshe, Esq., Mr Robert L. Wax, Esq., Ms. Darla Frack, Ms Dawn Hoffman, and the "Hospital Leadership Team" ...................................... 848

XLIX.     Intentional Infliction of Emotional Distress X .......................................................... 854

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, & Ms. Cynthia Shultz, MD ........................................................................................................................ 854

L.         Intentional Infliction of Emotional Distress XI .......................................................... 860

Mr. & Mrs. Smith v. St. Luke's Hospital & Hospital Social Worker "Vanessa" ................................. 860

LI.          Intentional Infliction of Emotional Distress XII ...................................................................... 866

Mr. & Mrs. Smith v. St. Luke's Hospital, "Security Guard 'Freddy'", Security Guard 'Joe'", Security Guard 'Nate'" "Head of Hospital Security 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman & the "Hospital Leadership Team" ................................................................................................................................... 866

LII.          Intentional Infliction of Emotional Distress XIII ..................................................................... 872

Mr. & Mrs. Smith v. St. Luke's Hospital .......................................................................................... 873

LIII.          Intentional Infliction of Emotional Distress XIV .................................................................... 877

Mr. & Mrs. Smith v. Monroe County, Ms. Adelaide W. Grace, Mr. Tim Shaw & Mr. Jorge Manteria ............................................................................................................................................................. 877

LIV.          Intentional Infliction of Emotional Distress XV ..................................................................... 883

Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and Gynecology Associates,  Monroe County, Northampton County, Ms. Adelaide Grace, Mr. Tim Shaw, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown', Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" ............... 884

LV.          Intentional Infliction of Emotional Distress XVI .................................................................... 893

Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, & Mr. Jerry Hric, MD ...................................................................................................................... 893

LVI.          Intentional Infliction of Emotional Distress XVII ................................................................... 902

Mr. & Mrs. Smith v. St. Luke's Hospital, OBHG PA, & Ms. Teresa Marlino, MD .............................. 902

LVII.          Intentional Infliction of Emotional Distress XVIII .................................................................. 908

Mr. & Mrs. Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, & Mr. Jerry Hric, MD ........................................................................................................... 908

Requests for Damages .................................................................................................................... 917

VERIFICATION.................................................................................................................................. 924

VERIFICATION.................................................................................................................................. 925

1

# **JURISDICTION**

1.  This claim is being filed in part under the Americans with Disabilities Act of 1990, as codified in 42 U.S.C. § 12112-12117, for acts of discrimination against an individual with a known disability.  The U.S. District Courts hold original jurisdiction over claims arising under the Americans with Disabilities Act.  This case also involves state law claims arising out case or controversy as the discrimination claim.  Under 28 U.S. Code § 1367, since the U.S. District Court has jurisdiction over the discrimination claim, and the State claims arise out of a common nucleus of operative fact, the Court may also exercise supplemental jurisdiction to hear those state claims. *United Mine Workers v Gibbs*, 383 US 715 (1966).  The U.S. District Court has original jurisdiction over the Constitutional claims.

# **VENUE**

2.  Plaintiffs Grace Smith, Esq., Michael O. Smith, J.D., and J.A. Smith (minor child) all reside in Monroe County Pennsylvania.  All named Defendants live, work or have a principle place of business in the state of Pennsylvania, with the entirety of the events described in this complaint occurring in Northampton County and Monroe County in Pennsylvania.  Given the location of the events and the parties involved in this matter, the forum for this case would be the State of Pennsylvania, with the United States District Court for the Eastern District of Pennsylvania being the correct venue for these proceedings.

# **Parties to the Following Claims**

1.    ***Plaintiff*** _Grace L. Smith, Esq.,_ is an adult resident of Monroe County, Pennsylvania.

2.    ***Plaintiff*** _Michael O. Smith, J.D._ is an adult resident of Monroe County, Pennsylvania.

3.    ***Plaintiff*** _Newborn baby J.A.S._ is a child and resident of Monroe County, Pennsylvania.

4.    ***Defendant*** _St. Luke's University Health Network, via St. Luke's Hospital, Anderson Campus; hereinafter,_ St. Luke's or St. Luke's Hospital is a corporation with its principal place of business located at 1872 St. Luke's Blvd., in Easton, Pennsylvania, and is duly authorized to conduct business within the Commonwealth of Pennsylvania. Defendant St. Luke's Hospital was, at all times relevant, acting by and through its duly assigned agents, employees, and/or assigns, who were then and there acting within the course and scope of their employment and in accordance with the customs, policies, and practices of St. Luke's Hospital.

5.    ***Defendant*** _Ms. Teresa Marlino, MD_, a private individual and a medical provider at St. Luke's Hospital—Anderson Campus, provided medical services for Defendant St. Luke's Hospital via Defendant OBHG PA Pennsylvania, PC, and was acting as a duly assigned agent, employee, and/or assign of both entities (St. Luke's Hospital & OBHG PA), and at all times relevant, and while acting in the course and scope of her employment, was acting under color of state law and in accordance with the customs, policies, and practices of Defendants St. Luke's Hospital and OBHG PA.

1   6.   ***Defendant*** *Ms. Cynthia M. Shultz, MD*, a private individual and a medical

2   provider at St. Luke's Hospital—Anderson Campus, provided medical services for

3   Defendant St. Luke's via Defendant Onsite Neonatal, and was acting as a duly assigned

4   agent, employee, and/or assign of both entities (St. Luke's & Onsite Neonatal), and at

5   all times relevant, and while acting in the course and scope of her employment, was

6   acting under color of state law and in accordance with the customs, policies, and

7   practices of Defendants St. Luke's Hospital and Onsite Neonatal.

8       7.    ***Defendant*** *Mr. Patrick Philpot, DO, a private individual, holds the title of*

9    *Associate Medical Director of Neonatology at St. Luke's Hospital, and is a medical*

10    *provider at St. Luke's Hospital—Anderson Campus, provided medical services for*

11    *Defendant St. Luke's via Defendant Onsite Neonatal, and was acting as a duly assigned*

12    *agent, employee, and/or assign of both entities (St. Luke's & Onsite Neonatal), and at*

13    *all times relevant, and while acting in the course and scope of his employment, was*

14     *acting under color of state law and in accordance with the customs, policies, and*

15        *practices of Defendants St. Luke's and Onsite Neonatal.*

16   8.    ***Defendant*** *Ms. Dianne R. Jacobetz, MD*, a private individual, holds the title of

17   Regional Medical Director at St. Luke's Hospital, and is a medical provider at St. Luke's

18   Hospital—Anderson Campus, provided medical services for Defendant St. Luke's with

19   Defendant St. Luke's Physician's Group, and was acting as a duly assigned agent,

20   employee, and/or assign of one or both entities (St. Luke's Hospital & St. Luke's

21   Physician's Group), and at all times relevant, and while acting in the course and scope

22   of her employment, was acting under color of state law and in accordance with the

1   customs, policies, and practices of Defendants St. Luke's Hospital and St. Luke's

2   Physician's Group.

3   9.    **_Defendant_** _Mr. Shadi N. Malaeb MD,_ a private individual and a medical provider

4   at St. Luke's Hospital—Anderson Campus, provided medical services for Defendant St.

5   Luke's via Defendant Onsite Neonatal, and was acting as a duly assigned agent,

6   employee, and/or assign of both entities (St. Luke's & Onsite Neonatal), and at all times

7   relevant, and while acting in the course and scope of his employment, was acting under

8   color of state law and in accordance with the customs, policies, and practices of

9   Defendants St. Luke's and Onsite Neonatal.

10   10.    **_Defendant_** _Ms. Marilyn E. Ekonomidis, MD,_ a private individual and a medical

11   provider at St. Luke's Hospital—Anderson Campus, provided medical services for

12   Defendant St. Luke's via Defendant Bethlehem Neonatal, and was acting as a duly

13   assigned agent, employee, and/or assign of both entities (St. Luke's & Bethlehem

14   Neonatal), and at all times relevant, and while acting in the course and scope of her

15   employment, was acting under color of state law and in accordance with the customs,

16   policies, and practices of Defendants St. Luke's and Bethlehem Neonatal.

17   11.    **_Defendant_** _Mr. Christopher Gilbert, MD,_ a private individual and a medical

18   provider at St. Luke's Hospital—Anderson Campus, provided medical services for

19   Defendant St. Luke's via Defendant St. Luke's Obstetrics and Gynecology Associates,

20   and was acting as a duly assigned agent, employee, and/or assign of both entities (St.

21   Luke's Hospital & St. Luke's Obstetrics), and at all times relevant, and while acting in

22   the course and scope of his employment, was acting under color of state law and in

1   accordance with the customs, policies, and practices of Defendants St. Luke's and St.

2   Luke's Obstetrics.

3   12.   **Defendant** _Ms. Hannah Milthorpe, MD,_ a private individual and a medical

4   provider at St. Luke's Hospital—Anderson Campus, provided medical services for

5   Defendant St. Luke's via Defendant St. Luke's Physician's Group, and was acting as a

6   duly assigned agent, employee, and/or assign of both entities (St. Luke's & SLPG), and

7   at all times relevant, and while acting in the course and scope of her employment, was

8   acting under color of state law and in accordance with the customs, policies, and

9   practices of Defendants St. Luke's and SLPG.

10   13.   **Defendant** _Ms. Beth A. Maisel, MD_, a private individual and a medical provider at

11   St. Luke's Hospital—Anderson Campus, provided medical services for Defendant St.

12   Luke's via Defendant Onsite Neonatal, and Defendant OBHG PA Pennsylvania, PC,

13   and was acting as a duly assigned agent, employee, and/or assign of all three entities

14   (St. Luke's, Onsite Neonatal, & OBHG PA PA), and at all times relevant, and while

15   acting in the course and scope of her employment, was acting under color of state law

16   and in accordance with the customs, policies, and practices of Defendants St. Luke's,

17   Onsite Neonatal, & OBBG PA.

18   14.   **Defendant** _Ms. Denese Brown, MD,_ a private individual and a medical provider

19   at St. Luke's Hospital—Anderson Campus, provided medical services for Defendant St.

20   Luke's via Defendant St. Luke's Physician's Group, and was acting as a duly assigned

21   agent, employee, and/or assign of both entities (St. Luke's & SLPG), and at all times

22   relevant, and while acting in the course and scope of her employment, was acting under

1   color of state law and in accordance with the customs, policies, and practices of

2   Defendants St. Luke's and SLPG.

3   15.    **Defendant** _Ms. Kimberly A. Costello, DO,_ a private individual, the Medical

4   Director of the NICU, and a medical provider at St. Luke's Hospital—Anderson Campus,

5   provided medical services for Defendant St. Luke's via Defendant Onsite Neonatal, and

6   was acting as a duly assigned agent, employee, and/or assign of both entities (St.

7   Luke's & Onsite Neonatal), and at all times relevant, and while acting in the course and

8   scope of her employment, was acting under color of state law and in accordance with

9   the customs, policies, and practices of Defendants St. Luke's and Onsite Neonatal.

10   16.    **Defendant** _Mr. Gilberto I. Santiago, MD,_ a private individual and a medical

11   provider at St. Luke's Hospital—Anderson Campus, provided medical services for

12   Defendant St. Luke's, and was acting as a duly assigned agent, employee, and/or

13   assign of St. Luke's, and at all times relevant, and while acting in the course and scope

14   of his employment, was acting under color of state law and in accordance with the

15   customs, policies, and practices of Defendant St. Luke's.

16   17.    **Defendant** _Ms. Chaminie Wheeler, DO,_ a private individual and a medical

17   provider at St. Luke's Hospital—Anderson Campus, provided medical services for

18   Defendant St. Luke's via Defendant Onsite Neonatal, and was acting as a duly assigned

19   agent, employee, and/or assign of both entities (St. Luke's & Onsite Neonatal), and at

20   all times relevant, and while acting in the course and scope of her employment, was

21   acting under color of state law and in accordance with the customs, policies, and

22   practices of Defendants St. Luke's and Onsite Neonatal.

1   18.   ***Defendant*** *Ms. Patricia Bates, CRNP,* a private individual and a medical provider

2   at St. Luke's Hospital—Anderson Campus, provided medical services for Defendant St.

3   Luke's via Defendant Onsite Neonatal, and was acting as a duly assigned agent,

4   employee, and/or assign of both entities (St. Luke's & Onsite Neonatal), and at all times

5   relevant, and while acting in the course and scope of her employment, was acting under

6   color of state law and in accordance with the customs, policies, and practices of

7   Defendants St. Luke's and Onsite Neonatal.

8   19.   ***Defendant*** *Ms. Kimberly A. Nardis, CRNP,* a private individual and a medical

9   provider at St. Luke's Hospital—Anderson Campus, provided medical services for

10   Defendant St. Luke's via Defendant Onsite Neonatal, and was acting as a duly assigned

11   agent, employee, and/or assign of both entities (St. Luke's & Onsite Neonatal), and at

12   all times relevant, and while acting in the course and scope of her employment, was

13   acting under color of state law and in accordance with the customs, policies, and

14   practices of Defendants St. Luke's and Onsite Neonatal.

15   20.   ***Defendant*** *Ms. Kimberly A. Butz, RN,* a private individual and a medical provider

16   at St. Luke's Hospital—Anderson Campus, provided medical services for Defendant St.

17   Luke's, and was acting as a duly assigned agent, employee, and/or assign of St. Luke's,

18   and at all times relevant, and while acting in the course and scope of her employment,

19   was acting under color of state law and in accordance with the customs, policies, and

20   practices of Defendant St. Luke's.

21   21.   ***Defendant*** *"Security Guard 'Freddy'"*, a St. Luke's Hospital security guard, is a

22   private individual and not a state official, yet at all times relevant, and while acting in the

23   course and scope of his employment, "Security Guard 'Freddy'" was acting under color

1    of state law and in accordance with the customs, policies, and practices of Defendant

2    St. Luke's Hospital.

3    22.    **_Defendant_** _"Security Guard 'Joe'"_, a St. Luke's Hospital security guard, is a

4    private individual and not a state official, yet at all times relevant, and while acting in the

5    course and scope of his employment, "Security Guard 'Joe'" was acting under color of

6    state law and in accordance with the customs, policies, and practices of Defendant St.

7    Luke's Hospital.

8    23.    **_Defendant_** _"Security Guard 'Nate'"_, a St. Luke's Hospital security guard, is a

9    private individual and not a state official, yet at all times relevant, and while acting in the

10   course and scope of his employment, "Security Guard 'Nate'" was acting under color of

11   state law and in accordance with the customs, policies, and practices of Defendant St.

12   Luke's Hospital.

13   24.    **_Defendant(s)_** _"Security Guard(s) 'Unknown'", hereinafter UKSGs or UKSG_, a St.

14   Luke's Hospital security guard(s), is a private individual(s) and not a state official, yet at

15   all times relevant, and while acting in the course and scope of his or her employment,

16   "Security Guard(s) 'Unknown'" was acting under color of state law and in accordance

17   with the customs, policies, and practices of Defendant St. Luke's Hospital.

18   25.    **_Defendant_** _"Security Supervisor 'Unknown'", hereinafter "UKSS"_, a St. Luke's

19   Hospital security guard, is a private individual and not a state official, yet at all times

20   relevant, and while acting in the course and scope of his employment, "UKSS" was

21   acting under color of state law and in accordance with the customs, policies, and

22   practices of Defendant St. Luke's Hospital.

1   26.   **Defendant** *"Head of Hospital Security 'Unknown'", hereinafter "UKHHS"*, a St.

2   Luke's Hospital security guard, is a private individual and not a state official, yet at all

3   times relevant, and while acting in the course and scope of his employment, "UKHHS"

4   was acting under color of state law and in accordance with the customs, policies, and

5   practices of Defendant St. Luke's Hospital.

6   27.   **Defendant** *Mr. Steve Lanshe, Esq.,* a St. Luke's Hospital attorney with the title of

7   Associate General Counsel, is a private individual and not a state official, yet at all times

8   relevant, and while acting in the course and scope of his employment, Mr. Lanshe was

9   acting under color of state law and in accordance with the customs, policies, and

10   practices of Defendant St. Luke's Hospital.

11   28.   **Defendant** *Mr. Robert L. Wax, Esq.*, a St. Luke's Hospital attorney with the title

12   of Senior Vice President & General Counsel, is a private individual and not a state

13   official, yet at all times relevant, and while acting in the course and scope of his

14   employment as an attorney and attorney supervisor, Mr. Wax was acting under color of

15   state law and in accordance with the customs, policies, and practices of Defendant St.

16   Luke's Hospital.

17   29.   **Defendant** *St. Luke's Hospital Social Worker "Vanessa",* a private individual and

18   a social services provider at St. Luke's Hospital—Anderson Campus, provided social

19   services for Defendant St. Luke's Hospital, and was acting as a duly assigned agent,

20   employee, and/or assign of St. Luke's Hospital, and at all times relevant, and while

21   acting in the course and scope of her employment, was acting under color of state law

22   and in accordance with the customs, policies, and practices of Defendant St. Luke's

23   Hospital.

1    30.    **Defendant** _Ms. Darla Frack_, a St. Luke's Hospital administrator with the title of

2    Vice President of Patient Care Services, is a private individual, yet at all times relevant,

3    and while acting in the course and scope of her employment, Defendant Ms. Frack was

4    acting under color of state law and in accordance with the customs, policies, and

5    practices of Defendant St. Luke's Hospital.

6    31.    **Defendant** _Ms. Dawn Hoffman_, is a private individual and a St. Luke's Hospital

7    administrator with the title of Practice Administrator, at St. Luke's Hospital—Anderson

8    Campus, provided advisory services for Defendant St. Luke's via Defendant St. Luke's

9    Physician Group, and was acting as a duly assigned agent, employee, and/or assign of

10   both entities (St. Luke's & SLPG), and at all times relevant, and while acting in the

11   course and scope of her employment, was acting under color of state law and in

12   accordance with the customs, policies, and practices of Defendants St. Luke's and

13   SLPG.

14   32.    **Defendants** _"Hospital Leadership Team", hereinafter "HLT"_, a St. Luke's Hospital

15   decision making body, or otherwise a body used to consult St. Luke's Hospital

16   personnel, was at all times relevant, and while acting in the course and scope of their

17   employment, Defendants 'HLT' were acting under color of state law and in accordance

18   with the customs, policies, and practices of Defendant St. Luke's Hospital; future fact

19   finding hopes to uncover the nature and extent of these Defendants.

20   33.    **Defendant** _Onsite Neonatal Partners, Inc._, is a corporation with its principal place

21   of business located at 1000 Haddonfield-Berlin Rd., Unit 210, in Voorhees, New Jersey

22   and is duly authorized to conduct business within the State of New Jersey and the

23   Commonwealth of Pennsylvania. Defendant Onsite Neonatal was, at all times relevant,

1    acting by and through its duly assigned agents, employees, and/or assigns, who were

2    then and there acting within the course and scope of their employment and in

3    accordance with the customs, policies, and practices of Onsite Neonatal.

4    34.    **_Defendant_** _Mr. Jerry Hric, MD_, a private individual who holds the title of Founder

5    and CEO at Onsite Neonatal, and through Defendant Onsite Neonatal is a medical

6    provider at St. Luke's Hospital—Anderson Campus, where he provided medical

7    services for Defendant St. Luke's via Defendant Onsite Neonatal, and was acting as a

8    duly assigned agent, employee, and/or assign of one or both entities (St. Luke's &

9    Onsite Neonatal), and at all times relevant, and while acting in the course and scope of

10    his employment, was acting under color of state law and in accordance with the

11    customs, policies, and practices of Defendants St. Luke's Hospital and Onsite Neonatal.

12    35.    **_Defendant_** _Anderson Laboratory_, is a corporation with its principal place of

13    business located at 1872 St. Luke's Blvd., in Easton, Pennsylvania, and is duly

14    authorized to conduct business within the Commonwealth of Pennsylvania. Defendant

15    Anderson Laboratory was, at all times relevant, acting by and through its duly assigned

16    agents, employees, and/or assigns, who were then and there acting within the course

17    and scope of their employment and in accordance with the customs, policies, and

18    practices of Anderson Laboratory.

19    36.    **_Defendant_** _Ms. Emily Miller, MD,_ a private individual holding the title of Lab

20    Medical Director, provided testing services for Defendant St. Luke's via Defendant

21    Anderson Laboratory, and was acting as a duly assigned agent, employee, and/or

22    assign of one or both entities (St. Luke's & Anderson Laboratory), and at all times

23    relevant, and while acting in the course and scope of her employment, was acting under

1   color of state law and in accordance with the customs, policies, and practices of

2   Defendants St. Luke's and Anderson Laboratory.

3   37.     **_Defendant OBHG PA Pennsylvania, PC (OBHG PA)_**, is a corporation with its

4   principal place of business located at 777 Loundes Hill Rd., Bldg. 1, in Greenville, South

5   Carolina and is duly authorized to conduct business within the State of South Carolina

6   and the Commonwealth of Pennsylvania. Defendant OBHG PA Pennsylvania, PC was,

7   at all times relevant, acting by and through its duly assigned agents, employees, and/or

8   assigns, who were then and there acting within the course and scope of their

9   employment and in accordance with the customs, policies, and practices of Defendant

10  OBHG PA Pennsylvania, PC.

11  38.     **_Defendant St. Luke's Physician Group (SLPG)_**, is a corporation with its principal

12  place of business located at 305 W. North St., in Nazareth, Pennsylvania and is duly

13  authorized to conduct business within the Commonwealth of Pennsylvania. Defendant

14  St. Luke's Physician Group was, at all times relevant, acting by and through its duly

15  assigned agents, employees, and/or assigns, who were then and there acting within the

16  course and scope of their employment and in accordance with the customs, policies,

17  and practices of Defendant St. Luke's Physician Group.

18  39.     **_Defendant Bethlehem Neonatal Associates (BNA)._**, is a corporation with its

19  principal place of business located at 801 Ostrum St., in Bethlehem, Pennsylvania and

20  is duly authorized to conduct business within the Commonwealth of Pennsylvania.

21  Defendant BNA was, at all times relevant, acting by and through its duly assigned

22  agents, employees, and/or assigns, who were then and there acting within the course

1   and scope of their employment and in accordance with the customs, policies, and

2   practices of BNA.

3   40.   **_Defendant St. Luke's Obstetrics and Gynecology Associates (St. Luke's OGA)_**,

4   is a corporation with its principal place of business located at 487 E. Moorestown Rd.,

5   Suite 106, in Wind Gap, Pennsylvania and is duly authorized to conduct business within

6   the Commonwealth of Pennsylvania. Defendant St. Luke's OGA was, at all times

7   relevant, acting by and through its duly assigned agents, employees, and/or assigns,

8   who were then and there acting within the course and scope of their employment and in

9   accordance with the customs, policies, and practices of _St. Luke's OGA_.

10   41.   **_Defendant Monroe County,_** is a Pennsylvania County of the Fourth Class which

11   operates the Monroe County Office of Children and Youth Services. Defendant Monroe

12   County was, at all times relevant, acting by and through its duly authorized agents,

13   employees and/or assigns, who were then and there acting within the course and scope

14   of their employment, under the color of state law and in accordance with the customs,

15   policies and practices of Monroe County.

16   42.   **_Defendant_**— _Ms. Adelaide W. Grace, Administrator_, _Monroe County Office of_

17   _Children and Youth,_ was acting within the course and scope of their employment, under

18   the color of state law and in accordance with the customs, policies and practices of

19   Monroe County.

20   43.   **_Defendant_**— _Mr. Tim Shaw_, _Caseworker Supervisor_, _Monroe County Office of_

21   _Children and Youth,_ was acting within the course and scope of their employment, under

22   the color of state law and in accordance with the customs, policies and practices of

23   Monroe County.

1   44.   **_Defendant_**— _Mr. Jorge Manteria, Caseworker_, _Monroe County Office of Children_

2   _and Youth,_ was acting within the course and scope of their employment, under the color

3   of state law and in accordance with the customs, policies and practices of Monroe

4   County.

5   45.   **_Defendant_** _Northampton County_, is a Pennsylvania County of the Third Class

6   which operates the Bethlehem Police Department and the Northampton County Office

7   of Children and Youth Services. Defendant Northampton County was, at all times

8   relevant, acting by and through its duly authorized agents, employees and/or assigns,

9   who were then and there acting within the course and scope of their employment, under

10   the color of state law and in accordance with the customs, policies and practices of

11   Northampton County.

12   46.   **_Defendant_** _Bethlehem Township,_ is a Pennsylvania Township in Northampton

13   Township, which operates the Bethlehem Police Department. Defendant Bethlehem

14   Township was, at all times relevant, acting by and through its duly authorized agents,

15   employees and/or assigns, who were then and there acting within the course and scope

16   of their employment, under the color of state law and in accordance with the customs,

17   policies and practices of Bethlehem Township.

18   47.   **_Defendant_**—_Officer Andrew Keyock, Patrolman, Badge #629,_ of the Bethlehem

19   Police Department, was acting under color of state law, and at all times relevant, was

20   acting within the course and scope of his employment and in accordance with the

21   customs, policies, and practices of the Bethlehem Police Department.

22   48.   **_Defendant_**—_Officer Thomas A. Smith, Patrolman, Badge #667,_ of the Bethlehem

23   Police Department, was acting under color of state law, and at all times relevant, was

1  acting within the course and scope of his employment and in accordance with the

2  customs, policies, and practices of the Bethlehem Police Department.

3  49.    **_Defendant_**—_Corporal Kirk Harryn, Administration,_ of the Bethlehem Police

4  Department, was acting under color of state law, and at all times relevant, was acting

5  within the course and scope of his employment and in accordance with the customs,

6  policies, and practices of the Bethlehem Police Department.

7  50.    **_Defendant_**—_Chief Daniel G. Pancoast, Administration,_ of the Bethlehem Police

8  Department, was acting under color of state law, and at all times relevant, was acting

9  within the course and scope of his employment and in accordance with the customs,

10  policies, and practices of the Bethlehem Police Department.

# Facts of the Case

## I.   Facts I:  Case in Chronology

13  51.    The Plaintiff Smith Family moved to Monroe County, PA from Delaware County,

14  PA during the week prior to the birth of Plaintiff Newborn baby J.A.S.

15  52.    Sometime in the week preceding the birth of Plaintiff Newborn baby J.A.S.,

16  Plaintiff Mrs. Smith called Defendant St. Luke's Hospital and inquired as to what the

17  typical length of stay for a vaginal delivery without any complications would be in light of

18  the COVID-19 virus pandemic.

19  53.    The phoned representative of Defendant St. Luke's Hospital was not sure what

20  the answer to Plaintiff Mrs. Smith inquiry was, and so instructed Mrs. Smith that another

21  representative of Defendant St. Luke's Hospital would return her call with an appropriate

22  answer.

54.     An individual holding themselves out as a representative of Defendant St. Luke's Hospital returned Defendant Mrs. Smith's call at a later time and conveyed to Plaintiff Mrs. Smith that the expectant time that a mother would likely be discharged twenty-four hours after a successful vaginal delivery without complications, in light of the COVID-19 virus pandemic.

55.     On Thursday, April 8th, 2021 at approximately 12:14 pm, Plaintiff Mrs. Smith's water broke.

56.     On Thursday, April 8th, 2021 at approximately 1:42 pm, Plaintiffs Mr. & Mrs. Smith arrived at Defendant St. Luke's Hospital in Easton, PA.

57.     Initial intake of Plaintiff Mrs. Smith was at a reception desk on Floor 2 of the Women's and Babies Pavilion.

58.     Intake receptionist used old information from Plaintiff Mrs. Smith's previous medical records as a basis to label Plaintiff Mrs. Smith's intake wristband "Osmun" (Mrs. Smith's maiden name).

59.     Plaintiffs Mr. & Mrs. Smith advised the intake receptionist that the last name represented on the wristband was in error and that Mrs. Smith had been married for seven years.

60.     Plaintiffs Mr. & Mrs. Smith advised the intake receptionist that the appropriate name for Plaintiff Mrs. Smith's medical files shall be "Smith" and not "Osmun", and that Plaintiff Mrs. Smith's medical wristband should reflect that fact.

61.     Even after being shown identification by both Plaintiffs Mr. & Mrs. Smith, the intake receptionist did not believe assertions by the Plaintiffs Mr. & Mrs. Smith, who

1    then had to strongly insist that medical information for Mrs. Smith be labelled

2    appropriately, as should be the same for their soon-to-be-born child.

3    62.    The intake receptionist insisted that Plaintiff Mrs. Smith's maiden name would

4    suffice for the Defendant St. Luke's Hospital's purposes.

5    63.    Shortly thereafter, Plaintiffs Mr. and Mrs. Smith were taken to a triage room.

6    64.    Once in the triage room, the intake nurse stated that Plaintiff Mrs. Smith's

7    married name should be on Mrs. Smith's wristband, and not the plaintiff's maiden name.

8    65.    The intake nurse left the triage room and returned with a new wristband in which

9    "Grace Smith" was handwritten on the wristband.

10    66.    At this point, there was no indication that the intake nurse, nor anyone else, had

11    changed or updated Mrs. Smith's electronic hospital chart to reflect her current, married

12    last name as it was handwritten on Plaintiff's wristband.

13    67.    During the triage procedure Plaintiff Mrs. Smith provided a urine sample and had

14    her blood drawn for testing.

15    68.    During the triage procedure Plaintiff Mrs. Smith provided Defendant St. Luke's

16    Hospital with a paper printed version of her most current medical records, which had

17    been updated less than a week prior.

18    69.    Contained in the medical records that were provided to Defendant St. Luke's

19    Hospital was Plaintiff Mrs. Smith's legal prescription for the amphetamine Vyvanse.

20    70.    Plaintiff Mrs. Smith's prescription for Vyvanse during pregnancy had been

21    reviewed an approved of by three prior medical doctors, including Mrs. Smith's

22    obstetrician and psychiatrist.

71.    The records of the prior examinations and approvals for Vyvanse as a legal prescription for Plaintiff Mrs. Smith were contained within the paper medical records provided to Defendant St. Luke's Hospital.

72.    Contained in the medical records that were provided to Defendant St. Luke's Hospital was Plaintiff Mrs. Smith's legal prescription for marijuana.

73.    Defendant St. Luke's Hospital requested to copy the records and then to return the original copy to Plaintiff Mrs. Smith.

74.    Plaintiff Mrs. Smith consented to her medical records being copied by St. Luke's Hospital staff and returned to Mrs. Smith.

75.    A representative of St. Luke's Hospital removed the records from the presence of the Plaintiffs Mr. & Mrs. Smith and returned a short while later asserting that she had indeed made a copy of Mrs. Smith medical records for inclusion in her current medical file.

76.    The original copies of Plaintiff Mrs. Smith's medical records were then returned to Mrs. Smith.

77.    Plaintiff Mrs. Smith then orally reviewed her medical history that was reflected in the medical records that she had just submitted to St. Luke's Hospital with a member of St. Luke's Hospital staff.

78.    The oral record as presented by Plaintiff Mrs. Smith exactly concurred with the written record that she had provided to Defendant St. Luke's Hospital.

79.    Information on how to the verify Plaintiff Mrs. Smith medical records was contained in the medical records she provided to Defendant St. Luke's Hospital.

80.     Not one of Defendant St. Luke's Hospital's staff, employees, or agents held out to Mr. or Mrs. Smith that the veracity of Mrs. Smith's medical records was in question.

81.     Ms. Kathy Lakatosh, RN, a representative of Defendant St. Luke's Hospital commented throughout the intake triage process comments such as, "You two appear to be running from the law," because our last name was Smith and that we had just moved to the area.

82.     The aforementioned "joke" made by Ms. Lakatosh, RN was made on at least three occasions.

83.     Neither Mr. nor Mrs. Smith responded positively to Ms. Lakatosh's "joke" that they were criminals.

84.     Defendant Ms. Marilyn Ekonomidis, MD was the medical doctor in charge of examining Plaintiff Mrs. Smith during triage.

85.     Defendant Ms. Marilyn Ekonomidis, MD placed in Plaintiff Mrs. Smith's medical records a diagnosis of "38 weeks gestation of pregnancy" and "VBAC" (VBAC is medical shorthand for vaginal birth after caesarian).

86.     Defendant Ms. Marilyn Ekonomidis, MD did not mention Vyvanse or marijuana as potential birth complications in Plaintiff Mrs. Smith's medical records.

87.     Defendant Ms. Marilyn Ekonomidis, MD did not mention methamphetamine as a potential birth complication in Plaintiff Mrs. Smith's medical records.

88.     Defendant Ms. Marilyn Ekonomidis, MD did not mention any signs or symptoms of methamphetamine abuse as a potential birth complication in Plaintiff Mrs. Smith's medical records.

89.    Defendant Ms. Marilyn Ekonomidis, MD did record based on her triage that she expected a routine birthing and anticipated a successful vaginal delivery.

90.    Defendant Ms. Marilyn Ekonomidis, MD did not question the validity of any of the oral or written medical record presented to her by Plaintiff Mrs. Smith.

91.    Plaintiff Mrs. Smith's medical records indicate that Mrs. Smith was not expected to remain at Defendant St. Luke's Hospital for more than "two midnights".

92.    Defendant Ms. Marilyn Ekonomidis, MD did record based on her triage three pregnancy complications (1) "marijuana use during pregnancy", (2) "use of Vyvanse during pregnancy," and, (3) "[p]rior C/S followed by VBAC x2."

93.    Vyvanse and marijuana consumption are not "pregnancy complications".

94.    Defendant Ms. Marilyn Ekonomidis, MD did record marijuana under the heading of "Substance and Drug Use" and not as a prescription medication in the appropriate category as reflected in Plaintiff Mrs. Grace Smith medical records.

95.    Without any rational cause Defendant St. Luke's Hospital was monitoring Plaintiff Mrs. Smith behavior to ensure that she remained "cooperative" with St. Luke's staff.

96.    Defendant St. Luke's Hospital did not ever have a psychiatrist examine Plaintiff Mrs. Smith well-being or state-of-mind at any time ever.

97.    The results of Defendant Mrs. Smith's initial lab screenings returned a positive indication of amphetamines, as was to be expected from consuming prescription Vyvanse.

98.    Amphetamines and methamphetamines are similar but chemically distinct substances from one another.

99.    Upon information and belief, Defendant St. Luke's Hospital, and its agents, employees, and/or assigns, prior to birth, concluded that they intended to remove Plaintiffs Mr. & Mrs. Smith newborn child from the presence of Mr. & Mrs. Smith based upon the erroneous assumption that Plaintiffs Mr. & Mrs. Smith were or would abuse their newborn child.

100.    Upon information and belief, in order to effectuate its desire to separate Plaintiffs Mr. & Mrs. Smith, Defendant St. Luke's, and its agents, employees, and/or assigns concocted a methodology to separate Plaintiffs Mr. & Mrs. Smith from their soon-to-be-born baby.

101.    Upon information and belief, in order to effectuate its desire to separate Plaintiffs Mr. & Mrs. Smith, Defendant St. Luke's, and its agents, employees, and/or assigns concocted a methodology asserting that Plaintiff Mrs. Smith ingested methamphetamine and that she passed the deleterious effects of methamphetamine use on to her newborn baby child while in-utero.

102.    Upon information and belief Defendant St. Luke's Hospital, and its agents, employees, and/or assigns effectuated a coordinated effort to assert that Plaintiff Mrs. Smith tested positive for methamphetamine.

103.    Defendant St. Luke's Hospital based its evidence on Plaintiff Mrs. Smith being a methamphetamine abuser on a chemical test that did not differentiate between legal amphetamines and illegal methamphetamines, which Defendant St. Luke's Hospital, and its agents, employees, and/or assigns used as evidence to assert that Plaintiff Mrs. Smith had ingested methamphetamine even though she tested positive as a result of Plaintiff Mrs. Smith's known prescription use of Vyvanse (an amphetamine).

1   104.   After Plaintiff Mrs. Smith's examination was concluded she and Plaintiff Mr. Smith

2   were escorted to the delivery room.

3   105.   Pitocin was administered by an anesthesiologist.

4   106.   At approximately 11:00 pm Plaintiff Mrs. Smith went into physical labor.

5   107.   At approximately 11:12 pm Plaintiff Mrs. Smith successfully gave vaginal birth

6   without complications to Plaintiff Newborn baby J.A.S.

7   108.   In his birth assessment, Plaintiff newborn baby J.A.S. did not have any recorded

8   complications or issues with breathing, grunting, flaring, or signs of stress according to

9   Defendants Ms. Beth A. Maisel, MD, and, Ms. Hannah Milthorpe, MD.

10   109.   Without the knowledge and consent of Plaintiffs Mr. & Mrs. Smith, tissue samples

11   related to the birth of Newborn baby J.A.S. were collected to be tested for

12   methamphetamine and other illicit substances, including the umbilical cord that

13   connected Plaintiff Mrs. Smith to Plaintiff Newborn baby J.A.S.

14   110.   On the morning of April 9th, 2021 Defendant Mr. Gilberto I. Santiago, MD

15   examined Newborn baby J.A.S. and found him to be healthy.

16   111.   Based on the information that Plaintiffs Mr. & Mrs. Smith were given, that Plaintiff

17   Newborn baby J.A.S. was born without complications and continued to be healthy, and

18   that because of COVID-19 policies that were reported to Mrs. Smith about being

19   discharged within twenty-four hours of a child's birth prior to Plaintiffs Mr. & Mrs. Smith

20   arriving at Defendant St. Luke's Hospital, and based on the fact that Mr. & Mrs. Smith

21   had three other children to care for at home, Plaintiffs Mr. & Mrs. Smith requested that

22   they be discharged as soon as practicable.

112.    Plaintiffs Mr. & Mrs. Smith hoped to be discharged with Newborn baby J.A.S.

sometime on the evening of April 9th, 2021.

113.    At approximately 10:30 am on April 9th, 2021, Defendants Ms. Chaminie

Wheeler, DO and another unknown doctor came into Plaintiff Mrs. Smith's postpartum

hospital room inquiring as to why she wished to be discharged already.

114.    Plaintiffs Mr. and Mrs. Smith shared the aforementioned reasons with the doctors

present.

115.    Defendant Ms. Chaminie Wheeler, DO made every effort to convince Plaintiffs

Mr. & Mrs. Smith to stay longer at the hospital without a reasonable explanation.

116.    Plaintiffs Mr. & Mrs. Smith stated to the doctors present that they were not

comfortable remaining in a hospital during a COVID-19 pandemic.

117.    Plaintiffs Mr. & Mrs. Smith's COVID-19 concerns were dismissed by the doctors

present by ignoring them outright.

118.    Defendant Ms. Chaminie Wheeler, DO, likely surmised that the Plaintiffs Mr. &

Mrs. Smith would not be easy to persuade of facts that were not based in evidence, and

therefore she claimed that a grunt that babies typically make to demonstrate a desire to

breastfeed was not a grunt indicating hunger, but instead indicated potential breathing

problems associated with a possible infection in Newborn baby J.A.S.'s lungs.

119.    Although Mr. & Mrs. Smith were skeptical of the reasoning of Ms. Chaminie

Wheeler, DO and the other accompanying doctor, and after much convincing, Mr. and

Mrs. Smith deferred to the expertise of the doctors present and allowed an "observation

period" of Newborn baby J.A.S. out of Mrs. Smith's postpartum hospital room.

120.    Subsequently a chest x-ray of Newborn baby J.A.S. was ordered and administered.

121.    Subsequently Plaintiff Newborn baby J.A.S. was out of the presence of Plaintiffs Mr. & Mrs. Smith for approximately one hour while "under observation" by hospital staff in another location of the hospital.

122.    When Defendant Ms. Chaminie Wheeler, DO returned to Plaintiff Mrs. Smith's postpartum hospital room, she claimed that she had new information about Plaintiff Newborn baby J.A.S. and asserted to Mr. & Mrs. Smith that Newborn baby J.A.S.'s "pulse ox was measured in the mid 80s" and that as such it was a "no brainer" to admit Newborn baby J.A.S. to the hospital's NICU.

123.    Defendant Ms. Chaminie Wheeler, MD held out to Mr. & Mrs. Smith as fact that Newborn baby J.A.S. was "born early" and as such he had "too much fluid in his lungs", but the situation was not "something to be concerned about" and only required to be placed on oxygen.

124.    Once again, because reality did not seem to comport with the assertions of Defendant Ms. Chaminie Wheeler, DO to Plaintiffs Mr. & Mrs. Smith, Mr. & Mrs. Smith requested that Newborn baby J.A.S. should be observed in Mrs. Smith's postpartum hospital room instead of the NICU.

125.    Plaintiffs Mr. & Mrs. Smith were told by Defendant Ms. Chaminie Wheeler, DO that the care that Newborn baby J.A.S. required could not be provided to him in Mrs. Smith's postpartum hospital room, and that he could only properly be attended to in the NICU.

126.   No x-ray results had been obtained yet at this point, and if such results were available, they were not communicated to Plaintiffs Mr. & Mrs. Smith.

127.   Other than one "grunt" and the assertion that Newborn baby J.A.S.'s pulse ox reading was at one point in the mid 80s there was not any other known evidence presented to Plaintiffs Mr. & Mrs. Smith to admit Newborn baby J.A.S. to the NICU.

128.   Plaintiffs Mr. & Mrs. Smith were assured by medical staff that it was not likely that Newborn baby J.A.S. would remain in the NICU long, given his apparent mild condition, and that his placement there was to err on the side of caution.

129.   Defendant Ms. Chaminie Wheeler, DO also recommended antibiotics also to "err on the side of caution" in case the cause of Newborn baby J.A.S.'s apparent breathing difficulties were related to as yet undiagnosed infection, and so Newborn baby J.A.S. was prescribed "precautionary antibiotics".

130.   Plaintiff Mr. Smith made it known to Defendant Ms. Chaminie Wheeler, DO that he was allergic to penicillin and erythromycin and many related antibiotics, and he urged Dr. Wheeler to use caution when considering or administering any antibiotics to Newborn baby J.A.S. because as a newborn he may be particularly sensitive to the administration of antibiotics at such a young stage of life.

131.   Plaintiffs Mr. & Mrs. Smith were reassured by Defendant Ms. Chaminie Wheeler, DO, that there "weren't any known side-effects related to the antibiotic" that they would give to Newborn baby J.A.S.

132.   Plaintiffs Mr. & Mrs. Smith reluctantly deferred to the professional judgement of the medical staff present and allowed Newborn baby J.A.S. to be admitted to the NICU.

1    133.    Plaintiff Newborn baby J.A.S. was then placed in a transport bed where tubes

2    were placed in his nose to provide him with additional oxygen and taken to the NICU.

3    134.    At no time were Plaintiffs Mr. and Mrs. Smith made aware that Plaintiff Newborn

4    baby J.A.S.'s life was currently in life-threatening danger, or would be in life-threatening

5    danger if the treatments recommended by Defendant St. Luke's Hospital staff,

6    employees, assigns, or agents were not administered, nor were any alternative

7    treatments offered to remedy Newborn baby J.A.S.'s apparently mild symptoms.

8    135.    Despite Newborn baby J.A.S. being in the NICU, Plaintiffs Mr. & Mrs. Smith were

9    told throughout the day that the results of the x-rays done on Newborn baby J.A.S. were

10   not available until many hours later around approximately 5 pm.

11   136.    The results of the x-rays of Newborn baby J.A.S. were conveyed to Plaintiffs Mr.

12   & Mrs. Smith as "inconclusive", and that as a consequence of the "inconclusive" results

13   antibiotics would be continued to be administered to Newborn baby J.A.S.

14   137.    After Plaintiff Mr. & Mrs. Smith received the results of Plaintiff Newborn baby

15   J.A.S.'s x-ray Mr. Smith went to Mrs. Smith's postpartum hospital room to eat food.

16   138.    While in Mrs. Smith's postpartum hospital room an individual holding herself out

17   as an employee of the hospital claimed to be a social worker.

18   139.    The Defendant St. Luke's Hospital's social worker requested to speak with

19   Plaintiff Mrs. Smith.

20   140.    Plaintiff Mr. Smith told the Defendant St. Luke's Hospital social worker that Mrs.

21   Smith was with Newborn baby J.A.S. in the NICU and that Mr. Smith would be happy to

22   contact Mrs. Smith to speak with the Defendant St. Luke's Hospital social worker.

141.    The Defendant St. Luke's Hospital social worker replied matter-of-factly that contacting Mrs. Smith at that moment would not be necessary.

142.    The Defendant St. Luke's Hospital social worker requested that she leave her business card with him and that Plaintiff Mr. Smith have Plaintiff Mrs. Smith contact Defendant St. Luke's Hospital social worker at Mrs. Smith's convenience.

143.    Plaintiff Mr. Smith accepted the business card and agreed to make Plaintiff Mrs. Smith aware of the Defendant St. Luke's Hospital social worker's request for a phone call.

144.    After completing his meal Plaintiff Mr. Smith returned to the NICU where he informed Plaintiff Mrs. Smith of the Defendant St. Luke's Hospital social worker's encounter and request.

145.    Plaintiff Mrs. Smith intended to call the Defendant St. Luke's Hospital social worker after having a meal for dinner.

146.    Plaintiff Mrs. Smith was escorted by Plaintiff Mr. Smith back to her postpartum hospital room so that she could eat dinner.

147.    Plaintiff Mr. Smith decided to wait with Plaintiff Mrs. Smith until she had completed her meal to escort her back to Plaintiff Newborn baby J.A.S.'s NICU pod.

148.    Leaving Newborn baby J.A.S.'s NICU pod for the meal for Mrs. Smith to eat dinner in Mr. Smith's presence in Mrs. Smith's postpartum hospital room was the first time both of Newborn baby J.A.S.'s parents had both left Newborn baby J.A.S.'s presence since Newborn baby J.A.S. had been admitted to the NICU.

149.    At approximately 7 pm on April 9th, 2021, Defendant Ms. Teresa Marlino, MD entered Plaintiff Mrs. Smith's postpartum hospital room.

150.    Plaintiff Mrs. Smith had just finished her dinner, and she and Plaintiff Mr. Smith were preparing to return to Newborn baby J.A.S.'s NICU pod.

151.    Defendant Ms. Marlino, MD held herself out to be a representative of Defendant St. Luke's Hospital, and that she was in charge of obstetrician residents at Defendant St. Luke's Hospital.

152.    Two other nurses were present in Plaintiff Mrs. Smith's postpartum hospital room.

153.    Defendant Ms. Marlino, MD sat herself down in a chair opposite Plaintiff Mrs. Smith's hospital bed.

154.    Plaintiff Mr. Smith was seated in a chair next to Plaintiff Mrs. Smith who was residing in the hospital bed after having finished her meal.

155.    Defendant Ms. Marlino, MD did not ever do a medical examination of Plaintiff Mrs. Smith.

156.    Defendant Ms. Marlino, MD began interrogating Plaintiffs Mr. & Mrs. Smith about the nature of their lives and occupations.

157.    From the perspective of Plaintiffs Mr. & Mrs. Smith, Defendant Ms. Marlino, MD had an aggressive demeanor and posture while interrogating Mr. & Mrs. Smith.

158.    After interrogating Plaintiffs Mr. & Mrs. Smith for some time Defendant Ms. Malino, MD accused Plaintiff Ms. Smith of having ingested methamphetamine and having passed the deleterious effects of methamphetamine ingestion on to Plaintiff Newborn baby J.A.S.

159.    Plaintiffs Mr. & Mrs. Smith, knowing that Mrs. Smith had never ingested methamphetamine attempted to reason with Defendant Ms. Marlino, MD that there was

1   no reasonable cause to believe that Plaintiff Mrs. Smith had ingested

2   methamphetamine, nor that she had passed the deleterious effects of such a harmful

3   substance on to her newborn baby.

4   160.    Defendant Ms. Marlino, MD stated that the evidence that Plaintiff Mrs. Smith

5   ingested methamphetamine was incontrovertible.

6   161.    Defendant Ms. Marlino, MD stated to Plaintiffs Mr. & Mrs. Smith that Plaintiff Mrs.

7   Smith "got it (methamphetamine) off the street for all she knows."

8   162.    Defendant Ms. Marlino, MD acted in such appalling manner that she was

9   requested to leave Plaintiff Mrs. Smith's postpartum hospital room by the Plaintiffs Mr. &

10  Mrs. Smith four times before she acquiesced.

11  163.    Defendant Ms. Marlino, MD made it clear to Plaintiffs Mr. & Mrs. Smith that she

12  thought that Plaintiff Mrs. Smith was a drug abuser and that she also abused her

13  newborn baby son.

14  164.    Defendant Ms. Marlino, MD made it clear to Plaintiffs Mr. & Mrs. Smith that she

15  would be contacting Children and Youth Services to report Plaintiff Mrs. Smith as a

16  methamphetamine abuser.

17  165.    Plaintiffs Mr. & Mrs. Smith suffered a catastrophic loss of trust in Defendant St.

18  Luke's Hospital as a result of Defendant Ms. Marlino, MD's conduct and

19  communications with them.

20  166.    Plaintiff Mrs. Smith verbally withdrew consent for further treatment for herself and

21  Plaintiff Newborn baby J.A.S. to Defendant Ms. Marlino, MD.

22  167.    Plaintiff Mrs. Smith turned to Plaintiff Mr. Smith to see if he concurred with her

23  judgment.

168.    Plaintiff Mr. Smith agreed with Plaintiff Mrs. Smith and also verbally withdrew consent for further treatment of Plaintiff Newborn baby J.A.S.

169.    Plaintiffs Mr. & Mrs. Smith instructed Defendant Ms. Marlino, MD to begin the appropriate paperwork and procedures to have Plaintiff Newborn baby J.A.S. removed entirely to the care of his parents.

170.    Neither Mr. nor Mrs. Smith acted in a violent nature or forceful manner towards Ms. Marlino, MD or any other hospital staff.

171.    Plaintiffs Mr. & Mrs. Smith were prepared to take Plaintiff Newborn baby J.A.S. to Lehigh Valley Hospital to have his condition evaluated by professional medical staff at another location unaffiliated with Defendant St. Luke's Hospital.

172.    Still, even at this point, Plaintiffs Mr. & Mrs. Smith had not been told by any agent, assign, or employee of Defendant St. Luke's Hospital that Newborn baby J.A.S. had a "life-threatening condition" or that his condition would become life-threatening if the treatments Newborn baby J.A.S. was suffering in the NICU were discontinued.

173.    At no point were Plaintiffs Mr. & Mrs. Smith advised to obtain a second opinion by Defendant St. Luke's Hospital staff, employees, assigns, or agents.

174.    At no point were Plaintiffs Mr. & Mrs. Smith offered the ability to appeal decisions made by Defendant St. Luke's Hospital staff, employees, assigns, or agents.

175.    When Defendant Ms. Marlino, MD left Plaintiff Mrs. Smith's postpartum hospital room Plaintiff Mr. Smith returned immediately to the NICU and informed the nurse at the desk that all consent for care and treatment of Plaintiff Newborn baby J.A.S. had been withdrawn and that she should inform the appropriate staff so that she could begin the discharging process.

1    176.    Plaintiff Mr. Smith then entered Plaintiff Newborn baby J.A.S.'s NICU pod and

2    kissed him on the forehead.

3    177.    Plaintiff Mr. Smith then whispered to Newborn baby J.A.S. that he was going to

4    go get his car seat, but that he would be back soon.

5    178.    Plaintiff Mr. Smith then exited the hospital and pulled his SUV into the

6    semicircular patient pick-up area close to the doors of the hospital entrance.

7    179.    Plaintiff Mr. Smith returned inside the hospital and brought the baby car seat to

8    Plaintiff Grace Smith's postpartum hospital room where Plaintiff Mrs. Smith had

9    collected her belongings.

10   180.    Plaintiffs Mr. & Mrs. Smith placed the belongings onto a wheeled cart and

11   returned to the NICU.

12   181.    When Plaintiffs Mr. & Mrs. Smith returned to the NICU Defendant St. Luke's

13   Hospital had "locked down" the NICU to prevent Plaintiffs Mr. & Mrs. Smith from

14   reuniting with their child Plaintiff Newborn baby J.A.S.; including sealing all doors to

15   everyone but hospital personnel and placing guards at each entrance to the NICU from

16   the NICU lobby/waiting area to prevent Plaintiffs from entering the NICU.

17   182.    When guards were questioned as to why Plaintiffs Mr. & Mrs. Smith were not

18   allowed to pass by the Plaintiffs, no reason was proffered.

19   183.    Two other mothers and many hospital staff were present in the NICU

20   lobby/waiting area where Plaintiffs Mr. & Mrs. Smith sat waiting to be reunited with

21   Newborn baby J.A.S.

22   184.    Approximately twenty minutes later two police officers arrived on the scene by

23   exiting the center elevator into the lobby/waiting area.

1    185.    The two police officers that arrived on the scene were from the Bethlehem

2    Township Police Department, in Northampton County, PA.

3    186.    The two police officers that arrived on the scene were Defendant Officers Andrew

4    Keyock and Thomas A. Smith, both of whom are patrolmen.

5    187.    From the perspective of the Plaintiffs Mr. & Mrs. Smith, Defendant Officer

6    Andrew Keyock was agitated and had a confrontational personality.

7    188.    From the perspective of the Plaintiffs Mr. & Mrs. Smith, Defendant Officer

8    Andrew Keyock had determined that Plaintiff Mr. Smith was a "bad person" before he

9    had consulted with either the Plaintiffs or Defendant St. Luke's Hospital staff.

10    189.    When Defendant Officer Keyock arrived on the scene he burst out of the elevator

11    towards Plaintiff Mr. Smith who was seated directly in front of the elevators

12    approximately twenty feet in from of the elevators and demanded in a loud voice from

13    Mr. Smith to, "know what the problem was here."

14    190.    Plaintiff Mr. Smith plainly echoed Defendant Officer Keyock's sentiment and

15    responded that he too desired to know "what was going on".

16    191.    Defendant Officer Thomas A. Smith moved in a position towards Plaintiff Mrs.

17    Smith in a position between herself and the elevators.

18    192.    Plaintiff Mrs. Smith was in a wheelchair while remaining seated in the NICU

19    lobby/waiting area.

20    193.    From the perspective of the Plaintiffs Mr. & Mrs. Smith, Defendant Officer

21    Andrew Keyock continued to ask Plaintiff Mr. Smith questions in an abrasive manner

22    and close to Plaintiff Mr. Smith's face in an attempt to get a rise of anger out of Mr.

1   Smith, so that Officer Keyock had an immediate excuse to eject him from Defendant St.

2   Luke's Property without having the need to consult Defendant St. Luke's Hospital.

3   194.   Plaintiff Mr. Smith conducted himself in a respectful manner in both form and

4   tone throughout questioning by Defendant Officer Keyock.

5   195.   Defendant Officer Keyock consulted Defendant St. Luke's Hospital employee,

6   assigns, or agents about the current situation with the Plaintiff Smith Family.

7   196.   Plaintiff Mr. Smith finally had an opening in the conversation and properly

8   introduced himself and requested that the as yet unknown responding officer do the

9   same.

10   197.   The unknown officer (Defendant Officer Keyock) responded to Plaintiff Mr. Smith

11   by saying, "I'm the cop! That's all you need to know!"

12   198.   The unknown officer (Defendant Officer Keyock) then audibly scoffed at Plaintiff

13   Mr. Smith.

14   199.   Defendant Officer Keyock then exited the NICU lobby/waiting area into the NICU

15   to speak with Defendant St. Luke's Hospital staff.

16   200.   Defendant Officer Smith remained in the NICU lobby/waiting area next to Plaintiff

17   Mrs. Smith and between her and the elevator doors.

18   201.   Plaintiff Mr. Smith went to use the restroom adjacent to the lobby and Defendant

19   Officer Smith escorted Plaintiff Mr. Smith to and from the restroom without cause.

20   202.   Some minutes later Defendant Officer Keyock returned to the NICU lobby/waiting

21   area.

203.   Defendant Officer Keyock brusquely conveyed to the Plaintiffs Mr. & Mrs. Smith that they must immediately leave Defendant St. Luke's Property or else they would be arrested for defiant trespassing.

204.   Defendant Officer Keyock brusquely conveyed to the Plaintiffs Mr. & Mrs. Smith that there was no way in which she would be able to stay with her newborn child, Plaintiff Newborn baby J.A.S.

205.   Neither Plaintiff Mr. nor Mrs. Smith were allowed to say goodbye to their child suffering in the NICU.

206.   The reason given for the ejection of Plaintiffs Mr. & Mrs. Smith from Defendant St. Luke's Hospital premises was that Mrs. Smith was a methamphetamine addict and that St. Luke's Hospital no longer would tolerate their presence on Defendant St. Luke's Hospital property.

207.   Defendant Mrs. Smith expressed concerns that she was breastfeeding and skin-to-skin contact with her newborn child that were a major concern to both Plaintiffs Mr. & Mrs. Smith.

208.   Defendant Ms. Cynthia M. Shultz, MD was the senior doctor in charge of the NICU on April 9th, 2021.

209.   Plaintiff Mrs. Smith's concerns about breastfeeding and skin-to-skin contact were orally directed towards Defendant Ms. Cynthia M. Shultz, MD.

210.   From the perspective of the Plaintiffs Mr. & Mrs. Smith, Defendant Ms. Cynthia M. Shultz, MD took a condescending attitude towards their concerns and flippantly expressed to Plaintiffs Mr. & Mrs. Smith that Mrs. Smith's concerns "were no concerns of hers."

211.    Defendant Ms. Cynthia M. Shultz, MD asserted to Plaintiffs Mr. & Mrs. Smith that they would be arrested even if the only reason that they returned to Defendant St. Luke's Hospital's property was to pick up Plaintiff Newborn baby J.A.S. to take him home.

212.    Defendant St. Luke's Hospital instructed the Plaintiffs Mr. & Mrs. Smith to contact Northampton County Children and Youth Services.

213.    When Plaintiffs Mr. & Mrs. Smith contacted Northampton County CYS, they were told that because Mr. & Mrs. Smith live in Monroe County and not Northampton County that Plaintiffs would have to contact Monroe County Children and Youth Services.

214.    Plaintiffs Mr. & Mrs. Smith contacted Monroe County CYS and were told that no one would be available to examine the Plaintiffs case until the case was assigned to a caseworker on Monday (it was currently Friday night).

215.    In order to avoid arrest in addition to being separated from their child, Plaintiffs Mr. & Mrs. Smith voluntarily left Defendant St. Luke's Hospital property without their newborn child.

216.    Leaving Defendant St. Luke's Hospital property under armed escort and under threat of arrest while being forced to leave their newborn child in the NICU caused Plaintiffs Mr. & Mrs. Smith devastating mental anguish.

217.    Upon exiting Defendant St. Luke's Hospital, Plaintiffs Mr. & Mrs. Smith were ordered to immediately leave the premises.

218.    Plaintiffs could not immediately leave the premises because Officers Keyock and Smith had each used a police car to block in Plaintiff Smith Family's SUV.

1    219.    Defendant Officers had to be requested to move their police vehicles by Plaintiffs

2    Mr. & Mrs. Smith so that Plaintiffs could exit the property.

3    220.    As Plaintiff Mrs. Smith exited the hospital she began to suffer from a debilitating

4    and devastating anxiety attack.

5    221.    Plaintiffs Mr. & Mrs. Smith proceeded directly home to Tobyhanna in Monroe

6    County, PA.

7    222.    Plaintiffs Mr. & Mrs. Smith arrived home from Defendant St. Luke's Hospital in

8    the early morning hours of Saturday, April 10th, 2021.

9    223.    Plaintiffs Mr. & Mrs. Smith had a great deal of difficulty sleeping because of

10   psychological trauma.

11   224.    Later, on the morning of April 10th, 2021 Plaintiffs Mr. & Mrs. Smith recorded a

12   video that they posted to the internet explaining their situation with Defendant St. Luke's

13   Hospital in an effort to bring attention to the injustices against the Smith Family.

14   225.    A network of family and friends helped to disseminate the Plaintiffs video plea for

15   help.

16   226.    On April 10th, 2021 at approximately 5:45 pm a representative of Defendant St.

17   Luke's Hospital phoned Plaintiff Mrs. Smith to inform Mrs. Smith, that as a result of

18   decisions by the Defendant St. Luke's Hospital's Legal Department, that she was

19   allowed to come back into the hospital to care for her son.

20   227.    The representative of Defendant St. Luke's Hospital informed Plaintiff Mrs. Smith

21   that Plaintiff Mr. Smith would not be allowed to return to Defendant St. Luke's Hospital.

1  228.   The representative of Defendant St. Luke's Hospital informed Plaintiff Mrs. Smith

2  the reason that she was allowed to return to Defendant St. Luke's Hospital was because

3  "she was not the problem".

4  229.   Plaintiffs Mr. & Mrs. Smith were confused as to a rationale that strongly implied

5  that Mr. Smith was the cause of the Plaintiffs ejection from Defendant St. Luke's

6  Hospital the previous night when it was made clear to the Plaintiffs that the reason that

7  they were being ejected from Defendant St. Luke's Hospital property was because

8  Defendant St. Luke's Hospital would no longer tolerate the presence of a

9  methamphetamine addict and child abuser such as Plaintiff Mrs. Smith.

10  230.   At approximately 7:10 pm Plaintiff Mrs. Smith was allowed to return to Defendant

11  St. Luke's Hospital property.

12  231.   At no time did Defendant St. Luke's Hospital rescind the no trespass order with

13  the Bethlehem Township Police Department with respect to Plaintiff Mrs. Smith.

14  232.   Upon arrival, the entrance to the Women and Children's Pavilion was locked, and

15  the entrance lights were turned off.

16  233.   Plaintiff Mrs. Smith has a longstanding knee injury for which she daily wears a

17  knee brace.

18  234.   Postpartum Plaintiff Mrs. Smith was assisted by her parents to the main entrance

19  of Defendant St. Luke's Hospital and then had to walk that same distance back

20  internally inside the hospital to reach the receptionist desk on the second floor.

21  235.   No wheelchairs were located at the main entrance, nor in the Women and

22  Children's Pavilion of Defendant St. Luke's Hospital.

1    236.   The same receptionist that initially improperly checked in Plaintiff Mrs. Smith on

2    April 8th, 2021 was working when Mrs. Smith approached the receptionist desk with her

3    parent's assistance.

4    237.   Plaintiff Mrs. Smith stated to the receptionist through her mask that she was,

5    "Julian's Mom."

6    238.   The receptionist, without asking for identification or any other relevant questions,

7    picked up a phone near to her and stated into it, "Julian's Mom is here. Yeah, she's in

8    the lobby."

9    239.   After several minutes a male guard escorted Plaintiff Mrs. Smith through the

10   double doors of the NICU to Plaintiff Newborn baby J.A.S.'s NICU pod.

11   240.   Plaintiff Mrs. Smith noticed that Plaintiff Newborn baby J.A.S.'s NICU pod had a

12   number written on the outside of his pod, as opposed to a printed version of his name

13   being outside of his NICU pod, which would have been in-kind with the NICU pods

14   surrounding his own.

15   241.   Between when Plaintiff Mrs. Smith was initially contacted by Defendant St.

16   Luke's Hospital earlier in the evening and when she actually arrived at the hospital, the

17   nurses shifts had changed.

18   242.   Late into the seven o'clock hour Plaintiff Mrs. Smith's parents waited for her in

19   the lobby because it was not known yet whether or not Mrs. Smith would be allowed to

20   remain over night with Plaintiff Newborn baby J.A.S.

21   243.   The current nurse on duty in the NICU was unsure if Plaintiff Mrs. Smith would be

22   allowed to remain the night with Plaintiff Newborn baby J.A.S. in the NICU, and the

23   nurse sought out such knowledge from a superior.

244.    Some time thereafter it was affirmed to Plaintiff Mrs. Smith that she may remain the night with her newborn son.

245.    At approximately 7:51 pm Plaintiff Mrs. Smith phoned her parents who were waiting in the NICU lobby/waiting area and informed them that she would be staying and that they could leave the hospital.

246.    Defendant male security guards were placed around the clock outside of Plaintiff Newborn baby J.A.S.'s NICU pod to constantly observe the behavior of Plaintiff Mrs. Smith.

247.    The pillow and blanket that Plaintiff Mrs. Smith used the day before when she was a patient were left behind and Plaintiff Mrs. Smith was able to use them.

248.    On the night of April 10th-11th, postpartum and disabled Plaintiff Mrs. Smith uncomfortably slept in an upright chair.

249.    Plaintiff Mrs. Smith observed more wires attached to Plaintiff Newborn baby J.A.S. than when Mrs. Smith had last observed Newborn baby J.A.S. on April 9th, 2021.

250.    On the night of April 10th-11th, whenever Newborn baby J.A.S. needed to breastfeed, postpartum and disabled Plaintiff Mrs. Smith would have to get up out of an upright chair unaided, with a disabled knee, untangle and reorganize roughly half a dozen cords and his breathing tube, and then extend all of that with enough slack merely so she could feed Newborn baby J.A.S.

251.    Whenever Newborn baby J.A.S.'s oxygen level would dip below ninety an alarm would beep loudly.

252.    If the alarm associated with Plaintiff Newborn baby J.A.S.'s oxygen level lasted for approximately twenty to thirty seconds a nurse would attend to Newborn baby J.A.S. and remedy the alarm.

253.    Plaintiff Mrs. Smith observed that when Plaintiff Newborn baby J.A.S.'s oxygen levels triggered the attendant alarm it was due to a cord or medical attachment to Newborn baby J.A.S. slipping into a wrong position.

254.    Plaintiff Mrs. Smith observed that roughly half of the time that Plaintiff Newborn baby J.A.S.'s oxygen levels triggered the attendant alarm it was able to be remedied by a NICU nurse making a slight tilt of Newborn baby J.A.S.'s head or neck.

255.    At all times Plaintiff Newborn baby J.A.S.'s pod had curtains in the front of the pod instead of a door.

256.    In order to observe Plaintiff Mrs. Smith by male guards, nurses, and other hospital staff and personnel the curtains to Newborn baby J.A.S.'s NICU pod were always kept partially open.

257.    Plaintiff Mrs. Smith was often observed by St. Luke's Hospital employees, assigns, or agents through glass walls that surrounded Newborn baby J.A.S.'s NICU pod.

258.    Plaintiff Mrs. Smith was not allowed privacy at any time to breastfeed or to have skin-to-skin contact with Plaintiff Newborn baby J.A.S.

259.    Both to and from the restroom Plaintiff Mrs. Smith was observed by male hospital guards each time she visited the facilities.

260.    The Defendant male guard frequently and without cause would peek into Newborn baby J.A.S.'s NICU pod.

1    261.    The presence of the Defendant male guard intimidated an already traumatized

2    Plaintiff Mrs. Smith.

3    262.    No accommodations were ever offered to Plaintiff Mrs. Smith as a postpartum

4    mother by any Defendant St. Luke's Hospital agent, employee, or assign.

5    263.    No accommodations were ever offered to Plaintiff Mrs. Smith as an observably

6    disabled woman by any Defendant St. Luke's Hospital agent, employee, or assign.

7    264.    On the morning of Sunday, April 11th, 2021 a new Defendant male security guard

8    was placed outside of Plaintiff Newborn baby J.A.S.'s NICU pod to observe the behavior

9    of Plaintiff Mrs. Smith.

10   265.    Plaintiff Mrs. Smith began to suspect that the reason that she was under such

11   close observation and scrutiny was that Defendant St. Luke's Hospital suspected that

12   Plaintiff Mrs. Smith would attempt to consume methamphetamine on Defendant St.

13   Luke's Hospital property.

14   266.    Plaintiff Mrs. Smith, in repeated acts of humiliation, felt compelled to make it clear

15   to male security guards that when she was going to the restroom, she was changing

16   padding between her legs to attend to postpartum bleeding.

17   267.    Plaintiff Mrs. Smith suffered constant nervousness and anxiety from being under

18   constant scrutiny by Defendant St. Luke's Hospital employees, agents, or assigns,

19   down to feeling compelled to explain personal postpartum bodily functions to male

20   security guards.

21   268.    At approximately 6:30 am on April 11th, 2021 the attending NICU nurse informed

22   Plaintiff Mrs. Smith that Newborn baby J.A.S. should be able to have his oxygen tubes

23   removed on that day.

269.    Plaintiff Mrs. Smith requested to know how long it would be before Newborn baby J.A.S. would be able to return home.

270.    The attending NICU nurse informed Plaintiff Mrs. Smith that Newborn baby J.A.S., "…needs to be stable off the air for twelve hours."

271.    At approximately 9:50 am Plaintiff Newborn baby J.A.S. had his oxygen tube removed and his antibiotic IV removed.

272.    The attending NICU nurse informed Plaintiff Mrs. Smith about Newborn baby J.A.S., that, "We would like to watch him for twenty-four hours after taking them off the air."

273.    From the perspective of Plaintiff Mrs. Smith, now every time she heard the alarm for Newborn baby J.A.S.'s oxygen dip even slightly, that sound would trigger intense anxiety.

274.    Plaintiff Mrs. Smith was also informed of two new factual requirements before Defendant St. Luke's Hospital would consider discharging Plaintiff newborn baby J.A.S.: (1) Plaintiff Smith Family would have to be cleared for discharge by Children and Youth Services; and, (2) Plaintiff Newborn baby J.A.S. would have to have a follow-up appointment scheduled with a pediatrician, which should take place no later than Wednesday, April 14th, 2021.

275.    Since it was Sunday, April 11th, 2021, and Children and Youth Services would not attend to the Smith Family Case until Monday, April 12th, 2021, and because it was a Sunday and it was not possible to schedule a follow-up appointment on a Sunday because pediatrician's offices are closed, and because an additional arbitrary twelve hours to observe Plaintiff Newborn baby J.A.S. was rendered, it became evident to

1   Plaintiffs Mr. & Mrs. Smith that it would be impossible to return home that day with

2   Newborn baby J.A.S.

3   276.   As it was approaching noon Plaintiff Mrs. Smith realized that she had not eaten

4   since arriving at the Defendant St. Luke's Hospital the previous day.

5   277.   Defendant St. Luke's Hospital never offered postpartum and disabled Plaintiff

6   Mrs. Smith any food or drink while she attended Newborn baby J.A.S. in the NICU.

7   278.   When Plaintiff Mrs. Smith informed the guard watching her that she was going to

8   the cafeteria the guard escorted her there.

9   279.   A postpartum mother with a disabled knee hobbled a considerable distance at a

10   pace set by the guard that was too fast for her to the cafeteria without being offered a

11   wheelchair.

12   280.   After reaching the cafeteria the guard went on his way elsewhere.

13   281.   Plaintiff Mrs. Smith ordered food and sat down at a table to eat.

14   282.   Plaintiff Mrs. Smith found it difficult to eat because of all of the stress and anxiety

15   she was suffering under given the present situation.

16   283.   Plaintiff Mrs. Smith contacted her parents and emotionally unloaded on them for

17   some time.

18   284.   Plaintiff Mrs. Smith was in the cafeteria for approximately forty-five minutes.

19   285.   Plaintiff Mrs. Smith packed extra food into her purse for both dinner and

20   breakfast the next morning because being away from Newborn baby J.A.S., even within

21   the same building, and only for a short time, was having a debilitating effect on Mrs.

22   Smith's psyche.

286.   Plaintiff Mrs. Smith slowly made her way back to Plaintiff Newborn baby J.A.S.'s NICU pod.

287.   Upon returning to the NICU Plaintiff Mrs. Smith was rounding a corner to the nurse's station when she overheard a guard telling a nurse that was not related to Newborn baby J.A.S.'s care or treatment, "…I'm not sure. I walked her down to the cafeteria about an hour ago. Oh, here she is."

288.   From the Plaintiff's perspective Mrs. Smith observed that she was the subject of general conversation within Defendant St. Luke's Hospital regardless of their affiliation with Newborn baby J.A.S. or Mrs. Smith.

289.   At approximately noon on April 11th, 2021 a Defendant St. Luke's Hospital social worker "Vanessa" visited Plaintiff Mrs. Smith at Plaintiff Newborn baby J.A.S.'s NICU pod.

290.   The Defendant St. Luke's Hospital Social Worker "Vanessa" spoke to Plaintiff Mrs. Smith and conveyed a vague apology to Plaintiff Mrs. Smith for the actions of the Defendant St. Luke's Hospital.

291.   The Defendant St. Luke's Hospital Social Worker "Vanessa" also conveyed to Plaintiff Mrs. Smith that a second Children and Youth Services report was made based on the "incident" that took place on the evening of April 9th, 2021.

292.   Because of the communications of the Defendant St. Luke's Hospital Social Worker "Vanessa", Plaintiff Mrs. Smith was made aware for the first time that a second report had been made to CYS without the knowledge of the Plaintiff Smith Family.

293.   The Defendant St. Luke's Hospital Social Worker "Vanessa" also conveyed that the Defendant St. Luke's Hospital and its employees, agents, and/or assigns were

1  following Defendant St. Luke's Hospital policy concerning how the "incident" played out

2  on the evening of April 9th, 2021.

3  294.    The Defendant St. Luke's Hospital Social Worker "Vanessa" also conveyed that

4  the Defendant St. Luke's Hospital and its employees, agents, and/or assigns were

5  following Pennsylvania State Law concerning how the "incident" played out on the

6  evening of April 9th, 2021.

7  295.    The Defendant St. Luke's Hospital Social Worker "Vanessa" never conveyed

8  which policies and procedures that Defendant St. Luke's Hospital was adhering to

9  concerning its treatment of the Plaintiff Smith Family.

10  296.    The Defendant St. Luke's Hospital Social Worker "Vanessa" never conveyed

11  which laws that Defendant St. Luke's Hospital was adhering to concerning its treatment

12  of the Plaintiff Smith Family.

13  297.    The Defendant St. Luke's Hospital Social Worker "Vanessa" also attempted to

14  convince Plaintiff Mrs. Smith that she still had custody of Plaintiff Newborn baby J.A.S.

15  despite the fact that Plaintiff Mrs. Smith did not have the ability to have control of

16  Newborn baby J.A.S.'s medical decisions, nor the right to terminate consent for

17  treatment as Plaintiff Mrs. Smith had unequivocally done two days before.

18  298.    The Defendant St. Luke's Hospital Social Worker "Vanessa" also conveyed that

19  she had "been in touch with CYS" but that no one was available to handle this case

20  because it was the weekend.

21  299.    The Defendant St. Luke's Hospital Social Worker "Vanessa" repeatedly asked

22  Plaintiff Mrs. Smith throughout their conversation if Mrs. Smith "had custody of her other

23  children."

300.    On the afternoon of April 11th, 2021, Plaintiff Mrs. Smith's septuagenarian parents arrived at Defendant St. Luke's Hospital and respectfully requested to speak with the hospital administrator on duty that day to discuss the separation of their children from their grandchildren.

301.    The Defendant St. Luke's Hospital's response to Plaintiff Mrs. Smith septuagenarian parent's request to speak with the current hospital administrator was met with an order to immediate vacate the property or else Plaintiff Mrs. Smith's parents would be arrested by the local police under a no trespass order.

302.    At all times to Plaintiff Mrs. Smith septuagenarian parents were kind and respectful to Defendant St. Luke's Hospital employees, agents, and assigns.

303.    Throughout the course of the afternoon and evening of April 11th, multiple tests were performed on Plaintiff Newborn baby J.A.S. against the will and consent of Plaintiffs Mr. & Mrs. Smith.

304.    On the morning of Monday, April 12th, 2021, against the will and consent of Plaintiffs Mr. & Mrs. Smith, another bilirubin test was performed on Plaintiff Newborn baby J.AS. by the employees, agents, or assigns of Defendant St. Luke's Hospital.

305.    Plaintiff Mrs. Smith was informed by a representative of Defendant St. Luke's Hospital that Plaintiff Newborn baby J.A.S. would not be able to be discharged until the results of the bilirubin test came back from the lab.

306.    Defendant Ms. Patricia Bates, CRNP, while acting on behalf of her employer(s) acted as and employee, agent, or assign of Defendant St. Luke's Hospital lulled a vulnerable Plaintiff Mrs. Smith into a conversation that enticed Mrs. Smith to express her feelings about herself.

307.   Plaintiff Mrs. Smith was under the impression that Defendant Ms. Bates, CRNP was attempting to sympathize with her when Plaintiff Mrs. Smith confessed the depths of her misery to Defendant Ms. Patricia Bates, CRNP.

308.   At the conclusion of Plaintiff Mrs. Smith's expressions of her misery and anxieties, Defendant Ms. Patricia Bates, CRNP stated to Plaintiff Mrs. Smith, "I don't care if you were the preacher's daughter, we're required to report it by law."

309.   From the perspective of Plaintiff Mrs. Smith, she felt that she was being called inherently immoral because she did not represent the apparent moral paragon of a "preacher's daughter".

310.   From the perspective of Plaintiff Mrs. Smith, she thought that the intent behind Defendant Ms. Patricia Bates, CRNP's words were that there did not exist any room within existing Pennsylvania Law for the Defendant St. Luke's Hospital to deviate from any policy for affirmatively contacting state children and youth services if a postpartum mother tests positive for amphetamines at Defendant St. Luke's Hospital.

311.   At approximately 10:30 am on April 12th, 2021 a representative of Defendant Monroe County Children & Youth Services, Mr. Tim Shaw arrived at Defendant St. Luke's Hospital and interviewed Plaintiff Mrs. Smith.

312.   Defendant Mr. Tim Shaw took pictures of Mrs. Smith's ID, prescription pill bottles, and prescription marijuana card.

313.   Defendant Mr. Tim Shaw personally escorted Plaintiff Mrs. Smith to and from a restroom to collect a urine sample to test for illegal drugs.

314.   Defendant Mr. Tim Shaw, on the way to the restroom to collect the urine sample from Plaintiff Mrs. Smith inquired of Mrs. Smith, "Has the security guard been there all weekend?"

315.   Plaintiff Mrs. Smith responded to Defendant Mr. Shaw's inquiry.

316.   Defendant Mr. Tim Shaw then represented to Plaintiff Mrs. Smith, "I've never seen anything like that. We [CYS] told them [Defendant St. Luke's Hospital] on the 10th [April 10th, 2021] that you were ok to be alone there with the baby."

317.   When Defendant Mr. Shaw exited Newborn baby J.A.S.'s NICU pod after having a confidential conversation with Plaintiff Mrs. Smith, he pulled back the curtains to find the Defendant St. Luke's Hospital social worker immediately on the other side of the curtain eavesdropping on the conversation between Plaintiff Mrs. Smith and Defendant Mr. Shaw.

318.   Simultaneously, at approximately 10:30 am on April 12th, 2021 a representative of Defendant Monroe County Children & Youth Services, Mr. Jorge Manteria arrived at Plaintiffs Mr. & Mrs. Smith's personal residence and interviewed Plaintiff Mr. Smith.

319.   Upon arrival to the Plaintiff Smith residence, Defendant Mr. Jorge Manteria was literally shaking with fear at the thought of approaching Plaintiff Mr. Smith.

320.   At all times in the presence of Defendant Mr. Jorge Manteria, Plaintiff Mr. Smith was kind to Mr. Manteria and maintained the demeanor of a reasonable and friendly person.

321.   Because of the welcoming demeanor of Plaintiff Mr. Smith, Defendant Mr. Manteria calmed down and literally stopped shaking.

1   322.   Soon thereafter, Defendant Mr. Manteria became open and friendly with Plaintiff

2   Mr. Smith.

3   323.   Defendant Mr. Manteria represented to Plaintiff Mr. Smith that a second report to

4   Monroe County Children & Youth Services had been made by Defendant St. Luke's

5   Hospital about Mr. Smith, portraying him as "aggressive" and "violent".

6   324.   Defendant Mr. Manteria specifically instructed Plaintiff Mr. Smith that even

7   though his supervisor Defendant Mr. Tim Shaw wanted Defendant Mr. Manteria to

8   obtain a urine sample from Plaintiff Mr. Smith for illegal drug testing, Mr. Manteria

9   specifically advised Plaintiff Mr. Smith to not do so.

10   325.   Plaintiff Mr. Smith heeded the advice of Defendant Mr. Manteria and did not

11   submit urine for an illegal drug test.

12   326.   Defendant Mr. Manteria left the Smith Family household with a positive image of

13   the Smith Family which was contradictory to the reports of Plaintiff Mr. Smith being of an

14   "aggressive" and "violent" nature.

15   327.   Regardless of the nature of the interview Plaintiff Mr. Smith was forced to testify

16   against his consent and better judgement about personal family matters to Defendant

17   Mr. Jorge Manteria.

18   328.   Defendant Mr. Jorge Manteria also made it clear to Plaintiff Mr. Smith that his

19   superior Mr. Tim Shaw required Plaintiff Mr. Smith sign particular paperwork relating to

20   the case regarding giving consent or a lack thereof concerning a range of issues in the

21   instant situation.

329.    Soon after Defendant Mr. Jorge Manteria left the Plaintiff Smith Family

Residence Plaintiff Mrs. Smith contacted Plaintiff Mr. Smith and they exchanged their

experiences.

330.    When exiting Plaintiff Newborn baby J.A.S.'s NICU pod after speaking with

Plaintiff Mr. Smith on the phone, Plaintiff Mrs. Smith immediately noticed that the male

guard and Defendant St. Luke's Hospital social worker had left the vicinity.

331.    Shortly thereafter Plaintiff Newborn baby J.A.S. was approved for discharge by

Defendant St. Luke's Hospital.

332.    After Plaintiff Newborn baby J.A.S. was approved for discharge a "printer issue"

developed and it apparently became impossible to print out the appropriate discharge

paperwork for Plaintiff Newborn baby J.A.S.

333.    The "printer issues" went on for approximately over an hour.

334.    Eventually, a nurse printed Plaintiff Newborn baby J.A.S.'s on the back of a sheet

of stickers.

335.    Plaintiff Mrs. Smith was made aware that Plaintiff Newborn baby J.A.S. still would

not be discharged until Plaintiff Mrs. Smith signed a document stating that her hospital

bracelet matched the bracelet worn by Plaintiff Newborn baby J.A.S.

336.    Plaintiff Mrs. Smith did not have a bracelet on because she removed it when she

arrived home on the night of April 10th, 2021, and Defendant St. Luke's Hospital did not

ever provide her with a replacement.

337.    Plaintiff Newborn baby J.A.S. did not have a bracelet on for an unknown reason.

1  338.    Plaintiff Mrs. Smith signed the paper insisting that the bracelets match because

2  Defendant St. Luke's Hospital would not return Plaintiff Newborn baby J.A.S. to Plaintiff

3  Mrs. Smith unless Mrs. Smith signed the paperwork.

4  339.    Postpartum and disabled Plaintiff Mrs. Smith was not offered a wheelchair when

5  exiting the Defendant St. Luke's Hospital.

6  340.    Plaintiff Mrs. Smith was forced to request assistance from Defendant St. Luke's

7  Hospital Staff to carry belongings with her to the exit.

8  341.    Plaintiff Mrs. Smith was told that Defendant St. Luke's Hospital would not provide

9  her with either a cart to assist with her baby and his belongings, or a wheelchair to

10  assist a disabled postpartum woman.

11  342.    Plaintiff Mrs. Smith would have preferred to have had assistance from her

12  parents when exiting Defendant St. Luke's Hospital.

13  343.    Plaintiff Mrs. Smith parents were not allowed to visit Defendant St. Luke's

14  Property under threat of arrest, but chose to risk arrest in order to pick up Mrs. Smith

15  and their grandchild Newborn baby J.A.S.

16  344.    Plaintiff Mrs. Smith successfully exited Defendant St. Luke's Hospital without

17  further molestation by the Defendants on the afternoon of April 12th, 2021.

18  345.    Injuries related to Newborn baby J.A.S. as a result of the abuse he suffered at

19  the hands of the Defendant St. Luke's Hospital and its employees, agents, and assigns

20  did not cease upon his exit from the Defendant hospital St. Luke's Hospital.

21  346.    Over the course of the next few weeks Plaintiff Newborn baby J.A.S. developed

22  the potentially fatal condition of pyloric stenosis.

347.   Plaintiff Newborn baby J.A.S. nearly died from dehydration resulting from pyloric stenosis.

348.   Plaintiff Newborn baby J.A.S. did not develop pyloric stenosis as a result of genetic predisposition.

349.   No males in the Smith family history have ever had the condition of pyloric stenosis prior to Plaintiff Newborn baby J.A.S.

350.   Upon information and belief, Plaintiff Newborn baby J.A.S. developed the condition of pyloric stenosis from the unnecessary antibiotics administered to Plaintiff Newborn baby J.A.S. by Defendant St. Luke's Hospital and its employees, agents, and assigns.

351.   Surgery was required to correct the condition of pyloric stenosis.

352.   The surgery to correct the condition of pyloric stenosis was successfully performed at Lehigh Valley Hospital.

## II.   Facts II:  Additional Necessary Points of Fact

353.   Plaintiff Mrs. Smith has not ever ingested methamphetamine.

354.   Plaintiff Mrs. Smith has a long and well-documented history of ADHD.

355.   ADHD is a recognized disability.

356.   Vyvanse is a valid prescription for the treatment of ADHD.

357.   Vyvanse is a prescription amphetamine.

358.   Amphetamines and methamphetamine are chemically distinct substances from one another.

359.   Amphetamines and methamphetamine are chemically similar substances which require sensitive testing to distinguish the difference between the two.

1  360.   Testing positive for an amphetamine/methamphetamine combined test is not the

2  same as a test that distinguishes between legal amphetamines and illegal

3  methamphetamine.

4  361.   Plaintiff Newborn baby J.A.S. did not demonstrate any signs or symptoms of

5  methamphetamine withdrawal.

6  362.   Plaintiff Mrs. Smith did not demonstrate any signs or symptoms of

7  methamphetamine withdrawal.

8  363.   No court order was ever obtained by any defendant party to remove Plaintiff

9  Newborn baby J.A.S. from the custody of his Plaintiff parents Mr. & Mrs. Smith.

10  364.   The company that knowingly committed to a test that did not differentiate

11  between legal amphetamines and illegal methamphetamines is Defendant Anderson

12  Labs.

13  365.   The time between Plaintiff Mrs. Smith being denied access to Plaintiff Newborn

14  baby J.A.S. exceeded twenty-four hours (approx. 7pm on April 9th, 2021 until approx.

15  10pm on April 10th, 2021).

16  366.   In general, because of the cumulative actions of all of the Defendants, Plaintiff

17  Mrs. Smith was constantly made miserable by physical and mental discomforts and

18  anguish suffered both through a lack of kindness and any reasonable accommodations

19  for her comfort after she returned to Plaintiff Newborn baby J.A.S.'s NICU pod.

20  367.   Plaintiff Mrs. Smith did not voluntarily discharge herself from the hospital, but was

21  forced off of St. Luke's Hospital's property under armed police escort.

22  368.   Plaintiff Mr. Smith was not ever allowed to return to Plaintiff St. Luke's Hospital

23  property to be with his newborn child—Plaintiff Newborn baby J.A.S.

369.    There is still currently (as of the date of initial filing) a no trespass order in effect from Defendant St. Luke's Hospital against Plaintiffs Mr. & Mrs. Smith.

370.    There is still currently (as of the date of initial filing) a no trespass order in effect from Defendant St. Luke's Hospital against Plaintiffs Mrs. Smith's parents.

371.    No defendant at any time explained the rationale for ejecting Plaintiffs Mr. & Mrs. Smith from Defendant St. Luke's Hospital on the night of April 9th, 2021 to Plaintiffs Mr.& Mrs. Smith.

372.    No defendant at any time explained to Plaintiffs Mr. & Mrs. Smith their Miranda Rights, including rights to counsel and against self-incrimination.

373.    At no time was a legally mandated conference held between Plaintiffs Mr. & Mrs. Smith by any defendant party to explain why Plaintiffs Mr. & Mrs. Smith were separated from Plaintiff Newborn baby J.A.S.

374.    At no time was a state-mandated written notice of the rationale for the detention of Plaintiff Newborn baby J.A.S. to either of his parent Plaintiffs Mr. or Ms. Smith by any Defendant Party.

375.    Upon being allowed by Defendant St. Luke's Hospital to reunite with Plaintiff Newborn baby J.A.S. on the night of April 10th, Plaintiff Mrs. Smith was not allowed to have a support person present with her in Newborn baby J.A.S.'s NICU pod at any time.

376.    Despite assertions by St. Luke's Hospital, its employees, assigns, agents, and affiliates that Plaintiff Mrs. Smith ingested illegal methamphetamine, the deleterious effects of which were supposedly passed along to Plaintiff Newborn baby J.A.S., neither Defendant St. Luke's Hospital, nor and other defendant implemented state mandated procedures for the treatment of methamphetamine withdrawal in newborn babies.

377.   At no time did Defendant St. Luke's Hospital, its employees, assigns, agents, nor any of its affiliates request that Plaintiff Mr. Smith submit to a urine drug screen.

378.   At no time did Defendant St. Luke's Hospital, its employees, assigns, agents, nor any of its affiliates offer a process by where their decision to separate the Plaintiff Smith Family from one another could be appealed.

379.   At no time did Defendant St. Luke's Hospital, its employees, assigns, agents, nor any of its affiliates offer a state-mandated "manual of rights" to the Plaintiffs.

380.   At no time did Defendant St. Luke's Hospital, its employees, assigns, agents, nor any of its affiliates request to personally hear Plaintiff Mr. & Mrs. Smith's version of events after Ms. Teresa Marlino, MD accused Plaintiff Mrs. Smith of methamphetamine ingestion.

381.   Plaintiffs Mr. & Mrs. Smith specifically requested from Defendant St. Luke's Hospital and its agent, employees, or assigns to not apply ophthalmic solution to Plaintiff Newborn baby J.A.S.'s eyes.

382.   Plaintiffs Mr. & Mrs. Smith request to not apply ophthalmic solution to Plaintiff Newborn baby J.A.S.'s eyes was denied by Defendant St. Luke's Hospital and its agents, employees, or assigns.

383.   Plaintiff Mr. Smith has a strong allergic reaction on penicillin and its derivatives such as erythromycin.

384.   No Defendant party ever requested that Plaintiff Mr. Smith submit to a drug test of any type.

385.    Because of concerns of an allergic reaction in Plaintiff Newborn baby J.A.S.,

Plaintiffs Mr. & Mrs. Smith requested that an ophthalmic solution other than

erythromycin be applied to Plaintiff Newborn baby J.A.S.

386.    Plaintiffs Mr. & Mrs. Smith request for an ophthalmic solution other than

erythromycin to be applied to Plaintiff Newborn baby J.A.S. was denied without good

cause by Defendant St. Luke's Hospital and its agents, employees, and/or assigns.

387.    Erythromycin ophthalmic solution was applied to Plaintiff Newborn baby J.A.S.

against the will and consent of his Plaintiff parents Mr. & Mrs. Smith.

388.    Despite multiple requests, including through Plaintiff Smith Family's attorney, the

results of the urinary drug screen through Monroe County Children and Youth Services

that were collected from Plaintiff Mrs. Smith in Defendant St. Luke's Hospital were not

ever revealed to the Plaintiffs Mr. & Mrs. Smith.

389.    Monroe County Children and Youth Services on ended its investigation into the

Plaintiff Smith Family only after Plaintiff Mrs. Smith submitted herself to a hair follicle

test at her own expense and tested negative for methamphetamine.

390.    Not one person, not a single Defendant St. Luke's Hospital employee, agent,

assign, nor affiliate, not a single police officer, nor any employee of any state children

and youth agency, objected to the heinous treatment of Plaintiff Mrs. Smith as being

labeled someone who would abuse her newborn child through in-utero exposure to

methamphetamine; nor did anyone object to the traumatizing act of splitting up of the

Plaintiff Smith Family—not one person.

# Legal Counts—Violations of U.S. Constitution & §1983 Claims

## I.   First Amendment

### *Right to be Free from Compelled Speech*

Mrs. Grace Smith v. St. Luke's Hospital, Onsite Neonatal, Ms. Kimberly A. Butz, RN, Ms. Patricia Bates, CRNP, & Ms. Dawn Hoffman

391.    The First Amendment of the United States Constitution protects certain rights of speech, including, but not limited to, the right to be free from compelled speech.[1]

392.    Having already demonstrated that Defendants St. Luke's Hospital and Onsite Neonatal would separate a mother without cause from her newborn child, as indeed that is exactly what happened on Friday April 9th, 2021, and, as Plaintiff Mrs. Smith was traumatized by the intentional actions of St. Luke's Hospital and its agents, employees, and/or assigns aggressive actions, who forced Mrs. Smith under an armed police escort off of St. Luke's Hospital property under threat of arrest; Plaintiff Mrs. Smith realized she

---

[1] "When speech is compelled…additional damage is done. In that situation, individuals are coerced into betraying their convictions." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2464 (2018).

1    was not in any position, at any time, to contradict the Defendant St. Luke's Hospital, its

2    agents, employees, or assigns.[2]

3    393.    Under information and belief, Defendant St. Luke's Hospital placed a guard

4    outside of Newborn baby J.A.S.'s NICU unit who had open visual access to a

5    breastfeeding mother without regard to Plaintiff Mrs. Smith's dignity or privacy, leading

6    Plaintiff Mrs. Smith to further understand that she was not in any position to contradict

7    the Defendant St. Luke's Hospital, its agents, employees, or assigns.

8    394.    Although Plaintiff Mrs. Smith understood that she may have appeared to have

9    rights to consent to Newborn baby J.A.S.'s care and treatment, in fact, Plaintiff Mrs.

10   Smith's speech was compelled because the Defendant St. Luke's Hospital made it clear

11   that there were not any circumstances under which she could object to anything being

12   given or done to Newborn baby J.A.S.

13   395.    Plaintiff Mrs. Smith was told in no uncertain terms by Defendants Ms. Kimberly

14   A. Butz, RN, and Ms. Patricia Bates, CRNP, and either at the behest of or indirectly

15   assented to by Defendant St. Luke's Hospital Administrator Ms. Dawn Hoffman, that

16   despite records not reflecting the truth of the situation, Plaintiff Mrs. Smith would not be

---

[2]In [the] Restatement, Contracts, § 493, it is stated in subsection (e) that duress may be exercised by "any other wrongful acts that compel a person to manifest apparent assent to a transaction without his volition or cause such fear as to preclude him from exercising free will and judgment in entering into a transaction." *Tri-State Roofing Co. of U. v. Simon*, 187 Pa. Super. 17, 19 (Pa. Super. Ct. 1958).

permitted to take Newborn baby J.A.S. home until Plaintiff Mrs. Smith endorsed paper

work which she found questionable, false, or could not morally consent to.

396.    Defendants St. Luke's Hospital and Onsite Neonatal's actions violated Plaintiff

Mrs. Smith's right to contract and consent freely, which are acts of compelled speech.

397.    Upon information and belief, Defendants St. Luke's Hospital and Onsite

Neonatal, by virtue of custom, pattern, practice, policy, and/or failure to appropriately

train, supervise and/or discipline, authorizes its agents, employees, and/or assigns to

act in an unconstitutional manner by threatening postpartum women with adverse

consequences unless they fully comply with all assertions or statements made in the

record by St. Luke's Hospital and/or Onsite Neonatal, regardless of whether the mother

thinks such action is best for her newborn child, or herself, or contests the validity of any

paperwork.

398.    Such compelled action violates the First Amendment to the United States

Constitution by compelling speech from Plaintiff Mrs. Smith in an affirmative manner,

regardless of her desire to affirm or contest a matter.

399.    Furthermore, an undifferentiated drug test which does not conclusively

demonstrate a mother to be an illegal methamphetamine user, while it is apparent that

neither the newborn child nor the mother does not exhibit any signs or symptoms of

methamphetamine withdrawal, are not good faith grounds to compel speech in violation

of the First Amendment of the United States Constitution.

400.    Upon information and belief, Defendants Ms. Kimberly A. Butz, RN, Ms. Patricia

Bates, CRNP and Ms. Dawn Hoffman, by virtue of following a custom, pattern, practice,

policy, and/or failure to appropriately train, supervise and/or discipline, did themselves

1   act in an unconstitutional manner by threatening a postpartum woman with unthinkably

2   adverse consequences unless she fully complied with everything Defendants Ms.

3   Kimberly A. Butz, RN, Ms. Patricia Bates, CRNP and Ms. Dawn Hoffman asserted,

4   regardless of whether the mother thought such action was best for her newborn child, or

5   herself, or if she contested the validity of any paperwork; such action violates the First

6   Amendment to the United States Constitution by compelling speech from Mrs. Smith in

7   an affirmative manner, regardless of her desire to affirm or contest a matter.

8   401.   Upon information and belief, Plaintiff can demonstrate by a preponderance of

9   evidence that each of the Defendants conspired with at least one Defendant State Actor

10   elsewhere listed in this complaint.

11   402.   The conspiracy between the Defendant parties and their agents, employees, or

12   assigns violates *42 U.S.C. § 1983*.

13   403.   Upon information and belief, the Plaintiff Mrs. Smith can demonstrate by a

14   preponderance of evidence that the Defendant Private Entities St. Luke's Hospital and

15   Onsite Neonatal supervised one or more people in connection with this allegation and

16   are therefore liable under *Monell* legal theory imputing actions of a subordinate to their

17   employer, assignor, or individuals given agency by Defendants.

18   404.   Defendants St. Luke's Hospital and Onsite Neonatal, through the actions of its

19   agents, employees, or assigns, violated Plaintiff's rights under the First Amendment to

20   the United States Constitution.

21   405.   Plaintiff Mrs. Smith asserts this claim pursuant to *42 U.S.C. § 1983*.

22   406.   Plaintiff Mrs. Smith has suffered substantial harm as a result of Defendants'

23   conduct, including but not limited to, emotional and psychological distress, pain and

1   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

2   appropriate compensatory damages to account for PTSD therapies and other related

3   treatments as they have been and will continue to be necessary; Plaintiff respectfully

4   requests an amount of $59,500 in compensatory damages per Defendant.

5   407.   Given the substantial wealth of the Defendants St. Luke's Hospital and Onsite

6   Neonatal, and therefore, their ability to afford the appropriate training to avoid this

7   egregious violation of the U.S. Constitution, and Defendants Ms. Kimberly A. Butz, RN,

8   and Ms. Patricia Bates, CRNP since harm was actually caused to the current Plaintiff

9   Mrs. Smith, and since harm is likely to continue to harm future postpartum mothers, and

10   because the acts of the Defendants and their agents, assigns, or employees callously

11   disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs

12   respectfully request the imposition of punitive damages on Defendants St. Luke's

13   Hospital, Onsite Neonatal, Ms. Kimberly A. Butz, RN, and Ms. Patricia Bates, CRNP to

14   deter such Defendants from committing to such conduct in the future that violates the

15   First Amendment of the United States Constitution Plaintiff respectfully requests an

16   amount of $1,000,000 in punitive damages per Defendant Ms. Kimberly A. Butz, RN,

17   and Ms. Patricia Bates, CRNP; $5,000,000 for Defendant Ms. Dawn Hoffman; and

18   $10,000,000 per each separate Defendant St. Luke's Hospital and Onsite Neonatal.

19   408.   In the unlikely event that the jury does not find that Plaintiff Mrs. Smith suffered

20   any actual injury despite the deprivation of her federal rights, the Plaintiff respectfully

21   requests a nominal judgment of $1.00.

22               **II.**    **<u>First Amendment</u>**

23               *<u>Right to be Free from Compelled Speech</u>*

1    <u>Mrs. Grace Smith v. Monroe County, Ms. Adelaide. W. Grace, & Mr. Tim Shaw</u>

2    409.    The First Amendment of the United States Constitution protects certain rights of

3    speech, including, but not limited to, the right to be free from compelled speech.[3]

4    410.    Having already demonstrated that Defendant Monroe County Child and Youth

5    Services would endorse and encourage St. Luke's Hospital to aggressively and without

6    cause separate a mother from her newborn child and/or encourage violations into the

7    Plaintiff Mrs. Smith's private family life, as happened on Friday April 9th, 2021, Plaintiff

8    Mrs. Smith was traumatized by the intentional actions of Defendant St. Luke's Hospital,

9    who with an armed police escort, forcibly discharged and physically ejected Mrs. Smith

10   from St. Luke's Hospital property under threat of arrest.[4]

11   411.    Plaintiff Mrs. Smith was instructed by representatives of St. Luke's Hospital to

12   contact the on-call Defendant Monroe County Child and Youth Services representative

13   who informed Mrs. Smith that there was not anything that Defendant Monroe County

14   Child and Youth Services would do to attempt to remedy the current custody situation

---

[3]"When speech is compelled…additional damage is done. In that situation, individuals are coerced into betraying their convictions." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2464 (2018).

[4]In [the] Restatement, Contracts, § 493, it is stated in subsection (e) that duress may be exercised by "any other wrongful acts that compel a person to manifest apparent assent to a transaction without his volition or cause such fear as to preclude him from exercising free will and judgment in entering into a transaction." *Tri-State Roofing Co. of U. v. Simon*, 187 Pa. Super. 17, 19 (Pa. Super. Ct. 1958).

1   until a caseworker was assigned to Plaintiff Mrs. Smith on the following Monday, April

2   12th, 2021.

3   412.   At the time of Plaintiff's advisement by Monroe County Child and Youth Services

4   it was the evening on Friday, April 9th, 2021.

5   413.   Mrs. Smith realized she was not in any position to contradict Defendant Monroe

6   County Child and Youth Services, its agents, employees, or assigns, lest she lose her

7   children to Defendant Monroe County Child and Youth Services.

8   414.   Defendants Ms. Adelaide Grace and Mr. Tim Shaw were likely aware that St.

9   Luke's Hospital placed a guard outside of Newborn baby J.A.S.'s NICU unit who had

10   unfettered visual access to a breastfeeding mother without regard to Mrs. Smith's

11   dignity or privacy, led Mrs. Smith to realize that she was not in any position to contradict

12   the hospital, its agents, employees, or assigns.

13   415.   Although there was no good faith reason based on any articulable reasonable

14   suspicion that Plaintiff Mrs. Smith had at any time consumed illegal methamphetamine,

15   and with several records directly to the contrary of that assertion, Defendant Monroe

16   County, through Child and Youth Services refused to acknowledge, review, or adhere to

17   such facts; and therefore, Plaintiff Mrs. Smith was compelled to take further drug tests

18   under escort of guard by Defendant St. Luke's Hospital and a representative of

19   Defendant Monroe County Child and Youth Services.

20   416.   Out of fear for losing her freedom or any of her children to Defendant Monroe

21   County Child and Youth Services, Plaintiff Mrs. Smith was compelled to agree in writing

22   to the additional unnecessary tests against her consent and better judgement.

417.   Upon information and belief, Defendants Monroe County Child and Youth

Services, Ms. Adelaide. W. Grace, and Mr. Tim Shaw, by virtue of custom, pattern,

practice, policy, and/or failure to appropriately train, supervise, and/or discipline,

authorizes its agents, employees, and/or assigns to act in an unconstitutional manner

by threatening women with adverse consequences unless they fully comply with all

assertions or statements made in record by Defendant Monroe County Child and Youth

Services, regardless of whether the mother thinks such action is best for her newborn

child, or herself, or contests the validity of any paperwork; such action violates the First

Amendment to the United States Constitution by compelling speech from Plaintiff Mrs.

Smith in an affirmative manner, regardless of her desire to affirm or contest a matter.

418.   An undifferentiated drug test which does not conclusively demonstrate a mother

to be an illegal methamphetamine user, considered in conjunction with the fact that

neither the newborn child nor the mother exhibited any signs or symptoms of

methamphetamine withdrawal are not good faith grounds to compel Plaintiff Mrs.

Smith's speech in violation of the First Amendment of the United States Constitution.

419.   Upon information and belief, Plaintiff Mrs. Smith can demonstrate by a

preponderance of evidence that the Defendant State Actors conspired with at least one

Defendant Private Actor elsewhere listed in this complaint.

420.   The conspiracy between the Defendant parties and their agents, employees, or

assigns violates *42 U.S.C. § 1983*.

421.   Upon information and belief, Plaintiff Mrs. Smith can demonstrate by a

preponderance of the evidence that Defendant Mr. Tim Shaw violated Plaintiff Mrs.

Smith's federal rights, and that supervisor Defendant Ms. Adelaide Grace should be

1    held liable for conduct of subordinate Mr. Tim Shaw, because as supervisor directed the

2    actions in question, or had actual knowledge of the violation and acquiesced to it, or

3    with deliberate indifference to the consequences, established and maintained a policy,

4    practice or custom which directly caused the violation under a *Monell* legal theory.

5    422.    Defendants Ms. Adelaide Grace and Mr. Tim Shaw acting under color of law, and

6    as an agent, employee, or assign of Defendant Monroe County Child and Youth

7    Services, through their actions violated Plaintiff's rights under the First Amendment to

8    the United States Constitution.

9    423.    Plaintiff asserts this claim pursuant to *42 U.S.C. § 1983.*

10   424.    Plaintiff has suffered substantial harm as a result of Defendants' conduct,

11   including but not limited to, emotional and psychological distress, pain and suffering,

12   fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate

13   compensatory damages to account for PTSD therapies and other related treatments as

14   they have been and will continue to be necessary; Plaintiff respectfully requests an

15   amount of $59,500 in compensatory damages per Defendant.

16   425.    Defendants Monroe County through its Office of Children and Youth Services, is

17   legally obligated to appropriately train its state actor employees to avoid this egregious

18   violation of the U.S. Constitution, and since harm was actually caused to the current

19   Plaintiff Mrs. Smith, and since harm is likely to continue to harm future postpartum

20   mothers, and because the acts of the Defendants and their agents, assigns, or

21   employees callously disregarded the Plaintiff's rights in a reckless and wanton manner,

22   the Plaintiffs respectfully request the imposition of punitive damages on Defendants

23   Monroe County and Adelaide W. Grace to deter such Defendants from committing such

1   conduct in the future which violates the First Amendment of the United States

2   Constitution Plaintiff respectfully requests an amount of $1,000,000 in punitive damages

3   for Defendant Mr. Tim Shaw; $5,000,000 for Defendant Adelaide W. Grace; and

4   $10,000,000 for Defendant Monroe County.

5   426.    In the unlikely event that the jury does not find that Plaintiff Mrs. Smith suffered

6   any actual injury despite the deprivation of her federal rights, the Plaintiff respectfully

7   requests a nominal judgment of $1.00.

## III.   First Amendment

### *Right to be Free from Compelled Speech*

## Mr. Michael O. Smith v. Monroe County, Ms. Adelaide. W. Grace, Mr. Tim Shaw, & Mr. Jorge Manteria

12   427.    The First Amendment of the United States Constitution protects certain rights of

13   speech, including, but not limited to, the right to be free from compelled speech.[5]

14   428.    Having already demonstrated that Monroe County Child and Youth Services

15   would endorse and encourage St. Luke's Hospital to aggressively and without cause

16   separate a mother and father from their newborn child, as happened on Friday April 9th,

17   2021, Plaintiff Mr. Smith was traumatized by the intentional actions of Defendant St.

---

[5] "When speech is compelled…additional damage is done. In that situation, individuals are coerced into betraying their convictions." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2464 (2018).

1    Luke's forcible actions, who under an armed police escort, forced Plaintiff Mr. Smith off

2    of St. Luke's Hospital property under threat of arrest.[6]

3    429.    Plaintiff Mr. Smith realized he was not in any position to contradict Defendant

4    Monroe County Child and Youth Services, its agents, employees, or assigns, lest he

5    lose his freedom or his children to Defendant Monroe County Child and Youth Services.

6    430.    Upon information and belief, Defendants Monroe County Child and Youth

7    Services, Ms. A.W. Grace, Mr. Tim Shaw, and Mr. Jorge Manteria, by virtue of custom,

8    pattern, practice, policy, and/or failure to appropriately train, supervise and/or discipline,

9    authorizes its agents, employees, and/or assigns to act in an unconstitutional manner

10   by threatening fathers with adverse consequences unless they fully comply with

11   everything Defendant Monroe County Child and Youth Services asserts, regardless of

12   whether the father thinks such action is best for his newborn child, himself, or family, or

13   contests the validity of any paperwork; such action violates the First Amendment to the

14   United States Constitution by compelling speech from Plainitff Mr. Smith in an

15   affirmative manner, regardless of his desire to affirm or contest a matter.

16   431.    The same undifferentiated drug test which does not conclusively demonstrate a

17   mother to be an illegal methamphetamine user, considered in conjunction with the fact

---

[6]In [the] Restatement, Contracts, § 493, it is stated in subsection (e) that duress may be

exercised by "any other wrongful acts that compel a person to manifest apparent assent

to a transaction without his volition or cause such fear as to preclude him from

exercising free will and judgment in entering into a transaction." *Tri-State Roofing Co. of

U. v. Simon*, 187 Pa. Super. 17, 19 (Pa. Super. Ct. 1958).

1   that neither the newborn child nor the mother exhibited any signs or symptoms of

2   methamphetamine withdrawal is not grounds to illegally compel speech from the child's

3   legal father in violation of the First Amendment of the United States Constitution.

4   432.   Upon information and belief, Plaintiff can demonstrate by a preponderance of

5   evidence that the Defendant State Actors conspired with at least one Defendant Private

6   Actor elsewhere listed in this complaint.

7   433.   The conspiracy between the Defendant parties and their agents, employees, or

8   assigns violates *42 U.S.C. § 1983*.

9   434.   Upon information and belief, Plaintiff Mr. Smith can demonstrate by a

10  preponderance of the evidence that Mr. Jorge Manteria violated Mr. Smith's federal

11  rights, and that supervisor Defendants Ms. Adelaide Grace and Mr. Tim Shaw should be

12  held liable for conduct of subordinate Mr. Jorge Manteria, because as supervisors

13  directed the actions in question, or had actual knowledge of the violation and

14  acquiesced to it, or with deliberate indifference to the consequences, established and

15  maintained a policy, practice or custom which directly caused the violation under a

16  *Monell* legal theory.

17  435.   Upon information and belief, Plaintiff Mr. Smith can demonstrate by a

18  preponderance of the evidence that Mr. Tim Shaw violated Mr. Smith's federal rights,

19  and that supervisor Defendant Ms. Adelaide Grace should be held liable for conduct of

20  subordinate Mr. Tim Shaw, because as supervisor directed the actions in question, or

21  had actual knowledge of the violation and acquiesced to it, or with deliberate

22  indifference to the consequences, established and maintained a policy, practice or

23  custom which directly caused the violation under a *Monell* legal theory.

436.    Defendants Ms. Adelaide Grace, Mr. Tim Shaw, & Mr. Jorge Manteria, acting under color of law, through Defendant Monroe County, through the actions of its Office of Child & Youth Services, violated Plaintiff's rights under the First Amendment to the United States Constitution.

437.    Plaintiff asserts this claim pursuant to *42 U.S.C. § 1983.*

438.    Plaintiff Mr. Smith has suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiff respectfully requests an amount of $59,500 in compensatory damages per Defendant.

439.    Defendant Monroe County through its Office of Children and Youth Services, is legally obligated to appropriately train its state actor employees to avoid this egregious violation of the U.S. Constitution, and since harm was actually caused to the current Plaintiff Mr. Smith, and since harm is likely to continue to harm future fathers, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiff respectfully requests the imposition of punitive damages on Defendants Monroe County, Ms. Adelaide W. Grace, & Mr. Tim Shaw to deter such Defendants from committing such conduct in the future which violates the First Amendment of the United States Constitution Plaintiff respectfully requests an amount of $1,000,000 in punitive damages per Defendants Mr. Tim Shaw and Mr. Jorge Manteria; $5,000,000 for Defendant Adelaide W. Grace; and $10,000,000 for Defendant Monroe County.

440.    In the unlikely event that the jury does not find that Plaintiff Mr. Smith suffered

any actual injury despite the deprivation of his federal rights, the Plaintiff respectfully

requests a nominal judgment of $1.00.

# IV.   <u>Fourth Amendment</u>

## <u>*Right to be Free from Unlawful Seizure*</u>

### <u>Smith, *et al.* v. Northampton County, Bethlehem Township Officers Andrew Keyock and Thomas A. Smith, Corporal Kirk Harryn, & Chief Daniel G. Pancoast</u>

441.    The Fourth Amendment to the United States Constitution protects people from

being subjected to unreasonable seizures by the police.

442.    A law enforcement officer may only seize a person if there is appropriate

justification to do so.

443.    Upon information and belief, Plaintiffs Mr. and Mrs. Smith and Newborn baby

J.A.S. can demonstrate that Defendants Northampton County, acting through its

Defendant Officers Andrew Keyock and Thomas A. Smith, while under color of law (1)

intentionally held Plaintiffs Mr. and Mrs. Smith apart from Newborn baby J.A.S. without

consent from his parents and under threat of arrest; (2) the acts of withholding Newborn

baby J.A.S. from his parents Plaintiffs Mr. and Mrs. Smith, are, but are not limited to,

keeping Newborn baby J.A.S. separated from his parents against their will, police

blocking Plaintiff Mr. Smith's vehicle from exiting the hospital grounds, which were only

moved upon Plaintiff Mr. Smith's request to leave so as to not be arrested, and indeed,

the constant threat of arrest if Mr. and Mrs. Smith did not leave their newborn child with

1    St. Luke's hospital and without his parents; and, (3)  the seizures of Plaintiffs Mr. and

2    Mrs. Smith and Newborn baby J.A.S. were unreasonable.

3    444.    "[A] Fourth Amendment seizure . . . [occurs] only when there is a governmental

4    termination of freedom of movement *through means intentionally applied*."[7]

5    445.    The U.S. Supreme Court has subsequently refined this test and it now asks,

6    "[W]hether a reasonable person would feel free to decline the officers' requests or

7    otherwise terminate the encounter."[8]

8    446.    Upon information and belief, Plaintiffs Mr. & Mrs. Smith assert that when they

9    were forcefully withheld from being with their newborn baby against their consent, that

10   the force necessary to prevent their reunion was through means intentionally applied by

11   Defendant Officers Andrew Keyock and Thomas A. Smith.

12   447.    Upon information and belief, Plaintiffs Mr. and Mrs. Smith were not reasonably

13   able to terminate their encounter with the police while remaining in the hospital with

14   Plaintiff Newborn baby J.A.S., or by taking newborn baby J.A.S. away from St. Luke's

---

[7]*Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989) (emphasis in original).

[8]*United States v. Drayton*, 536 U.S. 194, 202 (2002) (quoting *Florida v. Bostick*, 501
U.S. 429, 436 (1991)); *see also Drayton*, 536 U.S. at 202 (noting that "[t]he reasonable
person test . . . is objective and 'presupposes an *innocent* person'" (quoting *Bostick*, 501
U.S. at 438)); *See also*, *James v. City of Wilkes-Barre*, 700 F.3d 675 (3d Cir. 2012)
("[I]ntimidating police behavior might, under some circumstances, cause one to
reasonably believe that compliance is compelled").

1   Hospital; and, Newborn baby J.A.S. did not have the ability to consent to his own

2   confinement away from his parents.

3   448.   Upon information and belief Defendant Officers did not presuppose that Plaintiff's

4   Mr. and Mrs. Smith were innocent of harming their child.

5   449.   Upon information and belief, Defendant Officers Andrew Keyock and Thomas A.

6   Smith had no reason to suspect Newborn baby J.A.S. had or was going to commit a

7   crime, and therefore had no cause to detain him.

8   450.   Upon information and belief, Northampton County and/or Bethlehem Township,

9   through the acts of Officers Andrew Keyock, and Thomas A. Smith, acting under color

10   of law, by virtue of custom, pattern, practice, policy, lack of supervision and/or failure to

11   appropriately train and/or discipline, authorizes its police officers to act in an

12   unconstitutional fashion by having neither a court order, nor reasonable suspicion of a

13   crime being committed by any of the Plaintiffs, did seize a Newborn baby child, as well

14   as seizing his parents, and such seizure is based solely on a report that the hospital had

15   unconfirmed and undifferentiated drug test results for both legal amphetamines and

16   illegal methamphetamines, and without any basis to believe that the mother abused or

17   neglected her child, or that mother or child were treated for methamphetamine

18   withdrawal related to Plaintiff Mrs. Smith's or Newborn baby J.A.S.'s alleged condition.

19   451.   Upon information and belief, Plaintiffs can demonstrate by a preponderance of

20   evidence that the Defendant State Actors conspired with at least one Defendant Private

21   Actor elsewhere listed in this complaint.

22   452.   The conspiracy between the Defendant parties and their agents, employees, or

23   assigns violates *42 U.S.C. § 1983*.

453.   Upon information and belief, Plaintiff Smith Family can demonstrate by a preponderance of the evidence that Officers Andrew Keyock and Thomas A. Smith violated Plaintiff Smith Family's federal rights, and that supervisor Defendants Corporal Kirk Harryn, and Chief Daniel G. Pancoast should be held liable for conduct of subordinates Officers Andrew Keyock and Thomas A. Smith, because as supervisors directed the actions in question, or had actual knowledge of the violation and acquiesced to it, or with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violation under a *Monell* legal theory.

454.   Defendants Northampton County and/or Bethlehem Township, through the actions of its Defendant Officers Andrew Keyock, Thomas A. Smith, Corporal Kirk Harryn, and Chief Daniel G. Pancoast of the Bethlehem Police Department, violated Plaintiff's rights under the Fourth Amendment of the United States Constitution.

455.   Plaintiffs assert this claim pursuant to *42 U.S.C. § 1983*.

456.   Plaintiff Mr. Smith has suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully request an amount of $84,800 in compensatory damages per Defendant.

457.   Defendants Northampton County and/or Bethlehem Township, and the Bethlehem Township Police Department, is legally obligated to appropriately train its state actor employees to avoid this egregious violation of the U.S. Constitution, and

1   since harm was actually caused to the current Plaintiff Smith Family, and since harm is

2   likely to continue to harm future similarly situated families, and because the acts of the

3   Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's

4   rights in a reckless and wanton manner, the Plaintiff respectfully requests the imposition

5   of punitive damages on Defendants Northampton County and/or Bethlehem Township,

6   and Officers Andrew Keyock & Thomas A. Smith, Corporal Kirk Harryn, and Chief

7   Daniel G. Pancoast to deter such Defendants from committing such conduct in the

8   future which violates the Fourth Amendment of the United States Constitution Plaintiffs

9   respectfully request an amount of $1,000,000 in punitive damages per Defendants

10  Officers Andrew Keyock and Thomas A. Smith; $5,000,000 per Defendants Corporal

11  Kirk Harryn and Chief Daniel G. Pancoast; and $10,000,000 per Defendant

12  Northampton County.

13  458.   In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

14  any actual injury despite the deprivation of his federal rights, the Plaintiff respectfully

15  requests a nominal judgment of $1.00.

16                    **V.   <u>Fourth Amendment</u>**

17              <u>*Right to be Free from Unlawful Seizure*</u>

18  <u>Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,</u>

19  <u> MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.</u>

20  <u>Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team", & Mr. Jerry Hric,</u>

21                          <u>MD</u>

459.    The Fourth Amendment to the United States Constitution protects people from being subjected to unreasonable seizures by state actors.

460.    A state actor may only seize a person if there is appropriate justification to do so.

461.    Upon information and belief, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. can demonstrate that Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team", & Mr. Jerry Hric, MD, while under color of law (1) intentionally held Plaintiffs Mr. and Mrs. Smith apart from Newborn baby J.A.S. without consent from his parents and under threat of arrest; (2) the acts of withholding Newborn baby J.A.S. from his parents Plaintiffs Mr. and Mrs. Smith, are, but are not limited to, keeping Newborn baby J.A.S. separated from his parents against their will and through physical force by locking the doors to the NICU, guards blocking Plaintiffs Mr. & Mrs. Smith from entering the NICU, St. Luke's Hospital staff threatening arrest of the Plaintiffs Mr. & Mrs. Smith, and indeed, calling the local police to have Mr. and Mrs. Smith escorted by armed police officers off of Defendant St. Luke's Property; and, (3)  the seizures of Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. were unreasonable.

462.    "[A] Fourth Amendment seizure . . . [occurs] only when there is a governmental termination of freedom of movement *through means intentionally applied*."[9]

---

[9]*Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989) (emphasis in original).

463.   The U.S. Supreme Court has subsequently refined this test and it now asks, "[W]hether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter."[10]

464.   Upon information and belief, Plaintiffs Mr. & Mrs. Smith assert that when they were forcefully withheld from being with their newborn baby against their consent, that the force necessary to prevent their reunion was through means intentionally applied by state actor Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team", & Mr. Jerry Hric, MD.

465.   Upon information and belief, Plaintiffs Mr. and Mrs. Smith were not reasonably able to access Plaintiff Newborn baby J.A.S. while remaining in the hospital, or by taking Newborn baby J.A.S. away from Defendant St. Luke's Hospital; and, Newborn baby J.A.S. did not have the ability to consent to his own confinement away from his parents.

466.   Upon information and belief Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership

---

[10]*United States v. Drayton*, 536 U.S. 194, 202 (2002) (quoting *Florida v. Bostick*, 501 U.S. 429, 436 (1991)); *see also Drayton*, 536 U.S. at 202 (noting that "[t]he reasonable person test . . . is objective and 'presupposes an *innocent* person'" (quoting *Bostick*, 501 U.S. at 438)).

1   Team", & Mr. Jerry Hric, MD did not presuppose that Plaintiffs Mr. and Mrs. Smith were

2   innocent of harming their child.

3   467.   Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal,

4   OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq.,

5   Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership

6   Team", & Mr. Jerry Hric, MD. had no reason to suspect Newborn baby J.A.S. had been

7   or was going to be abused by his parents.

8   468.   Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal,

9   OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq.,

10  Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership

11  Team", & Mr. Jerry Hric, MD., acting under color of law, by virtue of custom, pattern,

12  practice, policy, lack of supervision and/or failure to appropriately train and/or discipline,

13  authorizes its state actor agent, employees, and/or assigns to act in an unconstitutional

14  fashion by having neither a court order, nor reasonable suspicion of a crime being

15  committed by any of the Plaintiffs, did seize a newborn baby child, as well as seizing his

16  parents, and such seizure was based solely on a report that the Defendants had

17  unconfirmed and undifferentiated drug test results for both legal amphetamines and

18  illegal methamphetamines, and without any basis to believe that the mother abused or

19  neglected her child, or that mother or child were treated for methamphetamine

20  withdrawal related to Plaintiff Mrs. Smith's or Newborn baby J.A.S.'s alleged condition.

21  469.   Upon information and belief, Plaintiffs can demonstrate by a preponderance of

22  evidence that the Defendant State Actors conspired with at least one Defendant Private

23  Actor elsewhere listed in this complaint.

470.    The conspiracy between the Defendant parties and their agents, employees, or assigns violates *42 U.S.C. § 1983*.

471.    Upon information and belief, Plaintiff Smith Family can demonstrate by a preponderance of the evidence that Defendant State Actors, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team," violated Plaintiff Smith Family's federal rights, and that supervisors St. Luke's Hospital, Onsite Neonatal, OBHG PA, and Mr. Jerry Hric, MD should be held liable for conduct of subordinates Defendant State Actors, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team,", because as supervisors directed the actions in question, or had actual knowledge of the violations and acquiesced to them, or with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violations under a *Monell* legal theory.

472.    Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team", & Mr. Jerry Hric, MD., violated Plaintiff's rights under the Fourth Amendment of the United States Constitution.

473.    Plaintiffs assert this claim pursuant to *42 U.S.C. § 1983*.

474.    Plaintiffs Mr. & Mrs. Smith have suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other

1  related treatments as they have been and will continue to be necessary; Plaintiffs

2  respectfully request an amount of $84,800 in compensatory damages per Defendant.

3  475.   Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

4  Neonatal, OBHG PA, and Mr. Jerry Hric, MD, and therefore, their ability to afford the

5  appropriate training to avoid this egregious violation of the U.S. Constitution, and since

6  harm was actually caused to the current Plaintiff Smith Family, and since harm is likely

7  to continue to harm future postpartum families, and because the acts of the Defendants

8  and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a

9  reckless and wanton manner, the Plaintiffs respectfully request the imposition of

10  punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, and

11  Mr. Jerry Hric, MD, to deter such Defendants from committing to such conduct in the

12  future which violates the Fourth Amendment of the United States Constitution Plaintiffs

13  respectfully request an amount of $5,000,000 in punitive damages per Defendants Mr.

14  Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the

15  "Hospital Leadership Team", & Mr. Jerry Hric, MD; and $10,000,000 per Defendants St.

16  Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, and Ms. Cynthia

17  Shultz, MD.

18  476.   In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

19  any actual injury despite the deprivation of their federal rights, the Plaintiffs respectfully

20  request a nominal judgment of $1.00.

21  # VI.    Fourth Amendment

22  ### *Invasion of Privacy*

1    Mrs. Smith v. St. Luke's Hospital, "Security Guard 'Freddy'", "Security Guard

2    'Joe'", "Security Guard 'Nate'", "Security Supervisor 'Unknown'", "Head of

3    Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq.,

4    Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

5    477.    The Fourth Amendment to the United States Constitution protects people from

6    being subjected to unreasonable invasions of privacy by state actors.

7    478.    A state actor may only seize a invade the privacy of a private citizen if there is

8    appropriate justification to do so.

9    479.    Upon information and belief, Plaintiff Mrs. Smith can demonstrate that

10   Defendants St. Luke's Hospital, "Security Guard 'Freddy'", "Security Guard 'Joe'",

11   "Security Guard 'Nate'", "Security Supervisor 'Unknown'", "Head of Hospital Security

12   'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

13   Dawn Hoffman, and the "Hospital Leadership Team," while under color of law (1)

14   intentionally placed male security guards around the twenty-four hours a day at

15   Newborn baby J.A.S.'s NICU pod without consent from Plaintiff Mrs. Smith and under

16   constant observation by at least three different men; (2) the acts of constant male

17   observation of a postpartum and breastfeeding mother were intentional and were

18   designed with the purpose to gather information about Plaintiff Mrs. Smith that could be

19   observed and reported to Defendant St. Luke's Hospital and its employees, agents,

20   and/or assigns; (3) the likely purpose of gathering information of Plaintiff Mrs. Smith and

21   reporting it to superiors was to further the "prosecutorial eye" that was being vigilantly

22   maintained by the Defendants St. Luke's Hospital, "Security Guard 'Freddy'", "Security

1    Guard 'Joe'", "Security Guard 'Nate'", "Security Supervisor 'Unknown'", "Head of

2    Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

3    Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team," against the

4    Plaintiff Mrs. Smith; and (4) the invasions of Plaintiff Mrs. Smith's privacy were

5    unreasonable.

6    480.    Upon information and belief Defendants St. Luke's Hospital, "Security Guard

7    'Freddy'", "Security Guard 'Joe'", "Security Guard 'Nate'", "Security Supervisor

8    'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert

9    L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

10   Team," did not presuppose that Plaintiff Mrs. Smith was innocent of harming her child.

11   481.    Upon information and belief, Defendants St. Luke's Hospital, "Security Guard

12   'Freddy'", "Security Guard 'Joe'", "Security Guard 'Nate'", "Security Supervisor

13   'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert

14   L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

15   Team," had no reason to suspect that Plaintiff Mrs. Smith had or was going to commit a

16   crime, and therefore had no cause to constantly monitor her.

17   482.    Defendants "Security Guard 'Freddy'", "Security Guard 'Joe'", and "Security

18   Guard 'Nate'", had knowledge that Plaintiff Mrs. Smith was breastfeeding Newborn baby

19   J.A.S., and on numerous occasions, without cause, and without permission of Plaintiff

20   Mrs. Smith, physically invaded the private sanctum of a breastfeeding mother with

21   random insertions of self and voyeuristic observations into Newborn baby J.A.S.'s NICU

22   unit.

483.   Defendant male guards, in acts of humiliation, even followed Plaintiff Mrs. Smith to and from the restroom, and at no time did a female guard follow Plaintiff Mrs. Smith to the restroom in lieu of a male guard.

484.   The repeated invasions of Plaintiff Mrs. Smith's privacy could have been lessened by using guards who identified their gender as female instead of male; however, upon information and belief the Defendants agreed to only place male security guards at Newborn baby J.A.S.'s NICU pod.

485.   Upon information and belief, Defendant St. Luke's Hospital did not at any time provide the mother, Plaintiff Mrs. Smith, with a guard who self-identifies as female or who is chromosomally female.

486.   Upon information and belief, Defendants St. Luke's Hospital, "Security Guard 'Freddy'", "Security Guard 'Joe'", "Security Guard 'Nate'", "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team,", acting under color of law, by virtue of custom, pattern, practice, policy, lack of supervision and/or failure to appropriately train and/or discipline, authorizes its agents, employees, and/or assigns to act in an unconstitutional fashion by having neither a court order, nor reasonable suspicion of a crime being committed by the Plaintiff Mrs. Smith, did constantly invade the privacy of Plaintiff Mrs. Smith by constantly observing her during intimate moments with her newborn child in neonatal intensive care, and such invasions of privacy are based solely on a report that the hospital had unconfirmed and undifferentiated drug test results for both legal amphetamines and illegal methamphetamines in the same test, and without any basis to believe that the mother

1   abused or neglected her child, or that mother or child were treated for

2   methamphetamine withdrawal related to Plaintiff Mrs. Smith's or Newborn baby J.A.S.'s

3   alleged condition.

4   487.   Upon information and belief, all Defendants intended to subject new mothers to

5   unwarranted, highly invasive, burdensome, humiliating, and/or restrictive actions based

6   exclusively on unconfirmed and undifferentiated drug test results for legal

7   amphetamines and illegal methamphetamines, without any basis to suspect or believe

8   that Newborn baby J.A.S. had been affected by illegal substance abuse or was having

9   withdrawal symptoms resulting from prenatal drug exposure.

10   488.   Upon information and belief, Plaintiffs can demonstrate by a preponderance of

11   evidence that the Defendant State Actors conspired with at least one Defendant Private

12   Actor elsewhere listed in this complaint.

13   489.   The conspiracy between the Defendant parties and their agents, employees, or

14   assigns violates *42 U.S.C. § 1983*.

15   490.   Upon information and belief, Plaintiff Smith Family can demonstrate by a

16   preponderance of the evidence that "Security Guard 'Freddy'", "Security Guard 'Joe'",

17   and "Security Guard Nate'" violated Plaintiff Mrs. Smith's federal rights, and that

18   supervisor Defendants St. Luke's Hospital, "Security Supervisor 'Unknown'", "Head of

19   Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

20   Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team," should be held

21   liable for conduct of subordinates "Security Guard 'Freddy'", "Security Guard 'Joe'", and

22   "Security Guard Nate'", because as supervisors directed the actions in question, or had

23   actual knowledge of the violation and acquiesced to it, or with deliberate indifference to

1   the consequences, established and maintained a policy, practice or custom which

2   directly caused the violation under a *Monell* legal theory.

3   491.   Defendant St. Luke's Hospital, through the actions of its agents, assigns, and/or

4   employees "Security Guard 'Freddy'", "Security Guard 'Joe'", "Security Guard 'Nate'",

5   "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve

6   Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the

7   "Hospital Leadership Team,", violated Plaintiff's rights under the Fourth Amendment of

8   the United States Constitution.

9   492.   Plaintiff asserts this claim pursuant to *42 U.S.C. § 1983.*

10   493.   Plaintiff Mrs. Smith has suffered substantial harm as a result of Defendants'

11   conduct, including but not limited to, emotional and psychological distress, pain and

12   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

13   appropriate compensatory damages to account for PTSD therapies and other related

14   treatments as they have been and will continue to be necessary; Plaintiff respectfully

15   requests an amount of $59,500 in compensatory damages per Defendant.

16   494.   Given the substantial wealth of the Defendants St. Luke's Hospital, ", "Head of

17   Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

18   Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team", and therefore,

19   their ability to afford the appropriate training to avoid this egregious violation of the U.S.

20   Constitution, and, since harm was actually caused to the current Plaintiff Mrs. Smith,

21   and since harm is likely to continue to harm future postpartum families, and because the

22   acts of the Defendants and their agents, assigns, or employees callously disregarded

23   the Plaintiff's rights in a reckless and wanton manner, the Plaintiff respectfully requests

1  the imposition of punitive damages on Defendants St. Luke's Hospital, ", "Head of

2  Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

3  Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" to deter such

4  Defendants from committing to such conduct in the future which violates the Fourth

5  Amendment of the United States Constitution Plaintiffs respectfully request an amount

6  of $500,000 in punitive damages per Defendants "Security Guard 'Freddy'", "Security

7  Guard 'Joe'", "Security Guard 'Nate'; $1,000,000 per Defendants "Security Supervisor

8  'Unknown'", "Head of Hospital Security 'Unknown'"; $5,000,000 per Defendants Mr.

9  Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and

10  the "Hospital Leadership Team"; and $10,000,000 for Defendant St. Luke's Hospital.

11  495.    In the unlikely event that the jury does not find that Plaintiff Mrs. Smith suffered

12  any actual injury despite the deprivation of her federal rights, the Plaintiff respectfully

13  requests a nominal judgment of $1.00.

14  ## VII.    **Fourth** Amendment

15  ### *Right to be Free from Unlawful Drug Testing*

16  ## Mrs. Grace Smith & Newborn baby J.A.S. v. St. Luke's Hospital, Bethlehem

17  ## Neonatal, St. Luke's Obstetrics and Gynecology Associates, Ms. Marilyn

18  ## Ekonomidis, MD, & Mr. Christopher Gilbert, MD

19  496.    Defendants St. Luke's Hospital, Bethlehem Neonatal, St. Luke's Obstetrics and

20  Gynecology Associates, Ms. Marilyn Ekonomidis, MD, and Mr. Christopher Gilbert, MD

21  did not inform Plaintiff Mrs. Smith that Defendants were collecting her and her child's

1   urine for drug testing for use in her potential prosecution, and possibly to separate her

2   from her newborn child, in violation of her Fourth Amendment rights as contained within

3   the United States Constitution.[11]

4   497.    Upon information and belief, Defendants St. Luke's Hospital, Bethlehem

5   Neonatal, and St. Luke's Obstetrics and Gynecology Associates, by virtue of custom,

6   pattern, practice, policy, lack of supervision and/or failure to appropriately train and/or

7   discipline, authorizes its agents, employees, and/or assigns to act in an unconstitutional

8   fashion by requiring women and newborn babies to submit to drug screenings without

9   statutory authorization.

10   498.    Defendants St. Luke's Hospital, Bethlehem Neonatal, St. Luke's Obstetrics and

11   Gynecology Associates, Ms. Marilyn Ekonomidis, MD, and Mr. Christopher Gilbert, MD

12   ordered invalid undifferentiated drug tests for both Plaintiffs Mrs. Smith and Newborn

13   baby J.A.S. the results of which could not distinguish between legal amphetamines and

14   illegal methamphetamines.

---

[11]"…its staff members are government actors subject to the Fourth Amendment's strictures. *New Jersey* v. *T.L. O.*, 469 U.S. 325, 335-337. Moreover, the urine tests at issue were indisputably searches within that Amendment's meaning. *Skinner* v. *Railway Labor Executives' Assn.*, 489 U.S. 602, 617. Furthermore, both lower courts viewed the case as one involving MUSC's right to conduct searches without warrants or probable cause, and this Court must assume for purposes of decision that the tests were performed without the patients' informed consent." *Ferguson v. City of Charleston*, 532 U.S. 67, 68 (2001).

499.    There was no reasonable suspicion to warrant drug testing of Newborn baby

J.A.S. given that he did not exhibit any signs or symptoms of in utero exposure to illegal

substances, and neither did he suffer from postpartum methamphetamine withdrawal.

500.    Defendants St. Luke's Hospital, Bethlehem Neonatal, St. Luke's Obstetrics and

Gynecology Associates, Ms. Marilyn Ekonomidis, MD, and Mr. Christopher Gilbert, MD

did not have any reasonable basis to believe that the patient mother Plaintiff Mrs. Smith

abused or neglected her child as Plaintiff Mrs. Smith did not exhibit any signs of

methamphetamine abuse nor withdrawal symptoms from such a substance over time.

501.    Upon information and belief, Plaintiffs can demonstrate by a preponderance of

evidence that the Defendant State Actors conspired with at least one Defendant Private

Actor elsewhere listed in this complaint.

502.    The conspiracy between the Defendant parties and their agents, employees, or

assigns violates *42 U.S.C. § 1983*.

503.    Upon information and belief, Plaintiff Mrs. Smith can demonstrate by a

preponderance of the evidence that Defendants Ms. Marilyn Ekonomidis, MD, and Mr.

Christopher Gilbert, MD violated Mrs. Smith's federal rights, and that supervisor

Defendants St. Luke's Hospital, Bethlehem Neonatal, St. Luke's Obstetrics and

Gynecology Associates should be held liable for conduct of subordinates Ms. Marilyn

Ekonomidis, MD, and Mr. Christopher Gilbert, MD, because as supervisor directed the

actions in question, or had actual knowledge of the violations and acquiesced to them,

or with deliberate indifference to the consequences, established and maintained a

policy, practice or custom which directly caused the violation under a  *Monell* legal

theory.

504.    Defendants St. Luke's Hospital, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology Associates, Ms. Marilyn Ekonomidis, MD, and Mr. Christopher Gilbert, MD, violated Plaintiff's rights under the Fourth Amendment of the United States Constitution.

505.    Plaintiffs asserts this claim pursuant to *42 U.S.C. § 1983*.

506.    Plaintiff Mrs. Smith has suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully request an amount of $59,500 in compensatory damages per Defendant.

507.    Given the substantial wealth of the Defendants St. Luke's Hospital, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology Associates, Ms. Marilyn Ekonomidis, MD, and Mr. Christopher Gilbert, MD, and therefore, their ability to afford the appropriate training to avoid this egregious violation of the U.S. Constitution, and since harm was actually caused to the current Plaintiffs Mrs. Smith and Newborn baby J.A.S., and since harm is likely to continue to harm future full-term pregnant mothers, postpartum mothers, and newborn babies, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the imposition of punitive damages on Defendants St. Luke's Hospital, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology Associates, Ms. Marilyn Ekonomidis, MD, and Mr. Christopher Gilbert, MD, to deter such Defendants from committing to such conduct in the future which violates the Fourth Amendment of the United States Constitution

Plaintiffs respectfully request an amount of $1,000,000 in punitive damages per Defendants Ms. Marilyn Ekonomidis, MD, & Mr. Christopher Gilbert, MD; $5,000,000 per Defendants Bethlehem Neonatal and St. Luke's Obstetrics and Gynecology Associates; and $10,000,000 per Defedant St. Luke's Hospital.

508.   In the unlikely event that the jury does not find that Plaintiffs Mrs. Smith and Newborn baby J.A.S. suffered any actual injury despite the deprivation of their federal rights, the Plaintiffs respectfully request a nominal judgment of $1.00.

# VIII.   Fourth Amendment

## *Right to be Free from Unlawful Drug Testing*

### Mrs. Grace Smith v. Monroe County, Ms. Adelaide Grace & Mr. Tim Shaw

509.   Defendant Monroe County through its Office of Children and Youth Services required Plaintiff Mrs. Smith to submit to a urine drug test in violation of her Fourth Amendment rights as contained within the United States Constitution.[12]

---

[12]"…its staff members are government actors subject to the Fourth Amendment's strictures. *New Jersey* v. *T.L. O.*, 469 U.S. 325, 335-337. Moreover, the urine tests at issue were indisputably searches within that Amendment's meaning. *Skinner* v. *Railway Labor Executives' Assn.*, 489 U.S. 602, 617. Furthermore, both lower courts viewed the case as one involving MUSC's right to conduct searches without warrants or probable cause, and this Court must assume for purposes of decision that the tests were

510.   Upon information and belief, Monroe County Child and Youth Services, by virtue of custom, pattern, practice, policy, lack of supervision and/or failure to appropriately train and/or discipline, authorizes its caseworkers to act in an unconstitutional fashion by requiring women to submit to repetitive urine drug screenings without statutory authorization, and based solely on unconfirmed and undifferentiated drug test results between legal amphetamines and illegal methamphetamines, without any basis to believe that the patient mother abused or neglected her child.

511.   Upon information and belief, Plaintiffs can demonstrate by a preponderance of evidence that the Defendant State Actors conspired with at least one Defendant Private Actor elsewhere listed in this complaint.

512.   The conspiracy between the Defendant parties and their agents, employees, or assigns violates *42 U.S.C. § 1983*.

513.   Upon information and belief, Plaintiff Mrs. Smith can demonstrate by a preponderance of the evidence that Mr. Tim Shaw violated Mrs. Smith's federal rights, and that supervisor Defendant Ms. Adelaide Grace should be held liable for conduct of subordinate Mr. Tim Shaw, because as supervisor directed the actions in question, or had actual knowledge of the violation and acquiesced to it, or with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violation under a  *Monell* legal theory.

---

performed without the patients' informed consent." *Ferguson v. City of Charleston*, 532 U.S. 67, 68 (2001).

514.    Defendants Monroe County, Ms. Adelaide Grace, and Mr. Tim Shaw through the Office of Children and Youth Services, violated Plaintiff's rights under the Fourth Amendment of the United States Constitution.

515.    Plaintiff asserts this claim pursuant to *42 U.S.C. § 1983.*

516.    Plaintiff has suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiff respectfully requests an amount of $59,500 in compensatory damages per Defendant.

517.    Defendants Monroe County through its Office of Children and Youth Services, is legally obligated to appropriately train its state actor employees to avoid this egregious violation of the U.S. Constitution, and since harm was actually caused to the current Plaintiff Mrs. Smith, and since harm is likely to continue to harm future postpartum mothers, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the imposition of punitive damages on Defendants Monroe County and Adelaide W. Grace to deter such Defendants from committing such conduct in the future which violates the First Amendment of the United States Constitution Plaintiff respectfully requests an amount of $1,000,000 in punitive damages for Defendant Mr. Tim Shaw; $5,000,000 for Defendant Ms. Adelaide Grace, and $10,000,000 for Defendant Monroe County.

518.    In the unlikely event that the jury does not find that Plaintiff Mrs. Smith suffered any actual injury despite the deprivation of her federal rights, the Plaintiff respectfully requests a nominal judgment of $1.00.

# IX.    Fourth Amendment

## Right to be Free from Unlawful Drug Testing

### Newborn baby J.A.S. v. Monroe County, Ms. Adelaide Grace & Mr. Tim Shaw

519.    Monroe County CYS via the actions of St. Luke's Hospital, required Newborn baby J.A.S. to submit to a urine, tissue sample, and/or blood test to test for illegal drugs, in violation of his Fourth Amendment rights as contained within the United States Constitution.[13]

---

[13]"…its staff members are government actors subject to the Fourth Amendment's strictures. *New Jersey* v. *T.L. O.*, 469 U.S. 325, 335-337. Moreover, the urine tests at issue were indisputably searches within that Amendment's meaning. *Skinner* v. *Railway Labor Executives' Assn.*, 489 U.S. 602, 617. Furthermore, both lower courts viewed the case as one involving MUSC's right to conduct searches without warrants or probable cause, and this Court must assume for purposes of decision that the tests were performed without the patients' informed consent." *Ferguson v. City of Charleston*, 532 U.S. 67, 68 (2001).

520.    Plaintiff newborn baby J.A.S. could not consent to testing that would be held against his mother and father and used to prosecute and separate the Plaintiffs Mr. and Mrs. Smith from Newborn baby J.A.S.

521.    Neither Plaintiffs, Mr. nor Mrs. Smith, consented to Newborn baby J.A.S. being tested for illegal drugs via urine, blood, tissue samples, or any other biological matter originating from Newborn baby J.A.S.

522.    Upon information and belief, Monroe County Child and Youth Services, Ms. Adelaide Grace, and Mr. Tim Shaw by virtue of custom, pattern, practice, policy, and/or failure to appropriately train and/or discipline, authorizes beyond the scope of its legally authorized statutory duties, for hospitals, including St. Luke's Hospital, to collect information about newly born children for the purposes of potential prosecution of the parents, as well as, to separate newborn children from their parents.

523.    There was no reasonable suspicion to warrant drug testing of Newborn baby J.A.S. given that he did not exhibit any signs or symptoms of in utero exposure to illegal substances, and neither did he suffer from methamphetamine withdrawal.

524.    Even if an illegal drug test is permissible by law, then the results must be valid if they are to be communicated to Monroe County Child and Youth Services, and since St. Luke's Hospital drug test did not differentiate between legal prescription amphetamines and illegal methamphetamines, the purpose of St. Luke's Hospital's communication that Plaintiff Mrs. Smith's results by St. Luke's Hospital to Defendant Monroe County Child and Youth Services is to color the parents as abusers of children in an attempt to use their own child's medical records against them.

525.   Upon information and belief, Plaintiffs can demonstrate by a preponderance of evidence that the Defendant State Actors conspired with at least one Defendant Private Actor elsewhere listed in this complaint.

526.   The conspiracy between the Defendant parties and their agents, employees, or assigns violates *42 U.S.C. § 1983*.

527.   Upon information and belief, Plaintiff newborn baby J.A.S. can demonstrate by a preponderance of the evidence that Mr. Tim Shaw violated Mrs. Smith's federal rights, and that supervisor Defendant Ms. Adelaide Grace should be held liable for conduct of subordinate Mr. Tim Shaw, because as supervisor directed the actions in question, or had actual knowledge of the violation and acquiesced to it, or with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violation under a *Monell* legal theory.

528.   Defendants Monroe County, Ms. Adelaide Grace, and Mr. Tim Shaw through the actions of the Office of Children &Youth, violated Plaintiff's rights under the Fourth Amendment to the United States Constitution.

529.   Plaintiff asserts this claim pursuant to 42 U.S.C. §1983.

530.   Defendant Monroe County through its Office of Children and Youth Services, is legally obligated to appropriately train its state actor employees to avoid this egregious violation of the U.S. Constitution, and since harm was actually caused to the current Plaintiff Newborn baby J.A.S., and since harm is likely to continue to harm future newborn children, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiff respectfully requests the imposition of punitive damages on Defendants

1  Monroe County and Adelaide W. Grace to deter such Defendants from committing such

2  conduct in the future which violates the Fourth Amendment of the United States

3  Constitution Plaintiff respectfully requests an amount of $1,000,000 in punitive damages

4  for Defendant Mr. Tim Shaw; $5,000,000 for Defendant Ms. Adelaide Grace, and

5  $10,000,000 for Defendant Monroe County.

6  531.    In the unlikely event that the jury does not find that Plaintiff Newborn baby J.A.S.

7  suffered any actual injury despite the deprivation of his federal rights, the Plaintiff

8  respectfully requests a nominal judgment of $1.00.

9  # X.   Fourteenth Amendment

10  *Procedural Due Process*

11  *Violation of Right to Consent to the Timing of Tests Being*

12  *Conduct on One's Child*

13  Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa

14   Marlino, MD, Ms. Cynthia Shultz, MD, Ms. Dianne Jacobetz, MD, Mr. Patrick

15   Philpot, DO, Mr. Shadi Malaeb, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly A.

16   Nardis, CRNP, Ms. Kimberly A. Butz, RN, & Mr. Jerry Hric, MD, Monroe County,

17   Mr. Tim Shaw & Ms. Adelaide W. Grace

18  532.    When a state actor, acting under color of law, without a court order, allows a

19  private entity to separate a parent from their newborn child without probable cause then

1  a special relationship of protective custody between the private entity, the state, and the

2  child arises.

3  533.   The protective custody between the private entity, the state, and the child, as

4  directed by, or assented to by a state actor, gives rise to duties under the Fourteenth

5  Amendment to the United States Constitution.

6  534.   Pa. Code § 28 outlines appropriate care for newborns by a private entity or state

7  agency.

8  535.   28 Pa. Code §§ 28.22 & 28.26 directs the timing of initial and follow up specimen

9  collections by birth centers and hospitals:

10  (a) Pa. Code §§ 28.22 & 28.26 states, "A birth center or hospital shall collect the initial

11      specimen from each newborn child regardless of feeding history or medical

12      condition, as close to 48 hours of age as possible but not later than 72 hours of age

13      unless the newborn child falls into one of the following categories:

14  (b) (3) *Early discharge.* If the newborn child is discharged from the birth center or

15      hospital before 24 hours of age, the birth center or hospital shall collect the initial

16      specimen from the newborn child as close to the time of discharge as is practicable,

17      regardless of feeding history or medical condition. The birth center or hospital shall

18      give the parent or guardian in whose care and custody the newborn child is

19      discharged written notification of the need for a repeat specimen and shall also

20      provide instructions to the parent or guardian for obtaining a repeat specimen from

21      the newborn child as described in § 28.26 (relating to timing of repeat specimen

22      collection); and,

1   (a)  *§ 28.26. Timing of [R]epeat [S]pecimen [C]ollection.* When the newborn child has

2         been discharged from a birth center or hospital before 24 hours of age, the birth

3         center or hospital shall collect or cause to be collected a repeat specimen from the

4         newborn child, regardless of feeding history or medical condition, as close to 48

5         hours of age as possible but not later than 72 hours of age."

6   536.    Considering there were not any complications with neither Mrs. Smith nor

7   Newborn baby J.A.S., Plaintiffs Mr. and Mrs. Smith requested that Newborn baby J.A.S.

8   and Mrs. Smith be discharged by Defendant St. Luke's Hospital within 24-hours of

9   Newborn baby J.A.S.'s birth.

10  537.    When Plaintiffs Mr. and Mrs. Smith requested that Newborn baby J.A.S. be

11  discharged within a day, they specifically requested that Newborn baby J.A.S. have all

12  necessary testing completed as soon as practically possible.

13  538.    Despite no complications with Newborn baby J.A.S., Plaintiffs Mr. and Mrs. Smith

14  were denied the right to take Newborn baby J.A.S. home from St. Luke's Hospital within

15  24-hours as requested.

16  539.    Defendants St. Luke's, Onsite Neonatal, OBHG PA PA, Ms. Teresa Marlino, MD,

17  Ms. Cynthia Shultz, MD, Ms. Dianne Jacobetz, MD, Mr. Patrick Philpot, DO, Mr. Shadi

18  Malaeb, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, Ms. Kimberly

19  A. Butz, RN, & Mr. Jerry Hric, MD, et al., collected specimens from Newborn baby

20  J.A.S. over the course of days and at their leisure, and without consent of the parents,

21  Plaintiffs Mr. and Mrs. Smith.

22  540.    Upon information and belief, due to the fact that neither a person, nor an entity,

23  nor a state actor, obtained a court order to place Newborn baby J.A.S. in protective

1   custody, and because Plaintiffs Mr. and Mrs. Smith were denied the right to choose,

2   consent, and schedule appropriate medical care for Newborn baby J.A.S., Defendants

3   St. Luke's Hospital, Onsite Neonatal, OBHG PA, and Monroe County CYS, among other

4   Defendants violated *28 Pa. Code § 28.22*.

5   541.   Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal,

6   OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Ms. Dianne Jacobetz,

7   MD, Mr. Patrick Philpot, DO, Mr. Shadi Malaeb, MD, Ms. Patricia Bates, CRNP, Ms.

8   Kimberly A. Nardis, CRNP, Ms. Kimberly A. Butz, RN, & Mr. Jerry Hric, MD, Monroe

9   County, Mr. Tim Shaw & Ms. Adelaide W. Grace, by virtue of custom, pattern, practice,

10   policy, lack of supervision and/or failure of training and/or discipline, acted in an

11   unconstitutional fashion by Plaintiff parents Mr. and Mrs. Smith to choose, consent, or

12   schedule medical care for Newborn baby J.A.S., both prior to and after Newborn baby

13   J.A.S. was taken into manufactured protective custody under a *Monell* legal theory.

14   542.   Upon information and belief, Plaintiffs can demonstrate by a preponderance of

15   evidence that each individual Defendant State Actor conspired with at least one

16   Defendant Private Actor elsewhere listed in this complaint.

17   543.   The conspiracy between the Defendant parties and their agents, employees, or

18   assigns violates *42 U.S.C. § 1983*.

19   544.   Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

20   MD, Ms. Cynthia Shultz, MD, Ms. Dianne Jacobetz, MD, Mr. Patrick Philpot, DO, Mr.

21   Shadi Malaeb, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, Ms.

22   Kimberly A. Butz, RN, & Mr. Jerry Hric, MD, Monroe County, Mr. Tim Shaw & Ms.

23   Adelaide W. Grace, under color of law, by not allowing Plaintiff parents Mr. and Mrs.

1   Smith to choose, consent, or schedule Newborn baby J.A.S.'s medical testing both

2   before and after when a state created "protective custody" was created between state

3   actor private Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, the state, and

4   Newborn baby J.A.S. violated Plaintiff Smith Family's rights under the Equal Protection

5   Clause of the Fourteenth Amendment to the United States Constitution.

6   545.    Plaintiffs assert this claim is a breach of the Equal Protection Clause pursuant to

7   *42 U.S.C. § 1983*.

8   546.    Plaintiffs have suffered substantial harm as a result of Defendants' conduct,

9   including but not limited to, emotional and psychological pain and suffering and injury to

10   their reputations.

11   547.    Plaintiffs Mr. & Mrs. Smith have suffered substantial harm as a result of

12   Defendants' conduct, including but not limited to, emotional and psychological distress,

13   pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully

14   requests appropriate compensatory damages to account for PTSD therapies and other

15   related treatments as they have been and will continue to be necessary; Plaintiffs

16   respectfully request an amount of $84,800 in compensatory damages per Defendant.

17   548.    Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

18   Neonatal, and/or OBHG PA, through its employees, agents, or assigns, and therefore,

19   their ability to afford the appropriate training to avoid this egregious violation of the U.S.

20   Constitution, and Defendants Monroe County through its employees, agents, or

21   assigns, Mr. Tim Shaw, and Ms. Adelaide. W. Grace's egregious violations of legal

22   obligations to accurately enforce the law, and, since harm was actually caused to the

23   current Plaintiff Smith Family, and since harm is likely to continue to harm future

1   postpartum families, and because the acts of the Defendants and their agents, assigns,

2   or employees callously disregarded the Plaintiff's rights in a reckless and wanton

3   manner, the Plaintiffs respectfully request the imposition of punitive damages on

4   Defendants St. Luke's Hospital, Onsite Neonatal, and/or OBHG PA PA, Monroe County

5   through its employees, agents, or assigns, Mr. Tim Shaw, and Ms. Adelaide. W. Grace

6   to deter such Defendants from committing to such conduct in the future which violates

7   the Fourteenth Amendment of the United States Constitution Plaintiffs respectfully

8   request an amount of $1,000,000 in punitive damages per Defendants Ms. Dianne

9   Jacobetz, MD, Mr. Shadi Malaeb, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly A.

10  Nardis, CRNP, Ms. Kimberly A. Butz, RN, Mr. Jerry Hric, MD, and Mr. Tim Shaw;

11  $5,000,000 per Defendants Mr. Patrick Philpot, DO and Ms. Adelaide W. Grace; and

12  $10,000,000 per Defendants Monroe County, St. Luke's Hospital, Onsite Neonatal,

13  OBHG PA, Ms. Teresa Marlino, MD, and Ms. Cynthia Shultz, MD.

14  549.   In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

15  any actual injury despite the deprivation of their federal rights, the Plaintiffs respectfully

16  request a nominal judgment of $1.00.

17

18  ## XI.   Fourteenth Amendment

19  ### *Procedural Due Process*

20  ### *Violation of Right to have a Newborn Separated from its Parents*

21  ### *via Court Order*

Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", "Security Guard

'Freddy", "Security Guard 'Joe'", "Security Guard 'Nate'", "Security Guards

'Unknown'", "Security Supervisor 'Unknown'", "Head of Hospital Security

'Unknown'", Mr. Jerry Hric, MD, Monroe County, Northampton County, Mr. Tim

Shaw & Ms. Adelaide W. Grace

550.    When a state actor, acting under color of law, without a court order, allows a

private entity to separate a parent from their newborn child without probable cause then

a special relationship of protective custody between the private entity, the state, and the

child arises.

551.    The protective custody between the private entity, the state, and the child, as

directed by, or assented to by a state actor, gives rise to duties under the Fourteenth

Amendment to the United States Constitution.

552.    If Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA PA, Ms. Teresa

Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq.,

Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", "Security Guard

'Freddy", "Security Guard 'Joe'", "Security Guard 'Nate'", "Security Guards 'Unknown'",

"Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", and Mr. Jerry

Hric, MD maintained custody of Newborn baby J.A.S after the Defendants had been

instructed to relinquish custody of Newborn baby J.A.S. to Plaintiffs Mr. & Ms. Smith

1    then the state actor role that these Defendants took on was that of children and youth

2    services.

3    553.    Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal,

4    OBHG PA PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe,

5    Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital

6    Leadership Team", "Security Guard 'Freddy", "Security Guard 'Joe'", "Security Guard

7    'Nate'", "Security Guards 'Unknown'", "Security Supervisor 'Unknown'", "Head of

8    Hospital Security 'Unknown'", and Mr. Jerry Hric, MD while acting in the state's role of

9    children and youth services did not follow the legally required and appropriate

10   procedures to have a newborn child removed into protective custody from its parents.

11   554.    Pa. Code § 6315 allows for children to be taken into protective custody by a

12   private entity or state agency.

13   555.    Pa. Code § 6315 (a)(4) instructs the Office of Children and Youth Services to

14   take a child into protective custody from abuse after the receipt of a court order.

15   556.    Pa. Code § 6315 (a)(4) instructs that an Office of Children and Youth Services

16   agency worker may not take a child into custody without judicial authorization.

17   557.    Upon information and belief, Monroe County through its employees, agents, or

18   assigns, Mr. Tim Shaw, and Ms. Adelaide. W. Grace, via its Office of Children and

19   Youth Services or a Private Actor who was an assign, agent, or employee of

20   Defendants St. Luke's, Onsite Neonatal, and/or OBHG PA, ordered St. Luke's Hospital,

21   Onsite Neonatal, and/or OBHG PA to take protective custody of newborn baby J.A.S.,

22   either through active communication to do so, or through awareness of Plaintiff Smith

23   Family's situation and passively assenting to the conduct of taking newborn baby J.A.S.

1   into protective custody under the care and responsibility of Defendants St. Luke's

2   Hospital, Onsite Neonatal, and OBHG PA.

3   558.   Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal,

4   and/or OBHG PA, through its employees, agents, or assigns, Ms. Teresa Marlino, MD,

5   Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla

6   Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", "Security Guard 'Freddy",

7   "Security Guard 'Joe'", "Security Guard 'Nate'", "Security Guards 'Unknown'", "Security

8   Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Jerry Hric, MD, and,

9   Monroe County through its employees, agents, or assigns Mr. Tim Shaw, and Ms. A. W.

10   Grace, via its Office of Children and Youth Services violated Pa. Code § 6315 (a)(4) by

11   taking, or assenting to the taking of Newborn baby J.A.S. into protective custody without

12   a court order, and without legal necessity to separate Plaintiff Newborn baby J.A.S. from

13   his Plaintiff parents Mr. and Mrs. Smith.

14   559.   Under a *Monell* legal theory, upon information and belief, Defendants St. Luke's

15   Hospital, Onsite Neonatal, and/or OBHG PA, through its employees, agents, or assigns,

16   Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert

17   L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team",

18   "Security Guard 'Freddy", "Security Guard 'Joe'", "Security Guard 'Nate'", "Security

19   Guards 'Unknown'", "Security Supervisor 'Unknown'", "Head of Hospital Security

20   'Unknown'", Mr. Jerry Hric, MD, and, Monroe County through its employees, agents, or

21   assigns, Mr. Tim Shaw, and Ms. A. W. Grace, by virtue of custom, pattern, practice,

22   policy, lack of supervision and/or failure of training and/or discipline, acted in an

23   unconstitutional fashion by separating parents from their newborn child without a court

1    order, based solely on a report that the hospital had unconfirmed an undifferentiated

2    drug test results for legal amphetamines and illegal methamphetamines, and without

3    any basis to believe that the mother abused or neglected her child.

4    560.    Upon information and belief, Plaintiffs Mr. and Mrs. Smith allege that each

5    Defendant violated their duty to not have a newborn baby separated from its parents

6    without a court order when Defendant Private and State Actors concerted St. Luke's

7    Hospital's actions to separate Plaintiffs Mr. and Mrs. Smith from newborn baby J.A.S.

8    under threat of arrest.

9    561.    Upon information and belief, Plaintiffs can demonstrate by a preponderance of

10   evidence that each individual Defendant State Actor conspired with at least one

11   Defendant Private Actor elsewhere listed in this claim.

12   562.    The conspiracy between the Defendant parties and their agents, employees, or

13   assigns violates *42 U.S.C. § 1983*.

14   563.    Upon information and belief, Plaintiffs Mr. and Mrs. Smith allege that each

15   Private Defendant violated their duty to allow parents and newborn children to be

16   together unless a court order directs otherwise or exigent circumstances specifically

17   outlined by law are present between the hospital and its providers, and Plaintiff

18   Newborn baby J.A.S. when they concerted St. Luke's Hospital's actions to separate

19   Plaintiffs Mr. and Mrs. Smith from Plaintiff Newborn baby J.A.S. under threat of arrest.

20   564.    Defendants St. Luke's Hospital, Onsite Neonatal, and/or OBHG PA, through its

21   employees, agents, or assigns, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr.

22   Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

23   "Hospital Leadership Team", "Security Guard 'Freddy", "Security Guard 'Joe'", "Security

1    Guard 'Nate'", "Security Guards 'Unknown'", "Security Supervisor 'Unknown'", "Head of

2    Hospital Security 'Unknown'", Mr. Jerry Hric, MD, and, Monroe County through its

3    employees, agents, or assigns, Mr. Tim Shaw, and Ms. A. W. Grace, under color of law,

4    by creating or allowing a state created "protective custody" to be created between

5    private Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, and Plaintiff

6    Newborn baby J.A.S. violated Plaintiff Smith Family's rights under the Equal Protection

7    Clause of the Fourteenth Amendment to the United States Constitution.

8    565.    Plaintiffs assert this claim is a breach of the Equal Protection Clause pursuant to

9    *42 U.S.C. § 1983*.

10   566.    Plaintiffs Mr. & Mrs. Smith have suffered substantial harm as a result of

11   Defendants' conduct, including but not limited to, emotional and psychological distress,

12   pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully

13   requests appropriate compensatory damages to account for PTSD therapies and other

14   related treatments as they have been and will continue to be necessary; Plaintiffs

15   respectfully request an amount of $84,800 in compensatory damages per Defendant.

16   567.    Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

17   Neonatal, and/or OBHG PA, through its employees, agents, or assigns, Ms. Teresa

18   Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq.,

19   Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", "Head of Hospital

20   Security 'Unknown'", Mr. Jerry Hric, MD, and therefore, their ability to afford the

21   appropriate training to avoid this egregious violation of the U.S. Constitution, and

22   Defendants Monroe County through its employees, agents, or assigns, Mr. Tim Shaw,

23   and Ms. Adelaide. W. Grace's egregious violations of leal obligations to accurately

1   enforce the law, and, since harm was actually caused to the current Plaintiff Smith

2   Family, and since harm is likely to continue to harm future postpartum families, and

3   because the acts of the Defendants and their agents, assigns, or employees callously

4   disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs

5   respectfully request the imposition of punitive damages on Defendants St. Luke's

6   Hospital, Onsite Neonatal, and/or OBHG PA, through its employees, agents, or assigns,

7   Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert

8   L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", "Head

9   of Hospital Security 'Unknown'", Mr. Jerry Hric, MD, Monroe County through its

10  employees, agents, or assigns, Mr. Tim Shaw, and Ms. Adelaide. W. Grace to deter

11  such Defendants from committing to such conduct in the future which violates the

12  Fourteenth Amendment of the United States Constitution; Plaintiffs respectfully request

13  an amount of $500,000 in punitive damages per Defendants "Security Guard 'Freddy",

14  "Security Guard 'Joe'", "Security Guard 'Nate'", and "Security Guards 'Unknown'";

15  $1,000,000 per Defendants "Security Supervisor 'Unknown'", "Head of Hospital Security

16  'Unknown'", Mr. Tim Shaw, and Mr. Jerry Hric, MD; $5,000,000 per Defendants Mr.

17  Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, Ms.

18  Adelaide W. Grace, and "Hospital Leadership Team"; and $10,000,000 per Defendants

19  St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia

20  Shultz, MD, Monroe County, and Northampton County.

21  568.   In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

22  any actual injury despite the deprivation of their federal rights, the Plaintiffs respectfully

23  request a nominal judgment of $1.00.

# XII.  <u>Fourteenth Amendment</u>

## *<u>Procedural Due Process</u>*

### *<u>Violation of Right to have a Newborn Separated from its Parents</u>*

### *<u>for Twenty-Four Hours or Less Without a Court Order</u>*

<u>Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,</u>

<u>MD, Ms. Cynthia Shultz, MD, Ms. Dianne Jacobetz, MD, Mr. Patrick Philpot, DO,</u>

<u>Mr. Shadi Malaeb, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP,</u>

<u>Ms. Kimberly A. Butz, RN,  Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.</u>

<u>Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", "Security Guard</u>

<u>'Freddy", "Security Guard 'Joe'", "Security Guard 'Nate'", "Security Guards</u>

<u>'Unknown'", "Security Supervisor 'Unknown'", "Head of Hospital Security</u>

<u>'Unknown'", Mr. Jerry Hric, MD, Monroe County, Northampton County, Mr. Tim</u>

<u>Shaw & Ms. Adelaide W. Grace</u>

569.   When a state actor, acting under color of law, without a court order, allows a

private entity to separate a parent from their newborn child without probable cause then

a special relationship of protective custody between the private entity, the state, and the

child arises.

570.   The protective custody between the private entity, the state, and the child, as

directed by, or assented to by a state actor, gives rise to duties under the Fourteenth

Amendment to the United States Constitution.

571.   Pa. Code § 6315 allows for children to be taken into protective custody by a private entity or state agency.

572.   Pa. Code § 6315 (b) states that the duration to take a child into protective custody for 24-hours begins when protective custody begins.

573.   Pa. Code § 6315 (b) states that "[e]ach court shall insure that a judge is available 24 hours a day, 365 days a year to accept and decide the actions brought by a county agency under this subsection within the 24-hour period."

574.   Upon information and belief, on or around 7pm on April 9th, 2021, Plaintiff Newborn baby J.A.S. was taken into protective custody by Defendant St. Luke's Hospital along with other Defendants and he was not returned to both of his parents within a 24-hour period.

575.   Upon information and belief, neither St. Luke's Hospital, nor Monroe County Children and Youth Services, nor any other named Defendant in this claim obtained a court order to place Plaintiff Newborn baby J.A.S. in protective custody.

576.   Defendants St. Luke's Hospital, Onsite Neonatal, and Monroe County CYS, among other Defendants named in this claim, had an affirmative duty to attempt to contact a judge when Plaintiff newborn baby J.A.S. was taken into protective custody.

577.   Upon information and belief, due to the fact that neither a person, nor an entity, nor a state actor, obtained a court order to place Newborn baby J.A.S. in protective custody, Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA PA, and Monroe County CYS, among other Defendants violated Pa. Code § 6315 (b).

578.   Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, through its employees, agents, or assigns, Ms. Teresa Marlino, MD, Ms.

1    Cynthia Shultz, MD, Ms. Dianne Jacobetz, MD, Mr. Patrick Philpot, DO, Mr. Shadi

2    Malaeb, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, Ms. Kimberly

3    A. Butz, RN,  Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

4    Dawn Hoffman, "Hospital Leadership Team", "Security Guard 'Freddy", "Security Guard

5    'Joe'", "Security Guard 'Nate'", "Security Guards 'Unknown'", "Security Supervisor

6    'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Jerry Hric, MD and, Monroe and

7    Northampton Counties through its employees, agents, or assigns, Mr. Tim Shaw, and

8    Ms. Adelaide. W. Grace, via its Office of Children and Youth Services violated Pa. Code

9    § 6315 (a)(4) by taking, or assenting to the taking of newborn baby J.A.S. into protective

10   custody without a court order, and without legal necessity to separate Plaintiff Newborn

11   baby J.A.S. from his Plaintiff parents Mr. and Mrs. Smith.

12   579.    Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal,

13   OBHG PA PA, through its employees, agents, or assigns, Ms. Teresa Marlino, MD, Ms.

14   Cynthia Shultz, MD, Ms. Dianne Jacobetz, MD, Mr. Patrick Philpot, DO, Mr. Shadi

15   Malaeb, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, Ms. Kimberly

16   A. Butz, RN,  Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

17   Dawn Hoffman, "Hospital Leadership Team", "Security Guard 'Freddy", "Security Guard

18   'Joe'", "Security Guard 'Nate'", "Security Guards 'Unknown'", "Security Supervisor

19   'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Jerry Hric, and, Monroe and

20   Northampton Counties through its employees, agents, or assigns, Mr. Tim Shaw, and

21   Ms. Adelaide. W. Grace, via its Office of Children and Youth Services, by virtue of

22   custom, pattern, practice, policy, lack of supervision and/or failure of training and/or

23   discipline, acted in an unconstitutional fashion by separating parents from their newborn

1   child without a court order, based solely on a report that the hospital had unconfirmed

2   and undifferentiated drug test results for legal amphetamines and illegal

3   methamphetamines, and without any basis to believe that the mother abused or

4   neglected her child by not returning full custody of the newborn baby child to its parents

5   within a 24-hour period as prescribed by law.

6   580.   Upon information and belief, Plaintiffs can demonstrate by a preponderance of

7   evidence that each individual Defendant State Actor conspired with at least one

8   Defendant Private Actor elsewhere listed in this complaint.

9   581.   The conspiracy between the Defendant parties and their agents, employees, or

10   assigns violates *42 U.S.C. § 1983*.

11   582.   Defendants Mr. Tim Shaw & Ms. Adelaide W. Grace, under color of law, acting

12   through the Office of Children and Youth Services, by creating or allowing a state

13   created "protective custody" to be created between private Defendant St. Luke's

14   Hospital, Onsite Neonatal, OBHG PA, and Plaintiff Newborn baby J.A.S. violated

15   Plaintiff Smith Family's rights under the Equal Protection Clause of the Fourteenth

16   Amendment to the United States Constitution by not returning full custody of the

17   newborn baby child to its parents within a 24-hour period as prescribed by law.

18   583.   Under a  *Monell* legal theory, upon information and belief, Plaintiffs can

19   demonstrate by a preponderance of the evidence that Ms. Teresa Marlino, MD, Ms.

20   Cynthia Shultz, MD, Ms. Dianne Jacobetz, MD, Mr. Patrick Philpot, DO, Mr. Shadi

21   Malaeb, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, Ms. Kimberly

22   A. Butz, RN,  Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

23   Dawn Hoffman, "Hospital Leadership Team", "Security Guard 'Freddy", "Security Guard

'Joe'", "Security Guard 'Nate'", "Security Guards 'Unknown'", "Security Supervisor

'Unknown'", "Head of Hospital Security 'Unknown'" violated the Smith Family's federal

rights, and that supervisor Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA,

"Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", and Mr. Jerry

Hric, MD, should be held liable for conduct of subordinates Ms. Teresa Marlino, MD,

Ms. Cynthia Shultz, MD, Ms. Dianne Jacobetz, MD, Mr. Patrick Philpot, DO, Mr. Shadi

Malaeb, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, Ms. Kimberly

A. Butz, RN,  Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

Dawn Hoffman, "Hospital Leadership Team", "Security Guard 'Freddy", "Security Guard

'Joe'", "Security Guard 'Nate'", "Security Guards 'Unknown'", "Security Supervisor

'Unknown'", "Head of Hospital Security 'Unknown'", because as supervisors directed the

actions in question, or had actual knowledge of the violation and acquiesced to it, or

with deliberate indifference to the consequences, established and maintained a policy,

practice or custom which directly caused the violation.

584.   Under a *Monell* legal theory, upon information and belief, Plaintiffs can

demonstrate by a preponderance of the evidence that Mr. Tim Shaw violated the Smith

Family's federal rights, and that supervisor Defendant Ms. Adelaide Grace should be

held liable for conduct of subordinate Mr. Tim Shaw, because as supervisor directed the

actions in question, or had actual knowledge of the violation and acquiesced to it, or

with deliberate indifference to the consequences, established and maintained a policy,

practice or custom which directly caused the violation.

585.   Plaintiffs assert this claim is a breach of the Equal Protection Clause pursuant to

*42 U.S.C. § 1983.*

586.    Plaintiffs Mr. & Mrs. Smith have suffered substantial harm as a result of

Defendants' conduct, including but not limited to, emotional and psychological distress,

pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully

requests appropriate compensatory damages to account for PTSD therapies and other

related treatments as they have been and will continue to be necessary; Plaintiffs

respectfully request an amount of $84,800 in compensatory damages per Defendant.

587.    Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

Neonatal, and/or OBHG PA, through its employees, agents, or assigns,  Ms. Teresa

Marlino, MD, Ms. Cynthia Shultz, MD, Ms. Dianne Jacobetz, MD, Mr. Patrick Philpot,

DO, Mr. Shadi Malaeb, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP,

Ms. Kimberly A. Butz, RN,  Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla

Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", "Security Guard 'Freddy",

"Security Guard 'Joe'", "Security Guard 'Nate'", "Security Guards 'Unknown'", "Security

Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Jerry Hric, MD, and

therefore, their ability to afford the appropriate training to avoid this egregious violation

of the U.S. Constitution, and Defendants Monroe County through its employees, agents,

or assigns, Mr. Tim Shaw, and Ms. Adelaide. W. Grace's egregious violations of legal

obligations to accurately enforce the law, and, since harm was actually caused to the

current Plaintiff Smith Family, and since harm is likely to continue to harm future

postpartum families, and because the acts of the Defendants and their agents, assigns,

or employees callously disregarded the Plaintiff's rights in a reckless and wanton

manner, the Plaintiffs respectfully request the imposition of punitive damages on

Defendants St. Luke's Hospital, Onsite Neonatal, and/or OBHG PA, through its

1   employees, agents, or assigns, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr.

2   Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

3   "Hospital Leadership Team", "Head of Hospital Security 'Unknown'", Mr. Jerry Hric, MD,

4   Monroe County through its employees, agents, or assigns, Mr. Tim Shaw, and Ms.

5   Adelaide. W. Grace to deter such Defendants from committing to such conduct in the

6   future which violates the Fourteenth Amendment of the United States Constitution;

7   Plaintiffs respectfully request an amount of $500,000 in punitive damages per

8   Defendants "Security Guard 'Freddy", "Security Guard 'Joe'", "Security Guard 'Nate'",

9   and "Security Guards 'Unknown'"; $1,000,000 per Defendants Ms. Dianne Jacobetz,

10  MD, Mr. Shadi Malaeb, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP,

11  Ms. Kimberly A. Butz, RN, "Security Supervisor 'Unknown'", "Head of Hospital Security

12  'Unknown'", Mr. Jerry Hric, MD, and Mr. Tim Shaw; $5,000,000 per Defedants Mr.

13  Patrick Philpot, DO, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack,

14  Ms. Dawn Hoffman, "Hospital Leadership Team", and Ms. Adelaide W. Grace; and

15  $10,000,000 per Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

16  Teresa Marlino, MD, Ms. Cynthia Shultz, Monroe County, Northampton County.

17  588.   In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

18  any actual injury despite the deprivation of their federal rights, the Plaintiffs respectfully

19  request a nominal judgment of $1.00.

20  ## XIII.   <u>Fourteenth Amendment</u>

21  *<u>Procedural Due Process</u>*

1     *Violation of Right to Proper Procedural Notice When a Child is Taken into*

2                           *Protective Custody*

3     Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Monroe County,

4                    Mr. Tim Shaw & Ms. Adelaide W. Grace

5    589.    When a state actor, acting under color of law, without a court order, allows a

6 private entity to separate a parent from their newborn child without probable cause then

7 a special relationship of protective custody between the private entity, the state, and the

8 child arises.

9    590.    The protective custody between the private entity, the state, and the child, as

10 directed by, or assented to by a state actor, gives rise to duties under the Fourteenth

11 Amendment to the United States Constitution.

12    591.    Pa. Code § 6315 allows for children to be taken into protective custody by a

13 private entity or state agency.

14    592.    Pa. Code § 6315 (c)(1) states, "…an individual taking a child into protective

15 custody under this chapter shall immediately, and within 24 hours, in writing, notify the

16 parent, guardian or other custodian of the child of the whereabouts of the child, unless

17 prohibited by court order, and the reasons for the need to take the child into protective

18 custody and shall immediately notify the appropriate county agency in order that

19 proceedings under 42 Pa. C.S. Ch. 63 (relating to juvenile matters) may be initiated, if

20 appropriate.

21    593.    Upon information and belief, no Defendant obtained a court order to place

22 Plaintiff Newborn baby J.A.S. into protective custody and therefore no knowledge about

1     Newborn baby J.A.S. was to be prohibited to Plaintiff parents Mr. and Mrs. Smith by

2     either a private entity, actor, or the state.

3     594.     Upon information and belief, Plaintiffs Mr. and Mrs. Smith, within 24-hours of

4     Defendants St. Luke's Hospital, Onsite Neonatal, and OBHG PA taking protective

5     custody of Plaintiff Newborn baby J.A.S., did not ever receive a notice for the rationale

6     of taking Newborn baby J.A.S. into protective custody and the whereabouts of Plaintiff

7     Newborn baby J.A.S.

8     595.     Defendants St. Luke's Hospital, Onsite Neonatal, and Monroe County CYS,

9     among other Defendants named in this allegation, had an affirmative duty to contact

10     Plaintiffs Mr. and Mrs. Smith, in writing, about the whereabouts of, and rationale for,

11     placing Plaintiff Newborn baby J.A.S into protective custody.

12     596.     Upon information and belief, due to the fact that neither a person, nor an entity,

13     nor a state actor, obtained a court order to place Plaintiff Newborn baby J.A.S. in

14     protective custody, and because Plaintiffs Mr. and Mrs. Smith were not given proper

15     notice of the whereabouts of, and rationale for protective custody in writing, Defendants

16     St. Luke's Hospital, Onsite Neonatal, OBHG PA, and Monroe County CYS, among other

17     Defendants violated Pa. Code § 6315 (c)(1).

18     597.     Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal,

19     OBHG PA PA, Monroe County, Mr. Tim Shaw & Ms. Adelaide W. Grace, by virtue of

20     custom, pattern, practice, policy, lack of supervision and/or failure of training and/or

21     discipline, acted in an unconstitutional fashion by not providing proper legal notice to the

22     Plaintiff parents Mr. and Mrs. Smith as to the whereabouts of, and rationale for, taking

23     newborn baby J.A.S. into protective custody.

598.    Upon information and belief, Plaintiffs can demonstrate by a preponderance of evidence that each individual Defendant State Actor conspired with at least one Defendant Private Actor elsewhere listed in this complaint.

599.    The conspiracy between the Defendant parties and their agents, employees, or assigns violates *42 U.S.C. § 1983*.

600.    Upon information and belief, Defendants, St. Luke's Hospital, Onsite Neonatal and OBHG PA Monroe County, Mr. Tim Shaw & Ms. Adelaide W. Grace, under color of law, by not giving proper notice of state created "protective custody" violated Plaintiff Smith Family's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

601.    Upon information and belief, Plaintiffs can demonstrate by a preponderance of evidence that the Defendant state actor Private Entities St. Luke's Hospital, Onsite Neonatal, and OBHG PA supervised one or more people in connection with this allegation and are therefore liable under a *Monell* legal theory.

602.    Upon information and belief, Plaintiffs can demonstrate by a preponderance of the evidence that Mr. Tim Shaw violated Mrs. Smith's federal rights, and that supervisor Defendant Ms. Adelaide Grace should be held liable for conduct of subordinate Mr. Tim Shaw, because as supervisor directed the actions in question, or had actual knowledge of the violation and acquiesced to it, or with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violation under a *Monell* legal theory.

603.    Plaintiffs assert this claim is a breach of the Equal Protection Clause pursuant to *42 U.S.C. § 1983*.

604.   Plaintiffs Mr. & Mrs. Smith have suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully request an amount of $84,800 in compensatory damages per Defendant.

605.   Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite Neonatal, and/or OBHG PA, through its employees, agents, or assigns, and therefore, their ability to afford the appropriate training to avoid this egregious violation of the U.S. Constitution, and Defendants Monroe County through its employees, agents, or assigns, Mr. Tim Shaw, and Ms. Adelaide. W. Grace's egregious violations of legal obligations to accurately enforce the law, and, since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum families, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the imposition of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, and/or OBHG PA, Monroe County through its employees, agents, or assigns, Mr. Tim Shaw, and Ms. Adelaide. W. Grace to deter such Defendants from committing to such conduct in the future which violates the Fourteenth Amendment of the United States Constitution Plaintiffs respectfully request an amount of $1,000,000 in punitive damages per Defendants Mr. Tim Shaw; $5,000,000 per Defendants Onsite Neonatal, and OBHG PA; and $10,000,000 per Defendants St. Luke's Hospital and Monroe County.

606. In the unlikely event that the jury does not find that Plaintiff Smith Family suffered any actual injury despite the deprivation of their federal rights, the Plaintiffs respectfully request a nominal judgment of $1.00.

# XIV. <u>Fourteenth Amendment</u>

## *Procedural Due Process*

### <u>*Violation of Right to Notice of Basic Rights and Right to Notice of Counsel*</u>

### <u>*When a Child is Taken into Protective Custody*</u>

<u>Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Monroe County,</u>

<u>Mr. Tim Shaw & Ms. Adelaide W. Grace</u>

607. When a state actor, acting under color of law, without a court order, allows a private entity to separate a parent from their newborn child without probable cause then a special relationship of protective custody between the private entity, the state, and the child arises.

608. The protective custody between the private entity, the state, and the child, as directed by, or assented to by a state actor, gives rise to duties under the Fourteenth Amendment to the United States Constitution.

609. Pa. Code § 6315 allows for children to be taken into protective custody by a private entity or state agency.

610. Pa. Code § 6315 (f) states, "A conference between the parent, guardian or other custodian of the child taken into temporary protective custody pursuant to this section

1  and the employee designated by the county agency to be responsible for the child shall

2  be held within 48 hours of the time that the child is taken into custody for the purpose of:

3        (3)  Explaining to the parent, guardian or other custodian the rights provided for

4             under 42 Pa.C.S. §§ 6337 (relating to right to counsel) and 6338 (relating to other

5             basic rights)."

6  611.   On or about 7pm on April 9th, 2021 newborn baby Julian was taken into

7  protective custody by St. Luke's Hospital, Onsite Neonatal, and OBHG PA.

8  612.   By approximately 7pm on April 11th, 2021, there had not been a conference held

9  between the Plaintiffs Mr. and Mrs. Smith, a representative of Defendants St. Luke's

10  Hospital and/or Onsite Neonatal, and/or OBHG PA, and a representative of either

11  Northampton County or Monroe County Children and Youth Services for the purposes

12  of explaining Plaintiff Newborn baby J.A.S.'s detention or a determination of whether

13  maintaining protective custody was necessary.

14  613.   When newborn baby J.A.S. was placed in protective custody against the consent

15  of Plaintiffs Mr. and Mrs. Smith.

16  614.   Mr. and Mrs. Smith were not provided with an explanation of rights under 42 Pa.

17  C. S. §§ 6337 (relating to right to counsel) and 6338 (relating to other basic rights) by

18  any Defendant.

19  615.   Upon information and belief, due to the fact that neither a person, nor an entity,

20  nor a state actor, obtained a court order to place Plaintiff Newborn baby J.A.S. in

21  protective custody, and because Plaintiffs Mr. and Mrs. Smith were not given notice of

22  their basic rights and their right to counsel within 48-hours of Plaintiff Newborn baby

23  J.A.S. being taken into protective custody, Defendants St. Luke's Hospital, Onsite

1   Neonatal, OBHG PA, and Monroe County CYS, among other Defendants violated Pa.

2   Code § 6315 (f)(3).

3   616.   Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal,

4   OBHG PA, Monroe County, Mr. Tim Shaw & Ms. Adelaide W. Grace, by virtue of

5   custom, pattern, practice, policy, lack of supervision and/or failure of training and/or

6   discipline, acted in an unconstitutional fashion by not providing adequate legal notice of

7   basic rights and right to counsel to the Plaintiff parents Mr. and Mrs. Smith when taking

8   newborn baby J.A.S. into protective custody.

9   617.   Upon information and belief, Plaintiffs can demonstrate by a preponderance of

10   evidence that each individual Defendant State Actor conspired with at least one

11   Defendant Private Actor elsewhere listed in this complaint.

12   618.   The conspiracy between the Defendant parties and their agents, employees, or

13   assigns violates *42 U.S.C. § 1983*.

14   619.   Defendants Monroe County, Mr. Tim Shaw & Ms. Adelaide W. Grace, under

15   color of law, by not giving a legally mandated notice of basic and counsel rights when a

16   state created "protective custody" was created between state actor private Defendants

17   St. Luke's Hospital, Onsite Neonatal, and/or OBHG PA, and Plaintiff Newborn baby

18   J.A.S. violated Plaintiff Smith Family's rights under the Equal Protection Clause of the

19   Fourteenth Amendment to the United States Constitution.

20   620.   Upon information and belief, Plaintiffs can demonstrate by a preponderance of

21   evidence that the state actor Defendant Private Entities St. Luke's Hospital, Onsite

22   Neonatal, and OBHG PA supervised one or more people in connection with this

23   allegation and are therefore liable under a *Monell* legal theory because as supervisors

1  directed the actions in question, or had actual knowledge of the violation and

2  acquiesced to it, or with deliberate indifference to the consequences, established and

3  maintained a policy, practice or custom which directly caused the violation.

4  621.    Upon information and belief, Plaintiffs can demonstrate by a preponderance of

5  the evidence that Mr. Tim Shaw violated Mrs. Smith's federal rights, and that supervisor

6  Defendant Ms. Adelaide W. Grace should be held liable for conduct of subordinates and

7  Mr. Tim Shaw, because as supervisor directed the actions in question, or had actual

8  knowledge of the violation and acquiesced to it, or with deliberate indifference to the

9  consequences, established and maintained a policy, practice or custom which directly

10  caused the violation.

11  622.    Plaintiffs assert this claim is a breach of the Equal Protection Clause pursuant to

12  *42 U.S.C. § 1983*.

13  623.    Plaintiffs Mr. & Mrs. Smith have suffered substantial harm as a result of

14  Defendants' conduct, including but not limited to, emotional and psychological distress,

15  pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully

16  requests appropriate compensatory damages to account for PTSD therapies and other

17  related treatments as they have been and will continue to be necessary; Plaintiffs

18  respectfully request an amount of $84,800 in compensatory damages per Defendant.

19  624.    Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

20  Neonatal, and/or OBHG PA, through its employees, agents, or assigns, and therefore,

21  their ability to afford the appropriate training to avoid this egregious violation of the U.S.

22  Constitution, and Defendants Monroe County through its employees, agents, or

23  assigns, Mr. Tim Shaw, and Ms. Adelaide. W. Grace's egregious violations of legal

1   obligations to accurately enforce the law, and, since harm was actually caused to the

2   current Plaintiff Smith Family, and since harm is likely to continue to harm future

3   postpartum families, and because the acts of the Defendants and their agents, assigns,

4   or employees callously disregarded the Plaintiff's rights in a reckless and wanton

5   manner, the Plaintiffs respectfully request the imposition of punitive damages on

6   Defendants St. Luke's Hospital, Onsite Neonatal, and/or OBHG PA, Monroe County

7   through its employees, agents, or assigns, Mr. Tim Shaw, and Ms. Adelaide. W. Grace

8   to deter such Defendants from committing to such conduct in the future which violates

9   the Fourteenth Amendment of the United States Constitution Plaintiffs respectfully

10  request an amount of $1,000,000 in punitive damages per Defendants Mr. Tim Shaw;

11  $5,000,000 per Defendants Onsite Neonatal, and OBHG PA; and $10,000,000 per

12  Defendants St. Luke's Hospital and Monroe County.

13  625.   In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

14  any actual injury despite the deprivation of their federal rights, the Plaintiffs respectfully

15  request a nominal judgment of $1.00.

16                    ## XV.   <u>Fourteenth Amendment</u>

17                          *<u>Procedural Due Process</u>*

18   *<u>Violation of Parent's Right to Have Policies and Procedures for the Care and</u>*

19          *<u>Treatment of an Allegedly Drug-Dependent Child Implemented</u>*

20   <u>Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa</u>

21   <u>Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne</u>

1    <u>Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr.</u>

2    <u>Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms.</u>

3    <u>Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms.</u>

4    <u>Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla</u>

5    <u>Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD</u>

6    626.    When a state actor, acting under color of law, without a court order, allows a

7    private entity to separate a parent from their newborn child without probable cause then

8    a special relationship of protective custody between the private entity, the state, and the

9    child arises.

10    627.    The protective custody between the private entity, the state, and the child, as

11    directed by, or assented to by a state actor, gives rise to duties under the Fourteenth

12    Amendment to the United States Constitution.

13    628.    *28 Pa. Code § 137.21(b)(12)* outlines policies and procedures for obstetrical

14    services for birth centers and hospitals:

15        (b)  Obstetrical services policies and procedures shall include:

16            (12)  Policies and procedures for the care and treatments of drug-

17            dependent newborns.

18    629.    Newborn baby J.A.S. did not test positive for any illegal methamphetamines, nor

19    did he exhibit signs or symptoms of methamphetamine withdrawal.

20    630.    Although, Plaintiff Mrs. Smith was accused of illegal methamphetamine use,

21    Defendants St. Luke's Hospital, Onsite Neonatal, *et al.*, did not implement policies and

procedures for the care and treatment of allegedly drug-dependent Newborn baby

J.A.S.

631.   Defendants St. Luke's Hospital, Onsite Neonatal, *et al.*, did not implement the

legally mandated policies and procedures for treatment of drug-dependent newborns

despite accusing Plaintiffs Mr. and Mrs. Smith of having a newborn baby who was

supposedly suffering abuse to such a degree that he needed to be separated from his

parents.

632.   Since Defendants St. Luke's Hospital, Onsite Neonatal, etc., did not implement

policies and procedures for the care and treatment of an allegedly drug-dependent

Newborn baby J.A.S., Defendants violated *28 Pa. Code § 137.21(b)(12).*

633.   Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal,

OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot,

DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD,

Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms.

Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms.

Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla

Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD, by virtue

of custom, pattern, practice, policy, lack of supervision and/or failure of training and/or

discipline, acted in an unconstitutional fashion by not implementing legally mandated

policies and procedures for the care and treatment of an allegedly drug-dependent

newborn baby, both prior to and after that newborn baby J.A.S. was taken into

protective custody.

634.   Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA PA, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD, by virtue of custom, pattern, practice, policy, lack of supervision and/or failure of training and/or discipline, acted in an unconstitutional fashion by failing to give proper notice to Plaintiffs Mr. and Mrs. Smith that Newborn baby J.A.S. was suspected of potential withdrawal symptoms due to illegal drug use by his mother Plaintiff Mrs. Smith, by not implementing legally mandated policies and procedures for the care and treatment of an allegedly drug-dependent newborn baby, both prior to and after when Newborn baby J.A.S. was taken into protective custody.

635.   Upon information and belief, Plaintiffs can demonstrate by a preponderance of evidence that each individual Defendant State Actor conspired with at least one Defendant Private Actor elsewhere listed in this complaint.

636.   The conspiracy between the Defendant parties and their agents, employees, or assigns violates *42 U.S.C. § 1983*.

637.   Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly

Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve

Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital

Leadership Team", & Mr. Jerry Hric, MD, under color of law, by not giving proper notice

to Plaintiffs Mr. and Mrs. Smith that Newborn baby J.A.S. was suspected of illegal drug

withdrawal, and by not implementing the state mandated policies and procedures for the

care and treatment of an allegedly drug-dependent newborn baby, both prior to and

during the manufactured state created "protective custody" situation which was created

between private Defendant St. Luke's and Onsite Neonatal, OBHG PA, and Newborn

baby J.A.S., violated Plaintiffs Mr. & Mrs. Smith's rights under the Equal Protection

Clause of the Fourteenth Amendment to the United States Constitution.

638.    Upon information and belief, Plaintiffs Mr. & Mrs. Smith can demonstrate by a

preponderance of the evidence that employees, agents, or assigns of Defendants St.

Luke's Hospital violated Plaintiffs Mr. & Mrs. Smith's federal rights, and that supervisor

Defendants should be held liable for conduct of subordinate employees, agents, and

assigns, because as supervisors directed the actions in question, or had actual

knowledge of the violation and acquiesced to it, or with deliberate indifference to the

consequences, established and maintained a policy, practice or custom which directly

caused the violation under a *Monell* legal theory.

639.    Upon information and belief, Plaintiffs Mr. & Mrs. Smith can demonstrate by a

preponderance of the evidence that employees, agents, or assigns of Onsite Neonatal

violated Plaintiffs Mr. & Mrs. Smith's federal rights, and that supervisor Defendant Mr.

Jerry Hric, MD should be held liable for conduct of subordinate employees, agents, and

assigns because as supervisor directed the actions in question, or had actual

1    knowledge of the violation and acquiesced to it, or with deliberate indifference to the

2    consequences, established and maintained a policy, practice or custom which directly

3    caused the violation under a *Monell* legal theory.

4    640.    Plaintiffs assert the aforementioned claim is a breach of the Equal Protection

5    Clause pursuant to *42 U.S.C. § 1983*.

6    641.    Plaintiffs Mr. & Mrs. Smith have suffered substantial harm as a result of

7    Defendants' conduct, including but not limited to, emotional and psychological distress,

8    pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully

9    requests appropriate compensatory damages to account for PTSD therapies and other

10   related treatments as they have been and will continue to be necessary; Plaintiffs

11   respectfully request an amount of $84,800 in compensatory damages per Defendant.

12   642.    Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

13   Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick

14   Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

15   Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth

16   Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago,

17   MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

18   Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD, and

19   therefore, their ability to afford the appropriate training to avoid this egregious violation

20   of the U.S. Constitution, and, since harm was actually caused to the current Plaintiff

21   Smith Family, and since harm is likely to continue to harm future postpartum families,

22   and because the acts of the Defendants and their agents, assigns, or employees

23   callously disregarded the Plaintiff's rights in a reckless and wanton manner, the

1    Plaintiffs respectfully request the imposition of punitive damages on Defendants St.

2    Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia M.

3    Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb,

4    MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe,

5    MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr.

6    Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr, Steve Lanshe, Esq., Mr. Robert

7    L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr.

8    Jerry Hric, MD to deter such Defendants from committing to such conduct in the future

9    which violates the Fourteenth Amendment of the United States Constitution Plaintiffs

10    respectfully request an amount of $1,000,000 in punitive damages per Defendants Ms.

11    Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr.

12    Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese

13    Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie

14    Wheeler, MD, and Mr. Jerry Hric, MD; $5,000,000 per Defedants Mr. Patrick Philpot,

15    DO, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn

16    Hoffman, and "Hospital Leadership Team"; and $10,000,000 per Defendants St. Luke's

17    Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, and Ms. Cynthia M.

18    Shultz, MD.

19    643.   In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

20    any actual injury despite the deprivation of their federal rights, the Plaintiffs respectfully

21    request a nominal judgment of $1.00.

22    # XVI.   Fourteenth Amendment

23    ## *Substantive Due Process*

1   <u>*Violation of Mother's Right to Have a Support Person Present for Herself in a*</u>

2   <u>*Hospital*</u>

3   <u>Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Monroe County, Mr.</u>

4   <u>Tim Shaw & Ms. Adelaide W. Grace</u>

5   644.   When a state actor, acting under color of law, without a court order, allows a

6   private entity to separate a parent from their newborn child without probable cause then

7   a special relationship of protective custody between the private entity, the state, and the

8   child arises.

9   645.   The protective custody between the private entity, the state, and the child, as

10   directed by, or assented to by a state actor, gives rise to duties under the Fourteenth

11   Amendment to the United States Constitution.

12   646.   Plaintiff Mrs. Smith was placed in the peculiar position of Defendant St. Luke's

13   Hospital holding her newborn baby in protective custody from Mr. and Mrs. Smith, but

14   Mrs. Smith was allowed a limited set of visitation rights after approximately 9pm on April

15   10th, 2021 until Newborn baby J.A.S. was discharged days later.

16   647.   Pa. Code § 28 outlines appropriate care for newborns by a private entity or state

17   agency.

18   648.   *28 Pa. Code § 501.48* outlines policies and procedures for birth centers and

19   hospitals:

20   649.   *28 Pa. Code § 501.48 (b)* states, "A support person for each mother shall be

21   required."

650.   Plaintiff Mrs. Smith's husband Mr. Smith was Plaintiff Mrs. Smith's support person, and was present with her and Newborn baby J.A.S. in the NICU prior to when Mr. and Mrs. Smith were ejected under armed guard from St. Luke's Hospital property.

651.   On or around 9pm on April 10th Plaintiff Mrs. Smith was allowed to reenter Defendant St. Luke's Hospital under constant male guard where she was reunited with Newborn baby J.A.S. in the NICU.

652.   Mr. Smith was not allowed to accompany Plaintiff Mrs. Smith to St. Luke's Hospital to be with his newborn baby son J.A.S. or else Defendant St. Luke's Hospital would have Mr. Smith arrested as a trespasser.

653.   Defendants St. Luke's Hospital, Onsite Neonatal, and OBHG PA expressly forbade Plaintiff Mrs. Smith from having a support person present during a traumatic and anxiety ridden experience with her newborn baby.

654.   Grandparents of Newborn baby J.A.S., and Plaintiff Mrs. Smith's parents were denied entry to visit their newborn baby grandson on the pretense that Mrs. Smith was not allowed to have visitors accompany her in the NICU, not because of epidemiological concerns, but because the Plaintiff's parents presented a "security risk" to the hospital and they were subsequently escorted off of Defendant St. Luke's Hospital property by guards.

655.   Upon information and belief, due to the fact that Plaintiff Mrs. Smith was denied a support person for Newborn baby J.A.S., when Pennsylvania Law expressly directs that one is required at all times, Defendants St. Luke's Hospital, Onsite Neonatal, and Monroe County CYS, among other Defendants violated *28 Pa. Code § 501.48.*

656.    Under a *Monell* legal theory, upon information and belief, Defendants St. Luke's

Hospital, Onsite Neonatal, and OBHG PA, by virtue of custom, pattern, practice, policy,

lack of supervision and/or failure of training and/or discipline, acted in an

unconstitutional fashion by denying Plaintiff parents Mr. and Mrs. Smith to choose or

consent to medical care for Newborn baby J.A.S., both prior to and after when Newborn

baby J.A.S. was taken into protective custody.

657.    Upon information and belief, Plaintiffs can demonstrate by a preponderance of

evidence that each individual Defendant State Actor conspired with at least one

Defendant Private Actor elsewhere listed in this complaint.

658.    The conspiracy between the Defendant parties and their agents, employees, or

assigns violates *42 U.S.C. § 1983*.

659.    Defendants Monroe County, Mr. Tim Shaw, and Ms. Adelaide W. Grace, under

color of law, acting through the Office of Children and Youth Services, by not allowing

Plaintiff Mrs. Smith to have a support present with her while she cared for Newborn

baby J.A.S. during a state created "protective custody" situation which was created

between private Defendant St. Luke's Hospital, Onsite Neonatal, OBHG PA, and

Newborn baby J.A.S., violated Plaintiff Smith Family's rights under the Equal Protection

Clause of the Fourteenth Amendment to the United States Constitution.

660.    Plaintiffs assert the aforementioned claim is a breach of the Equal Protection

Clause pursuant to *42 U.S.C. § 1983*.

661.    Plaintiff Mrs. Smith suffered substantial harm as a result of Defendants' conduct,

including but not limited to, emotional and psychological distress, pain and suffering,

fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate

1    compensatory damages to account for PTSD therapies and other related treatments as

2    they have been and will continue to be necessary; Plaintiff respectfully requests an

3    amount of $59,500 in compensatory damages per Defendant.

4    662.    Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

5    Neonatal, and/or OBHG PA, and therefore, their ability to afford the appropriate training

6    to avoid this egregious violation of the U.S. Constitution, and, Defendants Monroe

7    County through its employees, agents, or assigns, Mr. Tim Shaw, and Ms. Adelaide. W.

8    Grace's egregious violations of legal obligations to accurately enforce the law, and since

9    harm was actually caused to the current Plaintiff Smith Family, and since harm is likely

10   to continue to harm future postpartum mothers, and because the acts of the Defendants

11   and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a

12   reckless and wanton manner, the Plaintiffs respectfully request the imposition of

13   punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, and/or OBHG

14   PA, Monroe County through its employees, agents, or assigns, Mr. Tim Shaw, and Ms.

15   Adelaide. W. Grace to deter such Defendants from committing to such conduct in the

16   future which violates the Fourteenth Amendment of the United States Constitution

17   Plaintiffs respectfully request an amount of $1,000,000 in punitive damages per

18   Defendants Mr. Tim Shaw; $5,000,000 per Defendants Onsite Neonatal, and OBHG

19   PA; and $10,000,000 per Defendants St. Luke's Hospital and Monroe County.

20   663.    In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

21   any actual injury despite the deprivation of their federal rights, the Plaintiffs respectfully

22   request a nominal judgment of $1.00.

23              **XVII.    <u>Fourteenth Amendment</u>**

*Substantive Due Process*

*Violation of Right to Consent to Legally Suggested Valid*

*Alternative Treatments for One's Child*

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, & OBHG PA

664.   The protective custody between the private entity, the state, and the child, as directed by, or assented to by a state actor, gives rise to duties under the Fourteenth Amendment to the United States Constitution.

665.   Pa. Code § 28 outlines appropriate care for newborns by a private entity or state agency.

666.   *28 Pa. Code § 27.98* directs prophylactic treatment in newborn baby eyes by birth centers and hospitals:

> (a)  Physicians and midwives attending women in childbirth shall instill in each eye of the newborn child, as soon as practicable after birth, either a 1% silver nitrate solution, or erythromycin ophthalmic ointment or solution as a single application in both conjunctival sacs, or appropriate medication approved by the Department.

667.   Prophylactic eye treatments are for treating potential sexually transmitted diseases being transmitted from the infected parent to the newborn infant.

668.   Plaintiff Mrs. Smith was tested for all relevant sexually transmitted diseases for which ophthalmic prophylactics are required and tested negative.

669.    Since there was no cause to treat Newborn baby J.A.S. because Plaintiff Mrs. Smith did not test positive for a sexually transmitted disease, Plaintiffs Mr. and Mrs. Smith requested that Newborn baby J.A.S. not receive ophthalmic prophylactic solution on his eyes.

670.    When it became clear to Plaintiffs Mr. and Mrs. Smith that Defendant St. Luke's Hospital was going to deny the request for non-treatment of Newborn baby J.A.S. against the will and consent of Plaintiffs Mr. and Mrs. Smith, Plaintiffs specifically requested that since Mr. Smith has a strong allergic reaction to erythromycin, that the Defendants not apply that specific solution to Newborn baby J.A.S.'s eyes.

671.    Defendants St. Luke's Hospital, Onsite Neonatal, and OBHG PA applied erythromycin ophthalmic solution to Newborn baby J.A.S.'s eyes.

672.    Upon information and belief, due to the fact that Plaintiff Mr. and Mrs. Smith were denied the right to choose and consent to appropriate medical care for Newborn baby J.A.S., when Pennsylvania Law directs alternatives within the scope of the Plaintiff parents request, Defendants St. Luke's Hospital and Onsite Neonatal among other Defendants violated 28 Pa. Code § 28.22.

673.    Under a *Monell* legal theory, upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal, and OBHG PA, by virtue of custom, pattern, practice, policy, lack of supervision and/or failure of training and/or discipline, acted in an unconstitutional fashion by denying Plaintiff parents Mr. and Mrs. Smith to choose or consent to medical care for the child, Newborn baby J.A.S., both prior to and after Newborn baby J.A.S. was taken into manufactured protective custody.

674.    Upon information and belief, Plaintiffs can demonstrate by a preponderance of evidence that each individual Defendant State Actor conspired with at least one Defendant Private Actor elsewhere listed in this complaint.

675.    The conspiracy between the Defendant parties and their agents, employees, or assigns violates *42 U.S.C. § 1983*.

676.    Defendants St. Luke's Hospital, Onsite Neonatal, and OBHG PA, under color of law, by not allowing Plaintiff parents Mr. and Mrs. Smith to choose or consent to Newborn baby J.A.S.'s medical treatment before a state created "protective custody" was created between private Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, and Newborn baby J.A.S., violated Plaintiffs Mr. & Mrs. Smith's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

677.    Plaintiffs assert the aforementioned claim is a breach of the Equal Protection Clause pursuant to *42 U.S.C. § 1983*.

678.    Plaintiffs Mr. & Mrs. Smith have suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully request an amount of $84,800 in compensatory damages per Defendant.

679.    Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite Neonatal, and/or OBHG PA, and therefore, their ability to afford the appropriate training to avoid this egregious violation of the U.S. Constitution, and, since harm was actually

1   caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm

2   future postpartum families, and because the acts of the Defendants and their agents,

3   assigns, or employees callously disregarded the Plaintiff's rights in a reckless and

4   wanton manner, the Plaintiffs respectfully request the imposition of punitive damages on

5   Defendants St. Luke's Hospital, Onsite Neonatal, and/or OBHG PA, Monroe County

6   through its employees, agents, or assigns, Mr. Tim Shaw, and Ms. Adelaide. W. Grace

7   to deter such Defendants from committing to such conduct in the future which violates

8   the Fourteenth Amendment of the United States Constitution Plaintiffs respectfully

9   request an amount of $5,000,000 in punitive damages per Defendants Onsite Neonatal,

10   and OBHG PA; and $10,000,000 per Defendants St. Luke's Hospital and Monroe

11   County.

12   680.   In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

13   any actual injury despite the deprivation of their federal rights, the Plaintiffs respectfully

14   request a nominal judgment of $1.00.

15   # XVIII.   Fourteenth Amendment

16   ## *Substantive Due Process*

17   ### *Violation of Parent's Right to High Professional Standards in a Hospital*

18   Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

19   Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

20   Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick

21   Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms.

Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto

Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly

Nardis, CRNP, Mr, Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack,

Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD

681.    The choice to render medical assistance to mothers and their newborn children

as a hospital or birthing center, gives rise to duties under the Fourteenth Amendment to

the United States Constitution.

682.    *28 Pa. Code § 501.46* outlines policies and procedures to ensure that all mothers

are treated with respect, dignity, privacy, and safety while in a birth center or hospital:

(a)  The birth center shall have written policies and procedures to assure the

individual mother the right to dignity, privacy, and safety and shall include, but not

be limited to, the items listed in subsection (b).

(b)  It is the right of every mother, or support person, to expect and receive:

(1)  Good quality care and high professional standards that are continually

maintained and reviewed.

683.    Upon information and belief, Plaintiffs Mr. and Mrs. Smith, as support person and

mother respectively, were not treated with good quality care and high professional

standards, as evidenced by, but not limited to, Defendants St. Luke's Hospital, Onsite

Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, and St. Luke's

Obstetrics & Gynecology Associates, confronting sensitive family issues in a

1   confrontational manner, treating Plaintiffs Mr. and Mrs. Smith in an abhorrent manner

2   and spreading false rumors in medical records, treating Plaintiffs Mr. and Mrs. Smith like

3   they were "bad people" for objecting to the type of care demanded by Defendant St.

4   Luke's Hospital for Newborn baby J.A.S., as well as, forcing a family apart without good

5   cause and in bad faith, and having Plaintiffs Mr. & Mrs. Smith ejected under armed

6   police escort from Defendant St. Luke's Hospital property under threat of arrest.

7   684.   Since Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

8   Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

9   Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot,

10   DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD,

11   Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms.

12   Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms.

13   Chaminie Wheeler, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly Nardis, CRNP, Mr.

14   Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

15   "Hospital Leadership Team", & Mr. Jerry Hric, MD, by acting in a manner unbecoming of

16   the medical profession, by subjecting the Smith Family to repeated humiliations and

17   degradations, did act in an unprofessional manner, and therefore Defendants violated

18   *28 Pa. Code § 501.46(b)(1).*

19   685.   The actions of Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

20   Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

21   Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot,

22   DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD,

23   Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms.

1  Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms.

2  Chaminie Wheeler, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly Nardis, CRNP, Mr.

3  Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

4  "Hospital Leadership Team", & Mr. Jerry Hric, MD, "shock the conscience" because of

5  the degree to which the Defendants' behavior deviated from standards of professional

6  care for the medical profession and its auxiliaries has had shocking, traumatic, and far-

7  reaching consequences.[14]

8  686.   In the alternative, the actions of Defendants St. Luke's Hospital, Onsite Neonatal,

9  OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics &

10  Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr.

11  Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

12  Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth

13  Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago,

---

[14]Compare *Miller v. City of Philadelphia*, 174 F.3d 368, 375-76 (3d Cir. 1999) ("[A] social worker acting to separate parent and child . . .. rarely will have the luxury of proceeding in a deliberate fashion . . .. As a result, . . . the standard of culpability for substantive due process purposes must exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'"). *In arguendo* in the instant case there was plenty of time for all defendants to deliberate their actions and for defendants to act at whatever speed defendants sought fit; and therefore, the standard of culpability should be lowered to negligence, deliberate indifference, or a 'professional judgement' standard, down from 'shocks the conscience'.

1  MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly Nardis,

2  CRNP, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn

3  Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD, fail a professional

4  judgement standard because their actions were such a substantial departure from

5  accepted professional judgement, practice, or standards as to demonstrate that the

6  Defendants did not actually base their decisions on professional judgement.[15]

7  687.    Upon information and belief, St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

8  Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

9  Associates, by virtue of custom, pattern, practice, policy, lack of supervision and/or

10  failure of training and/or discipline, acted in an unconstitutional fashion by substantially

11  deviating from professional judgement as a hospital or birthing center.

12  688.    Upon information and belief, Plaintiffs can demonstrate by a preponderance of

13  evidence that the Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

14  Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

15  Associates, conspired with at least one Defendant State Actor elsewhere listed in this

16  complaint.

17  689.    Under a *Monell* legal theory, upon information and belief, Plaintiffs Mr. & Mrs.

18  Smith can demonstrate by a preponderance of the evidence that employees, agents, or

19  assigns of Defendants St. Luke's Hospital, OBHG PA, St. Luke's Physicians Group,

---

[15]*See*, *Jordan v. City of Philadelphia*, 66 F. Supp. 2d 638, 646 (E.D. Pa. 1999) (quoting *Wendy H. v. City of Philadelphia*, 849 F. Supp. 367, 372 (E.D. Pa. 1994) (quoting *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982))).

1   Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates violated Plaintiffs

2   Mr. & Mrs. Smith's federal rights, and that supervisor Defendants should be held liable

3   for conduct of subordinate employees, agents, and assigns, because as supervisors

4   directed the actions in question, or had actual knowledge of the violation and

5   acquiesced to it, or with deliberate indifference to the consequences, established and

6   maintained a policy, practice or custom which directly caused the violation.

7   690.   Under a *Monell* legal theory, upon information and belief, Plaintiffs Mr. & Mrs.

8   Smith can demonstrate by a preponderance of the evidence that employees, agents, or

9   assigns of Onsite Neonatal violated Plaintiffs Mr. & Mrs. Smith's federal rights, and that

10   supervisor Defendants Mr. Jerry Hric should be held liable for conduct of subordinate

11   employees, agents, and assigns because as supervisor directed the actions in question,

12   or had actual knowledge of the violation and acquiesced to it, or with deliberate

13   indifference to the consequences, established and maintained a policy, practice or

14   custom which directly caused the violation.

15   691.   Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

16   Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

17   Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot,

18   DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD,

19   Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms.

20   Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms.

21   Chaminie Wheeler, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly Nardis, CRNP, Mr.

22   Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

23   "Hospital Leadership Team", & Mr. Jerry Hric, MD, by substantially deviating from

1    professional judgement in a professional hospital setting violated Plaintiff's rights under

2    the Equal Protection Clause of the Fourteenth Amendment to the United States

3    Constitution.

4    692.    Plaintiffs assert the aforementioned claim is a breach of the Equal Protection

5    Clause of the Fourteenth Amendment pursuant to *42 U.S.C. § 1983*.

6    693.    Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

7    conduct, including but not limited to, emotional and psychological distress, pain and

8    suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

9    appropriate compensatory damages to account for PTSD therapies and other related

10   treatments as they have been and will continue to be necessary; Plaintiffs respectfully

11   request an amount of $84,800 in compensatory damages per Defendant.

12   694.    Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

13   Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's

14   Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz,

15   MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms.

16   Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms.

17   Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto

18   Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly

19   Nardis, CRNP, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

20   Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD, and therefore, their

21   ability to afford the appropriate training to avoid this egregious violation of the U.S.

22   Constitution, and, since harm was actually caused to the current Plaintiff Smith Family,

23   and since harm is likely to continue to harm future postpartum families, and because the

1    acts of the Defendants and their agents, assigns, or employees callously disregarded

2    the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request

3    the imposition of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal,

4    OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics &

5    Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr.

6    Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

7    Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth

8    Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago,

9    MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly Nardis,

10   CRNP, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn

11   Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD, to deter such Defendants

12   from committing to such conduct in the future which violates the Fourteenth Amendment

13   of the United States Constitution Plaintiffs respectfully request an amount of $1,000,000

14   in punitive damages per Defendants Mr. Jerry Hric, MD, Ms. Patricia Bates, CRNP, Ms.

15   Kimberly Nardis, CRNP, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms.

16   Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms.

17   Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, and Mr. Gilberto

18   Santiago, MD; $5,000,000 per Defedants Mr, Steve Lanshe, Esq., Mr. Robert L. Wax,

19   Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", Ms. Chaminie

20   Wheeler, MD, and Mr. Patrick Philpot, DO; and $10,000,000 per Defendants St. Luke's

21   Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem

22   Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, and

23   Ms. Cynthia M. Shultz, MD.

695.    In the unlikely event that the jury does not find that Plaintiff Smith Family suffered any actual injury despite the deprivation of their federal rights, the Plaintiffs respectfully request a nominal judgment of $1.00.

# XIX.    Fourteenth Amendment

## *Substantive Due Process*

### *Violation of Right to be Treated with Dignity and Respect in a Hospital*

### Smith, *et al*. v. Monroe County & St. Luke's Hospital

696.    Defendant Monroe County acting through the Office of Child and Youth Services; Defendant, Northampton County acting through the Bethlehem Police Department; and, Defendant St. Luke's Hospital acting through its agents, employees, and/or assigns, acted in concert with one another, followed a practice, and/or entered into an agreement or understanding to violate Plaintiffs Mr. and Mrs. Smith's and Newborn baby J.A.S.'s Fourteenth Amendment substantive due process right to be treated with dignity and respect at all times while in a hospital setting.

697.    Monroe County CYS, by virtue of a custom, pattern, practice, policy, and/or failure to appropriately train and/or discipline, acquiesced in and/or has otherwise authorized its caseworkers to violate citizens' rights as protected by the United States Constitution by initiating unwarranted, highly intrusive, humiliating, and coercive child abuse investigations into new mothers, their support persons, and their families, thereby depriving Plaintiffs of respect and dignity.

698.    Monroe County CYS investigations include, but are not limited to: unannounced, non-consensual entry into J.A.S.'s hospital unit where it was known that Plaintiff Mrs. Smith was breastfeeding to inform Mrs. Smith that she is suspected of child abuse and subject to a child abuse investigation; carrying out unjustified, unannounced, and coercive home inspections soon after Newborn baby J.A.S.'s birth; subjecting Plaintiff Mr. Smith to highly intrusive, humiliating, and coercive interrogations by a social worker in front of friends and family; maintaining an open case well beyond what was necessary for CYS to establish if child abuse had taken place; repeated and unnecessary examinations of all of the Smith children, even after it was easily established that none of them had been abused or were in danger of abuse; coercive demands to provide repetitive and unnecessary bodily fluid samples; and, the prying into and demand to allow government social workers and/or investigators to have unfettered access to confidential  and personal medical records, thereby depriving Plaintiffs of respect and dignity.

699.    At all times relevant, Defendant St. Luke's Hospital was aware that its actions, carried out in concert with the BPD, and Monroe County CYS, included but were not limited to initiating unwarranted, highly intrusive, humiliating, and coercive child abuse investigations into new mothers, and that said actions would result in the violation of the Plaintiffs' Fourteenth Amendment right to be treated with respect and dignity in a hospital setting at all times.

700.    Defendants Monroe County and St. Luke's Hospital acted intentionally to deprive Plaintiffs of their constitutional rights under the Fourteenth Amendment, or acted in wanton, reckless disregard of those rights.

701.    The conspiracy between the Defendant parties and their agents, employees, or assigns violates *42 U.S.C. § 1983*.

702.    Monroe County and St. Luke's Hospital's actions were taken in deliberate indifference to Plaintiffs' rights as protected by the United States Constitution under the Fourteenth Amendment to be free from government intrusion into family privacy, including the birth of a child.

703.    Plaintiffs assert these claims pursuant to *42 U.S.C. § 1983*.

704.    Plaintiffs have suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological pain and suffering and injury to their reputations.

705.    Plaintiffs Mr. & Mrs. Smith have suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully request an amount of $84,800 in compensatory damages per Defendant.

706.    Given the substantial wealth of the Defendants Monroe County and St. Luke's Hospital and therefore, their ability to afford the appropriate training to avoid this egregious violation of the U.S. Constitution, and, since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum families, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiff respectfully requests the imposition of punitive damages on

1   Defendants Monroe County and St. Luke's Hospital to deter such Defendants from

2   committing to such conduct in the future which violates the Fourteenth Amendment of

3   the United States Constitution Plaintiffs respectfully request an amount of $10,000,000

4   in punitive damages per Defendants Monroe County and St. Luke's Hospital.

5   707.   In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

6   any actual injury despite the deprivation of their federal rights, the Plaintiffs respectfully

7   request a nominal judgment of $1.00.

8               ## XX.   Fourteenth Amendment

9               *Substantive Due Process*

10              *Right to be Free of State-Created Danger*

11   Smith et al. v. Northampton County, Bethlehem Township, Officer Andrew

12   Keyock, Officer Thomas A. Smith, Corporal Kirk Harryn, & Chief Daniel Pancoast

13   708.   Defendants Northampton County and Bethlehem Township acting through the

14   Bethlehem Township Police Department and specifically its Defendant Officers Andrew

15   Keyock and Thomas A. Smith, and, St. Luke's Hospital, acting through its agents,

16   employees, and/or assigns, acted in concert with one another, followed a practice,

17   and/or entered into an agreement or understanding to violate Plaintiffs Mr. and Mrs.

18   Smith's and Newborn baby J.A.S.'s Fourteenth Amendment substantive due process

19   right to be free of state-created danger.

20   709.   At all times relevant, Officers Andrew Keyock and Thomas A. Smith were police

21   officers acting under color of law and within the scope of their duties.

710.   To prevail on a state-created danger claim Plaintiffs will demonstrate that Defendant Officers Andrew Keyock and Thomas A. Smith (1) the harm [they] ultimately caused was foreseeable and fairly direct; (2) the defendants possessed the requisite degree of culpable intent; (3) there existed some relationship between the state and the plaintiff; and (4) the state actors used their authority to create an opportunity that otherwise would not have existed" for harm to occur. *Estate of Smith v. Marasco*, 318 F.3d 497, 506 (3d Cir. 2003).

711.   The first element of Plaintiffs' claim primarily concerns the elements of "foreseeability" and "directness".

712.   "Foreseeability" concerns whether the Defendant Officers Keyock and Smith should have foreseen the harm at issue.[16]

713.   "Directness" concerns whether the Defendant Officers chain of causation is too attenuated for liability to attach; in other words, were the Defendant Officers Keyock and Smith "fairly directly" the cause of the Plaintiff Smiths harm?[17]

---

[16]*See, e.g., Marasco*, 318 F.3d at 508 ("[T]he Smiths have presented sufficient evidence to allow a jury to find that at least some of the officers were aware of Smith's condition and should have foreseen that he might flee and suffer adverse medical consequences when SERT was activated.")

[17]*Henry v. Erie,* 25 728 F.3d 275, 285 (3d Cir. 2013) The Court of Appeals affirmed the dismissal of a complaint alleging that state officials subsidized the rent at an apartment while failing to enforce housing standards requiring smoke detectors and an alternative means of egress because such alleged actions did not lead "fairly directly" to the fire

714.   The second element of Plaintiffs' claim must demonstrate that, "[T]he state's actions must evince a willingness to ignore a foreseeable danger or risk." *Morse*, 132 F.3d at 910.

715.   For a § 1983 state-created danger claim two standards of culpability are possible depending on the facts, either (1) a "deliberate indifference" standard;[18] and, (2) a "shocks the conscience" standard.

716.   Plaintiffs request the Court find that the standard for the second element is "deliberate indifference" because Defendant Officers did not have any information that would place them in a hyperpressurized environment.

717.   As well, Plaintiffs request the Court find that the standard for the second element is "deliberate indifference" because the risk of the entire Smith Family being separated from one another was so obvious that the Defendant Officers Andrew Keyock and Thomas A. Smith should have perceived the risk.[19]

---

that claimed the plaintiffs' lives. Rather than being "close in time and succession," the alleged actions by the defendants were "separated from the ultimate harm by a lengthy period of time and intervening forces and actions." In this instant case however, actions happened in close time and succession.

[18]For a cue towards the "deliberate indifference standard", *see Phillips*, 515 F.3d at 241, in which the court of appeals held that the deliberate indifference standard applied to the dispatchers because they "had no information which would have placed them in a 'hyperpressurized environment.'")

[19]*Sanford*, 456 F.3d at 309 & n.13.

718.   Even if the Court chooses that the standard should be "shocks the conscience" Plaintiffs believe that they can meet this higher standard as well.

719.   Plaintiffs hold the belief that they can, if necessary, meet the higher standard of "shocks the conscience" because, ""the precise degree of wrongfulness required to reach the conscience-shocking level depends on the circumstances of a particular case." *Marasco*, 318 F.3d at 508.[20]

720.   Upon information and belief, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. can demonstrate more than mere negligence on the part of Defendant Officers Keyock and Smith, and can demonstrate that by consciously disregarding risk of great harm,[21] both officers engaged in affirmative acts against the Plaintiffs' that separated

---

[20]*See also*, *Marasco*, 318 F.3d at 508 (quoting *Miller*, 174 15 F.3d at 375). "For example, in the custodial situation of a prison, where forethought about an inmate's welfare is possible, deliberate indifference to a prisoner's medical needs may be sufficiently shocking, while '[a] much higher fault standard is proper when a government official is acting instantaneously and making pressured decisions without the ability to fully consider the risks.'"

[21]*Sanford*, 456 F.3d at 310.

1    Plaintiffs Mr. and Mrs. Smith from Newborn baby J.A.S.[22] which "reach a level of gross

2    negligence or arbitrariness that indeed "shocks the conscience."[23]

3    721.    The third element of Plaintiffs' claim must demonstrate that there exists a

4    relationship between the state and the Plaintiffs during which the defendant state actors

5    placed the victim Plaintiffs in danger of foreseeable injury, either as individuals or as a

---

[22]*Schieber v. City of Philadelphia*, 320 F.3d 409, 419 (3d Cir. 2003) (opinion of

Stapleton, J.) ("[N]egligence is not enough to shock the conscience under any

circumstances. . .. [M]ore culpability is required to shock the conscience to the extent

that state actors are required to act promptly and under pressure. Moreover, the same

is true to the extent the responsibilities of the state actors require a judgment between

competing, legitimate interests."); *id.* at 423 (reversing denial of summary judgment to

police officers sued by parents who alleged their daughter was murdered after officers

responded to 911 call but failed to enter daughter's apartment, "[b]ecause the record

would not support a finding of more than negligence on the part of" the officers); *see

also id.* at 423 (Nygaard, J., concurring) (stating that he did "not disagree with [Judge

Stapleton's] analysis as far as it goes" but that the crux of the case was the plaintiff's

failure to show an affirmative act on the part of the police).

[23]*See Miller*, 2 174 F.3d at 375-76 & n.7.

1  discrete class. *Kneipp v. Tedder*, 95 F.3d 1199, 1209 (3d Cir. 1996).[24] *See also*

2  *Marasco*, 318 F.3d at 507.[25]

3  722.   As well, the defendant state actor must not cause a threat to the general

4  population but to discrete individuals. *Morse*, 132 F.3d at 913 (citing *Martinez v.*

5  *California*, 444 U.S. 277, 285 (1980).

6  723.   Upon information and belief, the Plaintiffs, Mr. and Mrs. Smith and Newborn baby

7  J.A.S., were each individuals or a discrete class as opposed to the general population

8  because Defendant Officers Andrew Keyock and Thomas A. Smith were not interested

9  in separating any families other than the Defendant Smith Family.

10  724.   Upon information and belief, because the whole issue at hand was whether

11  without probable cause or a court order directing the actions of the Defendant Officers,

12  was if the Defendant Officers Keyock and Smith would sanction St. Luke's Hospital's

13  assertion that the Smith Family should be forcefully separated from one another and

14  that the parents, Plaintiffs Mr. and Mrs. Smith should be ejected from the hospital, it was

15  foreseeable that harm would come to the entire Plaintiff Smith Family through the

16  affirmative act of breaking up their family.

---

[24]Holding that jury could find third element met where defendant, "exercising his powers as a police officer, placed [the plaintiff] in danger of foreseeable injury when he sent her home unescorted in a visibly intoxicated state in cold weather."

[25] ("In *Morse* we held that the third requirement – a relationship between the state and the plaintiff – ultimately depends on whether the plaintiff was a foreseeable victim, either individually or as part of a discrete class of foreseeable victims.").

725.    The Court of Appeals has summarized the fourth element's requirements thus:

"The three necessary conditions to satisfy the fourth element of a state-created danger

claim are that: (1) a state actor exercised his or her authority, (2) the state actor took an

affirmative action, and (3) this act created a danger to the citizen or rendered the citizen

more vulnerable to danger than if the state had not acted at all."[26]

726.    The Court of Appeals reasoned in *Bright* that an assurance that someone will be

arrested does not meet the affirmative-act requirement, 443 F.3d at 284.

727.    Upon information and belief, the Plaintiff Smith Family alleges that (1) that

Defendant Officers Andrew Keyock and Thomas A. Smith each exercised their authority

under color of law; and (2) Defendant Officers Andrew Keyock and Thomas A. Smith

took more than the affirmative act of threatening to arrest Plaintiffs Mr. and Mrs. Smith.

728.    Defendant Officers actions consisted of, but were not limited to, affirmatively

using confidential medical records given to them by St. Luke's Hospital to illegally reach

conclusions as to the culpability of Plaintiffs Mr. and Mrs. Smith; Defendant Officers

affirmatively blocked Plaintiffs Mr. and Mrs. Smith's vehicle outside the hospital

entrance; Defendant Officers actively guarded Plaintiffs Mr. and Mrs. Smith so that they

could not enter the NICU, nor move freely about the waiting area, nor have any privacy

to discuss their current situation; Defendant Officers then affirmatively conferenced with

St. Luke's Hospital doctors and staff without Plaintiffs Mr. and Mrs. Smith present as to

what the fate of the Smith Family should be; Defendant Officers then affirmatively

sanctioned that St. Luke's Hospital may separate Plaintiff Newborn baby J.A.S. from

---

[26] *Ye v. United States*, 484 F.3d 634, 639 (3d Cir. 2007).

1   Plaintiffs Mr. and Mrs. Smith; Defendant Officers then affirmatively, without court order

2   or probable cause, escorted Mr. and Mrs. Smith from the hospital under guard as if they

3   were prisoners; and then affirmatively forcefully ejected postpartum Mrs. and Mr. Smith,

4   then Defendant Officers affirmatively threatened to arrest Mr. or Mrs. Smith if they ever

5   returned to St. Luke's Hospital property, even if the only reason that they would return

6   would to be to retrieve their child; and,

7   729.   (3) Each of the affirmative acts by Defendant Officers Andrew Keyock and

8   Thomas A. Smith created and/or rendered Plaintiffs Mr. and Mrs. Smith and Newborn

9   baby J.A.S. more vulnerable to danger, because but for the actions of the Defendant

10  Officers, St. Luke's Hospital would not have been able to keep Plaintiffs Mr. and Mrs.

11  Smith separated from Plaintiff Newborn baby J.A.S.; therefore, if the state had not acted

12  at all, Plaintiffs Mr. and Mrs. Smith and Plaintiff Newborn baby J.A.S. would not have

13  been able to be harmed by the act of forceful separation because they would have been

14  together.

15  730.   Upon information and belief, Plaintiffs can demonstrate by a preponderance of

16  evidence that the Defendant State Actors conspired with at least one Defendant Private

17  Actor elsewhere listed in this complaint.

18  731.   The conspiracy between the Defendant parties and their agents, employees, or

19  assigns violates *42 U.S.C. § 1983*.

20  732.   Upon information and belief, Defendants Northampton County, Bethlehem

21  Township, and Officers Andrew Keyock and Thomas A. Smith by virtue of custom,

22  pattern, practice, policy, lack of supervision and/or failure of training and/or discipline,

23  acted in an unconstitutional fashion by separating parents from their newborn child

1  without a court order, based solely on a report that the hospital had unconfirmed and

2  undifferentiated drug test results for legal amphetamines and illegal

3  methamphetamines, and without any basis to believe that the mother abused or

4  neglected her child.

5  733.    Under a *Monell* legal theory, upon information and belief, Plaintiff Smith Family

6  can demonstrate by a preponderance of the evidence that Officers Andrew Keyock and

7  Thomas A. Smith violated Plaintiff Smith Family's federal rights, and that supervisor

8  Defendants Corporal Harryn and Chief Pancoast should be held liable for conduct of

9  subordinate Officers Andrew Keyock and Thomas A. Smith, because as supervisors

10  directed the actions in question, or had actual knowledge of the violation and

11  acquiesced to it, or with deliberate indifference to the consequences, established and

12  maintained a policy, practice or custom which directly caused the violation.

13  734.    Defendants Officers Andrew Keyock and Thomas A. Smith, and Northampton

14  County, acting through the Bethlehem Police Department, violated Plaintiff's rights

15  under the Equal Protection Clause of the Fourteenth Amendment to the United States

16  Constitution.

17  735.    Plaintiffs assert the aforementioned claim is a breach of the Equal Protection

18  Clause pursuant to *42 U.S.C. § 1983*.

19  736.    Plaintiffs Mr. & Mrs. Smith have suffered substantial harm as a result of

20  Defendants' conduct, including but not limited to, emotional and psychological distress,

21  pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully

22  requests appropriate compensatory damages to account for PTSD therapies and other

1   related treatments as they have been and will continue to be necessary; Plaintiffs

2   respectfully request an amount of $84,800 in compensatory damages per Defendant.

3   737.   Given the substantial wealth of the Defendants Northampton County and

4   Bethlehem Township, and therefore, their ability to afford the appropriate training to

5   avoid this egregious violation of the U.S. Constitution, and Defendant Northampton

6   County through its employees, agents, or assigns, Officers Andrew Keyock & Thomas

7   A. Smith, Corporal Kirk Harryn, & Chief Daniel Pancoast, had legal obligations to

8   accurately enforce the law, and, since harm was actually caused to the current Plaintiff

9   Smith Family, and since harm is likely to continue to harm future postpartum families,

10  and because the acts of the Defendants and their agents, assigns, or employees

11  callously disregarded the Plaintiff's rights in a reckless and wanton manner, the

12  Plaintiffs respectfully request the imposition of punitive damages on Defendants

13  Northampton County, and Bethlehem Township, and Officers Andrew Keyock &

14  Thomas A. Smith, Corporal Kirk Harryn, and Chief Daniel Pancoast to deter such

15  Defendants from committing to such conduct in the future which violates the Fourteenth

16  Amendment of the United States Constitution Plaintiffs respectfully request an amount

17  of $1,000,000 in punitive damages per Defendants Officer Andrew Keyock, and Officer

18  Thomas A. Smith; $5,000,000 per Defendants Corporal Kirk Harryn, and Chief Daniel

19  Pancoast; and $10,000,000 per Defendants Northampton County and Bethlehem

20  Township.

21  738.   In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

22  any actual injury despite the deprivation of their federal rights, the Plaintiffs respectfully

23  request a nominal judgment of $1.00.

# XXI.   <u>Fourteenth Amendment</u>

*<u>Substantive Due Process</u>*

*<u>Violation of Right to be Free from Government Intrusion into Family Privacy,</u>*

*<u>Including the Birth of a Child</u>*

<u>Smith, *et al*. v. Monroe County, Northampton County, Bethlehem Township & St.</u>

<u>Luke's Hospital</u>

739.    Defendant Monroe County acting through the Office of Child and Youth Services;

Defendants, Northampton County and Bethlehem Township acting through the

Bethlehem Police Department; and, Defendant St. Luke's Hospital acting through its

agents, employees, and/or assigns, acted in concert with one another, followed a

practice, and/or entered into an agreement or understanding to violate Plaintiffs Mr. and

Mrs. Smith and Newborn baby J.A.S.'s Fourteenth Amendment substantive due process

right to be free from government intrusion into family privacy, including the birth of a

child.

740.    Monroe County CYS, by virtue of a custom, pattern, practice, policy, and/or

failure to appropriately train and/or discipline, acquiesced in and/or has otherwise

authorized its caseworkers to violate citizens' rights as protected by the United States

Constitution by initiating unwarranted, highly intrusive, humiliating, and coercive child

abuse investigations into new mothers and their families.

741.    Monroe County CYS investigations include, but are not limited to: unannounced,

non-consensual entry into J.A.S.'s hospital unit where it was known that Plaintiff Mrs.

1    Smith was breastfeeding to inform Mrs. Smith that she is suspected of child abuse and

2    subject to a child abuse investigation; carrying out unjustified, unannounced, and

3    coercive home inspections within days of Newborn baby J.A.S's birth; subjecting

4    Plaintiff Mr. Smith to highly intrusive, humiliating, and coercive interrogations by a social

5    worker, in front of friends and family; maintaining an open case well beyond what was

6    necessary for CYS to establish if child abuse had taken place; repeated and

7    unnecessary examinations of all of the Smith children, even after it was easily

8    established that none of them had been abused or were in danger of abuse; coercive

9    demands to provide repetitive and unnecessary bodily fluid samples; and, the prying

10   into and demand to allow government social workers and/or investigators to have

11   unfettered access to confidential personal and other family members medical records.

12   742.    Defendants, Northampton County and Bethlehem Township acting through the

13   Bethlehem Police Department, by virtue of a custom, pattern, practice, policy, and/or

14   failure to appropriately train or discipline, acquiesced in and/or has otherwise authorized

15   its police officers to violate citizens' constitutional rights by initiating unwarranted, highly

16   intrusive, and under threat of loss of freedom, warrantless, without a duly appointed

17   judge's order, or reasonable suspicion that a crime had taken place, did knowingly and

18   forcefully separate a mother and father from their newborn child with information solely

19   obtained from unfettered access to confidential medical records.

20   743.    At all times relevant, Defendant St. Luke's Hospital was aware that its actions,

21   carried out in concert with the BPD, and Monroe County CYS, included but were not

22   limited to its unwarranted disclosure of personal confidential medical information to the

23   BPD and Monroe County CYS, and that said actions would result in the violation of the

1   Plaintiffs' Fourteenth Amendment right to be free from government intrusion into family

2   privacy, including upon the birth of a child.

3   744.    Defendants Monroe County, Northampton County, Bethlehem Township and St.

4   Luke's Hospital acted intentionally to deprive Plaintiffs of their constitutional rights under

5   the Fourteenth Amendment, or acted in wanton, reckless, disregard of those rights.

6   745.    The conspiracy between the Defendant parties and their agents, employees, or

7   assigns violates *42 U.S.C. § 1983*.

8   746.    Defendants Monroe County, Northampton County, Bethlehem Township, and St.

9   Luke's Hospital's actions were taken in deliberate indifference to Plaintiffs' rights as

10  protected by the United States Constitution under the Fourteenth Amendment to be free

11  from government intrusion into family privacy, including the birth of a child.

12  747.    Plaintiffs assert these claims pursuant to *42 U.S.C. § 1983*.

13  748.    Plaintiffs Mr. & Mrs. Smith have suffered substantial harm as a result of

14  Defendants' conduct, including but not limited to, emotional and psychological distress,

15  pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully

16  requests appropriate compensatory damages to account for PTSD therapies and other

17  related treatments as they have been and will continue to be necessary; Plaintiffs

18  respectfully request an amount of $84,800 in compensatory damages per Defendant.

19  749.    Given the substantial wealth of the Defendants Monroe County, Northampton

20  County, and Bethlehem Township, and St. Luke's Hospital and therefore, its ability to

21  afford the appropriate training to avoid this egregious violation of the U.S. Constitution,

22  and, since harm was actually caused to the current Plaintiff Smith Family, and since

23  harm is likely to continue to harm future postpartum families, and because the acts of

1  the Defendants and their agents, assigns, or employees callously disregarded the

2  Plaintiff's rights in a reckless and wanton manner, the Plaintiff respectfully requests the

3  imposition of punitive damages on Defendants Monroe County, Northampton County,

4  and Bethlehem Township, and St. Luke's Hospital to deter such Defendants from

5  committing to such conduct in the future which violates the Fourteenth Amendment of

6  the United States Constitution Plaintiffs respectfully request an amount of $10,000,000

7  in punitive damages per Defendants Monroe County, Northampton County, Bethlehem

8  Township, and St. Luke's Hospital.

9  750.    In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

10  any actual injury despite the deprivation of their federal rights, the Plaintiffs respectfully

11  request a nominal judgment of $1.00.

## XXII.    Fourteenth Amendment

### *Substantive Due Process*

### *Violation of Right to Privacy in Personal and Confidential Medical Records*

### Mrs. Grace Smith & Newborn baby J.A.S. v. Monroe County, Northampton

### County, & St. Luke's Hospital

17  751.    Upon information and belief, Defendant Monroe County acting through the Office

18  of Child and Youth Services; Defendant, Northampton County acting through the

19  Bethlehem Police Department; and, Defendant St. Luke's Hospital acting through its

20  agents, employees, and/or assigns, acted in concert with one another, followed a

21  practice, and/or entered into an agreement or understanding to violate Plaintiff Mrs.

1   Smith's and Newborn baby J.A.S.'s Fourteenth Amendment substantive due process

2   right to privacy in their confidential personal medical records.

3   752.    Defendants St. Luke's Hospital, the BPD, and Monroe County CYS each acted in

4   furtherance of an agreement or understanding.

5   753.    Upon information and belief, Defendant St. Luke's Hospital had a policy

6   specifically requiring its employees to report to local police departments and to Children

7   and Youth Services, drug tests for legal amphetamines and illegal methamphetamines

8   that are inconclusive and undifferentiated.

9   754.    Defendant St. Luke's Hospital was not privileged, nor was it required to report the

10   results of inconclusive and undifferentiated drug tests to local police, in this case the

11   Bethlehem Police Dept., nor to any Children and Youth Services agency.

12   755.    Defendant Monroe County CYS encouraged Defendant St. Luke's Hospital to

13   continue to violate Plaintiffs' rights by accepting records which it knew Defendant St.

14   Luke's Hospital was not privileged or legally required to disclose, and, based solely on

15   these records, initiated unwarranted highly intrusive, humiliating, and coercive child

16   abuse instigations.

17   756.    Defendant Northampton County acting through the BPD encouraged Defendant

18   St. Luke's Hospital to continue to violate Plaintiffs' rights by accepting records which it

19   knew Defendant St. Luke's Hospital was not privileged or legally required to disclose,

20   and, based solely on these records, initiated an unwarranted, traumatic, and forceful,

21   ejection of Mr. and Mrs. Smith from Defendant St. Luke's Hospital under threat of arrest

22   for trespassing.

757.    The conspiracy between the Defendant parties and their agents, employees, or assigns violates *42 U.S.C. § 1983*.

758.    The Defendant parties and their agents, employees, or assigns acted in concert with one another to deprive Plaintiffs of their rights as protected by the United States Constitution under the Fourteenth Amendment, or acted in a wanton, reckless disregard of those rights.

759.    Defendants Monroe County, Northampton County, and St. Luke's Hospital by virtue of a custom, pattern, practice, policy, and/or failure to appropriately train and/or discipline, acquiesced in and/or has otherwise authorized its agents, employees, assigns, and/or caseworkers to violate citizens' rights as protected by the United States Constitution by initiating unwarranted, highly intrusive, humiliating, and coercive child abuse investigations into new mothers and their families.

760.    Plaintiffs assert these claims pursuant to 42 U.S.C. §1983.

761.    Plaintiff Mrs. Smith has suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully requests an amount of $59,500 in compensatory damages per Defendant.

762.    Given the substantial wealth of the Defendants Monroe County, Northampton County, and St. Luke's Hospital and therefore, its ability to afford the appropriate training to avoid this egregious violation of the U.S. Constitution, and, since harm was actually caused to the current Plaintiffs Mrs. Smith and Newborn baby J.A.S., and since

1   harm is likely to continue to harm future postpartum families, and because the acts of

2   the Defendants and their agents, assigns, or employees callously disregarded the

3   Plaintiff's rights in a reckless and wanton manner, the Plaintiff respectfully requests the

4   imposition of punitive damages on Defendants Monroe County, Northampton County,

5   and St. Luke's Hospital to deter such Defendants from committing to such conduct in

6   the future which violates the Fourteenth Amendment of the United States Constitution

7   Plaintiffs respectfully request an amount of $10,000,000 in punitive damages per

8   Defendants Monroe County, Northampton County, and St. Luke's Hospital.

9   763.   In the unlikely event that the jury does not find that Plaintiffs Mrs. Smith and

10   Newborn baby J.A.S. suffered any actual injury despite the deprivation of their federal

11   rights, the Plaintiffs respectfully request a nominal judgment of $1.00.

12   # XXIII.    Fourteenth Amendment

13   ## *Special Relationship*

14   ## *Violation of Protection from State Actors Creating a Special Relationship*

15   ## *between a Child and a Private Entity Without Sufficient Cause*

16   Smith, *et al.* v. Northampton County, Officers Andrew Keyock & Thomas A. Smith,

17   Corporal Kirk Harryn, & Chief Daniel Pancoast

18   764.   When a state actor, acting under color of law, without a court order, allows a

19   private entity to separate a parent from their newborn child without probable cause then

20   a special relationship of care between the private entity and the child arises.

765.   The special relationship between the private entity and the child, as assented to by a state actor, gives rise to duties under the Fourteenth Amendment to the United States Constitution.

766.   In order to establish a claim Plaintiffs must prove that (1) each Defendant Police Officer and their Supervisors acted with deliberate indifference when they allowed Plaintiff Newborn baby J.A.S. to be detained by St. Luke's Hospital without consent and against the wishes of the Plaintiff parents; and, (2) Plaintiffs were harmed by that detainment.

767.   Upon information and belief, Plaintiffs Mr. and Mrs. Smith allege that all Defendant Police Officers and their Supervisors violated their duty to prevent a formation of a special relationship between the St. Luke's Hospital and Plaintiff Newborn baby J.A.S. when they condoned St. Luke's Hospital's actions and each other's by separating Plaintiffs Mr. and Mrs. Smith from Newborn baby J.A.S. under threat of arrest.

768.   Plaintiffs Mr. and Mrs. Smith allege under information and belief, that do to the fact that no Defendant obtained a court order or found probable cause that a crime was being committed, had a duty to prevent the formation of a special relationship between St. Luke's Hospital and Plaintiff Newborn baby J.A.S., and instead had an affirmative duty to reaffirm the Plaintiff parent's right to St. Luke's Hospital that Mr. & Mrs. Smith should be with their newborn child.

769.   By not reaffirming the Plaintiff parent's request to withdrawal consent for Plaintiff Newborn baby J.A.S. and to reunite parents with their child, all Defendant Police

1   Officers and their Supervisors acted with deliberate indifference to the welfare of

2   Plaintiffs Newborn baby J.A.S. and Mr. & Mrs. Smith.

3   770.    All Defendant Police Officers and their Supervisors knew or should have known

4   that by agreeing to St. Luke's Hospital's demands to remove Plaintiffs Mr. and Mrs.

5   Smith from St. Luke's property without Plaintiff Newborn baby J.A.S. that Newborn baby

6   J.A.S. would be submitted to a sterile unwelcoming environment, needlesticks, various

7   unnecessary testing, time away from both parents shortly after birth including time for

8   skin-to-skin contact, time away from his mother during first few days of breastfeeding,

9   and various treatments done to Plaintiff Newborn baby J.A.S. against the consent and

10   will of Plaintiffs Mr. and Mrs. Smith.

11   771.    The actions of all Defendant Police Officers and their Supervisors also "shock the

12   conscience" because of the degree to which it was clear that failure to act on behalf of

13   the parents to be with their child would have shocking, traumatic, and far-reaching

14   consequences.[27]

15   772.    In the alternative, the actions of Defendant Officers and their Supervisors fail a

16   professional judgement standard because their actions were such a substantial

17   departure from accepted professional judgement, practice, or standards as to

---

[27] *See* Footnote 14.

1   demonstrate that the Defendant Officers did not actually base their decisions on

2   professional judgement.[28]

3   773.   Upon information and belief, Defendant Officers Andrew Keyock and Thomas A.

4   Smith, by virtue of custom, pattern, practice, policy, lack of supervision and/or failure of

5   training and/or discipline, acted in an unconstitutional fashion by separating parents

6   from their newborn child without a court order, based solely on a report that the hospital

7   had unconfirmed and undifferentiated drug test results for legal amphetamines and

8   illegal methamphetamines, and without any basis to believe that the mother abused or

9   neglected her child.

10  774.   Upon information and belief, Plaintiffs can demonstrate by a preponderance of

11  evidence that Defendant Police Officers and/or their Supervisors conspired with at least

12  one Defendant Private Actor elsewhere listed in this complaint.

13  775.   The conspiracy between the Defendant parties and their agents, employees, or

14  assigns violates *42 U.S.C. § 1983*.

15  776.   Under a *Monell* legal theory, upon information and belief, Plaintiff Smith Family

16  can demonstrate by a preponderance of the evidence that Officers Andrew Keyock and

17  Thomas A. Smith violated Plaintiff Smith Family's federal rights, and that supervisor

18  Defendants Northampton County, Corporal Harryn and Chief Pancoast should be held

19  liable for conduct of subordinate Officers Andrew Keyock and Thomas A. Smith,

---

[28]*See*, *Jordan v. City of Philadelphia*, 66 F. Supp. 2d 638, 646 (E.D. Pa. 1999) (quoting

*Wendy H. v. City of Philadelphia*, 849 F. Supp. 367, 372 (E.D. Pa. 1994) (quoting

*Youngberg v. Romeo*, 457 U.S. 307, 323 (1982))).

1  because as supervisors directed the actions in question, or had actual knowledge of the

2  violation and acquiesced to it, or with deliberate indifference to the consequences,

3  established and maintained a policy, practice or custom which directly caused the

4  violation.

5  777.   All Defendant Police Officers and their Supervisors, under color of law, acting

6  through their authority as officers of the Bethlehem Police Department, by allowing a

7  state created "special relationship" to be created between St. Luke's Hospital and

8  Plaintiff Newborn baby J.A.S. violated Plaintiff's rights under the Equal Protection

9  Clause of the Fourteenth Amendment to the United States Constitution.

10  778.   Plaintiffs assert the aforementioned claim is a breach of the Equal Protection

11  Clause pursuant to *42 U.S.C. § 1983*.

12  779.   Plaintiffs Mr. & Mrs. Smith have suffered substantial harm as a result of

13  Defendants' conduct, including but not limited to, emotional and psychological distress,

14  pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully

15  requests appropriate compensatory damages to account for PTSD therapies and other

16  related treatments as they have been and will continue to be necessary; Plaintiffs

17  respectfully request an amount of $84,800 in compensatory damages per Defendant.

18  780.   Given the substantial wealth of the Defendant Northampton County, and

19  therefore, its ability to afford the appropriate training to avoid this egregious violation of

20  the U.S. Constitution, and Defendant Northampton County through its employees,

21  agents, or assigns, Officers Andrew Keyock & Thomas A. Smith, Corporal Kirk Harryn,

22  & Chief Daniel Pancoast, had legal obligations to accurately enforce the law, and, since

23  harm was actually caused to the current Plaintiff Smith Family, and since harm is likely

1   to continue to harm future postpartum families, and because the acts of the Defendants

2   and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a

3   reckless and wanton manner, the Plaintiffs respectfully request the imposition of

4   punitive damages on Defendants Northampton County, Officers Andrew Keyock &

5   Thomas A. Smith, Corporal Kirk Harryn, and Chief Daniel Pancoast to deter such

6   Defendants from committing to such conduct in the future which violates the Fourteenth

7   Amendment of the United States Constitution Plaintiffs respectfully request an amount

8   of $1,000,000 in punitive damages per Defendants Officers Andrew Keyock and

9   Thomas A. Smith; $5,000,000 per Defendants Corporal Kirk Harryn, and Chief Daniel

10  Pancoast; and $10,000,000 per Defendant Northampton County.

11  781.    In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

12  any actual injury despite the deprivation of their federal rights, the Plaintiffs respectfully

13  request a nominal judgment of $1.00.

## XXIV.    Fourteenth Amendment

### *Special Relationship*

#### *Violation of Protection from State Actors Creating a Special Relationship*

#### *between a Child and a Private Entity Without Sufficient Cause*

### Smith, *et al.* v. Monroe County, Ms. Adelaide. W. Grace, & Mr. Tim Shaw

19  782.    When a state actor, acting under color of law, without a court order, allows a

20  private entity to separate a parent from their newborn child without probable cause then

21  a special relationship of care between the private entity and the child arises.

783.    The special relationship between the private entity and the child, as assented to by a state actor, gives rise to duties under the Fourteenth Amendment to the United States Constitution.

784.    In order to establish a claim Plaintiffs must prove that (1) each Defendant CYS Employee and their Supervisors each individually acted with deliberate indifference when they allowed Plaintiff Newborn baby J.A.S. to be detained by St. Luke's Hospital without consent and against the wishes of the Plaintiff parents; and, (2) Plaintiffs were harmed by that detainment.

785.    Upon information and belief, Plaintiffs Mr. and Mrs. Smith allege that all Defendant CYS Employees and their Supervisors violated their duty to prevent a formation of a special relationship between St. Luke's Hospital and Plaintiff Newborn baby J.A.S. when they condoned St. Luke's Hospital's actions by allowing St. Luke's Hospital to have uncontested control of Plaintiff Newborn baby J.A.S. for a period lasting more than 24-hours.

786.    Plaintiffs Mr. and Mrs. Smith allege under information and belief that do to the fact Defendant had a court order or found probable cause that a crime was being committed, had a duty to prevent the formation of a special relationship between St. Luke's Hospital and Plaintiff Newborn baby J.A.S., and instead had an affirmative duty to reaffirm the parent's right to St. Luke's Hospital that Plaintiffs Mr. and Mrs. Smith should be with their newborn child.

787.    By not reaffirming the parent's request to withdrawal consent for Plaintiff Newborn baby J.A.S. and to reunite parents with their child, Defendant Monroe County through its Office of Children and Youth Services, and all relevant Defendant CYS

1  Employees and their Supervisors acted with deliberate indifference to the welfare of

2  Plaintiffs Newborn baby J.A.S. and Mr. and Mrs. Smith.

3  788.    All Defendant CYS Employees and their Supervisors knew or should have known

4  that by agreeing to St. Luke's Hospital's demands to remove Plaintiffs Mr. and Mrs.

5  Smith from St. Luke's Hospital property without Plaintiff Newborn baby J.A.S. that

6  Newborn baby J.A.S. would be submitted to a sterile, unwelcoming environment,

7  needlesticks, various testing, time away from both parents shortly after birth, time away

8  from both parents shortly after birth including time for skin-to-skin contact, time away

9  from his mother during first few days of breastfeeding, and various treatments done to

10  Plaintiff Newborn baby J.A.S. against the consent and will of Plaintiffs Mr. and Mrs.

11  Smith.

12  789.    The actions of all Defendant CYS Employees and their Supervisors also "shock

13  the conscience" because of the degree to which it was clear that failure to act on behalf

14  of the parents to be with their child would have shocking, traumatic, and far-reaching

15  consequences.[29]

16  790.    In the alternative, the actions of each Defendant CYS Employee and their

17  Supervisors fail a professional judgement standard because their actions were such a

18  substantial departure from accepted professional judgement, practice, or standards as

19  to demonstrate that each Defendant CYS Employee and their Supervisors did not

20  actually base their decisions on professional judgement.

21  791.    Upon information and belief, all Defendant CYS Employees and their Supervisors

22  by virtue of custom, pattern, practice, policy, lack of supervision and/or failure of training

---

[29]*See* Footnote 14.

1  and/or discipline, acted in an unconstitutional fashion by separating parents from their

2  newborn child without a court order, based solely on a report that the hospital had

3  unconfirmed and undifferentiated drug test results for legal amphetamines and illegal

4  methamphetamines, and without any basis to believe that the mother abused or

5  neglected her child.

6  792.   Upon information and belief, Plaintiffs can demonstrate by a preponderance of

7  evidence that Defendant State Actors conspired with at least one Defendant Private

8  Actor elsewhere listed in this complaint.

9  793.   The conspiracy between the Defendant parties and their agents, employees, or

10  assigns violates *42 U.S.C. § 1983*.

11  794.   Under a *Monell* legal theory, upon information and belief, Plaintiff Smith Family

12  can demonstrate by a preponderance of the evidence that Mr. Tim Shaw violated

13  Plaintiff Smith Family's federal rights, and that supervisor Defendant Ms. Adelaide W.

14  Grace should be held liable for conduct of subordinate Defendant Mr. Tim Shaw,

15  because as supervisor directed the actions in question, or had actual knowledge of the

16  violation and acquiesced to it, or with deliberate indifference to the consequences,

17  established and maintained a policy, practice or custom which directly caused the

18  violation.

19  795.   Each Defendant CYS Employee and their Supervisors, under color of law, acting

20  through the Monroe County Office of Children and Youth Services, by allowing a state

21  created "special relationship" to be created between St. Luke's Hospital and Plaintiff

22  Newborn baby J.A.S. violated Plaintiffs' rights under the Equal Protection Clause of the

23  Fourteenth Amendment to the United States Constitution.

796.    Plaintiffs' assert the aforementioned claim of a breach of the Equal Protection Clause pursuant to *42 U.S.C. § 1983*.

797.    Plaintiffs Mr. & Mrs. Smith have suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully request an amount of $84,800 in compensatory damages per Defendant.

798.    Given the substantial wealth of the Defendant Monroe County, and therefore, its ability to afford the appropriate training to avoid this egregious violation of the U.S. Constitution, and Defendant Monroe County through its employees, agents, or assigns, Defendants Ms. Adelaide W. Grace and Mr. Tim Shaw , had legal obligations to accurately enforce the law, and, since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum families, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the imposition of punitive damages on Defendants Monroe County, Ms. Adelaide W. Grace and Mr. Tim Shaw to deter such Defendants from committing to such conduct in the future which violates the Fourteenth Amendment of the United States Constitution Plaintiffs respectfully request an amount of $1,000,000 in punitive damages per Defendant Mr. Tim Shaw; $5,000,000 per Defendant Ms. Adelaide. W. Grace; and $10,000,000 per Defendant Monroe County.

799.    In the unlikely event that the jury does not find that Plaintiff Smith Family suffered any actual injury despite the deprivation of their federal rights, the Plaintiffs respectfully request a nominal judgment of $1.00.

# XXV.    Fourteenth Amendment

## Special Relationship

### Violation of Protection from Private Actors Creating a Special Relationship between a Child and a Private Entity, Without Sufficient Cause

### Smith, et al. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA PA, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, & Mr. Jerry Hric, MD

800.    When a private actor, acting under color of law, without a court order, separates a parent from their newborn child without probable cause then a special relationship of care between the private entity the actor represents and the child arises.

801.    The special relationship between the private entity and the child, as assented to by the private actor, acting under color of law, gives rise to duties under the Fourteenth Amendment to the United States Constitution.

802.    In order to establish a claim Plaintiffs must prove that (1) each listed Defendant separately acted with deliberate indifference when they allowed Plaintiff Newborn baby J.A.S. to be detained by Defendant St. Luke's Hospital without consent and against the wishes of the parents; and, (2) Plaintiffs were harmed by that detainment.

803.    Upon information and belief, Plaintiffs Mr. and Mrs. Smith allege that each Defendant violated their duty to prevent a formation of a special relationship between

1   the Defendant St. Luke's Hospital and Plaintiff Newborn baby J.A.S. when it concerted

2   St. Luke's Hospital's actions to separate Plaintiffs Mr. and Mrs. Smith from Plaintiff

3   Newborn baby J.A.S. under threat of arrest.

4   804.   Plaintiffs Mr. and Mrs. Smith allege under information and belief that do to the

5   fact that no Defendant obtained a court order or found probable cause that a crime was

6   being committed, had a duty to prevent the formation of a special relationship between

7   Defendant St. Luke's Hospital and Plaintiff Newborn baby J.A.S. which it did not fulfill,

8   and instead had an affirmative duty to reaffirm the parent's right to the Defendant

9   Private Actor St. Luke's Hospital that Plaintiffs Mr. and Mrs. Smith should be with their

10  newborn child.

11  805.   By not reaffirming the parent's request to withdrawal consent for Plaintiff

12  Newborn baby J.A.S. and to reunite parents with their child, Defendant St. Luke's

13  Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, and Ms. Cynthia M. Shultz,

14  MD, acted with deliberate indifference to the welfare of Plaintiffs Newborn baby J.A.S.

15  and Mr. and Mrs. Smith.

16  806.   Each Private Defendant knew or should have known that by creating and/or

17  orchestrating Defendant St. Luke's Hospital's demands to remove Plaintiffs Mr. and

18  Mrs. Smith from Defendant St. Luke's Hospital's property without Plaintiff Newborn baby

19  J.A.S., that Newborn baby J.A.S. would be submitted to a sterile, unwelcoming

20  environment, needlesticks, various testing, time away from both parents shortly after

21  birth, time away from both parents shortly after birth including time for skin-to-skin

22  contact, time away from mother during first few days of breastfeeding, and various

1   treatments done to Plaintiff Newborn baby J.A.S. against the consent and will of

2   Plaintiffs Mr. and Mrs. Smith.

3   807.   The actions of each Defendant, "shock the conscience" because of the degree to

4   which it was clear that failure to act on behalf of the parents to be with their child would

5   have shocking, traumatic, and far-reaching consequences.[30]

6   808.   In the alternative, the actions of each Defendant fails a professional judgement

7   standard because their actions were such a substantial departure from accepted

8   professional judgement, practice, or standards as to demonstrate that each Defendant

9   did not actually base its decisions on professional judgement.

10   809.   Upon information and belief, each Private Defendant by virtue of custom, pattern,

11   practice, policy, lack of supervision and/or failure of training and/or discipline, acted in

12   an unconstitutional fashion by separating parents from their newborn child without a

13   court order, based solely on a report that the hospital had unconfirmed and

14   undifferentiated drug test results for legal amphetamines and illegal

15   methamphetamines, and without any basis to believe that the mother abused or

16   neglected her child.

17   810.   Under a *Monell* legal theory, upon information and belief, Plaintiff Smith Family

18   can demonstrate by a preponderance of the evidence that St. Luke's Hospital, & OBHG

19   PA, agents, employees, and/or assigns violated Plaintiff Smith Family's federal rights,

20   and that each Defendant Supervisor listed in this allegation, should be held liable for

21   conduct of subordinate St. Luke's Hospital, and OBHG PA's agents, employees, and/or

22   assigns, because as supervisors directed the actions in question, or had actual

---

[30]*See* Footnote 14.

1  knowledge of the violation and acquiesced to it, or with deliberate indifference to the

2  consequences, established and maintained a policy, practice or custom which directly

3  caused the violation.

4  811.    Under a *Monell* legal theory, upon information and belief, Plaintiff Smith Family

5  can demonstrate by a preponderance of the evidence that Onsite Neonatal, through its

6  agents, employees, and/or assigns violated Plaintiff Smith Family's federal rights, and

7  that supervisor Defendant Mr. Jerry Hric, MD, should be held liable for conduct of

8  subordinates Ms. Teresa Marlino, MD and Ms. Cynthia Shultz, MD and any other Onsite

9  Neonatal agents, employees, and/or assigns, because as supervisor directed the

10  actions in question, or had actual knowledge of the violation and acquiesced to it, or

11  with deliberate indifference to the consequences, established and maintained a policy,

12  practice or custom which directly caused the violation.

13  812.    Upon information and belief, Plaintiffs can demonstrate by a preponderance of

14  evidence that each Defendant Private Actor conspired with at least one Defendant State

15  Actor elsewhere listed in this complaint.

16  813.    The conspiracy between the Defendant parties and their agents, employees, or

17  assigns violates *42 U.S.C. § 1983*.

18  814.    Each Defendant, under color of law, acting as or through St. Luke's Hospital,

19  Onsite Neonatal, and OBHG PA, by allowing a state created "special relationship" to be

20  created between private Defendant St. Luke's Hospital and Plaintiff Newborn baby

21  J.A.S. violated Plaintiffs' rights under the Equal Protection Clause of the Fourteenth

22  Amendment to the United States Constitution.

815.    Plaintiffs assert the aforementioned claim of a breach of the Equal Protection Clause pursuant to *42 U.S.C. § 1983*.

816.    Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully request an amount of $84,800 in compensatory damages per Defendant.

817.    Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, , Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, and Mr. Jerry Hric, MD, and therefore, their ability to afford the appropriate training to avoid this egregious violation of the U.S. Constitution, and, since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum families, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the imposition of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, and Mr. Jerry Hric, MD, to deter such Defendants from committing to such conduct in the future which violates the Fourteenth Amendment of the United States Constitution Plaintiffs respectfully request an amount of $1,000,000 in punitive damages per Defendant Mr. Jerry Hric, MD; and $10,000,000 per Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, and Ms. Cynthia M. Shultz, MD.

818.    In the unlikely event that the jury does not find that Plaintiff Smith Family suffered any actual injury despite the deprivation of their federal rights, the Plaintiffs respectfully request a nominal judgment of $1.00.

## XXVI.    Fourteenth Amendment

### *Special Relationship*

### *Violation of Protection from State & Private Actors Creating a Special Relationship between a Child and a Private Entity, Without Sufficient Cause*

### Smith, et al. v. Anderson Labs & Ms. Emily Miller, MD

819.    Defendant Anderson Labs acting through its agents, employees, and/or assigns; and, St. Luke's Hospital acting through its agents, employees, and/or assigns, acted in concert with one another, followed a practice, and/or entered into an agreement or understanding to violate Plaintiffs Mr. and Mrs. Smith's and Newborn baby J.A.S.'s Fourteenth Amendment substantive due process right to be free of the unnecessary creation of a "special relationship" between Defendant St. Luke's Hospital and Plaintiff Newborn baby J.A.S.

820.    When a private entity, acting under color of law, without a court order, separates a parent from their newborn child without probable cause then a special relationship of care between the private entity and the child arises.

821.    The special relationship between the private entity and the child, as assented to by Anderson Labs, acting under color of law, gives rise to duties under the Fourteenth Amendment to the United States Constitution.

822.    In order to establish a claim Plaintiffs must prove that (1) Defendant Anderson Labs and its agents, employees, assigns, and/or supervisors, acted with deliberate indifference when they allowed Plaintiff Newborn baby J.A.S. to be detained by agents, employees, and/or assigns, of Defendant St. Luke's Hospital without consent and against the wishes of the parents; and, (2) Plaintiffs were harmed by that detainment.

823.    Upon information and belief, Plaintiffs Mr. and Mrs. Smith allege that Defendant Anderson Labs and its agents, employees, assigns, and/or supervisors violated its duty to prevent a formation of a special relationship between the itself and newborn baby J.A.S. when it endorsed and/or concerted Defendant St. Luke's Hospitals agents, employees, and/or assigns, actions to separate Plaintiffs Mr. and Mrs. Smith from Newborn baby J.A.S.

824.    Plaintiffs Mr. and Mrs. Smith allege under information and belief that the Defendant Anderson Labs and its agents, employees, assigns, and/or supervisors, did use substance abuse tests that did not distinguish between legal amphetamines and illegal methamphetamines, which it knew or should have known, would have been reported to Defendant St. Luke's Hospital to be used for reasons beyond medical purposes.

825.    Defendant Anderson Labs and its agents, employees, assigns, and/or supervisors had a duty to prevent the formation of a special relationship between Defendant St. Luke's Hospital and Plaintiff Newborn baby J.A.S. which they did not fulfill, and instead, had an affirmative duty to use testing that distinguishes between legal amphetamines and illegal methamphetamines.

826.   By not use testing that distinguishes between legal amphetamines and illegal methamphetamines, Defendant Anderson Labs and its agents, employees, assigns, and/or supervisors acted with deliberate indifference to the welfare of Plaintiffs newborn baby J.A.S. and Mr. and Mrs. Smith.

827.   Defendant Anderson Labs and its agents, employees, assigns, and/or supervisors knew or should have known that by approving and/or orchestrating with St. Luke's agents, employees, and/or assigns demands to use testing that does not distinguish between legal amphetamines and illegal methamphetamines that newborn baby J.A.S. would be submitted to a sterile, unwelcoming environment, needlesticks, various testing, time away from both parents shortly after birth including time for skin-to-skin contact, time away from both parents shortly after birth, time away from mother during first few days of breastfeeding, and various treatments done to Plaintiff Newborn baby J.A.S. against the consent and will of Plaintiffs Mr. and Mrs. Smith.

828.   The actions of Anderson Labs and its agents, employees, assigns, and/or supervisors also "shock the conscience" because of the degree to which it was clear that failure to use testing that distinguishes between legal amphetamines and illegal methamphetamines would have shocking, traumatic, and far-reaching consequences for the people being tested.[31]

829.   In the alternative, the actions of Defendant Anderson Labs and its agents, employees, assigns, and/or supervisors fail a professional judgement standard because its actions were such a substantial departure from accepted professional judgement,

---

[31]See Footnote 14.

1    practice, or standards as to demonstrate that the Defendant Anderson Labs did not

2    actually base its decisions on professional judgement.

3    830.    Upon information and belief, Defendant Anderson Labs and its agents,

4    employees, assigns, and/or supervisors by virtue of custom, pattern, practice, policy,

5    lack of supervision and/or failure of training and/or discipline, acted in an

6    unconstitutional fashion by helping to form the basis to prosecute Plaintiffs Mr. & Mrs.

7    Smith by separating parents from their newborn baby without a court order, based

8    solely on a report that the hospital had unconfirmed and undifferentiated drug test

9    results for legal amphetamines and illegal methamphetamines, which were rendered by

10    Defendant Anderson Labs and its agents, employees, or assigns.

11    831.    Upon information and belief, Plaintiffs can demonstrate by a preponderance of

12    evidence that the Defendant Private Entity Anderson Labs, its agents, employees,

13    and/or assigns conspired with at least one Defendant Actor elsewhere listed in this

14    complaint.

15    832.    The conspiracy between the Defendant parties and their agents, employees, or

16    assigns violates *42 U.S.C. § 1983*.

17    833.    Defendant Anderson Labs and its agents, employees, assigns, and/or

18    supervisors, by giving undifferentiated and harmful test results that were intended to be

19    relied on by medical providers, and/or other related staff, acting through its agents,

20    employees and/or assigns, acting under color of law, by allowing a state created

21    "special relationship" to be created between private Defendant St. Luke's and Plaintiff

22    Newborn baby J.A.S. violated Plaintiffs' rights under the Equal Protection Clause of the

23    Fourteenth Amendment to the United States Constitution.

834.   Under a *Monell* legal theory, upon information and belief, Plaintiff Smith Family can demonstrate by a preponderance of the evidence that Anderson Labs, and its agents, employees, assigns, and/or supervisors violated Plaintiff Smith Family's federal rights, and that supervisor Defendant Ms. Emily Miller, MD, should be held liable for conduct of subordinate Anderson Labs and its agents, employees, and/or assigns, because as supervisor directed the actions in question, or had actual knowledge of the violation and acquiesced to it, or with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violation.

835.   Plaintiffs' assert the aforementioned claim of a breach of the Equal Protection Clause pursuant to *42 U.S.C. § 1983*.

836.   Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully request an amount of $84,800 in compensatory damages per Defendant.

837.   Given the substantial wealth of the Defendants Anderson Labs and Ms. Emily Miller, MD, and therefore, their ability to afford the appropriate training to avoid this egregious violation of the U.S. Constitution, and, since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum families, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton

1   manner, the Plaintiffs respectfully request the imposition of punitive damages on

2   Defendants Anderson Labs and Ms. Emily Miller, MD, to deter such Defendants from

3   committing to such conduct in the future which violates the Fourteenth Amendment of

4   the United States Constitution Plaintiffs respectfully request an amount of $5,000,000 in

5   punitive damages per Defendants Anderson Labs and Ms. Emily Miller, MD.

6   838.　In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

7   any actual injury despite the deprivation of their federal rights, the Plaintiffs respectfully

8   request a nominal judgment of $1.00.

9   # XXVII.　Fourteenth Amendment

10   ## *Equal Protection*

11   ## *Right to be Free from Discrimination Based on One's Sex*

12   ### Mrs. Grace Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

13   ### Physician's Group, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology

14   ### Associates, Monroe County, Ms. Adelaide W. Grace, & Mr. Tim Shaw

15   839.　Upon information and belief, Defendant St. Luke's entered into an agreement, or

16   understanding with Defendant Monroe County CYS to violate Plaintiff Mrs. Grace

17   Smith's right to equal protection under the Fourteenth Amendment to the United State

18   Constitution.

19   840.　Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

20   Physician's Group, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology

21   Associates and Monroe County, through its Office of Child and Youth Services, Ms.

1    Adelaide W. Grace and Mr. Tim Shaw each acted in concert with one another and in

2    furtherance of the agreement or understanding that Plaintiff Mrs. Smith would be

3    subjected to drug testing, but Mr. Smith or other similarly situated males would not be

4    tested for the same substances.

5    841.    Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

6    Physician's Group, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology

7    Associates and Monroe County, through its Office of Child and Youth Services, Ms.

8    Adelaide W. Grace and Mr. Tim Shaw had a custom, pattern, policy or practice of

9    collecting information from new mothers regarding their prior drug use, but had no such

10   custom, pattern, policy or practice of collecting such information about prior drug use by

11   these women's male partners or other similarly situated men within the Smith

12   household, such as, men likely to have custody or visitation of a newborn or very young

13   child.

14   842.    Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

15   Physician's Group, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology

16   Associates and Monroe County, through its Office of Child and Youth Services, Ms.

17   Adelaide W. Grace and Mr. Tim Shaw had a custom, pattern, policy or practice of

18   collecting and drug testing the urine, blood, and tissues of new mothers but had no

19   custom, pattern, policy or practice of collecting and drug testing the urine, blood, or

20   tissues of these women's male partners or other similarly situated men.

21   843.    Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

22   Physician's Group, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology

23   Associates had a custom, pattern, policy or practice of reporting to Children and Youth

1 agencies, for new mothers, but did not have any similar custom, pattern, policy or

2 practice of reporting such drug test results use of these women's male partners or other

3 similarly situated men.

4 844. Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

5 Physician's Group, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology

6 Associates reported new mothers' confidential medical information to Children and

7 Youth as a policy or practice, and Northampton County Children and Youth Services,

8 and Monroe County CYS in this particular instance, with the understanding and intent

9 that one of the two Children and Youth agencies would use this information to conduct

10 child abuse investigations into these new mothers, and Plaintiff Mrs. Grace Smith in this

11 instance.

12 845. Monroe County CYS had a policy and practice of accepting and acting on

13 confidential information it received from Defendants St. Luke's Hospital, Onsite

14 Neonatal, OBHG PA, St. Luke's Physician's Group, Bethlehem Neonatal, St. Luke's

15 Obstetrics and Gynecology Associates, knowing that the information was being

16 collected only from new mothers and was not being collected from Mr. Smith or other

17 similarly situated men.

18 846. Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

19 Physician's Group, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology

20 Associates, and Monroe County understood and intended those new mothers, but not

21 similarly situated men, would be investigated for abusing or neglecting the children

22 under their care based exclusively on unconfirmed and undifferentiated drug test results

23 for legal amphetamines and illegal methamphetamines.

847.    Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physician's Group, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology Associates, Monroe County CYS, Ms. Adelaide W. Grace, and Mr. Tim Shaw intended to subject new mothers, but not similarly situated men, to unwarranted highly invasive, burdensome, humiliating, and/or unconstitutional child abuse or child neglect investigations based exclusively on unconfirmed and undifferentiated drug test results between legal amphetamines and illegal methamphetamines, without any basis to suspect or believe that Newborn baby J.A.S. had been affected by illegal substance abuse or was having withdrawal symptoms resulting from prenatal drug exposure.

848.    Under a *Monell* legal theory, upon information and belief, Plaintiff Smith Family can demonstrate by a preponderance of the evidence that Mr. Tim Shaw violated Plaintiff Smith Family's federal rights, and that supervisor Defendant Ms. Adelaide W. Grace should be held liable for conduct of subordinate Defendant Mr. Tim Shaw, because as supervisor directed the actions in question, or had actual knowledge of the violation and acquiesced to it, or with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violation.

849.    Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physician's Group, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology Associates, Monroe County, Ms. Adelaide W. Grace, and Mr. Tim Shaw, violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

850.    The conspiracy between the Defendant parties and their agents, employees, or assigns violates *42 U.S.C. § 1983*.

851.    Plaintiff asserts the aforementioned claim of a breach of the Equal Protection Clause pursuant to *42 U.S.C. § 1983*.

852.    Plaintiffs Mr. & Mrs. Smith have suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiff respectfully requests an amount of $59,500 in compensatory damages per Defendant.

853.    Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA PA, St. Luke's Physician's Group, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology Associates, and therefore, its ability to afford the appropriate training to avoid this egregious violation of the U.S. Constitution, and Defendant Monroe County through its employees, agents, or assigns, Ms. Adelaide W. Grace, and Mr. Tim Shaw, had legal obligations to accurately enforce the law, and, since harm was actually caused to the current Plaintiff Mrs. Smith, and since harm is likely to continue to harm future postpartum families, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiff respectfully requests the imposition of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physician's Group, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology Associates, Monroe County, Ms. Adelaide W. Grace, and Mr. Tim Shaw to deter such Defendants from

1    committing to such conduct in the future which violates the Fourteenth Amendment of

2    the United States Constitution Plaintiff respectfully requests an amount of $1,000,000 in

3    punitive damages per Defendant Mr. Tim Shaw; $5,000,000 per Defedants Onsite

4    Neonatal, OBHG PA, St. Luke's Physician's Group, Bethlehem Neonatal, St. Luke's

5    Obstetrics and Gynecology Associates, and Ms. Adelaide W. Grace; and $10,000,000

6    per Defendants St. Luke's Hospital, and Monroe County.

7    854.    In the unlikely event that the jury does not find that Plaintiff Mrs. Smith suffered

8    any actual injury despite the deprivation of their federal rights, the Plaintiffs respectfully

9    request a nominal judgment of $1.00.

10    # XXVIII.    <u>Fourteenth Amendment</u>

11    ## <u>*Equal Protection*</u>

12    ### <u>*Right to be Free from Discrimination Based on One's Sex*</u>

13    <u>Mrs. Grace Smith v. St. Luke's Hospital, "Security Guard 'Freddy'", "Security Guard

14    'Joe'", "Security Guard 'Nate'", "Security Guard(s) 'Unknown'", "Security

15    Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe,

16    Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, & the

17    "Hospital Leadership Team"</u>

18    855.    Upon information and belief Defendants St. Luke's Hospital, "Security Guard

19    'Freddy'", "Security Guard 'Joe'", "Security Guard 'Nate'", "Security Supervisor

20    'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert

21    L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

1  violated Plaintiff Mrs. Grace Smith's right to equal protection under the Fourteenth

2  Amendment to the United States Constitution.

3  856.   Defendant St. Luke's Hospital had a custom, pattern, policy or practice of

4  guarding new mothers suspected of illegal drug use, but did not have a custom, pattern,

5  policy, or practice to ensure female security guards are the ones who guard

6  breastfeeding female mothers.

7  857.   Only a curtain separated Plaintiff Mrs. Smith from guards, whom Mrs. Smith

8  regarded as male, from her presence while breastfeeding Newborn baby J.A.S.

9  858.   Defendants "Security Guard 'Freddy'", "Security Guard 'Joe'", and "Security

10  Guard 'Nate'", had knowledge that Plaintiff Mrs. Smith was breastfeeding Newborn baby

11  J.A.S., and on numerous occasions, without cause, and without permission of Plaintiff

12  Mrs. Smith, physically invaded the private sanctum of a breastfeeding mother with

13  random insertions of self and voyeuristic observations into Newborn baby J.A.S.'s NICU

14  unit.

15  859.   Upon information and belief, Defendant St. Luke's Hospital did not at any time

16  provide the mother, Mrs. Smith, with a guard who self-identifies as female or who is

17  chromosomally female.

18  860.   Defendant male guards, in acts of humiliation, even followed Plaintiff Mrs. Smith

19  to and from the restroom, and at no time did a female guard follow Plaintiff Mrs. Smith to

20  the restroom in lieu of a male guard.

21  861.   Plaintiff Mrs. Smith was not able to voice her objections to only male guards

22  being present because Plaintiff Mrs. Smith was afraid that Defendant St. Luke's Hospital

23  would have viewed questioning any of Defendant St. Luke's Hospital's actions as an

1   affront to their care and would have once again ejected her from the premises without

2   Newborn baby J.A.S. as had already happened to her already previously the same

3   weekend.

4   862.   Upon information and belief, all Defendants intended to subject new mothers to

5   unwarranted, highly invasive, burdensome, humiliating, and/or restrictive actions based

6   exclusively on unconfirmed and undifferentiated drug test results for legal

7   amphetamines and illegal methamphetamines, without any basis to suspect or believe

8   that Newborn baby J.A.S. had been affected by illegal substance abuse or was having

9   withdrawal symptoms resulting from prenatal drug exposure.

10   863.   Upon information and belief, Defendants St. Luke's Hospital, "Security Guard

11   'Freddy'", "Security Guard 'Joe'", "Security Guard 'Nate'", "Security Supervisor

12   'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert

13   L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

14   by virtue of custom, pattern, practice, policy, lack of supervision and/or failure of training

15   and/or discipline, acted in an unconstitutional fashion by placing Defendant Mrs. Smith

16   under 24-hour male guard without a court order, and based solely on a report that the

17   hospital had unconfirmed and undifferentiated drug test results between legal

18   amphetamines and illegal methamphetamines, and without any reasonable basis to

19   believe that the mother abused or neglected her child.

20   864.   Under a *Monell* legal theory, upon information and belief, Plaintiff Smith Family

21   can demonstrate by a preponderance of the evidence that Defendants , "Security Guard

22   'Freddy'", "Security Guard 'Joe'", and "Security Guard 'Nate'", violated Plaintiff Smith

23   Family's federal rights, and that supervisor Defendants "Security Supervisor 'Unknown'",

1  "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,

2  Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team", should

3  be held liable for conduct of subordinates "Security Guard 'Freddy'", "Security Guard

4  'Joe'", and "Security Guard 'Nate'", because as supervisors directed the actions in

5  question, or had actual knowledge of the violation and acquiesced to it, or with

6  deliberate indifference to the consequences, established and maintained a policy,

7  practice or custom which directly caused the violation.

8  865.    Defendants St. Luke's Hospital, "Security Guard 'Freddy'", "Security Guard 'Joe'",

9  "Security Guard 'Nate'", "Security Supervisor 'Unknown'", "Head of Hospital Security

10  'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

11  Dawn Hoffman, and the "Hospital Leadership Team", violated Plaintiff's rights under the

12  Equal Protection Clause of the Fourteenth Amendment to the United States

13  Constitution.

14  866.    Plaintiff asserts the aforementioned claim of a breach of the Equal Protection

15  Clause pursuant to *42 U.S.C. § 1983*.

16  867.    Plaintiffs Mr. & Mrs. Smith have suffered substantial harm as a result of

17  Defendants' conduct, including but not limited to, emotional and psychological distress,

18  pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully

19  requests appropriate compensatory damages to account for PTSD therapies and other

20  related treatments as they have been and will continue to be necessary; Plaintiff

21  respectfully requests an amount of $59,500 in compensatory damages per Defendant.

22  868.    Given the substantial wealth of the Defendants St. Luke's Hospital, ", "Head of

23  Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

1    Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team", and therefore, its

2    ability to afford the appropriate training to avoid this egregious violation of the U.S.

3    Constitution, and, since harm was actually caused to the current Plaintiff Mrs. Smith,

4    and since harm is likely to continue to harm future postpartum families, and because the

5    acts of the Defendants and their agents, assigns, or employees callously disregarded

6    the Plaintiff's rights in a reckless and wanton manner, the Plaintiff respectfully requests

7    the imposition of punitive damages on Defendants St. Luke's Hospital, ", "Head of

8    Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

9    Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" to deter such

10   Defendants from committing to such conduct in the future which violates the Fourteenth

11   Amendment of the United States Constitution Plaintiff respectfully requests an amount

12   of $500,000 in punitive damages per Defendants "Security Guard 'Freddy'", "Security

13   Guard 'Joe'", "Security Guard 'Nate'", and "Security Guard(s) 'Unknown'; $1,000,000

14   per Defendants "Security Supervisor 'Unknown'", and "Head of Hospital Security

15   'Unknown'"; $5,000,000 per Defendants Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,

16   Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"; and

17   $10,000,000 per Defendant St. Luke's Hospital.

18   869.   In the unlikely event that the jury does not find that Plaintiff Mrs. Smith suffered

19   any actual injury despite the deprivation of their federal rights, the Plaintiffs respectfully

20   request a nominal judgment of $1.00.

21              # XXIX.   42 U.S.C. § 1983

22                 *Liability in Connection with Another*

1       *Failure to Intervene*

2       Smith, *et al.* v. Northampton County, Bethlehem Township, Officers Andrew

3       Keyock and Thomas A. Smith, Corporal Kirk Harryn, & Chief Daniel G. Pancoast

4       870.    Upon information and belief, Plaintiffs Mr. and Mrs. Smith and Newborn baby

5       J.A.S. allege that doctors Teresa Marino, MD and Cynthia M. Shultz, MD, while acting

6       as an agent, employee, or assign of St. Luke's Hospital violated Plaintiff's Fourth and

7       Fourteenth Amendments to the United States Constitution, and Defendant Officers

8       Andrew Keyock and Thomas A. Smith should be held liable for the violations of doctors

9       Ms. Teresa Marino, MD and Ms. Cynthia Shultz, MD because Defendant Officers

10      Keyock and Smith failed to intervene to stop violations to the Plaintiff Smith Family's

11      federal constitutional and rights.

12      871.    In order to demonstrate the defendant state actors' culpability Plaintiffs must

13      prove the following by a preponderance of the evidence: (1) a third party violated a

14      plaintiff's federal rights; (2) defendant state actors had a duty to intervene to prevent a

15      violation of plaintiff's federal rights by that third party; (3) the defendant state actors had

16      a reasonable opportunity to intervene; and, (4) the defendant state actors failed to

17      intervene.

18      872.    Upon information and belief, Defendant third party doctors Ms. Teresa Marlino,

19      MD and Ms. Cynthia Shultz, MD, while in the course and process separating a newborn

20      baby child from its parents without a court order or probable cause of abuse, violated

21      Plaintiffs Fourth, and Fourteenth Amendment rights.

873.    Upon information and belief, Defendant Officers Andrew Keyock and Thomas A. Smith observed Plaintiff Smith Families' constitutional rights being violated and had a duty to intervene with doctors Teresa Marlino, MD and Cynthia A. Shultz, MD to prevent Plaintiff Smith Families' constitutional rights from being further violated.

874.    Upon information and belief, Defendant Officers Andrew Keyock and Thomas A. Smith, by conferencing with doctors and other St. Luke's Hospital staff and by allowing the encounter between the Smith's, Officers, and St. Luke's Hospital Staff to last as long as the Defendant Officers desired, had ample reasonable opportunity to intervene in the actions of Defendant third party doctors Ms. Teresa Marlino, MD, and, Ms. Cynthia Shultz, MD.

875.    Upon information and belief, Defendant Officers affirmed the decision of St. Luke's Hospital to separate Plaintiff Newborn baby J.A.S. from his parents Plaintiffs Mr. and Mrs. Smith and escorted Mr. and Mrs. Smith under armed guard from St. Luke's Hospital under threat of arrest, thereby demonstrating Defendant Officers Andrew Keyock and Thomas A. Smith did not intervene on behalf of the Plaintiffs.

876.    Therefore, upon information and belief, all of the elements of a Failure to Intervene claim can be legally met and Defendant Officers Andrew Keyock and Thomas A. Smith should be liable for not acting on Plaintiff Smith Families' behalf when the Defendant Officers observed Defendant doctors Teresa Marlino, MD and Cynthia A. Shultz, MD violating Plaintiffs' constitutional rights.

877.    Defendant Officers Andrew Keyock and Thomas A. Smith, acted by virtue of a custom, pattern, practice, policy, and/or failure to appropriately train and/or discipline, acquiesced in and/or has otherwise authorized other police officers to violate citizens'

1   rights as protected by the United States Constitution by allowing unwarranted, highly

2   intrusive, humiliating, and coercive child abuse investigations into new mothers and

3   their families.

4   878.   Under a *Monell* legal theory, upon information and belief, Plaintiff Smith Family

5   can demonstrate by a preponderance of the evidence that Officers Andrew Keyock and

6   Thomas A. Smith, violated the Plaintiff Smith Family's federal rights, and that supervisor

7   Defendants Corporal Harryn, and Chief Pancoast should be held liable for conduct of

8   subordinates Defendant Officers Andrew Keyock and Thomas A. Smith, because as

9   their supervisors directed the actions in question, or had actual knowledge of the

10   violation and acquiesced to it, or with deliberate indifference to the consequences,

11   established and maintained a policy, practice or custom which directly caused the

12   violation.

13   879.   Upon information and belief, Plaintiffs can demonstrate by a preponderance of

14   evidence that Defendant State Actors conspired with at least one Defendant Private

15   Actor elsewhere listed in this complaint.

16   880.   The conspiracy between the Defendant parties and their agents, employees, or

17   assigns violates *42 U.S.C. § 1983*.

18   881.   Defendants Northampton County and/or Bethlehem Township, through the

19   actions of its Defendant Officers Andrew Keyock, Thomas A. Smith, Corporal Kirk

20   Harryn, and Chief Daniel G. Pancoast of the Bethlehem Police Department, violated

21   Plaintiff's rights.

22   882.   Plaintiffs assert these claims pursuant to *42 U.S.C. § 1983*.

883.   Plaintiffs Mr. & Mrs. Smith have suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully request an amount of $84,800 in compensatory damages per Defendant.

884.   Given the substantial wealth of the Defendants Northampton County and Bethlehem Township, and therefore, their ability to afford the appropriate training to avoid this egregious violation of the U.S. Constitution, and Defendant Northampton County through its employees, agents, or assigns, Officers Andrew Keyock & Thomas A. Smith, Corporal Kirk Harryn, & Chief Daniel Pancoast, had legal obligations to accurately enforce the law, and, since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum families, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the imposition of punitive damages on Defendants Northampton County, and Bethlehem Township, and Officers Andrew Keyock & Thomas A. Smith, Corporal Kirk Harryn, and Chief Daniel Pancoast to deter such Defendants from committing to such conduct in the future which violates the Fourteenth Amendment of the United States Constitution Plaintiffs respectfully request an amount of $1,000,000 in punitive damages per Defendants Officer Andrew Keyock, and Officer Thomas A. Smith; $5,000,000 per Defendants Corporal Kirk Harryn, and Chief Daniel

1   Pancoast; and $10,000,000 per Defendants Northampton County and Bethlehem

2   Township.

3   885.   In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

4   suffered any actual injury despite the deprivation of their federal rights, the Plaintiffs

5   respectfully request a nominal judgment of $1.00.

6   # XXX.   42 U.S.C. § 1983

7   ## *Liability in Connection with Another*

8   ## *Failure to Intervene*

9   ## Smith, *et al.* v. Northampton County, Bethlehem Township, Officer Andrew

10   ## Keyock, Corporal Kirk Harryn, & Chief Daniel Pancoast

11   886.   Upon information and belief, Plaintiffs Mr. and Mrs. Smith and Newborn baby

12   J.A.S. allege that Defendant Officer Thomas A. Smith, while acting as an agent,

13   employee, or assign of the Bethlehem Police Department violated Plaintiff's Fourth

14   and/or Fourteenth Amendments to the United States Constitution, and Defendant

15   Officer Andrew Keyock should be held liable for the violations of Defendant Officer

16   Thomas A. Smith because Defendant Officer Keyock failed to intervene to stop

17   violations to the Plaintiff Smith Family's constitutional rights.

18   887.   In order to demonstrate the defendant state actors' culpability Plaintiffs must

19   prove the following by a preponderance of the evidence: (1) a third party violated a

20   plaintiff's federal rights; (2) defendant state actor had a duty to intervene to prevent a

21   violation of plaintiff's federal rights by that third party; (3) the defendant state actor had a

1   reasonable opportunity to intervene; and, (4) the defendant state actor failed to

2   intervene.

3   888.   Upon information and belief, Defendant Officer Thomas A. Smith while in the

4   course and process separating a newborn baby child from its parents without a court

5   order or probable cause, violated Plaintiffs Fourth, and/or Fourteenth Amendment

6   rights.

7   889.   Upon information and belief, Defendant Officer Andrew Keyock observed Plaintiff

8   Smith Families' constitutional rights being violated and had a duty to intervene with

9   Defendant Officer Thomas A. Smith to prevent Plaintiff Smith Families' constitutional

10   rights from being violated.

11   890.   Upon information and belief, Defendant Officer Andrew Keyock, by conferencing

12   with doctors and other St. Luke's Hospital staff and by allowing the encounter between

13   the Smith's, Officers, and St. Luke's Hospital Staff to last as long as the Defendant

14   Officer Keyock desired, had ample reasonable opportunity to intervene in the actions of

15   Defendant Officer Thomas A. Smith.

16   891.   Upon information and belief, Defendant Officer Thomas A. Smith affirmed the

17   decision of St. Luke's Hospital to separate Plaintiff Newborn baby J.A.S. from his

18   parents Plaintiffs Mr. and Mrs. Smith and escorted Mr. and Mrs. Smith under armed

19   guard from St. Luke's Hospital under threat of arrest, thereby demonstrating Defendant

20   Officer Andrew Keyock did not intervene on behalf of the Plaintiffs.

21   892.   Therefore, upon information and belief, all of the elements of a Failure to

22   Intervene claim can be legally met and Defendant Officer Andrew Keyock should be

1   liable for not acting on Plaintiff Smith Families' behalf when he observed Officer Thomas

2   A. Smith violating Plaintiffs' constitutional rights.

3   893.   Defendant Officer Andrew Keyock, acted by virtue of a custom, pattern, practice,

4   policy, and/or failure to be appropriately trained and/or disciplined, acquiesced in and/or

5   has otherwise authorized other police officers to violate citizens' rights as protected by

6   the United States Constitution by allowing unwarranted, highly intrusive, humiliating,

7   and coercive child abuse investigations into new mothers and their families.

8   894.   Upon information and belief, Plaintiffs can demonstrate by a preponderance of

9   evidence that Defendant State Actors conspired with at least one Defendant Private

10   Actor elsewhere listed in this complaint.

11   895.   The conspiracy between the Defendant parties and their agents, employees, or

12   assigns violates *42 U.S.C. § 1983*.

13   896.   Under a *Monell* legal theory, upon information and belief, Plaintiff Smith Family

14   can demonstrate by a preponderance of the evidence that Officer Andrew Keyock,

15   violated the Plaintiff Smith Family's federal rights, and that supervisor Defendants

16   Corporal Harryn, and Chief Pancoast should be held liable for conduct of subordinates

17   Defendant Officer Andrew Keyock, because as his supervisors directed the actions in

18   question, or had actual knowledge of the violation and acquiesced to it, or with

19   deliberate indifference to the consequences, established and maintained a policy,

20   practice or custom which directly caused the violation.

21   897.   Defendants Northampton County and/or Bethlehem Township, through the

22   actions of its Defendant Officers Andrew Keyock, Corporal Kirk Harryn, and Chief

23   Daniel G. Pancoast of the Bethlehem Police Department, violated Plaintiff's rights.

898.    Plaintiffs assert these claims pursuant to *42 U.S.C. § 1983*.

899.    Plaintiffs Mr. & Mrs. Smith have suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully request an amount of $84,800 in compensatory damages per Defendant.

900.    Given the substantial wealth of the Defendants Northampton County and Bethlehem Township, and therefore, their ability to afford the appropriate training to avoid this egregious violation of the U.S. Constitution, and Defendant Northampton County through its employees, agents, or assigns, Officers Andrew Keyock & Thomas A. Smith, Corporal Kirk Harryn, & Chief Daniel Pancoast, had legal obligations to accurately enforce the law, and, since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum families, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the imposition of punitive damages on Defendants Northampton County, and Bethlehem Township, and Officers Andrew Keyock & Thomas A. Smith, Corporal Kirk Harryn, and Chief Daniel Pancoast to deter such Defendants from committing to such conduct in the future which violates the Fourteenth Amendment of the United States Constitution Plaintiffs respectfully request an amount of $1,000,000 in punitive damages per Defendants Officer Andrew Keyock, and Officer Thomas A. Smith; $5,000,000 per Defendants Corporal Kirk Harryn, and Chief Daniel

1  Pancoast; and $10,000,000 per Defendants Northampton County and Bethlehem

2  Township.

3  901.   In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

4  suffered any actual injury despite the deprivation of their federal rights, the Plaintiffs

5  respectfully request a nominal judgment of $1.00.

6  # XXXI.   42 U.S.C. § 1983

7  ## *Liability in Connection with Another*

8  ## *Failure to Intervene*

9  ### Smith, *et al.* v. Northampton County, Bethlehem Township, Officer Thomas A.

10  ### Smith, Corporal Kirk Harryn, & Chief Daniel Pancoast

11  902.   Upon information and belief, Plaintiffs Mr. and Mrs. Smith and Newborn baby

12  J.A.S. allege that Defendant Officer Andrew Keyock, while acting as an agent,

13  employee, or assign of the Bethlehem Police Department violated Plaintiff's Fourth

14  and/or Fourteenth Amendments to the United States Constitution, and Defendant

15  Officer Thomas A. Smith should be held liable for the violations of Defendant Officer

16  Andrew Keyock because Defendant Officer Smith failed to intervene to stop violations to

17  the Plaintiff Smith Family's constitutional rights.

18  903.   In order to demonstrate the defendant state actors' culpability Plaintiffs must

19  prove the following by a preponderance of the evidence: (1) a third party violated a

20  plaintiff's federal rights; (2) defendant state actor had a duty to intervene to prevent a

21  violation of plaintiff's federal rights by that third party; (3) the defendant state actor had a

1   reasonable opportunity to intervene; and, (4) the defendant state actor failed to

2   intervene.

3   904.   Upon information and belief, Defendant Officer Andrew Keyock while in the

4   course and process separating a newborn baby child from its parents without a court

5   order or probable cause, violated Plaintiffs Fourth, and/or Fourteenth Amendment

6   rights.

7   905.   Upon information and belief, Defendant Officer Thomas A. Smith observed

8   Plaintiff Smith Families' constitutional rights being violated and had a duty to intervene

9   with Defendant Officer Andrew Keyock to prevent Plaintiff Smith Families' constitutional

10   rights from being violated.

11   906.   Upon information and belief, Defendant Officer Thomas A. Smith, by

12   conferencing with doctors and other St. Luke's Hospital staff and by allowing the

13   encounter between the Smith's, Officers, and St. Luke's Hospital Staff to last as long as

14   the Defendant Officer Smith desired, had ample reasonable opportunity to intervene in

15   the actions Officer Andrew Keyock.

16   907.   Upon information and belief, Defendant Officer Andrew Keyock affirmed the

17   decision of St. Luke's Hospital to separate Plaintiff Newborn baby J.A.S. from his

18   parents Plaintiffs Mr. and Mrs. Smith and escorted Mr. and Mrs. Smith under armed

19   guard from St. Luke's Hospital under threat of arrest, thereby demonstrating Defendant

20   Officer Thomas A. Smith did not intervene on behalf of the Plaintiffs.

21   908.   Therefore, upon information and belief, all of the elements of a Failure to

22   Intervene claim can be legally met and Defendant Officer Thomas A. Smith should be

1    liable for not acting on Plaintiff Smith Families' behalf when he observed Officer Andrew

2    Keyock violating Plaintiffs' constitutional rights.

3    909.    Defendant Officer Thomas A. Smith, acted by virtue of a custom, pattern,

4    practice, policy, and/or failure to be appropriately trained and/or disciplined, acquiesced

5    in and/or has otherwise authorized other police officers to violate citizens' rights as

6    protected by the United States Constitution by allowing unwarranted, highly intrusive,

7    humiliating, and coercive child abuse investigations into new mothers and their families.

8    910.    Under a *Monell* legal theory, upon information and belief, Plaintiff Smith Family

9    can demonstrate by a preponderance of the evidence that Officer Thomas A. Smith,

10   violated the Plaintiff Smith Family's federal rights, and that supervisor Defendants

11   Corporal Harryn, and Chief Pancoast should be held liable for conduct of subordinates

12   Defendant Officer Thomas A. Smith, because as his supervisor directed the actions in

13   question, or had actual knowledge of the violation and acquiesced to it, or with

14   deliberate indifference to the consequences, established and maintained a policy,

15   practice or custom which directly caused the violation.

16   911.    Upon information and belief, Plaintiffs can demonstrate by a preponderance of

17   evidence that Defendant State Actors conspired with at least one Defendant Private

18   Actor elsewhere listed in this claim.

19   912.    The conspiracy between the Defendant parties and their agents, employees, or

20   assigns violates *42 U.S.C. § 1983*.

21   913.    Defendants Northampton County and/or Bethlehem Township, through the

22   actions of its Defendant Officer Thomas A. Smith, Corporal Kirk Harryn, and Chief

23   Daniel G. Pancoast of the Bethlehem Police Department, violated Plaintiff's rights.

914.    Plaintiffs assert these claims pursuant to *42 U.S.C. § 1983*.

915.    Plaintiffs Mr. & Mrs. Smith have suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully request an amount of $84,800 in compensatory damages per Defendant.

916.    Defendants Northampton County and/or Bethlehem Township though the Bethlehem Township Police Department, is legally obligated to appropriately train its state actor employees to avoid this egregious violation of the U.S. Constitution, and since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm future similarly situated families, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully requests the imposition of punitive damages on Defendants Northampton County and/or Bethlehem Township, and Officer Thomas A. Smith, Corporal Kirk Harryn, and Chief Daniel G. Pancoast to deter such Defendants from committing such conduct in the future which violates the United States Constitution Plaintiffs respectfully request an amount of $1,000,000 in punitive damages per Defendant Officer Thomas A. Smith; $5,000,000 per Defendants Corporal Kirk Harryn, and Chief Daniel Pancoast; and $10,000,000 per Defendants Northampton County and Bethlehem Township..

917.    In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

any actual injury despite the deprivation of his federal rights, the Plaintiffs respectfully

request a nominal judgment of $1.00.

# XXXII.    42 U.S.C. § 1983

## *Liability in Connection with Another*

### *Failure to Intervene*

### Smith, et al. v. Monroe County, Ms. Adelaide W. Grace, & Mr. Tim Shaw

918.    Upon information and belief, Plaintiffs Mr. and Mrs. Smith and Newborn baby

J.A.S. allege that doctors Teresa Marino, MD and/or Cynthia M. Shultz, MD, while

acting as an agent, employee, or assign of St. Luke's Hospital violated Plaintiff's Fourth

and/or Fourteenth Amendments to the United States Constitution, and Defendants Ms.

A.W. Grace and Mr. Tim Shaw, operating through the Monroe County Office of Children

and Youth Services, should be held liable for the violations of doctors Ms. Teresa

Marino, MD and/or Ms. Cynthia Shultz, MD because Defendants Ms. Adelaide W.

Grace, and Mr. Tim Shaw failed to intervene to stop violations to the Plaintiff Smith

Family's constitutional rights.

919.    In order to demonstrate the defendant state actor's culpability Plaintiffs must

prove the following by a preponderance of the evidence: (1) a third party violated a

plaintiff's federal rights; (2) defendant state actor had a duty to intervene to prevent a

violation of plaintiff's federal rights by that third party; (3) the defendant state actor had a

reasonable opportunity to intervene; and, (4) the defendant state actor failed to

intervene.

920.    Upon information and belief, Defendant third party doctors Ms. Teresa Marlino, MD and Ms. Cynthia Shultz, MD, while in the course and process separating a newborn baby child from its parents without a court order or probable cause, violated Plaintiffs' Fourth, and/or Fourteenth Amendment rights.

921.    Upon information and belief, Defendants Ms. Adelaide W. Grace, and Mr. Tim Shaw were made aware that Plaintiff Smith Families' constitutional rights were being violated and had a duty to intervene with doctors Ms. Teresa Marlino, MD and/or Ms. Cynthia Shultz, MD to prevent Plaintiff Smith Families' constitutional rights from being violated.

922.    Upon information and belief, Defendants Ms. Adelaide W. Grace, and Mr. Tim Shaw by conferencing with doctors and other St. Luke's Hospital staff and by allowing the encounter between the Smith's, Officers, and St. Luke's Hospital Staff to continue, had ample reasonable opportunity to intervene in the actions of Defendant doctors Ms. Teresa Marlino, MD, and, Ms. Cynthia Shultz, MD.

923.    Upon information and belief, Defendants Ms. Adelaide W. Grace, and Mr. Tim Shaw did not prevent the decision of St. Luke's Hospital to separate Plaintiff Newborn baby J.A.S. from his parents Plaintiffs Mr. and Mrs. Smith, and thereby consented to Mr. and Mrs. Smith being separated from Newborn baby J.A.S., thereby demonstrating that Defendants Ms. Adelaide W. Grace, and Mr. Tim Shaw did not intervene on behalf of the Plaintiffs.

924.    Therefore, upon information and belief, all of the elements of a Failure to Intervene claim can be legally met and Defendants Ms. Adelaide W. Grace, and Mr. Tim Shaw should be liable for not acting on Plaintiff Smith Families' behalf when the

1    Defendant Officers were made aware of Defendant doctors Teresa Marlino, MD and/or

2    Cynthia A. Shultz, MD violating Plaintiffs' constitutional rights.

3    925.   Defendants Ms. Adelaide W. Grace, and Mr. Tim Shaw acted by virtue of a

4    custom, pattern, practice, policy, and/or failure to be appropriately trained and/or

5    disciplined, acquiesced in and/or has otherwise authorized other police officers to

6    violate citizens' rights as protected by the United States Constitution by allowing

7    unwarranted, highly intrusive, humiliating, and coercive child abuse investigations into

8    new mothers and their families.

9    926.   Defendant Monroe County, through the actions of its Office of Children and

10    Youth Services, violated Plaintiff's rights.

11    927.   Upon information and belief, Plaintiffs can demonstrate by a preponderance of

12    evidence that the Defendant State Actors conspired with at least one Defendant Private

13    Actor elsewhere listed in this complaint.

14    928.   The conspiracy between the Defendant parties and their agents, employees, or

15    assigns violates *42 U.S.C. § 1983*.

16    929.   Under a *Monell* legal theory, upon information and belief, Plaintiff Smith Family

17    can demonstrate by a preponderance of the evidence that Mr. Tim Shaw violated the

18    Plaintiff Smith Family's federal rights, and that supervisor Defendant Ms. Adelaide

19    Grace should be held liable for conduct of subordinate Mr. Tim Shaw, because as his

20    supervisor directed the actions in question, or had actual knowledge of the violation and

21    acquiesced to it, or with deliberate indifference to the consequences, established and

22    maintained a policy, practice or custom which directly caused the violation.

23    930.   Plaintiffs assert these claims pursuant to *42 U.S.C. § 1983*.

931.    Plaintiffs Mr. & Mrs. Smith have suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully request an amount of $84,800 in compensatory damages per Defendant.

932.    Given the substantial wealth of the Defendant Monroe County, and therefore, its ability to afford the appropriate training to avoid this egregious violation of the U.S. Constitution, and Defendant Monroe County through its employees, agents, or assigns, Defendants Ms. Adelaide W. Grace and Mr. Tim Shaw , had legal obligations to accurately enforce the law, and, since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum families, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the imposition of punitive damages on Defendants Monroe County, Ms. Adelaide W. Grace and Mr. Tim Shaw to deter such Defendants from committing to such conduct in the future which violates the Fourteenth Amendment of the United States Constitution Plaintiffs respectfully request an amount of $1,000,000 in punitive damages per Defendant Mr. Tim Shaw; $5,000,000 per Defendant Ms. Adelaide. W. Grace; and $10,000,000 per Defendant Monroe County.

933.    In the unlikely event that the jury does not find that Plaintiff Smith Family suffered any actual injury despite the deprivation of their federal rights, the Plaintiffs respectfully request a nominal judgment of $1.00.

# Violations of U.S. Federal Statutory Law

## I.   Title III of the Americans with Disabilities Act (ADA)

### Discrimination by a Place of Public Accommodation

Mrs. Grace Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

Physician's Group, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology

Associates & Mr. Jerry Hric, MD

934.   *42 U.S.C. §12182(a)* of the Americans with Disabilities Act is titled, "**Prohibition of discrimination by public accommodations. (a) General rule,**" and reads: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."[32]

935.   *42 U.S.C. §12182(a) continues, "*To state a cause of action under this section, the plaintiff must prove that [s]he: "(1) has a disability; (2) was discriminated against on the basis of that disability; (3) was thereby denied goods or services; (4) by a place of public accommodation by the owner or operator of that facility."[33]

---

[32]*Ramsay v. Nat'l Bd. of Med. Examiners*, CIVIL ACTION No. 19-CV-2002, at *20 (E.D. Pa. Dec. 30, 2019).

[33]*Lewis v. Sheraton Society Hill*, Civil Action No. 96-7936, at *7 (E.D. Pa. July 10, 1997).

1    936.   Under the ADA, "[t]he term 'disability['] means, with respect to an individual[:](A)

2    a physical or mental impairment that substantially limits one or more major life activities

3    of such individual; (B) a record of such an impairment; or (C) being regarded as having

4    such an impairment.[34]

5    937.   As to the term "impairment," the applicable Department of Justice ("DOJ")

6    regulations provide that the term "physical or mental impairment" includes ADHD and

7    dyslexia and other specific learning disabilities.[35]

8    938.   "The term "individual with a disability", however, "does not include an individual

9    who is currently engaging in the illegal use of drugs, when the covered entity acts on the

10    basis of such use."[36]

11    939.   "[T]he primary object of attention in cases brought under the ADA should be

12    whether entities covered under the ADA have complied with their obligations," ... and

---

[34] *Ramsay v. Nat'l Bd. of Med. Examiners*, CIVIL ACTION No. 19-CV-2002, at *20 (E.D. Pa. Dec. 30, 2019).

[35] *28 C.F.R. § 36.105(b)(2); Ramsay v. Nat'l Bd. of Med. Examiners*, 968 F.3d 251, 257 (3d Cir. 2020).

[36] *42 U.S.C. § 12210(a). Lewis v. Sheraton Society Hill*, Civil Action No. 96-7936, at *7 (E.D. Pa. July 10, 1997).

1  "that the question of whether an individual's impairment is a disability under the ADA

2  should not demand extensive analysis.""[37]

3  940.   As well, *42 U.S.C. §12102(4)(E)(1).* "[T]he determination of whether an

4  impairment substantially limits a major life activity shall be made without regard to the

5  ameliorative effects of mitigating measures such as (I) medication…."[38]

6  941.   In addition, *29 C.F.R. §1630.2(j)(vii).* An impairment that is episodic or in

7  remission is a disability if it would substantially limit a major life activity when active."[39]

8  942.   "In enacting the ADA, Congress demonstrated its view that the public has an

9  interest in ensuring the eradication of discrimination on the basis of disabilities."[40]

10  943.   Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal,

11  OBHG PA, St. Luke's Physician's Group, Bethlehem Neonatal, St. Luke's Obstetrics

12  and Gynecology Associates & Mr. Jerry Hric, MD violated *42 U.S.C. §12182(a)* of the

13  Americans with Disabilities Act when they discriminated on the basis of Plaintiff Mrs.

14  Smith's disability of attention deficit hyperactivity disorder (ADHD), and she was denied

15  equal enjoyment of access to her newborn baby child as well as goods, services,

---

[37] *Ramsay v. Nat'l Bd. of Med. Examiners*, CIVIL ACTION No. 19-CV-2002, at *23 (E.D. Pa. Dec. 30, 2019).

[38] *Id.*

[39] *Id at *26.*

[40] *Ramsay v. Nat'l Bd. of Med. Examiners*, 968 F.3d 251, 263 (3d Cir. 2020).

1   facilities, privileges, advantages, and accommodations, by Defendants who operate a

2   place of public accommodation.

3   944.   *42 U.S.C. §12182(a)(1)*: Plaintiff Mrs. Smith has a long-recorded medical history

4   of the disability ADHD.

5   945.   Plaintiff Mrs. Smith presented printed authentic medical records documenting

6   Plaintiff Mrs. Smith's disability of ADHD upon intake tirage to Defendant St. Luke's

7   Hospital.

8   946.   Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

9   Physician's Group, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology

10  Associates & Mr. Jerry Hric, MD, did not dispute the validity of the authentic medical

11  records presented to them by Plaintiff Mrs. Smith, and appeared to accept their contents

12  as truth to Plaintiff Mrs. Smith.

13  947.   *42 U.S.C. §12182(a)(2):* Plaintiff Mrs. Smith was discriminated on the basis of

14  her disability when an urine drug test performed on Plaintiff Mrs. Smith did not

15  differentiate between legal amphetamines and illegal methamphetamines, and that test

16  was subsequently used to separate Plaintiff Mrs. Smith from her newborn baby.

17  948.   Plaintiff Mrs. Smith was legally prescribed Vyvanse for her disability of ADHD.

18  949.   Defendant St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

19  Physician's Group, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology

20  Associates & Mr. Jerry Hric, MD, was made aware both orally, and in medical

21  documentation upon intake triage that Plaintiff Mrs. Smith was legally prescribed the

22  amphetamine Vyvanse.

950.    Despite the fact that the Defendants knew that Plaintiff Mrs. Smith would test positive for a urinary drug screen that did not differentiate between legal amphetamines and illegal methamphetamines, the Defendants conducted such a urinary drug screen.

951.    Intentionally, Defendant St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physician's Group, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology Associates & Mr. Jerry Hric, MD, treated the undifferentiated urinary drug screen as being irrefutably positive for methamphetamine.

952.    The unfounded accusation that Plaintiff Mrs. Smith ingested methamphetamine was used by Defendant St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physician's Group, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology Associates & Mr. Jerry Hric, MD against Mrs. Smith to intentionally separate Plaintiff Mrs. Smith from her newborn baby.

953.    *42 U.S.C. §12182(a)(3):*  Plaintiff Mrs. Smith was denied the right and service of being with her newborn baby child on the basis of the undifferentiated drug test.

954.    *42 U.S.C. §12182(a)(4)*:  Defendant St. Luke's Hospital Onsite Neonatal, OBHG PA, St. Luke's Physician's Group, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology Associates, and Mr. Jerry Hric, MD are places of public accommodation.

955.    Plaintiff Mrs. Smith suffers a disability because her long-standing diagnosis which demonstrates a mental impairment.

956.    Plaintiff Mrs. Smith has a long-standing medical record of her diagnosis of ADHD and history of treatment.

957.    Because Plaintiff Mrs. Smith never ingested illegal methamphetamine, and in fact took prescription medication as directed by her physician(s), Plaintiff Mrs. Smith's claim is valid under the *ADA*.

958.    Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physician's Group, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology Associates, and Mr. Jerry Hric, MD, did not comply with their obligations under the *ADA* because Defendants demanded an extensive analysis of Plaintiff Mrs. Smith's disability when Defendants chose to disregard that the cause of her unfounded positive results of the undifferentiated drug test were due to a prescription medication that Defendant St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physician's Group, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology Associates, and Mr. Jerry Hric, MD knew to expect, and not the unlikely event that Plaintiff Mrs. Smith had ingested methamphetamine.

959.    By disregarding the valid reason for the positive undifferentiated drug test results, and outright refusing to contact Plaintiff Mrs. Smith's treating physicians, Defendant St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physician's Group, Bethlehem Neonatal, St. Luke's Obstetrics and Gynecology Associates, and Mr. Jerry Hric, MD, was not acknowledging that Plaintiff Mrs. Smith suffered from a known disability.

960.    Just because Plaintiff Mrs. Smith was not suffering from the effects of ADHD while she was in the hospital does not mean that she did not have a disability, merely that such a disability was episodic.

961.    Congressional interest in pursuing the public interest goals of the *ADA* demand that the public has an innate ability to trust its healthcare facilities, which includes not

1  persecuting postpartum mothers who consume medication to mitigate symptoms of their

2  disability.

3  962.  If Plaintiff Mrs. Smith had known that there was any chance that she would be

4  separated from her newborn child at Defendant's hospital facility because she suffers

5  from the disability of ADHD, Mrs. Smith never would have had her child there, which

6  would have forced Plaintiff Mrs. Smith to travel farther distances during an emergency

7  to locate a hospital that would not attempt to separate her from her newborn child based

8  on undifferentiated drug testing.

9  963.  Plaintiffs assert these claims pursuant to *Title III of the Americans with*

10  *Disabilities Act.*

11  964.  Plaintiff Mrs. Smith has suffered substantial harm as a result of Defendants'

12  conduct, including but not limited to, emotional and psychological distress, pain and

13  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

14  appropriate compensatory damages to account for PTSD therapies and other related

15  treatments as they have been and will continue to be necessary; Plaintiff respectfully

16  requests an amount of $59,500 in compensatory damages per Defendant.

17  965.  Given the substantial wealth of the Defendants Defendant St. Luke's Hospital,

18  Onsite Neonatal, OBHG PA, St. Luke's Physician's Group, Bethlehem Neonatal, St.

19  Luke's Obstetrics and Gynecology Associates & Mr. Jerry Hric, MD, and therefore, their

20  ability to afford the appropriate training to avoid this egregious violation of the U.S.

21  Constitution, and, since harm was actually caused to the current Plaintiff Mrs. Smith,

22  and since harm is likely to continue to future postpartum families, and because the acts

23  of the Defendants and their agents, assigns, or employees callously disregarded the

1    Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the

2    imposition of punitive damages on Defendants Defendant St. Luke's Hospital, Onsite

3    Neonatal, OBHG PA, St. Luke's Physician's Group, Bethlehem Neonatal, St. Luke's

4    Obstetrics and Gynecology Associates & Mr. Jerry Hric, MD, to deter such Defendants

5    from committing to such conduct in the future which violates *Title III of the Americans*

6    *with Disabilities Act* Plaintiff respectfully requests an amount of $1,000,000 in punitive

7    damages per Defendants St. Luke's Physician's Group, Bethlehem Neonatal, St. Luke's

8    Obstetrics and Gynecology Associates, and Mr. Jerry Hric, MD; $5,000,000 per

9    Defedants Onsite Neonatal, and OBHG PA; and $10,000,000 per Defendant St. Luke's

10   Hospital.

11   966.    In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

12   any actual injury despite the deprivation of her federal rights, the Plaintiff respectfully

13   requests a nominal judgment of $1.00.

# Violations of Pennsylvania Constitutional Law

## I.    Article I, § 8

### *Violation of Right to be Free from Unwarranted Searches & Seizures*

### Mrs. Smith v. Monroe County

18   967.    Defendant Monroe County, through its Office of Children and Youth Services

19   required Plaintiff Mrs. Smith to submit a urine drug test and a hair follicle drug test in

20   violation of her right to privacy under *Art. 1 § 8* of the Pennsylvania Constitution.

968.   Upon information and belief, Defendant Monroe County, through the actions of Monroe County CYS, by virtue of a custom, pattern, practice, policy and/or failure to appropriately train and/or discipline, authorizes its caseworkers to act in an unconstitutional fashion by requiring postpartum women to submit to redundant urine and hair follicle drug tests based solely on a hospital report that does not differentiate between legal amphetamines and illegal methamphetamines and without any basis to believe that Grace abused or neglected her newborn child.

969.   Defendant Monroe County, through the actions of its Office of Children and Youth Services, violated Plaintiff's rights under *Art. 1, § 8*, of the Pennsylvania Constitution.

970.   Plaintiff Mrs. Smith has suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore the Plaintiff respectfully requests appropriate declaratory policy changes from each Defendant involved in this claim to prevent further acts of injustice in the future.

971.   Plaintiff Mrs. Smith respectfully requests that the following declaratory judgments from this Honorable Court: (1) Each Defendant involved in requesting drug testing from Plaintiff Mrs. Smith be immediately dismissed from their positions at Monroe County Children and Youth Services; (2) that each dismissed employee should lose the value of any accrued benefits in association with the Commonwealth of Pennsylvania that would extend to the former employees after dismissal; (3) An independent criminal investigation by the Commonwealth into not only the role CYS played in the Smith Case, but into the overall patterns and practices of Monroe County CYS to ensure that

1   all employees and staff are indeed trained well enough for the weight of the positions

2   that they bear; (4) Monroe County be forced to hire an independent evaluator(s) to

3   investigate if training for employees in the Monroe County Office of Children and Youth

4   Services to determine if employees know what laws they are actually enforcing, and

5   what they actually have jurisdiction over; (5) Require all Commonwealth CYS

6   employees to read *Miranda* or *Miranda-like* rights to individuals being investigated by

7   CYS at the initiation of an investigation: (6) prohibit threats of further uses of force

8   against a family if a mother or father refuses to comply with a drug test (i.e. CYS cannot

9   call the police because of refusal to take a drug test): (7) provides a public defender to

10  any Monroe County citizen whom Monroe County CYS claims a need to physically see

11  children associated with a particular allegation; (8) any Pennsylvania citizen should

12  have access to an immediate appeals process for technical violations of PA statutory,

13  constitutional, and common laws concerning Children and Youth Services and while

14  such an appeals process is being undergone the claim at hand should be investigated

15  by a magisterial court, during which period all investigations into the individual(s) being

16  conducted by CYS should be suspended until a valid judgement from the magisterial

17  court allowing the case to proceed if technical legal violations were not actually found by

18  the magistrate; (9) and, of course, any other meritorious remedy that the Court sees fit.

19  # II.   Article I, § 8

20  ### *Violation of Right to be Free from Unwarranted Searches & Seizures*

21  ## Newborn baby J.A.S. v. Monroe County

972.    Defendant Monroe County CYS required St. Luke's Hospital to release confidential medical records of Plaintiff Newborn baby J.A.S. to Defendant Monroe County CYS that Monroe County CYS reasonably knew would contain the results of illegal drug tests, thereby encouraging St. Luke's Hospital to record, collect, and collate detailed records to be used in future prosecution against a newborn baby's parents, and to separate newly born children from their parents in violation of Plaintiff Newborn baby J.A.S.'s right to privacy under *Art. 1, § 8* of the Pennsylvania Constitution.

973.    Upon information and belief, Defendant Monroe County, through its Office of Children and Youth Services, by virtue of a custom, pattern, practice, policy and/or failure to appropriately train and/or discipline, authorizes its caseworkers to act in an unconstitutional fashion by encouraging hospitals, in this case St. Luke's Hospital, to submit undifferentiated drug tests as a tool for future prosecution of the newly born child's parents, and/or to be used to separate a newborn child from its parents.

974.    Defendant Monroe County CYS knowingly pursues child abuse cases based solely on hospital reports that do not differentiate between legal amphetamines and illegal methamphetamines and without any basis to believe that Mrs. Smith abused or neglected her newborn child.

975.    Defendant Monroe County, through the actions of its Office of Children and Youth Services, violated Plaintiff's rights under *Art. 1, § 8*, of the Pennsylvania Constitution.

976.    Plaintiff Newborn baby J.A.S. has suffered substantial harm as a result of Defendant's conduct, including but not limited to, emotional and psychological distresses from being taken from his mother's care shortly after birth; and, therefore the

1    Plaintiff respectfully requests appropriate declaratory policy changes from each

2    Defendant involved in this claim to prevent further acts of injustice in the future.

3    977.    Plaintiff Mrs. Smith respectfully requests that the following declaratory judgments

4    from this Honorable Court: (1) Each Defendant involved in requesting drug testing from

5    Plaintiff Mrs. Smith be immediately dismissed from their positions at Monroe County

6    Children and Youth Services; (2) that each dismissed employee should lose the value of

7    any accrued benefits in association with the Commonwealth of Pennsylvania that would

8    extend to the former employees after dismissal; (3) An independent criminal

9    investigation by the Commonwealth into not only the role CYS played in the Smith

10   Family Case, but into the overall patterns and practices of Monroe County CYS to

11   ensure that all employees and staff are indeed trained well enough for the weight of the

12   positions that they bear; (4) Monroe County be forced to hire an independent

13   evaluator(s) to investigate if training for employees in the Monroe County Office of

14   Children and Youth Services to determine if employees know what laws they are

15   actually enforcing, and what they actually have jurisdiction over; (5) Require all

16   Commonwealth CYS employees to read *Miranda* or *Miranda-like* rights to individuals

17   being investigated by CYS at the initiation of an investigation; (6) prohibit threats of

18   further uses of force against a family if a mother or father refuses to comply with a drug

19   test (i.e. CYS cannot call the police because of refusal to take a drug test); (7) provides

20   a public defender to any Monroe County citizen whom Monroe County CYS claims a

21   need to physically see children associated with a particular allegation; (8) any

22   Pennsylvania citizen should have access to an immediate appeals process for technical

23   violations of PA statutory, constitutional, and common laws concerning Children and

1 Youth Services and while such an appeals process is being undergone the claim at

2 hand should be investigated by a magisterial court, during which period all

3 investigations into the individual(s) being conducted by CYS should be suspended until

4 a valid judgement from the magisterial court allowing the case to proceed if technical

5 legal violations were not actually found by the magistrate; (9) and, of course, any other

6 meritorious remedy that the Court sees fit.

# Violations of Pennsylvania Statutory Law

## I.   § 6315 Child Protective Services

### *Illegal Taking of a Child into Protective Custody*

Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

MD, Ms. Cynthia Shultz, MD, Monroe County, Mr. Tim Shaw & Ms. Adelaide W.

Grace

13 978.    *Pa. Code § 6315* allows for children to be taken into protective custody by a

14 private entity or state agency.

15 979.    *Pa. Code § 6315 (a)(2)* allows a physician of a hospital where a child is being

16 treated to be taken into protective custody if protective custody is immediately

17 necessary to protect a child pursuant to the Pa. Code.

18 980.    *Pa. Code § 6315 (a)(3)* allows a hospital to accept a newborn into protective

19 custody if the newborn is being voluntarily relinquished by the parents pursuant to

20 Chapter 65 of the Pa. Code.

981.    Upon information and belief Plaintiff Smith Family can demonstrate that at or around 7pm on April 9th, 2021 Newborn baby J.A.S. was separated from his parents Mr. and Mrs. Smith by Defendants St. Luke's, *et al.*, against the consent of Mr. and Mrs. Smith, thereby placing newborn baby Julian under the protective custody of Defendants St. Luke's Hospital, Onsite Neonatal, and Monroe County acting through its Office of Children and Youth Services.

982.    Upon information and belief, Defendant physicians Ms. Teresa Marlino, MD, and Ms. Shultz, MD, acting within the scope of their employment, were the physicians responsible for the act of separating Plaintiffs Mr. and Mrs. Smith from Plaintiff Newborn baby J.A.S. and were responsible for Newborn baby J.A.S. being taken into protective custody by St. Luke's Hospital, Onsite Neonatal, and OBHG PA.

983.    There was not any probable cause to believe that Newborn baby J.A.S. had suffered neglect or abuse at the hands of his parents, and therefore it was not immediately necessary for Defendants to take Plaintiff Newborn baby J.A.S. into custody because there was no need to protect Plaintiff Newborn baby J.A.S. from his Plaintiff parents Mr. and Mrs. Smith.

984.    Upon information and belief, Defendants Monroe County, Mr. Tim Shaw and Ms. Adelaide Grace were each made aware that St. Luke's Hospital took protective custody of Plaintiff Newborn baby J.A.S. on or about 7pm on April 9th, 2021.

985.    Upon information and belief, Defendants violated *§ 6315 (a)(2)* and *§ 6315 (a)(3)* when Plaintiff Newborn baby J.A.S. was taken into protective custody by the agents, employees, or assigns of Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, as well as, Defendants Monroe

1   County, Mr. Tim Shaw,  and Ms. Adelaide Grace, acting through the Monroe County

2   Office of Children and Youth Services, without consent of Plaintiffs Mr. and Mrs. Smith,

3   who never had any intention whatsoever of relinquishing custody of Plaintiff Newborn

4   baby J.A.S to any Defendants.

5   986.   Upon information and belief, Plaintiffs can demonstrate by a preponderance of

6   evidence that the Defendant State Actors conspired with at least one Defendant Private

7   Actor elsewhere listed in this complaint.

8   987.   The conspiracy between the Defendant parties and their agents, employees, or

9   assigns and against the Plaintiff parties violates Pennsylvania Common Law.

10   988.   Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

11   conduct, including but not limited to, emotional and psychological distress, pain and

12   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

13   appropriate compensatory damages to account for PTSD therapies and other related

14   treatments as they have been and will continue to be necessary.

15   989.   Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

16   Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, and therefore,

17   its ability to afford the appropriate training to avoid this egregious violation of the

18   Pennsylvania Statutory Law, and Defendant Monroe County through its employees,

19   agents, or assigns, Ms. Adelaide W. Grace, and Mr. Tim Shaw, had legal obligations to

20   accurately enforce the law, and, since harm was actually caused to the current Plaintiff

21   Smith Family, and since harm is likely to continue to harm future postpartum families,

22   and because the acts of the Defendants and their agents, assigns, or employees

23   callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiff

1    respectfully requests the imposition of punitive damages on Defendants St. Luke's

2    Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD,

3    Monroe County, Ms. Adelaide W. Grace, and Mr. Tim Shaw to deter such Defendants

4    from committing to such conduct in the future which violates Commonwealth of

5    Pennsylvania Statutory Law.

6    990.    Plaintiffs respectfully request from this Honorable Court a prayer for relief as the

7    Court sees appropriate either compensatory and/or punitive.

8    991.    In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

9    any actual injury despite the deprivation of their statutory rights, the Plaintiffs

10   respectfully request a nominal judgment of $1.00.

11            ## II.    § 6315 Child Protective Services

12        *Violation of When a Child may be Removed into Protective Custody*

13   Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians

14        Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates,

15              Monroe County, Mr. Tim Shaw & Ms. Adelaide W. Grace

16   992.    *Pa. Code § 6315* allows for children to be taken into protective custody by a

17   private entity or state agency.

18   993.    *Pa. Code § 6315 (a)(4)* instructs the Office of Children and Youth Services to

19   take a child into protective custody from abuse after the receipt of a court order.

20   994.    Pa. Code *§ 6315 (a)(4)* instructs that an Office of Children and Youth Services

21   agency worker may not take a child into custody without judicial authorization.

995.    Upon information and belief, Monroe County through its employees, agents, or assigns, Mr. Tim Shaw, and Ms. Adelaide. W. Grace, via its Office of Children and Youth Services ordered St. Luke's Hospital to take protective custody of Plaintiff Newborn baby J.A.S., either through active communication to do so, or through awareness of Plaintiff Smith Family's situation and passively assenting to the conduct of taking Newborn baby J.A.S. into protective custody under the responsibility of St. Luke's Hospital.

996.    Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, and Monroe County through its employees, agents, or assigns, Mr. Tim Shaw, and Ms. Adelaide. W. Grace, via its Office of Children and Youth Services violated *Pa. Code § 6315 (a)(4)* by taking, or assenting to the taking of Plaintiff Newborn baby J.A.S. into protective custody without a court order, and without necessity to separate Plaintiff Newborn baby J.A.S. from his Plaintiff parents Mr. and Mrs. Smith.

997.    Upon information and belief, Plaintiffs can demonstrate by a preponderance of evidence that the Defendant State Actors conspired with at least one Defendant Private Actor elsewhere listed in this complaint.

998.    The conspiracy between the Defendant parties and their agents, employees, or assigns and against the Plaintiff parties violates Pennsylvania Common Law.

999.    Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

1   appropriate compensatory damages to account for PTSD therapies and other related

2   treatments as they have been and will continue to be necessary.

3   1000.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

4   Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's

5   Obstetrics & Gynecology Associates, and therefore, its ability to afford the appropriate

6   training to avoid this egregious violation of the Pennsylvania Statutory Law, and

7   Defendant Monroe County through its employees, agents, or assigns, Ms. Adelaide W.

8   Grace, and Mr. Tim Shaw, had legal obligations to accurately enforce the law, and,

9   since harm was actually caused to the current Plaintiff Smith Family, and since harm is

10  likely to continue to harm future postpartum families, and because the acts of the

11  Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's

12  rights in a reckless and wanton manner, the Plaintiff respectfully requests the imposition

13  of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

14  Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

15  Associates, Monroe County, Ms. Adelaide W. Grace, and Mr. Tim Shaw to deter such

16  Defendants from committing to such conduct in the future which violates

17  Commonwealth of Pennsylvania Statutory Law.

18  1001.  Plaintiffs respectfully request from this Honorable Court a prayer for relief as the

19  Court sees appropriate either compensatory and/or punitive.

20  1002.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

21  any actual injury despite the deprivation of their statutory rights, the Plaintiffs

22  respectfully request a nominal judgment of $1.00.

23  ## III.   § 6315 Child Protective Services

1    *Violation of Duration for Which a Child may be Retained in Protective Custody*

2    Smith, *et al*. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians

3        Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates,

4            Monroe County, Mr. Tim Shaw & Ms. Adelaide W. Grace

5    1003.  *Pa. Code § 6315* allows for children to be taken into protective custody by a

6    private entity or state agency.

7    1004.  *Pa. Code § 6315 (b)* states that the duration to take a child into protective

8    custody is not to be longer than 24 hours without the receipt of a court order to retain

9    protective custody.

10   1005.  *Pa. Code § 6315 (b)* states that the duration to take a child into protective

11   custody for 24 hours begins when protective custody begins.

12   1006.  *Pa. Code § 6315 (b)* states that "[e]ach court shall insure that a judge is available

13   24 hours a day, 365 days a year to accept and decide the actions brought by a county

14   agency under this subsection within the 24-hour period."

15   1007.  Upon information and belief, on or around 7pm on April 9th, 2021, Plaintiff

16   Newborn baby J.A.S. was taken into protective custody by Defendants St. Luke's

17   Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem

18   Neonatal, St. Luke's Obstetrics & Gynecology Associates and was not returned to

19   both of his parents within a 24-hour period.

20   1008.  Upon information and belief, neither Defendant St. Luke's Hospital, nor Monroe

21   County CYS, nor any other named Defendant in this allegation obtained a court order to

22   place Plaintiff Newborn baby J.A.S. in protective custody.

1   1009.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

2   Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

3   Associates and Monroe County CYS, had an affirmative duty to attempt to contact a

4   judge when Plaintiff Newborn baby J.A.S. was taken into protective custody.

5   1010.  Upon information and belief, due to the fact that neither a person, nor an entity,

6   nor a state actor, obtained a court order to place Plaintiff Newborn baby J.A.S. in

7   protective custody, Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

8   Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

9   Associates, and Monroe County CYS, via its agents, employees or assigns, Mr. Tim

10  Shaw, and M. Adelaide Grace violated *Pa. Code § 6315 (b)*.

11  1011.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

12  evidence that the Defendant State Actors conspired with at least one Defendant Private

13  Actor elsewhere listed in this complaint.

14  1012.  The conspiracy between the Defendant parties and their agents, employees, or

15  assigns and against the Plaintiff parties violates Pennsylvania Common Law.

16  1013.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

17  conduct, including but not limited to, emotional and psychological distress, pain and

18  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

19  appropriate compensatory damages to account for PTSD therapies and other related

20  treatments as they have been and will continue to be necessary.

21  1014.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

22  Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's

1    Obstetrics & Gynecology Associates, and therefore, its ability to afford the appropriate

2    training to avoid this egregious violation of the Pennsylvania Statutory Law, and

3    Defendant Monroe County through its employees, agents, or assigns, Ms. Adelaide W.

4    Grace, and Mr. Tim Shaw, had legal obligations to accurately enforce the law, and,

5    since harm was actually caused to the current Plaintiff Smith Family, and since harm is

6    likely to continue to harm future postpartum families, and because the acts of the

7    Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's

8    rights in a reckless and wanton manner, the Plaintiff respectfully requests the imposition

9    of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

10    Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

11    Associates, Monroe County, Ms. Adelaide W. Grace, and Mr. Tim Shaw to deter such

12    Defendants from committing to such conduct in the future which violates

13    Commonwealth of Pennsylvania Statutory Law.

14    1015.  Plaintiffs respectfully request from this Honorable Court a prayer for relief as the

15    Court sees appropriate either compensatory and/or punitive.

16    1016.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

17    any actual injury despite the deprivation of their statutory rights, the Plaintiffs

18    respectfully request a nominal judgment of $1.00.

19

## IV.    § 6315 Child Protective Services

20    *Violation of Proper Notice when Removing a Child into Protective Custody*

1    <u>Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's</u>

2    <u>Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology</u>

3    <u>Associates, Monroe County, Mr. Tim Shaw & Ms. Adelaide W. Grace</u>

4    1017.  *Pa. Code § 6315* allows for children to be taken into protective custody by a

5    private entity or state agency.

6    1018.  *Pa. Code § 6315 (c)(1)* states, "…an individual taking a child into protective

7    custody under this chapter shall immediately, and within 24 hours in writing, notify the

8    parent, guardian or other custodian of the child of the whereabouts of the child, unless

9    prohibited by court order, and the reasons for the need to take the child into protective

10    custody and shall immediately notify the appropriate county agency in order that

11    proceedings under *42 Pa. C.S. Ch. 63* (relating to juvenile matters) may be initiated, if

12    appropriate."

13    1019.  Upon information and belief, no Defendant obtained a court order to place

14    Plaintiff Newborn baby J.A.S. into protective custody and therefore no knowledge about

15    Plaintiff Newborn baby J.A.S. was to be prohibited to Plaintiff parents Mr. and Mrs.

16    Smith by either a private entity or the state.

17    1020.  Upon information and belief, Plaintiffs Mr. and Mrs. Smith, within 24-hours of

18    Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians

19    Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates taking

20    unwarranted protective custody of Plaintiff Newborn baby J.A.S., did not ever receive a

21    notice for the rationale of taking Plaintiff Newborn baby J.A.S. into protective custody

1   and the whereabouts of Plaintiff Newborn baby J.A.S. when he was not in the presence

2   of his parents.

3   1021.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

4   Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

5   Associates, Monroe County, Ms. Adelaide W. Grace, and Mr. Tim Shaw, had an

6   affirmative duty to contact Plaintiffs Mr. and Mrs. Smith, in writing, about the

7   whereabouts and rationale for placing Plaintiff Newborn baby J.A.S into protective

8   custody.

9   1022.  Upon information and belief, due to the fact that neither a person, nor an entity,

10   nor a state actor, obtained a court order to place Plaintiff Newborn baby J.A.S. in

11   protective custody, and because Plaintiffs Mr. and Mrs. Smith were not given proper

12   notice of the whereabouts of their child, nor any rationale in writing, Defendants St.

13   Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem

14   Neonatal, St. Luke's Obstetrics & Gynecology Associates, Monroe County, Ms.

15   Adelaide W. Grace, and Mr. Tim Shaw, among other Defendants violated *Pa. Code §*

16   *6315 (b).*

17   1023.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

18   evidence that the Defendant State Actors conspired with at least one Defendant Private

19   Actor elsewhere listed in this complaint.

20   1024.  The conspiracy between the Defendant parties and their agents, employees, or

21   assigns and against the Plaintiff parties violates Pennsylvania Common Law.

22   1025.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

23   conduct, including but not limited to, emotional and psychological distress, pain and

1    suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

2    appropriate compensatory damages to account for PTSD therapies and other related

3    treatments as they have been and will continue to be necessary.

4    1026.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

5    Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's

6    Obstetrics & Gynecology Associates, and therefore, its ability to afford the appropriate

7    training to avoid this egregious violation of the Pennsylvania Statutory Law, and

8    Defendant Monroe County through its employees, agents, or assigns, Ms. Adelaide W.

9    Grace, and Mr. Tim Shaw, had legal obligations to accurately enforce the law, and,

10   since harm was actually caused to the current Plaintiff Smith Family, and since harm is

11   likely to continue to harm future postpartum families, and because the acts of the

12   Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's

13   rights in a reckless and wanton manner, the Plaintiff respectfully requests the imposition

14   of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

15   Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

16   Associates, Monroe County, Ms. Adelaide W. Grace, and Mr. Tim Shaw to deter such

17   Defendants from committing to such conduct in the future which violates

18   Commonwealth of Pennsylvania Statutory Law.

19   1027.  Plaintiffs respectfully request from this Honorable Court a prayer for relief as the

20   Court sees appropriate either compensatory and/or punitive.

21   1028.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

22   any actual injury despite the deprivation of their statutory rights, the Plaintiffs

23   respectfully request a nominal judgment of $1.00.

# V.   § 6315 Child Protective Services

## _Violation of No Parental Conference when Removing a Child into Protective Custody_

### Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Monroe County, Mr. Tim Shaw & Ms. Adelaide W. Grace

1029.  _Pa. Code § 6315_ allows for children to be taken into protective custody by a private entity or state agency.

1030.  _Pa. Code § 6315 (f)_ states, "A conference between the parent, guardian or other custodian of the child taken into temporary protective custody pursuant to this section and the employee designated by the county agency to be responsible for the child shall be held within 48 hours of the time that the child is taken into custody for the purpose of:

(1)  Explaining to the parent, guardian or other custodian the reasons for the temporary detention of the child and the whereabouts of the child, unless prohibited by court order.

(2)  Expediting, wherever possible, the return of the child to the custody of the parent, guardian or other custodian where custody is no longer necessary.

(3)  Explaining to the parent, guardian or other custodian the rights provided for under _42 Pa. C.S. §§ 6337_ (relating to right to counsel) and _6338_ (relating to other basic rights)."

1031.  On or about 7pm on April 9th, 2021 Plaintiff Newborn baby J.A.S. was taken into protective custody by Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

Associates.

1032.  By approximately 7pm on April 11th, 2021, there had not been a conference held

between the Plaintiffs Mr. and Mrs. Smith, a representative of Defendants St. Luke's

Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem

Neonatal, St. Luke's Obstetrics & Gynecology Associates, and a representative of

Defendant Monroe County Children and Youth Services for the purposes of explaining

Plaintiff Newborn baby J.A.S.'s detention or a determination of whether maintaining

protective custody was necessary.

1033.  When Plaintiff Newborn baby J.A.S. was placed in protective custody against the

consent of Plaintiffs Mr. and Mrs. Smith; Mr. and Mrs. Smith were not provided with an

explanation of rights under *42 Pa. C. S. §§ 6337* (relating to right to counsel) and *6338*

(relating to other basic rights) by any Defendant.

1034.  Upon information and belief, due to the fact that neither a person, nor an entity,

nor a state actor, obtained a court order to place Plaintiff Newborn baby J.A.S. in

protective custody, and because Plaintiffs Mr. and Mrs. Smith were not given a

conference within 48-hours of Plaintiff Newborn baby J.A.S. being taken into protective

custody, Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

Associates, Monroe County, Ms. Adelaide W. Grace, and Mr. Tim Shaw violated *Pa.*

*Code § 6315 (f).*

1035.  Upon information and belief, due to the fact that neither a person, nor an entity,

nor a state actor, obtained a court order to place Plaintiff Newborn baby J.A.S. in

1  protective custody, and because Plaintiffs Mr. and Mrs. Smith were not given

2  information regarding their basic rights and rights to counsel, Defendants St. Luke's

3  Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem

4  Neonatal, St. Luke's Obstetrics & Gynecology Associates, Monroe County, Ms.

5  Adelaide W. Grace, and Mr. Tim Shaw violated *Pa. Code § 6315 (f)(3).*

6  1036.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

7  evidence that the Defendant State Actors conspired with at least one Defendant Private

8  Actor elsewhere listed in this complaint.

9  1037.  The conspiracy between the Defendant parties and their agents, employees, or

10  assigns and against the Plaintiff parties violates Pennsylvania Common Law.

11  1038.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

12  conduct, including but not limited to, emotional and psychological distress, pain and

13  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

14  appropriate compensatory damages to account for PTSD therapies and other related

15  treatments as they have been and will continue to be necessary.

16  1039.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

17  Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's

18  Obstetrics & Gynecology Associates, and therefore, its ability to afford the appropriate

19  training to avoid this egregious violation of the Pennsylvania Statutory Law, and

20  Defendant Monroe County through its employees, agents, or assigns, Ms. Adelaide W.

21  Grace, and Mr. Tim Shaw, had legal obligations to accurately enforce the law, and,

22  since harm was actually caused to the current Plaintiff Smith Family, and since harm is

23  likely to continue to harm future postpartum families, and because the acts of the

1  Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's

2  rights in a reckless and wanton manner, the Plaintiff respectfully requests the imposition

3  of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

4  Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

5  Associates, Monroe County, Ms. Adelaide W. Grace, and Mr. Tim Shaw to deter such

6  Defendants from committing to such conduct in the future which violates

7  Commonwealth of Pennsylvania Statutory Law.

8  1040.  Plaintiffs respectfully request from this Honorable Court a prayer for relief as the

9  Court sees appropriate either compensatory and/or punitive.

10  1041.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

11  any actual injury despite the deprivation of their statutory rights, the Plaintiffs

12  respectfully request a nominal judgment of $1.00.

13  ## VI.    § 28 Pa. Code, Newborn Care & Policies

14  *Violation of Parent's Right to Choose the Timing of Specimen Collection of*

15  *their Child*

16  Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

17  Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

18  Associates

19  1042.  *28 Pa. Code §§ 28.22 & 28.26* directs the timing of initial and follow up of

20  specimen collections by birth centers and hospitals:

1    (c) *Pa. Code §§ 28.22 & 28.26* states, "A birth center or hospital shall collect the initial

2        specimen from each newborn child regardless of feeding history or medical

3        condition, as close to 48 hours of age as possible but not later than 72 hours of age

4        unless the newborn child falls into one of the following categories:

5    (d)  (3)  *Early discharge.* If the newborn child is discharged from the birth center or

6        hospital before 24 hours of age, the birth center or hospital shall collect the initial

7        specimen from the newborn child as close to the time of discharge as is practicable,

8        regardless of feeding history or medical condition. The birth center or hospital shall

9        give the parent or guardian in whose care and custody the newborn child is

10       discharged written notification of the need for a repeat specimen and shall also

11       provide instructions to the parent or guardian for obtaining a repeat specimen from

12       the newborn child as described in § 28.26 (relating to timing of repeat specimen

13       collection); and,

14   *§ 28.26. Timing of [R]epeat [S]pecimen [C]ollection.*

15   (b)  When the newborn child has been discharged from a birth center or hospital before

16       24 hours of age, the birth center or hospital shall collect or cause to be collected a

17       repeat specimen from the newborn child, regardless of feeding history or medical

18       condition, as close to 48 hours of age as possible but not later than 72 hours of

19       age."

20   1043.  Considering there were no complications with either Plaintiff Mrs. Smith or

21   Newborn baby J.A.S., Plaintiffs Mr. and Mrs. Smith requested that Newborn baby J.A.S.

22   and Plaintiff Mrs. Smith be discharged by Defendant St. Luke's Hospital sometime

23   within 24-hours of Newborn baby J.A.S.'s birth.

1044.  When Plaintiffs Mr. and Mrs. Smith requested that Newborn baby J.A.S. be discharged within a day, they specifically requested that Newborn baby J.A.S. have all necessary testing completed as soon as practically possible.

1045.  Despite no complications with Newborn baby J.A.S., Plaintiffs Mr. and Mrs. Smith were denied the right to remove Newborn baby J.A.S. from St. Luke's Hospital within 24-hours as requested.

1046.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, and St. Luke's Obstetrics & Gynecology Associates, collected specimens from Newborn baby J.A.S. at their leisure, and against the consent of his parents, Plaintiffs Mr. and Mrs. Smith.

1047.  Upon information and belief, due to the fact that neither a person, nor an entity, nor a state actor, obtained a court order to place Newborn baby J.A.S. in protective custody, and because Plaintiffs Mr. and Mrs. Smith were denied the right to choose, consent, and schedule appropriate medical care for Newborn baby J.A.S., including the timing of tests administered to Newborn baby J.A.S., Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, and St. Luke's Obstetrics & Gynecology Associates violated *28 Pa. Code §§ 28.22 & 28.26.*

1048.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary.

1049.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, and therefore, its ability to afford the appropriate training to avoid this egregious violation of the Pennsylvania Statutory Law, and, since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum families, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiff respectfully requests the imposition of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates to deter such Defendants from committing to such conduct in the future which violates Commonwealth of Pennsylvania Statutory Law.

1050.  Plaintiffs respectfully request from this Honorable Court a prayer for relief as the Court sees appropriate either compensatory and/or punitive.

1051.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered any actual injury despite the deprivation of their statutory rights, the Plaintiffs respectfully request a nominal judgment of $1.00.

# VII.   § 28 Pa. Code, Newborn Care & Policies

### *Violation of Parent's Right to Deny Consent for Prophylactic Treatment for their Child*

### Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD & Mr. Jerry Hric, MD

1052.  *28 Pa. Code § 27.98* directs prophylactic treatment in newborn baby eyes by birth centers and hospitals:

(a)  Physicians and midwives attending women in childbirth shall instill in each eye of the newborn child, as soon as practicable after birth, either a 1% silver nitrate solution, or erythromycin ophthalmic ointment or solution as a single application in both conjunctival sacs, or appropriate medication approved by the Department.

1053.  Prophylactic eye treatments are for treating potential sexually transmitted diseases being transmitted from the infected parent to the newborn infant.

1054.  Plaintiff Mrs. Smith was tested for all relevant sexually transmitted diseases for which ophthalmic prophylactics are required, and tested negative.

1055.  Since there was no cause to treat Newborn baby J.A.S. because Plaintiff Mrs. Smith did not test positive for a sexually transmitted disease, Plaintiffs Mr. and Mrs. Smith requested that Newborn baby J.A.S. not receive ophthalmic prophylactic solution on his eyes.

1056.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA were made aware when Newborn baby J.A.S. was removed to the NICU and was to be given antibiotics that Plaintiff Mr. Smith has a very strong reaction to penicillin and its derivatives and that Newborn baby J.A.S. was not to receive any penicillin or penicillin derivatives.

1057.  Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, & Ms. Cynthia Shultz, MD applied erythromycin ophthalmic solution to Newborn baby J.A.S.'s eyes.

1058.  Erythromycin is a penicillin derivative.

1059.  Upon information and belief, due to the fact that Plaintiffs Mr. and Mrs. Smith were denied the right to choose and consent to appropriate medical care for Newborn baby J.A.S., when Pennsylvania Law directs alternatives within the scope of the Plaintiff parents request, Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, & Ms. Cynthia Shultz, MD violated *28 Pa. Code § 28.22*.

1060.  Upon information and belief, given that a master is liable for the torts of its servants if the servant's tortious conduct was within the scope of their employment; and, given that Defendants Ms. Teresa Marlino, MD and Ms. Cynthia Shultz, MD were acting within their scope of employment in the role that they were intended to perform, and because their actions served their masters, Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, and Mr. Jerry Hric, MD; said master Defendants are liable for the actions of their servant Defendants Ms. Teresa Marlino, MD and Ms. Cynthia Shultz, MD.

1061.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary.

1062.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, & Ms. Cynthia Shultz, MD, Mr. Jerry Hric, MD, and therefore, their ability to afford the appropriate training to avoid this egregious violation of the Pennsylvania Statutory Law, and, since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm

1  future postpartum families, and because the acts of the Defendants and their agents,

2  assigns, or employees callously disregarded the Plaintiff's rights in a reckless and

3  wanton manner, the Plaintiff respectfully requests the imposition of punitive damages on

4  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD,

5  Ms. Cynthia Shultz, MD, & Mr. Jerry Hric, MD to deter such Defendants from committing

6  to such conduct in the future which violates Commonwealth of Pennsylvania Statutory

7  Law.

8  1063.  Plaintiffs respectfully request from this Honorable Court a prayer for relief as the

9  Court sees appropriate either compensatory and/or punitive.

10  1064.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

11  any actual injury despite the deprivation of their statutory rights, the Plaintiffs

12  respectfully request a nominal judgment of $1.00.

13  # VIII.   § 28 Pa. Code, Newborn Care & Policies

14  *Violation of Mother's Right to a Support Person while in a Hospital*

15  Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

16  MD, Ms. Cynthia Shultz, MD & Mr. Jerry Hric, MD

17  1065.  *28 Pa. Code § 501.48* outlines policies and procedures for birth centers and

18  hospitals.

19  1066.  *28 Pa. Code § 501.48 (b)* states, "A support person for each mother shall be

20  required."

1   1067.  Plaintiff Mr. Smith was Plaintiff Mrs. Smith's support person, and was present

2   with her and Newborn baby J.A.S. in the NICU prior to when Mr. and Mrs. Smith were

3   ejected under armed escort from St. Luke's Hospital property.

4   1068.  On or around 9pm on April 10th Plaintiff Mrs. Smith was allowed to reenter

5   Defendant St. Luke's Hospital under constant guard when she was reunited with

6   Newborn baby J.A.S. in the NICU.

7   1069.  Mr. Smith was not allowed to accompany Plaintiff Mrs. Smith to Defendant St.

8   Luke's Hospital to be with his wife and Newborn baby son J.A.S. or else Defendant St.

9   Luke's Hospital would have Mr. Smith arrested as a trespasser.

10  1070.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

11  MD, Ms. Cynthia Shultz, MD expressly forbade Mrs. Smith from having a support

12  person present during a traumatic and anxiety ridden experience with her son Newborn

13  baby J.A.S.

14  1071.  Grandparents of Newborn baby J.A.S. were denied entry to visit their newborn

15  baby grandson on the pretense that Plaintiff Mrs. Smith was not allowed to have visitors

16  accompany her in the NICU, not because of epidemiological concerns, but because the

17  Plaintiff's grandparents presented a "security risk" to the hospital and they too were

18  escorted off of St. Luke's Hospital property by guards.

19  1072.  Upon information and belief, due to the fact that Plaintiff Mrs. Smith was denied a

20  support person for Newborn baby J.A.S., when Pennsylvania Law expressly directs that

21  one is required at all times, Defendants St. Luke's Hospital, Onsite Neonatal, OBHG

22  PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, violated *28 Pa. Code § 501.48*.

1073.  Upon information and belief, given that a master is liable for the torts of its

servants if the servant's tortious conduct was within the scope of their employment; and,

given that Defendants Ms. Teresa Marlino, MD and Ms. Cynthia Shultz, MD were acting

within their scope of employment in the role that they were intended to perform, and

because their actions served their masters, Defendants St. Luke's Hospital, Onsite

Neonatal, OBHG PA, and Mr. Jerry Hric, MD; said master Defendants are liable for the

actions of their servant Defendants Ms. Teresa Marlino, MD and Ms. Cynthia Shultz,

MD.

1074.  Plaintiff Mrs. Smith suffered substantial harm as a result of Defendants' conduct,

including but not limited to, emotional and psychological distress, pain and suffering,

fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate

compensatory damages to account for PTSD therapies and other related treatments as

they have been and will continue to be necessary.

1075.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

Neonatal, OBHG PA, Ms. Teresa Marlino, MD, & Ms. Cynthia Shultz, MD, Mr. Jerry

Hric, MD, and therefore, their ability to afford the appropriate training to avoid this

egregious violation of the Pennsylvania Statutory Law, and, since harm was actually

caused to the current Plaintiff Mrs. Smith, and since harm is likely to continue to harm

future postpartum mothers, and because the acts of the Defendants and their agents,

assigns, or employees callously disregarded the Plaintiff's rights in a reckless and

wanton manner, the Plaintiff respectfully requests the imposition of punitive damages on

Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD,

Ms. Cynthia Shultz, MD, & Mr. Jerry Hric, MD to deter such Defendants from committing

1 to such conduct in the future which violates Commonwealth of Pennsylvania Statutory

2 Law.

3 1076.  Plaintiffs respectfully request from this Honorable Court a prayer for relief as the

4 Court sees appropriate either compensatory and/or punitive.

5 1077.  In the unlikely event that the jury does not find that Plaintiff Mrs. Smith suffered

6 any actual injury despite the deprivation of their statutory rights, the Plaintiff respectfully

7 requests a nominal judgment of $1.00.

8 ## IX.   § 28 Pa. Code, Newborn Care & Policies

9 *Violation of Parent's Right to Implementation of a Care and Treatment Plan*

10 *for Drug-Dependent Newborns*

11 Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

12 Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

13 Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick

14 Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

15 Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms.

16 Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto

17 Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.

18 Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", &

19 Mr. Jerry Hric, MD

1   1078. *28 Pa. Code § 137.21(b)(12)* outlines policies and procedures for obstetrical

2   services for birth centers and hospitals:

3       (b)  Obstetrical services policies and procedures shall include:

4           (12)  Policies and procedures for the care and treatments of drug-

5           dependent newborns.

6   1079.  Newborn baby J.A.S. did not test positive for any illegal methamphetamines, nor

7   did he exhibit signs or symptoms of methamphetamine withdrawal.

8   1080.  Although, Plaintiff Mrs. Smith was accused of illegal methamphetamine use,

9   Defendants St. Luke's, Onsite Neonatal, et al., did not implement a policy and

10  procedures for the care and treatment of allegedly drug-dependent Newborn baby

11  J.A.S.

12  1081.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

13  Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

14  Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot,

15  DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD,

16  Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms.

17  Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms.

18  Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla

19  Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD did not

20  implement the legally mandated policies and procedures for treatment of drug-

21  dependent newborns despite accusing Plaintiffs Mr. and Mrs. Smith of having a

22  newborn baby who was supposedly suffering abuse to such a degree that he needed to

23  be separated from his parents.

1082.  Since Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD, did not implement policies and procedures for the care and treatment of allegedly drug-dependent Newborn baby J.A.S. despite that Newborn baby J.A.S. was supposedly a drug-dependent newborn, Defendants violated *28 Pa. Code § 137.21(b)(12).*

1083.  Upon information and belief, given that a master is liable for the torts of its servants if the servant's tortious conduct was within the scope of their employment; and, given that Defendants Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team", were acting within their scope of employment in the role that they were intended to perform, and because their actions served their masters, Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, and Mr. Jerry Hric, MD; said master Defendants

1   are liable for the actions of their servant Defendants Ms. Teresa Marlino, MD, Ms.

2   Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N.

3   Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah

4   Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello,

5   DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq.,

6   Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital

7   Leadership Team".

8   1084.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

9   conduct, including but not limited to, emotional and psychological distress, pain and

10   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

11   appropriate compensatory damages to account for PTSD therapies and other related

12   treatments as they have been and will continue to be necessary.

13   1085.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

14   Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's

15   Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz,

16   MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms.

17   Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms.

18   Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto

19   Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,

20   Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry

21   Hric, MD, and therefore, their ability to afford the appropriate training to avoid this

22   egregious violation of the Pennsylvania Statutory Law, and, since harm was actually

23   caused to the current Plaintiffs Mr. & Mrs. Smith, and since harm is likely to continue to

1   harm future postpartum families, and because the acts of the Defendants and their

2   agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless

3   and wanton manner, the Plaintiff respectfully requests the imposition of punitive

4   damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

5   Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

6   Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot,

7   DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD,

8   Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms.

9   Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms.

10  Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla

11  Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD, to deter

12  such Defendants from committing to such conduct in the future which violates

13  Commonwealth of Pennsylvania Statutory Law.

14  1086.  Plaintiffs respectfully request from this Honorable Court a prayer for relief as the

15  Court sees appropriate either compensatory and/or punitive.

16  1087.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

17  suffered any actual injury despite the deprivation of their statutory rights, the Plaintiffs

18  respectfully request a nominal judgment of $1.00.

19  # X.   § 28 Pa. Code, Newborn Care & Policies

20  ## *Violation of Mother's Right to Professional Care*

21  Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians

22  Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms.

1    Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms.

2    Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr.

3    Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms.

4    Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms.

5    Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla

6    Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD

7    1088. *28 Pa. Code § 501.46* outlines policies and procedures to ensure that all mothers

8    are treated with respect, dignity, privacy, and safety while in a birth center or hospital:

9         (a)  The birth center shall have written policies and procedures to assure the

10             individual mother the right to dignity, privacy, and safety and shall include, but not

11             be limited to, the items listed in subsection (b).

12        (b)  It is the right of every mother, or support person, to expect and receive:

13             (1)  Good quality care and high professional standards that are continually

14                  maintained and reviewed.

15   1089.  Upon information and belief, Plaintiff Mrs. Smith, as a mother, was not treated

16   with good quality care and high professional standards, as evidenced by, but not limited

17   to, Defendants confronting sensitive family issues in a confrontational manner, treating

18   Mr. and Mrs. Smith in an abhorrent manner and spreading false rumors in medical

19   records, treating Mr. and Mrs. Smith like they were "bad people" for objecting to the type

20   of care demanded by St. Luke's Hospital for Newborn baby J.A.S., as well as, forcing a

1  family apart without good cause, in bad faith, and having Plaintiff mother ejected under

2  armed police escort from Defendant St. Luke's Hospital property under threat of arrest.

3  1090.   Since Defendants St. Luke's Hospital, Onsite Neonatal, etc., by acting in a

4  manner unbecoming of the medical profession, by subjecting the Smith Family to

5  repeated humiliations and degradations, did act in an unprofessional manner, and

6  therefore Defendants violated *28 Pa. Code § 501.46(b)(1).*

7  1091.   Upon information and belief, given that a master is liable for the torts of its

8  servants if the servant's tortious conduct was within the scope of their employment; and,

9  given that Defendants Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick

10  Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

11  Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth

12  Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago,

13  MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

14  Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team", were acting

15  within their scope of employment in the role that they were intended to perform, and

16  because their actions served their masters, Defendants St. Luke's Hospital, Onsite

17  Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's

18  Obstetrics & Gynecology Associates, and Mr. Jerry Hric, MD; said master Defendants

19  are liable for the actions of their servant Defendants Ms. Teresa Marlino, MD, Ms.

20  Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N.

21  Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah

22  Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello,

23  DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq.,

1  Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital

2  Leadership Team".

3  1092.  Plaintiffs Mrs. Smith suffered substantial harm as a result of Defendants'

4  conduct, including but not limited to, emotional and psychological distress, pain and

5  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

6  appropriate compensatory damages to account for PTSD therapies and other related

7  treatments as they have been and will continue to be necessary.

8  1093.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

9  Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's

10  Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz,

11  MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms.

12  Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms.

13  Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto

14  Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,

15  Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry

16  Hric, MD, and therefore, their ability to afford the appropriate training to avoid this

17  egregious violation of the Pennsylvania Statutory Law, and, since harm was actually

18  caused to the current Plaintiff Mrs. Smith, and since harm is likely to continue to harm

19  future postpartum mothers, and because the acts of the Defendants and their agents,

20  assigns, or employees callously disregarded the Plaintiff's rights in a reckless and

21  wanton manner, the Plaintiff respectfully requests the imposition of punitive damages on

22  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians

23  Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms.

1   Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne

2   Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher

3   Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD,

4   Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr.

5   Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

6   "Hospital Leadership Team", & Mr. Jerry Hric, MD, to deter such Defendants from

7   committing to such conduct in the future which violates Commonwealth of Pennsylvania

8   Statutory Law.

9   1094.  Plaintiffs respectfully request from this Honorable Court a prayer for relief as the

10   Court sees appropriate either compensatory and/or punitive.

11   1095.  In the unlikely event that the jury does not find that Plaintiff Mrs. Smith suffered

12   any actual injury despite the deprivation of their statutory rights, the Plaintiffs

13   respectfully request a nominal judgment of $1.00.

# XI.   § 28 Pa. Code, Newborn Care & Policies

### *Violation of Mother's Right to Confidentiality, Anonymity, & Privacy*

### Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD & Mr. Jerry Hric, MD

18   1096.  *28 Pa. Code § 501.46* outlines policies and procedures to ensure that all mothers

19   are treated with respect, dignity, privacy, and safety while in a birth center or hospital:

1     (a)  The birth center shall have written policies and procedures to assure the

2     individual mother the right to dignity, privacy, and safety and shall include, but not

3     be limited to, the items listed in subsection (b).

4     (b)  It is the right of every mother, or support person, to expect and receive:

5     (3)  Confidentiality, anonymity, and privacy.

6     1097.  Upon information and belief, Plaintiffs Mr. and Mrs. Smith, as support person and

7     mother respectively, were not treated with confidentiality, anonymity, and privacy, as

8     evidenced by, but not limited to, Defendants St. Luke's Hospital, Onsite Neonatal, and

9     OBHG PA, by not allowing Plaintiffs Mr. and Mrs. Smith to discuss medical treatment for

10     Newborn baby J.A.S. outside the presence of Defendants St. Luke's Hospital, Onsite

11     Neonatal, and OBHG PA, Mr. and Mrs. Smith's incident being known throughout many

12     departments not related with medical decision making at St. Luke's Hospital, and

13     Plaintiff Mrs. Smith being placed on 24-guard while in the NICU, with only a curtain

14     separating Mrs. Smith and Newborn baby J.A.S. from the hospital guards.

15     Since Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

16     MD, Ms. Cynthia Shultz, by acting in a manner inconsistent with confidentiality,

17     anonymity, and privacy in the medical profession violated *28 Pa. Code § 501.46(b)(3).*

18     1098.  Upon information and belief, given that a master is liable for the torts of its

19     servants if the servant's tortious conduct was within the scope of their employment; and,

20     given that Defendants Ms. Teresa Marlino, MD and Ms. Cynthia Shultz, MD were acting

21     within their scope of employment in the role that they were intended to perform, and

22     because their actions served their masters, Defendants St. Luke's Hospital, Onsite

23     Neonatal, OBHG PA, and Mr. Jerry Hric, MD; said master Defendants are liable for the

1    actions of their servant Defendants Ms. Teresa Marlino, MD and Ms. Cynthia Shultz,

2    MD.

3    1099.  Plaintiff Mrs. Smith suffered substantial harm as a result of Defendants' conduct,

4    including but not limited to, emotional and psychological distress, pain and suffering,

5    fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate

6    compensatory damages to account for PTSD therapies and other related treatments as

7    they have been and will continue to be necessary.

8    1100.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

9    Neonatal, OBHG PA, Ms. Teresa Marlino, MD, & Ms. Cynthia Shultz, MD, Mr. Jerry

10   Hric, MD, and therefore, their ability to afford the appropriate training to avoid this

11   egregious violation of the Pennsylvania Statutory Law, and, since harm was actually

12   caused to the current Plaintiff Mrs. Smith, and since harm is likely to continue to harm

13   future postpartum mothers, and because the acts of the Defendants and their agents,

14   assigns, or employees callously disregarded the Plaintiff's rights in a reckless and

15   wanton manner, the Plaintiff respectfully requests the imposition of punitive damages on

16   Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD,

17   Ms. Cynthia Shultz, MD, & Mr. Jerry Hric, MD to deter such Defendants from committing

18   to such conduct in the future which violates Commonwealth of Pennsylvania Statutory

19   Law.

20   1101.  Plaintiffs respectfully request from this Honorable Court a prayer for relief as the

21   Court sees appropriate either compensatory and/or punitive.

1102.  In the unlikely event that the jury does not find that Plaintiff Mrs. Smith suffered any actual injury despite the deprivation of their statutory rights, the Plaintiff respectfully requests a nominal judgment of $1.00.

## XII.   § 28 Pa. Code, Newborn Care & Policies

### *Violation of Mother and Support Person's Right to Respectful*
### *& Dignified Treatment*

Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD

1103.  *28 Pa. Code § 501.46* outlines policies and procedures to ensure that all mothers are treated with respect, dignity, privacy, and safety while in a birth center or hospital:

1     (a)  The birth center shall have written policies and procedures to assure the

2     individual mother the right to dignity, privacy, and safety and shall include, but not

3     be limited to, the items listed in subsection (b).

4     (b)  It is the right of every mother, or support person, to expect and receive:

5     (4)  Respectful and dignified treatment at all times.

6     1104.  Upon information and belief, Plaintiffs Mr. and Mrs. Smith, as support person and

7     mother respectively, were not treated with respect and dignity, as evidenced by, but not

8     limited to, Defendants St. Luke's Hospital, Onsite Neonatal, and OBHG PA, not allowing

9     Plaintiffs Mr. and Mrs. Smith to discuss medical treatment for Newborn baby J.A.S.

10    outside the presence of Defendant's agents, employees, or assigns, Mr. and Mrs.

11    Smith's incident being known throughout many departments not related with medical

12    decision making at St. Luke's Hospital, and Plaintiff Mrs. Smith being placed on 24-

13    guard while in the NICU with only a curtain separating Mrs. Smith and Newborn baby

14    J.A.S. from the hospital guards who also followed Mrs. Smith to and from the restroom,

15    confronting sensitive family issues in a confrontational manner, treating Plaintiffs Mr.

16    and Mrs. Smith in an abhorrent manner and spreading false rumors in medical records,

17    and treating Mr. and Mrs. Smith like they were "bad people" for objecting to the type of

18    care demanded by Defendants for Newborn baby J.A.S.

19    1105.  Since Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

20    Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

21    Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot,

22    DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD,

1   Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms.

2   Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms.

3   Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla

4   Frack, Ms. Dawn Hoffman, "Hospital Leadership Team",, by acting in a manner

5   inconsistent with respect and dignity in the medical profession by subjecting the Smith

6   Family to repeated humiliations and degradations, and in doing so, violated *28 Pa.*

7   *Code § 501.46(b)(4).*

8   1106.  Upon information and belief, given that a master is liable for the torts of its

9   servants if the servant's tortious conduct was within the scope of their employment; and,

10   given that Defendants Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick

11   Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

12   Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth

13   Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago,

14   MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

15   Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team", were acting

16   within their scope of employment in the role that they were intended to perform, and

17   because their actions served their masters, Defendants St. Luke's Hospital, Onsite

18   Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's

19   Obstetrics & Gynecology Associates, and Mr. Jerry Hric, MD; said master Defendants

20   are liable for the actions of their servant Defendants Ms. Teresa Marlino, MD, Ms.

21   Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N.

22   Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah

23   Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello,

1    DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq.,

2    Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital

3    Leadership Team".

4    1107.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

5    conduct, including but not limited to, emotional and psychological distress, pain and

6    suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

7    appropriate compensatory damages to account for PTSD therapies and other related

8    treatments as they have been and will continue to be necessary.

9    1108.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

10    Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's

11    Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz,

12    MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms.

13    Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms.

14    Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto

15    Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,

16    Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry

17    Hric, MD, and therefore, their ability to afford the appropriate training to avoid this

18    egregious violation of the Pennsylvania Statutory Law, and, since harm was actually

19    caused to the current Plaintiff Mrs. Smith, and since harm is likely to continue to harm

20    future postpartum mothers, and because the acts of the Defendants and their agents,

21    assigns, or employees callously disregarded the Plaintiff's rights in a reckless and

22    wanton manner, the Plaintiff respectfully requests the imposition of punitive damages on

23    Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians

1 Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms.

2 Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne

3 Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher

4 Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD,

5 Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr.

6 Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

7 "Hospital Leadership Team", & Mr. Jerry Hric, MD, to deter such Defendants from

8 committing to such conduct in the future which violates Commonwealth of Pennsylvania

9 Statutory Law.

10 1109.  Plaintiffs respectfully request from this Honorable Court a prayer for relief as the

11 Court sees appropriate either compensatory and/or punitive.

12 1110.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

13 suffered any actual injury despite the deprivation of their statutory rights, the Plaintiffs

14 respectfully request a nominal judgment of $1.00.

15 # XIII.   § 5100.53 Pa. Code, Patients' Bill of Rights

16 ### *Violation of Right to Unrestricted and Private Communications*

17 Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa

18 Marlino, MD, Ms. Cynthia Shultz, MD & Mr. Jerry Hric, MD, Northampton County,

19 Officers Andrew Keyock and Thomas A. Smith, Corporal Kirk Harryn, & Chief

20 Daniel G. Pancoast

1111.  *Pa. Code § 5100.53. Bill of Rights for Patients*. What follows are the subtitles to this section of the PA Code: "YOU HAVE A RIGHT TO BE TREATED WITH DIGNITY ANDRESPECT [,]" and, "YOU SHALL RETAIN ALL CIVIL RIGHTS THAT HAVE NOT BEEN SPECIFICALLY CURTAILED BY ORDER OF COURT[.]"[41]

1112.  The *Pa. Code § 5100.53. Sec. 1 of the Bill of Rights for Patients* states that a person has the right to unrestricted and private communication inside and outside this [a medical] facility.

1113.  On or around the night of Friday, April 9th, Plaintiffs Mr. and Mrs. Smith could not speak in private about Defendant reporting them to Children and Youth Services because at all times present from when Defendant Ms. Teresa Marino, MD, entered Plaintiff Mrs. Smith's postpartum hospital room, and agent, employee, or assign of at least one of the Defendants remained with Plaintiffs until Mr. and Mrs. Smith were forcibly ejected from the premises by the Defendant Northampton County, acting through the Bethlehem Police Dept., there was always an agent, employee, or assign of the hospital and/or a BPD police officer close enough to both Plaintiffs Mr. and Mrs. Smith so that they could hear whatever conversation, comments, or utterances which occurred between Plaintiffs Mr. & Mrs. Smith.

1114.  On no less than four separate instances MS. Teresa Marlino, MD was asked to leave Plaintiff Mrs. Smith's postpartum hospital room so that Mr. and Mrs. Smith could discuss matters in private, and Ms. Teresa Marlino, MD refused to respect that request for privacy, only leaving when she had determined to do so.

---

[41]*Emphasis in original.*

1115.  When attempting to call Monroe County CYS in private, Plaintiff Mrs. Smith was followed by a police officer making it impossible for her to communicate confidentially with Monroe County CYS.

1116.  On or around April 10th-12th Plaintiff Mrs. Smith was solely allowed to return to the NICU to be with Newborn baby J.A.S.; Mrs. Smith was not allowed any support family or an advocat with her, including Mr. Smith.

1117.  There were not any doors, but curtains separating Newborn baby J.A.S.'s NICU unit from the hallway and adjacent nurses' station.

1118.  Upon being allowed to return to the hospital a guard appointed by Defendant St. Luke's Hospital was outside the curtains at all times, and a nurse was frequently at the nurses' station adjacent to Newborn baby J.A.S.'s NICU unit, and both people were within of earshot of all communications exchanged between Plaintiff Mrs. Smith and anyone else.

1119.  Based on information and belief, St. Luke's Hospital employees, agents, and/or assigns were instructed to eavesdrop on Plaintiff Mrs. Smith for use in future prosecution, and/or for purposes of intentionally attempting to once again, separate Plaintiff Mrs. Smith from Newborn baby J.A.S.

1120.  Based on information and belief, when a representative from Monroe County CYS came to Newborn baby J.A.S.'s NICU unit to interrogate Plaintiff Mrs. Smith and subject her to humiliating drug testing, the hospital caseworker was immediately outside the curtains to the unit, where she, the security guard, and a nurse from the nurses' station were all intentionally eavesdropping with an ear towards future prosecution of

Plaintiffs Mr. or Mrs. Smith, and/or to once again to separate Newborn baby J.A.S. from his mother.

1121.  Plaintiff Mrs. Smith attempted to make confidential phone calls at the end of a hallway, which was away from the guard and nurses' station; however, the location was also an active thorofare of hospital traffic in which anyone passing by could hear the contents of Plaintiff Mrs. Smith's phone conversations.

1122.  Plaintiff Mrs. Smith felt that she could not leave the NICU again for any reason lest she be permanently separated from Newborn baby J.A.S. again; therefore, Plaintiff Mrs. Smith could not leave the NICU to find a more private location in the hospital or elsewhere.

1123.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD & Mr. Jerry Hric, MD, Northampton County, Officers Andrew Keyock and Thomas A. Smith, Corporal Kirk Harryn, and Chief Daniel G. Pancoast acted intentionally to deprive Plaintiffs' of their statutory rights under the PA Patient Bill of Rights, or acted in wanton, reckless disregard of those rights.

1124.  At all times relevant Plaintiff Mrs. Smith's communications were restricted in what she could say, and she was not provided any privacy by Defendant St. Luke's Hospital or Defendant Northampton County, acting through the BPD.

1125.  At all times relevant Plaintiff Mr. Smith's communications were restricted in what he could say, and he was not provided any privacy by Defendant St. Luke's Hospital or Defendant Northampton County, acting through the BPD.

1126.  At all times relevant Plaintiffs Mr. and Mrs. Smith were not treated either with dignity or respect in violation of the very title of the *PA Bill of Rights* itself.

1127.  At no time did Plaintiffs agree to give up any rights, nor were any civil rights specifically curtailed by the order of a court.

1128.  Upon information and belief, given that a master is liable for the torts of its servants if the servant's tortious conduct was within the scope of their employment; and, given that Defendants Ms. Teresa Marlino, MD and Ms. Cynthia Shultz, MD were acting within their scope of employment in the role that they were intended to perform, and because their actions served their masters, Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, and Mr. Jerry Hric, MD; said master Defendants are liable for the actions of their servant Defendants Ms. Teresa Marlino, MD and Ms. Cynthia Shultz, MD.

1129.  Upon information and belief, given that a master is liable for the torts of its servants if the servant's tortious conduct was within the scope of their employment; and, given that Defendant Officers Keyock and Smith were acting within their scope of employment in the role that they were intended to perform, and because their actions served their masters, Defendants Northampton County, Corporal Harryn, and Chief Pancoast; said master Defendants are liable for the actions of their servant Defendant Officers Andrew Keyock and Thomas A. Smith.

1130.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary.

1131.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, & Mr. Jerry Hric, MD, and therefore, their ability to afford the appropriate training to avoid this egregious violation of the Pennsylvania Statutory Law, and, Defendants Northampton County, Officers Andrew Keyock and Thomas A. Smith, Corporal Kirk Harryn, and Chief Daniel G. Pancoast's egregious violations of legal obligations to accurately enforce the law, and since harm was actually caused to the current Plaintiffs Mr. & Mrs. Smith, and since harm is likely to continue to harm future postpartum families, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiff respectfully requests the imposition of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD & Mr. Jerry Hric, MD, Northampton County, Officers Andrew Keyock and Thomas A. Smith, Corporal Kirk Harryn, and Chief Daniel G. Pancoast to deter such Defendants from committing to such conduct in the future which violates Commonwealth of Pennsylvania Statutory Law.

1132.  Plaintiffs respectfully request from this Honorable Court a prayer for relief as the Court sees appropriate either compensatory and/or punitive.

1133.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith suffered any actual injury despite the deprivation of their statutory rights, the Plaintiffs respectfully request a nominal judgment of $1.00.

# XIV.   § 5100.53 Pa. Code, Patients' Bill of Rights

1  *Violation of Right to Make a Complaint without Punitive Measures being*

2  *Leveled against Complainants*

3  Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa

4  Marlino, MD, & Mr. Jerry Hric, MD

5  1134.  *Pa. Code § 5100.53. Bill of Rights for Patients.* What follows are the subtitles to

6  this section of the PA Code: "YOU HAVE A RIGHT TO BE TREATED WITH DIGNITY

7  AND RESPECT [,]" and, "YOU SHALL RETAIN ALL CIVIL RIGHTS THAT HAVE NOT

8  BEEN SPECIFICALLY CURTAILED BY ORDER OF COURT[.]"[42]

9  1135. The *Pa. Code § 5100.53. Sec. 1(c) of the Bill of Rights for Patients* states that a

10  person has the right to make complaints and to have one's complaints heard and

11  adjudicated promptly.

12  1136.  On or around the night of Friday, April 9th Plaintiffs Mr. and Mrs. Smith were

13  accosted with accusations by Defendant St. Luke's Hospital, Onsite Neonatal, and

14  OBHG PA, through its agent, employee, or assign Ms. Teresa Marlino, MD that Plaintiff

15  Mrs. Smith had ingested illegal methamphetamine and that she had passed the

16  deleterious effects of methamphetamine use on to her child Newborn baby J.A.S.

17  1137.  Shortly after when Plaintiffs Mr. and Mrs. Smith complained that the assessment

18  by Ms. Teresa Marlino, MD, was both unfounded, unfair, and untrue Plaintiffs were

19  denied access to their child Newborn baby J.A.S. and were subsequently forcibly

20  ejected from Defendant St. Luke's Hospital premises under threat of arrest.

---

[42]*Emphasis in original.*

1138.  At no point during the complaint did Plaintiffs Mr. or Mrs. Smith use abusive or threatening language directed at anyone despite regular insults being hurled at Plaintiffs Mr. and Mrs. Smith by Ms. Teresa Marlino, MD.

1139.  If when a legal parent or guardian makes a reasonable complaint about the nature of the treatment of their child, or about any unreasonable accusations levied against themselves, they are then subject to losing custody of their child, there is no actual mechanism to complain because the consequences of losing one's child are so unconscionable.

1140.  At all times relevant, Plaintiffs Mr. and Mrs. Smith had no functional way to make a valid complaint to Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD in violation the *Pa. Code § 5100.53. Sec. 1(c) of the Pa. Bill of Rights for Patients.*

1141.  At all times relevant Plaintiffs Mr. and Mrs. Smith were not treated either with dignity or respect in violation of the very title of the *PA Bill of Rights* itself.

1142.  At no time did Plaintiffs' agree to give up any rights, nor were any civil rights specifically curtailed by the order of a court.

1143.  Upon information and belief, given that a master is liable for the torts of its servants if the servant's tortious conduct was within the scope of their employment; and, given that Defendants Ms. Teresa Marlino, MD was acting within their scope of employment in the role that they were intended to perform, and because their actions served their masters, Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, and Mr. Jerry Hric, MD; said master Defendants are liable for the actions of their servant Defendant Ms. Teresa Marlino, MD.

1144.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'
conduct, including but not limited to, emotional and psychological distress, pain and
suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests
appropriate compensatory damages to account for PTSD therapies and other related
treatments as they have been and will continue to be necessary.

1145.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite
Neonatal, OBHG PA, Ms. Teresa Marlino, MD, & Mr. Jerry Hric, MD, and therefore, their
ability to afford the appropriate training to avoid this egregious violation of the
Pennsylvania Statutory Law, and, since harm was actually caused to the current Plaintiff
Smith Family, and since harm is likely to continue to harm future postpartum families,
and because the acts of the Defendants and their agents, assigns, or employees
callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiff
respectfully requests the imposition of punitive damages on Defendants St. Luke's
Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, & Mr. Jerry Hric, MD to
deter such Defendants from committing to such conduct in the future which violates
Commonwealth of Pennsylvania Statutory Law.

1146.  Plaintiffs respectfully request from this Honorable Court a prayer for relief as the
Court sees appropriate either compensatory and/or punitive.

1147.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith
suffered any actual injury despite the deprivation of their statutory rights, the Plaintiff
respectfully requests a nominal judgment of $1.00.

# XV.   § 5100.53 Pa. Code, Patients' Bill of Rights

## *Violation of Right of Patients Ability to Handle their Own Affairs*

1    Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

2    Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

3    Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick

4    Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

5    Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms.

6    Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto

7    Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.

8    Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", &

9    Mr. Jerry Hric, MD

10   1148.  *Pa. Code § 5100.53. Bill of Rights for Patients.* What follows are the subtitles to

11   this section of the PA Code: "YOU HAVE A RIGHT TO BE TREATED WITH DIGNITY

12   AND RESPECT [,]" and, "YOU SHALL RETAIN ALL CIVIL RIGHTS THAT HAVE NOT

13   BEEN SPECIFICALLY CURTAILED BY ORDER OF COURT[.]"[43]

14   1149.  The *Pa. Code § 5100.53. Sec. 4 of the Bill of Rights for Patients* states that a

15   person has the right to handle their own personal affairs including making contracts.

16   1150.  Plaintiffs Mr. and Mrs. Smith were not allowed to care for their child as they saw

17   fit from at least the moment Defendants took possession of Newborn baby J.A.S.[44] until

18   Newborn baby J.A.S. was discharged from Defendant St. Luke's Hospital on April 12th,

---

[43]*Emphasis in original.*

[44]And possibly earlier depending on findings of fact concerning informed consent.

1   2021, which is a violation of Plaintiff Mr. and Mrs. Smith's right to handle their own

2   personal affairs including care of their newborn baby.

3   1151.  Plaintiffs Mr. and Mrs. Smith were not allowed to seek a second medical opinion

4   for Newborn baby J.A.S. at an alternate location, which deprived Plaintiffs Mr. and Mrs.

5   Smith of the right to handle their own personal affairs, including determining where

6   medical treatment is appropriate for their newborn child.

7   1152.  Defendant St. Luke's Hospital made it clear, that in no uncertain terms would

8   Plaintiff Mrs. Smith be allowed to leave the hospital with Newborn baby J.A.S. until the

9   hospital was satisfied that Mrs. Smith had a follow-up appointment scheduled for

10   Newborn baby J.A.S., which deprived Plaintiff Mrs. Smith of her right to handle her own

11   affairs, including choosing future medical care and providers for her child.

12   1153.  Defendant St. Luke's Hospital forced Plaintiff Mrs. Smith to sign a contract

13   attesting to factual untruths concerning her bracelet matching Newborn baby J.A.S.'s

14   (they no longer did because Defendant St. Luke's Hospital had them separated for at

15   least 24 hrs.), which deprived Plaintiff Mrs. Smith of her right to contract by placing her

16   under the duress that she would not be able to take Newborn baby J.A.S. home unless

17   she signed said paperwork which did not conform to observable reality.

18   1154.  Given the above enumerated instances of conduct, Defendants Mr. & Mrs. Smith

19   v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group,

20   Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms. Teresa

21   Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz,

22   MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert,

23   MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms.

1   Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr.

2   Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

3   "Hospital Leadership Team", & Mr. Jerry Hric, MD are in violation the *Pa. Code*

4   *§ 5100.53. Sec. 4 of the Pa. Bill of Rights for Patients*.

5   1155.  At all times relevant Plaintiffs Mr. and Mrs. Smith were not treated either with

6   dignity or respect in violation of the very title of the *PA Bill of Rights* itself.

7   1156.  At no time did Plaintiffs agree to give up any rights, nor were any civil rights

8   specifically curtailed by the order of a court.

9   1157.  Upon information and belief, given that a master is liable for the torts of its

10  servants if the servant's tortious conduct was within the scope of their employment; and,

11  given that Defendants Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick

12  Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

13  Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth

14  Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago,

15  MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

16  Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team", were acting

17  within their scope of employment in the role that they were intended to perform, and

18  because their actions served their masters, Defendants St. Luke's Hospital, Onsite

19  Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's

20  Obstetrics & Gynecology Associates, and Mr. Jerry Hric, MD; said master Defendants

21  are liable for the actions of their servant Defendants Ms. Teresa Marlino, MD, Ms.

22  Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N.

23  Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah

1  Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello,

2  DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq.,

3  Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital

4  Leadership Team".

5  1158.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

6  conduct, including but not limited to, emotional and psychological distress, pain and

7  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

8  appropriate compensatory damages to account for PTSD therapies and other related

9  treatments as they have been and will continue to be necessary.

10  1159.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

11  Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's

12  Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz,

13  MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms.

14  Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms.

15  Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto

16  Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,

17  Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry

18  Hric, MD, and therefore, their ability to afford the appropriate training to avoid this

19  egregious violation of the Pennsylvania Statutory Law, and, since harm was actually

20  caused to the current Plaintiffs Mr. & Mrs. Smith, and since harm is likely to continue to

21  harm future postpartum families, and because the acts of the Defendants and their

22  agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless

23  and wanton manner, the Plaintiff respectfully requests the imposition of punitive

1   damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

2   Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

3   Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot,

4   DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD,

5   Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms.

6   Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms.

7   Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla

8   Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD, to deter

9   such Defendants from committing to such conduct in the future which violates

10  Commonwealth of Pennsylvania Statutory Law.

11  1160.  Plaintiffs respectfully request from this Honorable Court a prayer for relief as the

12  Court sees appropriate either compensatory and/or punitive.

13  1161.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

14  suffered any actual injury despite the deprivation of their statutory rights, the Plaintiffs

15  respectfully request a nominal judgment of $1.00.

16  # XVI.   § 5100.53 Pa. Code, Patients' Bill of Rights

17  ## *Violation of Parents' Right to Participate in Treatment Plans*

18  Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

19  Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

20  Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick

21  Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

<u>Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms.</u>

<u>Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto</u>

<u>Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.</u>

<u>Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", &</u>

<u>Mr. Jerry Hric, MD</u>

1162.  *Pa. Code § 5100.53. Bill of Rights for Patients.* What follows are the subtitles to this section of the PA Code: "YOU HAVE A RIGHT TO BE TREATED WITH DIGNITY AND RESPECT [,]" and, "YOU SHALL RETAIN ALL CIVIL RIGHTS THAT HAVE NOT BEEN SPECIFICALLY CURTAILED BY ORDER OF COURT[.]"[45]

1163.  The *Pa. Code § 5100.53. Sec. 5 of the Bill of Rights for Patients* states that a person has the right to participate in the review of their treatment plan.

1164.  Since a newborn baby cannot consent to its own treatment plan, it is up to the legal parent or guardian to have the right to participate in a newborn's treatment plan.

1165.  Based upon information and belief, Newborn baby J.A.S.'s doctors' were never honest about what they were treating Newborn baby J.A.S. for, including but not limited to suspicions of methamphetamine withdrawal.

1166.  Based upon information and belief, Newborn baby J.A.S. was being erroneously treated for ailments, conditions, diagnoses, or medical complications which he did not have so that Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot,

---

[45]*Emphasis in original.*

1    DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD,

2    Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms.

3    Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms.

4    Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla

5    Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD, could

6    deny Plaintiffs Mr. and Mrs. Smith access to Newborn baby J.A.S. by physically taking

7    him to the NICU despite Plaintiffs Mr. and Mrs. Smith requesting that all treatment be

8    done in Mrs. Smith's postpartum hospital room; and, in this fashion Defendants St.

9    Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem

10    Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms.

11    Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N.

12    Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah

13    Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello,

14    DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq.,

15    Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership

16    Team", & Mr. Jerry Hric, MD, took over complete control of Newborn baby J.A.S.'s

17    treatment plan.

18    1167.  Even in the unlikely event that it could be established that Plaintiffs Mr. and Mrs.

19    Smith participated in Newborn baby J.A.S.'s treatment plan to some extent, whatever

20    that extent was, was terminated when Defendant St. Luke's Hospital forcibly ejected

21    Plaintiffs Mr. and Mrs. Smith from the premises on Friday, April 10th, 2021 because

22    Plaintiffs Mr. and Mrs. Smith no longer were allowed contact with their newborn child,

23    and therefore had no way to consent or deny any treatment.

1168.  When being forcibly ejected from Defendant St. Luke's Hospital, Plaintiff Mrs. Smith requested that she at least be able to call the hospital about updates on her child, and Mrs. Smith was flatly told by Dr. Shultz, "No"; furthering the assertion that neither Plaintiff Mr. nor Mrs. Smith could participate in any meaningful way with their newborn baby child's treatment plan.

1169.  The enumerated instances conduct attributed to Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD, are in violation the *Pa. Code § 5100.53. Sec. 5 of the Pa. Bill of Rights for Patients.*

1170.  At all times relevant Mr. and Mrs. Smith were not treated either with dignity or respect in violation of the very title of the *PA Bill of Rights* itself.

1171.  At no time did Plaintiffs agree to give up any rights, nor were any civil rights specifically curtailed by the order of a court.

1172.  Upon information and belief, given that a master is liable for the torts of its servants if the servant's tortious conduct was within the scope of their employment; and, given that Defendants Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

1   Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth

2   Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago,

3   MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

4   Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team", were acting

5   within their scope of employment in the role that they were intended to perform, and

6   because their actions served their masters, Defendants St. Luke's Hospital, Onsite

7   Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's

8   Obstetrics & Gynecology Associates, and Mr. Jerry Hric, MD; said master Defendants

9   are liable for the actions of their servant Defendants Ms. Teresa Marlino, MD, Ms.

10  Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N.

11  Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah

12  Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello,

13  DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq.,

14  Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital

15  Leadership Team".

16  1173.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

17  conduct, including but not limited to, emotional and psychological distress, pain and

18  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

19  appropriate compensatory damages to account for PTSD therapies and other related

20  treatments as they have been and will continue to be necessary.

21  1174.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

22  Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's

23  Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz,

1  MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms.

2  Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms.

3  Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto

4  Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,

5  Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry

6  Hric, MD, and therefore, their ability to afford the appropriate training to avoid this

7  egregious violation of the Pennsylvania Statutory Law, and, since harm was actually

8  caused to the current Plaintiffs Mr. & Mrs. Smith, and since harm is likely to continue to

9  harm future postpartum families, and because the acts of the Defendants and their

10  agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless

11  and wanton manner, the Plaintiff respectfully requests the imposition of punitive

12  damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

13  Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

14  Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot,

15  DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD,

16  Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms.

17  Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms.

18  Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla

19  Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD, to deter

20  such Defendants from committing to such conduct in the future which violates

21  Commonwealth of Pennsylvania Statutory Law.

22  1175.  Plaintiffs respectfully request from this Honorable Court a prayer for relief as the

23  Court sees appropriate either compensatory and/or punitive.

1176.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

suffered any actual injury despite the deprivation of their statutory rights, the Plaintiffs

respectfully request a nominal judgment of $1.00.

# XVII.    § 5100.53 Pa. Code, Patients' Bill of Rights

## *Violation of Right to Treatment in the Least Restrictive Setting within the*

## *Facility*

Newborn baby J.A.S. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick

Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms.

Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto

Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.

Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", &

Mr. Jerry Hric, MD

1177.  Pa. Code § 5100.53. Bill of Rights for Patients. What follows are the subtitles to

this section of the PA Code: "YOU HAVE A RIGHT TO BE TREATED WITH DIGNITY

1   AND RESPECT [,]" and, "YOU SHALL RETAIN ALL CIVIL RIGHTS THAT HAVE NOT

2   BEEN SPECIFICALLY CURTAILED BY ORDER OF COURT[.]"[46]

3   1178.  The *Pa. Code § 5100.53. Sec. 6 of the Bill of Rights for Patients* states that a

4   person has the right to receive treatment in the least restrictive setting within the facility

5   necessary to accomplish the treatment goals.

6   1179.  Based upon information and belief, Plaintiff Newborn baby J.A.S.'s doctors' were

7   never honest about what they were treating Plaintiff Newborn baby J.A.S. for, including

8   but not limited to suspicions of methamphetamine withdrawal.

9   1180.  Based upon information and belief, Plaintiff Newborn baby J.A.S. was being

10  erroneously treated for ailments, conditions, diagnoses, or medical complications which

11  he did not have so that Defendants could deny Mr. and Mrs. Smith access to Plaintiff

12  Newborn baby J.A.S. by physically taking him to the NICU despite Mr. and Mrs. Smith

13  requesting that all treatment be done in Mrs. Smith's postpartum hospital room, and in

14  this fashion Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

15  Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

16  Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot,

17  DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD,

18  Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms.

19  Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms.

20  Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla

21  Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD, took over

22  complete control of Plaintiff Newborn baby J.A.S.'s treatment plan.

---

[46]*Emphasis in original.*

1181.  Based upon information and belief, there was no cause to place Plaintiff Newborn baby J.A.S. in the neonatal NICU when the exact same treatments and observations conducted could be done in Mrs. Smith's postpartum hospital room.

1182.  Defendants, by denying Mr. and Mrs. Smith to have Plaintiff Newborn baby J.A.S. treated in Mrs. Smith's postpartum hospital room despite the fact that Newborn baby J.A.S. did not require treatment elsewhere violated Plaintiff Newborn baby J.A.S.'s right to have care in the least restrictive setting where he could have remained in and around the comfort and love of his parents.

1183.  The enumerated instances of conduct are attributed to Defendant St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD,  are in violation the *Pa. Code § 5100.53. Sec. 6 of the Pa. Bill of Rights for Patients.*

1184.  At all times relevant, Plaintiff Newborn baby J.A.S. was not treated either with dignity or respect in violation of the very title of the *PA Bill of Rights* itself.

1185.  At no time did Plaintiff's legal parents agree to give up any of Newborn baby J.A.S.'s rights, nor were any civil rights specifically curtailed by the order of a court.

1186.  Upon information and belief, given that a master is liable for the torts of its

servants if the servant's tortious conduct was within the scope of their employment; and,

given that Defendants Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick

Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth

Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago,

MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team", were acting

within their scope of employment in the role that they were intended to perform, and

because their actions served their masters, Defendants St. Luke's Hospital, Onsite

Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's

Obstetrics & Gynecology Associates, and Mr. Jerry Hric, MD; said master Defendants

are liable for the actions of their servant Defendants Ms. Teresa Marlino, MD, Ms.

Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N.

Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah

Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello,

DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq.,

Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital

Leadership Team".

1187.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's

Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz,

MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms.

1    Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms.

2    Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto

3    Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,

4    Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry

5    Hric, MD, and therefore, their ability to afford the appropriate training to avoid this

6    egregious violation of the Pennsylvania Statutory Law, and, since harm was actually

7    caused to the current Plaintiff Newborn baby J.A.S., and since harm is likely to continue

8    to harm future newborns, and because the acts of the Defendants and their agents,

9    assigns, or employees callously disregarded the Plaintiff's rights in a reckless and

10   wanton manner, the Plaintiff respectfully requests the imposition of punitive damages on

11   Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians

12   Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms.

13   Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne

14   Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher

15   Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD,

16   Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr.

17   Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

18   "Hospital Leadership Team", & Mr. Jerry Hric, MD, to deter such Defendants from

19   committing to such conduct in the future which violates Commonwealth of Pennsylvania

20   Statutory Law.

21   1188.  Plaintiffs respectfully request from this Honorable Court a prayer for relief as the

22   Court sees appropriate either compensatory and/or punitive.

1189.  In the unlikely event that the jury does not find that Plaintiff Newborn baby J.A.S. suffered any actual injury despite the deprivation of their statutory rights, the Plaintiff respectfully requests a nominal judgment of $1.00.

## XVIII.    § 5100.53 Pa. Code, Patients' Bill of Rights

### *Violation of Right to be Discharged When Care is No Longer Required*

Smith, *et al*. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD

1190.  *Pa. Code § 5100.53.* Bill of Rights for Patients. What follows are the subtitles to this section of the PA Code: "YOU HAVE A RIGHT TO BE TREATED WITH DIGNITY ANDRESPECT [,]" and, "YOU SHALL RETAIN ALL CIVIL RIGHTS THAT HAVE NOT BEEN SPECIFICALLY CURTAILED BY ORDER OF COURT[.]"[47]

---

[47] *Emphasis in original.*

1   1191.  The *Pa. Code § 5100.53. Sec. 7 of the Bill of Rights for Patients* states that a

2   person has the right to be discharged from the facility as soon as one no longer needs

3   care and treatment.

4   1192.  Plaintiff Mrs. Smith called Defendant St. Luke's Hospital before her admission to

5   ask about COVID-19 restrictions related to her giving birth at Defendant St. Luke's

6   Hospital.

7   1193.  When Plaintiff Mrs. Smith called, she asked specifically how long the turn-around

8   for giving birth in a St. Luke's Hospital would be during the COVID-19 pandemic.

9   1194.  The current authorized agent, employee, or assign of the Defendant St. Luke's

10   could not give a valid answer, and requested to return Plaintiff Mrs. Smith's call at a

11   later time, so that Mrs. Smith could receive an accurate answer.

12   1195.  A different authorized agent, employee, or assign of Defendant St. Luke's

13   Hospital returned Plaintiff Mrs. Smith's call and gave Mrs. Smith an expected turn-

14   around time of 24 hours from the time of the birth.

15   1196.  Upon information and belief, in Plaintiff Mrs. Smith's intake paperwork from the

16   triage the total time Plaintiff Mrs. Smith was expected in be in the hospital with Newborn

17   baby J.A.S. was more than two midnights, but less than three midnights.

18   1197.  Plaintiffs Mr. and Mrs. Smith observed that Plaintiff Newborn baby J.A.S.'s birth

19   was the easiest to endure yet of their children, and was not fraught with complication for

20   either Mrs. Smith or Newborn baby J.A.S.

21   1198.  Plaintiffs Mr. and Mrs. Smith requested that she and Plaintiff Newborn baby

22   J.A.S. be released in the twenty-four-hour time period initially quoted to Mrs. Smith

23   when she contacted Defendant St. Luke's Hospital before arriving.

1   1199.  Plaintiffs Mr. and Mrs. Smith cited to doctors that they had concerns about

2   COVID-19 being in the hospital and that they would like to take Plaintiff Newborn baby

3   J.A.S. home as soon as practicable.

4   1200.  Plaintiffs Mr. and Mrs. Smith concerns were literally met with silence by

5   Defendants St. Luke's Hospital's representatives, including, but not limited to Ms.

6   Chaminie Wheeler, DO, when the two present doctors did not address COVID-19

7   concerns and instead shifted the conversation to Newborn baby J.A.S.'s breathing.

8   1201.  Upon information and belief, Plaintiff Newborn baby J.A.S. did not have any

9   complications following his birth, including complications with his lungs or any

10  associated breathing issues.

11  1202.  Upon information and belief, the doctors present in Plaintiff Mrs. Smith's

12  postpartum hospital room acted to intentionally separate Plaintiff Newborn baby J.A.S.

13  from Plaintiffs Mr. and Mrs. Smith.

14  1203.  At all times relevant, Plaintiffs Mr. and Mrs. Smith disagreed with the diagnosis

15  that Plaintiff Newborn baby J.A.S. spontaneously developed breathing issues after 12

16  hours of birth and having already been examined by several doctors, nurses, and other

17  hospital staff.

18  1204.  Plaintiffs Mr. and Mrs. Smith's request to discharge Plaintiff Newborn baby J.A.S.

19  was denied by Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

20  Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

21  Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot,

22  DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD,

23  Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms.

1    Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms.

2    Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla

3    Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD.

4    1205.  Since Plaintiffs Mr. and Mrs. Smith's consent was denied and Plaintiff Newborn

5    baby J.A.S. was taken from them, and because Newborn baby J.A.S. did not require

6    any further care or treatment, Defendants violated *Pa. Code § 5100.53. Sec. 7* of the

7    *Bill of Rights for Patients* which states that a person has the right to be discharged from

8    the facility as soon as you no longer need care and treatment.

9    1206.  At all times relevant, neither Plaintiffs Mr. and Mrs. Smith, nor Plaintiff Newborn

10   baby J.A.S. was treated either with dignity or respect in violation of the very title of the

11   *PA Bill of Rights* itself.

12   1207.  At no time did Plaintiffs Mr. and Mrs. Smith, Newborn baby J.A.S.'s legal parents

13   agree to give up any of Plaintiff Newborn baby J.A.S.'s rights, nor were any civil rights

14   specifically curtailed by the order of a court.

15   1208.  Upon information and belief, given that a master is liable for the torts of its

16   servants if the servant's tortious conduct was within the scope of their employment; and,

17   given that Defendants Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick

18   Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

19   Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth

20   Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago,

21   MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

22   Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team", were acting

23   within their scope of employment in the role that they were intended to perform, and

1    because their actions served their masters, Defendants St. Luke's Hospital, Onsite

2    Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's

3    Obstetrics & Gynecology Associates, and Mr. Jerry Hric, MD; said master Defendants

4    are liable for the actions of their servant Defendants Ms. Teresa Marlino, MD, Ms.

5    Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N.

6    Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah

7    Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello,

8    DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq.,

9    Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital

10   Leadership Team".

11   1209.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

12   conduct, including but not limited to, emotional and psychological distress, pain and

13   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

14   appropriate compensatory damages to account for PTSD therapies and other related

15   treatments as they have been and will continue to be necessary.

16   1210.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

17   Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's

18   Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz,

19   MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms.

20   Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms.

21   Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto

22   Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,

23   Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry

1   Hric, MD, and therefore, their ability to afford the appropriate training to avoid this

2   egregious violation of the Pennsylvania Statutory Law, and, since harm was actually

3   caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm

4   future postpartum families, and because the acts of the Defendants and their agents,

5   assigns, or employees callously disregarded the Plaintiff's rights in a reckless and

6   wanton manner, the Plaintiff respectfully requests the imposition of punitive damages on

7   Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians

8   Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms.

9   Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne

10  Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher

11  Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD,

12  Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr.

13  Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

14  "Hospital Leadership Team", & Mr. Jerry Hric, MD, to deter such Defendants from

15  committing to such conduct in the future which violates Commonwealth of Pennsylvania

16  Statutory Law.

17  1211.  Plaintiffs respectfully request from this Honorable Court a prayer for relief as the

18  Court sees appropriate either compensatory and/or punitive.

19  1212.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

20  any actual injury despite the deprivation of their statutory rights, the Plaintiff respectfully

21  requests a nominal judgment of $1.00.

22      ## XIX.    § 5100.53 Pa. Code, Patients' Bill of Rights

23      *Violation of Right to Not Be Subjected to any Harsh or Unusual Treatment*

1   <u>Smith, et al. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians</u>

2   <u>Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms.</u>

3   <u>Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms.</u>

4   <u>Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr.</u>

5   <u>Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms.</u>

6   <u>Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms.</u>

7   <u>Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla</u>

8   <u>Frack, Ms. Dawn Hoffman, "Hospital Leadership Team",  Mr. Jerry Hric, MD,</u>

9   <u>Northampton County, Officer Andrew Keyock, Officer Thomas A. Smith, Corporal</u>

10   <u>Kirk Harryn, & Chief Daniel G. Pancoast</u>

11   1213.  *Pa. Code § 5100.53. Bill of Rights for Patients.* What follows are the subtitles to

12   this section of the PA Code: "YOU HAVE A RIGHT TO BE TREATED WITH DIGNITY

13   AND RESPECT [,]" and, "YOU SHALL RETAIN ALL CIVIL RIGHTS THAT HAVE NOT

14   BEEN SPECIFICALLY CURTAILED BY ORDER OF COURT[.]"[48]

15   1214.  The *Pa. Code § 5100.53. Sec. 8 of the Bill of Rights for Patients* states that a

16   person has the right not to be subjected to any harsh or unusual treatment.

17   1215.  The term 'unusual' in *Pa. Code § 5100.53. Sec. 8 of the Bill of Rights for Patients*

18   does not relate to the frequency at which an institution commits an offense, but rather,

---

[48]*Emphasis in original.*

the term 'unusual' relates to how acceptable the behavior is to the average rational

person because of how far the behavior deviates from socially acceptable norms.

1216.  The term 'treatment' in *Pa. Code § 5100.53. Sec. 8 of the Bill of Rights for*

*Patients* does not necessarily relate to specific medical procedures for which 'treatment'

is required, but instead the term 'treatment' takes on a broader context which relates to

how defendants colloquially relate to plaintiffs in a clinical setting.

1217.  Upon information and belief Plaintiffs' were routinely subjected to harsh and

unusual treatment, including but not limited to, (1) being regularly drug tested without

consent; (2) being guarded by hospital security as if suspected of criminal behavior or

intent; (3) being guarded by BPD police when using the restroom; (4) parents being

separated from their newborn baby without good faith on the part of Defendants; (5)

being accosted and outright disbelieved by local police; (6) being threatened without

cause with arrest for trespassing; (7) having false rumors spread in medical records that

Plaintiff Mrs. Smith ingested methamphetamine; (8) constant hostility on the part of

Defendants; (9) being separated by hospital security from a newborn baby without

explanation; (10) having no privacy to discuss stressful situations; (11) being verbally

accosted by hospital staff with accusations of child abuse and/or neglect; (12) forcing

the Plaintiff Smith Family to undergo the shame of being perceived as

methamphetamine addicts.

1218.  Since the aforementioned allegations in the previous statement all relate to

specific instances of being treated harshly, and such treatment was unusual in that it

deviates from socially accepted norms for the reasonable treatment of parents with a

newborn child in a hospital, as well, treatment in the aforementioned allegations relates

not to a specific medical procedure, but to how the defendants were colloquially treated

by hospital staff and local police, Defendants St. Luke's Hospital, Onsite Neonatal,

OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics &

Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr.

Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth

Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago,

MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team",  Mr. Jerry Hric, MD,

Northampton County, Officer Andrew Keyock, Officer Thomas A. Smith,

Corporal Kirk Harryn, & Chief Daniel G. Pancoast, violated *Pa. Code § 5100.53. Sec. 8*

*of the Bill of Rights for Patients.*

1219.  At all times relevant, neither Plaintiffs Mr. and Mrs. Smith, or Plaintiff Newborn

baby J.A.S. were not treated either with dignity or respect in violation of the very title of

the *PA Bill of Rights* itself.

1220.  At no time did Plaintiffs, Mr. and Mrs. Smith, Newborn baby J.A.S.'s legal parents

agree to give up any of Plaintiff Newborn baby J.A.S.'s civil rights, nor were any civil

rights specifically curtailed by the order of a court.

1221.  Upon information and belief, given that a master is liable for the torts of its

servants if the servant's tortious conduct was within the scope of their employment; and,

given that Defendants Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick

Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth

1  Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago,

2  MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

3  Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team", were acting

4  within their scope of employment in the role that they were intended to perform, and

5  because their actions served their masters, Defendants St. Luke's Hospital, Onsite

6  Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's

7  Obstetrics & Gynecology Associates, and Mr. Jerry Hric, MD; said master Defendants

8  are liable for the actions of their servant Defendants Ms. Teresa Marlino, MD, Ms.

9  Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N.

10 Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah

11 Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello,

12 DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq.,

13 Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital

14 Leadership Team".

15 1222.  Upon information and belief, given that a master is liable for the torts of its

16 servants if the servant's tortious conduct was within the scope of their employment; and,

17 given that Defendants Officer Andrew Keyock, Officer Thomas A. Smith, Corporal Kirk

18 Harryn, and Chief Daniel G. Pancoast were acting within their scope of employment in

19 the role that they were intended to perform, and because their actions served their

20 master, Defendants Northampton County; said master Defendants are liable for the

21 actions of their servant Defendants Officer Andrew Keyock, Officer Thomas A. Smith,

22 Corporal Kirk Harryn, and Chief Daniel G. Pancoast.

1223.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary.

1224.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD, and therefore, their ability to afford the appropriate training to avoid this egregious violation of the Pennsylvania Statutory Law, and Defendants Northampton County, Officers Andrew Keyock and Thomas A. Smith, Corporal Kirk Harryn, and Chief Daniel G. Pancoast's egregious violations of legal obligations to accurately enforce the law, and, since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum families, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiff respectfully requests the imposition of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics &

1  Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr.

2  Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

3  Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth

4  Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago,

5  MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

6  Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership Team", & Mr. Jerry Hric, MD,

7  Officer Andrew Keyock, Officer Thomas A. Smith, Corporal Kirk Harryn, and Chief

8  Daniel G. Pancoast to deter such Defendants from committing to such conduct in the

9  future which violates Commonwealth of Pennsylvania Statutory Law.

10  1225.  Plaintiffs respectfully request from this Honorable Court a prayer for relief as the

11  Court sees appropriate either compensatory and/or punitive.

12  1226.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

13  any actual injury despite the deprivation of their statutory rights, the Plaintiffs

14  respectfully request a nominal judgment of $1.00.

15  # XX.    § 5100.14 Pa. Code, Patients' Bill of Rights

16  ### *Violation of Right to Appeal*

17  Smith, *et al*. v. St. Luke's Hospital, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq.,

18    Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

19  1227.  The *Pa. Code Section 5100.14*, defines a patient's right to appeal a hospital's

20  decisions as follows:

1228.  (a)  Each facility shall have a clearly defined appeal system through which any patient who wishes to voice objections concerning his treatment shall be heard and have objections determined.

1229.   (b)  Each facility shall monitor the appeal system to see that it works properly and records shall be maintained for review for certification and licensure and for Departmental review in order to investigate any complaint.

1230.   (c)  All patients shall be advised of such system and be encouraged to use it when they believe their treatment plan is not necessary or appropriate to their needs.

1231.  Upon information and belief, Defendant St. Luke's Hospital, and its agents, employee, and assigns do not have a system by which decisions made by medical staff, agents, employees, or assigns of the Defendant hospital can be appealed.

1232.  Upon information and belief, Defendant St. Luke's Hospital appeals system, if St. Luke's Hospital does have an appeal system in place, it is not properly monitored.

1233.  Upon information and belief, Defendant St. Luke's Hospital appeals system, if St. Luke's Hospital does have an appeal system in place, it is not properly maintained.

1234.  Upon information and belief, Plaintiffs Mr. and Mrs. Smith were not ever informed of the presence of an appeal system, and, did not have access to it when they believed that the treatment plans for Plaintiffs Mrs. Smith or Newborn baby J.A.S. were not necessary or appropriate to their needs.

1235.  Upon information and belief, since Defendant St. Luke's Hospital does not have an appeal system, or if it does, misappropriates or withholds its use through its agents, employees, or assigns, Defendants Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq.,

1    Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team," and violates

2    the *Pa. Code Section 5100.14 (a)* by not having an appeals process in place.

3    1236.  Upon information and belief, since Defendant St. Luke's Hospital does not

4    properly monitor its appeals system, if it does indeed have one, which violates the *Pa.*

5    *Code Section 5100.14 (b)* by not properly monitoring its own appeals system.

6    1237.  Upon information and belief, since Defendant St. Luke's Hospital did not make

7    Plaintiffs Mr. or  Mrs. Smith aware of an appeals process, and were not encouraged to

8    use it when they felt that their treatment plan or their child's newborn baby J.A.S.

9    treatment plan was inadequate or inappropriate, Defendant St. Luke's Hospital violated

10   the *Pa. Code Section 5100.14 (c)* by not bringing awareness to a potential appeals

11   process in order that Plaintiffs Mr. & Mrs. Smith could address issues when they felt the

12   treatment in place was not necessary or appropriate.

13   1238.  Upon information and belief, given that a master is liable for the torts of its

14   servants if the servant's tortious conduct was within the scope of their employment; and,

15   given that Defendants Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla

16   Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team", were acting within their

17   scope of employment in the role that they were intended to perform, and because their

18   actions served their masters, Defendants St. Luke's Hospital; said master Defendants

19   are liable for the actions of their servant Defendants Mr. Steve Lanshe, Esq., Mr. Robert

20   L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

21   Team".

22   1239.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

23   conduct, including but not limited to, emotional and psychological distress, pain and

1   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

2   appropriate compensatory damages to account for PTSD therapies and other related

3   treatments as they have been and will continue to be necessary.

4   1240.  Given the substantial wealth of the Defendants St. Luke's Hospital, Mr. Steve

5   Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital

6   Leadership Team", & Mr. Jerry Hric, MD, and therefore, their ability to afford the

7   appropriate training to avoid this egregious violation of the Pennsylvania Statutory Law,

8   and, since harm was actually caused to the current Plaintiff Smith Family, and since

9   harm is likely to continue to harm future postpartum families, and because the acts of

10  the Defendants and their agents, assigns, or employees callously disregarded the

11  Plaintiff's rights in a reckless and wanton manner, the Plaintiff respectfully requests the

12  imposition of punitive damages on Defendants St. Luke's Hospital, Mr. Steve Lanshe,

13  Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital

14  Leadership Team", & Mr. Jerry Hric, MD, to deter such Defendants from committing to

15  such conduct in the future which violates Commonwealth of Pennsylvania Statutory

16  Law.

17  1241.  Plaintiffs respectfully request from this Honorable Court a prayer for relief as the

18  Court sees appropriate either compensatory and/or punitive.

19  1242.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

20  any actual injury despite the deprivation of their statutory rights, the Plaintiff respectfully

21  requests a nominal judgment of $1.00.

22  ## XXI.   § 5100.52 Pa. Code, Patients' Bill of Rights

23  *Violation of Receiving a Manual of Rights*

1      <u>Mr. & Mrs. Smith v. St. Luke's Hospital</u>

2      1243.  The *Pa. Code § 5100.52*. Is a statement of principle on the availability of

3      information to patients. As follows:

4      1244.   (a)   *Facilities.* Upon voluntary or involuntary admission to an inpatient facility,

5      each patient shall be given a copy of the summary statement of the Bill of Rights,

6      contained in *§ 5100.53* (relating to bill of rights for patients), Form MH-782, or the

7      patient rights pamphlet (PWPE # 605), published by the Department entitled *You Have*

8      *a Right to be Treated with Dignity and Respect.* Appended to each of these documents

9      shall be the names, addresses, and telephone numbers of legal and other available

10     advocacy services. Assistance in contacting a legal or other advocate shall be provided

11     by the facility to each patient upon request. The rights contained therein shall be

12     explained to the extent feasible to persons who cannot read or understand them. Within

13     72 hours of admission, the Manual of Rights, set forth in *§ 5100.54* (relating to manual

14     of rights for persons in treatment), or the Patient Rights Handbook (PWPE # 606),

15     entitled *Your Rights Are Assured*, shall be made available or given to each patient, and

16     the rights contained therein shall be explained to the extent feasible to persons who

17     cannot read or understand them. Additionally, a copy of either the Manual of Rights or

18     the Patient Rights Handbook (PWPE # 606) entitled *Your Rights Are Assured*, shall be

19     made available for each patient access in each patient living area.

20     1245.   (b)   *Current patients.* All current patients shall be given a copy of either the

21     Manual of Rights, or Patient Rights Handbook entitled *Your Rights Are Assured* (PWPE

22     # 606), as in subsection (a). Existing supplies of previously printed forms and manuals

23     may be utilized.

1246.  Plaintiff Mrs. Smith was a patient of Defendant St. Luke's hospital and she should have received the publications or their equivalent from St. Luke's as outlined in Section (a).

1247.  Upon information and belief, Mrs. Smith did not ever receive the publications or their equivalent as outlined in Section (a)

1248.  Newborn baby J.A.S. was a patient of Defendant St. Luke's Hospital and both of his parents, Plaintiffs Mr. and Mrs. Smith should have received the publications or their equivalent from Defendant St. Luke's Hospital as outlined in Section (a).

1249.  Upon information and belief, neither Plaintiffs Mr. nor Mrs. Smith received the publications or their equivalent as outlined in Section (a) upon the birth of Newborn baby J.A.S.

1250.  Upon information and belief, because neither Plaintiff Mrs. Smith for herself, nor Plaintiffs Mr. and Mrs. Smith on behalf of their Newborn baby J.A.S. was given the appropriate manuals or their equivalent, Defendant St. Luke's Hospital violated both sections *(a)* and *(b)* of the *Pa. Code § 5100.52*.

1251.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary.

1252.  Given the substantial wealth of the Defendant St. Luke's Hospital, and therefore, their ability to afford the appropriate training to avoid this egregious violation of the Pennsylvania Statutory Law, and, since harm was actually caused to the current

1   Plaintiffs Mr. & Mrs. Smith, and since harm is likely to continue to harm future

2   postpartum families, and because the acts of the Defendant and their agents, assigns,

3   or employees callously disregarded the Plaintiff's rights in a reckless and wanton

4   manner, the Plaintiff respectfully requests the imposition of punitive damages on

5   Defendant St. Luke's Hospital to deter such Defendants from committing to such

6   conduct in the future which violates Commonwealth of Pennsylvania Statutory Law.

7   1253.  Plaintiffs respectfully request from this Honorable Court a prayer for relief as the

8   Court sees appropriate either compensatory and/or punitive.

9   1254.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

10   any actual injury despite the deprivation of their statutory rights, the Plaintiff respectfully

11   requests a nominal judgment of $1.00.

## XXII.   § 42 Pa. C. S. § 8343, Defamation - Libel I

### Newborn baby J.A.S. and Mrs. Smith v. St. Luke's Hospital, OBHG PA, & Ms. Teresa Marlino, MD

15   1255.  Under Pennsylvania defamation law, a communication will be considered

16   defamatory if it "tends so to harm the reputation of [the complaining party] as to lower

17   him in the estimation of the community or to deter third persons from associating or

18   dealing with him."[49]

---

[49]*MacElree v. Philadelphia Newspapers*, 544 Pa. 117, 124-125 (Pa. 1996) (citations omitted).

1256.  In order for Plaintiffs to succeed in their claim, they must prove the following

elements[50].

    (1) The defamatory character of the communication;

    (2) Its publication by the defendant;

    (3) Its application to the plaintiff;

    (4) The understanding by the recipient of its defamatory meaning;

    (5) The understanding by the recipient of it as intended to be applied to the plaintiff;

    (6) Special harm resulting to the plaintiff from its publication; and

    (7) Abuse of a conditionally privileged occasion.

1257.  The Pennsylvania Supreme Court has abolished an "actual malice" standard and

has shifted the inquiry to whether a plaintiff is a private individual or a public figure or

public official.[51]

1258.  Pennsylvania has adopted a negligence standard for private figure plaintiff

lawsuits regarding issues of private concern.[52]

1259.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

or obligation recognized by the law, requiring the actor to conform to a certain standard

of conduct; (2) a failure to conform to the required standard; (3) a causal connection

---

[50]*42 Pa.C.S. § 8343(a)(1-7).*

[51]*Am. Future Sys., Inc. v. Better Bus. Bureau*, 592 Pa. 66, 82-83 (Pa. 2007). However,

demonstrations of actual malice on the part of the defendant can lead to wider array of

potential damages.

[52]*Wilson v. Slatalla*, 970 F. Supp. 405, 414 (E.D. Pa. 1997).

1    between the conduct and the resulting injury; and (4) actual loss or damage resulting to

2    the interests of another.[53]

3                                          ***The Context***

4    1260.  Defendants St. Luke's Hospital, and OBHG PA, among other parties named and

5    unnamed in this lawsuit, intentionally created an atmosphere hostile to the Smith

6    Family, including Plaintiffs Newborn baby J.A.S. and Mrs. Smith.

7    1261.  Upon information and belief, Ms. Teresa Marlino, MD, supported the hostile

8    atmosphere intentionally created by St. Luke's Hospital and OBHG PA.

9    1262.  Defendants St. Luke's Hospital, and OBHG PA coordinated their employees,

10   agents, or assigns, including Ms. Teresa Marlino, MD, towards a narrative that Mrs.

11   Smith was a methamphetamine addict and that Plaintiff Mrs. Smith gave birth to Plaintiff

12   Newborn baby J.A.S. who was also a methamphetamine addict.

13   1263.  The umbilical cord that connected Plaintiffs Newborn baby J.A.S. and Mrs. Smith

14   was tested on April 9th, 2021, and was negative for amphetamines and

15   methamphetamines.

16   1264.  Despite the umbilical cord that connected Plaintiffs Newborn baby J.A.S. and

17   Mrs. Smith testing negative for illegal drugs, Defendants St. Luke's Hospital and OBHG

18   PA, acting through agent, employee, or assign Ms. Teresa Marlino, MD, continued the

19   narrative that Plaintiff Mrs. Smith was a methamphetamine addict and that Plaintiff Mrs.

---

[53]*See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

Smith gave birth to Plaintiff Newborn baby J.A.S. who was also a methamphetamine addict.

1265.  Medical records on April 9th, 2021, reflect the statement, "[F]amily was requesting discharge at 12 hours of life."

1266.  At approximately 12-hours of Plaintiff Newborn baby J.A.S.'s life, Mr. and Mrs. Smith requested to be discharged from Defendant St. Luke's Hospital when practicable, not immediately at 12 hours from birth, as is suggested in the medical records entered by St. Luke's Hospital agents, employees, and/or assigns.

1267.  Upon information and belief, Defendant St. Luke's Hospital, and, OBHG PA, through their agents, employees, or assigns, was further attempting to imply that Plaintiff Mrs. Smith was urgently seeking to go home so that she could consume methamphetamine by making the medical records appear that Plaintiff Mrs. Smith quickly sought to reingest methamphetamine by going home as soon as possible after her newborn baby's birth.

1268.  Beginning on April 10th, 2021 the statement, "High probability of life[-]threatening clinical deterioration in infant's condition without treatment," began regularly appearing in Plaintiff Newborn baby J.A.S.'s medical records.

1269.  Mr. and Mrs. Smith were not ever told by any agent, employee, or assign of Defendants St. Luke's Hospital, nor OBHG PA that Newborn baby J.A.S. had a, "High probability of life[-]threatening clinical deterioration…without treatment."

1270.  Despite the accusation of methamphetamine use by Defendants St. Luke's Hospital, and OBHG PA, and their agents, assigns, or employees, Plaintiff Mrs. Smith was allowed to breastfeed Plaintiff Newborn baby J.A.S.

1271.  Despite Plaintiffs Mrs. Smith and Newborn baby J.A.S. being suspected of methamphetamine addiction, state-mandated policies and procedures for methamphetamine withdrawal were not implemented for Plaintiff Newborn baby J.A.S. by Defendants St. Luke's Hospital, OBHG PA, nor any other health provider.

1272.  Notes on medical records by non-radiology experts from April 11th, 2021, stated that, "…upon admission to the NICU [newborn baby J.A.S.] showed hazy lung fields with expansion to 5-9 ribs."

1273.  Radiology indicates in the medical record no "hazy lung fields" or "expansion" into Plaintiff Newborn baby J.A.S.'s lungs.

1274.  Radiology, instead indicates in the medical record, "Perhaps minimal asymmetric granular opacity on the right. No consolidation. No discernable pneumothorax or layering pleural effusion on limited supine imaging. Osseous structures appear within normal limits for patient age."

1275.  Upon information and belief, Defendants St. Luke's Hospital, and OBHG PA, and other parties named and unnamed in this lawsuit, manipulated the medical records in their own interpretations of the radiologist's report to paint Plaintiffs Newborn baby J.A.S. and Mrs. Smith as methamphetamine addicts by constructing a reason to keep Plaintiff Newborn baby J.A.S. in the hospital against the will and consent of his parents.

1276.  As represented in the medical documentation, beginning on April 10th, 2021, Plaintiff Mrs. Smith was under constant monitoring by Defendant St. Luke's Hospital and OBHG PA for "inappropriate behavior" via their agents, employees, and/or assigns.

1277.  As of April 9th, 2021, Mr. Smith was not allowed to ever be on Defendant St. Luke's Hospital Property without the risk of being arrested.

1278.  As of April 10th, 2021, Plaintiff Mrs. Smith was supervised around the clock by male security guards, even while breastfeeding, and walking to the restroom.

### Additional Context & The Libelous Statement

1279.  Upon information and belief, Defendant Ms. Teresa Marlino, MD supported the hostile atmosphere intentionally created by St. Luke's Hospital, and/or OBHG PA against the Plaintiff Smith Family.

1280.  On April 9th, 2021, Defendant Ms. Teresa Marlino, MD, in Plaintiff Mrs. Smith's medical records, in the "Progress Notes" by Denese Brown, MD, attested to the following, "I [Ms. Marlino, MD] told them [Mr. & Mrs. Smith] that because her [Mrs. Smith's] urine drug screen, as well as the baby's urine drug screen, were positive for THC and methamphetamine, the hospital social worker has contacted the Monroe County Children and Youth Services".

1281.  Defendant Ms. Teresa Marlino, MD, on April 9th, 2021, electronically signed the aforementioned representation in the medical records that Plaintiff Mrs. Smith tested positive for methamphetamine thereby adding the weight of her position to the false narrative that Plaintiff Mrs. Smith ingested methamphetamine and that she passed the harmful and deleterious effects of methamphetamine onto Plaintiff Newborn baby J.A.S.

1282.  Plaintiff Mrs. Smith did not ever test positive for methamphetamine.

1283.  Plaintiff Newborn baby J.A.S. did not ever test positive for methamphetamine.

1284.  There is not any valid reason to place a child's medical information in his mother's medical records, as that is a violation of the child's right to medical privacy; each individual's medical records should only represent themselves.

1285.  There is not any valid reason to place false medical information about a newborn child in his mother's medical records.

1286.  A likely reason to place false medical information about a newborn child in his mother's medical records is to attempt to color Plaintiff Mrs. Smith as an illegal methamphetamine user and that by extension her newborn baby as a methamphetamine addict.

*Libel Per Se I(a)*

1287.  The statement in Plaintiff Newborn baby J.A.S.'s medical records as represented by Defendant Ms. Teresa Marlino, MD, and ratified with the weight of her position that, "I [Ms. Marlino, MD] told them [Mr. & Mrs. Smith] that because her [Mrs. Smith's] urine drug screen, as well as the baby's urine drug screen, were positive for THC and methamphetamine, the hospital social worker has contacted the Monroe County Children and Youth Services," harmed the reputation of Plaintiffs Mrs. Smith and n]Newborn baby J.A.S. in the estimation of the community by stating that Plaintiff Mrs. Smith is a user of illegal of methamphetamines and that she and her newborn child J.A.S. were addicted to illegal and harmful substances.

1288.  The defamatory statement is harmful in character because it states that Defendant Mrs. Smith has ingested the illegal and harmful substance of methamphetamine and that she passed deleterious harm onto her child Plaintiff Newborn baby J.A.S.

1289.  Defendant Ms. Teresa Marlino, MD, published the defamatory statement in Plaintiff Mrs. Smith's medical records where the statements were read by every medical

1 provider who thereafter consulted Plaintiff Mrs. Smith's medical records for an update or

2 history on her status, as well as, other state parties when they became involved in

3 investigating the Smith Family.

4 1290. Upon information and belief, it can be demonstrated through Defendant

5 testimonies, examinations of medical records, and hospital policies, such as, in-person,

6 around the clock surveillance of a breastfeeding mother by male hospital security

7 officers, that recipients of the publication understood that the meaning of the publication

8 was that Plaintiff Mrs. Smith had ingested illegal methamphetamine and passed that

9 harm onto Plaintiff Newborn baby J.A.S.

10 1291. Since the defamatory statement is contained within Plaintiff Mrs. Smith's medical

11 records, and because Plaintiff Newborn baby J.A.S. is her baby, it was clear that the

12 defamatory statement was to be applied to both Plaintiffs Newborn baby J.A.S. and Mrs.

13 Smith.

14 1292. Harm suffered by the Plaintiffs includes, but is not limited to, a hostile

15 atmosphere, exacerbating Plaintiff's mental health conditions which Defendants St.

16 Luke's Hospital, and OBHG PA were aware of, causing a postpartum mother to

17 needlessly suffer without any reasonable amenities when in the NICU, staff ratifying

18 each other's invalid moral positions leading other staff to regard their inappropriate

19 actions with a sense of false righteousness, and Plaintiff Newborn baby J.A.S. being

20 considered abused by his mother through her use of illegal drugs, by Defendants St.

21 Luke's Hospital, and OBHG PA, through their agent, employee, or assign, Ms. Teresa

22 Marlino, MD.

1293.  Upon information and belief, Defendants St. Luke's Hospital, and/or OBHG PA, through their agent, employees, or assign, Ms. Teresa Marlino, MD, abused her conditionally privileged occasion when as a medical provider with the ability to alter and manipulate medical records, did falsify those records through the published defamatory statement.

1294.  Plaintiffs' Newborn baby J.A.S. and Mrs. Smith are private individuals and not public figures.

1295.  Since this is a case of a private figure plaintiff redressing issues of private concern, the appropriate standard for this libel claim is one of negligence.

1296.  Negligence: (1) Medical providers with the ability to alter medical records are required to maintain true and accurate records.

1297.  Negligence: (2) Medical provider Ms. Teresa Marlino, MD did not maintain true and accurate medical records when Defendant Ms. Teresa Marlino, MD represented in Plaintiff Mrs. Smith's medical records that, "I [Ms. Marlino, MD] told them [Mr. & Mrs. Smith] that because her [Mrs. Smith's] urine drug screen, as well as the baby's urine drug screen, were positive for THC and methamphetamine, the hospital social worker has contacted the Monroe County Children and Youth Services," and then Defendant Ms. Teresa Marlino, MD certified the representation in Plaintiff Mrs. Smith's medical records.

1298.  Negligence: (3) Upon information and belief, but for the actions of the Defendant attesting to Plaintiff Mrs. Smith as a methamphetamine user, Plaintiff Mrs. Smith would not have suffered the aforementioned harms and indignities mentioned earlier in this

1  allegation of libelous defamation, as well, it is likely that Plaintiff Mrs. Smith would not

2  have had pervasive and injurious inquiries about private family matters by state officials.

3  1299.  Negligence: (4) Plaintiffs have suffered substantial harm as a result of

4  Defendants' conduct, including but not limited to, emotional and psychological distress,

5  pain and suffering, and injury to their reputations.

6  1300.  In *libel per se* cases Pennsylvania defamation law considers "Words that on their

7  face and without the aid of extrinsic evidence are recognized as injurious are actionable

8  per se…."[54]

9  1301.  Upon information and belief, the Defendant Ms. Teresa Marlino, MD, directly and

10  unequivocally accused Plaintiff Mrs. Smith of being a methamphetamine user in her

11  newborn child's medical records which are on their face and without the aid of extrinsic

12  evidence injurious, and actionable for a *libel per se* claim.

13  1302.  In *libel pe se* cases, Pennsylvania law observes that, "words imputing a criminal

14  offense, loathsome disease, business misconduct or serious sexual misconduct" will be

15  considered defamatory per se.[55]

16  1303.  Since Defendant Ms. Teresa Marlino, MD, directly and unequivocally accused

17  Plaintiff Mrs. Smith of being a methamphetamine user in her newborn child's medical

18  records, and since methamphetamine is an illegal controlled substance, the Defendant

19  imputed a criminal offense, thereby making this an actionable *libel per se* claim.

---

[54]*Joseph v. Scranton Times L.P.*, 959 A.2d 322, n.23 (Pa. Super. Ct. 2008).

[55]*Hrishenko v. Coombs*, 2014 Pa. Super. Unpub. LEXIS 880, *9 (Pa. Super. Ct. 2014).

1304.  Upon information and belief, Plaintiff can demonstrate by a preponderance of

evidence that the Defendants Private Entities St. Luke's Hospital, and/or OBHG PA

supervised Defendant Ms. Teresa Marlino, MD in connection with this allegation and are

therefore liable under a legal theory of respondeat superior.

1305.  Upon information and belief, Defendants St. Luke's Hospital, OBHG PA, and Ms.

Teresa Marlino, MD's conduct violated Plaintiffs' rights under Pennsylvania Statute *42*

*Pa. C.S. § 8343* for defamation.

*Or, In the Alternative,*

*Libel Per Quod I(b)*

1306.  The statement in Plaintiff Mrs. Smith's medical records as represented by

Defendant Ms. Teresa Marlino, MD, and ratified with the weight of her authority that "I

[Ms. Marlino, MD] told them [Mr. & Mrs. Smith] that because her [Mrs. Smith's] urine

drug screen, as well as the baby's urine drug screen, were positive for THC and

methamphetamine, the hospital social worker has contacted the Monroe County

Children and Youth Services," harmed the reputation of Plaintiffs Mrs. Smith and

Newborn baby J.A.S. in the estimation of the community by stating that Plaintiff Mrs.

Smith is a user of illegal of methamphetamines and that she and her newborn child

J.A.S. were addicted to illegal and harmful substances.

1307.  The defamatory statement is harmful in character because it states that Plaintiff

Mrs. Smith has abused the illegal and harmful substance of methamphetamine and that

she passed that harm onto her child Plaintiff Newborn baby J.A.S.

1308.  Defendant Ms. Teresa Marlino, MD, published the defamatory statement in Plaintiff Mrs. Smith's medical records where the statements were read by every medical provider who thereafter consulted Plaintiff Mrs. Smith's medical records for an update or history on her status, as well as, other state parties when they became involved in investigating the Smith Family.

1309.  Upon information and belief, it can be demonstrated through Defendant testimonies, examinations of medical records, and hospital policies, such as, in-person, around the clock surveillance of a breastfeeding mother by male hospital security officers, that recipients of the publication understood that the meaning of the publication was that Plaintiff Mrs. Smith had ingested illegal methamphetamine.

1310.  Since the defamatory statement is contained within Plaintiff Mrs. Smith's medical records, and because Plaintiff Mrs. Smith is the mother of Plaintiff Newborn baby J.A.S. it was clear that the defamatory statements were to be applied to both Plaintiffs Newborn baby J.A.S. and Mrs. Smith.

1311.  Harm suffered by the Plaintiffs includes, but is not limited to, a hostile atmosphere, exacerbating Plaintiff's mental health conditions which Defendants St. Luke's Hospital and OBHG PA were aware of, causing a postpartum mother to needlessly suffer without any reasonable amenities when in the NICU, staff ratifying each other's invalid moral positions leading other staff to regard their inappropriate actions with a sense of false righteousness, and Plaintiff Newborn baby J.A.S. being considered abused by his mother through her use of illegal drugs, by Defendants St. Luke's Hospital, and OBHG PA through their agent, employee, or assign, Ms. Teresa Marlino, MD.

1312.  Upon information and belief, St. Luke's Hospital, and OBHG PA, through their agent, employee, or assign, Ms. Teresa Marlino, MD, abused her conditionally privileged occasion when as a medical provider with the ability to alter and manipulate medical records, did falsify those records through the published defamatory statement.

1313.  Plaintiffs' Newborn baby J.A.S. and Mrs. Smith are private individuals and not public figures.

1314.  Since this is a case of a private figure plaintiff redressing issues of private concern, the appropriate standard for this libel claim is one of negligence.

1315.  Negligence: (1) Medical providers with the ability to alter medical records are required to maintain true and accurate records.

1316.  Negligence: (2) Medical provider Defendant Ms. Teresa Marlino, MD, did not maintain true and accurate medical records when Defendant Ms. Teresa Marlino, MD, represented in Plaintiff Mrs. Smith's medical records that both Plaintiffs Newborn baby J.A.S. and Mrs. Smith "tested positive for methamphetamines," and then certified the representation in Plaintiff Mrs. Smith's medical records.

1317.  Negligence: (3) Upon information and belief, but for the actions of the Defendant attesting to Plaintiff Mrs. Smith as a methamphetamine user, Mrs. Smith would not have suffered the aforementioned harms and indignities mentioned earlier in this allegation of libelous defamation, as well, it is likely that Mrs. Smith would not have had pervasive and injurious inquiries about private family matters by state officials.

1318.  Negligence: (4) Plaintiffs have suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, and injury to their reputations.

1319.  In *libel per quod* cases Pennsylvania defamation law considers extrinsic supporting evidence of libelous behavior if the injurious nature of the words is not apparent.[56]

1320.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of evidence that through the presentation of medical records, police reports, and other administrative documentation that the libelous statement was not a mere description of the baby or his mother for the medical edification of potential diagnosis concerning Plaintiffs Newborn baby J.A.S. or Mrs. Smith, but was instead a statement intended to cast unfounded and harmful aspersions on both Plaintiffs Newborn baby J.A.S. and Mrs. Smith.

1321.  Plaintiffs will need to demonstrate necessary innuendo by Defendant Parties.

1322.  "Innuendo", "define[s] the defamatory meaning which the plaintiff attaches to the words" and "show[s] how they come to have that meaning and how they relate to the plaintiff."[57]

1323.  Methamphetamine is an illegal controlled substance, which has deleterious effects on those that consume it.

1324.  Deleterious effects caused by methamphetamine when consumed by a pregnant mother will likely be passed on to her child in utero via the umbilical cord.

---

[56] *Joseph*, 959 A.2d at n.23.

[57] *Cosgrove Studio & Camera Shop, Inc. v. Pane*, 408 Pa. 314, 319 (Pa. 1962) (citations omitted).

1   1325.  When Defendant Ms. Teresa Marlino, MD, represented and certified the libelous

2   statement, adding the weight of the authority of her position to the narrative that Plaintiff

3   Mrs. Smith ingested methamphetamine and passed it along to her newborn baby, it was

4   to make clear to other medical professionals, administrators, and/or state personnel that

5   Plaintiff Mrs. Smith consumed methamphetamine and that she likely passed on the

6   deleterious effects of methamphetamine use to her child Plaintiff Newborn baby J.A.S.

7   1326.  The libelous statement relates to the Plaintiffs Newborn baby J.A.S. and Mrs.

8   Smith because the statement is about Plaintiffs Mrs. Smith and Newborn baby J.A.S.,

9   and it is in Plaintiff Mrs. Smith's medical records.

10   1327.  Upon information and belief, Plaintiff can demonstrate by a preponderance of

11   evidence that the Defendants Private Entities St. Luke's Hospital, and OBHG PA,

12   supervised Ms. Teresa Marlino, MD in connection with this allegation and are therefore

13   liable under a legal theory of respondeat superior.

14   1328.  Upon information and belief, Defendants St. Luke's Hospital, OBHG PA, and Ms.

15   Teresa Marlino, MD's conduct violated Plaintiffs' rights under Pennsylvania Statute *42*

16   *Pa.C.S. § 8343* for defamation.


17                               *Or, In the Alternative*


18                               *Libel by Implication I(c)*


19                   **The Libelous Statement & Implication**

1329.  Upon information and belief, Defendant Ms. Teresa Marlino, MD, supported the hostile atmosphere intentionally created by Defendants St. Luke's Hospital, and OBHG PA, against the Plaintiff Smith Family.

1330.  Defendant Ms. Teresa Marlino, MD stated on April 9th, 2021 in Plaintiff Mrs. Smith's medical records that, "I [Ms. Marlino, MD] told them [Mr. & Mrs. Smith] that because her [Mrs. Smith's] urine drug screen, as well as the baby's urine drug screen, were positive for THC and methamphetamine, the hospital social worker has contacted the Monroe County Children and Youth Services".

1331.  Defendant Ms. Teresa Marlino, MD did verbalize to Mr. and Mrs. Smith the aforementioned statement as a matter of facts.

1332.  There is not a valid reason to place a newborn baby's medical status in the mother's personal medical records.

1333.  A likely reason to place medical information about a newborn child in that child's mother's medical records is to attempt to color Plaintiff Mrs. Smith as a potentially illegal methamphetamine user and that by extension her newborn baby suffers from the deleterious effects of methamphetamine.

1334.  The statement in Plaintiff Mrs. Smith's medical records as represented by Defendant Ms. Teresa Marlino, MD, that "I [Ms. Marlino, MD] told them [Mr. & Mrs. Smith] that because her [Mrs. Smith's] urine drug screen, as well as the baby's urine drug screen, were positive for THC and methamphetamine, the hospital social worker has contacted the Monroe County Children and Youth Services," harmed the reputation of Plaintiffs Mrs. Smith and Newborn baby J.A.S. in the estimation of the community by

1   implying that Plaintiff Mrs. Smith is a user of illegal of methamphetamines and that she

2   and her newborn child J.A.S. were addicted to illegal and harmful substances.

3   1335.  The defamatory statement is harmful in character because it implies that

4   Defendant Mrs. Smith has abused the illegal and harmful substance of

5   methamphetamine and that she passed that harm onto her child Plaintiff Newborn baby

6   J.A.S.

7   1336.  Defendant Ms. Teresa Marlino, MD, published the defamatory statement in

8   Plaintiff Mrs. Smith's medical records as an addendum where the statements were likely

9   read by every medical provider who thereafter consulted Plaintiff Mrs. Smith's medical

10   records for an update on her status, as well as, other state parties when they became

11   involved in investigating the Smith Family.

12   1337.  Upon information and belief, it can be demonstrated through Defendant

13   testimonies, examinations of medical records, and hospital policies, such as, in-person,

14   around the clock surveillance of a breastfeeding mother by male hospital security

15   officers, that recipients of the publication understood that the meaning of the publication

16   was that Plaintiff Mrs. Smith had ingested illegal methamphetamine.

17   1338.  Since the defamatory statement is contained within Plaintiff Newborn baby

18   J.A.S.'s medical records, and because Plaintiff Mrs. Smith is the mother of Plaintiff

19   Newborn baby J.A.S. it was clear that the defamatory statement was to be applied to

20   both Plaintiffs Newborn baby J.A.S. and Mrs. Smith.

21   1339.  Harm suffered by the Plaintiffs includes, but is not limited to, a hostile

22   atmosphere, exacerbating Plaintiff's mental health conditions which Defendants St.

23   Luke's Hospital, and/or OBHG, were aware of, causing a postpartum mother to

1   needlessly suffer without any reasonable amenities when in the NICU, staff ratifying

2   each other's invalid moral positions leading other staff to regard their inappropriate

3   actions with a sense of false righteousness, and Plaintiff Newborn baby J.A.S. being

4   considered abused by his mother through her use of illegal drugs, by Defendants St.

5   Luke's Hospital and OBHG PA through their agent, employee, or assign, Ms. Teresa

6   Marlino, MD.

7   1340.  Upon information and belief, St. Luke's Hospital, and OBHG PA, through their

8   agent, employee, or assign, Defendant Ms. Teresa Marlino, MD, abused her

9   conditionally privileged occasion when as a medical provider with the ability to alter and

10  manipulate medical records, did write true statements in those records, including the

11  published defamatory statement that in their culmination lead to false assertions about

12  the Plaintiffs.

13  1341.  Plaintiffs' Newborn baby J.A.S. and Mrs. Smith are private individuals and not

14  public figures.

15  1342.  Since this is a case of a private figure plaintiff redressing issues of private

16  concern, the appropriate standard for this libel claim is one of negligence.

17  1343.  Negligence: (1) Medical providers with the ability to alter medical records are

18  required to maintain medical records that reflect the truth of a matter in both itemized

19  mentions of fact and the totality of what those facts are to represent.

20  1344.  Negligence: (2) Medical provider Defendant Ms. Teresa Marlino, MD, did

21  maintain true and accurate medical records when itemized mentions of fact were read in

22  isolation from one another; however, when taken as a totality the facts present the

23  Plaintiffs in a harmful and dishonest light, culminating with when Defendant Ms. Teresa

Marlino, MD, represented in Plaintiff Mrs. Smith's medical records that Defendant Ms. Marlino, MD, did actually and truthfully make the defamatory statement to Mr. and Mrs. Smith.

1345.  Negligence: (3) Upon information and belief, but for the actions of the Defendant implying that Plaintiff Mrs. Smith was a methamphetamine user, Plaintiff Mrs. Smith would not have suffered the aforementioned harms and indignities mentioned earlier in this allegation of libelous defamation, as well, it is likely that Plaintiff Mrs. Smith would not have had pervasive and injurious inquiries about private family matters by state officials.

1346.  Negligence: (4) Plaintiffs have suffered substantial harm as a result of Defendant's conduct, including but not limited to, emotional and psychological distress, pain and suffering, and injury to their reputations.

1347.  Libel by Implication occurs when "true facts that in context imply a falsehood."[58]

1348.  In addition, "the literal accuracy of separate statements will not render a communication 'true' where, as here, the implication of the communication as a whole was false."[59]

1349.  Upon information and belief, Plaintiffs' Newborn baby J.A.S. and Mrs. Smith can demonstrate by a preponderance of the evidence that any one statement in Plaintiff

---

[58]*Dunlap v. Philadelphia Newspapers, Inc.*, 301 Pa. Super. 475, 491 (Pa. Super. Ct. 1982) (emphasis omitted).

[59]*Id.* at 493.

1    Mrs. Smith's medical records may be true, but the implication of the communications as

2    a whole in Plaintiff Mrs. Smith's medical records is false.

3    1350.  As well, if "the defendant juxtaposes [a] series of fact so as to imply a defamatory

4    connection between them, or [otherwise] creates a defamatory implication…" then a

5    libelous statement by implication is present.[60]

6    1351.  Upon information and belief, Plaintiffs Newborn baby J.A.S. and Mrs. Smith can

7    demonstrate by a preponderance of the evidence that many facts contained within Mrs.

8    Smith's medical records juxtaposes a series of facts so as to imply a defamatory

9    connection of methamphetamine ingestion by Plaintiff Mrs. Smith, the deleterious

10   effects of which were passed on to Plaintiff Newborn baby J.A.S., such as how lab

11   records indicate that Defendant Mrs. Smith's urinary drug screen did test positive for

12   stimulants, but that the Defendants then took that undifferentiated information and

13   constructed a narrative that Mrs. Smith ingested methamphetamine.

14   1352.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

15   evidence that the Defendants Private Entities St. Luke's Hospital, and OBHG PA,

16   supervised Defendant Ms. Teresa Marlino, MD, in connection with this allegation and

17   are therefore liable under a legal theory of respondeat superior.

18   1353.  Upon information and belief, Defendants St. Luke's Hospital, OBHG PA, and Ms.

19   Teresa Marlino, MD's conduct violated Plaintiffs' rights under Pennsylvania Statute *42*

20   *Pa. C.S. § 8343* for defamation.

21                          **Damages for Libel I(a-c)**

---

[60] *Fanelle v. LoJack Corp.*, 2000 U.S. Dist. LEXIS 17767, *10 (E.D. Pa. Dec. 7, 2000).

1354.  Plaintiff Mrs. Smith suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully request an amount of $595,000 in compensatory damages per Defendant.

1355.  Given the substantial wealth of the Defendants St. Luke's Hospital, OBHG PA, and Ms. Teresa Marlino, MD, and therefore, its ability to afford the appropriate training to avoid this egregious violation of the Pennsylvania Statutory Law, and, since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum families, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the imposition of punitive damages on Defendants St. Luke's Hospital, OBHG PA, and Ms. Teresa Marlino, MD to deter such Defendants from committing to such conduct in the future which violates Commonwealth of Pennsylvania Statutory Law Plaintiffs respectfully request an amount of $10,000,000 in punitive damages per Defendants St. Luke's Hospital, OBHG PA, and Ms. Teresa Marlino, MD.

1356.  In the unlikely event that the jury does not find that Plaintiffs Mrs. Smith and Newborn baby J.A.S. suffered any actual injury despite the deprivation of their statutory law rights, the Plaintiffs respectfully request a nominal judgment of $1.00.

## XXIII.    § 42 Pa. C. S. § 8343, Defamation - Libel II

## Newborn baby J.A.S. and Mrs. Grace Smith v. St. Luke's Hospital, Onsite Neonatal, & Ms. Cynthia Shultz, MD

1357.  Under Pennsylvania defamation law, a communication will be considered defamatory if it "tends so to harm the reputation of [the complaining party] as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."[61]

1358.  In order for Plaintiffs to succeed in their claim, they must prove the following elements[62].

(1) The defamatory character of the communication;

(2) Its publication by the defendant;

(3) Its application to the plaintiff;

(4) The understanding by the recipient of its defamatory meaning;

(5) The understanding by the recipient of it as intended to be applied to the plaintiff;

(6) Special harm resulting to the plaintiff from its publication; and

(7) Abuse of a conditionally privileged occasion.

---

[61] *MacElree v. Philadelphia Newspapers*, 544 Pa. 117, 124-125 (Pa. 1996) (citations omitted).

[62] *42 Pa.C.S. § 8343(a)(1-7).*

1    1359.  The Pennsylvania Supreme Court has abolished an "actual malice" standard and

2    has shifted the inquiry to whether a plaintiff is a private individual or a public figure or

3    public official.[63]

4    1360.  Pennsylvania has adopted a negligence standard for private figure plaintiff

5    lawsuits regarding issues of private concern.[64]

6    1361.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

7    or obligation recognized by the law, requiring the actor to conform to a certain standard

8    of conduct; (2) a failure to conform to the required standard; (3) a causal connection

9    between the conduct and the resulting injury; and (4) actual loss or damage resulting to

10   the interests of another.[65]

11                                      ***The Context***

12   1362.  Defendants St. Luke's Hospital and Onsite Neonatal, among other parties named

13   and unnamed in this lawsuit, intentionally created an atmosphere hostile to the Smith

14   Family, including Plaintiffs' Newborn baby J.A.S. and Mrs. Smith.

---

[63]*Am. Future Sys., Inc. v. Better Bus. Bureau*, 592 Pa. 66, 82-83 (Pa. 2007). However,
demonstrations of actual malice on the part of the defendant can lead to wider array of
potential damages.

[64]*Wilson v. Slatalla*, 970 F. Supp. 405, 414 (E.D. Pa. 1997).

[65]*See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933,
938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir.
1993).

1363.  Upon information and belief, Defendant Ms. Cynthia Shultz, MD, supported the hostile atmosphere intentionally created by Defendants St. Luke's Hospital and Onsite Neonatal.

1364.  Defendants St. Luke's Hospital, and Onsite Neonatal coordinated their employee, agent, or assign, Defendant Ms. Cynthia Shultz, MD, towards a narrative that Plaintiff Mrs. Smith was a methamphetamine addict and that Plaintiff Mrs. Smith gave birth to Plaintiff Newborn baby J.A.S. who was also a methamphetamine addict.

1365.  The umbilical cord that connected Plaintiffs' Newborn baby J.A.S. and Mrs. Smith was tested on April 9th, 2021, and was negative for amphetamines and methamphetamines.

1366.  Despite the umbilical cord that connected Plaintiffs' Newborn baby J.A.S. and Mrs. Smith testing negative for illegal drugs, Defendants St. Luke's Hospital and Onsite Neonatal, acting through agent, employee, or assign Defendant Ms. Cynthia Shultz, MD, continued the narrative that Plaintiff Mrs. Smith was a methamphetamine addict and that Plaintiff Mrs. Smith gave birth to Plaintiff Newborn baby J.A.S. who was also a methamphetamine addict.

1367.  Medical records on April 9th, 2021, reflect the statement, "[F]amily was requesting discharge at 12 hours of life."

1368. Mr. and Mrs. Smith requested at approximately 12-hours of Plaintiff Newborn baby J.A.S.'s life that the Smith Family be discharged from Defendant St. Luke's Hospital when practicable, not immediately at 12 hours from birth, as is suggested in the medical records entered by Defendant St. Luke's Hospital agents, employees, and/or assigns.

1369.  Defendants St. Luke's Hospital and Onsite Neonatal through their agents, employees, or assigns, was further attempting to imply that Plaintiff Mrs. Smith was urgently seeking to go home so that she could consume methamphetamine by making the medical records appear that Plaintiff Mrs. Smith quickly sought to reingest methamphetamine by going home as soon as possible after her newborn baby's birth.

1370.  Beginning on April 10th, 2021 the statement, "High probability of life[-]threatening clinical deterioration in infant's condition without treatment," began regularly appearing in medical records.

1371.  Mr. and Mrs. Smith were not ever told by any agent, employee, or assign of Defendants St. Luke's Hospital nor Onsite Neonatal that Plaintiff Newborn baby J.A.S. had a, "High probability of life[-]threatening clinical deterioration…without treatment."

1372.  Despite the accusation of methamphetamine use by Defendants St. Luke's Hospital and Onsite Neonatal and their agents, assigns, or employees, Plaintiff Mrs. Smith was allowed to breastfeed Plaintiff Newborn baby J.A.S.

1373.  Despite Plaintiffs Mrs. Smith and Newborn baby J.A.S. being suspected of methamphetamine addiction, state mandated policies and procedures for methamphetamine withdrawal were not implemented for Plaintiff Newborn baby J.A.S. by Defendants St. Luke's Hospital, Onsite Neonatal, nor any other health provider.

1374.  Notes on medical records by non-radiology experts from April 11th, 2021, stated that, "…upon admission to the NICU [newborn baby J.A.S.] showed hazy lung fields with expansion to 5-9 ribs."

1375.  Radiology indicates in the medical record no "hazy lung fields" or "expansion" into Plaintiff Newborn baby J.A.S.'s lungs.

1376.  Radiology instead indicates in the medical record, "Perhaps minimal asymmetric granular opacity on the right. No consolidation. No discernable pneumothorax or layering pleural effusion on limited supine imaging. Osseous structures appear within normal limits for patient age."

1377.  Upon information and belief, Defendants St. Luke's Hospital and Onsite Neonatal, and other parties named and unnamed in this lawsuit, manipulated the medical records in their own interpretations of the radiologist's report to paint Plaintiff's Newborn baby J.A.S. and Mrs. Smith as methamphetamine addicts by constructing a reason to keep Plaintiff Newborn baby J.A.S. in the hospital against the will and consent of his parents.

1378.  As represented in the medical documentation, beginning on April 10th, 2021, Plaintiff Mrs. Smith was under constant monitoring by Defendants St. Luke's Hospital and Onsite Neonatal for "inappropriate behavior" via their agents, employees, and/or assigns.

1379.  As of April 9th, 2021, Mr. Smith was not allowed to ever be on Defendant St. Luke's Hospital's property at the risk of being arrested.

1380.  As of April 10th, 2021, Plaintiff Mrs. Smith was supervised around the clock by male security guards, even while breastfeeding, and walking to the restroom.

## **Additional Context & The Libelous Statement**

1381.  Upon information and belief, Defendant Ms. Cynthia Shultz, MD supported the hostile atmosphere intentionally created by Defendants St. Luke's Hospital and Onsite Neonatal, against the Plaintiff Smith Family.

1382.  Defendant Ms. Cynthia Shultz, MD, on April 9th, 2021 in Plaintiff Newborn baby J.A.S.'s medical records, under the heading "Quick Note" by Ms. Cynthia Shultz, MD, represented the following, "Dr. Marlino reported that father became agitated and confrontational after learning of the routine report to C&Y for maternal and baby positive UDS screen".

1383.  Ms. Teresa Marlino, MD, on April 9th, 2021, communicated that the "UDS" or "urinary drug screening" that Plaintiffs Mrs. Smith and Newborn baby J.A.S. tested positive for was the illegal and harmful controlled substance methamphetamine.

1384.  Plaintiff Mrs. Smith did not ever test positive for methamphetamine.

1385.  Plaintiff Newborn baby J.A.S. did not ever test positive for methamphetamine.

1386.  There is not any valid reason to place a mother's medical information in her newborn baby's medical records, as that is a violation of the mother's right to medical privacy; each individuals medical records should only represent themselves.

1387.  There is not any valid reason to place false medical information about a postpartum mother in her newborn baby's medical records.

1388.  A likely reason to place false medical information about a mother in her newborn baby's medical records is to attempt to color Plaintiff Mrs. Smith as an illegal methamphetamine user and that by extension her newborn baby as a methamphetamine addict.

### *Libel Per Se II(a)*

1389.  The statement in Plaintiff Newborn baby J.A.S.'s medical records as represented by Defendant Ms. Cynthia Shultz, MD, and ratified with the weight of her position that,

1    "Dr. Marlino reported that father became agitated and confrontational after learning of

2    the routine report to C&Y for maternal and baby positive UDS screen," harmed the

3    reputation of Plaintiffs Mrs. Smith and Newborn baby J.A.S. in the estimation of the

4    community by stating that Plaintiff Mrs. Smith is a user of illegal of methamphetamines

5    and that she and her Plaintiff Newborn baby J.A.S. were addicted to illegal and harmful

6    substances.

7    1390.  The defamatory statement is harmful in character because it states that

8    Defendant Mrs. Smith has abused the illegal and harmful substance of

9    methamphetamine and that she passed that harm onto her child Plaintiff Newborn baby

10   J.A.S.

11   1391.  Defendant Ms. Cynthia Shultz, MD, published the defamatory statement in

12   Plaintiff Newborn baby J.A.S.'s medical records where the statements were read by

13   every medical provider who thereafter consulted Plaintiff Newborn baby J.A.S.'s medical

14   records for an update or history on his status, as well as, other state parties when they

15   became involved in investigating the Smith Family.

16   1392.  Upon information and belief, it can be demonstrated through Defendant

17   testimonies, examinations of medical records, and hospital policies, such as, in-person,

18   around the clock surveillance of a breastfeeding mother by male hospital security

19   officers, that recipients of the publication understood that the meaning of the publication

20   was that Plaintiff Mrs. Smith had ingested illegal methamphetamine and passed that

21   harm onto Plaintiff Newborn baby J.A.S.

22   1393.  Since the defamatory statement is contained within Plaintiff Newborn baby

23   J.A.S.'s medical records, and because Plaintiff Newborn baby J.A.S. is Plaintiff Mrs.

1    Smith's baby, it was clear that the defamatory statement was to be applied to both

2    Plaintiffs Newborn baby J.A.S. and Mrs. Smith.

3    1394.  Harm suffered by the Plaintiffs includes, but is not limited to, a hostile

4    atmosphere, exacerbating Plaintiff's mental health conditions which Defendants St.

5    Luke's Hospital and Onsite Neonatal were aware of, causing a postpartum mother to

6    needlessly suffer without any reasonable amenities when in the NICU, staff ratifying

7    each other's invalid moral positions leading other staff to regard their inappropriate

8    actions with a sense of false righteousness, and Plaintiff Newborn baby J.A.S. being

9    considered abused by his mother through her use of illegal drugs, by Defendants St.

10   Luke's Hospital and Onsite Neonatal through their agent, employee, or assign,

11   Defendant Ms. Cynthia Shultz, MD.

12   1395.  Upon information and belief, Defendants St. Luke's Hospital and Onsite

13   Neonatal, through their agent, employee, or assign, Defendant Ms. Cynthia Shultz, MD,

14   abused her conditionally privileged occasion when as a medical provider with the ability

15   to alter and manipulate medical records, did falsify those records through the published

16   defamatory statement.

17   1396.  Plaintiffs' Newborn baby J.A.S. and Mrs. Smith are private individuals and not

18   public figures.

19   1397.  Since this is a case of a private figure plaintiff redressing issues of private

20   concern, the appropriate standard for this libel claim is one of negligence.

21   1398.  Negligence: (1) Medical providers with the ability to alter medical records are

22   required to maintain true and accurate records.

1399.  Negligence: (2) Medical provider Defendant Ms. Cynthia Shultz, MD did not maintain true and accurate medical records when Defendant Ms. Cynthia Shultz, MD represented in Plaintiff Newborn baby J.A.S.'s medical records that, "Dr. Marlino reported that father became agitated and confrontational after learning of the routine report to C&Y for maternal and baby positive UDS screen".

1400.  Negligence: (3) Upon information and belief, but for the actions of the Defendant attesting to Plaintiff Mrs. Smith as a methamphetamine user, Plaintiff Mrs. Smith would not have suffered the aforementioned harms and indignities mentioned earlier in this allegation of libelous defamation, as well, it is likely that Plaintiff Mrs. Smith would not have had pervasive and injurious inquiries about private family matters by state officials.

1401.  Negligence: (4) Plaintiffs have suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, and injury to their reputations.

1402.  In *libel per se* cases Pennsylvania defamation law considers "Words that on their face and without the aid of extrinsic evidence are recognized as injurious are actionable per se…."[66]

1403.  Upon information and belief, the Defendant Ms. Cynthia Shultz, MD, directly and unequivocally accused Plaintiff Mrs. Smith of being a methamphetamine user in her newborn child's medical records are on their face and without the aid of extrinsic evidence injurious, and actionable for a *libel per se* claim.

---

[66]*Joseph v. Scranton Times L.P.*, 959 A.2d 322, n.23 (Pa. Super. Ct. 2008).

1404.  In *libel pe se* cases, Pennsylvania law observes that, "words imputing a criminal offense, loathsome disease, business misconduct or serious sexual misconduct" will be considered defamatory per se.[67]

1405.  Since Defendant Ms. Cynthia Shultz, MD, directly and unequivocally accused Plaintiff Mrs. Smith of being a methamphetamine user in her newborn child's medical records, and since methamphetamine is an illegal controlled substance, the Defendant imputed a criminal offense, thereby making this an actionable *libel per se* claim.

1406.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of evidence that the Defendants St. Luke's Hospital, and/or Onsite Neonatal supervised Defendant Ms. Cynthia Shultz, MD in connection with this allegation and are therefore liable under a legal theory of respondeat superior.

1407.  Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal, and Defendant Ms. Cynthia Shultz, MD's conduct violated Plaintiffs' rights under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

*Or, In the Alternative,*

*Libel Per Quod II(b)*

1408.  The statement in Plaintiff Mrs. Smith's medical records as represented by Defendant Ms. Cynthia Shultz, MD, "Dr. Marlino reported that father became agitated and confrontational after learning of the routine report to C&Y for maternal and baby positive UDS screen," harmed the reputation of Plaintiffs Mrs. Smith and Newborn baby

---

[67] *Hrishenko v. Coombs*, 2014 Pa. Super. Unpub. LEXIS 880, *9 (Pa. Super. Ct. 2014).

1  J.A.S. in the estimation of the community by representing that Plaintiff Mrs. Smith is a

2  user of illegal of methamphetamines and that she and her Plaintiff son Newborn baby

3  J.A.S. were addicted to illegal and harmful substances.

4  1409.  The defamatory statement is harmful in character because it states that Plaintiff

5  Mrs. Smith has abused the illegal and harmful substance of methamphetamine and that

6  she passed that harm onto her child Plaintiff Newborn baby J.A.S.

7  1410.  Defendant Ms. Cynthia Shultz, MD, published the defamatory statement in

8  Plaintiff Newborn baby J.A.S.'s medical records where the statements were read by

9  every medical provider who thereafter consulted Plaintiff Mrs. Smith's medical records

10  for an update or history on her status, as well as, other state parties when they became

11  involved in investigating the Smith Family.

12  1411.  Upon information and belief, it can be demonstrated through Defendant

13  testimonies, examinations of medical records, and hospital policies, such as, in-person,

14  around the clock surveillance of a breastfeeding mother by hospital security officers,

15  that recipients of the publication understood that the meaning of the publication was that

16  Plaintiff Mrs. Smith had ingested illegal methamphetamine.

17  1412.  Since the defamatory statement is contained within Plaintiff Newborn baby

18  J.A.S.'s medical records, and because Plaintiff Mrs. Smith is the mother of Plaintiff

19  Newborn baby J.A.S. it was clear that the defamatory statements were to be applied to

20  both Plaintiffs Newborn baby J.A.S. and Mrs. Smith.

21  1413.  Harm suffered by the Plaintiffs includes, but is not limited to, a hostile

22  atmosphere, exacerbating Plaintiff's mental health conditions which Defendants St.

23  Luke's Hospital and Onsite Neonatal were aware of, causing a postpartum mother to

1  needlessly suffer without any reasonable amenities when in the NICU, staff ratifying

2  each other's invalid moral positions leading other staff to regard their inappropriate

3  actions with a sense of false righteousness, and Plaintiff Newborn baby J.A.S. being

4  considered abused by his mother through her use of illegal drugs, by Defendants St.

5  Luke's Hospital and  Onsite Neonatal through their agent, employee, or assign,

6  Defendant Ms. Cynthia Shultz, MD.

7  1414.  Upon information and belief, Defendants St. Luke's Hospital and Onsite Neonatal

8  through their agent, employee, or assign, Defendant Ms. Cynthia Shultz, MD, abused

9  her conditionally privileged occasion when as a medical provider with the ability to alter

10  and manipulate medical records, did falsify those records through the published

11  defamatory statement.

12  1415.  Plaintiffs Newborn baby J.A.S. and Mrs. Smith are private individuals and not

13  public figures.

14  1416.  Since this is a case of a private figure plaintiff redressing issues of private

15  concern, the appropriate standard for this libel claim is one of negligence.

16  1417.  Negligence: (1) Medical providers with the ability to alter medical records are

17  required to maintain true and accurate records.

18  1418.  Negligence: (2) Medical provider Defendant Ms. Cynthia Shultz, MD, did not

19  maintain true and accurate medical records when Defendant Ms. Cynthia Shultz, MD,

20  represented in Plaintiff Newborn baby J.A.S.'s medical records that both Plaintiffs

21  Newborn baby J.A.S. and Mrs. Smith tested positive for methamphetamines.

22  1419.  Negligence: (3) Upon information and belief, but for the actions of the Defendant

23  attesting to Plaintiff Mrs. Smith as a methamphetamine user, Plaintiff Mrs. Smith would

1  not have suffered the aforementioned harms and indignities mentioned earlier in this

2  allegation of libelous defamation, as well, it is likely that Plaintiff Mrs. Smith would not

3  have had pervasive and injurious inquiries about private family matters by state officials.

4  1420.  Negligence: (4) Plaintiffs have suffered substantial harm as a result of

5  Defendants' conduct, including but not limited to, emotional and psychological distress,

6  pain and suffering, and injury to their reputations.

7  1421.  In *libel per quod* cases Pennsylvania defamation law considers extrinsic

8  supporting evidence of libelous behavior if the injurious nature of the words is not

9  apparent.[68]

10  1422.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

11  evidence that, through the presentation of medical records, police reports, and other

12  administrative documentation, the libelous statement was not a mere description of the

13  baby or his mother for the medical edification of potential diagnosis concerning Plaintiff

14  Newborn baby J.A.S. or Mrs. Smith, but was instead a statement intended to cast

15  unfounded and harmful aspersions on both Plaintiffs Newborn baby J.A.S. and Mrs.

16  Smith.

17  1423.  Plaintiffs will need to demonstrate necessary innuendo by Defendant Parties.

---

[68]*Joseph*, 959 A.2d at n.23.

1424.  "Innuendo", "define[s] the defamatory meaning which the plaintiff attaches to the words" and "show[s] how they come to have that meaning and how they relate to the plaintiff."[69]

1425.  Methamphetamine is an illegal controlled substance, which has deleterious effects on those that consume it.

1426.  Deleterious effects caused by methamphetamine when consumed by a pregnant mother will likely be passed on to her child in utero via the umbilical cord.

1427.  When Defendant Ms. Cynthia Shultz, MD, represented the libelous statement, adding the weight of the authority of her position to the narrative that Plaintiff Mrs. Smith ingested methamphetamine and passed it along to her Plaintiff son Newborn baby J.A.S., it was to make clear to other medical professionals, administrators, and/or state personnel that Plaintiff Mrs. Smith consumed methamphetamine and that she likely passed on the deleterious effects of methamphetamine use to her child Plaintiff Newborn baby J.A.S.

1428.  The libelous statement relates to the Plaintiffs Newborn baby J.A.S. and Mrs. Smith because the statement is about Plaintiffs Mrs. Smith and Newborn baby J.A.S., and it is in Plaintiff Mrs. Smith's medical records.

1429.  Upon information and belief, Plaintiff can demonstrate by a preponderance of evidence that the Defendants Private Entities St. Luke's Hospital and Onsite Neonatal

---

[69]*Cosgrove Studio & Camera Shop, Inc. v. Pane*, 408 Pa. 314, 319 (Pa. 1962) (citations omitted).

1   supervised Defendant Ms. Cynthia Shultz, MD in connection with this allegation and are

2   therefore liable under a legal theory of respondeat superior.

3   1430.  Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal,

4   and Defendant Ms. Cynthia Shultz, MD's conduct violated Plaintiffs' rights under

5   Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

6                                            *Or, In the Alternative*

7                                            *Libel by Implication II(c)*

8                             **The Libelous Statement & Implication**

9   1431.  Upon information and belief, Defendant Ms. Cynthia Shultz, MD, supported the

10   hostile atmosphere intentionally created by St. Luke's Hospital and Onsite Neonatal

11   against the Plaintiff Smith Family.

12   1432.  Defendant Ms. Cynthia Shultz, MD stated on April 9th, 2021 in Plaintiff newborn

13   baby J.A.S.'s medical records that, "Dr. Marlino reported that father became agitated

14   and confrontational after learning of the routine report to C&Y for maternal and baby

15   positive UDS screen".

16   1433.  Defendant Ms. Teresa Marlino, MD did verbalize to Ms. Cynthia Shultz, MD the

17   aforementioned statement as a matter of facts.

18   1434.  There is not a valid reason to place a mother's medical status in her newborn

19   baby's medical records.

20   1435.  A likely reason to place medical information about a mother in her child's medical

21   records is to attempt to color Plaintiff Mrs. Smith as a potentially illegal

1   methamphetamine user and that by extension her newborn baby is a methamphetamine

2   addict.

3   1436.  The statement in Plaintiff Newborn baby J.A.S.'s medical records as represented

4   by Defendant Ms. Cynthia Shultz, MD, that "Dr. Marlino reported that father became

5   agitated and confrontational after learning of the routine report to C&Y for maternal and

6   baby positive UDS screen," harmed the reputation of Plaintiffs Mrs. Smith and Newborn

7   baby J.A.S. in the estimation of the community by implying that Plaintiff Mrs. Smith is a

8   user of illegal of methamphetamines and that she and her son Plaintiff Newborn baby

9   J.A.S. were addicted to illegal and harmful substances.

10   1437.  The defamatory statement is harmful in character because it implies that Plaintiff

11   Mrs. Smith has abused the illegal and harmful substance of methamphetamine and that

12   she passed that harm onto her child Plaintiff Newborn baby J.A.S.

13   1438.  Defendant Ms. Cynthia Shultz, MD, published the defamatory statement in

14   Plaintiff Newborn baby J.A.S.'s medical records as an addendum where the statements

15   were read by every medical provider who thereafter consulted Plaintiff Newborn baby

16   J.A.S.'s medical records for an update on his status, as well as, other state parties when

17   they became involved in investigating the Smith Family.

18   1439.  Upon information and belief, it can be demonstrated through Defendant

19   testimonies, examinations of medical records, and hospital policies, such as, in-person,

20   around the clock surveillance of a breastfeeding mother by male hospital security

21   officers, that recipients of the publication understood that the meaning of the publication

22   was that Plaintiff Mrs. Smith had ingested illegal methamphetamine.

1440.  Since the defamatory statement is contained within Plaintiff Newborn baby

J.A.S.'s medical records, and because Plaintiff Mrs. Smith is the mother of Plaintiff

Newborn baby J.A.S., it was clear that the defamatory statement was to be applied to

both Plaintiffs Newborn baby J.A.S. and Mrs. Smith.

1441.  Harm suffered by the Plaintiffs includes, but is not limited to, a hostile

atmosphere, exacerbating Plaintiff's mental health conditions which Defendants St.

Luke's Hospital and Onsite Neonatal were aware of, causing a postpartum mother to

needlessly suffer without any reasonable amenities when in the NICU, staff ratifying

each other's invalid moral positions leading other staff to regard their inappropriate

actions with a sense of false righteousness, and Plaintiff Newborn baby J.A.S. being

considered abused by his mother through her use of illegal drugs, by Defendants St.

Luke's Hospital and Onsite Neonatal through their agent, employee, or assign,

Defendant Ms. Cynthia Shultz, MD.

1442.  Upon information and belief, Defendants St. Luke's Hospital and Onsite Neonatal

through their agent, employee, or assign, Defendant Ms. Cynthia Shultz, MD, abused

her conditionally privileged occasion when, as a medical provider with the ability to alter

and manipulate medical records, she did write true statements in those records,

including the published defamatory statement that in their culmination lead to false

assertions about the Plaintiffs.

1443.  Plaintiffs Newborn baby J.A.S. and Mrs. Smith are private individuals and not

public figures.

1444.  Since this is a case of a private figure plaintiff redressing issues of private

concern, the appropriate standard for this libel claim is one of negligence.

1445.  Negligence: (1) Medical providers with the ability to alter medical records are required to maintain medical records that reflect the truth of a matter in both itemized mentions of fact and the totality of what those facts are to represent.

1446.  Negligence: (2) Medical provider Defendant Ms. Cynthia Shultz, MD, did maintain true and accurate medical records when itemized mentions of fact were read in isolation from one another; however, when taken as a totality the facts present the Plaintiffs in a harmful and dishonest light, culminating with when Defendant Ms. Cynthia Shultz, MD, represented in Plaintiff Newborn baby J.A.S.'s medical records that Ms. Marlino, MD, did actually and truthfully make the defamatory statement to Defendant Ms. Cynthia Shultz, MD.

1447.  Negligence: (3) Upon information and belief, but for the actions of the Defendant implying that Plaintiff Mrs. Smith was a methamphetamine user, Plaintiff Mrs. Smith would not have suffered the aforementioned harms and indignities mentioned earlier in this allegation of libelous defamation, as well, it is likely that Plaintiff Mrs. Smith would not have had pervasive and injurious inquiries about private family matters by state officials.

1448.  Negligence: (4) Plaintiffs have suffered substantial harm as a result of Defendant's conduct, including but not limited to, emotional and psychological distress, pain and suffering, and injury to their reputations.

1449.  Libel by Implication occurs when "true facts that in context imply a falsehood."[70]

---

[70]*Dunlap v. Philadelphia Newspapers, Inc.*, 301 Pa. Super. 475, 491 (Pa. Super. Ct. 1982) (emphasis omitted).

1    1450.  In addition, "the literal accuracy of separate statements will not render a

2    communication 'true' where, as here, the implication of the communication as a whole

3    was false."[71]

4    1451.  Upon information and belief, Plaintiffs Newborn baby J.A.S. and Mrs. Smith can

5    demonstrate by a preponderance of the evidence that any one statement in Plaintiff

6    Mrs. Smith's medical records may be true, but the implication of the communications as

7    a whole in Plaintiff Mrs. Smith's medical records is false.

8    1452.  As well, if "the defendant juxtaposes [a] series of fact so as to imply a defamatory

9    connection between them, or [otherwise] creates a defamatory implication…" then a

10   libelous statement by implication is present.[72]

11   1453.  Upon information and belief, Plaintiffs Newborn baby J.A.S. and Mrs. Smith can

12   demonstrate by a preponderance of the evidence that many facts contained within

13   Plaintiff Newborn baby J.A.S.'s medical records juxtapose a series of facts so as to

14   imply a defamatory connection of methamphetamine ingestion by Plaintiff Mrs. Smith,

15   the deleterious effects of which were passed on to Plaintiff newborn baby J.A.S.

16   1454.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

17   evidence that the Defendants St. Luke's Hospital and Onsite Neonatal supervised

18   Defendant Ms. Cynthia Shultz, MD, in connection with this allegation, and are therefore

19   liable under a legal theory of respondeat superior.

---

[71] *Id.* at 493.

[72] *Fanelle v. LoJack Corp.*, 2000 U.S. Dist. LEXIS 17767, *10 (E.D. Pa. Dec. 7, 2000).

1455.  Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal, and Defendant Ms. Cynthia Shultz, MD's conduct violated Plaintiffs' rights under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

**Damages for Libel II(a-c)**

1456.  Plaintiff Mrs. Smith suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully request an amount of $595,000 in compensatory damages per Defendant.

1457.  Given the substantial wealth of the Defendants St. Luke's Hospital, OBHG PA, and Ms. Cynthia Shultz, MD, and therefore, its ability to afford the appropriate training to avoid this egregious violation of the Pennsylvania Statutory Law, and, since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum families, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the imposition of punitive damages on Defendants St. Luke's Hospital, OBHG PA, and Ms. Cynthia Shultz, MD to deter such Defendants from committing to such conduct in the future which violates Commonwealth of Pennsylvania Statutory Law Plaintiffs respectfully request an amount of $10,000,000 in punitive damages per Defendants St. Luke's Hospital, Onsite Neonatal, and Ms. Cynthia Shultz, MD.

1   1458.  In the unlikely event that the jury does not find that Plaintiffs Mrs. Smith and

2   Newborn baby J.A.S. suffered any actual injury despite the deprivation of their statutory

3   law rights, the Plaintiffs respectfully request a nominal judgment of $1.00.

4

5   ## XXIV.    § 42 Pa. C. S. § 8343, Defamation - Libel III

6   Newborn baby J.A.S. and Mrs. Grace Smith v. St. Luke's Hospital, Onsite Neonatal,

7   OBHG PA, Ms. Patricia Bates, CRNP & Mr. Patrick Philpot, DO

8   1459.  Under Pennsylvania defamation law, a communication will be considered

9   defamatory if it "tends so to harm the reputation of [the complaining party] as to lower

10  him in the estimation of the community or to deter third persons from associating or

11  dealing with him."[73]

12  1460.  In order for Plaintiffs to succeed in their claim, they must prove the following

13  elements[74].

14      (1) The defamatory character of the communication;

15      (2) Its publication by the defendant;

16      (3) Its application to the plaintiff;

17      (4) The understanding by the recipient of its defamatory meaning;

---

[73]*MacElree v. Philadelphia Newspapers*, 544 Pa. 117, 124-125 (Pa. 1996) (citations omitted).

[74]*42 Pa.C.S. § 8343(a)(1-7).*

1    (5) The understanding by the recipient of it as intended to be applied to the plaintiff;

2    (6) Special harm resulting to the plaintiff from its publication; and

3    (7) Abuse of a conditionally privileged occasion.

4    1461.  The Pennsylvania Supreme Court has abolished an "actual malice" standard and

5    has shifted the inquiry to whether a plaintiff is a private individual or a public figure or

6    public official.[75]

7    1462.  Pennsylvania has adopted a negligence standard for private figure plaintiff

8    lawsuits regarding issues of private concern.[76]

9    1463.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

10   or obligation recognized by the law, requiring the actor to conform to a certain standard

11   of conduct; (2) a failure to conform to the required standard; (3) a causal connection

12   between the conduct and the resulting injury; and (4) actual loss or damage resulting to

13   the interests of another.[77]

14                                    ***The Context***

---

[75] *Am. Future Sys., Inc. v. Better Bus. Bureau*, 592 Pa. 66, 82-83 (Pa. 2007). However, demonstrations of actual malice on the part of the defendant can lead to wider array of potential damages.

[76] *Wilson v. Slatalla*, 970 F. Supp. 405, 414 (E.D. Pa. 1997).

[77] *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1464. Defendants St. Luke's Hospital and Onsite Neonatal, among other parties named and unnamed in this lawsuit, intentionally created an atmosphere hostile to the Smith Family, including Plaintiffs Newborn baby J.A.S. and Mrs. Smith.

1465. Defendants Ms. Patricia Bates, CRNP, and Mr. Patrick Philpot, DO supported the hostile atmosphere intentionally created by Defendants St. Luke's Hospital and Onsite Neonatal.

1466. Defendants St. Luke's Hospital and Onsite Neonatal coordinated their employees, agents, or assigns, including Defendants Ms. Patricia Bates, CRNP, and Mr. Patrick Philpot, DO, towards a narrative that Plaintiff Mrs. Smith had ingested methamphetamine and that Plaintiff Mrs. Smith gave birth to Plaintiff newborn baby J.A.S. who also suffered the deleterious effects of methamphetamine ingestion by Plaintiff Mrs. Smith.

1467. The umbilical cord that connected Plaintiffs Newborn baby J.A.S. and Mrs. Smith was tested on April 9th, 2021, and was negative for amphetamines and methamphetamines.

1468. Despite the umbilical cord that connected Plaintiffs Newborn baby J.A.S. and Mrs. Smith testing negative for illegal drugs, Defendants St. Luke's Hospital and Onsite Neonatal, acting through agents, employees, or assigns Defendants Ms. Patricia Bates, CRNP, and Mr. Patrick Philpot, DO, continued the narrative that Plaintiff Mrs. Smith was a methamphetamine user and that Plaintiff Mrs. Smith gave birth to Plaintiff Newborn baby J.A.S. who also suffered the deleterious effects of methamphetamine ingestion by Plaintiff Mrs. Smith.

1469.  Medical records on April 9th, 2021, reflect the statement, "[F]amily was requesting discharge at 12 hours of life."

1470.  Mr. and Mrs. Smith requested at approximately 12-hours of Plaintiff newborn baby J.A.S.'s life that the Smith Family be discharged from Defendant St. Luke's Hospital when practicable, not immediately at 12 hours from birth, as is suggested in the medical records entered by Defendant St. Luke's Hospital agents, employees, and/or assigns.

1471.  Defendants St. Luke's Hospital and Onsite Neonatal, through their agents, employees, or assigns, was further attempting to imply that Plaintiff Mrs. Smith was urgently seeking to go home so that Plaintiff could consume methamphetamine by making the medical records appear that Plaintiff Mrs. Smith quickly sought to reingest methamphetamine by going home as soon as possible after her newborn baby's birth.

1472.  Beginning on April 10th, 2021 the statement, "High probability of life[-]threatening clinical deterioration in infant's condition without treatment," began regularly appearing in medical records.

1473.  Plaintiffs Mr. and Mrs. Smith were not ever told by any agent, employee, or assign of Defendants St. Luke's Hospital or Onsite Neonatal that Plaintiff Newborn baby J.A.S. had a, "High probability of life[-]threatening clinical deterioration…without treatment."

1474.  Despite the accusation of methamphetamine use by Defendants St. Luke's Hospital and Onsite Neonatal and their agents, assigns, or employees, Plaintiff Mrs. Smith was allowed to breastfeed Plaintiff Newborn baby J.A.S.

1475.  Despite Plaintiffs Mrs. Smith and Newborn baby J.A.S. being suspected of methamphetamine addiction, state mandated policies and procedures for methamphetamine withdrawal were not implemented for Plaintiff Newborn baby J.A.S. by Defendants St. Luke's Hospital, Onsite Neonatal, nor any other health provider.

1476.  Notes on medical records by non-radiology experts from April 11th, 2021, stated that, "…upon admission to the NICU [Plaintiff newborn baby J.A.S.] showed hazy lung fields with expansion to 5-9 ribs."

1477.  Radiology indicates in the medical record no "hazy lung fields" or "expansion" into Plaintiff Newborn baby J.A.S.'s lungs.

1478.  Radiology, instead indicates in the medical record, "Perhaps minimal asymmetric granular opacity on the right. No consolidation. No discernable pneumothorax or layering pleural effusion on limited supine imaging. Osseous structures appear within normal limits for patient age."

1479.  Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal, and other parties named and unnamed in this lawsuit, manipulated the medical records in their own interpretations of the radiologist's report to paint Plaintiffs Newborn baby J.A.S. and Mrs. Smith as methamphetamine addicts by constructing a reason to keep Plaintiff newborn baby J.A.S. in the hospital against the will and consent of Mr. and Mrs. Smith.

1480.  As represented in the medical documentation, beginning on April 10th, 2021, Plaintiff Mrs. Smith was under constant monitoring by all Defendants St. Luke's Hospital and Onsite Neonatal for "inappropriate behavior" via their agents, employees, and/or assigns.

1481.  As of April 9th, 2021, Plaintiff Mr. Smith was not allowed to ever be on Defendant

St. Luke's Hospital's property at the consequence of being arrested.

1482.  As of April 10th, 2021, Plaintiff Mrs. Smith was supervised around the clock by

Defendant St. Luke's Hospital male security guards, even while breastfeeding, and

walking to the restroom.

## The Libelous Statement

1483.  Defendants Ms. Patricia Bates, CRNP, and Mr. Patrick Philpot, DO supported the

hostile atmosphere intentionally created by Defendants St. Luke's Hospital and Onsite

Neonatal against the Plaintiff Smith Family.

1484.  Defendant Ms. Patricia Bates, CRNP stated on April 12th, 2021 in Plaintiff

Newborn baby J.A.S.'s medical records, "Maternal UDS positive for

methamphetamines".

1485.  Defendant Mr. Patrick Philpot, DO, on April 12th, 2021, electronically signed

Defendant Ms. Bates's representation in the medical records that Plaintiff Mrs. Smith

tested positive for methamphetamines thereby adding the weight of his position to the

attestations represented in the medical records by Defendant Ms. Bates.

1486.  Plaintiff Mrs. Smith did not ever test positive for methamphetamines.

1487.  There is not any valid reason to place a mother's medical information in her

newborn child's medical records, as that is a violation of the mother's right to medical

privacy; each individuals medical records should only represent themselves.

1488.  There is not any valid reason to place false medical information about a mother

in her newborn child's medical records.

1489.  A likely reason to place false medical information about a newborn child's mother in that child's medical records is to attempt to color Plaintiff Mrs. Smith as an illegal methamphetamine user and by extension the deleterious effects of methamphetamine use were passed on to her newborn baby.

*Libel Per Se III(a)*

1490.  The statement in Plaintiff Newborn baby J.A.S.'s medical records as represented by Defendant Ms. Patricia Bates, CRNP, and ratified with the weight of authority by Defendant Mr. Patrick Philpot, DO, that "Maternal UDS positive for methamphetamines," harmed the reputation of Plaintiffs Mr. Smith and Newborn baby J.A.S. in the estimation of the community by stating that Plaintiff Mrs. Smith is a user of illegal of methamphetamines and that she and her Plaintiff son Newborn child J.A.S. were suffering from the deleterious effects of illegal and harmful substances.

1491.  The defamatory statement is harmful in character because it states that Plaintiff Mrs. Smith has abused the illegal and harmful substance of methamphetamine and that she passed that harm onto her child Plaintiff Newborn baby J.A.S.

1492.  Defendants Patricia Bates, CRNP, and, Mr. Patrick Philpot, DO, published the defamatory statement in Plaintiff Newborn baby J.A.S.'s medical records where the statements were read by every medical provider who thereafter consulted Plaintiff Newborn baby J.A.S.'s medical records for an update on his status, as well as, other state parties when they became involved in investigating the Smith Family.

1493.  Upon information and belief, it can be demonstrated through Defendant testimonies, examinations of medical records, and hospital policies, such as, in-person,

1   around the clock surveillance of a breastfeeding mother by male hospital security

2   officers, that recipients of the publication understood that the meaning of the publication

3   was that Plaintiff Mrs. Smith had ingested illegal methamphetamines.

4   1494.  Since the defamatory statement is contained within Plaintiff Newborn baby

5   J.A.S.'s medical records, and because Plaintiff Mrs. Smith is the mother of Plaintiff

6   Newborn baby J.A.S. it was clear that the defamatory statement was to be applied to

7   both Plaintiffs Newborn baby J.A.S. and Mrs. Smith.

8   1495.  Harm suffered by the Plaintiffs includes, but is not limited to, a hostile

9   atmosphere, exacerbating Plaintiff's mental health conditions which Defendants St.

10  Luke's Hospital and Onsite Neonatal were aware of, causing a postpartum mother to

11  needlessly suffer without any reasonable amenities when in the NICU, staff ratifying

12  each other's invalid moral positions leading other staff to regard their inappropriate

13  actions with a sense of false righteousness, and Plaintiff Newborn baby J.A.S. being

14  considered abused by his mother through her use of illegal drugs, by Defendants St.

15  Luke's Hospital and Onsite Neonatal through their agents, employees, or assigns,

16  Defendants Ms. Patricia Bates, CRNP, and, Mr. Patrick Philpot, DO.

17  1496.  Upon information and belief, Defendants St. Luke's Hospital and Onsite

18  Neonatal, through their agents, employees, or assigns, Defendants Ms. Patricia Bates,

19  CRNP, and, Mr. Patrick Philpot, DO, abused their conditionally privileged occasion

20  when as medical providers with the ability to alter and manipulate medical records, did

21  falsify those records through the published defamatory statement.

22  1497.  Plaintiffs Newborn baby J.A.S. and Mrs. Smith are private individuals and not

23  public figures.

1498.  Since this is a case of a private figure plaintiff redressing issues of private concern, the appropriate standard for this libel claim is one of negligence.

1499.  Negligence: (1) Medical providers with the ability to alter medical records are required to maintain true and accurate records.

1500.  Negligence: (2) Defendant medical providers Ms. Patricia Bates, CRNP, and, Mr. Patrick Philpot, DO did not maintain true and accurate medical records when Defendant Ms. Bates, CRNP represented in Plaintiff Newborn baby J.A.S.'s medical records that Plaintiff Mrs. Smith "…tested positive for methamphetamines," and then Defendant Mr. Philpot, DO certified Defendant Ms. Bates, CRNP's representation in Plaintiff Newborn baby J.A.S.'s medical records.

1501.  Negligence: (3) Upon information and belief, but for the actions of the Defendants attesting to Plaintiff Mrs. Smith as a methamphetamine user, Mrs. Smith would not have suffered the aforementioned harms and indignities mentioned earlier in this allegation of libelous defamation, as well, it is likely that Mrs. Smith would not have had pervasive and injurious inquiries about private family matters by state officials.

1502.  Negligence: (4) Plaintiffs have suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, and injury to their reputations.

1503.  In *libel per se* cases Pennsylvania defamation law considers "Words that on their face and without the aid of extrinsic evidence are recognized as injurious are actionable per se…."[78]

---

[78]*Joseph v. Scranton Times L.P.*, 959 A.2d 322, n.23 (Pa. Super. Ct. 2008).

1504.  Upon information and belief, Defendants' directly and unequivocally accused Plaintiff Mrs. Smith of being a methamphetamine user in her newborn child's medical records which are on their face and without the aid of extrinsic evidence injurious, and actionable for a *libel per se* claim.

1505.  In *libel pe se* cases, Pennsylvania law observes that, "words imputing a criminal offense, loathsome disease, business misconduct or serious sexual misconduct" will be considered defamatory per se.[79]

1506.  Since Defendants' directly and unequivocally accused Plaintiff Mrs. Smith of being a methamphetamine user in her newborn child's medical records, and since methamphetamine is an illegal controlled substance, the Defendants' imputed a criminal offense, thereby making this an actionable *libel per se* claim.

1507.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of evidence that the Defendants St. Luke's Hospital and/or Onsite Neonatal supervised Ms. Patricia Bates, CRNP, and, Mr. Patrick Philpot, DO in connection with this allegation and are therefore liable under a legal theory of respondeat superior.

1508.  Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal, and Defendants Ms. Patricia Bates, CRNP, and, Mr. Patrick Philpot, DO's conduct violated Plaintiffs' rights under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

*Or, In the Alternative,*

*<u>Libel Per Quod III(b)</u>*

---

[79]*Hrishenko v. Coombs*, 2014 Pa. Super. Unpub. LEXIS 880, *9 (Pa. Super. Ct. 2014).

1509.  The statement in Plaintiff Newborn baby J.A.S.'s medical records as represented

by Defendant Ms. Patricia Bates, CRNP, and ratified with the weight of authority by

Defendant Mr. Patrick Philpot, DO, that "Maternal UDS positive for methamphetamines,"

harmed the reputation of Plaintiffs Mr. Smith and Newborn baby J.A.S. in the estimation

of the community by stating that Plaintiff Mrs. Smith is a user of illegal of

methamphetamines and that she and her Plaintiff son Newborn child J.A.S. suffered

from the deleterious effects of illegal and harmful substances.

1510.  The defamatory statement is harmful in character because it states that Plaintiff

Mrs. Smith had ingested the illegal and harmful substance methamphetamine and that

she passed the deleterious effects onto her child Plaintiff Newborn baby J.A.S., who

became supposed to be a "meth baby".

1511.  Defendants Patricia Bates, CRNP, and, Mr. Patrick Philpot, DO, published the

defamatory statement in Plaintiff Newborn baby J.A.S.'s medical records where the

statements were read by every medical provider who thereafter consulted Plaintiff

Newborn baby J.A.S.'s medical records for an update on his status, as well as, other

state parties when they became involved in investigating the Smith Family.

1512.  Upon information and belief, it can be demonstrated through Defendant

testimonies, examinations of medical records, and hospital policies, such as, in-person,

around the clock surveillance of a breastfeeding mother by male hospital security

officers, that recipients of the publication understood that the meaning of the publication

was that Plaintiff Mrs. Smith had ingested illegal methamphetamines.

1513.  Since the defamatory statement is contained within Plaintiff Newborn baby

J.A.S.'s medical records, and because Plaintiff Mrs. Smith is the mother of Plaintiff

1   Newborn baby J.A.S. it was clear that the defamatory statement was to be applied to

2   both Plaintiffs Newborn baby J.A.S. and Mrs. Smith.

3   1514.  Harm suffered by the Plaintiffs includes, but is not limited to, a hostile

4   atmosphere, exacerbating Plaintiff's mental health conditions which Defendants St.

5   Luke's Hospital and Onsite Neonatal were aware of, causing a postpartum mother to

6   needlessly suffer without any reasonable amenities when in the NICU, staff ratifying

7   each other's invalid moral positions leading other staff to regard their inappropriate

8   actions with a sense of false righteousness, and Plaintiff Newborn baby J.A.S. being

9   considered to be suffering the deleterious effects of his mother's illegal drug use, by

10  Defendants St. Luke's Hospital and Onsite Neonatal through their agents, employees,

11  or assigns, Defendants Ms. Patricia Bates, CRNP, and, Mr. Patrick Philpot, DO.

12  1515.  Upon information and belief, Defendants St. Luke's Hospital and Onsite

13  Neonatal, through their agents, employees, or assigns, Defendants Ms. Patricia Bates,

14  CRNP, and, Mr. Patrick Philpot, DO, abused their conditionally privileged occasion

15  when as medical providers with the ability to alter and manipulate medical records, did

16  falsify those records through the published defamatory statement.

17  1516.  Plaintiffs Newborn baby J.A.S. and Mrs. Smith are private individuals and not

18  public figures.

19  1517.  Since this is a case of a private figure plaintiff redressing issues of private

20  concern, the appropriate standard for this libel claim is one of negligence.

21  1518.  Negligence: (1) Medical providers with the ability to alter medical records are

22  required to maintain true and accurate records.

1519.  Negligence: (2) Defendant medical providers Ms. Patricia Bates, CRNP, and, Mr. Patrick Philpot, DO did not maintain true and accurate medical records when Defendant Ms. Bates, CRNP represented in Plaintiff Newborn baby J.A.S.'s medical records that Plaintiff Mrs. Smith "…tested positive for methamphetamines," and then Defendant Mr. Philpot, DO certified Defendant Ms. Bates, CRNP's representation in Plaintiff Newborn baby J.A.S.'s medical records.

1520.  Negligence: (3) Upon information and belief, but for the actions of the Defendants attesting to Plaintiff Mrs. Smith as a methamphetamine user, Plaintiff Mrs. Smith would not have suffered the aforementioned harms and indignities mentioned earlier in this allegation of libelous defamation, as well, it is likely that Plaintiff Mrs. Smith would not have had pervasive and injurious inquiries about private family matters by state officials.

1521.  Negligence: (4) Plaintiffs have suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, and injury to their reputations.

1522.  In *libel per quod* cases Pennsylvania defamation law considers extrinsic supporting evidence of libelous behavior if the injurious nature of the words is not apparent.[80]

1523.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of evidence that through the presentation of medical records, police reports, and other administrative documentation that the libelous statement was not a mere description of the mother for the medical edification of potential diagnosis concerning Plaintiff

---

[80]Joseph, 959 A.2d at n.23.

1   Newborn baby J.A.S., but was instead a statement intended to cast unfounded and

2   harmful aspersions on both Plaintiffs Newborn baby J.A.S. and Mrs. Smith.

3   1524.  Plaintiffs will need to demonstrate necessary innuendo by Defendant Parties.

4   1525.  "Innuendo", "define[s] the defamatory meaning which the plaintiff attaches to the

5   words" and "show[s] how they come to have that meaning and how they relate to the

6   plaintiff."[81]

7   1526.  Methamphetamine is an illegal controlled substance, which has deleterious

8   effects on those that consume it.

9   1527.  Deleterious effects caused by methamphetamine when consumed by a pregnant

10  mother will likely be passed on to her child in utero via the umbilical cord.

11  1528.  When Defendants Ms. Patricia Bates, CRNP, represented the libelous statement,

12  and Mr. Patrick Philpot, DO certified that statement with the weight of the authority of his

13  position it was to make clear to other medical professionals, administrators, and/or state

14  personnel that Plaintiff Mrs. Smith consumed methamphetamine and that she likely

15  passed on the deleterious effects of methamphetamine use to her child Plaintiff

16  Newborn baby J.A.S.

17  1529.  The libelous statement relates to the Plaintiffs newborn baby J.A.S. and Mrs.

18  Smith because the statement is about Plaintiff Mrs. Smith, and it is in Plaintiff Newborn

19  baby J.A.S.'s medical records.

---

[81] *Cosgrove Studio & Camera Shop, Inc. v. Pane*, 408 Pa. 314, 319 (Pa. 1962) (citations
omitted).

1530.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of evidence that the Defendants St. Luke's Hospital and/or Onsite Neonatal supervised Ms. Patricia Bates, CRNP, and, Mr. Patrick Philpot, DO in connection with this allegation and are therefore liable under a legal theory of respondeat superior.

1531.  Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal, and Defendants Ms. Patricia Bates, CRNP, and, Mr. Patrick Philpot, DO's conduct violated Plaintiffs' rights under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

*Or, In the Alternative*

*Libel by Implication III(c)*

***Additional Context***

1532.  On the evening of April 10th, 2021, before Plaintiff Mrs. Smith was reunited with Plaintiff Newborn baby J.A.S., Defendant Mr. Patrick Philpot, DO created an addendum to Plaintiff Newborn baby J.A.S.'s medical records.

1533.  The addendum written by Defendant Mr. Patrick Philpot, DO is as follows:

> "Ongoing social concerns discussed with NICU medical director, Dr. Costello, and Charge RN Mary following input from SL on-call CM. Dr. Costello spoke with St. Luke's legal representative, Steve, who has been involved with the case. Per legal, FOB is unable to visit patient as he was given a no-trespassing order by Bethlehem Township police yesterday. As mother has been appropriate throughout the day and has not been involved in legal actions, per Steve in SL legal, mother may visit with supervision.  SLRA hospital supervisor spoke with charge RN Mary as

1    well as Darla Frack, hospital administrator, and plan going forward will be

2    that if mother visits, she can be allowed into the NICU with security

3    supervision within the baby's NICU pod.  MOB may only visit alone per St.

4    Luke's visitation policy allowing only parents to visit and FOB may not

5    visit.  If MOB's behavior is inappropriate, she will not be allowed to visit the

6    NICU until the baby is cleared for discharge by CYS."

## The Libelous Statement & Implication

8    1534.  Defendant Mr. Patrick Philpot, DO supported the hostile atmosphere intentionally

9    created by Defendants St. Luke's Hospital and Onsite Neonatal against the Plaintiff

10   Smith Family.

11   1535.  Defendant Mr. Patrick Philpot, DO stated on April 10th, 2021 in Plaintiff Newborn

12   baby J.A.S.'s medical records, "If MOB's behavior is inappropriate, she will not be

13   allowed to visit the NICU until the baby is cleared for discharge by CYS".

14   1536.  Plaintiff Mrs. Smith was not ever told by any party that her behavior was being

15   monitored, nor what appropriate versus inappropriate behavior consists of.

16   1537.  There is not any valid reason to place a mother's behavioral status in her

17   newborn child's medical records.

18   1538.  A likely reason to place behavioral status information about a newborn child's

19   mother in that child's medical records is to attempt to color Plaintiff Mrs. Smith as a

20   potentially irrational illegal methamphetamine user and that by extension her newborn

21   baby suffered from the deleterious effects of the methamphetamine ingestion.

1539.  The statement in Plaintiff Newborn baby J.A.S.'s medical records as represented by Defendant Mr. Patrick Philpot, DO, that "If MOB's behavior is inappropriate, she will not be allowed to visit the NICU until the baby is cleared for discharge by CYS," harmed the reputation of Plaintiffs Mr. Smith and Newborn baby J.A.S. in the estimation of the community by implying that Plaintiff Mrs. Smith is an irrational user of illegal of methamphetamines and that she and her Plaintiff son Newborn child J.A.S. suffered from the deleterious effects of illegal and harmful substances.

1540.  The defamatory statement is harmful in character because it implies that Plaintiff Mrs. Smith is an irrational decision maker who has ingested the illegal and harmful substance of methamphetamine and that she passed that harm onto her child Plaintiff Newborn baby J.A.S., who became supposed to be a "meth baby".

1541.  Defendant Mr. Patrick Philpot, DO, published the defamatory statement in Plaintiff Newborn baby J.A.S.'s medical records as an addendum where the statements were read by every medical provider who thereafter consulted Plaintiff Newborn baby J.A.S.'s medical records for an update on his status, as well as, other state parties when they became involved in investigating the Smith Family.

1542.  Upon information and belief, it can be demonstrated through Defendant testimonies, examinations of medical records, and hospital policies, such as, in-person, around the clock surveillance of a breastfeeding mother by male hospital security officers, that recipients of the publication understood that the meaning of the publication was that Plaintiff Mrs. Smith had ingested illegal methamphetamine.

1543.  Since the defamatory statement is contained within Plaintiff Newborn baby J.A.S.'s medical records, and because Plaintiff Mrs. Smith is the mother of Plaintiff

1   Newborn baby J.A.S. it was clear that the defamatory statement was to be applied to

2   both Plaintiffs Newborn baby J.A.S. and Mrs. Smith.

3   1544.  Harm suffered by the Plaintiffs includes, but is not limited to, a hostile

4   atmosphere, exacerbating Plaintiff's mental health conditions which Defendants St.

5   Luke's Hospital and Onsite Neonatal were aware of, causing a postpartum mother to

6   needlessly suffer without any reasonable amenities when in the NICU, staff ratifying

7   each other's invalid moral positions leading other staff to regard their inappropriate

8   actions with a sense of false righteousness, and Plaintiff Newborn baby J.A.S. being

9   considered abused by his mother through her use of illegal drugs, by Defendants St.

10  Luke's Hospital and Onsite Neonatal through their agent, employee, or assign,

11  Defendant Mr. Patrick Philpot, DO.

12  1545.  Upon information and belief, Defendants St. Luke's Hospital and Onsite

13  Neonatal, through their agent, employee, or assign, Defendant Mr. Patrick Philpot, DO,

14  abused his conditionally privileged occasion when as a medical provider with the ability

15  to alter and manipulate medical records, did write true statements in those records,

16  including the published defamatory statement.

17  1546.  Plaintiffs Newborn baby J.A.S. and Mrs. Smith are private individuals and not

18  public figures.

19  1547.  Since this is a case of a private figure plaintiff redressing issues of private

20  concern, the appropriate standard for this libel claim is one of negligence.

21  1548.  Negligence: (1) Medical providers with the ability to alter medical records are

22  required to maintain medical records that reflect the truth of a matter in both itemized

23  mentions of fact and the totality of what those facts are to represent.

1549. Negligence: (2) Defendant medical provider Defendant Mr. Patrick Philpot, DO did maintain true and accurate medical records when itemized mentions of fact were read in isolation from one another; however, when taken as a totality the facts present the Plaintiffs in a harmful and dishonest light, culminating with when Defendant Mr. Patrick Philpot, DO represented in Plaintiff Newborn baby J.A.S.'s medical records that Plaintiff Mrs. Smith's behavior was to be monitored and that she could and should be removed from the property at Defendant St. Luke's Hospital's because of implied 'inappropriate behavior'.

1550. Negligence: (3) Upon information and belief, but for the actions of the Defendant implying that Plaintiff Mrs. Smith was a methamphetamine user, Plaintiff Mrs. Smith would not have suffered the aforementioned harms and indignities mentioned earlier in this allegation of libelous defamation, as well, it is likely that Plaintiff Mrs. Smith would not have had pervasive and injurious inquiries about private family matters by state officials.

1551. Negligence: (4) Plaintiffs have suffered substantial harm as a result of Defendant's conduct, including but not limited to, emotional and psychological distress, pain and suffering, and injury to their reputations.

1552. Libel by Implication occurs when "true facts that in context imply a falsehood."[82]

---

[82]*Dunlap v. Philadelphia Newspapers, Inc.*, 301 Pa. Super. 475, 491 (Pa. Super. Ct. 1982) (emphasis omitted).

1   1553.  In addition, "the literal accuracy of separate statements will not render a

2   communication 'true' where, as here, the implication of the communication as a whole

3   was false."[83]

4   1554.  Upon information and belief, Plaintiffs Newborn baby J.A.S. and Mrs. Smith can

5   demonstrate by a preponderance of the evidence that any one statement in Plaintiff

6   Newborn baby J.A.S.'s medical records may be true, but the implication of the

7   communications as a whole in Plaintiff Newborn baby J.A.S.'s medical records is false.

8   1555.  As well, if "the defendant juxtaposes [a] series of fact so as to imply a defamatory

9   connection between them, or [otherwise] creates a defamatory implication…" then a

10  libelous statement by implication is present.[84]

11  1556.  Upon information and belief, Plaintiffs Newborn baby J.A.S. and Mrs. Smith can

12  demonstrate by a preponderance of the evidence that many facts contained within

13  Plaintiff Newborn baby J.A.S.'s medical records juxtapose a series of facts so as to

14  imply a defamatory connection of methamphetamine ingestion by Plaintiff Mrs. Smith,

15  the deleterious effects of which were passed on to Plaintiff Newborn baby J.A.S.

16  1557.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

17  evidence that the Defendants Private Entities St. Luke's Hospital and/or Onsite

18  Neonatal supervised Mr. Patrick Philpot, DO, in connection with this allegation and are

19  therefore liable under a legal theory of respondeat superior.

---

[83]*Id.* at 493.

[84]*Fanelle v. LoJack Corp.*, 2000 U.S. Dist. LEXIS 17767, *10 (E.D. Pa. Dec. 7, 2000).

1558.  Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal,

and Defendants Ms. Patricia Bates, CRNP, and, Mr. Patrick Philpot, DO's conduct

violated Plaintiffs' rights under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

**Damages for Libel III(a-c)**

1559.  Plaintiff Mrs. Smith suffered substantial harm as a result of Defendants' conduct,

including but not limited to, emotional and psychological distress, pain and suffering,

fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate

compensatory damages to account for PTSD therapies and other related treatments as

they have been and will continue to be necessary; Plaintiffs respectfully request an

amount of $595,000 in compensatory damages per Defendant.

1560.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

Neonatal, Ms. Patricia Bates, CRNP, and, Mr. Patrick Philpot, DO, and therefore, their

ability to afford the appropriate training to avoid this egregious violation of the

Pennsylvania Statutory Law, and, since harm was actually caused to the current Plaintiff

Smith Family, and since harm is likely to continue to harm future postpartum families,

and because the acts of the Defendants and their agents, assigns, or employees

callously disregarded the Plaintiff's rights in a reckless and wanton manner, the

Plaintiffs respectfully request the imposition of punitive damages on Defendants St.

Luke's Hospital, Onsite Neonatal, Ms. Patricia Bates, CRNP, and, Mr. Patrick Philpot,

DO to deter such Defendants from committing to such conduct in the future which

violates Commonwealth of Pennsylvania Statutory Law Plaintiffs respectfully request an

amount of $1,000,000 in punitive damages per Defendant Ms. Patricia Bates, CRNP;

1  $5,000,000 per Defendant Mr. Patrick Philpot, DO; and $10,000,000 per Defendants

2  Luke's Hospital, Onsite Neonatal, and OBHG PA.

3  1561.  In the unlikely event that the jury does not find that Plaintiffs Mrs. Smith and

4  Newborn baby J.A.S. suffered any actual injury despite the deprivation of their statutory

5  law rights, the Plaintiffs respectfully request a nominal judgment of $1.00.

## XXV.   § 42 Pa. C. S. § 8343, Defamation - Libel IV

### Newborn baby J.A.S. and Mrs. Grace Smith v. St. Luke's Hospital, Onsite Neonatal,

### Ms. Chaminie Wheeler, DO, & Mr. Gilberto I. Santiago, MD

9  1562.  Under Pennsylvania defamation law, a communication will be considered

10  defamatory if it "tends so to harm the reputation of [the complaining party] as to lower

11  him in the estimation of the community or to deter third persons from associating or

12  dealing with him."[85]

13  1563.  In order for Plaintiffs to succeed in their claim, they must prove the following

14  elements[86].

15    (1) The defamatory character of the communication;

16    (2) Its publication by the defendant;

17    (3) Its application to the plaintiff;

---

[85]*MacElree v. Philadelphia Newspapers*, 544 Pa. 117, 124-125 (Pa. 1996) (citations omitted).

[86]*42 Pa.C.S. § 8343(a)(1-7).*

1    (4) The understanding by the recipient of its defamatory meaning;

2    (5) The understanding by the recipient of it as intended to be applied to the plaintiff;

3    (6) Special harm resulting to the plaintiff from its publication; and

4    (7) Abuse of a conditionally privileged occasion.

5    1564.  The Pennsylvania Supreme Court has abolished an "actual malice" standard and

6    has shifted the inquiry to whether a plaintiff is a private individual or a public figure or

7    public official.[87]

8    1565.  Pennsylvania has adopted a negligence standard for private figure plaintiff

9    lawsuits regarding issues of private concern.[88]

10   1566.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

11   or obligation recognized by the law, requiring the actor to conform to a certain standard

12   of conduct; (2) a failure to conform to the required standard; (3) a causal connection

13   between the conduct and the resulting injury; and (4) actual loss or damage resulting to

14   the interests of another.[89]

15                                    ***The Context***

---

[87] *Am. Future Sys., Inc. v. Better Bus. Bureau*, 592 Pa. 66, 82-83 (Pa. 2007). However, demonstrations of actual malice on the part of the plaintiff can lead to wider array of potential damages.

[88] *Wilson v. Slatalla*, 970 F. Supp. 405, 414 (E.D. Pa. 1997).

[89] *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1567.  Defendants St. Luke's Hospital and Onsite Neonatal, among other parties named and unnamed in this lawsuit, intentionally created an atmosphere hostile to the Smith Family, including Plaintiffs Newborn baby J.A.S. and Mrs. Smith.

1568.  Defendants Ms. Chaminie Wheeler, DO, and Mr. Gilberto I. Santiago, MD, supported the hostile atmosphere intentionally created by Defendants St. Luke's Hospital and Onsite Neonatal.

1569.  Defendants St. Luke's Hospital and Onsite Neonatal coordinated their employees, agents, or assigns, including Defendants Ms. Chaminie Wheeler, DO, and Mr. Gilberto I. Santiago, MD, towards a narrative that Plaintiff Mrs. Smith ingested methamphetamine and that Plaintiff Mrs. Smith gave birth to Plaintiff Newborn baby J.A.S. who also suffered from the deleterious effects of methamphetamine.

1570.  The umbilical cord that connected Plaintiffs Newborn baby J.A.S. and Mrs. Smith was tested on April 9th, 2021, and was negative for amphetamines and methamphetamines.

1571.  Despite the umbilical cord that connected Plaintiffs Newborn baby J.A.S. and Mrs. Smith testing negative for illegal drugs, Defendants St. Luke's Hospital and Onsite Neonatal, acting through agents, employees, or assigns Defendants Ms. Chaminie Wheeler, DO, and Mr. Gilberto I. Santiago, MD, continued the narrative that Plaintiff Mrs. Smith ingested methamphetamine and that Plaintiff Mrs. Smith gave birth to Plaintiff Newborn baby J.A.S. who suffered the deleterious effects of methamphetamine use.

1572.  Medical records on April 9th, 2021, reflect the statement, "[F]amily was requesting discharge at 12 hours of life."

1573.  Plaintiffs Mr. and Mrs. Smith requested at approximately 12-hours of Plaintiff Newborn baby J.A.S.'s life that the Smith Family be discharged from Defendant St. Luke's Hospital when practicable, not immediately at 12 hours from birth, as is suggested in the medical records entered by Defendant St. Luke's Hospital agents, employees, and/or assigns.

1574.  Defendant St. Luke's Hospital and Onsite Neonatal, through their agents, employees, or assigns, was further attempting to imply that Plaintiff Mrs. Smith was urgently seeking to go home so that she could consume methamphetamine by making the medical records appear that Plaintiff Mrs. Smith quickly sought to reingest methamphetamine by going home as soon as possible after her newborn baby's birth.

1575.  Beginning on April 10th, 2021 the statement, "High probability of life[-]threatening clinical deterioration in infant's condition without treatment," began regularly appearing in medical records.

1576.  Mr. and Mrs. Smith were not ever told by any agent, employee, or assign of Defendants St. Luke's Hospital or Onsite Neonatal that Plaintiff Newborn baby J.A.S. had a, "High probability of life[-]threatening clinical deterioration…without treatment."

1577.  Despite the accusation of methamphetamine use by Defendants St. Luke's Hospital and Onsite Neonatal and their agents, assigns, or employees, Plaintiff Mrs. Smith was allowed to breastfeed Plaintiff Newborn baby J.A.S.

1578.  Despite Plaintiffs Mrs. Smith and Newborn baby J.A.S. being suspected of suffering the deleterious effects of methamphetamine ingestion, state mandated policies and procedures for methamphetamine withdrawal were not implemented for Plaintiff

1  Newborn baby J.A.S. by Defendants St. Luke's Hospital, Onsite Neonatal, nor any other

2  health provider.

3  1579.  Notes on medical records by non-radiology experts from April 11th, 2021, stated

4  that, "…upon admission to the NICU [newborn baby J.A.S.] showed hazy lung fields

5  with expansion to 5-9 ribs."

6  1580.  Radiology indicates in the medical record no "hazy lung fields" or "expansion"

7  into Plaintiff Newborn baby J.A.S.'s lungs.

8  1581.  Radiology, instead indicates in the medical record, "Perhaps minimal asymmetric

9  granular opacity on the right. No consolidation. No discernable pneumothorax or

10  layering pleural effusion on limited supine imaging. Osseous structures appear within

11  normal limits for patient age."

12  1582.  Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal,

13  and other parties named and unnamed in this lawsuit, manipulated the medical records

14  in their own interpretations of the radiologist's report to paint Plaintiffs Newborn baby

15  J.A.S. and Mrs. Smith as suffering the deleterious effects of methamphetamine

16  ingestion by constructing a reason to keep Plaintiff Newborn baby J.A.S. in the hospital

17  against the will and consent of his parents.

18  1583.  As represented in the medical documentation, beginning on April 10th, 2021,

19  Plaintiff Mrs. Smith was under constant monitoring by all Defendants St. Luke's Hospital

20  and Onsite Neonatal for "inappropriate behavior" via their agents, employees, and/or

21  assigns.

22  1584.  As of April 9th, 2021, Mr. Smith was not allowed to ever be on Defendant St.

23  Luke's Hospital's property at the consequence of being arrested.

1   1585.  As of April 10th, 2021, Plaintiff Mrs. Smith was supervised around the clock by

2   male security guards, even while breastfeeding and walking to the restroom.

3   **The Libelous Statement**

4   1586.  Defendants Ms. Chaminie Wheeler, DO, and Mr. Gilberto I. Santiago, MD

5   supported the hostile atmosphere intentionally created by Defendants St. Luke's

6   Hospital and Onsite Neonatal against the Plaintiff Smith Family.

7   1587.  Defendant Mr. Gilberto I. Santiago, MD represented on April 9th, 2021 in Plaintiff

8   Newborn baby J.A.S.'s medical records, under a section heading of "Prenatal History"

9   and in reference to Plaintiff Mrs. Smith, "UDS positive for methamphetamines: hx ADHD

10  on Vyvanse".

11  1588.  Defendant Ms. Chaminie Wheeler, DO, on April 16th, 2021, electronically signed

12  Defendant Mr. Gilberto I. Santiago, MD's representation in the medical records that

13  Plaintiff Mrs. Smith tested positive for methamphetamine thereby adding the weight of

14  her position to the attestations represented in the medical records by Defendant Mr.

15  Gilberto I. Santiago, MD.

16  1589.  Plaintiff Mrs. Smith did not ever test positive for methamphetamine.

17  1590.  There is not any valid reason to place a mother's medical information in her

18  newborn child's medical records, as that is a violation of the mother's right to medical

19  privacy; each individual's medical records should only represent themselves.

20  1591.  There is not any valid reason to place false medical information about a mother

21  in her newborn child's medical records.

1592.  A likely reason to place false medical information about a newborn child's mother in that child's medical records is to attempt to color Plaintiff Mrs. Smith as an illegal methamphetamine user and that by extension her Plaintiff Newborn baby J.A.S. suffered the deleterious effects of methamphetamine.

*Libel Per Se IV(a)*

1593.  The statement in Plaintiff Newborn baby J.A.S.'s medical records as represented by Defendant Mr. Gilberto I. Santiago, MD, and ratified with the weight of authority by Defendant Ms. Chaminie Wheeler, DO, that maternal "UDS positive for methamphetamines," harmed the reputation of Plaintiffs Mr. Smith and newborn baby J.A.S. in the estimation of the community by stating that Plaintiff Mrs. Smith is a user of illegal of methamphetamines and that she and her newborn child J.A.S. suffered the deleterious effects of illegal and harmful substances.

1594.  The defamatory statement is harmful in character because it states that Plaintiff Mrs. Smith has ingested the illegal and harmful substance of methamphetamine and that she passed the deleterious effects onto her child son Plaintiff Newborn baby J.A.S.

1595.  Defendants Mr. Gilberto I. Santiago, MD, and, Ms. Chaminie Wheeler, DO, published the defamatory statement in Plaintiff Newborn baby J.A.S.'s medical records where the statements were read by every medical provider who thereafter consulted Plaintiff Newborn baby J.A.S.'s medical records for an update or history on his status, as well as, other state parties when they became involved in investigating the Smith Family.

1596.  Upon information and belief, it can be demonstrated through Defendant testimonies, examinations of medical records, and hospital policies, such as, in-person, around the clock surveillance of a breastfeeding mother by male hospital security officers, that recipients of the publication understood that the meaning of the publication was that Plaintiff Mrs. Smith had ingested illegal methamphetamine.

1597.  Since the defamatory statement is contained within Plaintiff Newborn baby J.A.S.'s medical records, and because Plaintiff Mrs. Smith is the mother of Plaintiff Newborn baby J.A.S. it was clear that the defamatory statement was to be applied to both Plaintiffs Newborn baby J.A.S. and Mrs. Smith.

1598.  Harm suffered by the Plaintiffs includes, but is not limited to, a hostile atmosphere, exacerbating Plaintiff's mental health conditions which Defendants St. Luke's Hospital and Onsite Neonatal were aware of, causing a postpartum mother to needlessly suffer without any reasonable amenities when in the NICU, staff ratifying each other's invalid moral positions leading other staff to regard their inappropriate actions with a sense of false righteousness, and Plaintiff Newborn baby J.A.S. being considered abused by his mother through her use of illegal drugs, by Defendants St. Luke's Hospital and Onsite Neonatal through their agents, employees, or assigns, Defendants Mr. Gilberto I. Santiago, MD, and, Ms. Chaminie Wheeler, DO.

1599.  Upon information and belief, Defendants St. Luke's Hospital and Onsite Neonatal, through their agents, employees, or assigns, Defendants Mr. Gilberto I. Santiago, MD, and, Ms. Chaminie Wheeler, DO, abused their conditionally privileged occasion when as medical providers with the ability to alter and manipulate medical records, did falsify those records through the published defamatory statement.

1   1600.  Plaintiffs Newborn baby J.A.S. and Mrs. Smith are private individuals and not

2   public figures.

3   1601.  Since this is a case of a private figure plaintiff redressing issues of private

4   concern, the appropriate standard for this libel claim is one of negligence.

5   1602.  Negligence: (1) Medical providers with the ability to alter medical records are

6   required to maintain true and accurate records.

7   1603.  Negligence: (2) Defendant medical providers Mr. Gilberto I. Santiago, MD, and,

8   Ms. Chaminie Wheeler, DO did not maintain true and accurate medical records when

9   Defendant Mr. Gilberto I. Santiago, MD represented in Plaintiff Newborn baby J.A.S.'s

10  medical records that Plaintiff Mrs. Smith "…tested positive for methamphetamines," and

11  then Defendant Ms. Chaminie Wheeler, DO certified Defendant Mr. Gilberto I. Santiago,

12  MD's representation in Plaintiff Newborn baby J.A.S.'s medical records.

13  1604.  Negligence: (3) Upon information and belief, but for the actions of the Defendants

14  attesting to Plaintiff Mrs. Smith as a methamphetamine user, Plaintiff Mrs. Smith would

15  not have suffered the aforementioned harms and indignities mentioned earlier in this

16  allegation of libelous defamation, as well, it is likely that Plaintiff Mrs. Smith would not

17  have had pervasive and injurious inquiries about private family matters by state officials.

18  1605.  Negligence: (4) Plaintiffs have suffered substantial harm as a result of

19  Defendants' conduct, including but not limited to, emotional and psychological distress,

20  pain and suffering, and injury to their reputations.

1606.  In *libel per se* cases Pennsylvania defamation law considers "Words that on their face and without the aid of extrinsic evidence are recognized as injurious are actionable per se…."[90]

1607.  Upon information and belief, the Defendants' libelous statement directly and unequivocally accused Plaintiff Mrs. Smith of being a methamphetamine user in her newborn child's medical records which are on their face and without the aid of extrinsic evidence injurious, and actionable for a *libel per se* claim.

1608.  In *libel pe se* cases, Pennsylvania law observes that, "words imputing a criminal offense, loathsome disease, business misconduct or serious sexual misconduct" will be considered defamatory per se.[91]

1609.  Since Defendants' directly and unequivocally accused Plaintiff Mrs. Smith of being a methamphetamine user in her newborn child's medical records, and since methamphetamine is an illegal controlled substance, the Defendants' imputed a criminal offense, thereby making this an actionable *libel per se* claim.

1610.  Upon information and belief, Plaintiff can demonstrate by a preponderance of evidence that the Defendants St. Luke's Hospital and/or Onsite Neonatal supervised Mr. Gilberto I. Santiago, MD, and, Ms. Chaminie Wheeler, DO in connection with this allegation and are therefore liable under a legal theory of respondeat superior.

---

[90]*Joseph v. Scranton Times L.P.*, 959 A.2d 322, n.23 (Pa. Super. Ct. 2008).

[91]*Hrishenko v. Coombs*, 2014 Pa. Super. Unpub. LEXIS 880, *9 (Pa. Super. Ct. 2014).

1611.  Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal,

supervised Mr. Gilberto I. Santiago, MD, and, Ms. Chaminie Wheeler, DO's conduct

violated Plaintiffs' rights under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

*Or, In the Alternative,*

*Libel Per Quod IV(b)*

1612.  The statement in Plaintiff Newborn baby J.A.S.'s medical records as represented

by Defendant Mr. Gilberto I. Santiago, MD, and ratified with the weight of authority by

Defendant Ms. Chaminie Wheeler, DO, that maternal "…UDS positive for

methamphetamines…," harmed the reputation of Plaintiffs Mrs. Smith and Newborn

baby J.A.S. in the estimation of the community by stating that Plaintiff Mrs. Smith is a

user of illegal of methamphetamines and that she and her son Plaintiff Newborn child

J.A.S. suffered from the deleterious effects of illegal and harmful substances.

1613.  The defamatory statement is harmful in character because it states that

Defendant Mrs. Smith has ingested the illegal and harmful substance of

methamphetamine and that she passed the deleterious effects of that ingestion onto her

child Plaintiff Newborn baby J.A.S.

1614.  Defendants Mr. Gilberto I. Santiago, MD, and, Ms. Chaminie Wheeler, DO,

published the defamatory statement in Plaintiff Newborn baby J.A.S.'s medical records

where the statements were read by every medical provider who thereafter consulted

Plaintiff Newborn baby J.A.S.'s medical records for an update or history on his status,

as well as, other state parties when they became involved in investigating the Smith

Family.

1615.  Upon information and belief, it can be demonstrated through Defendant

testimonies, examinations of medical records, and hospital policies, such as, in-person,

around the clock surveillance of a breastfeeding mother by hospital security officers,

that recipients of the publication understood that the meaning of the publication was that

Plaintiff Mrs. Smith had ingested illegal methamphetamine.

1616.  Since the defamatory statement is contained within Plaintiff Newborn baby

J.A.S.'s medical records, and because Plaintiff Mrs. Smith is the mother of Plaintiff

Newborn baby J.A.S. it was clear that the defamatory statement was to be applied to

both Plaintiffs Newborn baby J.A.S. and Mrs. Smith.

1617.  Harm suffered by the Plaintiffs includes, but is not limited to, a hostile

atmosphere, exacerbating Plaintiff's mental health conditions which Defendants St.

Luke's Hospital and Onsite Neonatal were aware of, causing a postpartum mother to

needlessly suffer without any reasonable amenities when in the NICU, staff ratifying

each other's invalid moral positions leading other staff to regard their inappropriate

actions with a sense of false righteousness, and Plaintiff Newborn baby J.A.S. being

considered abused by his mother through her use of illegal drugs, by Defendants St.

Luke's Hospital and Onsite Neonatal through their agents, employees, or assigns,

Defendants Mr. Gilberto I. Santiago, MD, and, Defendant Ms. Chaminie Wheeler, DO.

1618.  Upon information and belief, Defendants St. Luke's Hospital and Onsite

Neonatal, through their agents, employees, or assigns, Defendants Mr. Gilberto I.

Santiago, MD, and, Ms. Chaminie Wheeler, DO, abused their conditionally privileged

occasion when as medical providers with the ability to alter and manipulate medical

records, did falsify those records through the published defamatory statement.

1619.  Plaintiffs Newborn baby J.A.S. and Mrs. Smith are private individuals and not public figures.

1620.  Since this is a case of a private figure plaintiff redressing issues of private concern, the appropriate standard for this libel claim is one of negligence.

1621.  Negligence: (1) Medical providers with the ability to alter medical records are required to maintain true and accurate records.

1622.  Negligence: (2) Defendant medical providers Mr. Gilberto I. Santiago, MD, and, Ms. Chaminie Wheeler, DO did not maintain true and accurate medical records when Defendant Mr. Gilberto I. Santiago, MD represented in Plaintiff Newborn baby J.A.S.'s medical records that Plaintiff Mrs. Smith "…tested positive for methamphetamines," and then Ms. Chaminie Wheeler, DO certified Mr. Santiago, MD's representation in Plaintiff Newborn baby J.A.S.'s medical records.

1623.  Negligence: (3) Upon information and belief, but for the actions of the Defendants attesting to Plaintiff Mrs. Smith as a methamphetamine user, Plaintiff Mrs. Smith would not have suffered the aforementioned harms and indignities mentioned earlier in this allegation of libelous defamation, as well, it is likely that Plaintiff Mrs. Smith would not have had pervasive and injurious inquiries about private family matters by state officials.

1624.  Negligence: (4) Plaintiffs have suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, and injury to their reputations.

1   1625.  In *libel per quod* cases Pennsylvania defamation law considers extrinsic

2   supporting evidence of libelous behavior if the injurious nature of the words is not

3   apparent.[92]

4   1626.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

5   evidence that through the presentation of medical records, police reports, and other

6   administrative documentation that the libelous statement was not a mere description of

7   the mother for the medical edification of potential diagnosis concerning Plaintiff

8   Newborn baby J.A.S., but was instead a statement intended to cast unfounded and

9   harmful aspersions on both Plaintiffs Newborn baby J.A.S. and Mrs. Smith.

10   1627.  Plaintiffs will need to demonstrate necessary innuendo by Defendant Parties.

11   1628.  "Innuendo", "define[s] the defamatory meaning which the plaintiff attaches to the

12   words" and "show[s] how they come to have that meaning and how they relate to the

13   plaintiff."[93]

14   1629.  Methamphetamine is an illegal controlled substance, which has deleterious

15   effects on those that consume it.

16   1630.  Deleterious effects caused by methamphetamine when consumed by a pregnant

17   mother will likely be passed on to her child in utero via the umbilical cord.

18   1631.  When Defendants Mr. Gilberto I. Santiago, MD, represented the libelous

19   statement, and Ms. Chaminie Wheeler, DO certified that statement with the weight of

---

[92]Joseph, 959 A.2d at n.23.

[93]*Cosgrove Studio & Camera Shop, Inc. v. Pane*, 408 Pa. 314, 319 (Pa. 1962) (citations omitted).

1  the authority of her position it was to make clear to other medical professionals,

2  administrators, and/or state personnel that Plaintiff Mrs. Smith consumed

3  methamphetamine and that she likely passed on the deleterious effects of

4  methamphetamine use to her child Plaintiff Newborn baby J.A.S.

5  1632.  The libelous statement relates to the Plaintiffs Newborn baby J.A.S. and Mrs.

6  Smith because the statement is about Plaintiff Mrs. Smith, and it is in Plaintiff Newborn

7  baby J.A.S.'s medical records.

8  1633.  Upon information and belief, Plaintiff can demonstrate by a preponderance of

9  evidence that the Defendants Private Entities St. Luke's Hospital and/or Onsite

10  Neonatal supervised providers Mr. Gilberto I. Santiago, MD, and, Ms. Chaminie

11  Wheeler, DO in connection with this allegation and are therefore liable under a legal

12  theory of respondeat superior.

13  1634.  Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal,

14  supervised Mr. Gilberto I. Santiago, MD, and, Ms. Chaminie Wheeler, DO's conduct

15  violated Plaintiffs' rights under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

16  *Or, In the Alternative*

17  *Libel by Implication IV(c)*

18  **The Libelous Statement & Implication**

19  1635.  Defendants Mr. Gilberto I. Santiago, MD, and, Ms. Chaminie Wheeler, DO

20  supported the hostile atmosphere intentionally created by Defendants St. Luke's

21  Hospital and Onsite Neonatal against the Plaintiff Smith Family.

1636.  Defendants Mr. Gilberto I. Santiago, MD, and, Ms. Chaminie Wheeler represented in Plaintiff Newborn baby J.A.S.'s medical records, "UDS positive for methamphetamines: hx ADHD on Vyvanse".

1637.  Plaintiff Mrs. Smith was not ever told by any party that her legal prescription medication for ADHD, Vyvanse, which contains lisdexamfetamine, was being monitored as inherent substance abuse, nor what was considered 'appropriate' versus 'inappropriate' behavior.

1638.  There is not any valid reason to place a mother's medical status in her newborn child's medical records.

1639.  A likely reason to place medical status information about a newborn child's mother in that child's medical records was to attempt to color Plaintiff Mrs. Smith as a potentially illegal methamphetamine user and by extension her newborn baby suffered the deleterious effects of methamphetamine use.

1640.  The statement in Plaintiff Newborn baby J.A.S.'s medical records as represented by Defendant Mr. Gilberto I. Santiago, MD, that "UDS positive for methamphetamines: hx ADHD on Vyvanse," harmed the reputation of Plaintiffs Mr. Smith and Newborn baby J.A.S. in the estimation of the community by implying that Plaintiff Mrs. Smith ingested illegal methamphetamines and that she and her son Plaintiff Newborn child J.A.S. suffered from the deleterious effects of illegal and harmful substances.

1641.  The defamatory statement is harmful in character because it implies that Defendant Mrs. Smith has abused the illegal and harmful substance of methamphetamine and that she passed the deleterious harm onto her son Plaintiff Newborn baby J.A.S.

1642.  Defendant Mr. Gilberto I. Santiago, MD, published the defamatory statement in Plaintiff Newborn baby J.A.S.'s medical records as an addendum where the statements were read by every medical provider who thereafter consulted Plaintiff Newborn baby J.A.S.'s medical records for an update on his status or history, as well as, other state parties when they became involved in investigating the Smith Family.

1643.  Upon information and belief, it can be demonstrated through Defendant testimonies, examinations of medical records, and hospital policies, such as, in-person, around the clock surveillance of a breastfeeding mother by male hospital security officers, that recipients of the publication understood that the meaning of the publication was that Plaintiff Mrs. Smith had ingested illegal methamphetamine.

1644.  Since the defamatory statement is contained within Plaintiff Newborn baby J.A.S.'s medical records, and because Plaintiff Mrs. Smith is the mother of Plaintiff Newborn baby J.A.S. it was clear that the defamatory statement was to be applied to both Plaintiffs Newborn baby J.A.S. and Mrs. Smith.

1645.  Harm suffered by the Plaintiffs includes, but is not limited to, a hostile atmosphere, exacerbating Plaintiff's mental health conditions which Defendants St. Luke's Hospital and Onsite Neonatal were aware of, causing a postpartum mother to needlessly suffer without any reasonable amenities when in the NICU, staff ratifying each other's invalid moral positions leading other staff to regard their inappropriate actions with a sense of false righteousness, and Plaintiff Newborn baby J.A.S. being considered abused by his mother through her use of illegal drugs, by Defendants St. Luke's Hospital and Onsite Neonatal through their agents, employees, or assigns, Defendants Mr. Gilberto I. Santiago, MD, and, Ms. Chaminie Wheeler, DO.

1646.  Upon information and belief, Defendants St. Luke's Hospital and Onsite Neonatal, through their agents, employees, or assigns, Defendants Mr. Gilberto I. Santiago, MD, and, Ms. Chaminie Wheeler, DO, abused their conditionally privileged occasion when as medical providers with the ability to alter and manipulate medical records, they did write true statements in those records, including partially in the published defamatory statement.

1647.  Plaintiffs Newborn baby J.A.S. and Mrs. Smith are private individuals and not public figures.

1648.  Since this is a case of a private figure plaintiff redressing issues of private concern, the appropriate standard for this libel claim is one of negligence.

1649.  Negligence: (1) Medical providers with the ability to alter medical records are required to maintain medical records that reflect the truth of a matter in both itemized mentions of fact and the totality of what those facts are to represent.

1650.  Negligence: (2) Defendants medical providers Mr. Gilberto I. Santiago, MD, and, Ms. Chaminie Wheeler, DO did maintain true and accurate medical records when itemized mentions of fact were read in isolation from one another; however, when taken as a totality the facts, present the Plaintiffs in a harmful and dishonest light, culminating with when Defendants Mr. Gilberto I. Santiago, MD, and, Ms. Chaminie Wheeler, DO represented in Plaintiff Newborn baby J.A.S.'s medical records that Plaintiff Mrs. Smith had ingested an illegal and controlled substance.

1651.  Negligence: (3) Upon information and belief, but for the actions of the Defendants implying that Plaintiff Mrs. Smith had ingested methamphetamine, Plaintiff Mrs. Smith would not have suffered the aforementioned harms and indignities mentioned earlier in

1  this allegation of libelous defamation, as well, it is likely that Plaintiff Mrs. Smith would

2  not have had pervasive and injurious inquiries about private family matters by state

3  officials.

4  1652.  Negligence: (4) Plaintiffs have suffered substantial harm as a result of

5  Defendant's conduct, including but not limited to, emotional and psychological distress,

6  pain and suffering, and injury to their reputations.

7  1653.  Libel by Implication occurs when "true facts that in context imply a falsehood."[94]

8  1654.  In addition, "the literal accuracy of separate statements will not render a

9  communication 'true' where, as here, the implication of the communication as a whole

10  was false."[95]

11  1655.  Upon information and belief, Plaintiffs Newborn baby J.A.S. and Mrs. Smith can

12  demonstrate by a preponderance of the evidence that any one statement in Plaintiff

13  Newborn baby J.A.S.'s medical records may be true, but the implication of the

14  communications as a whole in Plaintiff Newborn baby J.A.S.'s medical records is false.

15  1656.  As well, if "the defendant juxtaposes [a] series of fact so as to imply a defamatory

16  connection between them, or [otherwise] creates a defamatory implication…" then a

17  libelous statement by implication is present.[96]

---

[94] *Dunlap v. Philadelphia Newspapers, Inc.*, 301 Pa. Super. 475, 491 (Pa. Super. Ct.
1982) (emphasis omitted).

[95] *Id.* at 493.

[96] *Fanelle v. LoJack Corp.*, 2000 U.S. Dist. LEXIS 17767, *10 (E.D. Pa. Dec. 7, 2000).

1657.  Upon information and belief, Plaintiffs Newborn baby J.A.S. and Mrs. Smith can

demonstrate by a preponderance of the evidence that many facts contained within

Plaintiff Newborn baby J.A.S.'s medical records juxtapose a series of facts so as to

imply a defamatory connection of methamphetamine ingestion by Plaintiff Mrs. Smith,

the deleterious effects of which were passed on to Plaintiff Newborn baby J.A.S.

1658.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

evidence that the Defendants St. Luke's Hospital and/or Onsite Neonatal supervised Mr.

Gilberto I. Santiago, MD, and, Ms. Chaminie Wheeler, DO, in connection with this

allegation and are therefore liable under a legal theory of respondeat superior.

1659.  Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal,

supervised Mr. Gilberto I. Santiago, MD, and, Ms. Chaminie Wheeler, DO's conduct

violated Plaintiffs' rights under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

## Damages for Libel IV(a-c)

1660.  Plaintiff Mr. Smith suffered substantial harm as a result of Defendants' conduct,

including but not limited to, emotional and psychological distress, pain and suffering,

fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate

compensatory damages to account for PTSD therapies and other related treatments as

they have been and will continue to be necessary; Plaintiff respectfully requests an

amount of $595,000 in compensatory damages per Defendant.

1661.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

Neonatal, Mr. Gilberto I. Santiago, MD, and, Ms. Chaminie Wheeler, DO, and therefore,

their ability to afford the appropriate training to avoid this egregious violation of the

Pennsylvania Statutory Law, and, since harm was actually caused to the current Plaintiff

1    Smith Family, and since harm is likely to continue to harm future postpartum families,

2    and because the acts of the Defendants and their agents, assigns, or employees

3    callously disregarded the Plaintiff's rights in a reckless and wanton manner, the

4    Plaintiffs respectfully request the imposition of punitive damages on Defendants St.

5    Luke's Hospital, Onsite Neonatal, Mr. Gilberto I. Santiago, MD, and, Ms. Chaminie

6    Wheeler, DO to deter such Defendants from committing to such conduct in the future

7    which violates Commonwealth of Pennsylvania Statutory Law Plaintiffs respectfully

8    request an amount of $1,000,000 in punitive damages per Defendant Mr. Gilberto I.

9    Santiago, MD; $5,000,000 per Defendant Ms. Chaminie Wheeler, DO; and $10,000,000

10   per Defendants St. Luke's Hospital, and Onsite Neonatal.

11   1662.  In the unlikely event that the jury does not find that Plaintiff Mr. Smith suffered

12   any actual injury despite the deprivation of their statutory law rights, the Plaintiff

13   respectfully requests a nominal judgment of $1.00.

14   # XXVI.    § 42 Pa. C. S. § 8343, Defamation - Libel V

15   ## Mr. Michael O. Smith v. St. Luke's Hospital, OBHG PA, & Ms. Teresa Marlino, MD

16   1663.  Under Pennsylvania defamation law, a communication will be considered

17   defamatory if it ""tends so to harm the reputation of [the complaining party] as to lower

18   him in the estimation of the community or to deter third persons from associating or

19   dealing with him."[97]

---

[97] *MacElree v. Philadelphia Newspapers*, 544 Pa. 117, 124-125 (Pa. 1996) (citations

omitted).

1664.  In order for Plaintiffs to succeed in their claim, they must prove the following elements[98].

    (1) The defamatory character of the communication;

    (2) Its publication by the defendant;

    (3) Its application to the plaintiff;

    (4) The understanding by the recipient of its defamatory meaning;

    (5) The understanding by the recipient of it as intended to be applied to the plaintiff;

    (6) Special harm resulting to the plaintiff from its publication; and

    (7) Abuse of a conditionally privileged occasion.

1665.  The Pennsylvania Supreme Court has abolished an "actual malice" standard and has shifted the inquiry to whether a plaintiff is a private individual or a public figure or public official.[99]

1666.  Pennsylvania has adopted a negligence standard for private figure plaintiff lawsuits regarding issues of private concern.[100]

1667.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the required standard; (3) a causal connection

---

[98]*42 Pa.C.S. § 8343(a)(1-7).*

[99]*Am. Future Sys., Inc. v. Better Bus. Bureau*, 592 Pa. 66, 82-83 (Pa. 2007). However, demonstrations of actual malice on the part of the defendant can lead to wider array of potential damages.

[100]*Wilson v. Slatalla*, 970 F. Supp. 405, 414 (E.D. Pa. 1997).

1  between the conduct and the resulting injury; and (4) actual loss or damage resulting to

2  the interests of another.[101]

3  ***<u>The Context</u>***

4  1668.  Defendants St. Luke's Hospital, and OBHG PA among other parties named and

5  unnamed in this lawsuit, intentionally created an atmosphere hostile to the Smith

6  Family, including Plaintiff Mr. Smith.

7  1669.  Defendant Ms. Teresa Marlino, MD, supported the hostile atmosphere

8  intentionally created by Defendant St. Luke's Hospital, and OBHG PA.

9  1670.  Defendants St. Luke's Hospital and OBHG PA coordinated their employee,

10  agent, or assign, Defendant Ms. Teresa Marlino, MD, towards a narrative that Mrs.

11  Smith had ingested methamphetamine and that Mrs. Smith gave birth to Newborn baby

12  J.A.S. who suffered the deleterious effects of methamphetamine.

13  1671.  The umbilical cord that connected Newborn baby J.A.S. and Mrs. Smith was

14  tested on April 9th, 2021, and was negative for amphetamines and methamphetamines.

15  1672.  Despite the umbilical cord that connected Plaintiffs Newborn baby J.A.S. and

16  Mrs. Smith testing negative for illegal drugs, Defendants St. Luke's Hospital, and OBHG

17  PA, acting through agent, employee, or assign Defendant Ms. Teresa Marlino, MD,

18  continued the narrative that Plaintiff Mrs. Smith had ingested methamphetamine and

---

[101] *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1   that Mrs. Smith gave birth to Newborn baby J.A.S. who also suffered the deleterious

2   effects of methamphetamine.

3   1673.  Medical records on April 9th, 2021, reflect the statement, "[F]amily was requesting

4   discharge at 12 hours of life."

5   1674.  Mr. and Mrs. Smith requested at approximately 12-hours of Newborn baby

6   J.A.S.'s life that the Smith Family be discharged from Defendant St. Luke's Hospital

7   when practicable, not immediately at 12 hours from birth, as is suggested in the medical

8   records entered by St. Luke's Hospital agents, employees, and/or assigns.

9   1675.  Defendant St. Luke's Hospital, and OBHG PA, through their agents, employees,

10  or assigns, was further attempting to imply that Mrs. Smith was urgently seeking to go

11  home so that she could consume methamphetamine by making the medical records

12  appear that Mrs. Smith sought to reingest methamphetamine by going home as soon as

13  possible after her newborn baby's birth.

14  1676.  Beginning on April 10th, 2021 the statement, "High probability of life[-]threatening

15  clinical deterioration in infant's condition without treatment," began regularly appearing

16  in medical records.

17  1677.  Mr. and Mrs. Smith were not ever told by any agent, employee, or assign of

18  Defendants St. Luke's Hospital, and OBHG PA, that Newborn baby J.A.S. had a, "High

19  probability of life[-]threatening clinical deterioration…without treatment."

20  1678.  Despite the accusation of methamphetamine use by Defendants St. Luke's

21  Hospital, and OBHG PA, and their agents, assigns, or employees, Mrs. Smith was

22  allowed to breastfeed Newborn baby J.A.S.

1679.  Despite Mrs. Smith and newborn baby J.A.S. being suspected of suffering the deleterious effects of methamphetamine, state mandated policies and procedures for methamphetamine withdrawal were not implemented for Newborn baby J.A.S. by Defendants St. Luke's Hospital, and OBHG PA, nor any other health provider.

1680.  Notes on medical records by non-radiology experts from April 11th, 2021, stated that, "…upon admission to the NICU [newborn baby J.A.S.] showed hazy lung fields with expansion to 5-9 ribs."

1681.  Radiology indicates in the medical record no "hazy lung fields" or "expansion" into Newborn baby J.A.S.'s lungs.

1682.  Radiology, instead indicates in the medical record, "Perhaps minimal asymmetric granular opacity on the right. No consolidation. No discernable pneumothorax or layering pleural effusion on limited supine imaging. Osseous structures appear within normal limits for patient age."

1683.  Upon information and belief, Defendants St. Luke's Hospital, and OBHG PA, and other parties named and unnamed in this lawsuit, manipulated the medical records in their own interpretations of the radiologist's report to paint Newborn baby J.A.S. and Mrs. Smith as suffering the deleterious effects of methamphetamine use to construct a reason to keep Newborn baby J.A.S. in the hospital against the will and consent of his parents.

1684.  As represented in the medical documentation, beginning on April 10th, 2021, Mrs. Smith was under constant monitoring by all Defendant St. Luke's Hospital and OBHG PA for "inappropriate behavior" via their agents, employees, and/or assigns.

1685.  As of April 9th, 2021, Plaintiff Mr. Smith was not allowed to ever be on St. Luke's Hospital's property at the consequence of being arrested.

1686.  As of April 10th, 2021, Mrs. Smith was supervised around the clock by male security guards, even while breastfeeding, and walking to the restroom.

1687.  On the evening of April 9th, 2021, after Mr. & Mrs. Smith were ejected from St. Luke's Hospital's property., Defendant Ms. Teresa Marlino, MD, created an addendum to Mrs. Smith's medical records.

1688.  The addendum written by Defendant Ms. Teresa Marlino, MD is as follows:

> "I performed a history and physical examination of the patient and discussed her management with the resident.  I reviewed the note and agree with the documented findings and plan of care.
>
> Patient has been in the NICU most of the day and I was able to see her this evening after my 4th attempt.  She reports feeling well.   She was accompanied by her husband.  They recently moved from Upper Darby near 69th Street to Mount Pocono because of a faulty heater contaminating their rented home with diesel fuel.  "The first 3 times it happened, we cleaned it up ourselves.  This last time, we were not dealing with it.  We are not bringing a newborn baby home to that – we told the landlord – fuck it."  I asked Grace about her job and she reported she and her husband, Michael, are attorneys who graduated from Widener Law School.  She is

1        working remotely as an "E-data lawyer" and he is currently

2        home taking care of the children who are 7yo, 4yo and

3        1.5yo.  "You can find me on care.com".  Michael reported

4        they chose Mount Pocono since it is 20 minutes away from

5        her family.  They moved their family to Mount Pocono last

6        week.

7        I asked Grace if she was aware that her urine drug screen

8        was positive for marijuana and methamphetamine and she

9        reported that she has a medical marijuana card and takes

10       Vyvanse for Attention Deficit Disorder.  I told them that

11       because her urine drug screen, as well as the baby's urine

12       drug screen, were positive for THC and methamphetamine,

13       the hospital social worker has contacted the Monroe County

14       Children and Youth Services. I explained that we are

15       required by Pennsylvania state law to report this case.

16       Michael then became agitated, very angry and was using

17       obscenities with me.  He wanted to know why we did not

18       investigate and request her medical records to confirm that

19       she was prescribed both of these medications legally.  I

20       explained that our responsibility as healthcare workers was

21       to report the case to CYS and they would conduct any

22       investigation that was necessary.  We had not cared for

23       patient during her pregnancy (care received at Crozer -

1                   Chester Hospital in Chester, Delaware County, PA); she

2                   arrived to our hospital in labor yesterday.  He then became

3                   increasingly agitated and yelled "No one is going to violate

4                   my 4th amendment rights; no one will violate my 4th

5                   amendment rights! No one will set foot on my property.  We

6                   are taking our baby from the NICU and leaving here.  None

7                   of our other children needed to be in the NICU or had trouble

8                   breathing so he won't either."  He then went on to say "no

9                   other doctors in the past 10 years did not believe us when

10                  we said she was on prescription drugs.  They did not report

11                  us to CYS – so why have you?" Nurse Lisa Ferro had

12                  entered the room just as I was explaining the report to

13                  Monroe County CYS.  Michael then said, "Get out of our

14                  room! We don't want to speak with you anymore".

15                  I left the room and immediately called Dr. Schultz in the

16                  NICU to make her aware that Michael and Grace were

17                  planning to leave the hospital this evening and were coming

18                  to get the baby.

19                  Grace is medically stable for discharge this evening.  I met

20                  her at the front desk and verbally reviewed her discharge

21                  instructions.  Nurse Lisa Ferro gave her discharge papers.

22                  The patient and her husband Michael were then escorted by

23                  local police officers and security to the hospital entrance."

1689.  Upon information and belief, Defendant Ms. Teresa Marlino, MD participated in and approved of a false narrative concerning Plaintiff Mr. Smith, that Plaintiff Mr. Smith was in some way too dangerous or violent to be allowed to visit his son Newborn baby J.A.S. on St. Luke's Hospital's property.

1690.  Demonstration of instances in which the narrative of Defendant Ms. Teresa Marlino, MD, substantially differs from that of Plaintiff Mr. Michael O. Smith are, but are not limited to (1) Plaintiff Mr. Smith represented his profession as a K-12+ multi-subject tutor, not an attorney; (2) neither Mr. nor Mrs. Smith told Defendant Ms. Marlino, MD, how far Mr. and Mrs. Smith lived from Mrs. Smith's parents; (2) neither Mrs. Smith, nor Newborn baby J.A.S. tested positive for methamphetamine; (3) Plaintiff Mr. Smith did not direct any obscenities in the direction of Defendant Ms. Marlino, MD, nor did he curse the situation at hand in front of her; (4) PA law did not require Defendant St. Luke's Hospital to contact Children and Youth Services; and, (5) Plaintiff Mr. Smith did not ever "become increasingly agitated" to a degree that he raised his voice to a decibel level commonly perceived as yelling.

1691.  In addition to what Defendant Ms. Teresa Marlino, MD asserts as fact in her attestation she leaves out mention that she was kindly requested to leave the Plaintiffs' hospital room four times before she relented.

1692.  In addition to what Defendant Ms. Teresa Marlino, MD asserts as fact in her attestation she leaves out mention that Mrs. Smith was the parent who withdrew consent for Newborn baby J.A.S. to be treated at St. Luke's Hospital, not Plaintiff Mr. Smith who merely assented to Mrs. Smith's wishes for consent to be withdrawn.

1693.  In addition to what Defendant Ms. Teresa Marlino, MD asserts as fact in her attestation she leaves out mention that she was made aware that the social worker for Defendant St. Luke's Hospital met with Plaintiff Mr. Smith in Mrs. Smith's postpartum hospital room, whereupon the hospital social worker neither mentioned that Monroe County Children and Youth Services had been contacted about the Smith Family, nor did she seem at all concerned about informing Plaintiff Mr. Smith that Children and Youth Services would be contacted because of concerns with the Smith Family.

1694.  Upon information and belief, in addition to what Defendant Ms. Teresa Marlino, MD, asserts as fact in her attestation she leaves out mention that she entered Mrs. Smith's postpartum hospital room with a preconceived bias that Mrs. Smith was suffering the deleterious effects of methamphetamine ingestion, despite never meeting, or physically examining Mrs. Smith.

## **The Libelous Statement**

1695.  Upon information and belief, Defendant Ms. Teresa Marlino, MD supported the hostile atmosphere intentionally created by St. Luke's Hospital, and/or OBHG PA against the Plaintiff Smith Family.

1696.  Defendant Ms. Teresa Marlino, MD, on April 9th, 2021, placed an addendum in Mrs. Smith's medical records including the libelous statement represented by Defendant Ms. Teresa Marlino, MD, "Michael then became agitated, very angry and was using obscenities with me."

1697.  Plaintiff Mr. Smith did not ever act in a "very angry" manner, nor was he ever "using obscenities" with respect towards Defendant Ms. Teresa Marlino, MD.

1698.  Upon information and belief, Defendant Ms. Teresa Marlino, MD, supported the false narrative created about Plaintiff Mr. Smith that Plaintiff Mr. Smith acted in a "very angry" manner and that Plaintiff Mr. Smith used "obscenities" directed at those for whom Plaintiff Mr. Smith found dissatisfaction.

1699.  Upon information and belief, there is not a valid reason to place a father's emotional status in his patient wife's medical records.

1700.  Upon information and belief, there is not any valid reason to place misleading information in Plaintiff Mr. Smith's wife's medical records leading to the logical conclusion that Plaintiff Mr. Smith is the type of person that cannot appropriately control his anger.

1701.  A likely reason to place misleading personal information about a husband in his wife's medical records is to attempt to color Plaintiff Mr. Smith as a potentially violent person.

### *Libel Per Se V(a)*

1702.  The statement in Mrs. Smith's medical records as represented by Defendant Ms. Teresa Marlino, MD, that "Michael then became agitated, very angry and was using obscenities with me," harmed the reputation of Plaintiff Mr. Smith in the estimation of the community by stating that Plaintiff Mr. Smith is an individual of violent character, and that he acted in a manner befitting a no trespassing order from the Bethlehem Police Department.

1703.  The defamatory statement is harmful in character because it states that Plaintiff Mr. Smith is a person who engaged in instances of such verbal violence that he could

1   not be permitted on Defendant St. Luke's Hospital property to visit with his newborn

2   baby child in the N.I.C.U. nor to physically or emotionally support his postpartum wife.

3   1704.  Defendant Ms. Teresa Marlino, MD, published the defamatory statement in Mrs.

4   Smith's medical records where the statements were read by every medical provider who

5   thereafter consulted Mrs. Smith's medical records for an update on her status or history,

6   as well as, other state parties when they became involved in investigating the Smith

7   Family.

8   1705.  Upon information and belief, it can be demonstrated through Defendant

9   testimonies, examinations of medical records, and hospital policies, such as, in-person,

10   around the clock surveillance of a newborn baby child by male hospital security officers,

11   that recipients of the publication understood that the meaning of the publication was that

12   Plaintiff Mr. Smith may attempt to violently infiltrate the NICU at Defendant St. Luke's

13   Hospital to recover his child.

14   1706.  Since the defamatory statement is contained within Mrs. Smith's medical records,

15   and because Plaintiff Mr. Smith is the husband of Mrs. Smith it was clear that the

16   defamatory statement was to be applied to Plaintiff Mr. Smith.

17   1707.  Harm suffered by the Plaintiff includes, but is not limited to, a hostile atmosphere,

18   exacerbating Plaintiff's mental health condition, causing a postpartum father to

19   needlessly suffer without his newborn baby child who was in neonatal intensive care,

20   staff ratifying each other's invalid moral positions leading other staff to regard their

21   inappropriate actions with a sense of false righteousness, and a baseless reputation for

22   violent behavior, by Defendants St. Luke's Hospital, and OBHG PA through their agent,

23   employee, or assign, Defendant Ms. Teresa Marlino, MD.

1708.  Upon information and belief, Defendants St. Luke's Hospital, and OBHG PA, through their agent, employee, or assign, Defendant Ms. Teresa Marlino, MD, abused her conditionally privileged occasion when as a medical provider with the ability to alter and manipulate medical records, did represent and publish statements that Plaintiff Mr. Smith acted in a manner requiring a no trespass order.

1709.  Plaintiff Mr. Smith is a private individual and not a public figure.

1710.  Since this is a case of a private figure plaintiff redressing issues of private concern, the appropriate standard for this libel claim is one of negligence.

1711.  Negligence: (1) Medical providers with the ability to alter medical records are required to maintain records that do not place legal representations in those records that reflect the legal status of someone other than the record holder themselves.

1712.  Negligence: (2) Medical provider Defendant Ms. Teresa Marlino, MD cast unnecessary and harmful aspersions in medical records when Defendant Ms. Marlino, MD represented in Mrs. Smith's medical records that Plaintiff Mr. Smith, "Michael then became agitated, very angry and was using obscenities with me," which was a harmful and misleading representation in Mrs. Smith's medical records about the character of Plaintiff Mr. Smith.

1713.  Negligence: (3) Upon information and belief, but for the actions of the Defendant attesting to Plaintiff Mr. Smith as an individual behaving in a manner befitting a no trespass order, Plaintiff Mr. Smith would not have suffered the aforementioned harms and indignities mentioned earlier in this allegation of libelous defamation, as well, it is possible that Plaintiff Mr. Smith would not have had pervasive and injurious inquiries about private family matters by state officials.

1714.  Negligence: (4) Plaintiff has suffered substantial harm as a result of Defendant's conduct, including but not limited to, emotional and psychological distress, pain and suffering, and injury to his reputation.

1715.  In *libel per se* cases Pennsylvania defamation law considers "Words that on their face and without the aid of extrinsic evidence are recognized as injurious are actionable per se…."[102]

1716.  Upon information and belief, Defendants' directly and unequivocally accused Plaintiff Mr. Smith of being an individual violent enough that a no trespass order was appropriate for his character, so much so, that such information should appear in his wife's medical records, are on their face and without the aid of extrinsic evidence injurious, and actionable for a *libel per se* claim.

1717.  In *libel pe se* cases, Pennsylvania law observes that, "words imputing a criminal offense, loathsome disease, business misconduct or serious sexual misconduct" will be considered defamatory per se.[103]

1718.  Since Defendants' directly and unequivocally accused Plaintiff Mr. Smith of having the characteristics of a violent individual, and thereby a criminal, in his wife's medical records, and since acts of violence are those acts which violate the law, the Defendants' imputed a criminal offense, thereby making this an actionable *libel per se* claim.

---

[102]*Joseph v. Scranton Times L.P.*, 959 A.2d 322, n.23 (Pa. Super. Ct. 2008).

[103]*Hrishenko v. Coombs*, 2014 Pa. Super. Unpub. LEXIS 880, *9 (Pa. Super. Ct. 2014).

1719.  Upon information and belief, Plaintiff can demonstrate by a preponderance of evidence that the Defendants St. Luke's Hospital, and OBHG PA, supervised Ms. Teresa Marlino, MD, in connection with this allegation and is therefore liable under a legal theory of respondeat superior.

1720.  Upon information and belief, Defendants St. Luke's Hospital, OBHG PA, supervised Ms. Teresa Marlino's conduct violated Plaintiffs' rights under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

*Or, In the Alternative,*

*<u>Libel Per Quod V(b)</u>*

1721.  The statement in Mrs. Smith's medical records as represented by Defendant Ms. Teresa Marlino, MD, that "Michael then became agitated, very angry and was using obscenities with me," harmed the reputation of Plaintiff Mr. Smith in the estimation of the community by stating that Plaintiff Mr. Smith is an individual of violent character, and that he acted in a manner befitting a no trespassing order from the Bethlehem Police Department.

1722.  The defamatory statement is harmful in character because it states that Plaintiff Mr. Smith, at the behest of Defendants St. Luke's Hospital, and OBHG PA, is a person capable of such violence that he cannot be permitted on Defendant St. Luke's Hospital's property to visit with his newborn baby child in the N.I.C.U.

1723.  Defendant Ms. Teresa Marlino, MD, published the defamatory statement in Mrs. Smith's medical records where the statements were read by every medical provider who thereafter consulted Mrs. Smith's medical records for an update on her status or history,

1   as well as, other state parties when they became involved in investigating the Smith

2   Family.

3   1724.  Upon information and belief, it can be demonstrated through Defendant

4   testimonies, examinations of medical records, and hospital policies, such as, in-person,

5   around the clock surveillance of a newborn baby by male hospital security officers, that

6   recipients of the publication understood that the meaning of the publication was that

7   Plaintiff Mr. Smith may attempt to violently infiltrate the NICU at Defendant St. Luke's

8   Hospital to recover his child.

9   1725.  Since the defamatory statement is contained within Mrs. Smith's medical records,

10   and because Plaintiff Mr. Smith is the husband of Mrs. Smith it was clear that the

11   defamatory statement was to be applied to Plaintiff Mr. Smith.

12   1726.  Harm suffered by the Plaintiff includes, but is not limited to, a hostile atmosphere,

13   exacerbating Plaintiff's mental health condition, causing a postpartum father to

14   needlessly suffer without his newborn baby child who was in neonatal intensive care,

15   staff ratifying each other's invalid moral positions leading other staff to regard their

16   inappropriate actions with a sense of false righteousness, and a baseless reputation for

17   violent behavior, by Defendants St. Luke's Hospital, and OBHG PA through their agent,

18   employee, or assign, Defendant Ms. Teresa Marlino, MD.

19   1727.  Upon information and belief, Defendants St. Luke's Hospital, and OBHG PA,

20   through their agent, employee, or assign, Defendant Ms. Teresa Marlino, MD, abused

21   her conditionally privileged occasion when as a medical provider with the ability to alter

22   and manipulate medical records, did represent and publish statements that Plaintiff Mr.

23   Smith acted with behavior requiring a no trespass order.

1728.  Plaintiff Mr. Smith is a private individual and not a public figure.

1729.  Since this is a case of a private figure plaintiff redressing issues of private concern, the appropriate standard for this libel claim is one of negligence.

1730.  Negligence: (1) Medical providers with the ability to alter medical records are required to maintain records that do not place legal representations in those records that reflect the legal status of someone other than the record holder themselves.

1731.  Negligence: (2) Medical provider Defendant Ms. Teresa Marlino, MD, cast unnecessary and harmful aspersions in medical records when Defendant Ms. Teresa Marlino, MD, represented in Mrs. Smith's medical records that Plaintiff Mr. Smith, "Michael then became agitated, very angry and was using obscenities with me," which was a harmful and misleading representation in Mrs. Smith's medical records about the character of Plaintiff Mr. Smith.

1732.  Negligence: (3) Upon information and belief, but for the actions of the Defendant attesting to Plaintiff Mr. Smith as an individual befitting of a no-trespass order, Plaintiff Mr. Smith would not have suffered the aforementioned harms and indignities mentioned earlier in this allegation of libelous defamation, as well, it is possible that Plaintiff Mr. Smith would not have had pervasive and injurious inquiries about private family matters by state officials.

1733.  Negligence: (4) Plaintiff has suffered substantial harm as a result of Defendant's conduct, including but not limited to, emotional and psychological distress, pain and suffering, and injury to his reputation.

1734.  In *libel per quod* cases Pennsylvania defamation law considers extrinsic supporting evidence of libelous behavior if the injurious nature of the words is not apparent.[104]

1735.  Upon information and belief, Plaintiff can demonstrate by a preponderance of evidence that through the presentation of medical records, informational reports, and other administrative documentation that the libelous statement was not a mere description of the father for the medical edification of potential diagnosis concerning Mrs. Smith, but was instead a statement intended to cast unfounded and harmful aspersions on Plaintiff Mr. Smith.

1736.  Plaintiff will need to demonstrate necessary innuendo by Defendant Parties.

1737.  "Innuendo", "define[s] the defamatory meaning which the plaintiff attaches to the words" and "show[s] how they come to have that meaning and how they relate to the plaintiff."[105]

1738.  A 'no trespass' order is not supposed to be contrived without meaning and therefore carries with it the implied weight of violence if such a person were to trespass.

1739.  When Defendant Ms. Teresa Marlino, MD wrote the libelous statement with the weight of the authority of her position it was to make clear to other medical professionals, administrators, and/or county personnel that Plaintiff Mr. Smith is a person of violent nature who cannot be around his newborn baby or hospital personnel.

---

[104]*Joseph*, 959 A.2d at n.23.

[105]*Cosgrove Studio & Camera Shop, Inc. v. Pane*, 408 Pa. 314, 319 (Pa. 1962) (citations omitted).

1740.  The libelous statement relates to Plaintiff Mr. Smith because the statement is about the father of the newborn child, Plaintiff Mr. Smith, and the libelous statement is contained in the mother of the child's medical records.

1741.  Upon information and belief, Plaintiff can demonstrate by a preponderance of evidence that the Defendants St. Luke's Hospital, and OBHG PA supervised Ms. Teresa Marlino, MD, in connection with this allegation and are therefore liable under a legal theory of respondeat superior.

1742.  Upon information and belief, Defendants St. Luke's Hospital, OBHG PA, supervised Ms. Teresa Marlino's conduct violated Plaintiffs' rights under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

*Or, In the Alternative*

*Libel by Implication V(c)*

1743.  The statement in Mrs. Smith's medical records as represented by Defendant Ms. Teresa Marlino, MD, that "Michael then became agitated, very angry and was using obscenities with me," harmed the reputation of Plaintiff Mr. Smith in the estimation of the community by stating that Plaintiff Mr. Smith is an individual of violent character, and that acted in a manner befitting a no trespassing order from the Bethlehem Police Department.

1744.  The defamatory statement is harmful in character because it states that Plaintiff Mr. Smith, at the behest of Defendants St. Luke's Hospital, and OBHG PA, is a person capable of such violence that he cannot be permitted on Defendant St. Luke's Hospital's property to visit with his newborn baby in the N.I.C.U.

1745.  Defendant Ms. Teresa Marlino, MD, published the defamatory statement in Mrs. Smith's medical records where the statements were read by every medical provider who thereafter consulted Mrs. Smith's medical records for an update on her status, as well as, other state parties when they became involved in investigating the Smith Family.

1746.  Upon information and belief, it can be demonstrated through Defendant testimonies, examinations of medical records, and hospital policies, such as, in-person, around the clock surveillance of a newborn baby by male hospital security officers, that recipients of the publication understood that the meaning of the publication was that Plaintiff Mr. Smith may attempt to violently infiltrate the NICU at Defendant St. Luke's Hospital to recover his child.

1747.  Since the defamatory statement is contained within Mrs. Smith's medical records, and because Plaintiff Mr. Smith is the husband of Mrs. Smith it was clear that the defamatory statement was to be applied to Plaintiff Mr. Smith.

1748.  Harm suffered by the Plaintiff includes, but is not limited to, a hostile atmosphere, exacerbating Plaintiff's mental health condition, causing a postpartum father to needlessly suffer without his newborn baby who was in neonatal intensive care, staff ratifying each other's invalid moral positions leading other staff to regard their inappropriate actions with a sense of false righteousness, and a baseless reputation for violent behavior, by  Defendants St. Luke's Hospital, and OBHG PA through their agent, employee, or assign, Defendant Ms. Teresa Marlino, MD.

1749.  Upon information and belief, St. Luke's Hospital, and OBHG PA, through their agent, employee, or assign, Defendant Ms. Teresa Marlino, MD, abused her conditionally privileged occasion when as a medical provider with the ability to alter and

1   manipulate medical records, did represent and publish statements that Plaintiff Mr.

2   Smith acted with behavior befitting a no trespass order.

3   1750.  Plaintiff Mr. Smith is a private individual and not a public figure.

4   1751.  Since this is a case of a private figure plaintiff redressing issues of private

5   concern, the appropriate standard for this libel claim is one of negligence.

6   1752.  Negligence: (1) Medical providers with the ability to alter medical records are

7   required to maintain records that do not place legal representations in those records

8   that reflect the legal status of someone other than the record holder themselves.

9   1753.  Negligence: (2) Medical provider Defendant Ms. Teresa Marlino, MD cast

10  unnecessary and harmful aspersions in medical records when Defendant Ms. Teresa

11  Marlino, MD represented in Mrs. Smith's medical records that Plaintiff Mr. Smith,

12  "Michael then became agitated, very angry and was using obscenities with me," which

13  was a harmful and misleading representation in Mrs. Smith's medical records about the

14  character of Plaintiff Mr. Smith.

15  1754.  Negligence: (3) Upon information and belief, but for the actions of the Defendant

16  attesting to Plaintiff Mr. Smith as an individual befitting of a no-trespass order, Plaintiff

17  Mr. Smith would not have suffered the aforementioned harms and indignities mentioned

18  earlier in this allegation of libelous defamation, as well, it is possible that Plaintiff Mr.

19  Smith would not have had pervasive and injurious inquiries about private family matters

20  by state officials.

21  1755.  Negligence: (4) Plaintiff has suffered substantial harm as a result of Defendant's

22  conduct, including but not limited to, emotional and psychological distress, pain and

23  suffering, and injury to his reputation.

1756.  In *libel per quod* cases Pennsylvania defamation law considers extrinsic supporting evidence of libelous behavior if the injurious nature of the words is not apparent.[106]

1757.  Upon information and belief, Plaintiff can demonstrate by a preponderance of evidence that through the presentation of medical records, informational reports, and other administrative documentation that the libelous statement was not a mere description of the father for the medical edification of potential diagnosis concerning Mrs. Smith, but was instead a statement intended to cast unfounded and harmful aspersions on Plaintiff Mr. Smith.

1758.  Libel by Implication occurs when "true facts that in context imply a falsehood."[107]

1759.  In addition, "the literal accuracy of separate statements will not render a communication 'true' where, as here, the implication of the communication as a whole was false."[108]

1760.  Upon information and belief, Plaintiff Mr. Smith can demonstrate by a preponderance of the evidence that any one statement in Mrs. Smith's medical records may be true, but the implication of the communications as a whole in Mrs. Smith's medical records is false.

---

[106]Joseph, 959 A.2d at n.23.

[107]*Dunlap v. Philadelphia Newspapers, Inc.*, 301 Pa. Super. 475, 491 (Pa. Super. Ct. 1982) (emphasis omitted).

[108]*Id.* at 493.

1761.  As well, if "the defendant juxtaposes [a] series of fact so as to imply a defamatory connection between them, or [otherwise] creates a defamatory implication…" then a libelous statement by implication is present.[109]

1762.  Upon information and belief, Plaintiff Mr. Smith can demonstrate by a preponderance of the evidence that many facts contained within Mrs. Smith's medical records juxtaposes a series of facts so as to imply a defamatory connection of violent predilections by Plaintiff Mr. Smith.

1763.  Although it may be literally true that, "Michael then became agitated, very angry and was using obscenities with me," a likely reason to make that statement in Mrs. Smith's medical records was to imply the falsehood that Plaintiff Mr. Smith is of violent nature.

1764.  If Plaintiff Mr. Smith was "agitated" it was in reasonable proportion to the fact that his wife was being accused of methamphetamine ingestion and that it was implied that his son Newborn baby J.A.S. was suffering the deleterious effects of methamphetamine ingestion by Plaintiff Mr. Smith's wife Mrs. Smith; however, Plaintiff Mr. Smith's anger never exceeded the bounds of reasonable civil discourse.

1765.  If Plaintiff Mr. Smith was "very angry" it was in reasonable proportion to the fact that his wife was being accused of methamphetamine ingestion and that it was implied that his son Newborn baby J.A.S. was suffering the deleterious effects of methamphetamine ingestion by Plaintiff Mr. Smith's wife Mrs. Smith; however, Plaintiff Mr. Smith's anger never exceeded the bounds of reasonable civil discourse.

---

[109]*Fanelle v. LoJack Corp.*, 2000 U.S. Dist. LEXIS 17767, *10 (E.D. Pa. Dec. 7, 2000).

1766.  If Plaintiff Mr. Smith was "using obscenities" it was in reasonable proportion to the fact that his wife was being accused of methamphetamine ingestion and that it was implied that his son Newborn baby J.A.S. was suffering the deleterious effects of methamphetamine ingestion by Plaintiff Mr. Smith's wife Mrs. Smith; however, Plaintiff Mr. Smith's obscenities never exceeded the bounds of reasonable civil discourse, did not contain what a reasonable person would call "curse words", nor did any verbal espousals by Plaintiff Mr. Smith appeal to a prurient interest.

1767.  Upon information and belief, Plaintiff Mr. Smith can demonstrate by a preponderance of evidence that the Defendants St. Luke's Hospital, and OBHG PA supervised Defendant Ms. Teresa Marlino, MD, in connection with this allegation and are therefore liable under a legal theory of respondeat superior.

1768.  Upon information and belief, Defendants St. Luke's Hospital, OBHG PA, supervised Ms. Teresa Marlino's conduct violated Plaintiffs' rights under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

**Damages for Libel V(a-c)**

1769.  Plaintiff Mr. Smith suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiff respectfully requests an amount of $595,000 in compensatory damages per Defendant.

1770.  Given the substantial wealth of the Defendants St. Luke's Hospital, OBHG PA, and Ms. Teresa Marlino, MD, and therefore, their ability to afford the appropriate training

1   to avoid this egregious violation of the Pennsylvania Statutory Law, and, since harm

2   was actually caused to the current Plaintiff Smith Family, and since harm is likely to

3   continue to harm future postpartum families, and because the acts of the Defendants

4   and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a

5   reckless and wanton manner, the Plaintiffs respectfully request the imposition of

6   punitive damages on Defendants St. Luke's Hospital, OBHG PA, and Ms. Teresa

7   Marlino, MD to deter such Defendants from committing to such conduct in the future

8   which violates Commonwealth of Pennsylvania Statutory Law Plaintiffs respectfully

9   request an amount of $10,000,000 in punitive damages per Defendants St. Luke's

10  Hospital, OBHG PA, and Ms. Teresa Marlino, MD.

11  1771.  In the unlikely event that the jury does not find that Plaintiff Mr. Smith suffered

12  any actual injury despite the deprivation of their statutory law rights, the Plaintiff

13  respectfully requests a nominal judgment of $1.00.

14  # XXVII.   § 42 Pa. C. S. § 8343, Defamation - Libel VI

15  Mr. Michael O. Smith v. St. Luke's Hospital, Onsite Neonatal, & Ms. Cynthia Shultz,

16  MD

17  1772.  Under Pennsylvania defamation law, a communication will be considered

18  defamatory if it "tends so to harm the reputation of [the complaining party] as to lower

1   him in the estimation of the community or to deter third persons from associating or

2   dealing with him."[110]

3   1773.  In order for Plaintiffs to succeed in their claim, they must prove the following

4   elements[111].

5       (1) The defamatory character of the communication;

6       (2) Its publication by the defendant;

7       (3) Its application to the plaintiff;

8       (4) The understanding by the recipient of its defamatory meaning;

9       (5) The understanding by the recipient of it as intended to be applied to the plaintiff;

10      (6) Special harm resulting to the plaintiff from its publication; and

11      (7) Abuse of a conditionally privileged occasion.

12  1774.  The Pennsylvania Supreme Court has abolished an "actual malice" standard and

13  has shifted the inquiry to whether a plaintiff is a private individual or a public figure or

14  public official.[112]

---

[110]*MacElree v. Philadelphia Newspapers*, 544 Pa. 117, 124-125 (Pa. 1996) (citations omitted).

[111]*42 Pa.C.S. § 8343(a)(1-7).*

[112]*Am. Future Sys., Inc. v. Better Bus. Bureau*, 592 Pa. 66, 82-83 (Pa. 2007). However, demonstrations of actual malice on the part of the defendant can lead to wider array of potential damages.

1775.  Pennsylvania has adopted a negligence standard for private figure plaintiff lawsuits regarding issues of private concern.[113]

1776.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the required standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another.[114]

### *The Context*

1777.  Defendants St. Luke's Hospital and Onsite Neonatal, among other parties named and unnamed in this lawsuit, intentionally created an atmosphere hostile to the Smith Family, including Plaintiff Mr. Smith.

1778.  Defendant Ms. Cynthia Shultz, MD, supported the hostile atmosphere intentionally created by Defendants St. Luke's Hospital and Onsite Neonatal.

1779.  Defendants St. Luke's Hospital and Onsite Neonatal coordinated their employee, agent, or assign, Defendant Ms. Cynthia Shultz, MD, towards a narrative that Mrs. Smith ingested methamphetamine and that Mrs. Smith gave birth to Newborn baby J.A.S. who also suffered the deleterious effects of methamphetamine.

---

[113] *Wilson v. Slatalla*, 970 F. Supp. 405, 414 (E.D. Pa. 1997).

[114] *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1780.  The umbilical cord that connected Newborn baby J.A.S. and Mrs. Smith was tested on April 9th, 2021, and was negative for amphetamines and methamphetamines.

1781.  Despite the umbilical cord that connected Newborn baby J.A.S. and Mrs. Smith testing negative for illegal drugs, Defendants St. Luke's Hospital and Onsite Neonatal, acting through agent, employee, or assign Defendant Ms. Cynthia Shultz, MD, continued the narrative that Mrs. Smith had ingested methamphetamine and that Mrs. Smith gave birth to Newborn baby J.A.S. who also suffered the deleterious effects of methamphetamine.

1782.  Medical records on April 9th, 2021, reflect the statement, "[F]amily was requesting discharge at 12 hours of life."

1783.  Mr. and Mrs. Smith requested at approximately 12-hours of Newborn baby J.A.S.'s life that the Smith Family be discharged from Defendant St. Luke's Hospital when practicable, not immediately at 12 hours from birth, as is suggested in the medical records entered by Defendant St. Luke's Hospital agents, employees, and/or assigns.

1784.  Defendant St. Luke's Hospital and Onsite Neonatal, through their agents, employees, or assigns, was further attempting to imply that Plaintiff Mrs. Smith was urgently seeking to go home so that she could consume methamphetamine by making the medical records appear that Plaintiff Mrs. Smith sought to reingest methamphetamine by going home as soon as possible after her newborn baby's birth.

1785.  Beginning on April 10th, 2021 the statement, "High probability of life[-]threatening clinical deterioration in infant's condition without treatment," began regularly appearing in medical records.

1786.  Mr. and Mrs. Smith were not ever told by any agent, employee, or assign of Defendants St. Luke's Hospital or Onsite Neonatal that Newborn baby J.A.S. had a, "High probability of life[-]threatening clinical deterioration…without treatment."

1787.  Despite the accusation of methamphetamine use by Defendants St. Luke's Hospital and Onsite Neonatal and their agents, assigns, or employees, Mrs. Smith was allowed to breastfeed Newborn baby J.A.S.

1788.  Despite Mrs. Smith and Newborn baby J.A.S. being suspected of suffering the deleterious effects of methamphetamine, state mandated policies and procedures for methamphetamine withdrawal were not implemented for Newborn baby J.A.S. by Defendants St. Luke's Hospital, Onsite Neonatal, nor any other health provider.

1789.  Notes on medical records by non-radiology experts from April 11th, 2021, stated that, "…upon admission to the NICU [newborn baby J.A.S.] showed hazy lung fields with expansion to 5-9 ribs."

1790.  Radiology indicates in the medical record no "hazy lung fields" or "expansion" into Newborn baby J.A.S.'s lungs.

1791.  Radiology, instead indicates in the medical record, "Perhaps minimal asymmetric granular opacity on the right. No consolidation. No discernable pneumothorax or layering pleural effusion on limited supine imaging. Osseous structures appear within normal limits for patient age."

1792.  Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal, and other parties named and unnamed in this lawsuit, manipulated the medical records in their own interpretations of the radiologist's report to paint Newborn baby J.A.S. and Mrs. Smith as suffering the deleterious effects of methamphetamine to construct a

1    reason to keep Newborn baby J.A.S. in the hospital against the will and consent of his

2    parents.

3    1793. As represented in the medical documentation, beginning on April 10th, 2021, Mrs.

4    Smith was under constant monitoring by all Defendant St. Luke's Hospital and Onsite

5    Neonatal for "inappropriate behavior" via their agents, employees, and/or assigns.

6    1794. As of April 9th, 2021, Mr. Smith was not allowed to ever be on St. Luke's Hospital

7    Property at the consequence of being arrested.

8    1795. As of April 10th, 2021, Plaintiff Mrs. Smith was supervised around the clock by

9    male security guards, even while breastfeeding, and walking to the restroom.

10    1796. On the evening of April 9th, 2021, after Mr. & Mrs. Smith were ejected from St.

11    Luke's Hospital's property., Defendant Ms. Cynthia Shultz, MD, created an addendum

12    to Newborn baby J.A.S.'s medical records.

13    1797. The addendum written by Defendant Ms. Cynthia Shultz, MD is as follows:

14         "I was called by Dr. Marlino (OB) regarding a concerning

15         parental interaction.

16

17         Dr. Marlino reported that father became agitated and

18         confrontational after learning of the routine report to C&Y for

19         maternal and baby positive UDS screen. She stated that

20         father used offensive language and planned on taking baby

21         from NICU.

22

1        I then checked on infant and learned from nursing that father

2        had been in the room with infant with the intent of taking the

3        baby.  Father left the NICU to obtain his car seat.

4

5        I then had nursing call security while I notified the NICU

6        medical director.  NICU medical director notified hospital

7        legal and leadership team.  The NICU and OB wards were

8        placed on security lock down.  Next, police were called.

9

10       I was instructed to call C&Y to report the current situation.  I

11       spoke with Tonya #402 and reported the events as stated

12       above. As this infant is on NC respiratory support, IV fluids

13       and IV antibiotics, he is not stable for discharge.

14

15       Per report from leadership, father was given a no

16       trespassing order and will be arrested if he returns to the

17       hospital.

18

19       Plan for the infant to remain in the NICU until clinically ready

20       for discharge and further guidance from C&Y and/or legal

21       team..[..]"

22   1798.  Upon information and belief, Defendant Ms. Cynthia Shultz, MD participated in

23   and approved of a false narrative concerning Plaintiff Mr. Smith, that Plaintiff Mr. Smith

1    was in some way too dangerous or violent to be allowed to visit his son Newborn baby

2    J.A.S. on Defendant St. Luke's Hospital's property.

3                                    **The Libelous Statement**

4    1799.  Upon information and belief, Defendant Ms. Cynthia Shultz, MD supported the

5    hostile atmosphere intentionally created by Defendants St. Luke's Hospital and/or

6    Onsite Neonatal against the Plaintiff Smith Family.

7    1800.  Defendant Ms. Cynthia Shultz, MD, on April 9th, 2021, placed an addendum in

8    Newborn baby J.A.S.'s medical records including the libelous statement represented by

9    Defendant Ms. Cynthia Shultz, MD, "Per report from leadership, father was given a no

10   trespassing order and will be arrested if he returns to the hospital."

11   1801.  Plaintiff Mr. Smith did not ever act in a manner befitting a no trespass order from

12   the Bethlehem Police Department at the behest of Defendants St. Luke's Hospital

13   and/or Onsite Neonatal.

14   1802.  Upon information and belief, Defendant Ms. Cynthia Shultz, MD, supported the

15   false narrative created about Plaintiff Mr. Smith that Mr. Smith acted in a manner

16   befitting a no trespass order by the local police department.

17   1803.  Upon information and belief, there is not any valid reason to place a father's legal

18   information in his newborn child's medical records.

19   1804.  Upon information and belief, there is not any valid reason to place information

20   stating Defendant St. Luke's Hospital will criminally pursue legal measures against a

21   father in his newborn child's medical records.

1805.  A likely reason to place legal information about a newborn child's father in that child's medical records is to attempt to color Plaintiff Mr. Smith as a potentially criminally violent person.

### *Libel Per Se VI(a)*

1806.  The statement in Newborn baby J.A.S.'s medical records as represented by Defendant Ms. Cynthia Shultz, MD, that "Per report from leadership, father was given a no trespassing order and will be arrested if he returns to the hospital," harmed the reputation of Plaintiff Mr. Smith in the estimation of the community by stating that Plaintiff Mr. Smith is an individual of criminal caliber, and that he acted in a manner befitting a no trespassing order from the Bethlehem Police Department.

1807.  The defamatory statement is harmful in character because it states that Plaintiff Mr. Smith, at the behest of Defendants St. Luke's Hospital and/or Onsite Neonatal, is a person capable of such violence that he cannot be permitted on Defendant St. Luke's Hospital property to visit with his newborn baby child in the N.I.C.U.

1808.  Defendant Ms. Cynthia Shultz, MD, published the defamatory statement in Newborn baby J.A.S.'s medical records where the statements were read by every medical provider who thereafter consulted Newborn baby J.A.S.'s medical records for an update on his status or history, as well as, other state parties when they became involved in investigating the Smith Family.

1809.  Upon information and belief, it can be demonstrated through Defendant testimonies, examinations of medical records, and hospital policies, such as, in-person, around the clock surveillance of a newborn baby child by hospital security officers, that

1  recipients of the publication understood that the meaning of the publication was that

2  Plaintiff Mr. Smith may attempt to violently infiltrate the NICU at Defendant St. Luke's

3  Hospital to recover his child.

4  1810.  Since the defamatory statement is contained within Newborn baby J.A.S.'s

5  medical records, and because Plaintiff Mr. Smith is the father of Newborn baby J.A.S. it

6  was clear that the defamatory statement was to be applied to Plaintiff Mr. Smith.

7  1811.  Harm suffered by the Plaintiff includes, but is not limited to, a hostile atmosphere,

8  exacerbating Plaintiff's mental health condition, causing a postpartum father to

9  needlessly suffer without his newborn baby who was in neonatal intensive care, staff

10  ratifying each other's invalid moral positions leading other staff to regard their

11  inappropriate actions with a sense of false righteousness, and a baseless reputation for

12  violent behavior, by Defendants St. Luke's Hospital and Onsite Neonatal through their

13  agent, employee, or assign, Defendant Ms. Cynthia Shultz, MD.

14  1812.  Upon information and belief, Defendants St. Luke's Hospital and Onsite

15  Neonatal, through their agent, employee, or assign, Defendant Ms. Cynthia Shultz, MD,

16  abused her conditionally privileged occasion when as a medical provider with the ability

17  to alter and manipulate medical records, did represent and publish statements that

18  Plaintiff Mr. Smith acted with behavior requiring a no trespass order.

19  1813.  Plaintiff Mr. Smith is a private individual and not a public figure.

20  1814.  Since this is a case of a private figure plaintiff redressing issues of private

21  concern, the appropriate standard for this libel claim is one of negligence.

1815.  Negligence: (1) Medical providers with the ability to alter medical records are required to maintain records that do not place legal representations in those records that reflect the legal status of someone other than the record holder themselves.

1816.  Negligence: (2) Medical provider Defendant Ms. Cynthia Shultz, MD cast unnecessary and harmful aspersions in medical records when Defendant Ms. Cynthia Shultz, MD represented in Newborn baby J.A.S.'s medical records that Plaintiff Mr. Smith, "Per report from leadership, father was given a no trespassing order and will be arrested if he returns to the hospital," which was a harmful and misleading representation in Newborn baby J.A.S.'s medical records about the character of Plaintiff Mr. Smith.

1817.  Negligence: (3) Upon information and belief, but for the actions of the Defendant attesting to Plaintiff Mr. Smith as an individual befitting of a no-trespass order, Plaintiff Mr. Smith would not have suffered the aforementioned harms and indignities mentioned earlier in this allegation of libelous defamation, as well, it is possible that Plaintiff Mr. Smith would not have had pervasive and injurious inquiries about private family matters by state officials.

1818.  Negligence: (4) Plaintiff has suffered substantial harm as a result of Defendant's conduct, including but not limited to, emotional and psychological distress, pain and suffering, and injury to his reputation.

1819.  In *libel per se* cases Pennsylvania defamation law considers "Words that on their face and without the aid of extrinsic evidence are recognized as injurious are actionable per se…."[115]

1820.  Upon information and belief, Defendants directly and unequivocally accused Plaintiff Mr. Smith of being an individual violent enough that a no trespass order was appropriate for his character, so much so, that such information should appear in his newborn child's medical records, are on their face and without the aid of extrinsic evidence injurious, and actionable for a *libel per se* claim.

1821.  In *libel pe se* cases, Pennsylvania law observes that, "words imputing a criminal offense, loathsome disease, business misconduct or serious sexual misconduct" will be considered defamatory per se.[116]

1822.  Since Defendants directly and unequivocally accused Plaintiff Mr. Smith of having the characteristics of a trespasser, and thereby a criminal, in his newborn child's medical records, and since trespassing is an act violating the law, the Defendants' imputed a criminal offense, thereby making this an actionable *libel per se* claim.

1823.  Upon information and belief, Plaintiff can demonstrate by a preponderance of evidence that the Defendants St. Luke's Hospital and/or Onsite Neonatal supervised Ms. Cynthia Shultz, MD, in connection with this allegation and is therefore liable under a legal theory of respondeat superior.

---

[115]*Joseph v. Scranton Times L.P.*, 959 A.2d 322, n.23 (Pa. Super. Ct. 2008).

[116]*Hrishenko v. Coombs*, 2014 Pa. Super. Unpub. LEXIS 880, *9 (Pa. Super. Ct. 2014).

1824.  Upon information and belief, Defendants St. Luke's Hospital, and/or Onsite

Neonatal, supervised Defendant Ms. Cynthia Shultz's conduct violated Plaintiffs' rights

under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

*Or, In the Alternative,*

*Libel Per Quod VI(b)*

1825.  The statement in Newborn baby J.A.S.'s medical records as represented by

Defendant Ms. Cynthia Shultz, MD, that "Per report from leadership, father was given a

no trespassing order and will be arrested if he returns to the hospital," harmed the

reputation of Plaintiff Mr. Smith in the estimation of the community by stating that

Plaintiff Mr. Smith is an individual of criminal caliber, and that Plaintiff Mr. Smith acted in

a manner befitting a no trespassing order from the Bethlehem Police Department.

1826.  The defamatory statement is harmful in character because it states that Plaintiff

Mr. Smith, at the behest of Defendants St. Luke's Hospital and/or Onsite Neonatal, is a

person capable of such violence that he cannot be permitted on Defendant St. Luke's

Hospital Property to visit with his newborn baby child in the N.I.C.U.

1827.  Defendant Ms. Cynthia Shultz, MD, published the defamatory statement in

Newborn baby J.A.S.'s medical records where the statements were read by every

medical provider who thereafter consulted Newborn baby J.A.S.'s medical records for

an update on his status or history, as well as, other state parties when they became

involved in investigating the Smith Family.

1828.  Upon information and belief, it can be demonstrated through Defendant

testimonies, examinations of medical records, and hospital policies, such as, in-person,

1   around the clock surveillance of a newborn baby by hospital security officers, that

2   recipients of the publication understood that the meaning of the publication was that

3   Plaintiff Mr. Smith may attempt to violently infiltrate the NICU at Defendant St. Luke's

4   Hospital to recover his child.

5   1829.  Since the defamatory statement is contained within Newborn baby J.A.S.'s

6   medical records, and because Plaintiff Mr. Smith is the father of Newborn baby J.A.S., it

7   was clear that the defamatory statement was to be applied to Plaintiff Mr. Smith.

8   1830.  Harm suffered by the Plaintiff includes, but is not limited to, a hostile atmosphere,

9   exacerbating Plaintiff's mental health condition, causing a postpartum father to

10   needlessly suffer without his newborn baby child who was in neonatal intensive care,

11   staff ratifying each other's invalid moral positions leading other staff to regard their

12   inappropriate actions with a sense of false righteousness, and a baseless reputation for

13   violent behavior, by Defendants St. Luke's Hospital and Onsite Neonatal through their

14   agent, employee, or assign, Defendant Ms. Cynthia Shultz, MD.

15   1831.  Upon information and belief, Defendant St. Luke's Hospital and Onsite Neonatal,

16   through their agent, employee, or assign, Defendant Ms. Cynthia Shultz, MD, abused

17   her conditionally privileged occasion when as a medical provider with the ability to alter

18   and manipulate medical records, did represent and publish statements that Plaintiff Mr.

19   Smith's behavior required a no trespass order.

20   1832.  Plaintiff Mr. Smith is a private individual and not a public figure.

21   1833.  Since this is a case of a private figure plaintiff redressing issues of private

22   concern, the appropriate standard for this libel claim is one of negligence.

1834.  Negligence: (1) Medical providers with the ability to alter medical records are required to maintain records that do not place legal representations in those records that reflect the legal status of someone other than the record holder themselves.

1835.  Negligence: (2) Medical provider Defendant Ms. Cynthia Shultz, MD, cast unnecessary and harmful aspersions in medical records when Defendant Ms. Cynthia Shultz, MD, represented in Newborn baby J.A.S.'s medical records that Plaintiff Mr. Smith, "Per report from leadership, father was given a no trespassing order and will be arrested if he returns to the hospital," which was a harmful and misleading representation in Newborn baby J.A.S.'s medical records about the character of Plaintiff Mr. Smith.

1836.  Negligence: (3) Upon information and belief, but for the actions of the Defendant attesting to Plaintiff Mr. Smith as an individual befitting of a no-trespass order, Plaintiff Mr. Smith would not have suffered the aforementioned harms and indignities mentioned earlier in this allegation of libelous defamation, as well, it is possible that Plaintiff Mr. Smith would not have had pervasive and injurious inquiries about private family matters by state officials.

1837.  Negligence: (4) Plaintiff has suffered substantial harm as a result of Defendant's conduct, including but not limited to, emotional and psychological distress, pain and suffering, and injury to his reputation.

1   1838.  In *libel per quod* cases Pennsylvania defamation law considers extrinsic

2   supporting evidence of libelous behavior if the injurious nature of the words is not

3   apparent.[117]

4   1839.  Upon information and belief, Plaintiff can demonstrate by a preponderance of

5   evidence that through the presentation of medical records, informational reports, and

6   other administrative documentation that the libelous statement was not a mere

7   description of the father for the medical edification of potential diagnosis concerning

8   Newborn baby J.A.S., but was instead a statement intended to cast unfounded and

9   harmful aspersions on Plaintiff Mr. Smith.

10  1840.  Plaintiff will need to demonstrate necessary innuendo by Defendant Parties.

11  1841.  "Innuendo", "define[s] the defamatory meaning which the plaintiff attaches to the

12  words" and "show[s] how they come to have that meaning and how they relate to the

13  plaintiff."[118]

14  1842.  A 'no trespass' order is not supposed to be contrived without meaning and

15  therefore carries with it the implied weight of violence if such a person were to trespass.

16  1843.  When Defendant Ms. Cynthia Shultz, MD wrote the libelous statement with the

17  weight of the authority of her position it was to make clear to other medical

18  professionals, administrators, and/or county personnel that Plaintiff Mr. Smith is a

---

[117]Joseph, 959 A.2d at n.23.

[118]*Cosgrove Studio & Camera Shop, Inc. v. Pane*, 408 Pa. 314, 319 (Pa. 1962) (citations omitted).

1   person of violent nature who cannot be around his newborn baby child or hospital

2   personnel.

3   1844.  The libelous statement relates to Plaintiff Mr. Smith because the statement is

4   about the father of the newborn child, Plaintiff Mr. Smith, and the libelous statement is in

5   Newborn baby J.A.S.'s medical records.

6   1845.  Upon information and belief, Plaintiff can demonstrate by a preponderance of

7   evidence that the Defendants St. Luke's Hospital and/or Onsite Neonatal supervised

8   Ms. Cynthia Shultz, MD, in connection with this allegation and are therefore liable under

9   a legal theory of respondeat superior.

10   1846.  Upon information and belief, Defendants St. Luke's Hospital, and/or Onsite

11   Neonatal, supervised Defendant Ms. Cynthia Shultz's conduct violated Plaintiffs' rights

12   under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

13   *Or, In the Alternative*

14   *Libel by Implication VI(c)*

15   1847.  The statement in Newborn baby J.A.S.'s medical records as represented by

16   Defendant Ms. Cynthia Shultz, MD, that "Per report from leadership, father was given a

17   no trespassing order and will be arrested if he returns to the hospital," harmed the

18   reputation of Plaintiff Mr. Smith in the estimation of the community by stating that

19   Plaintiff Mr. Smith is an individual of criminal caliber, and that Plaintiff Mr. Smith acted in

20   a manner befitting a no trespassing order from the Bethlehem Police Department.

21   1848.  The defamatory statement is harmful in character because it states that Plaintiff

22   Mr. Smith, at the behest of Defendants St. Luke's Hospital and/or Onsite Neonatal, is a

1  person capable of such violence that he cannot be permitted on Defendant St. Luke's

2  Hospital's property to visit with his newborn baby child in the N.I.C.U. or support his

3  postpartum wife.

4  1849.  Defendant Ms. Cynthia Shultz, MD, published the defamatory statement in

5  Newborn baby J.A.S.'s medical records where the statements were read by every

6  medical provider who thereafter consulted Newborn baby J.A.S.'s medical records for

7  an update on his status, as well as, other state parties when they became involved in

8  investigating the Smith Family.

9  1850.  Upon information and belief, it can be demonstrated through Defendant

10  testimonies, examinations of medical records, and hospital policies, such as, in-person,

11  around the clock surveillance of a newborn baby child by hospital security officers, that

12  recipients of the publication understood that the meaning of the publication was that

13  Plaintiff Mr. Smith may attempt to violently infiltrate the NICU at Defendant St. Luke's

14  Hospital to recover his child.

15  1851.  Since the defamatory statement is contained within Newborn baby J.A.S.'s

16  medical records, and because Plaintiff Mr. Smith is the father of Newborn baby J.A.S. it

17  was clear that the defamatory statement was to be applied to Plaintiff Mr. Smith.

18  1852.  Harm suffered by the Plaintiff includes, but is not limited to, a hostile atmosphere,

19  exacerbating Plaintiff's mental health condition, causing a postpartum father to

20  needlessly suffer without his newborn baby child who was in neonatal intensive care,

21  staff ratifying each other's invalid moral positions leading other staff to regard their

22  inappropriate actions with a sense of false righteousness, and a baseless reputation for

violent behavior, by Defendants St. Luke's Hospital and Onsite Neonatal through their agent, employee, or assign, Defendant Ms. Cynthia Shultz, MD.

1853.  Upon information and belief, Defendants St. Luke's Hospital and Onsite Neonatal, through their agent, employee, or assign, Defendant Ms. Cynthia Shultz, MD, abused his conditionally privileged occasion when as a medical provider with the ability to alter and manipulate medical records, did represent and publish statements that Plaintiff Mr. Smith acted with behavior befitting a no trespass order.

1854.  Plaintiff Mr. Smith is a private individual and not a public figure.

1855.  Since this is a case of a private figure plaintiff redressing issues of private concern, the appropriate standard for this libel claim is one of negligence.

1856.  Negligence: (1) Medical providers with the ability to alter medical records are required to maintain records that do not place legal representations in those records that reflect the legal status of someone other than the record holder themselves.

1857.  Negligence: (2) Medical provider Defendant Ms. Cynthia Shultz, MD cast unnecessary and harmful aspersions in medical records when Defendant Ms. Cynthia Shultz, MD represented in Newborn baby J.A.S.'s medical records that Plaintiff Mr. Smith, "Per report from leadership, father was given a no trespassing order and will be arrested if he returns to the hospital," which was a harmful and misleading representation in Newborn baby J.A.S.'s medical records about the character of Plaintiff Mr. Smith.

1858.  Negligence: (3) Upon information and belief, but for the actions of the Defendant attesting to Plaintiff Mr. Smith as an individual befitting of a no-trespass order, Plaintiff Mr. Smith would not have suffered the aforementioned harms and indignities mentioned

1    earlier in this allegation of libelous defamation, as well, it is possible that Plaintiff Mr.

2    Smith would not have had pervasive and injurious inquiries about private family matters

3    by state officials.

4    1859.  Negligence: (4) Plaintiff has suffered substantial harm as a result of Defendant's

5    conduct, including but not limited to, emotional and psychological distress, pain and

6    suffering, and injury to his reputation.

7    1860.  In *libel per quod* cases Pennsylvania defamation law considers extrinsic

8    supporting evidence of libelous behavior if the injurious nature of the words is not

9    apparent.[119]

10   1861.  Upon information and belief, Plaintiff can demonstrate by a preponderance of

11   evidence that through the presentation of medical records, informational reports, and

12   other administrative documentation that the libelous statement was not a mere

13   description of the father for the medical edification of potential diagnosis concerning

14   Newborn baby J.A.S., but was instead a statement intended to cast unfounded and

15   harmful aspersions on Plaintiff Mr. Smith.

16   1862.  Libel by Implication occurs when "true facts that in context imply a falsehood."[120]

---

[119]Joseph, 959 A.2d at n.23.

[120]*Dunlap v. Philadelphia Newspapers, Inc.*, 301 Pa. Super. 475, 491 (Pa. Super. Ct. 1982) (emphasis omitted).

1863.  In addition, "the literal accuracy of separate statements will not render a communication 'true' where, as here, the implication of the communication as a whole was false."[121]

1864.  Upon information and belief, Plaintiff Mr. Smith can demonstrate by a preponderance of the evidence that any one statement in Newborn baby J.A.S.'s medical records may be true, but the implication of the communications as a whole in Newborn baby J.A.S.'s medical records is false.

1865.  As well, if "the defendant juxtaposes [a] series of fact so as to imply a defamatory connection between them, or [otherwise] creates a defamatory implication…" then a libelous statement by implication is present.[122]

1866.  Upon information and belief, Plaintiff Mr. Smith can demonstrate by a preponderance of the evidence that many facts contained within Newborn baby J.A.S.'s medical records juxtapose a series of facts so as to imply a defamatory connection of violent predilections by Plaintiff Mr. Smith.

1867.  Although it may be literally true that, "Per report from leadership, father was given a no trespassing order and will be arrested if he returns to the hospital," a likely reason to make that statement in Newborn baby J.A.S.'s medical records is to imply the falsehood that Plaintiff Mr. Smith is of violent nature.

1868.  Upon information and belief, Plaintiff Mr. Smith can demonstrate by a preponderance of evidence that the Defendants St. Luke's Hospital and/or Onsite

---

[121] *Id.* at 493.

[122] *Fanelle v. LoJack Corp.*, 2000 U.S. Dist. LEXIS 17767, *10 (E.D. Pa. Dec. 7, 2000).

1   Neonatal supervised Defendant Ms. Cynthia Shultz, MD, in connection with this

2   allegation and are therefore liable under a legal theory of respondeat superior.

3   1869.  Upon information and belief, Defendants St. Luke's Hospital, and/or Onsite

4   Neonatal, supervised Defendant Ms. Cynthia Shultz's conduct violated Plaintiffs' rights

5   under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

6   **Damages for Libel VI(a-c)**

7   1870.  Plaintiff Mr. Smith suffered substantial harm as a result of Defendants' conduct,

8   including but not limited to, emotional and psychological distress, pain and suffering,

9   fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate

10  compensatory damages to account for PTSD therapies and other related treatments as

11  they have been and will continue to be necessary; Plaintiff respectfully requests an

12  amount of $595,000 in compensatory damages per Defendant.

13  1871.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

14  Neonatal, and Ms. Cynthia Shultz, MD, and therefore, their ability to afford the

15  appropriate training to avoid this egregious violation of the Pennsylvania Statutory Law,

16  and, since harm was actually caused to the current Plaintiff Smith Family, and since

17  harm is likely to continue to harm future postpartum families, and because the acts of

18  the Defendants and their agents, assigns, or employees callously disregarded the

19  Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the

20  imposition of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal,

21  and Ms. Cynthia Shultz, MD to deter such Defendants from committing to such conduct

22  in the future which violates Commonwealth of Pennsylvania Statutory Law Plaintiffs

1   respectfully request an amount of $10,000,000 in punitive damages per Defendants St.

2   Luke's Hospital, Onsite Neonatal, and Ms. Cynthia Shultz, MD.

3   1872.  In the unlikely event that the jury does not find that Plaintiff Mr. Smith suffered

4   any actual injury despite the deprivation of their statutory law rights, the Plaintiff

5   respectfully requests a nominal judgment of $1.00.

6   # XXVIII.   § 42 Pa. C. S. § 8343, Defamation - Libel VII

7   Mr. Michael O. Smith v. St. Luke's Hospital, Onsite Neonatal, & Mr. Patrick

8   Philpot, DO

9   1873.  Under Pennsylvania defamation law, a communication will be considered

10  defamatory if it "tends so to harm the reputation of [the complaining party] as to lower

11  him in the estimation of the community or to deter third persons from associating or

12  dealing with him."[123]

13  1874.  In order for Plaintiffs to succeed in their claim, they must prove the following

14  elements[124].

15  (1) The defamatory character of the communication;

16  (2) Its publication by the defendant;

17  (3) Its application to the plaintiff;

---

[123]*MacElree v. Philadelphia Newspapers*, 544 Pa. 117, 124-125 (Pa. 1996) (citations omitted).

[124]*42 Pa.C.S. § 8343(a)(1-7).*

1    (4) The understanding by the recipient of its defamatory meaning;

2    (5) The understanding by the recipient of it as intended to be applied to the plaintiff;

3    (6) Special harm resulting to the plaintiff from its publication; and

4    (7) Abuse of a conditionally privileged occasion.

5    1875.  The Pennsylvania Supreme Court has abolished an "actual malice" standard and

6    has shifted the inquiry to whether a plaintiff is a private individual or a public figure or

7    public official.[125]

8    1876.  Pennsylvania has adopted a negligence standard for private figure plaintiff

9    lawsuits regarding issues of private concern.[126]

10    1877.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

11    or obligation recognized by the law, requiring the actor to conform to a certain standard

12    of conduct; (2) a failure to conform to the required standard; (3) a causal connection

13    between the conduct and the resulting injury; and (4) actual loss or damage resulting to

14    the interests of another.[127]

15                                    ***The Context***

---

[125]*Am. Future Sys., Inc. v. Better Bus. Bureau*, 592 Pa. 66, 82-83 (Pa. 2007). However,

demonstrations of actual malice on the part of the defendant can lead to wider array of

potential damages.

[126]*Wilson v. Slatalla*, 970 F. Supp. 405, 414 (E.D. Pa. 1997).

[127]*See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933,

938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir.

1993).

1878.  Defendants St. Luke's Hospital and Onsite Neonatal, among other parties named and unnamed in this lawsuit, intentionally created an atmosphere hostile to the Smith Family, including Plaintiff Mr. Smith.

1879.  Defendant Mr. Patrick Philpot, DO supported the hostile atmosphere intentionally created by Defendants St. Luke's Hospital and Onsite Neonatal.

1880.  Defendants St. Luke's Hospital and Onsite Neonatal coordinated their employee, agent, or assign, Defendant Mr. Patrick Philpot, DO, towards a narrative that Mrs. Smith ingested methamphetamine and that Plaintiff Mrs. Smith gave birth to Newborn baby J.A.S. who also suffered the deleterious effects of methamphetamine.

1881.  The umbilical cord that connected Newborn baby J.A.S. and Mrs. Smith was tested on April 9th, 2021, and was negative for amphetamines and methamphetamines.

1882.  Despite the umbilical cord that connected Newborn baby J.A.S. and Mrs. Smith testing negative for illegal drugs, Defendants St. Luke's Hospital and Onsite Neonatal, acting through agent, employee, or assign Defendant Mr. Patrick Philpot, DO, continued the narrative that Mrs. Smith ingested methamphetamine and that Mrs. Smith gave birth to Newborn baby J.A.S. who also suffered the deleterious effects of methamphetamine.

1883.  Medical records on April 9th, 2021, reflect the statement, "[F]amily was requesting discharge at 12 hours of life."

1884.  Mr. and Mrs. Smith requested at approximately 12-hours of Newborn baby J.A.S.'s life that the Smith Family be discharged from Defendant St. Luke's Hospital when practicable, not immediately at 12 hours from birth, as is suggested in the medical records entered by Defendant St. Luke's Hospital agents, employees, and/or assigns.

1885.  Defendants St. Luke's Hospital and Onsite Neonatal, through their agents, employees, or assigns, were further attempting to imply that Mrs. Smith was urgently seeking to go home so that she could consume methamphetamine by making the medical records appear that Mrs. Smith sought to reingest methamphetamine by going home as soon as possible after her newborn baby's birth.

1886.  Beginning on April 10th, 2021 the statement, "High probability of life[-]threatening clinical deterioration in infant's condition without treatment," began regularly appearing in medical records.

1887.  Mr. and Mrs. Smith were not ever told by any agent, employee, or assign of Defendants St. Luke's Hospital or Onsite Neonatal that Newborn baby J.A.S. had a, "High probability of life[-]threatening clinical deterioration…without treatment."

1888.  Despite the accusation of methamphetamine use by Defendants St. Luke's Hospital and Onsite Neonatal and their agents, assigns, or employees, Plaintiff Mrs. Smith was allowed to breastfeed Newborn baby J.A.S.

1889.  Despite Plaintiffs Mrs. Smith and Newborn baby J.A.S. suspected of suffering the deleterious effects of methamphetamine, state mandated policies and procedures for methamphetamine withdrawal were not implemented for Newborn baby J.A.S. by Defendants St. Luke's Hospital, Onsite Neonatal, nor any other health provider.

1890.  Notes on medical records by non-radiology experts from April 11th, 2021, stated that, "…upon admission to the NICU [newborn baby J.A.S.] showed hazy lung fields with expansion to 5-9 ribs."

1891.  Radiology indicates in the medical record no "hazy lung fields" or "expansion" into Newborn baby J.A.S.'s lungs.

1892.  Radiology, instead indicates in the medical record, "Perhaps minimal asymmetric granular opacity on the right. No consolidation. No discernable pneumothorax or layering pleural effusion on limited supine imaging. Osseous structures appear within normal limits for patient age."

1893.  Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal, and other parties named and unnamed in this lawsuit, manipulated the medical records in their own interpretations of the radiologist's report to paint Newborn baby J.A.S. and Mrs. Smith as suffering the deleterious effects of methamphetamine by constructing a reason to keep Newborn baby J.A.S. in the hospital against the will and consent of his parents.

1894.  As represented in the medical documentation, beginning on April 10th, 2021, Mrs. Smith was under constant monitoring by all Defendant St. Luke's Hospital and Onsite Neonatal for "inappropriate behavior" via their agents, employees, and/or assigns.

1895.  As of April 9th, 2021, Mr. Smith was not allowed to ever be on Defendant St. Luke's Hospital's property at the consequence of being arrested.

1896.  As of April 10th, 2021, Mrs. Smith was supervised around the clock by male security guards, even while breastfeeding, and walking to the restroom.

1897.  On the evening of April 10th, 2021, before Mrs. Smith was reunited with Newborn baby J.A.S., Defendant Mr. Patrick Philpot, DO created an addendum to Newborn baby J.A.S.'s medical records.

1898.  The addendum written by Defendant Mr. Patrick Philpot, DO is as follows:

"Ongoing social concerns discussed with NICU medical

director, Dr. Costello, and Charge RN Mary following input

1                      from SL on-call CM. Dr. Costello spoke with St. Luke's legal

2                      representative, Steve, who has been involved with the case.

3                      Per legal, FOB is unable to visit patient as he was given a

4                      no-trespassing order by Bethlehem Township police

5                      yesterday.  As mother has been appropriate throughout the

6                      day and has not been involved in legal actions, per Steve in

7                      SL legal, mother may visit with supervision.  SLRA hospital

8                      supervisor spoke with charge RN Mary as well as Darla

9                      Frack, hospital administrator, and plan going forward will be

10                     that if mother visits, she can be allowed into the NICU with

11                     security supervision within the baby's NICU pod.  MOB may

12                     only visit alone per St. Luke's visitation policy allowing only

13                     parents to visit and FOB may not visit.  If MOB's behavior is

14                     inappropriate, she will not be allowed to visit the NICU until

15                     the baby is cleared for discharge by CYS."

16  1899.  Upon information and belief, Defendant Mr. Patrick Philpot, DO participated in

17  and approved of a false narrative concerning Plaintiff Mr. Smith, that Plaintiff Mr. Smith

18  was in some way too dangerous or violent to be allowed to visit his son Newborn baby

19  J.A.S. on St. Luke's Hospital's property.

20                                **The Libelous Statement**

1900.  Upon information and belief, Defendant Mr. Patrick Philpot, DO supported the hostile atmosphere intentionally created by Defendants St. Luke's Hospital and Onsite Neonatal against the Plaintiff Smith Family.

1901.  Defendant Mr. Patrick Philpot, DO, on April 10th, 2021, placed an addendum in Newborn baby J.A.S. medical records including the libelous statement represented by Defendant Mr. Philpot, DO, "Per legal, FOB is unable to visit patient as he was given a no-trespassing order by Bethlehem Township police yesterday."

1902.  Plaintiff Mr. Smith did not ever act in a manner befitting a no trespass order from the Bethlehem Police Department at the behest of Defendants St. Luke's Hospital and/or Onsite Neonatal.

1903.  Upon information and belief, Defendant Mr. Patrick Philpot, DO supported the false narrative created about Plaintiff Mr. Smith that Plaintiff Mr. Smith acted in a manner befitting a no trespass order by the local police department.

1904.  Upon information and belief, there is not any valid reason to place a father's legal information in his newborn child's medical records.

1905.  Upon information and belief, there is not any valid reason to place information stating Defendant St. Luke's Hospital will criminally pursue legal measures against a father in his newborn child's medical records.

1906.  A likely reason to place legal information about a newborn child's father in that child's medical records is to attempt to color Plaintiff Mr. Smith as a potentially criminally violent person.

*Libel Per Se VII(a)*

1907.  The statement in Newborn baby J.A.S.'s medical records as represented by Defendant Mr. Patrick Philpot, DO, that "Per legal, FOB is unable to visit patient as he was given a no-trespassing order by Bethlehem Township police yesterday.," harmed the reputation of Plaintiff Mr. Smith in the estimation of the community by stating that Plaintiff Mr. Smith is an individual of criminal caliber, and that acted in a manner befitting a no trespassing order from the Bethlehem Police Department.

1908.  The defamatory statement is harmful in character because it states that Plaintiff Mr. Smith, at the behest of Defendants St. Luke's Hospital and/or Onsite Neonatal, is a person capable of such violence that he cannot be permitted on Defendant St. Luke's Hospital Property to visit with his newborn baby child in the N.I.C.U.

1909.  Defendant Mr. Patrick Philpot, DO, published the defamatory statement in Newborn baby J.A.S.'s medical records where the statements were read by every medical provider who thereafter consulted Newborn baby J.A.S.'s medical records for an update on his status, as well as, other state parties when they became involved in investigating the Smith Family.

1910.  Upon information and belief, it can be demonstrated through Defendant testimonies, examinations of medical records, and hospital policies, such as, in-person, around the clock surveillance of a newborn baby by hospital security officers, that recipients of the publication understood that the meaning of the publication was that Plaintiff Mr. Smith may attempt to violently infiltrate the NICU at Defendant St. Luke's Hospital to recover his child.

1911.  Since the defamatory statement is contained within Newborn baby J.A.S.'s medical records, and because Plaintiff Mr. Smith is the father of Newborn baby J.A.S. it was clear that the defamatory statement was to be applied to Plaintiff Mr. Smith.

1912.  Harm suffered by the Plaintiff includes, but is not limited to, a hostile atmosphere, exacerbating Plaintiff's mental health condition, causing a postpartum father to needlessly suffer without his newborn baby child who was in neonatal intensive care, staff ratifying each other's invalid moral positions leading other staff to regard their inappropriate actions with a sense of false righteousness, and a baseless reputation for violent behavior, by Defendants St. Luke's Hospital and Onsite Neonatal through their agent, employee, or assign, Defendant Mr. Patrick Philpot, DO.

1913.  Upon information and belief, Defendants St. Luke's Hospital and Onsite Neonatal, through their agent, employee, or assign, Defendant Mr. Patrick Philpot, DO, abused his conditionally privileged occasion when as a medical provider with the ability to alter and manipulate medical records, did represent and publish statements that Plaintiff Mr. Smith acted with behavior befitting a no trespass order.

1914.  Plaintiff Mr. Smith is a private individual and not a public figure.

1915.  Since this is a case of a private figure plaintiff redressing issues of private concern, the appropriate standard for this libel claim is one of negligence.

1916.  Negligence: (1) Medical providers with the ability to alter medical records are required to maintain records that do not place legal representations in those records that reflect the legal status of someone other than the record holder themselves.

1917.  Negligence: (2) Medical provider Defendant Mr. Patrick Philpot, DO cast unnecessary and harmful aspersions in medical records when Defendant Mr. Patrick

Philpot, DO represented in Newborn baby J.A.S.'s medical records that Plaintiff Mr.

Smith, "Per legal, FOB is unable to visit patient as he was given a no-trespassing order

by Bethlehem Township police yesterday," which was a harmful and misleading

representation in Newborn baby J.A.S.'s medical records about the character of Plaintiff

Mr. Smith.

1918.  Negligence: (3) Upon information and belief, but for the actions of the Defendant

attesting to Plaintiff Mr. Smith as an individual befitting of a no-trespass order, Plaintiff

Mr. Smith would not have suffered the aforementioned harms and indignities mentioned

earlier in this allegation of libelous defamation, as well, it is possible that Plaintiff Mr.

Smith would not have had pervasive and injurious inquiries about private family matters

by state officials.

1919.  Negligence: (4) Plaintiff has suffered substantial harm as a result of Defendant's

conduct, including but not limited to, emotional and psychological distress, pain and

suffering, and injury to his reputation.

1920.  In *libel per se* cases Pennsylvania defamation law considers "Words that on their

face and without the aid of extrinsic evidence are recognized as injurious are actionable

per se…."[128]

1921.  Upon information and belief, Defendants' directly and unequivocally accused

Plaintiff Mr. Smith of being an individual violent enough that a no trespass order was

appropriate for his character, so much so, that such information should appear in his

---

[128]*Joseph v. Scranton Times L.P.*, 959 A.2d 322, n.23 (Pa. Super. Ct. 2008).

1 newborn child's medical records, are on their face and without the aid of extrinsic

2 evidence injurious, and actionable for a *libel per se* claim.

3 1922.  In *libel pe se* cases, Pennsylvania law observes that, "words imputing a criminal

4 offense, loathsome disease, business misconduct or serious sexual misconduct" will be

5 considered defamatory per se.[129]

6 1923.  Since Defendants' directly and unequivocally accused Plaintiff Mr. Smith of

7 having the characteristics of a trespasser, and thereby a criminal, in his newborn child's

8 medical records, and since trespassing is an act violating the law, the Defendants'

9 imputed a criminal offense, thereby making this an actionable *libel per se* claim.

10 1924.  Upon information and belief, Plaintiff can demonstrate by a preponderance of

11 evidence that the Defendants Private Entities St. Luke's Hospital and/or Onsite

12 Neonatal supervised Defendant Mr. Patrick Philpot, DO, in connection with this

13 allegation and is therefore liable under a legal theory of respondeat superior.

14 1925.  Upon information and belief, Defendants St. Luke's Hospital, and/or Onsite

15 Neonatal, supervised Defendant Mr. Patrick Philpot, DO's conduct which violated

16 Plaintiffs' rights under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

17 *Or, In the Alternative,*

18 *Libel Per Quod VII(b)*

19 1926.  The statement in Newborn baby J.A.S.'s medical records as represented by

20 Defendant Mr. Patrick Philpot, DO, that "Per legal, FOB is unable to visit patient as he

---

[129]*Hrishenko v. Coombs*, 2014 Pa. Super. Unpub. LEXIS 880, *9 (Pa. Super. Ct. 2014).

1     was given a no-trespassing order by Bethlehem Township police yesterday.," harmed

2     the reputation of Plaintiff Mr. Smith in the estimation of the community by stating that

3     Plaintiff Mr. Smith is an individual of criminal caliber, and that Mr. Smith acted in a

4     manner befitting a no trespassing order from the Bethlehem Police Department.

5     1927.  The defamatory statement is harmful in character because it states that Plaintiff

6     Mr. Smith, at the behest of Defendants St. Luke's Hospital and/or Onsite Neonatal, is a

7     person capable of such violence that he cannot be permitted on Defendant St. Luke's

8     Hospital's property to visit with his newborn baby in the N.I.C.U.

9     1928.  Defendant Mr. Patrick Philpot, DO, published the defamatory statement in

10     Newborn baby J.A.S.'s medical records where the statements were read by every

11     medical provider who thereafter consulted Newborn baby J.A.S.'s medical records for

12     an update on his status, as well as, other state parties when they became involved in

13     investigating the Smith Family.

14     1929.  Upon information and belief, it can be demonstrated through Defendant

15     testimonies, examinations of medical records, and hospital policies, such as, in-person,

16     around the clock surveillance of a newborn baby by hospital security officers, that

17     recipients of the publication understood that the meaning of the publication was that

18     Plaintiff Mr. Smith may attempt to violently infiltrate the NICU at Defendant St. Luke's

19     Hospital to recover his child.

20     1930.  Since the defamatory statement is contained within Newborn baby J.A.S.'s

21     medical records, and because Plaintiff Mr. Smith is the father of Newborn baby J.A.S. it

22     was clear that the defamatory statement was to be applied to Plaintiff Mr. Smith.

1931.  Harm suffered by the Plaintiff includes, but is not limited to, a hostile atmosphere, exacerbating Plaintiff's mental health condition, causing a postpartum father to needlessly suffer without his newborn baby child who was in neonatal intensive care, staff ratifying each other's invalid moral positions leading other staff to regard their inappropriate actions with a sense of false righteousness, and a baseless reputation for violent behavior, by Defendants St. Luke's Hospital and Onsite Neonatal through their agent, employee, or assign, Defendant Mr. Patrick Philpot, DO.

1932.  Upon information and belief, Defendants St. Luke's Hospital and Onsite Neonatal, through their agent, employee, or assign, Defendant Mr. Patrick Philpot, DO, abused his conditionally privileged occasion when as a medical provider with the ability to alter and manipulate medical records, did represent and publish statements that Plaintiff Mr. Smith acted with behavior befitting a no trespass order.

1933.  Plaintiff Mr. Smith is a private individual and not a public figure.

1934.  Since this is a case of a private figure plaintiff redressing issues of private concern, the appropriate standard for this libel claim is one of negligence.

1935.  Negligence: (1) Medical providers with the ability to alter medical records are required to maintain records that do not place legal representations in those records that reflect the legal status of someone other than the record holder themselves.

1936.  Negligence: (2) Medical provider Plaintiff Mr. Patrick Philpot, DO cast unnecessary and harmful aspersions in medical records when Defendant Mr. Patrick Philpot, DO represented in Newborn baby J.A.S.'s medical records that Plaintiff Mr. Smith, "Per legal, FOB is unable to visit patient as he was given a no-trespassing order by Bethlehem Township police yesterday," which was a harmful and misleading

1    representation in Newborn baby J.A.S.'s medical records about the character of Plaintiff

2    Mr. Smith.

3    1937.  Negligence: (3) Upon information and belief, but for the actions of the Defendant

4    attesting to Plaintiff Mr. Smith as an individual befitting of a no-trespass order, Plaintiff

5    Mr. Smith would not have suffered the aforementioned harms and indignities mentioned

6    earlier in this allegation of libelous defamation, as well, it is possible that Plaintiff Mr.

7    Smith would not have had pervasive and injurious inquiries about private family matters

8    by state officials.

9    1938.  Negligence: (4) Plaintiff has suffered substantial harm as a result of Defendant's

10   conduct, including but not limited to, emotional and psychological distress, pain and

11   suffering, and injury to his reputation.

12   1939.  In *libel per quod* cases Pennsylvania defamation law considers extrinsic

13   supporting evidence of libelous behavior if the injurious nature of the words is not

14   apparent.[130]

15   1940.  Upon information and belief, Plaintiff can demonstrate by a preponderance of

16   evidence that through the presentation of medical records, informational reports, and

17   other administrative documentation that the libelous statement was not a mere

18   description of the father for the medical edification of potential diagnosis concerning

19   Newborn baby J.A.S., but was instead a statement intended to cast unfounded and

20   harmful aspersions on Plaintiff Mr. Smith.

21   1941.  Plaintiff will need to demonstrate necessary innuendo by Defendant Parties.

---

[130]*Joseph*, 959 A.2d at n.23.

1942.  "Innuendo", "define[s] the defamatory meaning which the plaintiff attaches to the words" and "show[s] how they come to have that meaning and how they relate to the plaintiff."[131]

1943.  A 'no trespass' order is not supposed to be contrived without meaning and therefore carries with it the implied weight of violence if such a person were to trespass.

1944.  When Defendant Mr. Patrick Philpot, DO wrote the libelous statement with the weight of the authority of his position it was to make clear to other medical professionals, administrators, and/or county personnel that Plaintiff Mr. Smith is a person of violent nature who cannot be around his newborn baby or hospital personnel.

1945.  The libelous statement relates to Plaintiff Mr. Smith because the statement is about the father of the newborn child, Plaintiff Mr. Smith, and the libelous statement is in Newborn baby J.A.S.'s medical records.

1946.  Upon information and belief, Plaintiff can demonstrate by a preponderance of evidence that the Defendants St. Luke's Hospital and/or Onsite Neonatal supervised Mr. Patrick Philpot, DO, in connection with this allegation and are therefore liable under a legal theory of respondeat superior.

1947.  Upon information and belief, Defendants St. Luke's Hospital, and/or Onsite Neonatal, supervised Defendant Mr. Patrick Philpot, DO's conduct which violated Plaintiffs' rights under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

---

[131]*Cosgrove Studio & Camera Shop, Inc. v. Pane*, 408 Pa. 314, 319 (Pa. 1962) (citations omitted).

1        *Or, In the Alternative*

2        *Libel by Implication VII(c)*

3    1948.  The statement in Newborn baby J.A.S.'s medical records as represented by

4    Defendant Mr. Patrick Philpot, DO, that "Per legal, FOB is unable to visit patient as he

5    was given a no-trespassing order by Bethlehem Township police yesterday.," harmed

6    the reputation of Plaintiff Mr. Smith in the estimation of the community by stating that

7    Plaintiff Mr. Smith is an individual of criminal caliber, and that acted in a manner befitting

8    a no trespassing order from the Bethlehem Police Department.

9    1949.  The defamatory statement is harmful in character because it states that Plaintiff

10   Mr. Smith, at the behest of Defendants St. Luke's Hospital and/or Onsite Neonatal, is a

11   person capable of such violence that he cannot be permitted on Defendant St. Luke's

12   Hospital Property to visit with his newborn baby child in the N.I.C.U.

13   1950.  Defendant Mr. Patrick Philpot, DO, published the defamatory statement in

14   Newborn baby J.A.S.'s medical records where the statements were read by every

15   medical provider who thereafter consulted Newborn baby J.A.S.'s medical records for

16   an update on his status, as well as, other state parties when they became involved in

17   investigating the Smith Family.

18   1951.  Upon information and belief, it can be demonstrated through Defendant

19   testimonies, examinations of medical records, and hospital policies, such as, in-person,

20   around the clock surveillance of a newborn baby child by hospital security officers, that

21   recipients of the publication understood that the meaning of the publication was that

1  Plaintiff Mr. Smith may attempt to violently infiltrate the NICU at Defendant St. Luke's

2  Hospital to recover his child.

3  1952.  Since the defamatory statement is contained within Newborn baby J.A.S.'s

4  medical records, and because Plaintiff Mr. Smith is the father of Newborn baby J.A.S. it

5  was clear that the defamatory statement was to be applied to Plaintiff Mr. Smith.

6  1953.  Harm suffered by the Plaintiff includes, but is not limited to, a hostile atmosphere,

7  exacerbating Plaintiff's mental health condition, causing a postpartum father to

8  needlessly suffer without his newborn baby child who was in neonatal intensive care,

9  staff ratifying each other's invalid moral positions leading other staff to regard their

10  inappropriate actions with a sense of false righteousness, and a baseless reputation for

11  violent behavior, by Defendants St. Luke's Hospital and Onsite Neonatal through their

12  agent, employee, or assign, Defendant Mr. Patrick Philpot, DO.

13  1954.  Upon information and belief, Defendants St. Luke's Hospital and Onsite

14  Neonatal, through their agent, employee, or assign, Defendant Mr. Patrick Philpot, DO,

15  abused his conditionally privileged occasion when as a medical provider with the ability

16  to alter and manipulate medical records, did represent and publish statements that

17  Plaintiff Mr. Smith acted with behavior befitting a no trespass order.

18  1955.  Plaintiff Mr. Smith is a private individual and not a public figure.

19  1956.  Since this is a case of a private figure plaintiff redressing issues of private

20  concern, the appropriate standard for this libel claim is one of negligence.

21  1957.  Negligence: (1) Medical providers with the ability to alter medical records are

22  required to maintain records that do not place legal representations in those records

23  that reflect the legal status of someone other than the record holder themselves.

1958.  Negligence: (2) Medical provider Defendant Mr. Patrick Philpot, DO cast unnecessary and harmful aspersions in medical records when Defendant Mr. Patrick Philpot, DO represented in Newborn baby J.A.S.'s medical records that Plaintiff Mr. Smith, "Per legal, FOB is unable to visit patient as he was given a no-trespassing order by Bethlehem Township police yesterday," which was a harmful and misleading representation in Newborn baby J.A.S.'s medical records about the character of Plaintiff Mr. Smith.

1959.  Negligence: (3) Upon information and belief, but for the actions of the Defendant attesting to Plaintiff Mr. Smith as an individual befitting of a no-trespass order, Plaintiff Mr. Smith would not have suffered the aforementioned harms and indignities mentioned earlier in this allegation of libelous defamation, as well, it is possible that Plaintiff Mr. Smith would not have had pervasive and injurious inquiries about private family matters by state officials.

1960.  Negligence: (4) Plaintiff has suffered substantial harm as a result of Defendant's conduct, including but not limited to, emotional and psychological distress, pain and suffering, and injury to his reputation.

1961.  In *libel per quod* cases Pennsylvania defamation law considers extrinsic supporting evidence of libelous behavior if the injurious nature of the words is not apparent.[132]

1962.  Upon information and belief, Plaintiff can demonstrate by a preponderance of evidence that through the presentation of medical records, informational reports, and

---

[132]*Joseph,* 959 A.2d at n.23.

1    other administrative documentation that the libelous statement was not a mere

2    description of the father for the medical edification of potential diagnosis concerning

3    Newborn baby J.A.S., but was instead a statement intended to cast unfounded and

4    harmful aspersions on Plaintiff Mr. Smith.

5    1963.  Libel by Implication occurs when "true facts that in context imply a falsehood."[133]

6    1964.  In addition, "the literal accuracy of separate statements will not render a

7    communication 'true' where, as here, the implication of the communication as a whole

8    was false."[134]

9    1965.  Upon information and belief, Plaintiff Mr. Smith can demonstrate by a

10   preponderance of the evidence that any one statement in Newborn baby J.A.S.'s

11   medical records may be true, but the implication of the communications as a whole in

12   Newborn baby J.A.S.'s medical records is false.

13   1966.  As well, if "the defendant juxtaposes [a] series of fact so as to imply a defamatory

14   connection between them, or [otherwise] creates a defamatory implication…" then a

15   libelous statement by implication is present.[135]

16   1967.  Upon information and belief, Plaintiff Mr. Smith can demonstrate by a

17   preponderance of the evidence that many facts contained within Newborn baby J.A.S.'s

---

[133]*Dunlap v. Philadelphia Newspapers, Inc.*, 301 Pa. Super. 475, 491 (Pa. Super. Ct. 1982) (emphasis omitted).

[134]*Id.* at 493.

[135]*Fanelle v. LoJack Corp.*, 2000 U.S. Dist. LEXIS 17767, *10 (E.D. Pa. Dec. 7, 2000).

1   medical records juxtapose a series of facts so as to imply a defamatory connection of

2   violent predilections by Plaintiff Mr. Smith.

3   1968.  Although it may be literally true that, "Per legal, FOB is unable to visit patient as

4   he was given a no-trespassing order by Bethlehem Township Police yesterday[,]" the

5   only reason to make that statement in Newborn baby J.A.S.'s medical records is to

6   imply the falsehood that Plaintiff Mr. Smith is of violent nature.

7   1969.  Upon information and belief, Plaintiff Mr. Smith can demonstrate by a

8   preponderance of evidence that the Defendants St. Luke's Hospital and/or Onsite

9   Neonatal supervised Defendant Mr. Patrick Philpot, DO, in connection with this

10   allegation and are therefore liable under a legal theory of respondeat superior.

11   1970.  Upon information and belief, Defendants St. Luke's Hospital, and/or Onsite

12   Neonatal, supervised Defendant Mr. Patrick Philpot, DO's conduct which violated

13   Plaintiffs' rights under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

14   **Damages for Libel VII(a-c)**

15   1971.  Plaintiff Mr. Smith suffered substantial harm as a result of Defendants' conduct,

16   including but not limited to, emotional and psychological distress, pain and suffering,

17   fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate

18   compensatory damages to account for PTSD therapies and other related treatments as

19   they have been and will continue to be necessary; Plaintiff respectfully requests an

20   amount of $595,000 in compensatory damages per Defendant.

21   1972.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

22   Neonatal, and Mr. Patrick Philpot, DO, and therefore, their ability to afford the

23   appropriate training to avoid this egregious violation of the Pennsylvania Statutory Law,

and, since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum families, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the imposition of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, and Mr. Patrick Philpot, DO to deter such Defendants from committing to such conduct in the future which violates Commonwealth of Pennsylvania Statutory Law Plaintiffs respectfully request an amount of $5,000,000 in punitive damages per Defendant Mr. Patrick Philpot, DO; and $10,000,000 per Defendants St. Luke's Hospital, and Onsite Neonatal.

1973.  In the unlikely event that the jury does not find that Plaintiff Mr. Smith suffered any actual injury despite the deprivation of his statutory law rights, the Plaintiff respectfully requests a nominal judgment of $1.00.

## XXIX.   § 42 Pa. C. S. § 8343, Defamation - Slander I

### Newborn baby J.A.S. and Mrs. Smith v. St. Luke's Hospital, OBHG PA, & Ms. Teresa Marlino, MD

1974.  Under Pennsylvania defamation law, a communication will be considered defamatory if it ""tends so to harm the reputation of [the complaining party] as to lower

1    him in the estimation of the community or to deter third persons from associating or

2    dealing with him."[136]

3    1975.  In order for Plaintiffs to succeed in their claim, they must prove the following

4    elements[137].

5        (1) The defamatory character of the communication;

6        (2) Its publication by the defendant;

7        (3) Its application to the plaintiff;

8        (4) The understanding by the recipient of its defamatory meaning;

9        (5) The understanding by the recipient of it as intended to be applied to the plaintiff;

10       (6) Special harm resulting to the plaintiff from its publication; and

11       (7) Abuse of a conditionally privileged occasion.

12   1976.  The Pennsylvania Supreme Court has abolished an "actual malice" standard and

13   has shifted the inquiry to whether a plaintiff is a private individual or a public figure or

14   public official.[138]

---

[136]*MacElree v. Philadelphia Newspapers*, 544 Pa. 117, 124-125 (Pa. 1996) (citations omitted).

[137]*42 Pa.C.S. § 8343(a)(1-7).*

[138]*Am. Future Sys., Inc. v. Better Bus. Bureau*, 592 Pa. 66, 82-83 (Pa. 2007). However, demonstrations of actual malice on the part of the plainitff can lead to wider array of potential damages.

1977.  Pennsylvania has adopted a negligence standard for private figure plaintiff lawsuits regarding issues of private concern.[139]

1978.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the required standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another.[140]

### *The Context*

1979.  Defendants St. Luke's Hospital, and OBHG PA, among other parties named and unnamed in this lawsuit, intentionally created an atmosphere hostile to the Smith Family, including Plaintiffs Newborn baby J.A.S. and Mrs. Smith.

1980.  Upon information and belief, Defendant Ms. Teresa Marlino, MD, supported the hostile atmosphere intentionally created by Defendants St. Luke's Hospital, and OBHG PA.

1981.  Defendants St. Luke's Hospital, and OBHG PA coordinated their employee, agent, or assign, including Defendant Ms. Teresa Marlino, MD, towards a narrative that Plaintiff Mrs. Smith ingested methamphetamine and that Plaintiff Mrs. Smith gave birth to Newborn baby J.A.S. who also suffered the deleterious effects of methamphetamine.

---

[139] *Wilson v. Slatalla*, 970 F. Supp. 405, 414 (E.D. Pa. 1997).

[140] *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1982.  The umbilical cord that connected Plaintiffs Newborn baby J.A.S. and Mrs. Smith was tested on April 9th, 2021, and was negative for amphetamines and methamphetamines.

1983.  Despite the umbilical cord that connected Plaintiffs Newborn baby J.A.S. and Mrs. Smith testing negative for illegal drugs, Defendants St. Luke's Hospital, and OBHG PA, acting through agent, employee, or assign Defendant Ms. Teresa Marlino, MD, continued the narrative that Plaintiff Mrs. Smith ingested methamphetamine and that Plaintiff Mrs. Smith gave birth to Plaintiff Newborn baby J.A.S. who also suffered the deleterious effects of methamphetamine.

1984.  Medical records on April 9th, 2021, reflect the statement, "[F]amily was requesting discharge at 12 hours of life."

1985.  Mr. and Mrs. Smith requested at approximately 12-hours of Plaintiff Newborn baby J.A.S.'s life that the Smith Family be discharged from Defendant St. Luke's Hospital when practicable, not immediately at 12 hours from birth, as is suggested in the medical records entered by DefendantSt. Luke's Hospital agents, employees, and/or assigns.

1986.  Defendant St. Luke's Hospital, and OBHG PA through their agents, employees, or assigns, was further attempting to imply that Plaintiff Mrs. Smith was urgently seeking to go home so that she could consume methamphetamine by making the medical records appear that Plaintiff Mrs. Smith quickly sought to reingest methamphetamine by going home as soon as possible after her newborn baby's birth.

1987.  Beginning on April 10th, 2021 the statement, "High probability of life[-]threatening clinical deterioration in infant's condition without treatment," began regularly appearing in medical records.

1988.  Mr. and Mrs. Smith were not ever told by any agent, employee, or assign of Defendants St. Luke's Hospital, and, OBHG PA that Plaintiff Newborn baby J.A.S. had a, "High probability of life[-]threatening clinical deterioration…without treatment."

1989.  Despite the accusation of methamphetamine use by Defendants St. Luke's Hospital and OBHG PA and their agents, assigns, or employees, Plaintiff Mrs. Smith was allowed to breastfeed Plaintiff Newborn baby J.A.S.

1990.  Despite Plaintiffs Mrs. Smith and Plaintiff Newborn baby J.A.S. being suspected of suffering the deleterious effects of methamphetamine, state mandated policies and procedures for methamphetamine withdrawal were not implemented for Plaintiff Newborn baby J.A.S. by Defendants St. Luke's Hospital, and OBHG PA, nor any other health provider.

1991.  Notes on medical records by non-radiology experts from April 11th, 2021, stated that, "…upon admission to the NICU [newborn baby J.A.S.] showed hazy lung fields with expansion to 5-9 ribs."

1992.  Radiology indicates in the medical record no "hazy lung fields" or "expansion" into Plaintiff Newborn baby J.A.S.'s lungs.

1993.  Radiology, instead indicates in the medical record, "Perhaps minimal asymmetric granular opacity on the right. No consolidation. No discernable pneumothorax or layering pleural effusion on limited supine imaging. Osseous structures appear within normal limits for patient age."

1994.  Upon information and belief, Defendants St. Luke's Hospital, and OBHG PA, and other parties named and unnamed in this lawsuit, manipulated the medical records in their own interpretations of the radiologist's report to paint Plaintiffs Newborn baby J.A.S. and Mrs. Smith as suffering the deleterious effects of methamphetamine by constructing a reason to keep Plaintiff Newborn baby J.A.S. in the hospital against the will and consent of his parents.

1995.  As represented in the medical documentation, beginning on April 10th, 2021, Plaintiff Mrs. Smith was under constant monitoring by Defendant St. Luke's Hospital, and, OBHG PA for "inappropriate behavior" via their agents, employees, and/or assigns.

1996.  As of April 9th, 2021, Mr. Smith was not allowed to ever be on Defendant St. Luke's Hospital Property at the consequence of being arrested.

1997.  As of April 10th, 2021, Plaintiff Mrs. Smith was supervised around the clock by male security guards, even while breastfeeding, and walking to the restroom.

## Additional Context & The Slanderous Statement

1998.  Upon information and belief, Defendant Ms. Teresa Marlino, MD supported the hostile atmosphere intentionally created by Defendant St. Luke's Hospital, and OBHG PA, against the Plaintiff Smith Family.

1999.  Defendant Ms. Teresa Marlino, MD, on April 9th, 2021 in Bethlehem Township Police Department records, written under the heading "DISTURBANCE -UNWANTED PERSON /" (*all caps in original document*) by Officer Andrew Keyock, Ms. Teresa Marlino, MD, represented that Mrs. Smith "…had a baby born with marijuana and meth in her system…."

1    2000.  Upon information and belief, Defendant Ms. Teresa Marlino, MD, on April 9th,

2    2021, communicated to Officers Andrew Keyock and Thomas A. Smith, that Plaintiffs

3    Mrs. Smith and Newborn baby J.A.S. tested positive for the illegal and harmful

4    controlled substance methamphetamine.

5    2001.  Defendant Ms. Teresa Marlino, MD, on April 9th, 2021 represented the statement

6    to Officers Keyock and Smith in person, where those representations were then

7    transcribed into a police record that can be accessed by the public.

8    2002.  Plaintiff Mrs. Smith did not ever test positive for methamphetamine.

9    2003.  Plaintiff Newborn baby J.A.S. did not ever test positive for methamphetamine.

10   2004.  There is not any valid reason to communicate an individual's medical information

11   to police, as that is a violation of the individual's right to medical privacy; each

12   individual's medical records should remain only contained within the four corners of that

13   patient's medical records and not beyond.

14   2005.  There is not any valid reason to communicate false medical information about a

15   postpartum mother and her newborn baby when divulging medical records to police.

16   2006.  A likely reason to communicate false medical information about a mother and her

17   newborn baby in a statement to the police is to attempt to color Plaintiff Mrs. Smith as

18   an illegal methamphetamine user and that by extension her newborn baby as suffering

19   the deleterious effects of methamphetamine.

20                                    *Slander Per Se I(a)*

21   2007.  The statement in police records as represented by Defendant Ms. Teresa

22   Marlino, MD, and ratified with the weight of her position, that Mrs. Smith, "…had a baby

1   born with marijuana and meth in her system…," harmed the reputation of Plaintiffs Mrs.

2   Smith and Newborn baby J.A.S. in the estimation of the community by stating that

3   Plaintiff Mrs. Smith ingested methamphetamines and that she and her son Plaintiff

4   Newborn baby J.A.S. were suffering the deleterious effects of the illegal and harmful

5   substance.

6   2008.  The defamatory statement is harmful in character because it states that Plaintiff

7   Mrs. Smith has ingested the illegal and harmful substance of methamphetamine and

8   that she passed the deleterious harm of that ingestion onto her son Plaintiff Newborn

9   baby J.A.S.

10  2009.  Defendant Ms. Teresa Marlino, MD, published the defamatory statement to at

11  least Officers Keyock and Smith of the Bethlehem Police Department where the

12  statements were heard by both officers.

13  2010.  Upon information and belief, it can be demonstrated through Defendant

14  testimonies, examinations of police records, and hospital records, that recipients of the

15  publication understood that the meaning of the publication was that Plaintiff Mrs. Smith

16  had ingested illegal methamphetamine and passed that harm onto Plaintiff Newborn

17  baby J.A.S.

18  2011.  Since Plaintiff Newborn baby J.A.S. is Plaintiff Mrs. Smith's baby, it was clear

19  that the defamatory statement was to be applied to both Plaintiffs Newborn baby J.A.S.

20  and Mrs. Smith.

21  2012.  Harm suffered by the Plaintiffs includes, but is not limited to, a hostile

22  atmosphere, exacerbating Plaintiff's mental health conditions which Defendants St.

23  Luke's Hospital, and OBHG PA were aware of, causing a postpartum mother to

1   needlessly suffer by forcefully separating her from her newborn child, staff ratifying each

2   other's invalid moral positions leading other staff to regard their inappropriate actions

3   with a sense of false righteousness, and Plaintiff Newborn baby J.A.S. being considered

4   to suffer the deleterious effects of methamphetamine through his mother's use of illegal

5   drugs, by Defendants St. Luke's Hospital, and OBHG PA through their agent, employee,

6   or assign, Defendant Ms. Teresa Marlino, MD.

7   2013.  Upon information and belief, Defendant St. Luke's Hospital, and OBHG PA,

8   through their agent, employee, or assign, Defendant Ms. Teresa Marlino, MD, abused

9   her conditionally privileged occasion when as a medical provider with the ability to

10  communicate information to state authorities in line with her duties as an agent,

11  employee, or assign of Defendant St. Luke's Hospital, and, OBHG PA did communicate

12  false medical records through the published defamatory statement.

13  2014.  Plaintiffs Newborn baby J.A.S. and Mrs. Smith are private individuals and not

14  public figures.

15  2015.  Since this is a case of a private figure plaintiff redressing issues of private

16  concern, the appropriate standard for this slander claim is one of negligence.

17  2016.  Negligence: (1) Medical providers with the ability to communicate medical

18  records to state officials as a function of their assignor, employer, or agency are

19  required to communicate true and accurate records to those state officials.

20  2017.  Negligence: (2) Medical provider Defendant Ms. Teresa Marlino, MD did not

21  communicate true and accurate medical records when she represented to police

22  officers Andrew Keyock and Thomas A. Smith of the Bethlehem Police Department that

23  Plaintiff Mrs. Smith, "…had a baby born with marijuana and meth in her system…."

2018.  Negligence: (3) Upon information and belief, but for the actions of the Defendant attesting to Plaintiff Mrs. Smith as having ingested methamphetamine, Plaintiff Mrs. Smith would not have suffered the aforementioned harms and indignities mentioned earlier in this allegation of slanderous defamation, as well, it is likely that Plaintiff Mrs. Smith would not have had pervasive and injurious inquiries about private family matters by state officials.

2019.  Negligence: (4) Plaintiffs have suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, and injury to their reputations.

2020.  In *slander per se* cases Pennsylvania defamation law considers "Words that on their face and without the aid of extrinsic evidence are recognized as injurious are actionable per se…."[141]

2021.  Upon information and belief, the Defendant Ms. Teresa Marlino, MD, directly and unequivocally accused Plaintiff Mrs. Smith of having ingested methamphetamine and she communicated that fact to Officers Andrew Keyock and Thomas A. Smith, which is on its face and without the aid of extrinsic evidence injurious, and actionable for a *slander per se* claim.

2022.  In *slander pe se* cases, Pennsylvania law observes that, "words imputing a criminal offense, loathsome disease, business misconduct or serious sexual misconduct" will be considered defamatory per se.[142]

---

[141]*Joseph v. Scranton Times L.P.*, 959 A.2d 322, n.23 (Pa. Super. Ct. 2008).

[142]*Hrishenko v. Coombs*, 2014 Pa. Super. Unpub. LEXIS 880, *9 (Pa. Super. Ct. 2014).

1   2023.  Since Defendant Ms. Teresa Marlino, MD, directly and unequivocally accused

2   Plaintiff Mrs. Smith of having ingested methamphetamine to Officers Andrew Keyock

3   and Thomas A. Smith, and since methamphetamine is an illegal controlled substance,

4   the Defendant imputed a criminal offense, thereby making this an actionable *slander per*

5   *se* claim.

6   2024.  Upon information and belief, Plaintiff can demonstrate by a preponderance of

7   evidence that the Defendants Private Entities St. Luke's Hospital, Onsite Neonatal, and,

8   OBHG PA, supervised Defendant Ms. Teresa Marlino, MD in connection with this

9   allegation and are therefore liable under a legal theory of respondeat superior.

10  2025.  Upon information and belief, Defendants St. Luke's Hospital, and/or OBHG PA,

11  supervised Defendant Ms. Teresa Marlino, MD's conduct which violated Plaintiffs' rights

12  under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

13  *Or, In the Alternative,*

14  <u>*Slander Per Quod I(b)*</u>

15  2026.  The statement in Bethlehem Police Department records as represented by

16  Defendant Ms. Teresa Marlino that Plaintiff Mrs. Smith, "…had a baby born with

17  marijuana and meth in her system…," harmed the reputation of Plaintiffs Mrs. Smith and

18  Newborn baby J.A.S. in the estimation of the community by representing that Plaintiff

19  Mrs. Smith had ingested methamphetamine and that she and her son Plaintiff Newborn

20  baby J.A.S. suffered the deleterious effects of an illegal and harmful substance.

2027.  The defamatory statement is harmful in character because it states that Plaintiff Mrs. Smith has ingested the illegal and harmful substance methamphetamine and that she passed that harm onto her child Plaintiff Newborn baby J.A.S.

2028.  Defendant Ms. Teresa Marlino, MD, published the defamatory statement to at least Officers Keyock and Smith of the Bethlehem Police Department where the statements were heard by both officers.

2029.  Upon information and belief, it can be demonstrated through Defendant testimonies, examinations of police records, and hospital records that recipients of the publication understood that the meaning of the publication was that Plaintiff Mrs. Smith had ingested illegal methamphetamine.

2030.  Since Plaintiff Newborn baby J.A.S. is Plaintiff Mrs. Smith's baby, it was clear that the defamatory statement was to be applied to both Plaintiffs Newborn baby J.A.S. and Mrs. Smith.

2031.  Harm suffered by the Plaintiffs includes, but is not limited to, a hostile atmosphere, exacerbating Plaintiff's mental health conditions which Defendants St. Luke's Hospital, and OBHG PA were aware of, causing a postpartum mother to needlessly suffer by forcefully separating her from her newborn child, staff ratifying each other's invalid moral positions leading other staff to regard their inappropriate actions with a sense of false righteousness, and Plaintiff Newborn baby J.A.S. being considered abused by his mother through her ingestion of illegal drugs, by St. Luke's Hospital, and OBHG PA through their agent, employee, or assign, Defendant Ms. Teresa Marlino, MD.

1  2032.  Upon information and belief, St. Luke's Hospital, and OBHG PA, through their

2  agent, employee, or assign, Defendant Ms. Teresa Marlino, MD, abused her

3  conditionally privileged occasion when as a medical provider with the ability to

4  communicate information to state authorities in line with her duties as an agent,

5  employee, or assign of St. Luke's Hospital, and OBHG PA did falsify communicated

6  medical records through the published defamatory statement.

7  2033.  Plaintiffs Newborn baby J.A.S. and Mrs. Smith are private individuals and not

8  public figures.

9  2034.  Since this is a case of a private figure plaintiff redressing issues of private

10  concern, the appropriate standard for this libel claim is one of negligence.

11  2035.  Negligence: (1) Medical providers with the ability to communicate medical

12  records to state officials as a function of their assignor, employer, or agency are

13  required to communicate true and accurate records to those state officials.

14  2036.  Negligence: (2) Medical provider Ms. Teresa Marlino, MD did not communicate

15  true and accurate medical records when she represented to police officers Andrew

16  Keyock and Thomas A. Smith of the Bethlehem Police Department that Mrs. Smith,

17  "…had a baby born with marijuana and meth in her system…."

18  2037.  Negligence: (3) Upon information and belief, but for the actions of the Defendant

19  attesting to Plaintiff Mrs. Smith as having ingested methamphetamine, Mrs. Smith would

20  not have suffered the aforementioned harms and indignities mentioned earlier in this

21  allegation of slanderous defamation, as well, it is likely that Mrs. Smith would not have

22  had pervasive and injurious inquiries about private family matters by state officials.

1    2038.  Negligence: (4) Plaintiffs have suffered substantial harm as a result of

2    Defendants' conduct, including but not limited to, emotional and psychological distress,

3    pain and suffering, and injury to their reputations.

4    2039.  In *slander per quod* cases Pennsylvania defamation law considers extrinsic

5    supporting evidence of slanderous behavior if the injurious nature of the words is not

6    apparent.[143]

7    2040.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

8    evidence that through the presentation of medical records, police reports, and other

9    administrative documentation that the statement was not a mere description of the baby

10   or his mother for the medical edification of potential diagnosis concerning Plaintiffs

11   Newborn baby J.A.S. or Mrs. Smith, but was instead a statement intended to cast

12   unfounded and harmful aspersions on both Plaintiffs Newborn baby J.A.S. and Mrs.

13   Smith.

14   2041.  Plaintiffs will need to demonstrate necessary innuendo by Defendant Parties.

15   2042.  "Innuendo", "define[s] the defamatory meaning which the plaintiff attaches to the

16   words" and "show[s] how they come to have that meaning and how they relate to the

17   plaintiff."[144]

18   2043.  Methamphetamine is an illegal controlled substance, which has deleterious

19   effects on those that consume it.

---

[143]*Joseph*, 959 A.2d at n.23.

[144]*Cosgrove Studio & Camera Shop, Inc. v. Pane*, 408 Pa. 314, 319 (Pa. 1962)
(citations omitted).

2044.  Deleterious effects caused by methamphetamine when consumed by a pregnant mother will likely be passed on to her child in utero via the umbilical cord.

2045.  When Defendant Ms. Teresa Marlino, MD, represented the statement, adding the weight of the authority of her position to the narrative that Plaintiff Mrs. Smith ingested methamphetamine and passed it along to her newborn baby, it was to make clear to Officers Andrew Keyock and Thomas A. Smith that Plaintiff Mrs. Smith consumed methamphetamine and that she likely passed on the deleterious effects of methamphetamine use to her child Plaintiff Newborn baby J.A.S.

2046.  The statement relates to the Plaintiffs Newborn baby J.A.S. and Mrs. Smith because the statement is about Plaintiffs Mrs. Smith and Newborn baby J.A.S.

2047.  Upon information and belief, Plaintiff can demonstrate by a preponderance of evidence that the Defendants St. Luke's Hospital, and OBHG PA supervised Ms. Teresa Marlino, MD in connection with this allegation and are therefore liable under a legal theory of respondeat superior.

2048.  Upon information and belief, Defendants St. Luke's Hospital, and/or OBHG PA, supervised Defendant Ms. Teresa Marlino, MD's conduct which violated Plaintiffs' rights under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

*Or, In the Alternative*

*Slander by Implication I(c)*

**The Slanderous Statement & Implication**

2049.  Upon information and belief, Defendant Ms. Teresa Marlino, MD, supported the hostile atmosphere intentionally created by St. Luke's Hospital, and OBHG PA against the Plaintiff Smith Family.

2050.  The statement in police records as represented by Defendant Ms. Teresa Marlino, MD, and ratified with the weight of her position, that Mrs. Smith, "…had a baby born with marijuana and meth in her system…," harmed the reputation of Plaintiffs Mrs. Smith and Newborn baby J.A.S. in the estimation of the community by stating that Plaintiff Mrs. Smith is a user of illegal of methamphetamines and that she and her Plaintiff Newborn child J.A.S. were addicted to an illegal and harmful substance.

2051.  Upon information and belief, Defendant Ms. Teresa Marlino, MD did verbalize to Officers Andrew Keyock and Thomas A. Smith, the aforementioned statement as a matter of facts.

2052.  There is not a valid reason to communicate a mother's medical records for police records.

2053.  A likely reason to communicate medical information about a mother for police records is to attempt to color Plaintiff Mrs. Smith as an illegal methamphetamine user and that by extension her newborn baby suffers the deleterious effects of methamphetamine.

2054.  The statement in police records as communicated by Defendant Ms. Teresa Marlino, MD, that Mrs. Smith, "…had a baby born with marijuana and meth in her system…," harmed the reputation of Plaintiffs Mrs. Smith and newborn baby J.A.S. in the estimation of the community by implying that Plaintiff Mrs. Smith is a user of illegal

1  of methamphetamines and that she and her son Plaintiff Newborn child J.A.S. suffered

2  from the deleterious effects of illegal and harmful substances.

3  2055.  The defamatory statement is harmful in character because it implies that Plaintiff

4  Mrs. Smith has ingested the illegal and harmful substance of methamphetamine and

5  that she passed that harm onto her child Plaintiff Newborn baby J.A.S.

6  2056.  Upon information and belief, Defendant Ms. Teresa Marlino, MD, published the

7  defamatory statement to at least Officers Keyock and Smith of the Bethlehem Police

8  Department where the statements were heard by both officers.

9  2057.  Upon information and belief, it can be demonstrated through Defendant

10  testimonies, examinations of police records, and hospital policies, that the recipient of

11  the publication understood that the meaning of the publication was that Plaintiff Mrs.

12  Smith had ingested illegal methamphetamine.

13  2058.  Since Plaintiff Newborn baby J.A.S. is Mrs. Smith's baby, it was clear that the

14  defamatory statement was to be applied to both Plaintiffs Newborn baby J.A.S. and Mrs.

15  Smith.

16  2059.  Harm suffered by the Plaintiffs includes, but is not limited to, a hostile

17  atmosphere, exacerbating Plaintiff's mental health conditions which Defendants St.

18  Luke's Hospital, and OBHG PA were aware of, causing a postpartum mother to

19  needlessly suffer by forcefully separating her from her newborn child, staff ratifying each

20  other's invalid moral positions leading other staff to regard their inappropriate actions

21  with a sense of false righteousness, and Plaintiff Newborn baby J.A.S. being considered

22  abused by his mother through her ingestion of illegal drugs, by Defendants St. Luke's

1   Hospital, and OBHG PA through their agent, employee, or assign, Ms. Teresa Marlino,

2   MD.

3   2060.  Upon information and belief, Defendants St. Luke's Hospital, and OBHG PA,

4   through their agent, employee, or assign, Defendant Ms. Teresa Marlino, MD, abused

5   her conditionally privileged occasion when as a medical provider with the ability to

6   communicate information to state authorities in line with her duties as an agent,

7   employee, or assign of Defendants St. Luke's Hospital, and OBHG PA did falsify

8   communicated medical records through the published defamatory statement.

9   2061.  Plaintiffs Newborn baby J.A.S. and Mrs. Smith are private individuals and not

10  public figures.

11  2062.  Since this is a case of a private figure plaintiff redressing issues of private

12  concern, the appropriate standard for this libel claim is one of negligence.

13  2063.  Negligence: (1) Medical providers with the ability to communicate medical

14  records to state officials as a function of their assignor, employer, or agency are

15  required to communicate true and accurate records to those state officials.

16  2064.  Negligence: (2) Medical provider Defendant Ms. Teresa Marlino, MD did not

17  communicate true and accurate medical records when she represented to police

18  officers Andrew Keyock and Thomas A. Smith of the Bethlehem Police Department that

19  Mrs. Smith, "…had a baby born with marijuana and meth in her system…."

20  2065.  Negligence: (3) Upon information and belief, but for the actions of the Defendant

21  implying that Plaintiff Mrs. Smith ingested methamphetamine, Plaintiff Mrs. Smith would

22  not have suffered the aforementioned harms and indignities mentioned earlier in this

23  allegation of slanderous defamation, as well, it is likely that Plaintiff Mrs. Smith would

1   not have had pervasive and injurious inquiries about private family matters by state

2   officials.

3   2066.  Negligence: (4) Plaintiffs have suffered substantial harm as a result of

4   Defendant's conduct, including but not limited to, emotional and psychological distress,

5   pain and suffering, and injury to their reputations.

6   2067.  Libel by Implication occurs when "true facts that in context imply a falsehood."[145]

7   2068.  In addition, "the literal accuracy of separate statements will not render a

8   communication 'true' where, as here, the implication of the communication as a whole

9   was false."[146]

10   2069.  Upon information and belief, Plaintiffs Newborn baby J.A.S. and Mrs. Smith can

11   demonstrate by a preponderance of the evidence that any one communicated

12   statement in police records may be true, but the implication of the communications as a

13   whole in the police records is false.

14   2070.  While it may be literally true that Plaintiff Mrs. Smith was factually accused of

15   methamphetamine consumption; when placed in context of medical records and witness

16   testimonials it is clear that Plaintiffs Mrs. Smith and Newborn baby J.A.S. did not have

17   any methamphetamine in their systems.

---

[145]*Dunlap v. Philadelphia Newspapers, Inc.*, 301 Pa. Super. 475, 491 (Pa. Super. Ct. 1982) (emphasis omitted).

[146]*Id.* at 493.

2071.  As well, if "the defendant juxtaposes [a] series of fact so as to imply a defamatory connection between them, or [otherwise] creates a defamatory implication…" then a slanderous statement by implication is present.[147]

2072.  Upon information and belief, Plaintiffs Newborn baby J.A.S. and Mrs. Smith can demonstrate by a preponderance of the evidence that many facts contained within police records juxtapose a series of facts so as to imply a defamatory connection of methamphetamine ingestion by Plaintiff Mrs. Smith, the deleterious effects of which were passed on to Plaintiff Newborn baby J.A.S.

2073.  Upon information and belief, Plaintiff can demonstrate by a preponderance of evidence that the Defendants St. Luke's Hospital, and OBHG PA supervised Defendant Ms. Teresa Marlino, MD in connection with this allegation and are therefore liable under a legal theory of respondeat superior.

2074.  Upon information and belief, Defendants St. Luke's Hospital, and/or OBHG PA, supervised Defendant Ms. Teresa Marlino, MD's conduct which violated Plaintiffs' rights under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

## **Damages for Slander I(a-c)**

2075.  Plaintiff Mr. Smith suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as

---

[147]*Fanelle v. LoJack Corp.*, 2000 U.S. Dist. LEXIS 17767, *10 (E.D. Pa. Dec. 7, 2000).

1  they have been and will continue to be necessary; Plaintiffs respectfully request an

2  amount of $595,000 in compensatory damages per Defendant.

3  2076.  Given the substantial wealth of the Defendants St. Luke's Hospital, OBHG PA,

4  and Ms. Teresa Marlino, MD and therefore, their ability to afford the appropriate training

5  to avoid this egregious violation of the Pennsylvania Statutory Law, and, since harm

6  was actually caused to the current Plaintiff Smith Family, and since harm is likely to

7  continue to harm future postpartum families, and because the acts of the Defendants

8  and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a

9  reckless and wanton manner, the Plaintiffs respectfully request the imposition of

10  punitive damages on Defendants St. Luke's Hospital, OBHG PA, and Ms. Teresa

11  Marlino, MD to deter such Defendants from committing to such conduct in the future

12  which violates Commonwealth of Pennsylvania Statutory Law Plaintiffs respectfully

13  request an amount of $10,000,000 in punitive damages per Defendants St. Luke's

14  Hospital, OBHG PA, and Ms. Teresa Marlino, MD..

15  2077.  In the unlikely event that the jury does not find that Plaintiffs Mrs. Smith and

16  Newborn baby J.A.S. suffered any actual injury despite the deprivation of their statutory

17  law rights, the Plaintiff respectfully requests a nominal judgment of $1.00.

18  ## XXX.   § 42 Pa. C. S. § 8343, Defamation - Slander II

19  Mr. Michael O. Smith v. St. Luke's Hospital, OBHG PA, & Ms. Teresa Marlino, MD

20  2078.  Under Pennsylvania defamation law, a communication will be considered

21  defamatory if it ""tends so to harm the reputation of [the complaining party] as to lower

1    him in the estimation of the community or to deter third persons from associating or

2    dealing with him.""[148]

3    2079.  In order for Plaintiffs to succeed in their claim, they must prove the following

4    elements[149]:

5        (1) The defamatory character of the communication;

6        (2) Its publication by the defendant;

7        (3) Its application to the plaintiff;

8        (4) The understanding by the recipient of its defamatory meaning;

9        (5) The understanding by the recipient of it as intended to be applied to the plaintiff;

10       (6) Special harm resulting to the plaintiff from its publication; and

11       (7) Abuse of a conditionally privileged occasion.

12   2080.  The Pennsylvania Supreme Court has abolished an "actual malice" standard and

13   has shifted the inquiry to whether a plaintiff is a private individual or a public figure or

14   public official.[150]

---

[148]*MacElree v. Philadelphia Newspapers*, 544 Pa. 117, 124-125 (Pa. 1996) (citations omitted).

[149]*42 Pa.C.S. § 8343(a)(1-7).*

[150]*Am. Future Sys., Inc. v. Better Bus. Bureau*, 592 Pa. 66, 82-83 (Pa. 2007). However, demonstrations of actual malice on the part of the plaintiff can lead to wider array of potential damages.

1  2081.  Pennsylvania has adopted a negligence standard for private figure plaintiff

2  lawsuits regarding issues of private concern.[151]

3  2082.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

4  or obligation recognized by the law, requiring the actor to conform to a certain standard

5  of conduct; (2) a failure to conform to the required standard; (3) a causal connection

6  between the conduct and the resulting injury; and (4) actual loss or damage resulting to

7  the interests of another.[152]

8                                    ***The Context***

9  2083.  Defendants St. Luke's Hospital, and OBHG PA, among other parties named and

10  unnamed in this lawsuit, intentionally created an atmosphere hostile to the Smith

11  Family, including Plaintiff Mr. Smith.

12  2084.  Defendant Ms. Teresa Marlino, MD, supported the hostile atmosphere

13  intentionally created by Defendants St. Luke's Hospital and OBHG PA.

14  2085.  Defendants St. Luke's Hospital, and OBHG, coordinated their employee, agent,

15  or assign, Defendant Ms. Teresa Marlino, MD, towards a narrative that Mrs. Smith had

16  ingested methamphetamine and that Mrs. Smith gave birth to Newborn baby J.A.S. who

17  also suffered the deleterious effects of methamphetamine.

---

[151] *Wilson v. Slatalla*, 970 F. Supp. 405, 414 (E.D. Pa. 1997).

[152] *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1    2086.  The umbilical cord that connected Newborn baby J.A.S. and Mrs. Smith was

2    tested on April 9th, 2021, and was negative for amphetamines and methamphetamines.

3    2087.  Despite the umbilical cord that connected Newborn baby J.A.S. and Mrs. Smith

4    testing negative for illegal drugs, Defendants St. Luke's Hospital and OBHG PA, acting

5    through agent, employee, or assign Defendant Ms. Teresa Marlino, MD, continued the

6    narrative that Mrs. Smith had ingested methamphetamine and that Mrs. Smith gave

7    birth to Newborn baby J.A.S. who also suffered the deleterious effects of

8    methamphetamine addict.

9    2088.  Medical records on April 9th, 2021, reflect the statement, "[F]amily was requesting

10   discharge at 12 hours of life."

11   2089.  Mr. and Mrs. Smith requested at approximately 12-hours of Newborn baby

12   J.A.S.'s life that the Smith Family be discharged from Defendant St. Luke's Hospital

13   when practicable, not immediately at 12 hours from birth, as is suggested in the medical

14   records entered by Defendant St. Luke's Hospital agents, employees, and/or assigns.

15   2090.  Defendants St. Luke's Hospital, and OBHG PA, through their agents, employees,

16   or assigns, was further attempting to imply that Mrs. Smith was urgently seeking to go

17   home so that she could consume methamphetamine by making the medical records

18   appear that Mrs. Smith sought to reingest methamphetamine by going home as soon as

19   possible after her newborn baby's birth.

20   2091.  Beginning on April 10th, 2021 the statement, "High probability of life[-]threatening

21   clinical deterioration in infant's condition without treatment," began regularly appearing

22   in medical records.

2092.  Mr. and Mrs. Smith were not ever told by any agent, employee, or assign of Defendants St. Luke's Hospital or OBHG PA that Newborn baby J.A.S. had a, "High probability of life[-]threatening clinical deterioration…without treatment."

2093.  Despite the accusation of methamphetamine ingestion by Defendants St. Luke's Hospital, and OBHG PA and their agents, assigns, or employees, Mrs. Smith was allowed to breastfeed Newborn baby J.A.S.

2094.  Despite Plaintiffs Mrs. Smith and Newborn baby J.A.S. being suspected of suffering the deleterious effects of methamphetamine, state mandated policies and procedures for methamphetamine withdrawal were not implemented for Newborn baby J.A.S. by Defendants St. Luke's Hospital, OBHG PA, nor any other health provider.

2095.  Notes on medical records by non-radiology experts from April 11th, 2021, stated that, "…upon admission to the NICU [newborn baby J.A.S.] showed hazy lung fields with expansion to 5-9 ribs."

2096.  Radiology indicates in the medical record no "hazy lung fields" or "expansion" into Newborn baby J.A.S.'s lungs.

2097.  Radiology, instead indicates in the medical record, "Perhaps minimal asymmetric granular opacity on the right. No consolidation. No discernable pneumothorax or layering pleural effusion on limited supine imaging. Osseous structures appear within normal limits for patient age."

2098.  Upon information and belief, Defendants St. Luke's Hospital, and OBHG PA, and other parties named and unnamed in this lawsuit, manipulated the medical records in their own interpretations of the radiologist's report to paint Newborn baby J.A.S. and Mrs. Smith as suffering the deleterious effects of methamphetamine ingestion by

1  constructing a reason to keep newborn baby J.A.S. in the hospital against the will and

2  consent of his parents.

3  2099.  As represented in the medical documentation, beginning on April 10th, 2021, Mrs.

4  Smith was under constant monitoring by all Defendant St. Luke's Hospital and OBHG

5  PA for "inappropriate behavior" via their agents, employees, and/or assigns.

6  2100.  As of April 9th, 2021, Plaintiff Mr. Smith was not allowed to ever be on Defendant

7  St. Luke's Hospital Property at the consequence of being arrested.

8  2101.  As of April 10th, 2021, Mrs. Smith was supervised around the clock by male

9  security guards, even while breastfeeding, and walking to the restroom.

10 2102.  On the evening of April 9th, 2021, after Mr. & Mrs. Smith were ejected from

11 Defendant St. Luke's Hospital's property, Officer Andrew Keyock, created a police

12 report based on the removal incident from Defendant St. Luke's Hospital.

13 2103.  The police report titled, "DISTURBANCE -UNWANTED PERSON" written by

14 Officer Keyock, is in-part, as follows:

15              "Grace Smith (32) and Michael Smith (38) became

16              upset and wanted to leave with their child. I explained the

17              situation to both parents as presented to this officer and I

18              had Dr. Marlino communicate the information directly as

19              well.

20              Grace Smith was then discharged from the hospital and

21              notified to contact Children and Youth Monroe County for

22              further determination. The Smiths were then escorted from

23              the property and provided with a defiant trespass warning."

2104.  Upon information and belief, Defendant Ms. Teresa Marlino, MD participated in and approved of a false narrative concerning Plaintiff Mr. Michael O. Smith, that Plaintiff Mr. Smith was in some way too dangerous or violent to be allowed to visit his son, Newborn baby J.A.S., on Defendant St. Luke's Hospital's property.

**The Slanderous Statement**

2105.  Upon information and belief, Defendant Ms. Teresa Marlino, MD supported the hostile atmosphere intentionally created by Defendants St. Luke's Hospital, and OBHG PA, against the Plaintiff Smith Family.

2106.  Defendant Ms. Teresa Marlino, MD, on April 9th, 2021, verbally communicated statements to officers of the Bethlehem Police Department that Plaintiff Mr. Smith is a character of such violence that he should be forcefully separated from his newborn baby child who was in the N.I.C.U.

2107.  Plaintiff Mr. Smith did not ever exceed the bounds of reasonable civil discourse, did not vocalize what a reasonable person would call "curse words", nor did any verbal espousals by Plaintiff Mr. Smith appeal to a prurient interest.

2108.  Upon information and belief, Defendant Ms. Teresa Marlino, MD, supported the false narrative created about Plaintiff Mr. Smith that Mr. Smith acted in a manner befitting a no trespass order by the local police department.

2109.  Upon information and belief, there was not any valid reason to verbally communicate to local police officers that Plaintiff Mr. Smith conducted himself in a manner that befit his removal from Defendant St. Luke's Hospital property under threat of arrest.

2110.  There is not any reasonable information in the police report stating why Plaintiff Mr. Smith's conduct led to his removal from Defendant St. Luke's Hospital property, yet he was removed.

2111.  A likely reason to not place alleged personality traits and misconduct in the police report about Plaintiff Mr. Smith which led to his separation from his newborn baby is because Plaintiff Mr. Smith's personality traits and conduct were appropriate for the situation.

## *Slander Per Se II(a)*

2112.  The statements as communicated by Defendant Ms. Teresa Marlino, MD, that Plaintiff Mr. Smith acted in a manner befitting forceful removal from Defendant St. Luke's Hospital property harmed the reputation of Plaintiff Mr. Smith in the estimation of the community by stating that Plaintiff Mr. Smith is an individual of criminal caliber, and that he acted in a manner befitting a no trespassing order from the Bethlehem Police Department.

2113.  The defamatory statement is harmful in character because it states that Plaintiff Mr. Smith, at the behest of Defendants St. Luke's Hospital, and OBHG PA, is a person capable of such violence that he cannot be permitted on Defendant St. Luke's Hospital property to visit with his newborn baby child in the N.I.C.U.

2114.  Defendant Ms. Teresa Marlino, MD, published the defamatory statement to at least Officers Keyock and Smith of the Bethlehem Police Department where the statements were heard by both officers.

2115.  Upon information and belief, it can be demonstrated through Defendant testimonies, examinations of medical records, and hospital policies that recipient of the publication understood that the meaning of the publication was that Plaintiff Mr. Smith may attempt to violently infiltrate the NICU at Defendant St. Luke's Hospital to recover his child.

2116.  Since Newborn baby J.A.S. is Plaintiff Mr. Smith's baby and because Plaintiff Mr. Smith is directly referenced in the police report, it was clear that the defamatory statement was to be applied to Plaintiff Mr. Smith.

2117.  Harm suffered by the Plaintiff includes, but is not limited to, a hostile atmosphere, exacerbating Plaintiff's mental health condition, causing a postpartum father to needlessly suffer without his newborn baby child who was in neonatal intensive care, staff ratifying each other's invalid moral positions leading other staff to regard their inappropriate actions with a sense of false righteousness, and a baseless reputation for violent behavior, by Defendants St. Luke's Hospital, and OBHG PA through their agent, employee, or assign, Defendant Ms. Teresa Marlino, MD.

2118.  Upon information and belief, Defendants St. Luke's Hospital, and OBHG PA, through their agent, employee, or assign, Defendant Ms. Teresa Marlino, MD, abused her conditionally privileged occasion when as a medical provider with the ability to communicate information to state authorities in line with her duties as an agent, employee, or assign of Defendants St. Luke's Hospital, and OBHG PA did falsely represent Plaintiff Mr. Smith as an individual acting in a manner befitting of being removed from Defendant St. Luke's Hospital property while his newborn baby is in the N.I.C.U. against his will.

2119.  Plaintiff Mr. Smith is a private individual and not a public figure.

2120.  Since this is a case of a private figure plaintiff redressing issues of private concern, the appropriate standard for this libel claim is one of negligence.

2121.  Negligence: (1) Medical providers with the ability to communicate medical records to state officials as a function of their assignor, employer, or agency are required to communicate true and accurate records to those state officials.

2122.  Negligence: (2) Medical provider Defendant Ms. Teresa Marlino, MD did not communicate true and accurate representations when she verbally communicated to Officers Andrew Keyock and Thomas A. Smith of the Bethlehem Police Department that Plaintiff Mr. Smith acted in a manner befitting his immediate removal from Defendant St. Luke's Hospital property under police escort.

2123.  Negligence: (3) Upon information and belief, but for the actions of the Defendant attesting to Plaintiff Mr. Smith as an individual befitting of a no-trespass order, Plaintiff Mr. Smith would not have suffered the aforementioned harms and indignities mentioned earlier in this allegation of slanderous defamation, as well, it is possible that Plaintiff Mr. Smith would not have had pervasive and injurious inquiries about private family matters by state officials.

2124.  Negligence: (4) Plaintiff has suffered substantial harm as a result of Defendant's conduct, including but not limited to, emotional and psychological distress, pain and suffering, and injury to his reputation.

1   2125.  In *slander per se* cases Pennsylvania defamation law considers "Words that on

2   their face and without the aid of extrinsic evidence are recognized as injurious are

3   actionable per se…."[153]

4   2126.  Upon information and belief, Defendants' directly and unequivocally accused

5   Plaintiff Mr. Smith of being an individual violent enough that a no trespass order was

6   appropriate for his character, are accusations which on their face and without the aid of

7   extrinsic evidence injurious, and actionable for a *slander per se* claim.

8   2127.  In *slander pe se* cases, Pennsylvania law observes that, "words imputing a

9   criminal offense, loathsome disease, business misconduct or serious sexual

10   misconduct" will be considered defamatory per se.[154]

11   2128.  Since Defendants' directly and unequivocally accused Plaintiff Mr. Smith of

12   having the characteristics of a trespasser, and thereby a criminal, in his newborn child's

13   medical records, and since trespassing is an act violating the law, as was conveyed to

14   Plaintiff Mr. Smith by Officer Andrew Keyock, thereby making this an actionable *slander*

15   *per se* claim.

16   2129.  Upon information and belief, Plaintiff can demonstrate by a preponderance of

17   evidence that the Defendants St. Luke's Hospital, and OBHG PA supervised Defendant

18   Ms. Teresa Marlino, MD, in connection with this allegation and are therefore liable under

19   a legal theory of respondeat superior.

---

[153]*Joseph v. Scranton Times L.P.*, 959 A.2d 322, n.23 (Pa. Super. Ct. 2008).

[154]*Hrishenko v. Coombs*, 2014 Pa. Super. Unpub. LEXIS 880, *9 (Pa. Super. Ct. 2014).

1   2130.  Upon information and belief, Defendants St. Luke's Hospital, and/or OBHG PA,

2   supervised Defendant Ms. Teresa Marlino, MD's conduct which violated Plaintiffs' rights

3   under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

4                                  *Or, In the Alternative,*

5                                  *Slander Per Quod II(b)*

6   2131.  The statements as communicated by Defendant Ms. Teresa Marlino, MD, that

7   Plaintiff Mr. Smith acted in a manner befitting forceful removal from Defendant St.

8   Luke's Hospital property against his will harmed the reputation of Plaintiff Mr. Smith in

9   the estimation of the community by stating that Plaintiff Mr. Smith is an individual of

10  criminal caliber, and that he acted in a manner befitting a no trespassing order from the

11  Bethlehem Police Department.

12  2132.  The defamatory statement is harmful in character because it states that Plaintiff

13  Mr. Smith, at the behest of Defendants St. Luke's Hospital, and OBHG PA, is a person

14  capable of such violence that he cannot be permitted on Defendant St. Luke's Hospital

15  property to visit with his newborn baby in the N.I.C.U.

16  2133.  Defendant Ms. Teresa Marlino, MD, published the defamatory statement to at

17  least Officers Keyock and Smith of the Bethlehem Police Department where the

18  statements were heard by both officers.

19  2134.  Upon information and belief, it can be demonstrated through Defendant

20  testimonies, examinations of medical records, and hospital policies that recipient of the

21  publication understood that the meaning of the publication was that Plaintiff Mr. Smith

1   may attempt to violently infiltrate the NICU at Defendant St. Luke's Hospital to recover

2   his child.

3   2135.  Since Newborn baby J.A.S. is Plaintiff Mr. Smith's baby and because Plaintiff Mr.

4   Smith is directly referenced in the police report, it was clear that the defamatory

5   statement was to be applied to Plaintiff Mr. Smith.

6   2136.  Harm suffered by the Plaintiff includes, but is not limited to, a hostile atmosphere,

7   exacerbating Plaintiff's mental health condition, causing a postpartum father to

8   needlessly suffer without his newborn baby child who was in neonatal intensive care,

9   staff ratifying each other's invalid moral positions leading other staff to regard their

10  inappropriate actions with a sense of false righteousness, and a baseless reputation for

11  violent behavior, by Defendants St. Luke's Hospital, and OBHG PA through their agent,

12  employee, or assign, Defendant Ms. Teresa Marlino, MD.

13  2137.  Upon information and belief, Defendants St. Luke's Hospital, and OBHG, PA

14  through their agent, employee, or assign, Defendant Ms. Teresa Marlino, MD, abused

15  her conditionally privileged occasion when as a medical provider with the ability to

16  communicate information to state authorities in line with her duties as an agent,

17  employee, or assign of Defendants St. Luke's Hospital, and OBHG PA did falsely

18  represent Plaintiff Mr. Smith as an individual acting in a manner befitting of being

19  removed from Defendant St. Luke's Hospital property against his will while his newborn

20  baby child is in the N.I.C.U.

21  2138.  Plaintiff Mr. Smith is a private individual and not a public figure.

22  2139.  Since this is a case of a private figure plaintiff redressing issues of private

23  concern, the appropriate standard for this slander claim is one of negligence.

2140.  Negligence: (1) Medical providers with the ability to communicate medical records to state officials as a function of their assignor, employer, or agency are required to communicate true and accurate records to those state officials.

2141.  Negligence: (2) Medical provider Defendant Ms. Teresa Marlino, MD did not communicate true and accurate representations when she verbally communicated to Officers Andrew Keyock and Thomas A. Smith of the Bethlehem Police Department that Plaintiff Mr. Smith acted in a manner befitting his immediate removal from Defendant St. Luke's Hospital property under police escort.

2142.  Negligence: (3) Upon information and belief, but for the actions of the Defendant attesting to Plaintiff Mr. Smith as an individual befitting of a no-trespass order, Plaintiff Mr. Smith would not have suffered the aforementioned harms and indignities mentioned earlier in this allegation of slanderous defamation, as well, it is possible that Plaintiff Mr. Smith would not have had pervasive and injurious inquiries about private family matters by state officials.

2143.  Negligence: (4) Plaintiff has suffered substantial harm as a result of Defendant's conduct, including but not limited to, emotional and psychological distress, pain and suffering, and injury to his reputation.

2144.  In *slander per quod* cases Pennsylvania defamation law considers extrinsic supporting evidence of slanderous behavior if the injurious nature of the words is not apparent.[155]

---

[155]*Joseph*, 959 A.2d at n.23.

2145.  Upon information and belief, Plaintiff can demonstrate by a preponderance of evidence that through the presentation of witness testimonials, medical records, police reports, and other administrative documentation that the statement was a statement intended to cast unfounded and harmful aspersions on Plaintiff Mr. Smith.

2146.  Plaintiff will need to demonstrate necessary innuendo by Defendant Parties.

2147.  "Innuendo", "define[s] the defamatory meaning which the plaintiff attaches to the words" and "show[s] how they come to have that meaning and how they relate to the plaintiff."[156]

2148.  A 'no trespass' order is not supposed to be contrived without meaning and therefore carries with it the implied weight of violence if such a person were to trespass.

2149.  When Defendant Ms. Teresa Marlino, MD communicated the false statements with the weight and authority of her position it was to make clear to Officers Andrew Keyock and Thomas A. Smith, that Plaintiff Mr. Smith is a person of violent nature who cannot be around his newborn baby child or hospital personnel.

2150.  The statement relates to Plaintiff Mr. Smith because the statement is about the father of the newborn child, Plaintiff Mr. Smith.

2151.  Upon information and belief, Plaintiff can demonstrate by a preponderance of evidence that the Defendants St. Luke's Hospital, and OBHG PA supervised Defendant Ms. Teresa Marlino, MD, in connection with this allegation and are therefore liable under a legal theory of respondeat superior.

---

[156]*Cosgrove Studio & Camera Shop, Inc. v. Pane*, 408 Pa. 314, 319 (Pa. 1962) (citations omitted).

1   2152.  Upon information and belief, Defendants St. Luke's Hospital, and/or OBHG PA,

2   supervised Defendant Ms. Teresa Marlino, MD's conduct which violated Plaintiffs' rights

3   under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

4                                    *Or, In the Alternative*

5                                 *Slander by Implication II(c)*

6   2153.  The statements as communicated by Defendant Ms. Teresa Marlino, MD, that

7   Plaintiff Mr. Smith acted in a manner befitting removal from St. Luke's Hospital property

8   against his will harmed the reputation of Plaintiff Mr. Smith in the estimation of the

9   community by stating that Plaintiff Mr. Smith is an individual of criminal caliber, and that

10  he acted in a manner befitting a no trespassing order from the Bethlehem Police

11  Department.

12  2154.  Defendant Ms. Teresa Marlino, MD did verbalize to Officers Andrew Keyock and

13  Thomas A. Smith the aforementioned statement as a matter of facts.

14  2155.  The defamatory statement is harmful in character because it implies that Plaintiff

15  Mr. Smith, at the behest of Defendants St. Luke's Hospital, and OBHG PA, is a person

16  capable of such violence that he cannot be permitted on Defendant St. Luke's Hospital

17  property to visit with his newborn baby child in the N.I.C.U.

18  2156.  Defendant Ms. Teresa Marlino, MD, published the defamatory statement to at

19  least Officers Keyock and Smith of the Bethlehem Police Department where the

20  statements were heard by both officers.

21  2157.  Upon information and belief, it can be demonstrated through Defendant

22  testimonies, examinations of police records, and hospital policies, such as, ejection from

1  Defendant St. Luke's Hospital property under threat of arrest for defiant trespass, that

2  recipients of the publication understood that the meaning of the publication was that

3  Plaintiff Mr. Smith may attempt to violently infiltrate the NICU at Defendant St. Luke's

4  Hospital to recover his child.

5  2158.  Since Newborn baby J.A.S. is Plaintiff Mr. Smith's baby, it was clear that the

6  defamatory statement was to be applied to Plaintiff Mr. Smith.

7  2159.  Harm suffered by the Plaintiff includes, but is not limited to, a hostile atmosphere,

8  exacerbating Plaintiff's mental health condition, causing a postpartum father to

9  needlessly suffer without his newborn baby child who was in neonatal intensive care,

10  staff ratifying each other's invalid moral positions leading other staff to regard their

11  inappropriate actions with a sense of false righteousness, and a baseless reputation for

12  violent behavior, by Defendants St. Luke's Hospital, and OBHG PA through their agent,

13  employee, or assign, Defendant Ms. Teresa Marlino, MD.

14  2160.  Upon information and belief, Defendants St. Luke's Hospital, and OBHG PA,

15  through their agent, employee, or assign, Defendant Ms. Teresa Marlino, MD, abused

16  her conditionally privileged occasion when as a medical provider with the ability to

17  communicate information to state authorities in line with her duties as an agent,

18  employee, or assign of Defendants St. Luke's Hospital, and OBHG PA did falsely

19  represent Plaintiff Mr. Smith as an individual acting in a manner befitting of being

20  removed from Defendant St. Luke's Hospital property against his will while his newborn

21  baby child is in the N.I.C.U.

22  2161.  Plaintiff Mr. Smith is a private individual and not a public figure.

2162.  Since this is a case of a private figure plaintiff redressing issues of private

concern, the appropriate standard for this libel claim is one of negligence.

2163.  Negligence: (1) Medical providers with the ability to communicate medical

records as a function of their assignor, employer, or agency are required to maintain

medical records that reflect the truth of a matter in both itemized mentions of fact and

the totality of what those facts are to represent.

2164.  Negligence: (2) Medical provider Defendant Ms. Teresa Marlino, MD, did

maintain true and accurate medical records when itemized mentions of fact were

spoken in isolation from one another; however, when taken as a totality the facts

present the Plaintiffs in a harmful and dishonest light, culminating with when Defendant

Ms. Teresa Marlino, MD, represented to Officers Andrew Keyock and Thomas A. Smith

that Plaintiff Mr. Smith was an individual whose character and actions warranted

immediate removal from Defendant St. Luke's Hospital property.

2165.  Negligence: (3) Upon information and belief, but for the actions of the Defendant

attesting to Plaintiff Mr. Smith as an individual befitting of a no-trespass order, Plaintiff

Mr. Smith would not have suffered the aforementioned harms and indignities mentioned

earlier in this allegation of slanderous defamation, as well, it is possible that Plaintiff Mr.

Smith would not have had pervasive and injurious inquiries about private family matters

by state officials.

2166.  Negligence: (4) Plaintiff has suffered substantial harm as a result of Defendant's

conduct, including but not limited to, emotional and psychological distress, pain and

suffering, and injury to his reputation.

2167.  Upon information and belief, Plaintiff can demonstrate by a preponderance of evidence that through the presentation of medical records, police reports, and other administrative documentation that the statement was intended to cast unfounded and harmful aspersions on Plaintiff Mr. Smith.

2168.  Slander by Implication occurs when "true facts that in context imply a falsehood."[157]

2169.  In addition, "the literal accuracy of separate statements will not render a communication 'true' where, as here, the implication of the communication as a whole was false."[158]

2170.  Upon information and belief, Plaintiff Mr. Smith can demonstrate by a preponderance of the evidence that any one statement verbally conveyed to Officers Andrew Keyock and Thomas A. Smith may be true, but the implication of the communications as a whole is false.

2171.  As well, if "the defendant juxtaposes [a] series of fact so as to imply a defamatory connection between them, or [otherwise] creates a defamatory implication…" then a slanderous statement by implication is present.[159]

2172.  Upon information and belief, Plaintiff Mr. Smith can demonstrate by a preponderance of the evidence that facts contained within medical and administrative

---

[157] *Dunlap v. Philadelphia Newspapers, Inc.*, 301 Pa. Super. 475, 491 (Pa. Super. Ct. 1982) (emphasis omitted).

[158] *Id.* at 493.

[159] *Fanelle v. LoJack Corp.*, 2000 U.S. Dist. LEXIS 17767, *10 (E.D. Pa. Dec. 7, 2000).

1   records juxtaposes a series of facts so as to imply a defamatory connection of violent

2   predilections by Plaintiff Mr. Smith.

3   2173.  Although it may be literally true that, Defendant Ms. Teresa Marlino, MD stated

4   that Plaintiff Mr. Smith used offensive language and planned on taking baby from NICU,

5   such a statement erroneously implies that Plaintiff Mr. Smith is a man of violent nature

6   who planned on recovering his child from Defendant St. Luke's Hospital by whatever

7   means necessary; however, in fact, any language can be considered 'offensive' when

8   the recipient of that language does not desire to hear such language, and if Plaintiff Mr.

9   Smith "planned on taking the baby from [the] NICU" it was through the proper hospital

10   discharge procedures and not via any means of force or violence.

11   2174.  Upon information and belief, Plaintiff Mr. Smith can demonstrate by a

12   preponderance of evidence that the Defendants St. Luke's Hospital, and OBHG PA

13   supervised Defendant Ms. Teresa Marlino, MD, in connection with this allegation and

14   are therefore liable under a legal theory of respondeat superior.

15   2175.  Upon information and belief, Defendants St. Luke's Hospital, and/or OBHG PA,

16   supervised Defendant Ms. Teresa Marlino, MD's conduct which violated Plaintiffs' rights

17   under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

18                                    **Damages for Slander II(a-c)**

19   2176.  Plaintiff Mr. Smith suffered substantial harm as a result of Defendants' conduct,

20   including but not limited to, emotional and psychological distress, pain and suffering,

21   fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate

22   compensatory damages to account for PTSD therapies and other related treatments as

1  they have been and will continue to be necessary; Plaintiff respectfully requests an

2  amount of $595,000 in compensatory damages per Defendant.

3  2177.  Given the substantial wealth of the Defendants St. Luke's Hospital, OBHG PA,

4  and Ms. Teresa Marlino, MD, and therefore, their ability to afford the appropriate training

5  to avoid this egregious violation of the Pennsylvania Statutory Law, and, since harm

6  was actually caused to the current Plaintiff Smith Family, and since harm is likely to

7  continue to harm future postpartum families, and because the acts of the Defendants

8  and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a

9  reckless and wanton manner, the Plaintiffs respectfully request the imposition of

10  punitive damages on Defendants St. Luke's Hospital, OBHG PA, and Ms. Teresa

11  Marlino, MD to deter such Defendants from committing to such conduct in the future

12  which violates Commonwealth of Pennsylvania Statutory Law Plaintiffs respectfully

13  request an amount of $10,000,000 in punitive damages per Defendants St. Luke's

14  Hospital, OBHG PA, and Ms. Teresa Marlino, MD.

15  2178.  In the unlikely event that the jury does not find that Plaintiff Mr. Smith suffered

16  any actual injury despite the deprivation of their statutory law rights, the Plaintiff

17  respectfully requests a nominal judgment of $1.00.

## XXXI.   § 42 Pa. C. S. § 8343, Defamation - Slander III

### Newborn baby J.A.S. and Mrs. Grace Smith v. St. Luke's Hospital, Onsite Neonatal,
### & Ms. Cynthia Shultz, MD

21  2179.  Under Pennsylvania defamation law, a communication will be considered

22  defamatory if it ""tends so to harm the reputation of [the complaining party] as to lower

1  him in the estimation of the community or to deter third persons from associating or

2  dealing with him.""[160]

3  2180.  In order for Plaintiffs to succeed in their claim, they must prove the following

4  elements[161]:

5      (1) The defamatory character of the communication;

6      (2) Its publication by the defendant;

7      (3) Its application to the plaintiff;

8      (4) The understanding by the recipient of its defamatory meaning;

9      (5) The understanding by the recipient of it as intended to be applied to the plaintiff;

10     (6) Special harm resulting to the plaintiff from its publication; and

11     (7) Abuse of a conditionally privileged occasion.

12  2181.  The Pennsylvania Supreme Court has abolished an "actual malice" standard and

13  has shifted the inquiry to whether a plaintiff is a private individual or a public figure or

14  public official.[162]

---

[160]*MacElree v. Philadelphia Newspapers*, 544 Pa. 117, 124-125 (Pa. 1996) (citations omitted).

[161]*42 Pa.C.S. § 8343(a)(1-7).*

[162]*Am. Future Sys., Inc. v. Better Bus. Bureau*, 592 Pa. 66, 82-83 (Pa. 2007). However, demonstrations of actual malice on the part of the plaintiff can lead to wider array of potential damages.

1    2182.  Pennsylvania has adopted a negligence standard for private figure plaintiff

2    lawsuits regarding issues of private concern.[163]

3    2183.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

4    or obligation recognized by the law, requiring the actor to conform to a certain standard

5    of conduct; (2) a failure to conform to the required standard; (3) a causal connection

6    between the conduct and the resulting injury; and (4) actual loss or damage resulting to

7    the interests of another.[164]

8                                        ***The Context***

9    2184.  Defendants St. Luke's Hospital and Onsite Neonatal, among other parties named

10   and unnamed in this lawsuit, intentionally created an atmosphere hostile to the Smith

11   Family, including Plaintiffs Newborn baby J.A.S. and Mrs. Smith.

12   2185.  Upon information and belief, Defendant Ms. Cynthia Shultz, MD, supported the

13   hostile atmosphere intentionally created by Defendants St. Luke's Hospital and Onsite

14   Neonatal.

15   2186.  Defendants St. Luke's Hospital, and Onsite Neonatal coordinated their employee,

16   agent, or assign, including Defendant Ms. Cynthia Shultz, MD, towards a narrative that

17   Plaintiff Mrs. Smith had ingested methamphetamine and that Plaintiff Mrs. Smith gave

---

[163]*Wilson v. Slatalla*, 970 F. Supp. 405, 414 (E.D. Pa. 1997).

[164]*See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933,

938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir.

1993).

1   birth to Plaintiff Newborn baby J.A.S. who also suffered the deleterious effects of

2   methamphetamine.

3   2187.  The umbilical cord that connected Plaintiffs Newborn baby J.A.S. and Mrs. Smith

4   was tested on April 9th, 2021, and was negative for amphetamines and

5   methamphetamines.

6   2188.  Despite the umbilical cord that connected Plaintiffs Newborn baby J.A.S. and

7   Mrs. Smith testing negative for illegal drugs, Defendants St. Luke's Hospital and Onsite

8   Neonatal, acting through agent, employee, or assign Defendant Ms. Cynthia Shultz,

9   MD, continued the narrative that Plaintiff Mrs. Smith ingested methamphetamine and

10  that Plaintiff Mrs. Smith gave birth to her son Plaintiff Newborn baby J.A.S. who also

11  suffered the deleterious effects of methamphetamine.

12  2189.  Medical records on April 9th, 2021, reflect the statement, "[F]amily was requesting

13  discharge at 12 hours of life."

14  2190.  Mr. and Mrs. Smith requested at approximately 12-hours of Plaintiff Newborn

15  baby J.A.S.'s life that the Smith Family be discharged from Defendant St. Luke's

16  Hospital when practicable, not immediately at 12 hours from birth, as is suggested in the

17  medical records entered by Defendant St. Luke's Hospital agents, employees, and/or

18  assigns.

19  2191.  Defendants St. Luke's Hospital and Onsite Neonatal through their agents,

20  employees, or assigns, was further attempting to imply that Plaintiff Mrs. Smith was

21  urgently seeking to go home so that she could consume methamphetamine by making

22  the medical records appear that Plaintiff Mrs. Smith quickly sought to reingest

23  methamphetamine by going home as soon as possible after her newborn baby's birth.

2192.  Beginning on April 10th, 2021 the statement, "High probability of life[-]threatening clinical deterioration in infant's condition without treatment," began regularly appearing in medical records.

2193.  Mr. and Mrs. Smith were not ever told by any agent, employee, or assign of Defendants St. Luke's Hospital nor Onsite Neonatal that Plaintiff Newborn baby J.A.S. had a, "High probability of life[-]threatening clinical deterioration…without treatment."

2194.  Despite the accusation of methamphetamine ingestion by Defendants St. Luke's Hospital and Onsite Neonatal and their agents, assigns, or employees, Plaintiff Mrs. Smith was allowed to breastfeed Plaintiff Newborn baby J.A.S.

2195.  Despite Plaintiffs Mrs. Smith and Newborn baby J.A.S. being suspected of suffering the deleterious effects of methamphetamine, state mandated policies and procedures for methamphetamine withdrawal were not implemented for Plaintiff Newborn baby J.A.S. by Defendants St. Luke's Hospital, nor, Onsite Neonatal, nor any other health provider.

2196.  Notes on medical records by non-radiology experts from April 11th, 2021, stated that, "…upon admission to the NICU [Newborn baby J.A.S.] showed hazy lung fields with expansion to 5-9 ribs."

2197.  Radiology indicates in the medical record no "hazy lung fields" or "expansion" into Plaintiff Newborn baby J.A.S.'s lungs.

2198.  Radiology, instead indicates in the medical record, "Perhaps minimal asymmetric granular opacity on the right. No consolidation. No discernable pneumothorax or layering pleural effusion on limited supine imaging. Osseous structures appear within normal limits for patient age."

1   2199.  Upon information and belief, Defendants St. Luke's Hospital and Onsite

2   Neonatal, and other parties named and unnamed in this lawsuit, manipulated the

3   medical records in their own interpretations of the radiologist's report to paint Plaintiffs

4   Newborn baby J.A.S. and Mrs. Smith as suffering the deleterious effects of

5   methamphetamine by constructing a reason to keep Plaintiff Newborn baby J.A.S. in the

6   hospital against the will and consent of his parents.

7   2200.  As represented in the medical documentation, beginning on April 10th, 2021,

8   Plaintiff Mrs. Smith was under constant monitoring by all Defendant St. Luke's Hospital

9   and Onsite Neonatal for "inappropriate behavior" via their agents, employees, and/or

10   assigns.

11   2201.  As of April 9th, 2021, Plaintiff Mr. Smith was not allowed to ever be on Defendant

12   St. Luke's Hospital Property at the consequence of being arrested.

13   2202.  As of April 10th, 2021, Plaintiff Mrs. Smith was supervised around the clock by

14   male security guards, even while breastfeeding, and walking to the restroom.

15   **Additional Context & The Slanderous Statement**

16   2203.  Upon information and belief, Defendant Ms. Cynthia Shultz, MD supported the

17   hostile atmosphere intentionally created by Defendants St. Luke's Hospital and Onsite

18   Neonatal, against the Plaintiff Smith Family.

19   2204.  Defendant Ms. Cynthia Shultz, MD, on April 9th, 2021 in Plaintiff Newborn baby

20   J.A.S.'s medical records, under the heading "Quick Note" by Defendant Ms. Cynthia

21   Shultz, MD, represented the following, "Dr. Marlino reported that father became agitated

1   and confrontational after learning of the routine report to C&Y for maternal and baby

2   positive UDS screen".

3   2205.  Ms. Teresa Marlino, MD, on April 9th, 2021, communicated to Defendant Cynthia

4   Shultz, MD, that the "UDS" or "urinary drug screening" that Plaintiffs Mrs. Smith and

5   Newborn baby J.A.S. tested positive for was the illegal and harmful controlled

6   substance methamphetamine.

7   2206.  Defendant Ms. Cynthia Shultz, MD, on April 9th, 2021 in Plaintiff Newborn baby

8   J.A.S.'s medical records, under the heading "Quick Note" by Ms. Cynthia Shultz, MD,

9   represented the following, "I was instructed to call C&Y to report the situation. I spoke

10  with Tonya #402 and reported the events as stated above."

11  2207.  The statement by Defendant Ms. Cynthia Shultz, MD, "Dr. Marlino reported that

12  father became agitated and confrontational after learning of the routine report to C&Y

13  for maternal and baby positive UDS screen," is among the "events stated above" in the

14  document.

15  2208.  Plaintiff Mrs. Smith did not ever test positive for methamphetamine.

16  2209.  Plaintiff Newborn baby J.A.S. did not ever test positive for methamphetamine.

17  2210.  There is not any valid reason to place a mother's medical information in her

18  newborn baby's medical records, as that is a violation of the mother's right to medical

19  privacy; each individual's medical records should only represent themselves.

20  2211.  There is not any valid reason to place false medical information about a

21  postpartum mother in her newborn baby's medical records.

22  2212.  A likely reason to place false medical information about a mother in her newborn

23  baby's medical records is to attempt to color Plaintiff Mrs. Smith as having ingested

1    illegal methamphetamine and that by extension her newborn baby suffered the

2    deleterious effects of methamphetamine.

3                                    *Slander Per Se III(a)*

4    2213.  The statement in Plaintiff Newborn baby J.A.S.'s medical records as represented

5    by Defendant Ms. Cynthia Shultz, MD, and ratified with the weight of her position that,

6    "Dr. Marlino reported that father became agitated and confrontational after learning of

7    the routine report to C&Y for maternal and baby positive UDS screen," harmed the

8    reputation of Plaintiffs Mrs. Smith and Newborn baby J.A.S. in the estimation of the

9    community by stating that Plaintiff Mrs. Smith ingested illegal methamphetamines and

10   that she and her son Plaintiff Newborn child J.A.S. suffered the deleterious effects of

11   ingesting illegal and harmful substances.

12   2214.  The defamatory statement is harmful in character because it states that Plaintiff

13   Mrs. Smith has ingested the illegal and harmful substance of methamphetamine and

14   that she passed that harm onto her child Plaintiff Newborn baby J.A.S.

15   2215.  Defendant Ms. Cynthia Shultz, MD, published the defamatory statement to at

16   least Monroe County Children and Youth Services "Tonya #402" where the statements

17   were heard by "Tonya #402".

18   2216.  Upon information and belief, it can be demonstrated through Defendant

19   testimonies, examinations of medical records, and hospital policies, that recipients of

20   the publication understood that the meaning of the publication was that Plaintiff Mrs.

21   Smith had ingested illegal methamphetamine and passed that harm onto newborn baby

22   J.A.S.

2217.  Since Plaintiff Newborn baby J.A.S. is Mrs. Smith's baby, it was clear that the defamatory statement was to be applied to both Plaintiffs Newborn baby J.A.S. and Mrs. Smith.

2218.  Harm suffered by the Plaintiffs includes, but is not limited to, a hostile atmosphere, exacerbating Plaintiff's mental health conditions which Defendants St. Luke's Hospital and Onsite Neonatal were aware of, causing a postpartum mother to needlessly suffer without any reasonable amenities when in the NICU, staff ratifying each other's invalid moral positions leading other staff to regard their inappropriate actions with a sense of false righteousness, and Plaintiff Newborn baby J.A.S. being considered abused by his mother through her ingestion of illegal drugs, by Defendants St. Luke's Hospital and Onsite Neonatal through their agent, employee, or assign, Defendant Ms. Cynthia Shultz, MD.

2219.  Upon information and belief, Defendants St. Luke's Hospital and Onsite Neonatal, through their agent, employee, or assign, Defendant Ms. Cynthia Shultz, MD, abused her conditionally privileged occasion when as a medical provider with the ability to communicate information to state authorities in line with her duties as an agent, employee, or assign of Defendants St. Luke's Hospital and Onsite Neonatal did falsify communicated medical records through the published defamatory statement.

2220.  Plaintiffs Newborn baby J.A.S. and Mrs. Smith are private individuals and not public figures.

2221.  Since this is a case of a private figure plaintiff redressing issues of private concern, the appropriate standard for this slander claim is one of negligence.

2222.  Negligence: (1) Medical providers with the ability to communicate medical records to state officials as a function of their assignor, employer, or agency are required to communicate true and accurate records to those state officials.

2223.  Negligence: (2) Medical provider Defendant Ms. Cynthia Shultz, MD did not communicate true and accurate medical records when she represented to Tonya #402 of Northampton County Children and Youth Services that, "Dr. Marlino reported that father became agitated and confrontational after learning of the routine report to C&Y for maternal and baby positive UDS screen".

2224.  Negligence: (3) Upon information and belief, but for the actions of the Defendant attesting to Plaintiff Mrs. Smith as a methamphetamine user, Plaintiff Mrs. Smith would not have suffered the aforementioned harms and indignities mentioned earlier in this allegation of slanderous defamation, as well, it is likely that Plaintiff Mrs. Smith would not have had pervasive and injurious inquiries about private family matters by state officials.

2225.  Negligence: (4) Plaintiffs have suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, and injury to their reputations.

2226.  In *slander per se* cases Pennsylvania defamation law considers "Words that on their face and without the aid of extrinsic evidence are recognized as injurious are actionable per se…."[165]

---

[165]*Joseph v. Scranton Times L.P.*, 959 A.2d 322, n.23 (Pa. Super. Ct. 2008).

2227.  Upon information and belief, the Defendant Ms. Cynthia Shultz, MD, directly and unequivocally accused Plaintiff Mrs. Smith of having ingested methamphetamine and she communicated that fact to Tonya #402, which is on its face and without the aid of extrinsic evidence injurious, and actionable for a *slander per se* claim.

2228.  In *slander pe se* cases, Pennsylvania law observes that, "words imputing a criminal offense, loathsome disease, business misconduct or serious sexual misconduct" will be considered defamatory per se.[166]

2229.  Since Defendant Ms. Cynthia Shultz, MD, directly and unequivocally accused Plaintiff Mrs. Smith of being a methamphetamine to Tonya #402, and since methamphetamine is an illegal controlled substance, the Defendant imputed a criminal offense, thereby making this an actionable *slander per se* claim.

2230.  Upon information and belief, Plaintiff can demonstrate by a preponderance of evidence that the Defendants St. Luke's Hospital and Onsite Neonatal, supervised Defendant Ms. Cynthia Shultz, MD in connection with this allegation and are therefore liable under a legal theory of respondeat superior.

2231.  Upon information and belief, Defendants St. Luke's Hospital, and/or Onsite Neonatal, supervised Defendant Ms. Cynthia Shultz's conduct which violated Plaintiffs' rights under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

*Or, In the Alternative,*

*Slander Per Quod III(b)*

---

[166]*Hrishenko v. Coombs*, 2014 Pa. Super. Unpub. LEXIS 880, *9 (Pa. Super. Ct. 2014).

2232.  The statement in Plaintiff Mrs. Smith's medical records as represented by

Defendant Ms. Cynthia Shultz, MD, "Dr. Marlino reported that father became agitated

and confrontational after learning of the routine report to C&Y for maternal and baby

positive UDS screen," harmed the reputation of Plaintiffs Mrs. Smith and Newborn baby

J.A.S. in the estimation of the community by representing that Plaintiff Mrs. Smith is a

user of illegal of methamphetamines and that she and her son Plaintiff Newborn child

J.A.S. were addicted to illegal and harmful substances.

2233.  The defamatory statement is harmful in character because it states that Plaintiff

Mrs. Smith has abused the illegal and harmful substance of methamphetamine and that

she passed that harm onto her child Plaintiff Newborn baby J.A.S.

2234.  Defendant Ms. Cynthia Shultz, MD, published the defamatory statement to at

least Northampton County Children and Youth Services "Tonya #402" where the

statements were heard by "Tonya #402".

2235.  Upon information and belief, it can be demonstrated through Defendant

testimonies, examinations of medical records, and hospital policies that recipients of the

publication understood that the meaning of the publication was that Plaintiff Mrs. Smith

had ingested illegal methamphetamine.

2236.  Since Plaintiff Newborn baby J.A.S. is Plaintiff Mrs. Smith's baby, it was clear

that the defamatory statement was to be applied to both Plaintiffs Newborn baby J.A.S.

and Mrs. Smith.

2237.  Harm suffered by the Plaintiffs includes, but is not limited to, a hostile

atmosphere, exacerbating Plaintiff's mental health conditions which Defendants St.

Luke's Hospital and Onsite Neonatal were aware of, causing a postpartum mother to

1   needlessly suffer without any reasonable amenities when in the NICU, staff ratifying

2   each other's invalid moral positions leading other staff to regard their inappropriate

3   actions with a sense of false righteousness, and Plaintiff Newborn baby J.A.S. being

4   considered abused by his mother through her use of illegal drugs, by Defendant St.

5   Luke's Hospital and  Onsite Neonatal through their agent, employee, or assign,

6   Defendant Ms. Cynthia Shultz, MD.

7   2238.  Upon information and belief, Defendants St. Luke's Hospital and Onsite

8   Neonatal, through their agent, employee, or assign, Defendant Ms. Cynthia Shultz, MD,

9   abused her conditionally privileged occasion when as a medical provider with the ability

10  to communicate information to state authorities in line with her duties as an agent,

11  employee, or assign of Defendants St. Luke's Hospital and Onsite Neonatal did falsify

12  communicated medical records through the published defamatory statement.

13  2239.  Plaintiffs Newborn baby J.A.S. and Mrs. Smith are private individuals and not

14  public figures.

15  2240.  Since this is a case of a private figure plaintiff redressing issues of private

16  concern, the appropriate standard for this libel claim is one of negligence.

17  2241.  Negligence: (1) Medical providers with the ability to communicate medical

18  records to state officials as a function of their assignor, employer, or agency are

19  required to communicate true and accurate records to those state officials.

20  2242.  Negligence: (2) Medical provider Defendant Ms. Cynthia Shultz, MD did not

21  communicate true and accurate medical records when she represented to "Tonya #402"

22  of Monroe County Children and Youth Services that, "Dr. Marlino reported that father

1    became agitated and confrontational after learning of the routine report to C&Y for

2    maternal and baby positive UDS screen".

3    2243.  Negligence: (3) Upon information and belief, but for the actions of the Defendant

4    attesting to Plaintiff Mrs. Smith as a methamphetamine user, Plaintiff Mrs. Smith would

5    not have suffered the aforementioned harms and indignities mentioned earlier in this

6    allegation of slanderous defamation, as well, it is likely that Plaintiff Mrs. Smith would

7    not have had pervasive and injurious inquiries about private family matters by state

8    officials.

9    2244.  Negligence: (4) Plaintiffs have suffered substantial harm as a result of

10   Defendants' conduct, including but not limited to, emotional and psychological distress,

11   pain and suffering, and injury to their reputations.

12   2245.  In *slander per quod* cases Pennsylvania defamation law considers extrinsic

13   supporting evidence of slanderous behavior if the injurious nature of the words is not

14   apparent.[167]

15   2246.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

16   evidence that through the presentation of medical records, police reports, and other

17   administrative documentation that the slanderous statement was not a mere description

18   of the baby or his mother for the medical edification of potential diagnosis concerning

19   Plaintiff Newborn baby J.A.S. or Mrs. Smith, but was instead a statement intended to

20   cast unfounded and harmful aspersions on both Plaintiffs Newborn baby J.A.S. and

21   Mrs. Smith.

---

[167]*Joseph*, 959 A.2d at n.23.

1   2247.  Plaintiffs will need to demonstrate necessary innuendo by Defendant Parties.

2   2248.  "Innuendo", "define[s] the defamatory meaning which the plaintiff attaches to the

3   words" and "show[s] how they come to have that meaning and how they relate to the

4   plaintiff."[168]

5   2249.  Methamphetamine is an illegal controlled substance, which has deleterious

6   effects on those that consume it.

7   2250.  Deleterious effects caused by methamphetamine when consumed by a pregnant

8   mother will likely be passed on to her child in utero via the umbilical cord.

9   2251.  When Defendant Ms. Cynthia Shultz, MD, represented the slanderous statement,

10  adding the weight of the authority of her position to the narrative that Plaintiff Mrs. Smith

11  ingested methamphetamine and passed it along to her newborn baby, it was to make

12  clear to "Tonya #402" that Plaintiff Mrs. Smith consumed methamphetamine and that

13  she likely passed on the deleterious effects of methamphetamine use to her child

14  Plaintiff Newborn baby J.A.S.

15  2252.  The slanderous statement relates to the Plaintiffs Newborn baby J.A.S. and Mrs.

16  Smith because the statement is about Plaintiffs Mrs. Smith and Newborn baby J.A.S.,

17  and it is in Plaintiff Mrs. Smith's medical records.

18  2253.  Upon information and belief, Plaintiff can demonstrate by a preponderance of

19  evidence that the Defendants St. Luke's Hospital and Onsite Neonatal supervised

---

[168]*Cosgrove Studio & Camera Shop, Inc. v. Pane*, 408 Pa. 314, 319 (Pa. 1962)

(citations omitted).

1    Defendant Ms. Cynthia Shultz, MD in connection with this allegation and are therefore

2    liable under a legal theory of respondeat superior.

3    2254.  Upon information and belief, Defendants St. Luke's Hospital, and/or Onsite

4    Neonatal, supervised Defendant Ms. Cynthia Shultz's conduct which violated Plaintiffs'

5    rights under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

6    *Or, In the Alternative*

7    *Slander by Implication III(c)*

8    **The Slanderous Statement & Implication**

9    2255.  Upon information and belief, Defendant Ms. Cynthia Shultz, MD, supported the

10    hostile atmosphere intentionally created by Defendants St. Luke's Hospital and Onsite

11    Neonatal against the Plaintiff Smith Family.

12    2256.  Defendant Ms. Cynthia Shultz, MD stated on April 9th, 2021 in Plaintiff Newborn

13    baby J.A.S.'s medical records that, "Dr. Marlino reported that father became agitated

14    and confrontational after learning of the routine report to C&Y for maternal and baby

15    positive UDS screen".

16    2257.  Ms. Teresa Marlino, MD did verbalize to Defendant Ms. Cynthia Shultz, MD, the

17    aforementioned statement as a matter of facts.

18    2258.  There is not a valid reason to place a mother's medical status in her newborn

19    baby's medical records.

20    2259.  A likely reason to place medical information about a mother in her child's medical

21    records is to attempt to color Plaintiff Mrs. Smith as having ingested illegal

1  methamphetamine and that by extension her newborn baby suffered the deleterious

2  effects of methamphetamine.

3  2260.  The statement in Plaintiff Newborn baby J.A.S.'s medical records as

4  communicated by Defendant Ms. Cynthia Shultz, MD, that "Dr. Marlino reported that

5  father became agitated and confrontational after learning of the routine report to C&Y

6  for maternal and baby positive UDS screen," harmed the reputation of Plaintiffs Mrs.

7  Smith and Newborn baby J.A.S. in the estimation of the community by implying that

8  Plaintiff Mrs. Smith had ingested illegal methamphetamines and that she and her son

9  Plaintiff Newborn child J.A.S. suffered the deleterious effects of illegal and harmful

10  substance use.

11  2261.  The defamatory statement is harmful in character because it implies that Plaintiff

12  Mrs. Smith has ingested the illegal and harmful substance methamphetamine and that

13  she passed that harm onto her child Plaintiff Newborn baby J.A.S.

14  2262.  Defendant Ms. Cynthia Shultz, MD, published the defamatory statement to at

15  least Monroe County Children and Youth Services "Tonya #402" where the statements

16  were heard by "Tonya #402".

17  2263.  Upon information and belief, it can be demonstrated through Defendant

18  testimonies, examinations of medical records, and hospital policies, that the recipient of

19  the publication understood that the meaning of the publication was that Plaintiff Mrs.

20  Smith had ingested illegal methamphetamine.

21  2264.  Since Plaintiff Newborn baby J.A.S. is Plaintiff Mrs. Smith's baby, it was clear

22  that the defamatory statement was to be applied to both Plaintiffs Newborn baby J.A.S.

23  and Mrs. Smith.

2265.  Harm suffered by the Plaintiffs includes, but is not limited to, a hostile atmosphere, exacerbating Plaintiff's mental health conditions which Defendants St. Luke's Hospital and Onsite Neonatal were aware of, causing a postpartum mother to needlessly suffer without any reasonable amenities when in the NICU, staff ratifying each other's invalid moral positions leading other staff to regard their inappropriate actions with a sense of false righteousness, and Plaintiff Newborn baby J.A.S. being considered abused by his mother through her ingestion of illegal drugs, by Defendants St. Luke's Hospital and Onsite Neonatal through their agent, employee, or assign Defendant Ms. Cynthia Shultz, MD.

2266.  Upon information and belief, Defendants St. Luke's Hospital and Onsite Neonatal through their agent, employee, or assign, Defendant Ms. Cynthia Shultz, MD, abused her conditionally privileged occasion when as a medical provider with the ability to alter and manipulate medical records, did write true statements in those records, including the published defamatory statement that in their culmination lead to false assertions about the Plaintiffs.

2267.  Plaintiffs Newborn baby J.A.S. and Mrs. Smith are private individuals and not public figures.

2268.  Since this is a case of a private figure plaintiff redressing issues of private concern, the appropriate standard for this libel claim is one of negligence.

2269.  Negligence: (1) Medical providers with the ability to communicate medical records as a function of their assignor, employer, or agency are required to maintain medical records that reflect the truth of a matter in both itemized mentions of fact and the totality of what those facts are to represent.

2270.  Negligence: (2) Medical provider Ms. Cynthia Shultz, MD, did maintain true and accurate medical records when itemized mentions of fact were read in isolation from one another; however, when taken as a totality the facts present the Plaintiffs in a harmful and dishonest light, culminating with when Defendant Ms. Cynthia Shultz, MD, represented in Plaintiff Newborn baby J.A.S.'s medical records that Ms. Marlino, MD, did actually and truthfully make the defamatory statement to Defendant Ms. Cynthia Shultz, MD, which were then negligently passed on "Tonya 402".

2271.  Negligence: (3) Upon information and belief, but for the actions of the Defendant implying that Plaintiff Mrs. Smith was a methamphetamine user, Plaintiff Mrs. Smith would not have suffered the aforementioned harms and indignities mentioned earlier in this allegation of slanderous defamation, as well, it is likely that Plaintiff Mrs. Smith would not have had pervasive and injurious inquiries about private family matters by state officials.

2272.  Negligence: (4) Plaintiffs have suffered substantial harm as a result of Defendant's conduct, including but not limited to, emotional and psychological distress, pain and suffering, and injury to their reputations.

2273.  Libel by Implication occurs when "true facts that in context imply a falsehood."[169]

---

[169]*Dunlap v. Philadelphia Newspapers, Inc.*, 301 Pa. Super. 475, 491 (Pa. Super. Ct. 1982) (emphasis omitted).

1   2274.  In addition, "the literal accuracy of separate statements will not render a

2   communication 'true' where, as here, the implication of the communication as a whole

3   was false."[170]

4   2275.  Upon information and belief, Plaintiffs Newborn baby J.A.S. and Mrs. Smith can

5   demonstrate by a preponderance of the evidence that any one statement in Plaintiff

6   Newborn baby J.A.S.'s medical records may be true, but the implication of the

7   communications as a whole in Plaintiff Newborn baby J.A.S.'s medical records is false.

8   2276.  While it may be literally true that "…maternal and baby positive UDS screen[,]"

9   and that according to this wording one cannot directly discern an accusation of

10  methamphetamine; however, when placed in context of medical records, policies, and,

11  witness testimonials it is clear that the drug being asserted in Plaintiffs Mrs. Smith and

12  Newborn baby J.A.S. is methamphetamine.

13  2277.  As well, if "the defendant juxtaposes [a] series of fact so as to imply a defamatory

14  connection between them, or [otherwise] creates a defamatory implication…" then a

15  slanderous statement by implication is present.[171]

16  2278.  Upon information and belief, Plaintiffs Newborn baby J.A.S. and Mrs. Smith can

17  demonstrate by a preponderance of the evidence that many facts contained within

18  Plaintiff Newborn baby J.A.S.'s medical records juxtapose a series of facts so as to

19  imply a defamatory connection of methamphetamine ingestion by Plaintiff Mrs. Smith,

20  the deleterious effects of which were passed on to Plaintiff Newborn baby J.A.S.

---

[170]*Id.* at 493.

[171]*Fanelle v. LoJack Corp.*, 2000 U.S. Dist. LEXIS 17767, *10 (E.D. Pa. Dec. 7, 2000).

2279.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of evidence that the Defendants St. Luke's Hospital and Onsite Neonatal supervised Defendant Ms. Cynthia Shultz, MD, in connection with this allegation and are therefore liable under a legal theory of respondeat superior.

2280.  Upon information and belief, Defendants St. Luke's Hospital, and/or Onsite Neonatal, supervised Defendant Ms. Cynthia Shultz's conduct which violated Plaintiffs' rights under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

### Damages for Slander III(a-c)

2281.  Plaintiff Mrs. Smith suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully request an amount of $595,000 in compensatory damages per Defendant.

2282.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite Neonatal, and Ms. Cynthia Shultz, MD, and therefore, their ability to afford the appropriate training to avoid this egregious violation of the Pennsylvania Statutory Law, and, since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum families, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the imposition of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, and Ms. Cynthia Shultz, MD to deter such Defendants from committing to such conduct

1  in the future which violates Commonwealth of Pennsylvania Statutory Law Plaintiffs

2  respectfully request an amount of $10,000,000 in punitive damages per Defendants St.

3  Luke's Hospital, Onsite Neonatal, and Ms. Cynthia Shultz, MD.

4  2283.  In the unlikely event that the jury does not find that Plaintiffs Mrs. Smith and

5  Newborn baby J.A.S. suffered any actual injury despite the deprivation of their statutory

6  law rights, the Plaintiff respectfully requests a nominal judgment of $1.00.

7  # XXXII.    § 42 Pa. C. S. § 8343, Defamation - Slander IV

8  ## Mr. Smith v. St. Luke's Hospital, Onsite Neonatal, & Ms. Cynthia Shultz, MD

9  2284.  Under Pennsylvania defamation law, a communication will be considered

10  defamatory if it ""tends so to harm the reputation of [the complaining party] as to lower

11  him in the estimation of the community or to deter third persons from associating or

12  dealing with him.""[172]

13  2285.  In order for Plaintiffs to succeed in their claim, they must prove the following

14  elements[173]:

15  (1) The defamatory character of the communication;

16  (2) Its publication by the defendant;

17  (3) Its application to the plaintiff;

18  (4) The understanding by the recipient of its defamatory meaning;

---

[172]*MacElree v. Philadelphia Newspapers*, 544 Pa. 117, 124-125 (Pa. 1996) (citations omitted).

[173]*42 Pa.C.S. § 8343(a)(1-7).*

1    (5) The understanding by the recipient of it as intended to be applied to the plaintiff;

2    (6) Special harm resulting to the plaintiff from its publication; and

3    (7) Abuse of a conditionally privileged occasion.

4    2286.  The Pennsylvania Supreme Court has abolished an "actual malice" standard and

5    has shifted the inquiry to whether a plaintiff is a private individual or a public figure or

6    public official.[174]

7    2287.  Pennsylvania has adopted a negligence standard for private figure plaintiff

8    lawsuits regarding issues of private concern.[175]

9    2288.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

10   or obligation recognized by the law, requiring the actor to conform to a certain standard

11   of conduct; (2) a failure to conform to the required standard; (3) a causal connection

12   between the conduct and the resulting injury; and (4) actual loss or damage resulting to

13   the interests of another.[176]

14                                    ***The Context***

---

[174]*Am. Future Sys., Inc. v. Better Bus. Bureau*, 592 Pa. 66, 82-83 (Pa. 2007). However,

demonstrations of actual malice on the part of the plaintiff can lead to wider array of

potential damages.

[175]*Wilson v. Slatalla*, 970 F. Supp. 405, 414 (E.D. Pa. 1997).

[176]*See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933,

938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir.

1993).

2289.  Defendants St. Luke's Hospital and Onsite Neonatal, among other parties named and unnamed in this lawsuit, intentionally created an atmosphere hostile to the Smith Family, including Plaintiff Mr. Smith.

2290.  Defendant Ms. Cynthia Shultz, MD, supported the hostile atmosphere intentionally created by Defendants St. Luke's Hospital and Onsite Neonatal.

2291.  Defendants St. Luke's Hospital and Onsite Neonatal coordinated their employee, agent, or assign, Defendant Ms. Cynthia Shultz, MD, towards a narrative that Mrs. Smith ingested methamphetamine and that Plaintiff Mrs. Smith gave birth to Newborn baby J.A.S. who also suffered the deleterious effects of methamphetamine use.

2292.  The umbilical cord that connected Newborn baby J.A.S. and Mrs. Smith was tested on April 9th, 2021, and was negative for amphetamines and methamphetamines.

2293.  Despite the umbilical cord that connected Newborn baby J.A.S. and Mrs. Smith testing negative for illegal drugs, Defendants St. Luke's Hospital and Onsite Neonatal, acting through agent, employee, or assign Defendant Ms. Cynthia Shultz, MD, continued the narrative that Mrs. Smith ingested methamphetamine and that Mrs. Smith gave birth to Newborn baby J.A.S. who also suffered the deleterious effects of methamphetamine use.

2294.  Medical records on April 9th, 2021, reflect the statement, "[F]amily was requesting discharge at 12 hours of life."

2295.  Mr. and Mrs. Smith requested at approximately 12-hours of Newborn baby J.A.S.'s life that the Smith Family be discharged from Defendant St. Luke's Hospital when practicable, not immediately at 12 hours from birth, as is suggested in the medical records entered by St. Luke's Hospital agents, employees, and/or assigns.

2296.  Defendants St. Luke's Hospital and Onsite Neonatal, through their agents, employees, or assigns, was further attempting to imply that Plaintiff Mrs. Smith was urgently seeking to go home so that she could consume methamphetamine by making the medical records appear that Plaintiff Mrs. Smith sought to reingest methamphetamine by going home as soon as possible after her newborn baby's birth.

2297.  Beginning on April 10th, 2021 the statement, "High probability of life[-]threatening clinical deterioration in infant's condition without treatment," began regularly appearing in medical records.

2298.  Mr. and Mrs. Smith were not ever told by any agent, employee, or assign of Defendants St. Luke's Hospital or Onsite Neonatal that Newborn baby J.A.S. had a, "High probability of life[-]threatening clinical deterioration…without treatment."

2299.  Despite the accusation of methamphetamine ingestion by Defendants St. Luke's Hospital and Onsite Neonatal and their agents, assigns, or employees, Mrs. Smith was allowed to breastfeed Newborn baby J.A.S.

2300.  Despite Mrs. Smith and Newborn baby J.A.S. being suspected of suffering the deleterious effects of methamphetamine use, state mandated policies and procedures for methamphetamine withdrawal were not implemented for Newborn baby J.A.S. by Defendants St. Luke's Hospital, Onsite Neonatal, nor any other health provider.

2301.  Notes on medical records by non-radiology experts from April 11th, 2021, stated that, "…upon admission to the NICU [newborn baby J.A.S.] showed hazy lung fields with expansion to 5-9 ribs."

2302.  Radiology indicates in the medical record no "hazy lung fields" or "expansion" into Newborn baby J.A.S.'s lungs.

1    2303.  Radiology, instead indicates in the medical record, "Perhaps minimal asymmetric

2    granular opacity on the right. No consolidation. No discernable pneumothorax or

3    layering pleural effusion on limited supine imaging. Osseous structures appear within

4    normal limits for patient age."

5    2304.  Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal,

6    and other parties named and unnamed in this lawsuit, manipulated the medical records

7    in their own interpretations of the radiologist's report to paint Newborn baby J.A.S. and

8    Mrs. Smith as suffering the deleterious effects of methamphetamine use by constructing

9    a reason to keep Newborn baby J.A.S. in the hospital against the will and consent of his

10   parents.

11   2305.  As represented in the medical documentation, beginning on April 10th, 2021, Mrs.

12   Smith was under constant monitoring by all Defendant St. Luke's Hospital and Onsite

13   Neonatal for "inappropriate behavior" via their agents, employees, and/or assigns.

14   2306.  As of April 9th, 2021, Mr. Smith was not allowed to ever be on Defendant St.

15   Luke's Hospital Property at the consequence of being arrested.

16   2307.  As of April 10th, 2021, Plaintiff Mrs. Smith was supervised around the clock by

17   male security guards, even while breastfeeding, and walking to the restroom.

18   2308.  On the evening of April 9th, 2021, after Mr. & Mrs. Smith were ejected from

19   Defendant St. Luke's Hospital's property., Defendant Ms. Cynthia Shultz, MD, created

20   an addendum to Newborn baby J.A.S.'s medical records.

21   2309.  The addendum written by Ms. Cynthia Shultz, MD is as follows:

22            "I was called by Dr. Marlino (OB) regarding a concerning

23            parental interaction.

1

2                Dr. Marlino reported that father became agitated and

3                confrontational after learning of the routine report to C&Y for

4                maternal and baby positive UDS screen.  She stated that

5                father used offensive language and planned on taking baby

6                from NICU.

7

8                I then checked on infant and learned from nursing that father

9                had been in the room with infant with the intent of taking the

10               baby.  Father left the NICU to obtain his car seat.

11

12               I then had nursing call security while I notified the NICU

13               medical director.  NICU medical director notified hospital

14               legal and leadership team.  The NICU and OB wards were

15               placed on security lock down.  Next, police were called.

16

17               I was instructed to call C&Y to report the current situation.  I

18               spoke with Tonya #402 and reported the events as stated

19               above. As this infant is on NC respiratory support, IV fluids

20               and IV antibiotics, he is not stable for discharge.

21

1                    Per report from leadership, father was given a no

2                    trespassing order and will be arrested if he returns to the

3                    hospital.

4

5                    Plan for the infant to remain in the NICU until clinically ready

6                    for discharge and further guidance from C&Y and/or legal

7                    team."

8   2310.  Upon information and belief, Defendant Ms. Cynthia Shultz, MD participated in

9   and approved of a false narrative concerning Plaintiff Mr. Smith, that Plaintiff Mr. Smith

10   was in some way too dangerous or violent to be allowed to visit his son, Newborn baby

11   J.A.S., on Defendant St. Luke's Hospital's property.

12                     **The Slanderous Statement**

13   2311.  Upon information and belief, Defendant Ms. Cynthia Shultz, MD supported the

14   hostile atmosphere intentionally created by Defendant St. Luke's Hospital and Onsite

15   Neonatal against the Plaintiff Smith Family.

16   2312.  Defendant Ms. Cynthia Shultz, MD, on April 9th, 2021, placed an addendum in

17   Newborn baby J.A.S.'s medical records including the slanderous statement represented

18   by Defendant Ms. Cynthia Shultz, MD, that "She [Dr. Marlino] stated that father used

19   offensive language and planned on taking baby from NICU."

20   2313.  Plaintiff Mr. Smith did not ever exceed the bounds of reasonable civil discourse,

21   did not vocalize what a reasonable person would call "curse words", nor did any verbal

22   espousals by Defendant Mr. Smith appeal to a prurient interest.

2314.  Upon information and belief, Ms. Cynthia Shultz, MD, supported the false narrative created about Plaintiff Mr. Smith that Plaintiff Mr. Smith acted in a manner befitting a no trespass order by the local police department.

2315.  Upon information and belief, there is not any valid reason to place a father's legal information in his newborn child's medical records.

2316.  Upon information and belief, there is not a valid reason to place information stating Plaintiff Mr. Smith's supposed personality traits in his newborn baby's medical records.

2317.  A likely reason to place alleged personality traits and legal information about a newborn child's father in that child's medical records is to attempt to color Plaintiff Mr. Smith as a potentially criminally violent person capable of kidnapping his own child form a hospital.

### *Slander Per Se IV(a)*

2318.  The statement in Newborn baby J.A.S.'s medical records as communicated by Defendant Ms. Cynthia Shultz, MD, that "She [Dr. Marlino] stated that father used offensive language and planned on taking baby from NICU," harmed the reputation of Plaintiff Mr. Smith in the estimation of the community by stating that Plaintiff Mr. Smith is an individual of criminal caliber, and that he acted in a manner befitting a no trespassing order from the Bethlehem Police Department.

2319.  The defamatory statement is harmful in character because it states that Plaintiff Mr. Smith, at the behest of Defendants St. Luke's Hospital and/or Onsite Neonatal, is a

1   person capable of such violence that he cannot be permitted on Defendant St. Luke's

2   Hospital property to visit with his newborn baby child in the N.I.C.U.

3   2320.  Defendant Ms. Cynthia Shultz, MD, published the defamatory statement to at

4   least Monroe County Children and Youth Services "Tonya #402" where the statements

5   were heard by "Tonya #402".

6   2321.  Upon information and belief, it can be demonstrated through Defendant

7   testimonies, examinations of medical records, and hospital policies that recipient of the

8   publication understood that the meaning of the publication was that Plaintiff Mr. Smith

9   may attempt to violently infiltrate the NICU at Defendant St. Luke's Hospital to recover

10  his child.

11  2322.  Since Newborn baby J.A.S. is Plaintiff Mr. Smith's baby, it was clear that the

12  defamatory statement was to be applied to Plaintiff Mr. Smith.

13  2323.  Harm suffered by the Plaintiff includes, but is not limited to, a hostile atmosphere,

14  exacerbating Plaintiff's mental health condition, causing a postpartum father to

15  needlessly suffer without his newborn baby who was in neonatal intensive care, staff

16  ratifying each other's invalid moral positions leading other staff to regard their

17  inappropriate actions with a sense of false righteousness, and a baseless reputation for

18  violent behavior, by Defendants St. Luke's Hospital and Onsite Neonatal through their

19  agent, employee, or assign, Defendant Ms. Cynthia Shultz, MD.

20  2324.  Upon information and belief, Defendants St. Luke's Hospital and Onsite

21  Neonatal, through their agent, employee, or assign, Defendant Ms. Cynthia Shultz, MD,

22  abused her conditionally privileged occasion when as a medical provider with the ability

23  to communicate information to state authorities in line with her duties as an agent,

1  employee, or assign of Defendants St. Luke's Hospital and Onsite Neonatal did falsify

2  communicated medical records through the published defamatory statement.

3  2325.  Plaintiff Mr. Smith is a private individual and not a public figure.

4  2326.  Since this is a case of a private figure plaintiff redressing issues of private

5  concern, the appropriate standard for this libel claim is one of negligence.

6  2327.  Negligence: (1) Medical providers with the ability to communicate medical

7  records to state officials as a function of their assignor, employer, or agency are

8  required to communicate true and accurate records to those state officials.

9  2328.  Negligence: (2) Medical provider Defendant Ms. Cynthia Shultz, MD did not

10  communicate true and accurate medical records when she represented to "Tonya #402"

11  of Monroe County Children and Youth Services that, "She [Dr. Marlino] stated that

12  father used offensive language and planned on taking baby from NICU".

13  2329.  Negligence: (3) Upon information and belief, but for the actions of the Defendant

14  attesting to Plaintiff Mr. Smith as an individual befitting of a no-trespass order, Plaintiff

15  Mr. Smith would not have suffered the aforementioned harms and indignities mentioned

16  earlier in this allegation of slanderous defamation, as well, it is possible that Plaintiff Mr.

17  Smith would not have had pervasive and injurious inquiries about private family matters

18  by state officials.

19  2330.  Negligence: (4) Plaintiff has suffered substantial harm as a result of Defendant's

20  conduct, including but not limited to, emotional and psychological distress, pain and

21  suffering, and injury to his reputation.

2331.  In *slander per se* cases Pennsylvania defamation law considers "Words that on their face and without the aid of extrinsic evidence are recognized as injurious are actionable per se…."[177]

2332.  Upon information and belief, Defendants' directly and unequivocally accused Plaintiff Mr. Smith of being an individual violent enough that a no trespass order was appropriate for his character, so much so, that such information should appear in his newborn child's medical records, are on their face and without the aid of extrinsic evidence injurious, and actionable for a *slander per se* claim.

2333.  In *slander pe se* cases, Pennsylvania law observes that, "words imputing a criminal offense, loathsome disease, business misconduct or serious sexual misconduct" will be considered defamatory per se.[178]

2334.  Since Defendants' directly and unequivocally accused Plaintiff Mr. Smith of having the characteristics of a trespasser, and thereby a criminal, in his newborn child's medical records, and since trespassing is an act violating the law, the Defendants' imputed a criminal offense, thereby making this an actionable *slander per se* claim.

2335.  Upon information and belief, Plaintiff can demonstrate by a preponderance of evidence that the Defendants St. Luke's Hospital and/or Onsite Neonatal supervised Defendant Ms. Cynthia Shultz, MD, in connection with this allegation and is therefore liable under a legal theory of respondeat superior.

---

[177]*Joseph v. Scranton Times L.P.*, 959 A.2d 322, n.23 (Pa. Super. Ct. 2008).

[178]*Hrishenko v. Coombs*, 2014 Pa. Super. Unpub. LEXIS 880, *9 (Pa. Super. Ct. 2014).

2336.  Upon information and belief, Defendants St. Luke's Hospital, and/or Onsite

Neonatal, supervised Defendant Ms. Cynthia Shultz's conduct which violated Plaintiffs'

rights under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

*Or, In the Alternative,*

*Slander Per Quod IV(b)*

2337.  The statement in Newborn baby J.A.S.'s medical records as represented by

Defendant Ms. Cynthia Shultz, MD, that "She [Dr. Marlino] stated that father used

offensive language and planned on taking baby from NICU," harmed the reputation of

Plaintiff Mr. Smith in the estimation of the community by stating that Plaintiff Mr. Smith is

an individual of criminal caliber, and that acted in a manner befitting a no trespassing

order from the Bethlehem Police Department.

2338.  The defamatory statement is harmful in character because it states that Plaintiff

Mr. Smith, at the behest of Defendants St. Luke's Hospital and/or Onsite Neonatal, is a

person capable of such violence that he cannot be permitted on Defendant St. Luke's

Hospital Property to visit with his newborn baby child in the N.I.C.U.

2339.  Defendant Ms. Cynthia Shultz, MD, published the defamatory statement to at

least Monroe County Children and Youth Services "Tonya #402" where the statements

were heard by "Tonya #402".

2340.  Upon information and belief, it can be demonstrated through Defendant

testimonies, examinations of medical records, and hospital policies that recipients of the

publication understood that the meaning of the publication was that Plaintiff Mr. Smith

1  may attempt to violently infiltrate the NICU at Defendant St. Luke's Hospital to recover

2  his child.

3  2341.  Since Newborn baby J.A.S. is Plaintiff Mr. Smith's baby, it was clear that the

4  defamatory statement was to be applied to Plaintiff Mr. Smith.

5  2342.  Harm suffered by the Plaintiff includes, but is not limited to, a hostile atmosphere,

6  exacerbating Plaintiff's mental health condition, causing a postpartum father to

7  needlessly suffer without his newborn baby child who was in neonatal intensive care,

8  staff ratifying each other's invalid moral positions leading other staff to regard their

9  inappropriate actions with a sense of false righteousness, and a baseless reputation for

10 violent behavior, by Defendants St. Luke's Hospital and Onsite Neonatal through their

11 agent, employee, or assign, Defendant Ms. Cynthia Shultz, MD.

12 2343.  Upon information and belief, Defendants St. Luke's Hospital and Onsite

13 Neonatal, through their agent, employee, or assign, Defendants Ms. Cynthia Shultz,

14 MD, abused her conditionally privileged occasion when as a medical provider with the

15 ability to communicate information to state authorities in line with her duties as an agent,

16 employee, or assign of Defendants St. Luke's Hospital and Onsite Neonatal did falsify

17 communicated medical records through the published defamatory statement.

18 2344.  Plaintiff Mr. Smith is a private individual and not a public figure.

19 2345.  Since this is a case of a private figure plaintiff redressing issues of private

20 concern, the appropriate standard for this slander claim is one of negligence.

21 2346.  Negligence: (1) Medical providers with the ability to communicate medical

22 records to state officials as a function of their assignor, employer, or agency are

23 required to communicate true and accurate records to those state officials.

2347.  Negligence: (2) Medical provider Defendant Ms. Cynthia Shultz, MD did not communicate true and accurate medical records when she represented to "Tonya #402" of Monroe County Children and Youth Services that, "She [Dr. Marlino] stated that father used offensive language and planned on taking baby from NICU".

2348.  Negligence: (3) Upon information and belief, but for the actions of the Defendant attesting to Plaintiff Mr. Smith as an individual befitting of a no-trespass order, Plaintiff Mr. Smith would not have suffered the aforementioned harms and indignities mentioned earlier in this allegation of libelous defamation, as well, it is possible that Plaintiff Mr. Smith would not have had pervasive and injurious inquiries about private family matters by state officials.

2349.  Negligence: (4) Plaintiff has suffered substantial harm as a result of Defendant's conduct, including but not limited to, emotional and psychological distress, pain and suffering, and injury to his reputation.

2350.  In *slander per quod* cases Pennsylvania defamation law considers extrinsic supporting evidence of slanderous behavior if the injurious nature of the words is not apparent.[179]

2351.  Upon information and belief, Plaintiff can demonstrate by a preponderance of evidence that through the presentation of medical records, informational reports, and other administrative documentation that the slanderous statement was not a mere description of the father for the medical edification of potential diagnosis concerning

---

[179]Joseph, 959 A.2d at n.23.

1   Newborn baby J.A.S., but was instead a statement intended to cast unfounded and

2   harmful aspersions on Plaintiff Mr. Smith.

3   2352.  Plaintiff will need to demonstrate necessary innuendo by Defendant Parties.

4   2353.  "Innuendo", "define[s] the defamatory meaning which the plaintiff attaches to the

5   words" and "show[s] how they come to have that meaning and how they relate to the

6   plaintiff."[180]

7   2354.  A 'no trespass' order is not supposed to be contrived without meaning and

8   therefore carries with it the implied weight of violence if such a person were to trespass.

9   2355.  When Defendant Ms. Cynthia Shultz, MD communicated the slanderous

10   statement with the weight and authority of her position it was to make clear to other

11   medical professionals, administrators, and/or county personnel that Plaintiff Mr. Smith is

12   a person of violent nature who cannot be around his newborn baby child or hospital

13   personnel.

14   2356.  The slanderous statement relates to Plaintiff Mr. Smith because the statement is

15   about the father of the newborn child, Plaintiff Mr. Smith, and the slanderous statement

16   is in Newborn baby J.A.S.'s medical records.

17   2357.  Upon information and belief, Plaintiff can demonstrate by a preponderance of

18   evidence that the Defendants St. Luke's Hospital and/or Onsite Neonatal supervised

19   Defendant Ms. Cynthia Shultz, MD, in connection with this allegation and are therefore

20   liable under a legal theory of respondeat superior.

---

[180]*Cosgrove Studio & Camera Shop, Inc. v. Pane*, 408 Pa. 314, 319 (Pa. 1962)

(citations omitted).

2358.  Upon information and belief, Defendants St. Luke's Hospital, and/or Onsite

Neonatal, supervised Defendant Ms. Cynthia Shultz's conduct which violated Plaintiffs'

rights under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

*Or, In the Alternative*

*Slander by Implication IV(c)*

2359.  The statement in Newborn baby J.A.S.'s medical records as represented by

Defendant Ms. Cynthia Shultz, MD, that "She [Dr. Marlino] stated that father used

offensive language and planned on taking baby from NICU," harmed the reputation of

Plaintiff Mr. Smith in the estimation of the community by representing that Plaintiff Mr.

Smith is an individual of criminal caliber, and that he acted in a manner befitting a no

trespassing order from the Bethlehem Police Department.

2360.  Ms. Teresa Marlino, MD did verbalize to Defendant Ms. Cynthia Shultz, MD, the

aforementioned statement as a matter of facts.

2361.  The defamatory statement is harmful in character because it states that Plaintiff

Mr. Smith, at the behest of Defendants St. Luke's Hospital and/or Onsite Neonatal, is a

person capable of such violence that he cannot be permitted on Defendant St. Luke's

Hospital Property to visit with his newborn baby child in the N.I.C.U.

2362.  Defendant Ms. Cynthia Shultz, MD, published the defamatory statement to at

least Monroe County Children and Youth Services "Tonya #402" where the statements

were heard by "Tonya #402".

2363.  Upon information and belief, it can be demonstrated through Defendant

testimonies, examinations of medical records, and hospital policies, such as, in-person,

1   around the clock surveillance of a newborn baby child by hospital security officers, that

2   recipients of the publication understood that the meaning of the publication was that

3   Plaintiff Mr. Smith may attempt to violently infiltrate the NICU at Defendant St. Luke's

4   Hospital to recover his child.

5   2364.  Since Newborn baby J.A.S. is Mr. Smith's baby, it was clear that the defamatory

6   statement was to be applied to Mr. Smith.

7   2365.  Harm suffered by the Plaintiff includes, but is not limited to, a hostile atmosphere,

8   exacerbating Plaintiff's mental health condition, causing a postpartum father to

9   needlessly suffer without his newborn baby child who was in neonatal intensive care,

10  staff ratifying each other's invalid moral positions leading other staff to regard their

11  inappropriate actions with a sense of false righteousness, and a baseless reputation for

12  violent behavior, by Defendants St. Luke's Hospital and Onsite Neonatal through their

13  agent, employee, or assign, Defendant Ms. Cynthia Shultz, MD.

14  2366.  Upon information and belief, Defendants St. Luke's Hospital and Onsite Neonatal

15  through their agent, employee, or assign, Defendant Ms. Cynthia Shultz, MD, abused

16  her conditionally privileged occasion when as a medical provider with the ability to alter

17  and manipulate medical records, did write true statements in those records, including

18  the published defamatory statement that in their culmination lead to false assertions

19  about the Plaintiffs.

20  2367.  Plaintiff Mr. Smith is a private individual and not a public figure.

21  2368.  Since this is a case of a private figure plaintiff redressing issues of private

22  concern, the appropriate standard for this libel claim is one of negligence.

2369.  Negligence: (1) Medical providers with the ability to communicate medical records as a function of their assignor, employer, or agency are required to maintain medical records that reflect the truth of a matter in both itemized mentions of fact and the totality of what those facts are to represent.

2370.  Negligence: (2) Medical provider Defendant Ms. Cynthia Shultz, MD, did maintain true and accurate medical records when itemized mentions of fact were read in isolation from one another; however, when taken as a totality, the facts present the Plaintiffs in a harmful and dishonest light, culminating with when Defendant Ms. Cynthia Shultz, MD, represented in Newborn baby J.A.S.'s medical records that Ms. Marlino, MD, did actually and truthfully make the defamatory statement to Defendant Ms. Cynthia Shultz, MD, which was then negligently passed on "Tonya 402".

2371.  Negligence: (3) Upon information and belief, but for the actions of the Defendant attesting to Plaintiff Mr. Smith as an individual befitting of a no-trespass order, Plaintiff Mr. Smith would not have suffered the aforementioned harms and indignities mentioned earlier in this allegation of slanderous defamation, as well, it is possible that Plaintiff Mr. Smith would not have had pervasive and injurious inquiries about private family matters by state officials.

2372.  Negligence: (4) Plaintiff has suffered substantial harm as a result of Defendant's conduct, including but not limited to, emotional and psychological distress, pain and suffering, and injury to his reputation.

2373.  Upon information and belief, Plaintiff can demonstrate by a preponderance of evidence that through the presentation of medical records, informational reports, and other administrative documentation that the slanderous statement was not a mere

1   description of the father for the medical edification of potential diagnosis concerning

2   Newborn baby J.A.S., but was instead a statement intended to cast unfounded and

3   harmful aspersions on Plaintiff Mr. Smith.

4   2374.  Slander by Implication occurs when "true facts that in context imply a

5   falsehood."[181]

6   2375.  In addition, "the literal accuracy of separate statements will not render a

7   communication 'true' where, as here, the implication of the communication as a whole

8   was false."[182]

9   2376.  Upon information and belief, Plaintiff Mr. Smith can demonstrate by a

10  preponderance of the evidence that any one statement in Newborn baby J.A.S.'s

11  medical records may be true, but the implication of the communications as a whole in

12  Newborn baby J.A.S.'s medical records is false.

13  2377.  As well, if "the defendant juxtaposes [a] series of fact so as to imply a defamatory

14  connection between them, or [otherwise] creates a defamatory implication…" then a

15  slanderous statement by implication is present.[183]

16  2378.  Upon information and belief, Plaintiff Mr. Smith can demonstrate by a

17  preponderance of the evidence that many facts contained within Newborn baby J.A.S.'s

---

[181]*Dunlap v. Philadelphia Newspapers, Inc.*, 301 Pa. Super. 475, 491 (Pa. Super. Ct. 1982) (emphasis omitted).

[182]*Id.* at 493.

[183]*Fanelle v. LoJack Corp.*, 2000 U.S. Dist. LEXIS 17767, *10 (E.D. Pa. Dec. 7, 2000).

1   medical records juxtapose a series of facts so as to imply a defamatory connection of

2   violent predilections by Plaintiff Mr. Smith.

3   2379.  Although it may be literally true that, "She [Dr. Marlino] stated that father used

4   offensive language and planned on taking baby from NICU," such a statement

5   erroneously implies that Plaintiff Mr. Smith is a man of violent nature who planned on

6   recovering his child from Defendant St. Luke's Hospital by whatever means necessary;

7   however, in fact, any language can be considered 'offensive' when the recipient of that

8   language does not desire to hear such language, and if Mr. Smith "planned on taking

9   [the] baby from [the] NICU" it was through the proper hospital discharge procedures and

10   not via any means of force or violence.

11   2380.  Upon information and belief, Plaintiff Mr. Smith can demonstrate by a

12   preponderance of evidence that the Defendants St. Luke's Hospital and/or Onsite

13   Neonatal supervised Defendant Ms. Cynthia Shultz, MD, in connection with this

14   allegation and are therefore liable under a legal theory of respondeat superior.

15   2381.  Upon information and belief, Defendants St. Luke's Hospital, and/or Onsite

16   Neonatal, supervised Defendant Ms. Cynthia Shultz's conduct which violated Plaintiffs'

17   rights under Pennsylvania Statute *42 Pa. C.S. § 8343* for defamation.

18                          **Damages for Slander IV(a-c)**

19   2382.  Plaintiff Mr. Smith suffered substantial harm as a result of Defendants' conduct,

20   including but not limited to, emotional and psychological distress, pain and suffering,

21   fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate

22   compensatory damages to account for PTSD therapies and other related treatments as

1  they have been and will continue to be necessary; Plaintiff respectfully requests an

2  amount of $595,000 in compensatory damages per Defendant.

3  2383.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

4  Neonatal, and Ms. Cynthia Shultz, MD, and therefore, their ability to afford the

5  appropriate training to avoid this egregious violation of the Pennsylvania Statutory Law,

6  and, since harm was actually caused to the current Plaintiff Smith Family, and since

7  harm is likely to continue to harm future postpartum families, and because the acts of

8  the Defendants and their agents, assigns, or employees callously disregarded the

9  Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the

10  imposition of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal,

11  and Ms. Cynthia Shultz, MD to deter such Defendants from committing to such conduct

12  in the future which violates Commonwealth of Pennsylvania Statutory Law Plaintiffs

13  respectfully request an amount of $10,000,000 in punitive damages per Defendants St.

14  Luke's Hospital, Onsite Neonatal, and Ms. Cynthia Shultz, MD.

15  2384.  In the unlikely event that the jury does not find that Plaintiff Mr. Smith suffered

16  any actual injury despite the deprivation of his statutory law rights, the Plaintiff

17  respectfully requests a nominal judgment of $1.00.

18  # **Violations of Pennsylvania Common Law**

19  ## **I.   Battery**

20  ### *Lack of Informed Consent*

1    <u>Newborn baby J.A.S. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's</u>

2    <u>Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology</u>

3    <u>Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick</u>

4    <u>Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn</u>

5    <u>Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms.</u>

6    <u>Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto</u>

7    <u>Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly</u>

8    <u>Nardis, CRNP, & Mr. Jerry Hric, MD</u>

9    2385.  Pennsylvania law defines a battery as a "harmful or offensive contact" with the

10   person of another. Contact is offensive "if it offends a reasonable sense of personal

11   dignity."[184]

12   2386.  Needlesticks that administer antibiotics are a sufficient basis for a claim of battery

13   by lack of informed consent because without consent the insertion of a needle causes

14   damage to the individual.[185]

15   2387.  In Pennsylvania, physicians are duty-bound to obtain a patient's informed

16   consent before conducting certain procedures, such as surgery, except in

17   emergencies.[186]

---

[184]*Zatuchni v. Richman*, CIVIL ACTION, No. 07-cv-4600, at *9 (E.D. Pa. May 11, 2009).

[185]*Id at *10.*

[186]*Bilinski v. Wills Eye Hosp.*, Civil Action 16-2728, at *9 (E.D. Pa. Sep. 1, 2021).

1   2388.  A physician is liable to his/her patient for performing a procedure without

2   informed consent if: (1) the physician fails to disclose any risk in the recommended

3   treatment, or the existence of any alternative method of treatment, that a reasonable

4   person would deem material in deciding whether to undergo the recommended

5   treatment; (2) the patient would have forgone the recommended treatment had he or

6   she known of the undisclosed information; and (3) as a result of the recommended

7   treatment, the patient actually suffers an injury the risk of which was undisclosed, or the

8   patient actually suffers an injury that would not have occurred had the patient opted for

9   one of the undisclosed methods of treatment.[187]

10  2389.  Sticking a needle in a human being causes that human being pain regardless of

11  age.

12  2390.  Sticking needles in a human being without cause or consent is an act of torture.

13  2391.  On the evening of April 9th, 2021 both parents of Plaintiff Newborn baby J.A.S.

14  withdrew consent for treatment of Plaintiff Newborn baby J.A.S. by any and all

15  Defendants.

16  2392.  Mrs. Smith, while still in her recovery room, explicitly informed Defendant Ms.

17  Teresa Marlino, MD, that all consent for treatment for Plaintiff Newborn Baby J.A.S. was

18  thereby withdrawn due to Mr. and Mrs. Smith's lack of trust in the Defendants' true

19  intentions.

20  2393.  Mr. Smith went to the NICU where Plaintiff Newborn baby J.A.S. was located and

21  informed St. Luke's Hospital staff to remove all medical equipment and devices that

---

[187]*Id at \*9-10.*

1   Defendants attached to Plaintiff Newborn baby J.A.S. from his person, and that no

2   further medical actions were to be rendered by Defendants St. Luke's Hospital and its

3   employees, agents, or assigns.

4   2394.  Plaintiff Newborn baby J.A.S. remained attached to medical equipment and

5   devices against the consent of his parents Mr. & Mrs. Smith.

6   2395.  Plaintiff Newborn baby J.A.S. also suffered many unnecessary needlesticks

7   throughout his time in the NICU pod, both to administer antibiotics and to test for

8   various "medical reasons".

9   2396.  Since the nature of the substance in the needle, or the reason for the

10  administration of the needle are irrelevant when consent for a newborn baby is

11  withdrawn, any needlestick, for any reason, sounds in the tort of battery.

12  2397.  Each time Plaintiff Newborn baby J.A.S. had a needle inserted into his body, or

13  left inside of his body after consent was withdrawn by his parents, an intentional battery

14  was committed by the individual inserting the needle or leaving it in Plaintiff Newborn

15  baby J.A.S.'s body.

16  2398.  Needlesticks themselves are responsible for the physical damage and pain

17  caused to Plaintiff Newborn baby J.A.S.

18  2399.  Mr. & Mrs. Smith did not give their informed consent to any antibiotics given to

19  Plaintiff Newborn baby J.A.S., and withdrew what consent had been previously given.

20  2400.  Mr. & Mrs. Smith did not give their informed consent to any tests given to Plaintiff

21  Newborn baby J.A.S., and withdrew what consent have been previously given.

22  2401.  Concerning the first element of an informed consent claim: Mr. & Mrs. Smith

23  specifically asked Defendant Ms. Chaminie Wheeler, MD, if there were any alternative

1  treatments for giving Plaintiff Newborn baby J.A.S. antibiotics "just in case he has an

2  infection".

3  2402.  Defendant Ms. Chaminie Wheeler, MD responded to Mr. & Mrs. Smith that there

4  were no alternative treatments other than the antibiotics that were being offered.

5  2403.  Mr. & Mrs. Smith specifically told Defendant Ms. Chaminie Wheeler, MD that Mr.

6  Smith was allergic to penicillin and many of its derivatives, and that he was concerned

7  that he may have genetically passed on such potential for allergic reactions.

8  2404.  Defendant Ms. Chaminie Wheeler, MD responded to Mr. & Mrs. Smith that there

9  "were no known side-effects in babies from the antibiotics that were being offered."

10  2405.  Defendant Ms. Chaminie Wheeler, MD did not explain to Mr. & Mrs. Smith that

11  pyloric stenosis was a possible side-effect of antibiotics being administered to a baby in

12  the first few days of life.

13  2406.  Concerning the second element of an informed consent claim:  Mr.& Mrs. Smith

14  absolutely would have foregone administering antibiotics to Plaintiff Newborn baby

15  J.A.S. if they had known of the possibility of Plaintiff Newborn baby J.A.S. developing

16  pyloric stenosis from the administration of the antibiotics at such an early age, thereby

17  precluding any unnecessary needlesticks in Plaintiff Newborn baby J.A.S.

18  2407.  Plaintiff Newborn baby J.A.S. did in fact suffer near death dehydration as a result

19  of the condition of pyloric stenosis which was caused by the antibiotics administered by

20  Defendant St. Luke's Hospital and its employees, agents, and/or assigns.

21  2408.  Upon information and belief, Defendant Ms. Chaminie Wheeler, MD also

22  forcefully and repeatedly told Mr. & Mrs. Smith to allow Plaintiff Newborn baby J.A.S. to

1   be admitted to the NICU by concocting a fiction about Plaintiff Newborn baby J.A.S.

2   having difficulty breathing.

3   2409.  Mr. & Mrs. Smith were intensely skeptical about the information about Plaintiff

4   Newborn baby J.A.S.'s breathing and the necessity of him being removed from Mrs.

5   Smith's postpartum hospital room to the NICU.

6   2410.  Mr. Smith requested that all treatments for Plaintiff Newborn baby J.A.S. be

7   administered in Mrs. Smith's postpartum hospital room.

8   2411.  Mr. Smith's request was denied outright and he was told that do so would be

9   "impossible" by Defendant Ms. Chaminie Wheeler, MD.

10   2412.  Mr. & Mrs. Smith relented consent when Defendant Ms. Chaminie Wheeler, MD

11   told Mr. & Mrs. Smith that admitting Plaintiff Newborn baby J.A.S. to the NICU under the

12   given circumstances was a "no brainer" and it was clear that Defendant Ms. Chaminie

13   Wheeler, MD was not going to take a "no" from Mr. & Mrs. Smith under any

14   circumstances.

15   2413.  Mr. & Mrs. Smith would not have consented to Plaintiff Newborn baby J.A.S.

16   being admitted to the NICU, and tests being administered, including blood being drawn

17   and the administration of antibiotics, if they had known the information provided about

18   Plaintiff Newborn baby J.A.S.'s health and well-being was nearly entirely fabricated.

19   2414.  As a consequence of his admittance to the NICU, Plaintiff Newborn baby J.A.S.

20   became subject to a multitude of unnecessary testing and treatment, against the

21   consent of his parents Mr. & Mrs. Smith, which required needlesticks, including bilirubin

22   tests.

2415.  The unnecessary needlesticks into Plaintiff Newborn baby J.A.S. were of a torturous nature and caused him physical pain and damage.

2416.  Upon information and belief, Defendant St. Luke's Hospital ordered its employees, agents, and/or assigns to ignore the will of the parents Mr. & Mrs. Smith and ordered its staff to say to Mr. & Mrs. Smith whatever was necessary to get Mr. & Mrs. Smith to allow Plaintiff Newborn baby J.A.S. to be admitted to the NICU.

2417.  Regardless of any consent previously given, all consent for treatment of any kind for Plaintiff Newborn baby J.A.S. was withdrawn on the evening of April 9th, 2021, and any touching of Plaintiff Newborn baby J.A.S. was unwanted, and anyone who did so committed the tort of battery.

2418.  Consent by Mr. & Mrs. Smith may never have actually been valid because from intake and triage into Defendant St. Luke's Hospital, Defendants may have been gathering information with a "prosecutorial eye" as opposed to for valid medical treatment of Mrs. Smith and/or Plaintiff Newborn baby J.A.S.

2419.  Upon information and belief, Defendants Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly Nardis, CRNP, & Mr. Jerry Hric, MD either ordered or administered an unnecessary needlestick into Plaintiff Newborn baby J.A.S.

2420.  Upon information and belief, Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics &

1  Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr.

2  Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

3  Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth

4  Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago,

5  MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly Nardis,

6  CRNP, & Mr. Jerry Hric, MD's conduct violated Plaintiffs' rights under Pennsylvania

7  common law of battery by lack of informed consent.

8  2421.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

9  evidence that each of the listed Defendants conspired with at least one other Defendant

10  elsewhere listed in this complaint via an overt act with malice or an intent to injure the

11  Plaintiffs.

12  2422.  The conspiracy between the Defendant parties and their agents, employees,

13  assigns, or other Defendants violates Pennsylvania common law against conspiracies;

14  thereby, causing actual damages to Plaintiffs Mr. & Mrs. Smith.

15  2423.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

16  evidence that the Defendants, St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

17  Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

18  Associates, and Mr. Jerry Hric, MD supervised Ms. Teresa Marlino, MD, Ms. Cynthia M.

19  Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb,

20  MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe,

21  MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr.

22  Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CRNP, and Ms.

1 Kimberly Nardis, CRNP in connection with this allegation and are therefore liable under

2 a legal theory of respondeat superior

3 2424.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendant's

4 conduct, including but not limited to, emotional and psychological distress, pain and

5 suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

6 appropriate compensatory damages to account for PTSD therapies and other related

7 treatments as they have been and will continue to be necessary; Plaintiff respectfully

8 requests an amount of $3,800 in compensatory damages per Defendant.

9 2425.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

10 Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal, St. Luke's

11 Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz,

12 MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms.

13 Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms.

14 Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto

15 Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly

16 Nardis, CRNP, & Mr. Jerry Hric, MD, and therefore, their ability to afford the appropriate

17 training to avoid this egregious violation of the Pennsylvania Common Law, and, since

18 harm was actually caused to the current Plaintiff Smith Family, and since harm is likely

19 to continue to harm future postpartum families, and because the acts of the Defendants

20 and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a

21 reckless and wanton manner, the Plaintiffs respectfully request the imposition of

22 punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

23 Luke's Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

1    Associates, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot,

2    DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD,

3    Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms.

4    Denese Brown, MD, Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms.

5    Chaminie Wheeler, MD, Ms. Patricia Bates, CRNP, Ms. Kimberly Nardis, CRNP, & Mr.

6    Jerry Hric, MD to deter such Defendant from committing to such conduct in the future

7    which violates Commonwealth of Pennsylvania Common Law Plaintiffs respectfully

8    request an amount of $1,000,000 in punitive damages per Defendants Ms. Dianne

9    Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher

10   Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD,

11   Ms. Kimberly Costello, DO, Mr. Gilberto Santiago, MD, Ms. Patricia Bates, CRNP, and

12   Ms. Kimberly Nardis, CRNP; $5,000,000 per Defendants Mr. Jerry Hric, MD, St. Luke's

13   Physicians Group, Bethlehem Neonatal, St. Luke's Obstetrics & Gynecology

14   Associates, Mr. Patrick Philpot, DO, and Ms. Chaminie Wheeler, MD; and $10,000,000

15   per Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

16   MD, and Ms. Cynthia M. Shultz, MD..

17   2426.  In the unlikely event that the jury does not find that Plaintiff Newborn baby J.A.S.

18   suffered any actual injury despite the deprivation of his common law rights, the Plaintiff

19   respectfully requests a nominal judgment of $1.00.

20   ## II.    False Imprisonment

21   Newborn baby J.A.S. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa

22    Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,

1  Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team", & Mr.

2  Jerry Hric, MD

3  2427.  "To state a claim for false imprisonment, a plaintiff must establish: (1) that [he]

4  was detained; and (2) that the detention was unlawful."[188]

5  2428.  A child may be taken into custody under Pennsylvania law "[b]y a law

6  enforcement officer or duly authorized officer of the court if there are reasonable

7  grounds to believe that the child is suffering from illness or injury or is in imminent

8  danger from his surroundings, and that his removal is necessary." *42 Pa. C.S.A. §*

9  *6324(3).*[189]

10  2429.  False Imprisonment (1): Upon information and belief, Plaintiff Newborn baby

11  J.A.S. was detained for a period of at least 24 hours and upwards of approximately 72+

12  hours by Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa

13  Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq.,

14  Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team", and Mr. Jerry

15  Hric, MD, in Defendant St. Luke's Hospital, and against the will and consent of Plaintiff

16  Newborn baby J.A.S.'s parents, Mr. and Mrs. Smith.

17  2430.  False Imprisonment (2): The detention of Plaintiff Newborn baby J.A.S. was

18  against the will and consent of his parents, without a court order for the detention of

---

[188]*James v. City of Wilkes-Barre*, 700 F.3d 675, 682-83 (3d Cir. 2012) (citing *Wallace*

*v. Kato*, 549 U.S. 384, 389 (2007))." *Ferris v. Milton S. Hershey Med. Ctr.*, No. 1:12-cv-

0442, at *49-50 (M.D. Pa. Sep. 29, 2016).

[189] *Id.* at *50.

1  Newborn baby J.A.S., and absent any reasonable exigent circumstance(s) which

2  precluded the detention of Plaintiff Newborn baby J.A.S; thus, Defendants St. Luke's

3  Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD,

4  Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

5  the "Hospital Leadership Team", and Mr. Jerry Hric, MD, unlawfully detained Plaintiff

6  Newborn baby J.A.S. in violation of *42 Pa. C.S.A. § 6324.*

7  2431.  Specifically, in light of all medical records and physical evidence, there were not

8  any reasonable grounds to believe that Plaintiff Newborn baby J. A.S. was suffering

9  from illness or injury, or was in imminent danger from his surroundings; therefore, the

10 removal of Newborn baby J.A.S. from his parents' care and custody was unnecessary,

11 making the actions of the Defendants unlawful.

12 2432.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

13 MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

14 Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team", and Mr. Jerry Hric,

15 MD's conduct violated Plaintiffs' rights under Pennsylvania common law of false

16 imprisonment.

17 2433.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

18 evidence that each of the listed Defendants conspired with at least one other Defendant

19 elsewhere listed in this complaint via an overt act with malice or an intent to injure the

20 Plaintiffs.

21 2434.  The conspiracy between the Defendant parties and their agents, employees,

22 assigns, or other Defendants violates Pennsylvania common law against conspiracies;

23 thereby, causing actual damages to Plaintiffs Mr. & Mrs. Smith.

2435.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of evidence that the Defendants, St. Luke's Hospital, Onsite Neonatal, OBHG PA, and Mr. Jerry Hric, MD supervised Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team", in connection with this allegation and are therefore liable under a legal theory of respondeat superior

2436.  Accordingly, and in connection with the alleged false imprisonment committed by Defendant parties, Plaintiff Newborn baby J.A.S. requests all Defendant Entities be required to adopt a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place.

2437.  Accordingly, and in connection with the alleged false imprisonment committed by Defendant parties, Plaintiff Newborn baby J.A.S. requests all Defendant Persons be required to attend and pass a rigorous third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place.

2438.  Accordingly, if a third-party cannot be found to render the appropriately rigorous training course, then the Defendant Entities should create their own legal training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place; and, before the created program is

1   implemented, the program must be approved by an appropriate court or federal agency

2   for review; and, the program must be implemented within 180 days of the valid

3   judgment of this honorable Court.

4   2439.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendant's

5   conduct, including but not limited to, emotional and psychological distress, pain and

6   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

7   appropriate compensatory damages to account for PTSD therapies and other related

8   treatments as they have been and will continue to be necessary; Plaintiff respectfully

9   requests an amount of $3,800 in compensatory damages per Defendant.

10   2440.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

11   Neonatal, OBHG PA, and Mr. Jerry Hric, MD supervised Ms. Teresa Marlino, MD, Ms.

12   Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack,

13   Ms. Dawn Hoffman, the "Hospital Leadership Team," and Mr. Jerry Hric, MD and

14   therefore, their ability to afford the appropriate training to avoid this egregious violation

15   of the Pennsylvania Common Law, and, since harm was actually caused to the current

16   Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum

17   families, and because the acts of the Defendants and their agents, assigns, or

18   employees callously disregarded the Plaintiff's rights in a reckless and wanton manner,

19   the Plaintiffs respectfully request the imposition of punitive damages on Defendants St.

20   Luke's Hospital, Onsite Neonatal, OBHG PA, and Mr. Jerry Hric, MD supervised Ms.

21   Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.

22   Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team," and

23   Mr. Jerry Hric, MD to deter such Defendant from committing to such conduct in the

1  future which violates Commonwealth of Pennsylvania Common Law Plaintiffs

2  respectfully request an amount of $5,000,000 in punitive damages per Defendants Mr.

3  Jerry Hric, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

4  Dawn Hoffman, and the "Hospital Leadership Team"; and $10,000,000 per Defendants

5  St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, and Ms.

6  Cynthia Shultz, MD..

7  2441.  In the unlikely event that the jury does not find that Plaintiff Newborn baby J.A.S.

8  suffered any actual injury despite the deprivation of his common law rights, the Plaintiff

9  respectfully requests a nominal judgment of $1.00.

10  ## III.   <u>**Breach of Physician-Patient Confidentiality**</u>

11  <u>Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,</u>

12  <u>MD, Ms. Cynthia Shultz, MD, & Mr Jerry Hric, MD</u>

13  2442.  In admitting Plaintiff Mrs. Smith as a patient, and by accepting to be the location

14  of Plaintiff Newborn baby J.A.S.'s birth, and undertaking to provide them with medical

15  care, Defendant St. Luke's Hospital owed a duty to all Plaintiffs, recognized by

16  Pennsylvania Common Law, to keep all communications, diagnoses, and treatment

17  information completely confidential.

18  2443.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

19  MD, Ms. Cynthia Shultz, MD breached the common law doctor-patient confidentiality

20  law and neglected this duty with regard to Plaintiff Mrs. Smith by disclosing to

21  Northampton County Children and Youth Services the results of confidential and

22  misleading medical tests.

1    2444.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

2    MD, Ms. Cynthia Shultz, MD breached the common law doctor-patient confidentiality

3    law and neglected this duty with regard to Plaintiff Mrs. Smith by disclosing to Monroe

4    County Children and Youth Services the results of confidential and misleading medical

5    tests.

6    2445.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

7    MD, Ms. Cynthia Shultz, MD breached the common law doctor-patient confidentiality

8    law and neglected this duty with regard to Plaintiff Mrs. Smith by disclosing to agents of

9    Northampton County, specifically the Bethlehem Police Department, the results of

10   confidential and misleading medical tests.

11   2446.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

12   MD, Ms. Cynthia Shultz, MD breached the common law doctor-patient confidentiality

13   law and neglected this duty with regard to Plaintiff Newborn baby J.A.S. by disclosing to

14   Northampton County Children and Youth Services the results of confidential and

15   misleading medical tests.

16   2447.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

17   MD, Ms. Cynthia Shultz, MD breached the common law doctor-patient confidentiality

18   law and neglected this duty with regard to Plaintiff Newborn baby J.A.S. by disclosing to

19   Monroe County Children and Youth Services the results of confidential and misleading

20   medical tests.

21   2448.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

22   MD, Ms. Cynthia Shultz, MD breached the common law doctor-patient confidentiality

23   law and neglected this duty with regard to newborn Plaintiff J.A.S. by disclosing to

1   agents of Northampton County, specifically the Bethlehem Police Department, the

2   results of confidential and misleading medical tests.

3   2449.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

4   MD, Ms. Cynthia Shultz, MD breached its common law duty of physician-patient

5   confidentiality with regard to Plaintiff Mrs. Smith by disclosing confidential information

6   that was communicated for the purposes of seeking medical treatment.

7   2450.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

8   MD, Ms. Cynthia Shultz, MD breached its common law duty of physician-patient

9   confidentiality with regard to Plaintiff Newborn baby J.A.S. by disclosing confidential

10  information that was communicated and/or gathered for the purpose of seeking medical

11  treatment.

12  2451.  The information disclosed by Defendants St. Luke's Hospital, Onsite Neonatal,

13  OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD falsely portrayed Plaintiff

14  Mrs. Smith as an abuser of illegal drugs, and thus had a tendency to blacken Plaintiff's

15  character.

16  2452.  The information disclosed by Defendants St. Luke's Hospital, Onsite Neonatal,

17  OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD about the welfare of

18  Newborn baby J.A.S. falsely portrayed Plaintiff Mrs. Smith as an abuser of illegal drugs,

19  and thus had a tendency to blacken Plaintiff's character.

20  2453.  The information disclosed by Defendants St. Luke's Hospital, Onsite Neonatal,

21  OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD about the welfare of

22  Plaintiff Newborn baby J.A.S., and false portrayal of Plaintiff Mrs. Smith as an abuser of

23  illegal drugs, impugned upon Plaintiff Mr. Smith, father and husband respectively of

1   aforementioned Plaintiffs, that he was married to an illicit drug addict and that he would

2   allow that addiction to be passed along to his child; such aspersions thus had a

3   tendency to blacken Plaintiff's character.

4   2454.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

5   MD, Ms. Cynthia Shultz, MD's conduct violated Plaintiffs' rights under Pennsylvania

6   common law of physician-patient confidentiality.

7   2455.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

8   MD, Ms. Cynthia Shultz, MD conduct was outrageous, willful and/or recklessly

9   indifferent to Plaintiffs' rights.

10   2456.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

11   conduct, including but not limited to, emotional and psychological distress, pain and

12   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

13   appropriate compensatory damages to account for PTSD therapies and other related

14   treatments as they have been and will continue to be necessary; Plaintiffs respectfully

15   request an amount of $84,800 in compensatory damages per Defendant.

16   2457.  Given the substantial wealth of the Defendant St. Luke's Hospital, Onsite

17   Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, and therefore,

18   their ability to afford the appropriate training to avoid this egregious violation of the

19   Pennsylvania Common Law, and, since harm was actually caused to the current

20   Plaintiffs Smith Family, and since harm is likely to continue to harm future postpartum

21   families, and because the acts of the Defendant and their agents, assigns, or

22   employees callously disregarded the Plaintiff's rights in a reckless and wanton manner,

23   the Plaintiff respectfully requests the imposition of punitive damages on Defendant St.

1  Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia

2  Shultz, MD to deter such Defendants from committing to such conduct in the future

3  which violates Commonwealth of Pennsylvania Common Law Plaintiffs respectfully

4  request an amount of $5,000,000 in punitive damages per Defendant Mr. Jerry Hric,

5  MD; and $10,000,000 per Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA,

6  Ms. Teresa Marlino, MD, and Ms. Cynthia Shultz, MD.

7  2458.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

8  any actual injury despite the deprivation of their common law rights, the Plaintiffs

9  respectfully request a nominal judgment of $1.00.

10  # IV.   <u>Negligence I</u>

11  <u>Smith, *et al*. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,</u>

12  <u>MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.</u>

13  <u>Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"</u>

14  2459.  Under Pennsylvania common law, a negligence claim consists of four elements:

15  (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain

16  standard of conduct; (2) a failure to conform to the required standard; (3) a causal

17  connection between the conduct and the resulting injury; and (4) actual loss or damage

18  resulting to the interests of another.[190]

---

[190] *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933,

938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir.

1993).

2460.  Negligence (1): A private medical provider actor removing a newborn child from the custody of its parents has a duty to only do so with a court order or with reasonable suspicion of drug abuse on the part of the mother.

2461.  Negligence (2): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team", failed to conform to the aforementioned duty when the Defendants removed Plaintiffs Mr. and Mrs. Smith from Plaintiff Newborn baby J.A.S. by ejecting Mr. and Mrs. Smith from Defendant St. Luke's Hospital property without reasonable suspicion of drug abuse by Plaintiff Mrs. Smith or a court order to separate Plaintiff Newborn baby J.A.S. from his parents.

2462.  Negligence (3): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" actively and of their own volition, contacted Northampton County CYS, Monroe County CYS, and the Bethlehem Police Department in a concerted effort to separate Plaintiff Newborn baby J.A.S. from his parents Plaintiffs Mr. and Mrs. Smith.

2463.  Negligence (4): Plaintiffs Mr. and Mrs. Smith were in fact, separated from Plaintiff Newborn baby J.A.S. against their will and consent and were left without control over the care of their son Newborn baby J.A.S., including the ability to breastfeed Newborn baby J.A.S., have skin-to-skin contact with Newborn baby J.A.S., and to consent to Newborn baby J.A.S.'s medical treatment.

1   2464.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

2   MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

3   Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team's" conduct violated

4   Plaintiffs' rights under Pennsylvania common law negligence.

5   2465.  Accordingly, and in connection with the alleged negligence of the Defendant

6   parties, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. request all Defendant

7   Entities be required to adopt a third-party training program which demonstrates

8   appropriate circumstances under which a child should be reasonably separated from its

9   natural parents, and the specific legal procedures to adhere to for such a separation to

10  take place.

11  2466.  Accordingly, and in connection with the alleged negligence of the Defendant

12  parties, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. request all Defendant

13  Persons be required to attend and pass a rigorous third-party training program which

14  demonstrates appropriate circumstances under which a child should be reasonably

15  separated from its natural parents, and the specific legal procedures to adhere to for

16  such a separation to take place.

17  2467.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

18  training course, then the Defendant Entities should create their own legal training

19  program which demonstrates appropriate circumstances under which a child should be

20  reasonably separated from its natural parents, and the specific legal procedures to

21  adhere to for such a separation to take place; and, before the created program is

22  implemented, the program must be approved by an appropriate court or federal agency

1  for review; and, the program must be implemented within 180 days of the valid

2  judgment of this honorable Court.

3  2468.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

4  conduct, including but not limited to, emotional and psychological distress, pain and

5  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

6  appropriate compensatory damages to account for PTSD therapies and other related

7  treatments as they have been and will continue to be necessary; Plaintiffs respectfully

8  request an amount of $84,800 in compensatory damages per Defendant.

9  2469.  Given the substantial wealth of the Defendant Defendants St. Luke's Hospital,

10  Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr.

11  Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and

12  the "Hospital Leadership Team", and therefore, their ability to afford the appropriate

13  training to avoid this egregious violation of the Pennsylvania Common Law, and, since

14  harm was actually caused to the current Plaintiffs Smith Family, and since harm is likely

15  to continue to harm future postpartum families, and because the acts of the Defendants

16  and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a

17  reckless and wanton manner, the Plaintiff respectfully requests the imposition of

18  punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

19  Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.

20  Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" to

21  deter such Defendants from committing to such conduct in the future which violates

22  Commonwealth of Pennsylvania Common Law Plaintiffs respectfully request an amount

23  of $5,000,000 in punitive damages per Defendants Mr. Steve Lanshe, Esq., Mr. Robert

1   L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

2   Team"; and $10,000,000 per Defendants St. Luke's Hospital, Onsite Neonatal, OBHG

3   PA, Ms. Teresa Marlino, MD, and Ms. Cynthia Shultz, MD.

4   2470.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

5   any actual injury despite the deprivation of their common law rights, the Plaintiffs

6   respectfully request a nominal judgment of $1.00.

7   # V.   Negligence II

8   Smith, *et al*. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

9   MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

10   Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

11   2471.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

12   or obligation recognized by the law, requiring the actor to conform to a certain standard

13   of conduct; (2) a failure to conform to the required standard; (3) a causal connection

14   between the conduct and the resulting injury; and (4) actual loss or damage resulting to

15   the interests of another.[191]

16   2472.  Negligence (1): A private medical provider actor has a duty not to accuse a

17   mother of being a child abuser from the results of inconclusive urine drug screening

---

[191]*See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933,

938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir.

1993).

1    alone, and if such allegations are eventually to be levied, they must be done in light of

2    signs and symptoms of methamphetamine withdrawal from the newborn baby child.

3    2473.  Negligence (2): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, &

4    Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert

5    L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

6    failed to conform to the aforementioned duty when the Defendants accused Plaintiffs

7    Mrs. Smith and Plaintiff Newborn baby J.A.S. of having methamphetamine in their

8    bodies without any signs or symptoms of methamphetamine withdrawal.

9    2474.  Negligence (3): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, &

10   Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert

11   L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

12   actively and of their own volition, began asserting without cause that Plaintiff Mrs. Smith

13   ingested methamphetamine aloud to staff and employees (in both private and common

14   areas of the hospital), written in medical records, to police officers, and to children and

15   youth offices, and they did so without observing any signs or symptoms of

16   methamphetamine withdrawal in Plaintiffs Newborn baby J.A.S. or Mrs. Smith, thereby

17   creating an atmosphere so hostile to the Plaintiff Smith Family that they were eventually

18   ejected from Defendant St. Luke's Hospital property against their will and consent under

19   threat of arrest.

20   2475.  Negligence (4): Plaintiffs Mr. and Mrs. Smith were in fact, separated from Plaintiff

21   Newborn baby J.A.S. against their will and consent and were left without control over

22   the care of Newborn baby J.A.S., including the ability to breastfeed Newborn baby

1   J.A.S., have skin-to-skin contact with Newborn baby J.A.S., and consent to Newborn

2   baby J.A.S.'s medical treatment.

3   2476.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

4   MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

5   Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team's" conduct violated

6   Plaintiffs' rights under Pennsylvania common law negligence.

7   2477.  Accordingly, and in connection with the alleged negligence of the Defendant

8   parties, Plaintiffs Mr. and Mrs. Smith and newborn baby J.A.S. request all Defendant

9   Entities be required to adopt a third-party training program which demonstrates

10  appropriate circumstances under which a child should be reasonably separated from its

11  natural parents, and the specific legal procedures to adhere to for such a separation to

12  take place, including what the signs and symptoms of methamphetamine withdrawal

13  are, when and how to appropriately attest to those symptoms in patient records, and to

14  only separate a newborn child from its parents if signs and symptoms of

15  methamphetamine withdrawal are present.

16  2478.  Accordingly, and in connection with the alleged negligence of the Defendant

17  parties, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. request all Defendant

18  Persons be required to attend and pass a rigorous a third-party training program which

19  demonstrates appropriate circumstances under which a child should be reasonably

20  separated from its natural parents, and the specific legal procedures to adhere to for

21  such a separation to take place, including what the signs and symptoms of

22  methamphetamine withdrawal are, when and how to appropriately attest to those

1   symptoms in patient records, and to only separate a newborn child from its parents if

2   signs and symptoms of methamphetamine withdrawal are present..

3   2479.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

4   training course, then the Defendant Entities should create their own legal training

5   program which demonstrates appropriate circumstances under which a child should be

6   reasonably separated from its natural parents, and the specific legal procedures to

7   adhere to for such a separation to take place, including what the signs and symptoms of

8   methamphetamine withdrawal are, when and how to appropriately attest to those

9   symptoms in patient records, and to only separate a newborn child from its parents if

10  signs and symptoms of methamphetamine withdrawal are present.; and, before the

11  created program is implemented, the program must be approved by an appropriate

12  court or federal agency for review; and, the program must be implemented within 180

13  days of the valid judgment of this honorable Court.

14  2480.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

15  conduct, including but not limited to, emotional and psychological distress, pain and

16  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

17  appropriate compensatory damages to account for PTSD therapies and other related

18  treatments as they have been and will continue to be necessary; Plaintiffs respectfully

19  request an amount of $84,800 in compensatory damages per Defendant.

20  2481.  Given the substantial wealth of the Defendant Defendants St. Luke's Hospital,

21  Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr.

22  Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and

23  the "Hospital Leadership Team", and therefore, their ability to afford the appropriate

1  training to avoid this egregious violation of the Pennsylvania Common Law, and, since

2  harm was actually caused to the current Plaintiffs Smith Family, and since harm is likely

3  to continue to harm future postpartum families, and because the acts of the Defendants

4  and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a

5  reckless and wanton manner, the Plaintiff respectfully requests the imposition of

6  punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

7  Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.

8  Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" to

9  deter such Defendants from committing to such conduct in the future which violates

10  Commonwealth of Pennsylvania Common Law Plaintiffs respectfully request an amount

11  of $5,000,000 in punitive damages per Defendants Mr. Steve Lanshe, Esq., Mr. Robert

12  L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

13  Team"; and $10,000,000 per Defendants St. Luke's Hospital, Onsite Neonatal, OBHG

14  PA, Ms. Teresa Marlino, MD, and Ms. Cynthia Shultz, MD.

15  2482.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

16  any actual injury despite the deprivation of their common law rights, the Plaintiffs

17  respectfully request a nominal judgment of $1.00.

18  # VI.   <u>Negligence III</u>

19  <u>Smith, *et al*. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,</u>

20  <u>MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.</u>

21  <u>Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"</u>

22  2483.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

1    or obligation recognized by the law, requiring the actor to conform to a certain standard

2    of conduct; (2) a failure to conform to the required standard; (3) a causal connection

3    between the conduct and the resulting injury; and (4) actual loss or damage resulting to

4    the interests of another.[192]

5    2484.  Negligence (1): A private medical provider actor removing a newborn child from

6    the custody of its parents has a duty to only do so with a report of true and valid medical

7    information released to state authorities.

8    2485.  Negligence (2): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

9    Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.

10   Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

11   failed to conform to the aforementioned duty when the Defendants contacted state

12   authorities Northampton County CYS, Monroe County CYS, and the Bethlehem Police

13   Dept. and reported the false medical information that Plaintiff Mrs. Smith ingested illegal

14   methamphetamine and that she had passed on the deleterious effects of

15   methamphetamine use to her son Plaintiff Newborn baby J.A.S.

16   2486.  Negligence (3): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

17   Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.

18   Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

19   actively and of their own volition, contacted Northampton County CYS, Monroe County

---

[192]*See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1  CYS, and the Bethlehem Police Department and released false medical records that

2  Plaintiff Mrs. Smith had ingested illegal methamphetamine and passed the deleterious

3  effects of methamphetamine use on to her son Plaintiff Newborn baby J.A.S.

4  2487.  Negligence (4): Plaintiffs Mr. and Mrs. Smith were in fact, separated from Plaintiff

5  Newborn baby J.A.S. against their will and consent and were left without control over

6  the care of their son Newborn baby child J.A.S., including the ability to breastfeed

7  Newborn baby J.A.S., have skin-to-skin contact with Newborn baby J.A.S., and consent

8  to Newborn baby J.A.S.'s medical treatment.

9  2488.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

10  MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

11  Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team's" conduct violated

12  Plaintiffs' rights under Pennsylvania common law negligence.

13  2489.  Accordingly, and in connection with the alleged negligence of the Defendant

14  parties, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. request all Defendant

15  Entities be required to adopt a third-party training program which demonstrates

16  appropriate circumstances under which a child should be reasonably separated from its

17  natural parents, and the specific legal procedures to adhere to for such a separation to

18  take place, including the accurate recording of medical records bereft of bias, the

19  prevention of rumors about patients, and the consequences of communication of false

20  medical records to state authorities.

21  2490.  Accordingly, and in connection with the alleged negligence of the Defendant

22  parties, Plaintiffs Mr. and Mrs. Smith and newborn baby J.A.S. request all Defendant

23  Persons be required to attend and pass a rigorous a third-party training program which

1   demonstrates appropriate circumstances under which a child should be reasonably

2   separated from its natural parents, and the specific legal procedures to adhere to for

3   such a separation to take place, with curricula including the accurate recording of

4   medical records bereft of bias, the prevention of rumors about patients, and the

5   consequences of communication of false medical records to state authorities.

6   2491.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

7   training course, then the Defendant Entities should create their own legal training

8   program which demonstrates appropriate circumstances under which a child should be

9   reasonably separated from its natural parents, and the specific legal procedures to

10  adhere to for such a separation to take place, including the accurate recording of

11  medical records bereft of bias, the prevention of rumors about patients, and the

12  consequences of communication of false medical records to state authorities; and,

13  before the created program is implemented, the program must be approved by an

14  appropriate court or federal agency for review; and, the program must be implemented

15  within 180 days of the valid judgment of this honorable Court.

16  2492.  Accordingly, and in connection with the alleged negligence of the Defendant

17  parties, Plaintiffs Mr. and Mrs. Smith and newborn baby J.A.S. request all appropriate

18  monetary relief, compensatory and punitive, as the Court sees fit.

19  2493.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

20  conduct, including but not limited to, emotional and psychological distress, pain and

21  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

22  appropriate compensatory damages to account for PTSD therapies and other related

1  treatments as they have been and will continue to be necessary; Plaintiffs respectfully

2  request an amount of $84,800 in compensatory damages per Defendant.

3  2494.  Given the substantial wealth of the Defendant St. Luke's Hospital, Onsite

4  Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve

5  Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the

6  "Hospital Leadership Team", and therefore, their ability to afford the appropriate training

7  to avoid this egregious violation of the Pennsylvania Common Law, and, since harm

8  was actually caused to the current Plaintiffs Smith Family, and since harm is likely to

9  continue to harm future postpartum families, and because the acts of the Defendants

10  and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a

11  reckless and wanton manner, the Plaintiff respectfully requests the imposition of

12  punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

13  Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.

14  Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" to

15  deter such Defendants from committing to such conduct in the future which violates

16  Commonwealth of Pennsylvania Common Law Plaintiffs respectfully request an amount

17  of $5,000,000 in punitive damages per Defendants Mr. Steve Lanshe, Esq., Mr. Robert

18  L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

19  Team"; and $10,000,000 per Defendants St. Luke's Hospital, Onsite Neonatal, OBHG

20  PA, Ms. Teresa Marlino, MD, and Ms. Cynthia Shultz, MD.

21  2495.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

22  any actual injury despite the deprivation of their common law rights, the Plaintiffs

23  respectfully request a nominal judgment of $1.00.

# VII.    Negligence IV

## Smith, *et al*. v. Anderson Labs, & Ms. Emily Miller, MD

2496.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the required standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another.[193]

2497.  Negligence (1): A private medical testing provider actor, when providing drug tests to a fetal care facility, knows, or should know those test results are being used to determine the custodial relationship between newborn children and their parents which creates a duty owed to those parents and newborn children to only use clear-cut and differentiated drug tests which distinguish between results for legal amphetamines and illegal methamphetamines.

2498.  Negligence (2): Defendants Anderson Labs, & Ms. Emily Miller, MD, failed to conform to the aforementioned duty when the Defendants provided a fetal medical center, St. Luke's Hospital, with undifferentiated drug test results that did not distinguish between legal amphetamines and illegal methamphetamines.

---

[193] *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1    2499.  Negligence (3): Defendants Anderson Labs, & Ms. Emily Miller, MD, actively and

2    of their own volition, chose to use an undifferentiated urine drug screen that did not

3    distinguish between legal amphetamines and illegal methamphetamines, and then

4    provided "positive" results to St. Luke's Hospital, its affiliates, agents, employees, and/or

5    assigns for potential illegal drug use that Defendant Anderson Labs knew or should

6    have known would be potentially used to separate a newborn baby from its parents.

7    2500.  Negligence (4): Plaintiffs Mr. and Mrs. Smith were in fact, separated from Plaintiff

8    Newborn baby J.A.S. against their will and consent and were left without control over

9    the care of their son Newborn baby child J.A.S., including the ability to breastfeed

10   Newborn baby J.A.S., have skin-to-skin contact with Newborn baby J.A.S., and consent

11   to Newborn baby J.A.S.'s medical treatment.

12   2501.  Defendants Anderson Labs and Ms. Emily Miller, MD's conduct violated Plaintiffs'

13   rights under Pennsylvania common law negligence.

14   2502.  Accordingly, and in connection with the alleged negligence of the Defendant

15   parties, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. request Anderson Labs

16   be required to adopt a third-party training program demonstrates the appropriate need

17   for accurate differential testing between legal amphetamines and illegal

18   methamphetamines.

19   2503.  Accordingly, and in connection with the alleged negligence of the Defendant

20   parties, Plaintiffs Mr. and Mrs. Smith and newborn baby J.A.S. request Anderson Labs

21   be required to immediately cease undifferentiated testing between legal amphetamines

22   and illegal methamphetamines, and, in addition, both categories of indication

23   (amphetamine and methamphetamine) must be clearly separated in lab reports.

1    2504.  Accordingly, and in connection with the alleged intentional infliction of emotional

2    distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith and newborn baby J.A.S.

3    request all Defendant Persons be required to attend and pass a rigorous a third-party

4    training program which demonstrates the appropriate need for accurate differential

5    testing between legal amphetamines and illegal methamphetamines.

6    2505.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

7    training course, then Anderson Labs should create their own legal training program on

8    when it is appropriate to separate a child from its parents including training which

9    demonstrates the appropriate need for accurate differential testing between legal

10   amphetamines and illegal methamphetamines; and, before the created program is

11   implemented, the program must be approved by an appropriate court or federal agency

12   for review; and, the program must be implemented within 180 days of the valid

13   judgment of this honorable Court.

14   2506.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

15   conduct, including but not limited to, emotional and psychological distress, pain and

16   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

17   appropriate compensatory damages to account for PTSD therapies and other related

18   treatments as they have been and will continue to be necessary; Plaintiffs respectfully

19   request an amount of $84,800 in compensatory damages per Defendant.

20   2507.  Given the substantial wealth of the Defendants Anderson Labs and Ms. Emily

21   Miller, MD, and therefore, their ability to afford the appropriate training to avoid this

22   egregious violation of the Pennsylvania Common Law, and, since harm was actually

23   caused to the current Plaintiffs Smith Family, and since harm is likely to continue to

1  harm future postpartum families, and because the acts of the Defendants and their

2  agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless

3  and wanton manner, the Plaintiff respectfully requests the imposition of punitive

4  damages on Defendants Anderson Labs and Ms. Emily Miller, MD to deter such

5  Defendants from committing to such conduct in the future which violates

6  Commonwealth of Pennsylvania Common Law Plaintiffs respectfully request an amount

7  of $5,000,000 in punitive damages per Defendants Anderson Labs, and Ms. Emily

8  Miller, MD.

9  2508.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

10  any actual injury despite the deprivation of their common law rights, the Plaintiffs

11  respectfully request a nominal judgment of $1.00.

12  # VIII.    Negligence V

13  Smith, *et al*. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Cynthia Shultz,

14  MD, Mr. Patrick Philpot, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler,

15  DO & Ms. Patricia Bates, CRNP

16  2509.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

17  or obligation recognized by the law, requiring the actor to conform to a certain standard

18  of conduct; (2) a failure to conform to the required standard; (3) a causal connection

19  between the conduct and the resulting injury; and (4) actual loss or damage resulting to

1   the interests of another.[194]

2   2510.  Negligence (1): A private medical provider actor has a duty not to place a

3   newborn baby child's mother's medical information in that newborn child's medical

4   records because to do so would betray the doctor's duty of confidentiality to the mother.

5   2511.  Negligence (2): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

6   Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Mr. Gilberto Santiago, MD, Ms.

7   Chaminie Wheeler, DO & Ms. Patricia Bates, CRNP failed to conform to the

8   aforementioned duty when the Defendants St. Luke's Hospital, Onsite Neonatal, OBHG

9   PA, and their agents, employees, and/or assigns unnecessarily placed medical

10   information about mother Plaintiff Mrs. Smith in Plaintiff Newborn baby J.A.S.'s medical

11   records.

12   2512.  Negligence (3): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

13   Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Mr. Gilberto Santiago, MD, Ms.

14   Chaminie Wheeler, DO & Ms. Patricia Bates, CRNP actively and of their own volition,

15   placed information in notes and medical records of Plaintiff Newborn baby J.A.S. that

16   Plaintiff Mrs. Smith had ingested methamphetamine, and passed the deleterious effects

17   of methamphetamine use onto Plaintiff Newborn baby J.A.S. despite the fact that

18   Newborn baby J.A.S. did not at any time test positive for methamphetamine or show

19   signs or symptoms of methamphetamine withdrawal.

---

[194]*See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

2513.  Negligence (4): Plaintiffs Mr. and Mrs. Smith were in fact, separated from Plaintiff Newborn baby J.A.S. against their will and consent and were left without control over the care of their son Plaintiff Newborn baby child J.A.S., including the ability to breastfeed Newborn baby J.A.S., have skin-to-skin contact with Newborn baby J.A.S., and consent to Newborn baby J.A.S.'s medical treatment.

2514.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team's" conduct violated Plaintiffs' rights under Pennsylvania common law negligence.

2515.  Accordingly, and in connection with the alleged negligence of the Defendant parties, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. request all Defendant Entities be required to adopt a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place, including the limited number of circumstances under which a mother's medical information may appear in her child's medical records.

2516.  Accordingly, and in connection with the alleged negligence of the Defendant parties, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. request all Defendant Persons be required to attend and pass a rigorous a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place, including the limited number of circumstances under which a mother's medical information may appear in her child's medical records.

1   2517.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

2   training course, then the Defendant Entities should create their own legal training

3   program which demonstrates appropriate circumstances under which a child should be

4   reasonably separated from its natural parents, and the specific legal procedures to

5   adhere to for such a separation to take place, including the limited number of

6   circumstances under which a mother's medical information may appear in her child's

7   medical records; and, before the created program is implemented, the program must be

8   approved by an appropriate court or federal agency for review; and, the program must

9   be implemented within 180 days of the valid judgment of this honorable Court.

10   2518.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

11   conduct, including but not limited to, emotional and psychological distress, pain and

12   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

13   appropriate compensatory damages to account for PTSD therapies and other related

14   treatments as they have been and will continue to be necessary; Plaintiffs respectfully

15   request an amount of $84,800 in compensatory damages per Defendant.

16   2519.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

17   Neonatal, OBHG PA, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Mr. Gilberto

18   Santiago, MD, Ms. Chaminie Wheeler, DO & Ms. Patricia Bates, CRNP and therefore,

19   their ability to afford the appropriate training to avoid this egregious violation of the

20   Pennsylvania Common Law, and, since harm was actually caused to the current

21   Plaintiffs Smith Family, and since harm is likely to continue to harm future postpartum

22   families, and because the acts of the Defendants and their agents, assigns, or

23   employees callously disregarded the Plaintiff's rights in a reckless and wanton manner,

1  the Plaintiff respectfully requests the imposition of punitive damages on Defendants St.

2  Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Cynthia M. Shultz, MD, Mr. Patrick

3  Philpot, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, DO & Ms. Patricia

4  Bates, CRNP to deter such Defendants from committing to such conduct in the future

5  which violates Commonwealth of Pennsylvania Common Law Plaintiffs respectfully

6  request an amount of $1,000,000 in punitive damages per Defendants Mr. Gilberto

7  Santiago, MD, and Ms. Patricia Bates, CRNP; $5,000,000 per Defendants Mr. Patrick

8  Philpot, DO, and Ms. Chaminie Wheeler, DO; and $10,000,000 per Defendants St.

9  Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Cynthia Shultz, MD..

10  2520.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

11  any actual injury despite the deprivation of their common law rights, the Plaintiffs

12  respectfully request a nominal judgment of $1.00.

# IX.   <u>Negligence VI</u>

14  <u>Smith, *et al*. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,</u>

15  <u>MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz,</u>

16  <u>MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher</u>

17  <u>Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese</u>

18  <u>Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms.</u>

19  <u>Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, "Security Supervisor</u>

20  <u>'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr.</u>

1     <u>Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital</u>

2     <u>Leadership Team"</u>

3   2521.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

4   or obligation recognized by the law, requiring the actor to conform to a certain standard

5   of conduct; (2) a failure to conform to the required standard; (3) a causal connection

6   between the conduct and the resulting injury; and (4) actual loss or damage resulting to

7   the interests of another.[195]

8   2522.  Negligence (1): A private medical provider actor removing a newborn child from

9   the custody of its parents has a duty to only do so with a court order or with reasonable

10   suspicion of drug abuse on the part of the mother; and, that reasonable suspicion that

11   the mother ingested an illegal substance requires a reasonable cursory investigation by

12   the hospital before contacting state authorities to allege the serious crime of child abuse

13   of a newborn baby.

14   2523.  Negligence (2): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

15   Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R.

16   Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr.

17   Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms.

18   Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms.

---

[195]*See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1    Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, "Security Supervisor 'Unknown'",

2    "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,

3    Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" failed to

4    conform to the aforementioned duty when the Defendants removed Plaintiffs Mr. and

5    Mrs. Smith from Plaintiff Newborn baby J.A.S. by ejecting Mr. and Mrs. Smith from

6    Defendant St. Luke's property without conducting a reasonable cursory investigation to

7    establish reasonable suspicion of illegal drug abuse by Plaintiff Mrs. Smith.

8    2524.  Negligence (3): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

9    Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R.

10    Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr.

11    Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms.

12    Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms.

13    Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, "Security Supervisor 'Unknown'",

14    "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,

15    Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" actively

16    and of their own volition, chose to ignore evidence to the contrary to the allegation that

17    Plaintiff Mrs. Smith ingested methamphetamine, including but not limited to, checking to

18    see if the levels of "positive" methamphetamine in Plaintiff Mrs. Smith's urine

19    corresponded with the amount of amphetamine she was prescribed, thereby

20    demonstrating that there was not more of any substance in her urine than she was

21    legally prescribed; contacting any of the three physicians, including Mrs. Smith's

22    previous obstetrician to confirm Mrs. Smith's assertions of not ingesting

1   methamphetamine; and, observing that neither Plaintiffs Newborn baby J.A.S., nor Mrs.

2   Smith were suffering withdrawal symptoms from substance abuse.

3   2525.  Negligence (4):  Plaintiffs Mr. and Mrs. Smith were in fact, separated from

4   Plaintiff Newborn baby J.A.S. against their will and consent and were left without control

5   over the care of their son Newborn baby child J.A.S., including the ability to breastfeed

6   Newborn baby J.A.S., have skin-to-skin contact with Newborn baby J.A.S., and consent

7   to Newborn baby J.A.S.'s medical treatment.

8   2526.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

9   MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, MD,

10   Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD,

11   Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms.

12   Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms. Chaminie Wheeler, MD, Ms.

13   Patricia Bates, CNRP, "Security Supervisor 'Unknown'", "Head of Hospital Security

14   'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

15   Dawn Hoffman, and the "Hospital Leadership Team's" conduct violated Plaintiffs' rights

16   under Pennsylvania common law negligence.

17   2527.  Accordingly, and in connection with the alleged negligence of the Defendant

18   parties, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. request all Defendant

19   Entities be required to adopt a third-party training program which demonstrates

20   appropriate circumstances under which a child should be reasonably separated from its

21   natural parents, and the specific legal procedures to adhere to for such a separation to

22   take place, including what consists of a reasonable cursory investigation into the

1  likelihood of actual child abuse before reporting the allegation that a mother has abused

2  illegal drugs and passed the deleterious effects of those drugs onto her newborn baby.

3  2528.  Accordingly, and in connection with the alleged negligence of the Defendant

4  parties, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. request all Defendant

5  Persons be required to attend and pass a rigorous a third-party training program which

6  demonstrates appropriate circumstances under which a child should be reasonably

7  separated from its natural parents, and the specific legal procedures to adhere to for

8  such a separation to take place, including what consists of a reasonable cursory

9  investigation into the likelihood of actual child abuse before reporting the allegation that

10  a mother has abused illegal drugs and passed the deleterious effects of those drugs

11  onto her newborn baby child.

12  2529.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

13  training course, then the Defendant Entities should create their own legal training

14  program which demonstrates appropriate circumstances under which a child should be

15  reasonably separated from its natural parents, and the specific legal procedures to

16  adhere to for such a separation to take place, including what consists of a reasonable

17  cursory investigation into the likelihood of actual child abuse before reporting the

18  allegation that a mother has abused illegal drugs and passed the deleterious effects of

19  those drugs onto her newborn baby child; and, before the created program is

20  implemented, the program must be approved by an appropriate court or federal agency

21  for review; and, the program must be implemented within 180 days of the valid

22  judgment of this honorable Court.

2530.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully request an amount of $84,800 in compensatory damages per Defendant.

2531.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" and therefore, their ability to afford the appropriate training to avoid this egregious violation of the Pennsylvania Common Law, and, since harm was actually caused to the current Plaintiffs Smith Family, and since harm is likely to continue to harm future postpartum families, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiff respectfully requests the imposition of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr.

1    Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms.

2    Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms.

3    Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, "Security Supervisor 'Unknown'",

4    "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,

5    Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" to deter

6    such Defendants from committing to such conduct in the future which violates

7    Commonwealth of Pennsylvania Common Law Plaintiffs respectfully request an amount

8    of $1,000,000 in punitive damages per Defendants Ms. Dianne R. Jacobetz, MD, Mr.

9    Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms.

10   Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly

11   A. Costello, DO, Mr. Gilberto I. Santiago, MD, and Ms. Patricia Bates, CNRP;

12   $5,000,000 per Defendants Mr. Patrick Philpot, DO, Ms. Chaminie Wheeler, MD,

13   "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve

14   Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the

15   "Hospital Leadership Team"; and $10,000,000 per Defendants St. Luke's Hospital,

16   Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, and Ms. Cynthia M. Shultz, MD..

17   2532.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

18   any actual injury despite the deprivation of their common law rights, the Plaintiffs

19   respectfully request a nominal judgment of $1.00.

20   # X.    Negligence VII

21   Smith, *et al*. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

22   MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz,

MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher

Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese

Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms.

Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, Mr. Steve Lanshe, Esq., Mr.

Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital

Leadership Team"

2533.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

or obligation recognized by the law, requiring the actor to conform to a certain standard

of conduct; (2) a failure to conform to the required standard; (3) a causal connection

between the conduct and the resulting injury; and (4) actual loss or damage resulting to

the interests of another.[196]

2534.  Negligence (1): A private medical provider actor removing a newborn child from

the custody of its parents has a duty to only do so with a court order or with reasonable

suspicion of drug abuse on the part of the mother, and in the absence of a court order,

when willfully separating a newborn child from its parents, regardless of suspicions of

mother's guilt concerning the ingestion of methamphetamine, the private medical

provider has a duty to provide a viable appeals process for the decision to separate the

---

[196]*See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933,

938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir.

1993).

1  child from the parents in which the parents are appreciably heard and their perspectives

2  sincerely considered.

3  2535.  Negligence (2): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

4  Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R.

5  Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr.

6  Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms.

7  Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms.

8  Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, Mr. Steve Lanshe, Esq., Mr. Robert

9  L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

10  failed to conform to the aforementioned duty when the Defendants removed Plaintiffs

11  Mr. and Mrs. Smith from Plaintiff Newborn baby J.A.S. by ejecting Plaintiffs Mr. and Mrs.

12  Smith from St. Luke's property without reasonable suspicion of drug abuse by Plaintiff

13  Mrs. Smith or a court order to separate Newborn baby J.A.S. from his parents, and not

14  one Defendant provided a valid appeals process for the decision to separate them.

15  2536.  Negligence (3): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

16  Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R.

17  Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr.

18  Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms.

19  Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms.

20  Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, Mr. Steve Lanshe, Esq., Mr. Robert

21  L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

22  actively and of their own volition, contacted Northampton County CYS, Monroe County

23  CYS, and the Bethlehem Police Department in a concerted effort to separate Plaintiff

1    Newborn baby J.A.S. from his parents Plaintiffs Mr. and Mrs. Smith and to deny a valid

2    appeals process for that separation by keeping the focus of the issue on the supposed

3    methamphetamine use and implying that there was no way to overcome the decision

4    that was made because the decision made was already final, as became evident when

5    Plaintiffs Mr. and Mrs. Smith were escorted off of Defendant St. Luke's Hospital's

6    property by police officers against their will and consent.

7    2537.  Negligence (4): Because there was not a valid appeals process, Plaintiffs Mr. and

8    Mrs. Smith were in fact, separated from Plaintiff Newborn baby J.A.S. against their will

9    and consent and were left without control over the care of their son Newborn baby

10   J.A.S., including the ability to breastfeed Newborn baby J.A.S., have skin-to-skin

11   contact with Newborn baby J.A.S., and consent to Newborn baby J.A.S.'s medical

12   treatment.

13   2538.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

14   MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, MD,

15   Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD,

16   Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms.

17   Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms. Chaminie Wheeler, MD, Ms.

18   Patricia Bates, CNRP, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla

19   Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team's" conduct violated

20   Plaintiffs' rights under Pennsylvania common law negligence.

21   2539.  Accordingly, and in connection with the alleged negligence of the Defendant

22   parties, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. request all Defendant

23   Entities be required to adopt a third-party training program which demonstrates

1  appropriate circumstances under which a child should be reasonably separated from its

2  natural parents, and the specific legal procedures to adhere to for such a separation to

3  take place, including the necessity for an impartial appeals process, as well, for when

4  the mechanism for an appeals process becomes available.

5  2540.  Accordingly, and in connection with the alleged negligence of the Defendant

6  parties, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. request all Defendant

7  Persons be required to attend and pass a rigorous a third-party training program which

8  demonstrates appropriate circumstances under which a child should be reasonably

9  separated from its natural parents, and the specific legal procedures to adhere to for

10  such a separation to take place, including the necessity for an impartial appeals

11  process, as well, for when the mechanism for an appeals process becomes available.

12  2541.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

13  training course, then the Defendant Entities should create their own legal training

14  program which demonstrates appropriate circumstances under which a child should be

15  reasonably separated from its natural parents, and the specific legal procedures to

16  adhere to for such a separation to take place, including the necessity for an impartial

17  appeals process, as well, for when the mechanism for an appeals process becomes

18  available; and, before the created program is implemented, the program must be

19  approved by an appropriate court or federal agency for review; and, the program must

20  be implemented within 180 days of the valid judgment of this honorable Court.

21  2542.  A Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

22  conduct, including but not limited to, emotional and psychological distress, pain and

23  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

1    appropriate compensatory damages to account for PTSD therapies and other related

2    treatments as they have been and will continue to be necessary; Plaintiffs respectfully

3    request an amount of $84,800 in compensatory damages per Defendant.

4    2543.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

5    Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick

6    Philpot, DO, Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E.

7    Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

8    Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I.

9    Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, Mr. Steve

10   Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the

11   "Hospital Leadership Team"  and therefore, their ability to afford the appropriate training

12   to avoid this egregious violation of the Pennsylvania Common Law, and, since harm

13   was actually caused to the current Plaintiffs Smith Family, and since harm is likely to

14   continue to harm future postpartum families, and because the acts of the Defendants

15   and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a

16   reckless and wanton manner, the Plaintiff respectfully requests the imposition of

17   punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

18   Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R.

19   Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr.

20   Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms.

21   Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms.

22   Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, Mr. Steve Lanshe, Esq., Mr. Robert

23   L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

1  to deter such Defendants from committing to such conduct in the future which violates

2  Commonwealth of Pennsylvania Common Law Plaintiffs respectfully request an amount

3  of $1,000,000 in punitive damages per Defendants Ms. Dianne R. Jacobetz, MD, Mr.

4  Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms.

5  Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly

6  A. Costello, DO, Mr. Gilberto I. Santiago, MD, and Ms. Patricia Bates, CNRP;

7  $5,000,000 per Defendants Mr. Patrick Philpot, DO, Ms. Chaminie Wheeler, MD, Mr.

8  Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and

9  the "Hospital Leadership Team"; and $10,000,000 per Defendants St. Luke's Hospital,

10  Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, and Ms. Cynthia M. Shultz, MD..

11  2544.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

12  any actual injury despite the deprivation of their common law rights, the Plaintiffs

13  respectfully request a nominal judgment of $1.00.

14  # XI.   <u>Negligence VIII</u>

15  <u>Smith, *et al*. v. St. Luke's Hospital, Onsite Neonatal, St. Luke's Physician Group,</u>

16  <u>Ms. Chaminie Wheeler, DO, Mr. Gilberto I. Santiago, MD, & Ms. Dianne R.</u>

17  <u>Jacobetz, MD</u>

18  2545.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

19  or obligation recognized by the law, requiring the actor to conform to a certain standard

20  of conduct; (2) a failure to conform to the required standard; (3) a causal connection

21  between the conduct and the resulting injury; and (4) actual loss or damage resulting to

1    the interests of another.[197]

2    2546.  Negligence (1): A private medical provider actor has a duty to convey true and

3    accurate medical information about a newborn baby to its parents.

4    2547.  Negligence (2): Defendants St. Luke's Hospital, Onsite Neonatal, St. Luke's

5    Physicians Group, Ms. Chaminie Wheeler, DO, Mr. Gilberto I. Santiago, MD, & Ms.

6    Dianne Jacobetz, MD, failed to conform to the aforementioned duty when in an effort to

7    force Plaintiffs Mr. and Mrs. Smith to stay at the hospital with Plaintiff Newborn baby

8    J.A.S. beyond when the Plaintiffs desired to remain, Defendants misinformed Mr. and

9    Mrs. Smith that Newborn baby J.A.S. needed to be removed to the NICU because of

10    breathing trouble (which was a newborn grunting to breastfeed), and Defendants never

11    informed Plaintiffs Mr. and Mrs. Smith, as Mr. and Mrs. Smith later discovered in

12    medical records, that Plaintiff Newborn baby J.A.S. was "in danger of falling into life-

13    threatening circumstances" if he were not admitted to the NICU for specialized care and

14    monitoring.

15    2548.  Negligence (3): Defendants St. Luke's Hospital, Onsite Neonatal, St. Luke's

16    Physicians Group, Ms. Chaminie Wheeler, DO, Mr. Gilberto I. Santiago, MD, & Ms.

17    Dianne Jacobetz, MD, actively and of their own volition, intentionally spoke to Plaintiffs

18    Mr. and Mrs. Smith one narrative about their newborn baby that he was by-and-large

19    healthy and fine, and that his admittance to the NICU was precautionary; however, the

---

[197] *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1    narrative that was being written in the medical records of Plaintiffs Newborn baby J.A.S.

2    and Mrs. Smith was markedly different in tone and facts, instead making Plaintiff

3    Newborn baby J.A.S. out to be in more need of medical care than he actually required

4    or was at least being reported to require to Plaintiffs Mr. and Mrs. Smith.

5    2549.  Negligence (4): Plaintiffs Mr. and Mrs. Smith were in fact, separated from Plaintiff

6    Newborn baby J.A.S. against their will and consent and were left without control over

7    the care of their son Newborn baby child J.A.S., including the ability to breastfeed

8    Newborn baby J.A.S., have skin-to-skin contact with Newborn baby J.A.S., and consent

9    to Newborn baby J.A.S.'s medical treatment.

10   2550.  Defendants St. Luke's Hospital, Onsite Neonatal, St. Luke's Physicians Group,

11   Ms. Chaminie Wheeler, DO, Mr. Gilberto I. Santiago, MD, and Ms. Dianne Jacobetz,

12   MD's conduct violated Plaintiffs' rights under Pennsylvania common law negligence.

13   2551.  Accordingly, and in connection with the alleged negligence of the Defendant

14   parties, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. request all Defendant

15   Entities be required to adopt a third-party training program which demonstrates

16   appropriate circumstances under which a child should be reasonably separated from its

17   natural parents, and the specific legal procedures to adhere to for such a separation to

18   take place, and that employees, agents, and assigns of the Defendant Entities must be

19   consistent with the same narrative in the medical records of patients as when speaking

20   to or otherwise communicating with a patient or patient's parent or legal guardian.

21   2552.  Defendants St. Luke's Hospital, Onsite Neonatal, St. Luke's Physicians Group,

22   Ms. Chaminie Wheeler, DO, Mr. Gilberto I. Santiago, MD, and Ms. Dianne Jacobetz,

23   MD's conduct violated Plaintiffs' rights under Pennsylvania common law negligence.

1   2553.  Accordingly, and in connection with the alleged negligence of the Defendant

2   parties, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. request all Defendant

3   Persons be required to attend and pass a rigorous a third-party training program which

4   demonstrates appropriate circumstances under which a child should be reasonably

5   separated from its natural parents, and the specific legal procedures to adhere to for

6   such a separation to take place, and that employees, agents, and assigns of the

7   Defendant Entities must be consistent with the same narrative in the medical records of

8   patients as when speaking  to or otherwise communicating with a patient or patient's

9   parent or legal guardian.

10   2554.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

11   training course, then the Defendant Entities should create their own legal training

12   program which demonstrates appropriate circumstances under which a child should be

13   reasonably separated from its natural parents, and the specific legal procedures to

14   adhere to for such a separation to take place, and that employees, agents, and assigns

15   of the Defendant Entities must be consistent with the same narrative in the medical

16   records of patients as when speaking to or otherwise communicating with a patient or

17   patient's parent or legal guardian; and, before the created program is implemented, the

18   program must be approved by an appropriate court or federal agency for review; and,

19   the program must be implemented within 180 days of the valid judgment of this

20   honorable Court.

21   2555.  A Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

22   conduct, including but not limited to, emotional and psychological distress, pain and

23   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

1  appropriate compensatory damages to account for PTSD therapies and other related

2  treatments as they have been and will continue to be necessary; Plaintiffs respectfully

3  request an amount of $84,800 in compensatory damages per Defendant.

4  2556.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

5  Neonatal, St. Luke's Physicians Group, Ms. Chaminie Wheeler, DO, Mr. Gilberto I.

6  Santiago, MD, and Ms. Dianne Jacobetz, MD, and therefore, their ability to afford the

7  appropriate training to avoid this egregious violation of the Pennsylvania Common Law,

8  and, since harm was actually caused to the current Plaintiffs Smith Family, and since

9  harm is likely to continue to harm future postpartum families, and because the acts of

10  the Defendants and their agents, assigns, or employees callously disregarded the

11  Plaintiff's rights in a reckless and wanton manner, the Plaintiff respectfully requests the

12  imposition of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, St.

13  Luke's Physicians Group, Ms. Chaminie Wheeler, DO, Mr. Gilberto I. Santiago, MD, and

14  Ms. Dianne Jacobetz, MD, to deter such Defendants from committing to such conduct in

15  the future which violates Commonwealth of Pennsylvania Common Law Plaintiffs

16  respectfully request an amount of $1,000,000 in punitive damages per Defendants Mr.

17  Gilberto I. Santiago, MD, and Ms. Dianne R. Jacobetz, MD.; $5,000,000 per Defendants

18  Onsite Neonatal, St. Luke's Physician Group, and Ms. Chaminie Wheeler, DO; and

19  $10,000,000 per Defendant St. Luke's Hospital.

20  2557.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

21  any actual injury despite the deprivation of their common law rights, the Plaintiffs

22  respectfully request a nominal judgment of $1.00.

23  ## XII.   <u>Negligence IX</u>

1   Smith, *et al*. v. St. Luke's Hospital, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq.,

2   Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

3   2558.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

4   or obligation recognized by the law, requiring the actor to conform to a certain standard

5   of conduct; (2) a failure to conform to the required standard; (3) a causal connection

6   between the conduct and the resulting injury; and (4) actual loss or damage resulting to

7   the interests of another.[198]

8   2559.  Negligence (1): A private medical provider actor removing a newborn child from

9   the custody of its parents has a duty to only do so with a court order or with reasonable

10  suspicion of drug abuse on the part of the mother, and in the absence of either has a

11  duty to allow both natural parents to be with the newborn baby.

12  2560.  Negligence (2): Defendants St. Luke's Hospital, Mr. Steve Lanshe, Esq., Mr.

13  Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, & the "Hospital Leadership

14  Team" failed to conform to the aforementioned duty when the Defendants removed

15  Plaintiffs Mr. and Mrs. Smith from Plaintiff newborn baby J.A.S. by ejecting Mr. and Mrs.

16  Smith from St. Luke's property against their will and consent without reasonable

17  suspicion of drug abuse by Mrs. Smith or a court order to separate newborn baby J.A.S.

18  from his parents, and not allow both parents back into the hospital NICU (Mr. Smith is

---

[198]*See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933,

938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir.

1993).

1  still under a no trespass order under threat of arrest from the Bethlehem Police

2  Department).

3  2561.  Negligence (3): Defendants St. Luke's Hospital, Mr. Steve Lanshe, Esq., Mr.

4  Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, & the "Hospital Leadership

5  Team"  actively and of their own volition, contacted Northampton County CYS, Monroe

6  County CYS, and the Bethlehem Police Department in a concerted effort to separate

7  Plaintiff newborn baby J.A.S. from his parents Plaintiffs Mr. and Mrs. Smith, and after

8  over 24-hours of time Plaintiff Mrs. Smith was allowed to be in the NICU with newborn

9  baby J.A.S., but Mr. Smith was still restricted from St. Luke's Hospital property under

10  threat of arrest.

11  2562.  Negligence (4): Mr. and Mrs. Smith were in fact, separated from newborn baby

12  J.A.S. against their will and consent and were left without control over the care of their

13  newborn baby child J.A.S., including the ability to breastfeed newborn baby J.A.S., have

14  skin-to-skin contact with newborn baby J.A.S., and consent to newborn baby J.A.S.'s

15  medical treatment, a separation which continued for Mr. Smith for a period lasting some

16  time longer than 72 hours, and did not allow him to be in the NICU to be with his

17  postpartum wife and child during a particularly difficult time as a family.

18  2563.  Defendants St. Luke's Hospital, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,

19  Esq., Ms. Darla Frack, Ms. Dawn Hoffman, & the "Hospital Leadership Team's" conduct

20  violated Plaintiffs' rights under Pennsylvania common law negligence.

21  2564.  Accordingly, and in connection with the alleged negligence of the Defendant

22  parties, Plaintiffs Mr. and Mrs. Smith and newborn baby J.A.S. request all Defendant

23  Entities be required to adopt a third-party training program which demonstrates

1   appropriate circumstances under which a child should be reasonably separated from its

2   natural parents, and the specific legal procedures to adhere to for such a separation to

3   take place, including when it is and when it is not appropriate to remove parents from

4   the premises altogether and what the standard for allowing parents back on the property

5   to visit their newborn children in the NICU is if the parents have been ejected from the

6   property against their will and consent under threat of arrest.

7   2565.  Accordingly, and in connection with the alleged negligence of the Defendant

8   parties, Plaintiffs Mr. and Mrs. Smith and newborn baby J.A.S. request all Defendant

9   Persons be required to attend and pass a rigorous a third-party training program which

10  demonstrates appropriate circumstances under which a child should be reasonably

11  separated from its natural parents, and the specific legal procedures to adhere to for

12  such a separation to take place, including when it is and when it is not appropriate to

13  remove parents from the premises altogether and what the standard for allowing

14  parents back on the property to visit their newborn children in the NICU is if the parents

15  have been ejected from the property against their will and consent under threat of

16  arrest.

17  2566.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

18  training course, then the Defendant Entities should create their own legal training

19  program which demonstrates appropriate circumstances under which a child should be

20  reasonably separated from its natural parents, and the specific legal procedures to

21  adhere to for such a separation to take place, including when it is and when it is not

22  appropriate to remove parents from the premises altogether and what the standard for

23  allowing parents back on the property to visit their newborn children in the NICU is if the

1   parents have been ejected from the property against their will and consent under threat

2   of arrest; and, before the created program is implemented, the program must be

3   approved by an appropriate court or federal agency for review; and, the program must

4   be implemented within 180 days of the valid judgment of this honorable Court.

5   2567.  Accordingly, and in connection with the alleged negligence of the Defendant

6   parties, Plaintiffs Mr. and Mrs. Smith and newborn baby J.A.S. request all appropriate

7   monetary relief, compensatory and punitive, as the Court sees fit.

8   2568.  A Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

9   conduct, including but not limited to, emotional and psychological distress, pain and

10   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

11   appropriate compensatory damages to account for PTSD therapies and other related

12   treatments as they have been and will continue to be necessary Plaintiffs respectfully

13   request an amount of $84,800 in compensatory damages per Defendant.

14   2569.  Given the substantial wealth of the Defendants St. Luke's Hospital, Mr. Steve

15   Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, & the

16   "Hospital Leadership Team", and therefore, their ability to afford the appropriate training

17   to avoid this egregious violation of the Pennsylvania Common Law, and, since harm

18   was actually caused to the current Plaintiffs Smith Family, and since harm is likely to

19   continue to harm future postpartum families, and because the acts of the Defendants

20   and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a

21   reckless and wanton manner, the Plaintiff respectfully requests the imposition of

22   punitive damages on Defendants St. Luke's Hospital, Mr. Steve Lanshe, Esq., Mr.

23   Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, & the "Hospital Leadership

1   Team", to deter such Defendants from committing to such conduct in the future which

2   violates Commonwealth of Pennsylvania Common Law Plaintiffs respectfully request an

3   amount of $5,000,000 in punitive damages per Defendants Mr. Steve Lanshe, Esq., Mr.

4   Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

5   Team"; and $10,000,000 per Defendant St. Luke's Hospital.

6   2570.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

7   any actual injury despite the deprivation of their common law rights, the Plaintiffs

8   respectfully request a nominal judgment of $1.00.

9   # XIII.   <u>Negligence X</u>

10  <u>Smith, *et al*. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,</u>

11  <u>MD, & Ms. Cynthia Shultz, MD</u>

12  2571.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

13  or obligation recognized by the law, requiring the actor to conform to a certain standard

14  of conduct; (2) a failure to conform to the required standard; (3) a causal connection

15  between the conduct and the resulting injury; and (4) actual loss or damage resulting to

16  the interests of another.[199]

17  2572.  Negligence (1): A private medical provider actor removing a newborn child from

18  the custody of its parents has a duty to only do so with a court order or with reasonable

---

[199]*See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1  suspicion of drug abuse on the part of the mother, and without either the former or the

2  latter on behalf of Defendant actors, the parents of such allegations have a valid logical

3  and emotional basis for contesting such allegations, and have a right to do so without

4  being painted as people capable of such violence that they should be removed from

5  hospital property under threat of arrest while their newborn baby resides in a NICU.

6  2573.  Negligence (2): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

7  Teresa Marlino, MD, & Ms. Cynthia Shultz, MD failed to conform to the aforementioned

8  duty when the Defendants removed Plaintiffs Mr. and Mrs. Smith from Plaintiff Newborn

9  baby J.A.S. by ejecting Plaintiffs Mr. and Mrs. Smith from Defendant St. Luke's Hospital

10  property against their will and consent under threat of arrest without reasonable

11  suspicion of drug abuse by Plaintiff Mrs. Smith or a court order to separate Plaintiff

12  Newborn baby J.A.S. from his parents, by  proceeding to paint the color of violence on

13  the Plaintiff parents Mr. and Mrs. Smith to both private parties and state officials to the

14  degree that state officials removed Plaintiffs Mr. and Mrs. Smith from Defendant St.

15  Luke's Hospital property under threat of arrest, and other state officials opened up an

16  erroneous investigation for over a month into the supposed violent nature of the Smith

17  Family Parents.

18  2574.  Negligence (3): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

19  Teresa Marlino, MD, & Ms. Cynthia Shultz, MD actively and of their own volition,

20  contacted Northampton County CYS, Monroe County CYS, and the Bethlehem Police

21  Department in a concerted effort to separate Plaintiff Newborn baby J.A.S. from his

22  parents Plaintiffs Mr. and Mrs. Smith, during which process the Defendants portrayed

23  Plaintiffs Mr. and Mrs. Smith as people who had acted in a fashion so violent towards

1    Defendant hospital agents, employees, and assigns that Plaintiffs Mr. and Mrs. Smith

2    were locked out of the NICU, which was guarded against their presence by numerous

3    hospital security, removed from Defendant St. Luke's Hospital property against their will

4    and consent under threat of arrest, and then had over a month long investigation

5    opened into the nature of the supposed abusive nature alleged against Plaintiffs Mr. and

6    Mrs. Smith by yet another state entity.

7    2575.  Negligence (4): Plaintiffs Mr. and Mrs. Smith were in fact, separated from Plaintiff

8    Newborn baby J.A.S. against their will and consent and were left without control over

9    the care of their son Newborn baby J.A.S., including the ability to breastfeed Newborn

10   baby J.A.S., have skin-to-skin contact with Newborn baby J.A.S., and consent to

11   Newborn baby J.A.S.'s medical treatment.

12   2576.  Neither Plaintiff Mr. nor Mrs. Smith acted in a violent fashion throughout the

13   entirety of the stressful situation of their child being seized by the hospital into the NICU

14   and held against the Plaintiff's will and consent, custody, and care by the concerted

15   efforts of the Defendants.

16   2577.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

17   MD, & Ms. Cynthia Shultz, MD's conduct violated Plaintiffs' rights under Pennsylvania

18   common law negligence.

19   2578.  Accordingly, and in connection with the alleged negligence of the Defendant

20   parties, Plaintiffs Mr. and Mrs. Smith and newborn baby J.A.S. request all Defendant

21   Entities be required to adopt a third-party training program which demonstrates

22   appropriate circumstances under which a child should be reasonably separated from its

23   natural parents, and the specific legal procedures to adhere to for such a separation to

1  take place, including accurately portraying the demeanor of the parents of the newborn

2  child as non-violent, so long as they did not act in a violent manner.

3  2579.  Accordingly, and in connection with the alleged negligence of the Defendant

4  parties, Plaintiffs Mr. and Mrs. Smith and newborn baby J.A.S. request all Defendant

5  Persons be required to attend and pass a rigorous a third-party training program which

6  demonstrates appropriate circumstances under which a child should be reasonably

7  separated from its natural parents, and the specific legal procedures to adhere to for

8  such a separation to take place, including accurately portraying the demeanor of the

9  parents of the newborn child as non-violent, so long as they did not act in a violent

10  manner.

11  2580.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

12  training course, then the Defendant Entities should create their own legal training

13  program which demonstrates appropriate circumstances under which a child should be

14  reasonably separated from its natural parents, and the specific legal procedures to

15  adhere to for such a separation to take place, including accurately portraying the

16  demeanor of the parents of the newborn child as non-violent, so long as they did not act

17  in a violent manner; and, before the created program is implemented, the program must

18  be approved by an appropriate court or federal agency for review; and, the program

19  must be implemented within 180 days of the valid judgment of this honorable Court.

20  2581.  A Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

21  conduct, including but not limited to, emotional and psychological distress, pain and

22  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

23  appropriate compensatory damages to account for PTSD therapies and other related

1   treatments as they have been and will continue to be necessary; Plaintiffs respectfully

2   request an amount of $84,800 in compensatory damages per Defendant.

3   2582.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

4   Neonatal, OBHG PA, Ms. Teresa Marlino, MD, & Ms. Cynthia Shultz, MD, and

5   therefore, their ability to afford the appropriate training to avoid this egregious violation

6   of the Pennsylvania Common Law, and, since harm was actually caused to the current

7   Plaintiffs Smith Family, and since harm is likely to continue to harm future postpartum

8   families, and because the acts of the Defendants and their agents, assigns, or

9   employees callously disregarded the Plaintiff's rights in a reckless and wanton manner,

10   the Plaintiff respectfully requests the imposition of punitive damages on Defendants St.

11   Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, & Ms. Cynthia

12   Shultz, MD, to deter such Defendants from committing to such conduct in the future

13   which violates Commonwealth of Pennsylvania Common Law Plaintiffs respectfully

14   request an amount of $10,000,000 in punitive damages per Defendants St. Luke's

15   Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, & Ms. Cynthia Shultz,

16   MD.

17   2583.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

18   any actual injury despite the deprivation of their common law rights, the Plaintiffs

19   respectfully request a nominal judgment of $1.00.

20   # XIV.   Negligence XI

21   <u>Smith, *et al*. v. St. Luke's Hospital, & Hospital Social Worker "Vanessa"</u>

22   2584.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

1   or obligation recognized by the law, requiring the actor to conform to a certain standard

2   of conduct; (2) a failure to conform to the required standard; (3) a causal connection

3   between the conduct and the resulting injury; and (4) actual loss or damage resulting to

4   the interests of another.[200]

5   2585.  Negligence (1): A private medical provider actor removing a newborn child from

6   the custody of its parents has a duty to not increase the amount of mental anguish of

7   the parents by telling the parents that they retain rights to their child while the parents

8   are routinely witnessing parental rights being taken away or extinguished by that very

9   Defendant actor.

10  2586.  Negligence (2): Defendants St. Luke's Hospital and Hospital Social Worker

11  "Vanessa" failed to conform to the aforementioned duty when the Defendants attempted

12  to reaffirm to Plaintiff parents Mr. and Mrs. Smith that they had care and control over the

13  medical decisions and general welfare of their child, while simultaneously having the

14  parents removed from the property, having parental consent continually denied in favor

15  of Defendants' desires, Plaintiff Mr. Smith not being allowed to visit his child in the NICU

16  after April 9th at all, around the clock guarding of Plaintiff Mrs. Smith while she was in

17  the NICU, and not being able to leave the hospital with their child.

18  2587.  Negligence (3): Defendants St. Luke's Hospital and Hospital Social Worker

19  "Vanessa" actively and of her own volition, communicated to Plaintiff Mrs. Smith, upon

---

[200]*See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1    returning to the NICU to care for Plaintiff Newborn baby J.A.S. that Mrs. Smith had

2    "custody", including the right to make decisions concerning the health and well-being of

3    Newborn baby J.A.S. despite the fact that under the current circumstances and

4    atmosphere Plaintiff Mrs. Smith clearly did not have custody of her child, nor the right to

5    make decisions for Plaintiff Newborn baby J.A.S. that the Defendants did not 100%

6    agree with without risk of ejection from the NICU and loss of access to Plaintiff Newborn

7    baby J.A.S. again.

8    2588. Negligence (4): Plaintiffs Mr. and Mrs. Smith were in fact, separated from Plaintiff

9    Newborn baby J.A.S. against their will and consent and were left without control over

10    the care of their son Newborn baby J.A.S., including the ability to breastfeed Newborn

11    baby J.A.S., have skin-to-skin contact with Newborn baby J.A.S., and consent to

12    Newborn baby J.A.S.'s medical treatment.

13    2589. Defendants St. Luke's Hospital and Hospital Social Worker "Vanessa's" conduct

14    violated Plaintiffs' rights under Pennsylvania common law negligence.

15    2590. Accordingly, and in connection with the alleged negligence of the Defendant

16    parties, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. request all Defendant

17    Entities be required to adopt a third-party training program which demonstrates

18    appropriate circumstances under which a child should be reasonably separated from its

19    natural parents, and the specific legal procedures to adhere to for such a separation to

20    take place, including how not to inflict additional trauma by making statements that are

21    contrary to the reality facing the parents.

22    2591. Accordingly, and in connection with the alleged negligence of the Defendant

23    parties, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. request all Defendant

1   Persons be required to attend and pass a rigorous a third-party training program which

2   demonstrates appropriate circumstances under which a child should be reasonably

3   separated from its natural parents, and the specific legal procedures to adhere to for

4   such a separation to take place, including how not to inflict additional trauma by making

5   statements that are inverse to the reality facing the parents.

6   2592.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

7   training course, then the Defendant Entities should create their own legal training

8   program which demonstrates appropriate circumstances under which a child should be

9   reasonably separated from its natural parents, and the specific legal procedures to

10  adhere to for such a separation to take place, including how not to inflict additional

11  trauma by making statements that are contrary to the reality facing the parents; and,

12  before the created program is implemented, the program must be approved by an

13  appropriate court or federal agency for review; and, the program must be implemented

14  within 180 days of the valid judgment of this honorable Court.

15  2593.  A Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

16  conduct, including but not limited to, emotional and psychological distress, pain and

17  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

18  appropriate compensatory damages to account for PTSD therapies and other related

19  treatments as they have been and will continue to be necessary Plaintiffs respectfully

20  request an amount of $84,800 in compensatory damages per Defendant.

21  2594.  Given the substantial wealth of the Defendant St. Luke's Hospital, and therefore,

22  its ability to afford the appropriate training to avoid this egregious violation of the

23  Pennsylvania Common Law, and, since harm was actually caused to the current

1    Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum

2    families, and because the acts of the Defendants and their agents, assigns, or

3    employees callously disregarded the Plaintiff's rights in a reckless and wanton manner,

4    the Plaintiff respectfully requests the imposition of punitive damages on Defendant St.

5    Luke's Hospital, to deter such Defendants from committing to such conduct in the future

6    which violates Commonwealth of Pennsylvania Common Law Plaintiffs respectfully

7    request an amount of $1,000,000 in punitive damages per Defendant Hospital Social

8    Worker "Vanessa"; and $10,000,000 per Defendant St. Luke's Hospital.

9    2595.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

10   any actual injury despite the deprivation of their common law rights, the Plaintiffs

11   respectfully request a nominal judgment of $1.00.

## XV.   <u>Negligence XII</u>

13   <u>Smith, *et al*. v. St. Luke's Hospital, "Security Guard 'Freddy'", Security Guard</u>

14   <u>'Joe'", Security Guard 'Nate'" "Security Supervisor 'Unknown'", "Head of Hospital</u>

15   <u>Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla</u>

16   <u>Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"</u>

17   2596.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

18   or obligation recognized by the law, requiring the actor to conform to a certain standard

19   of conduct; (2) a failure to conform to the required standard; (3) a causal connection

20   between the conduct and the resulting injury; and (4) actual loss or damage resulting to

1    the interests of another.[201]

2    2597.  Negligence (1): A private medical provider actor placing security guards to watch

3    a mother, including during breastfeeding, has a duty to use security staff which identifies

4    with the female gender.

5    Negligence (2): Defendants St. Luke's Hospital, "Security Guard 'Freddy'", "Security

6    Guard 'Nate'" "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'",

7    Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman

8    & the "Hospital Leadership Team" failed to conform to the aforementioned duty when

9    the Defendants placed around the clock male security guards to observe Plaintiff Mrs.

10   Smith while she was in the NICU from when she was allowed to return to be with

11   Newborn baby J.A.S. until Plaintiffs Mr. Smith and Newborn baby J.A.S. were

12   discharged two days later.

13   2598.  Negligence (3): Defendants St. Luke's Hospital, "Security Guard 'Freddy'",

14   "Security Guard 'Joe'", "Security Guard 'Nate'" "Security Supervisor 'Unknown'", "Head

15   of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

16   Darla Frack, Ms. Dawn Hoffman & the "Hospital Leadership Team" actively and of their

17   own volition, placed male security guards around the clock at Plaintiff Newborn baby

18   J.A.S.'s NICU room whenever Plaintiff Mrs. Smith was present, and who routinely

19   followed Plaintiff Mrs. Smith to the bathroom down the hall.

---

[201]*See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933,

938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir.

1993).

2599.  Negligence (4): Mrs. Smith felt humiliated, embarrassed, helpless, and ashamed to have a male security guard constantly monitoring her including when she breastfed Plaintiff Newborn baby J.A.S.; such actions also prevented skin-to-skin contact with Newborn baby J.A.S. given the aforementioned emotions elicited by the presence of the male security guard; Plaintiff Mr. Smith felt humiliated, embarrassed, helpless, and ashamed to have a male security guard constantly monitoring his wife, including while she breastfed.

2600.  Defendants St. Luke's Hospital, "Security Guard 'Freddy'", "Security Guard 'Joe'", "Security Guard 'Nate'" "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman & the "Hospital Leadership Team's" conduct violated Plaintiffs' rights under Pennsylvania common law negligence.

2601.  Accordingly, and in connection with the alleged negligence of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Entities be required to adopt a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place, including that if a presence of security is deemed required by the private medical provider that such a presence must be an individual who identifies with the female gender.

2602.  Accordingly, and in connection with the alleged negligence of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Persons be required to attend and pass a rigorous a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its

1   natural parents, and the specific legal procedures to adhere to for such a separation to

2   take place, including that if a presence of security is deemed required by the private

3   medical provider that such a presence must be an individual who identifies with the

4   female gender.

5   2603.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

6   training course, then the Defendant Entities should create their own legal training

7   program which demonstrates appropriate circumstances under which a child should be

8   reasonably separated from its natural parents, and the specific legal procedures to

9   adhere to for such a separation to take place, including that if a presence of security is

10  deemed required by the private medical provider that such a presence must be an

11  individual who identifies with the female gender; and, before the created program is

12  implemented, the program must be approved by an appropriate court or federal agency

13  for review; and, the program must be implemented within 180 days of the valid

14  judgment of this honorable Court.

15  2604.  A Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

16  conduct, including but not limited to, emotional and psychological distress, pain and

17  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

18  appropriate compensatory damages to account for PTSD therapies and other related

19  treatments as they have been and will continue to be necessary; Plaintiffs respectfully

20  request an amount of $84,800 in compensatory damages per Defendant.

21  2605.  Given the substantial wealth of the Defendants St. Luke's Hospital, "Head of

22  Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

23  Darla Frack, Ms. Dawn Hoffman & the "Hospital Leadership Team", and therefore, their

1   ability to afford the appropriate training to avoid this egregious violation of the

2   Pennsylvania Common Law, and, since harm was actually caused to the current

3   Plaintiffs Smith Family, and since harm is likely to continue to harm future postpartum

4   families, and because the acts of the Defendants and their agents, assigns, or

5   employees callously disregarded the Plaintiff's rights in a reckless and wanton manner,

6   the Plaintiff respectfully requests the imposition of punitive damages on Defendants St.

7   Luke's Hospital, "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr.

8   Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman & the "Hospital Leadership

9   Team," to deter such Defendants from committing to such conduct in the future which

10  violates Commonwealth of Pennsylvania Common Law Plaintiffs respectfully request an

11  amount of $1,000,000 in punitive damages per Defendants "Security Guard 'Freddy'",

12  "Security Guard 'Joe'", and "Security Guard 'Nate'"; $5,000,000 per Defendants

13  "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve

14  Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the

15  "Hospital Leadership Team"; and $10,000,000 per Defendant St. Luke's Hospital.

16  2606.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

17  any actual injury despite the deprivation of their common law rights, the Plaintiffs

18  respectfully request a nominal judgment of $1.00.

19  # XVI.   <u>Negligence XIII</u>

20  <u>Mrs. Smith v. St. Luke's Hospital</u>

21  2607.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

22  or obligation recognized by the law, requiring the actor to conform to a certain standard

1   of conduct; (2) a failure to conform to the required standard; (3) a causal connection

2   between the conduct and the resulting injury; and (4) actual loss or damage resulting to

3   the interests of another.[202]

4   2608.  Negligence (1): A private medical provider actor has a duty to provide postpartum

5   mothers with a child in a NICU with reasonable accommodations for comfort, especially

6   if the postpartum mother has a disability that prevents the function of ambulating

7   normally.

8   2609.  Negligence (2): Defendant St. Luke's Hospital failed to conform to the

9   aforementioned duty when the Defendant failed to provide Plaintiff Mrs. Smith with a

10  place to sleep in the NICU; no bathroom in Newborn baby J.A.S.'s NICU pod, forcing

11  Plaintiff Mrs. Smith to use a bathroom approximately 70-80 ft. away (given injuries to the

12  vaginal region a postpartum mother use a restroom for more than just excretion of

13  waste); not a single handicap accessible door in all of the NICU which could be opened

14  by Plaintiff Mrs. Smith alone without the help of others while using a wheelchair; and no

15  privacy to check on postpartum functions within the NICU pod because of guard and

16  nurse intrusions as well as one glass panel acting as a wall, on the other side of which

17  sat the male security guards and typically one or more nurses.

---

[202] *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933,

938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir.

1993).

2610.  Negligence (3): Defendant St. Luke's Hospital actively and of their own volition, did not provide any reasonable accommodations for a postpartum mother attending to her newborn child in a NICU who had an obvious difficulty ambulating.

2611.  Negligence (4): Plaintiff Mrs. Smith suffered both mentally and physically from the lack of reasonable accommodations provided to Plaintiff Mrs. Smith, which are, but not limited to: additional knee pain than Mrs. Smith typically feels, pelvic pain, increased and prolonged vaginal bleeding, depression and general feeling of disgust from not being able to regularly tend to her own postpartum needs, back and leg pain, insomnia from not having place to lay down, fatigue, and body aches.

2612.  Plaintiff Mrs. Smith has a pre-existing knee injury which has required surgery in the past for which she wears an obviously recognizable knee brace whenever she walks; and, two of her three knee surgeries were performed at St. Luke's Hospital's facilities.

2613.  Defendant St. Luke's Hospital's conduct violated Plaintiffs' rights under Pennsylvania common law negligence.

2614.  Accordingly, and in connection with the alleged negligence of the Defendant parties, Plaintiff Mrs. Smith requests all Defendant Entities be required to adopt a third-party training program which demonstrates the appropriate circumstances reasonable accommodations should be offered to a postpartum mother, and what those reasonable accommodations should reasonably include.

2615.  Accordingly, and in connection with the alleged negligence of the Defendant parties, Plaintiff Mrs. Smith requests all Defendant Persons be required to attend and pass a rigorous a third-party training program which demonstrates the appropriate

1   circumstances reasonable accommodations should be offered to a postpartum mother,

2   and what those reasonable accommodations should reasonably include.

3   2616.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

4   training course, then the Defendant Entities should create their own legal training

5   program on when it is it is appropriate to offer reasonable accommodations to a

6   postpartum disabled mother and what the nature of those accommodations should

7   reasonably include; and, before the created program is implemented, the program must

8   be approved by an appropriate court or federal agency for review; and, the program

9   must be implemented within 180 days of the valid judgment of this honorable Court.

10   2617.  Plaintiff Mrs. Smith suffered substantial harm as a result of Defendants' conduct,

11   including but not limited to, emotional and psychological distress, pain and suffering,

12   fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate

13   compensatory damages to account for PTSD therapies and other related treatments as

14   they have been and will continue to be necessary; Plaintiff respectfully requests an

15   amount of $59,500 in compensatory damages per Defendant.

16   2618.  Given the substantial wealth of the Defendants St. Luke's Hospital, and

17   therefore, their ability to afford the appropriate training to avoid this egregious violation

18   of the Pennsylvania Common Law, and, since harm was actually caused to the current

19   Plaintiffs Smith Family, and since harm is likely to continue to harm future postpartum

20   mothers, and because the acts of the Defendant and their agents, assigns, or

21   employees callously disregarded the Plaintiff's rights in a reckless and wanton manner,

22   the Plaintiff respectfully requests the imposition of punitive damages on Defendant St.

23   Luke's Hospital to deter such Defendants from committing to such conduct in the future

1   which violates Commonwealth of Pennsylvania Common Law Plaintiffs respectfully

2   request an amount of $10,000,000 in punitive damages per Defendant St. Luke's

3   Hospital.

4   2619.  In the unlikely event that the jury does not find that Plaintiff Mrs. Smith suffered

5   any actual injury despite the deprivation of her common law rights, the Plaintiff

6   respectfully requests a nominal judgment of $1.00.

## XVII.    Negligence XIV

### Smith, et al. v. Monroe County, Ms. Adelaide W. Grace, Mr. Tim Shaw & Mr. Jorge
### Manteria

10  2620.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

11  or obligation recognized by the law, requiring the actor to conform to a certain standard

12  of conduct; (2) a failure to conform to the required standard; (3) a causal connection

13  between the conduct and the resulting injury; and (4) actual loss or damage resulting to

14  the interests of another.[203]

15  2621.  Negligence (1): A state actor investigating parents for illegal substance abuse

16  has a duty to only do so with a court order or with reasonable suspicion of drug abuse,

17  and, as well, has a duty not to reject and repudiate multiple sources of evidence

18  exculpating the parents suspected of substance abuse.

---

[203] See Rabutino v. Freedom State Realty Co., Inc., 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1366 (3d Cir. 1993).

2622.  Negligence (2): Defendants Monroe County through its Offices of Children and
Youth Services, and its agents, employees, or assigns, Ms. Adelaide W. Grace, Mr. Tim
Shaw, and Mr. Jorge Manteria failed to conform to the aforementioned duties when the
Defendants ignored critical facts which would have allowed them to immediately
surmise that Plaintiff Mrs. Smith did not consume illegal methamphetamine, including
but not limited to: (1) neither Plaintiff Mrs. Smith nor Plaintiff Newborn baby J.A.S.
tested positive for methamphetamine while at Defendant St. Luke's Hospital; (2) the
umbilical cord that connected Plaintiff Mrs. Smith to Plaintiff Newborn baby J.A.S. did
not test positive for methamphetamine; (3) neither Plaintiff Mrs. Smith nor Plaintiff
Newborn baby J.A.S. suffered any signs or symptoms of methamphetamine withdrawal;
(4) Monroe County CYS conducting their own urinary drug screen before Plaintiff Mrs.
Smith left the hospital which also tested negative for methamphetamine; (5) an
inspection of the home environment by Defendant Mr. Jorge Manteria who was satisfied
that the home was a safe place to bring a newborn baby; (6) Defendant Mr. Jorge
Manteria did not suspect that anyone in the Smith Family home consumed illegal
methamphetamine; (7) more than one home visit by Defendant Mr. Jorge Manteria who
verbally concluded time and again that the Smith Family home was a safe environment
for children; (8) access to Plaintiff Mrs. Smith's medical records which documented the
fact that Mrs. Smith was legally prescribed Vyvanse, an amphetamine that had been
approved by three independent doctors for use during her pregnancy; (9) that neither
Plaintiffs Mr. nor Mrs. Smith were individuals of any violent nature; (10) and ultimately
without reasonable suspicion of drug abuse by Plaintiffs Mr. or Mrs. Smith the
investigation into the Smith Family lasted week after week.

1  2623.  Negligence (3): Defendants Monroe County through its Offices of Children and

2  Youth Services, and its agents, employees, or assigns, Ms. Adelaide W. Grace, Mr. Tim

3  Shaw, and Mr. Jorge Manteria actively and of their own volition, continued to harass the

4  Smith Family through repeated home visits, multiple requests for drug tests, and by

5  invading the privacy, sanctity, and feelings of security within the household despite

6  copious amounts of evidence that neither Plaintiffs Mr. or Mrs. Smith presented a

7  danger to Plaintiff Newborn baby J.A.S. or any of their other children.

8  2624.  Negligence (4): Mr. and Mrs. Smith were investigated by the state agency

9  Monroe County Office of Children and Youth services costing unnecessary attorney's

10  fees for each home visit by Defendant Mr. Manteria, and mental anguish and anxiety

11  related to each home visit by Children and Youth Services which has manifested in

12  physical symptoms, as well as all fees and costs relating to present and future

13  psychological counseling for Plaintiffs Mr. and Mrs. Smith.

14  2625.  Defendants Monroe County through its Offices of Children and Youth Services,

15  and its agents, employees, or assigns, Ms. Adelaide W. Grace, Mr. Tim Shaw, and Mr.

16  Jorge Manteria's conduct violated Plaintiffs' rights under Pennsylvania common law

17  negligence.

18  2626.  Accordingly, and in connection with the alleged negligence of the Defendant

19  parties, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. request all Defendant

20  Monroe County Children and Youth Services be required to adopt a third-party training

21  program which demonstrates appropriate circumstances under which a child should be

22  reasonably separated from its natural parents, and the specific legal procedures to

23  adhere to for such a separation to take place, including when it is appropriate to

1  terminate an investigation, as well as the importance of not rejecting or repudiating

2  evidence that exculpates that accused and should lead to a case being closed much

3  sooner than is required by statute.

4  2627.  Accordingly, and in connection with the alleged negligence of the Defendant

5  parties, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. request all Defendant

6  Persons be required to attend and pass a rigorous a third-party training program which

7  demonstrates appropriate circumstances under which a child should be reasonably

8  separated from its natural parents, and the specific legal procedures to adhere to for

9  such a separation to take place, including when it is appropriate to terminate an

10  investigation, as well as not rejecting or repudiating evidence that exculpates that

11  accused and should lead to a case being closed much sooner than is required by

12  statute.

13  2628.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

14  training course, then the Defendant Entities should create their own legal training

15  program which demonstrates appropriate circumstances under which a child should be

16  reasonably separated from its natural parents, and the specific legal procedures to

17  adhere to for such a separation to take place, including when it is appropriate to

18  terminate an investigation, as well as not rejecting or repudiating evidence that

19  exculpates that accused and should lead to a case being closed much sooner than is

20  required by statute; and, before the created program is implemented, the program must

21  be approved by an appropriate court or federal agency for review; and, the program

22  must be implemented within 180 days of the valid judgment of this honorable Court.

1   2629.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

2   conduct, including but not limited to, emotional and psychological distress, pain and

3   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

4   appropriate compensatory damages to account for PTSD therapies and other related

5   treatments as they have been and will continue to be necessary; Plaintiffs respectfully

6   request an amount of $84,800 in compensatory damages per Defendant.

7   2630.  Defendant Monroe County through its employees, agents, or assigns, Ms.

8   Adelaide W. Grace, and Mr. Tim Shaw, had legal obligations to accurately enforce the

9   law, and, since harm was actually caused to the current Plaintiffs Smith Family, and

10  since harm is likely to continue to harm future postpartum mothers, and because the

11  acts of the Defendant and their agents, assigns, or employees callously disregarded the

12  Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the

13  imposition of punitive damages on Defendants Monroe County, Ms. Adelaide W. Grace,

14  and Mr. Tim Shaw to deter such Defendants from committing to such conduct in the

15  future which violates Commonwealth of Pennsylvania Common Law Plaintiffs

16  respectfully request an amount of $1,000,000 in punitive damages per Defendants Mr.

17  Tim Shaw, and Mr. Jorge Manteria; $5,000,000 per Defendant Ms. Adelaide W. Grace;

18  and $10,000,000 per Defendant Monroe County.

19  2631.  In the unlikely event that the jury does not find that Plaintiff Mrs. Smith suffered

20  any actual injury despite the deprivation of her common law rights, the Plaintiff

21  respectfully requests a nominal judgment of $1.00.

22                    **XVIII.    <u>Negligence XV</u>**

1   Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians

2        Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and

3    Gynecology Associates,  Monroe County, Northampton County, Ms. Adelaide

4      Grace, Mr. Tim Shaw, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr.

5       Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms.

6      Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe,

7     MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello,

8     DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates,

9     CRNP, Ms. Kimberly A. Nardis, CRNP, "Security Supervisor 'Unknown'", "Head of

10   Hospital Security 'Unknown', Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

11        Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

12   2632.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

13   or obligation recognized by the law, requiring the actor to conform to a certain standard

14   of conduct; (2) a failure to conform to the required standard; (3) a causal connection

15   between the conduct and the resulting injury; and (4) actual loss or damage resulting to

16   the interests of another.[204]

---

[204] *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933,

938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir.

1993).

1   2633.  Negligence (1): A private medical provider actor, as well as state actors

2   considering removing a newborn child from the custody of its parents have a duty to do

3   so only if actual and imminent harm will come to the child by allowing the child to be

4   cared for by its parents, and if no actual and imminent harm is present then all

5   Defendant parties had an affirmative duty to do their best to keep the family unit intact.

6   2634.  Negligence (2): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

7   Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics

8   and Gynecology Associates, Monroe County, Northampton County, Ms. Adelaide

9   Grace, Mr. Tim Shaw, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick

10  Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

11  Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

12  Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

13  Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A.

14  Nardis, CRNP, "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown',

15  Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

16  and the "Hospital Leadership Team," failed to conform to the aforementioned duty when

17  instead of affirmatively acting to keep the Plaintiff Smith Family unit intact where no

18  actual or imminent harm would come to their child due to their presence, the

19  Defendants did the inverse and either allowed or advocated for the separation of

20  Plaintiff Newborn baby J.A.S. from his parents.

21  2635.  Negligence (3): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

22  Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics

23  and Gynecology Associates, Monroe County, Northampton County, Ms. Adelaide

1    Grace, Mr. Tim Shaw, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick

2    Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

3    Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

4    Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

5    Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A.

6    Nardis, CRNP, "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown',

7    Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

8    the "Hospital Leadership Team," of which Defendants actively and of their own volition,

9    while others passively and of their own volition, contacted Northampton County CYS,

10   Monroe County CYS, and the Bethlehem Police Department in a concerted effort to

11   separate Plaintiff Newborn baby J.A.S. from his parents Plaintiffs Mr. and Mrs. Smith, by

12   not just rejecting, but repudiating the copious amount of evidence that Plaintiff Mrs.

13   Smith had not ever consumed methamphetamine, and that neither Plaintiffs Mr. nor

14   Mrs. Smith were of a violent character.

15   2636.  Negligence (4): Plaintiffs Mr. and Mrs. Smith were in fact, separated from Plaintiff

16   Newborn baby J.A.S. against their will and consent and were left without control over

17   the care of their son Plaintiff Newborn baby J.A.S., including the ability to breastfeed

18   Newborn baby J.A.S., have skin-to-skin contact with Newborn baby J.A.S., and consent

19   to Newborn baby J.A.S.'s medical treatment.

20   2637.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

21   Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and

22   Gynecology Associates, Monroe County, Northampton County, Ms. Adelaide Grace, Mr.

23   Tim Shaw, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO,

1    Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr.

2    Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms.

3    Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms.

4    Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP,

5    "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown', Mr. Steve

6    Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the

7    "Hospital Leadership Team's" conduct violated Plaintiffs' rights under Pennsylvania

8    common law negligence.

9    2638.  Accordingly, and in connection with the alleged negligence of the Defendant

10   parties, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. request all Defendant

11   Entities be required to adopt a third-party training program which demonstrates

12   appropriate circumstances under which a child should be reasonably separated from its

13   natural parents, and the specific legal procedures to adhere to for such a separation to

14   take place, including how to effectively invoke the affirmative duty to keep a family with

15   a newborn child together unless an actual and/or imminent threat exists to justify

16   separation, or as prescribed by law.

17   2639.  Accordingly, and in connection with the alleged negligence of the Defendant

18   parties, Plaintiffs Mr. and Mrs. Smith and newborn baby J.A.S. request all Defendant

19   Persons be required to attend and pass a rigorous a third-party training program which

20   demonstrates appropriate circumstances under which a child should be reasonably

21   separated from its natural parents, and the specific legal procedures to adhere to for

22   such a separation to take place, including how to effectively invoke the affirmative duty

1   to keep a family with a newborn child together unless an actual and/or imminent threat

2   exists to justify separation, or as prescribed by law.

3   2640.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

4   training course, then the Defendant Entities should create their own legal training

5   program which demonstrates appropriate circumstances under which a child should be

6   reasonably separated from its natural parents, and the specific legal procedures to

7   adhere to for such a separation to take place, including how to effectively invoke the

8   affirmative duty to keep a family with a newborn child together unless an actual and/or

9   imminent threat exists to justify separation, or as prescribed by law; and, before the

10   created program is implemented, the program must be approved by an appropriate

11   court or federal agency for review; and, the program must be implemented within 180

12   days of the valid judgment of this honorable Court.

13   2641.  A Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

14   conduct, including but not limited to, emotional and psychological distress, pain and

15   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

16   appropriate compensatory damages to account for PTSD therapies and other related

17   treatments as they have been and will continue to be necessary; Plaintiffs respectfully

18   request an amount of $84,800 in compensatory damages per Defendant.

19   2642.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

20   Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates

21   Group, St. Luke's Obstetrics and Gynecology Associates, Monroe County, Northampton

22   County, Ms. Adelaide Grace, Mr. Tim Shaw, Ms. Teresa Marlino, MD, Ms. Cynthia

23   Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD,

1    Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD,

2    Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr.

3    Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms.

4    Kimberly A. Nardis, CRNP, "Security Supervisor 'Unknown'", "Head of Hospital Security

5    'Unknown', Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

6    Dawn Hoffman, the "Hospital Leadership Team,", and therefore, their ability to afford the

7    appropriate training to avoid this egregious violation of the Pennsylvania Common Law,

8    and, since harm was actually caused to the current Plaintiffs Smith Family, and since

9    harm is likely to continue to harm future postpartum families, and because the acts of

10   the Defendants and their agents, assigns, or employees callously disregarded the

11   Plaintiff's rights in a reckless and wanton manner, the Plaintiff respectfully requests the

12   imposition of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal,

13   OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates Group, St.

14   Luke's Obstetrics and Gynecology Associates, Monroe County, Northampton County,

15   Ms. Adelaide Grace, Mr. Tim Shaw, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD,

16   Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

17   Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

18   Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

19   Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A.

20   Nardis, CRNP, "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown',

21   Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

22   the "Hospital Leadership Team,", to deter such Defendants from committing to such

23   conduct in the future which violates Commonwealth of Pennsylvania Common Law

1   Plaintiffs respectfully request an amount of $1,000,000 in punitive damages per

2   Defendants Mr. Tim Shaw, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms.

3   Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms.

4   Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert

5   I. Santiago, MD, Ms. Patricia Bates, CRNP, and Ms. Kimberly A. Nardis, CRNP;

6   $5,000,000 per Defendants St. Luke's Physicians Group, Bethlehem Neonatal

7   Associates Group, St. Luke's Obstetrics and Gynecology Associates, Ms. Adelaide

8   Grace, Mr. Patrick Philpot, DO, Ms. Chaminie Wheeler, DO, "Security Supervisor

9   'Unknown'", "Head of Hospital Security 'Unknown', Mr. Steve Lanshe, Esq., Mr. Robert

10  L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

11  Team"; and $10,000,000 per Defendants St. Luke's Hospital, Onsite Neonatal, OBHG

12  PA, Monroe County, Northampton County, Ms. Teresa Marlino, MD, and Ms. Cynthia

13  Shultz, MD.

14  2643.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

15  any actual injury despite the deprivation of their common law rights, the Plaintiffs

16  respectfully request a nominal judgment of $1.00.

17  # XIX.   Negligence XVI

18  Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians

19      Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and

20      Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr.

21      Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms.

22      Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe,

MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello,

DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates,

CRNP, & Ms. Kimberly A. Nardis, CRNP

2644.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

or obligation recognized by the law, requiring the actor to conform to a certain standard

of conduct; (2) a failure to conform to the required standard; (3) a causal connection

between the conduct and the resulting injury; and (4) actual loss or damage resulting to

the interests of another.[205]

2645.  Negligence (1): A private medical provider actor has a duty not to ignore the will

and consent of that child's parents concerning medical applications and procedures for

their child.

2646.  Negligence (2): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics

and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr.

Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, and Ms.

---

[205] *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933,

938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir.

1993).

1  Kimberly A. Nardis, CRNP, failed to conform to the aforementioned duty because when

2  Plaintiffs Mr. and Mrs. Smith withdrew consent for the treatment of newborn baby

3  J.A.S., the Defendants physically separated Plaintiffs Mr. and Mrs. Smith from Plaintiff

4  Newborn baby J.A.S. by having the Bethlehem Township Police eject Plaintiffs Mr. and

5  Mrs. Smith from Defendant St. Luke's Hospital's property without reasonable suspicion

6  of drug abuse by Plaintiff Mrs. Smith or a court order to separate Plaintiff Newborn baby

7  J.A.S. from his parents under threat of arrest for trespassing, and Defendants thereafter

8  medically treated Plaintiffs Newborn baby J.A.S. against the will and without the consent

9  of his parents, Plaintiffs Mr. & Mrs. Smith, who were denied any opportunity for a

10  second medical opinion.

11  2647.  Negligence (3): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

12  Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics

13  and Gynecology Associates, Ms.Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr.

14  Patrick Philpot, DO, Ms. DianneR. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

15  Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

16  Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

17  Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, and Ms.

18  Kimberly A. Nardis, CRNP actively and of their own volition, continued to perform tests,

19  treatments, and procedures on Plaintiff Newborn baby J.A.S. against the consent and

20  will of his parents.

21  2648.  Negligence (4): Plaintiffs Mr. and Mrs. Smith were in fact, separated from Plaintiff

22  Newborn baby J.A.S. against their will and consent and were left without consent or

23  control over the care of their son Newborn baby J.A.S., including the ability to

1   breastfeed Newborn baby J.A.S., have skin-to-skin contact with Newborn baby J.A.S.,

2   and consent to Newborn baby J.A.S.'s medical treatment.

3   2649. Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

4   Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and

5   Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick

6   Philpot, DO, Ms. DianneR. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

7   Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

8   Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

9   Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A.

10   Nardis, CRNP's conduct violated Plaintiffs' rights under Pennsylvania common law

11   negligence.

12   2650. Accordingly, and in connection with the alleged negligence of the Defendant

13   parties, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. request all Defendant

14   Entities be required to adopt a third-party training program which demonstrates

15   appropriate circumstances under which a child should be reasonably separated from its

16   natural parents, and the specific legal procedures to adhere to for such a separation to

17   take place, including when it is appropriate to relinquish a child to its birth parents and to

18   cease all medical treatments as the parents see fit.

19   2651. Accordingly, and in connection with the alleged negligence of the Defendant

20   parties, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. request all Defendant

21   Persons be required to attend and pass a rigorous a third-party training program which

22   demonstrates appropriate circumstances under which a child should be reasonably

23   separated from its natural parents, and the specific legal procedures to adhere to for

1 such a separation to take place, including when it is appropriate to relinquish a child to

2 its birth parents and to cease all medical treatments as the parents see fit.

3 2652.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

4 training course, then the Defendant Entities should create their own legal training

5 program which demonstrates appropriate circumstances under which a child should be

6 reasonably separated from its natural parents, and the specific legal procedures to

7 adhere to for such a separation to take place, including when it is appropriate to

8 relinquish a child to its birth parents and to cease all medical treatments as the parents

9 see fit; and, before the created program is implemented, the program must be approved

10 by an appropriate court or federal agency for review; and, the program must be

11 implemented within 180 days of the valid judgment of this honorable Court.

12 2653.  Accordingly, and in connection with the alleged negligence of the Defendant

13 parties, Plaintiffs Mr. and Mrs. Smith and newborn baby J.A.S. request all appropriate

14 monetary relief, compensatory and punitive, as the Court sees fit.

15 2654.  A Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

16 conduct, including but not limited to, emotional and psychological distress, pain and

17 suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

18 appropriate compensatory damages to account for PTSD therapies and other related

19 treatments as they have been and will continue to be necessary; Plaintiffs respectfully

20 request an amount of $84,800 in compensatory damages per Defendant.

21 2655.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

22 Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates

23 Group, St. Luke's Obstetrics and Gynecology Associates, Monroe County, Northampton

1   County, Ms. Adelaide Grace, Mr. Tim Shaw, Ms. Teresa Marlino, MD, Ms. Cynthia

2   Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD,

3   Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD,

4   Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr.

5   Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms.

6   Kimberly A. Nardis, CRNP, "Security Supervisor 'Unknown'", "Head of Hospital Security

7   'Unknown', Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

8   Dawn Hoffman, the "Hospital Leadership Team,", and therefore, their ability to afford the

9   appropriate training to avoid this egregious violation of the Pennsylvania Common Law,

10  and, since harm was actually caused to the current Plaintiffs Smith Family, and since

11  harm is likely to continue to harm future postpartum families, and because the acts of

12  the Defendants and their agents, assigns, or employees callously disregarded the

13  Plaintiff's rights in a reckless and wanton manner, the Plaintiff respectfully requests the

14  imposition of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal,

15  OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates Group, St.

16  Luke's Obstetrics and Gynecology Associates, Monroe County, Northampton County,

17  Ms. Adelaide Grace, Mr. Tim Shaw, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD,

18  Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

19  Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

20  Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

21  Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A.

22  Nardis, CRNP, "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown',

23  Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

1   the "Hospital Leadership Team,", to deter such Defendants from committing to such

2   conduct in the future which violates Commonwealth of Pennsylvania Common Law

3   Plaintiffs respectfully request an amount of $1,000,000 in punitive damages per

4   Defendants Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

5   Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

6   Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

7   Santiago, MD, Ms. Patricia Bates, CRNP, and Ms. Kimberly A. Nardis, CRNP;

8   $5,000,000 per Defendants St. Luke's Physicians Group, Bethlehem Neonatal

9   Associates Group, St. Luke's Obstetrics and Gynecology Associates, Mr. Patrick

10   Philpot, DO, and Ms. Chaminie Wheeler, DO; and $10,000,000 per Defendants St.

11   Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, and Ms. Cynthia

12   Shultz, MD.

13   2656.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

14   any actual injury despite the deprivation of their common law rights, the Plaintiffs

15   respectfully request a nominal judgment of $1.00.

# XX.  <u>Negligence XVII</u>

<u>Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, & Ms. Teresa</u>

<u>Marlino, MD</u>

19   2657.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

20   or obligation recognized by the law, requiring the actor to conform to a certain standard

21   of conduct; (2) a failure to conform to the required standard; (3) a causal connection

22   between the conduct and the resulting injury; and (4) actual loss or damage resulting to

1  the interests of another.[206]

2  2658.  Negligence (1): A private medical provider actor accusing a mother of illegal

3  methamphetamine use has a duty to only do so with a court order or with reasonable

4  suspicion of drug abuse on the part of the mother, including signs and symptoms of

5  methamphetamine withdrawal in the newborn baby and the mother, and a drug test with

6  positive and distinguishable results for methamphetamine alone.

7  2659.  Negligence (2): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, &

8  Ms. Teresa Marlino, MD, in her effort to separate Plaintiff Newborn baby J.A.S. from his

9  parents failed to conform to the aforementioned duty when, without a court order, any

10  reasonable suspicion of methamphetamine use by Plaintiff Mrs. Smith, nor a drug test

11  with positive and distinguishable results for methamphetamine alone, unequivocally

12  accused Plaintiff Mrs. Smith of ingesting illegal methamphetamine.

13  2660.  Negligence (3): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, &

14  Ms. Teresa Marlino, MD, actively and of her own volition, accused Plaintiff Mrs. Smith of

15  methamphetamine ingestion, and implied that the deleterious effects of

16  methamphetamine ingestion by Plaintiff Mrs. Smith were passed on to Plaintiff Newborn

17  baby J.A.S. in an effort to separate Plaintiff Newborn baby J.A.S. from his parents

18  Plaintiffs Mr. and Mrs. Smith.

---

[206]*See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933,

938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir.

1993).

2661.  Negligence (4): Plaintiffs Mr. and Mrs. Smith were in fact, separated from Plaintiff Newborn baby J.A.S. against their will and consent and were left without control over the care of their Plaintiff Newborn baby J.A.S., including the ability to breastfeed Newborn baby J.A.S., have skin-to-skin contact with Newborn baby J.A.S., and consent to Newborn baby J.A.S.'s medical treatment.

2662.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, & Ms. Teresa Marlino, MD's conduct violated Plaintiffs' rights under Pennsylvania common law negligence.

2663.  Accordingly, and in connection with the alleged negligence of the Defendant parties, Plaintiffs Mr. and Mrs. Smith and newborn baby J.A.S. request all Defendant Entities be required to adopt a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place, including only accusing a mother of illegal methamphetamine use with a court order, signs and symptoms of methamphetamine withdrawal in both the mother and the newborn child, and a drug test with positive and distinguishable results for methamphetamine alone.

2664.  Accordingly, and in connection with the alleged negligence of the Defendant parties, Plaintiffs Mr. and Mrs. Smith and newborn baby J.A.S. request all Defendant Persons be required to attend and pass a rigorous a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place, including only accusing a mother of illegal

1   methamphetamine use with a court order, signs and symptoms of methamphetamine

2   withdrawal in both the mother and the newborn child, and a drug test with positive and

3   distinguishable results for methamphetamine alone.

4   2665.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

5   training course, then the Defendant Entities should create their own legal training

6   program which demonstrates appropriate circumstances under which a child should be

7   reasonably separated from its natural parents, and the specific legal procedures to

8   adhere to for such a separation to take place, including only accusing a mother of illegal

9   methamphetamine use with a court order, signs and symptoms of methamphetamine

10   withdrawal in both the mother and the newborn child, and a drug test with positive and

11   distinguishable results for methamphetamine alone; and, before the created program is

12   implemented, the program must be approved by an appropriate court or federal agency

13   for review; and, the program must be implemented within 180 days of the valid

14   judgment of this honorable Court.

15   2666.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

16   conduct, including but not limited to, emotional and psychological distress, pain and

17   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

18   appropriate compensatory damages to account for PTSD therapies and other related

19   treatments as they have been and will continue to be necessary; Plaintiffs respectfully

20   request an amount of $84,800 in compensatory damages per Defendant.

21   2667.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

22   Neonatal, OBHG PA, & Ms. Teresa Marlino, MD, and therefore, their ability to afford the

23   appropriate training to avoid this egregious violation of the Pennsylvania Common Law,

1   and, since harm was actually caused to the current Plaintiffs Smith Family, and since

2   harm is likely to continue to harm future postpartum families, and because the acts of

3   the Defendants and their agents, assigns, or employees callously disregarded the

4   Plaintiff's rights in a reckless and wanton manner, the Plaintiff respectfully requests the

5   imposition of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal,

6   OBHG PA, & Ms. Teresa Marlino, MD, to deter such Defendants from committing to

7   such conduct in the future which violates Commonwealth of Pennsylvania Common Law

8   Plaintiffs respectfully request an amount of $10,000,000 in punitive damages per

9   Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, and Ms. Teresa Marlino,

10  MD.

11  2668.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

12  any actual injury despite the deprivation of their common law rights, the Plaintiffs

13  respectfully request a nominal judgment of $1.00.

14  # XXI.   <u>Negligence XVIII</u>

15  <u>Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians</u>

16  <u>Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and</u>

17  <u>Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr.</u>

18  <u>Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms.</u>

19  <u>Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe,</u>

20  <u>MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello,</u>

1   DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates,

2   CRNP, & Ms. Kimberly A. Nardis, CRNP

3   2669.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

4   or obligation recognized by the law, requiring the actor to conform to a certain standard

5   of conduct; (2) a failure to conform to the required standard; (3) a causal connection

6   between the conduct and the resulting injury; and (4) actual loss or damage resulting to

7   the interests of another.[207]

8   2670.  Negligence (1): A private medical provider actor treating a newborn baby has a

9   duty not to give that child antibiotics that they do not require, especially if those

10  antibiotics could lead to life threatening conditions in the newborn.

11  2671.  Negligence (2): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

12  Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics

13  and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr.

14  Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

15  Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

16  Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

17  Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, and Ms.

18  Kimberly A. Nardis, CRNP, failed to conform to the aforementioned duty when the

---

[207] *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933,

938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir.

1993).

1   Defendants administered antibiotics against the consent and will of Plaintiffs Mr. and

2   Mrs. Smith, and in doing so caused Plaintiff Newborn baby J.A.S. to suffer the life-

3   threatening condition of pyloric stenosis.

4   2672.  Negligence (3): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

5   Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics

6   and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr.

7   Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

8   Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

9   Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

10  Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, and Ms.

11  Kimberly A. Nardis, CRNP, actively and of their own volition, gave without valid cause a

12  copious amount of antibiotics to Plaintiff Newborn baby J.A.S. in his first few days of life,

13  which, upon information and belief, later caused the life-threatening condition of pyloric

14  stenosis wherein Plaintiff Newborn baby J.A.S. could not process any food or liquid from

15  his stomach into his intestines, causing Plaintiff Newborn baby J.A.S. to vomit

16  copiously, lose weight, and steadily dehydrate to near death.

17  2673.  Negligence (4): Newborn baby J.A.S. did in fact suffer severe dehydration

18  stemming from his inability to maintain fluids, leading to his eventual hospitalization and

19  surgery at Lehigh Valley Medical Center to correct the pyloric stenosis.

20  2674.  Defendant's St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

21  Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and

22  Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick

23  Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

1    Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

2    Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

3    Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, and Ms.

4    Kimberly A. Nardis, CRNP's conduct violated Plaintiffs' rights under Pennsylvania

5    common law negligence.

6    2675.  Accordingly, and in connection with the alleged negligence of the Defendant

7    parties, Plaintiffs Mr. and Mrs. Smith and newborn baby J.A.S. request all Defendant

8    Entities be required to adopt a third-party training program which demonstrates

9    appropriate circumstances under which a child should be reasonably separated from its

10   natural parents, and the specific legal procedures to adhere to for such a separation to

11   take place, and that under no circumstances should any child receive any medication,

12   antibiotic, or treatment of any sort whatsoever, unless absolutely necessary to maintain

13   that child from actually falling into a life-threatening condition, and not to maintain a

14   narrative based on some hypothetical possibility that in reality is highly improbable.

15   2676.  Accordingly, and in connection with the alleged negligence of the Defendant

16   parties, Plaintiffs Mr. and Mrs. Smith and newborn baby J.A.S. request all Defendant

17   Persons be required to attend and pass a rigorous a third-party training program which

18   demonstrates appropriate circumstances under which a child should be reasonably

19   separated from its natural parents, and the specific legal procedures to adhere to for

20   such a separation to take place, and that under no circumstances should any child

21   receive any medication, antibiotic, or treatment of any sort whatsoever, unless

22   absolutely necessary to maintain that child from actually falling into a life-threatening

1  condition, and not to maintain a narrative based on some hypothetical possibility that is

2  in reality highly improbable.

3  2677.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

4  training course, then the Defendant Entities should create their own legal training

5  program which demonstrates appropriate circumstances under which a child should be

6  reasonably separated from its natural parents, and the specific legal procedures to

7  adhere to for such a separation to take place, and that under no circumstances should

8  any child receive any medication, antibiotic, or treatment of any sort whatsoever, unless

9  absolutely necessary to maintain that child from actually falling into a life-threatening

10  condition, and not to maintain a narrative based on some hypothetical possibility that is

11  in reality highly improbable; and, before the created program is implemented, the

12  program must be approved by an appropriate court or federal agency for review; and,

13  the program must be implemented within 180 days of the valid judgment of this

14  honorable Court.

15  2678.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

16  conduct, including but not limited to, emotional and psychological distress, pain and

17  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

18  appropriate compensatory damages to account for PTSD therapies and other related

19  treatments as they have been and will continue to be necessary; Plaintiffs respectfully

20  request an amount of $84,800 in compensatory damages per Defendant.

21  2679.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

22  Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates

23  Group, St. Luke's Obstetrics and Gynecology Associates, Ms. Teresa Marlino, MD, Ms.

1    Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N.

2    Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah

3    Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A.

4    Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia

5    Bates, CRNP, and Ms. Kimberly A. Nardis, CRNP, and therefore, their ability to afford

6    the appropriate training to avoid this egregious violation of the Pennsylvania Common

7    Law, and, since harm was actually caused to the current Plaintiffs Smith Family, and

8    since harm is likely to continue to harm future postpartum families, and because the

9    acts of the Defendants and their agents, assigns, or employees callously disregarded

10   the Plaintiff's rights in a reckless and wanton manner, the Plaintiff respectfully requests

11   the imposition of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal,

12   OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates Group, St.

13   Luke's Obstetrics and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia

14   Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD,

15   Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD,

16   Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr.

17   Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, and Ms.

18   Kimberly A. Nardis, CRNP, to deter such Defendants from committing to such conduct

19   in the future which violates Commonwealth of Pennsylvania Common Law Plaintiffs

20   respectfully request an amount of $3,000,000 in punitive damages per Defendants Ms.

21   Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr.

22   Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms.

23   Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms.

Patricia Bates, CRNP, and Ms. Kimberly A. Nardis, CRNP; $15,000,000 per Defedants

St. Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's

Obstetrics and Gynecology Associates, Mr. Patrick Philpot, DO, and Ms. Chaminie

Wheeler, DO; and $30,000,000 per Defendants St. Luke's Hospital, Onsite Neonatal,

OBHG PA, Ms. Teresa Marlino, MD, and Ms. Cynthia Shultz, MD.

2680.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

any actual injury despite the deprivation of their common law rights, the Plaintiffs

respectfully request a nominal judgment of $1.00.

## XXII.    Negligent Inflication of Emotional Distress I

### Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

2681.  Under Pennsylvania tort law, determination of negligent inflication of emotional

distress liability depends on "whether the emotional injuries sustained by the plaintiff

were reasonably foreseeable to the defendant."[208]

2682.  Pennsylvania recognizes that a plaintiff has to among other options, in order to

sustain an NIED claim, have "a contemporaneous perception of tortuous injury to a

close relative".[209]

---

[208]*Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672, 684 (1979).
[209]*Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

2683.  An NIED claim can be supported in cases when "the defendant assumes a duty by contract, or otherwise when the duty encompasses the plaintiff's emotional well-being." *Toney*, 36 A.3d at 92.

2684.  As well, "special relationships must encompass an implied duty to care for the plaintiff's emotional well- being." *Toney*, 36 A.3d at 95.

2685.  In *The Law of Torts*, Professor Dobbs explained that caring for the emotional well-being of the plaintiff is a "duty to take care for the feelings of," e.g., the mother of a stillborn child. (Citing *The Law of Torts*, § 29.15 (2000)).[210]

2686.  The relationship between the Defendants and Plaintiff Mrs. Smith must be of a "intensely emotionally charged" sort for a court to recognize a pertinent "special relationship" giving rise not to negligently inflict emotional distress. *Id* at 20-21.

2687.  Plaintiff must demonstrate "compensable emotional harm" which is harm of a type that a reasonable is not person expected to bear. *Toney*, 36 A.3d at 95.

2688.  The Plaintiff will have to demonstrate physical manifestations of emotional distress.[211]

2689.  In addition to proving elements of a valid NIED claim, the Plaintiff will first have to establish the traditional elements of a negligence claim. *Id.*

2690.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the required standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to

---

[210]*MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 at 20 (W.D. Pa. 2019).

[211]*Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

1   the interests of another.[212]

2   2691.  Negligence (1): A private medical provider actor removing a newborn child from

3   the custody of its parents has a duty to only do so with a court order or with reasonable

4   suspicion of drug abuse on the part of the mother.

5   2692.  Negligence (2): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, &

6   Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert

7   L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

8   Team", failed to conform to the aforementioned duty when the Defendants removed

9   Plaintiffs Mr. and Mrs. Smith from Plaintiff Newborn baby J.A.S. by ejecting Plaintiffs Mr.

10  and Mrs. Smith from Defendant St. Luke's  Hospital property without reasonable

11  suspicion of drug abuse by Plaintiff Mrs. Smith or a court order to separate Plaintiff

12  Newborn baby J.A.S. from his parents.

13  2693.  Negligence (3): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, &

14  Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert

15  L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

16  actively and of their own volition, contacted Northampton County CYS, Monroe County

17  CYS, and the Bethlehem Police Department in a concerted effort to separate Plaintiff

18  Newborn baby J.A.S. from his parents Plaintiffs Mr. and Mrs. Smith.

---

[212]*See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1   2694.  Negligence (4): Plaintiffs Mr. and Mrs. Smith were in fact, separated from Plaintiff

2   Newborn baby J.A.S. against their will and consent and were left without control over

3   the care of their son Newborn baby J.A.S., including the ability to breastfeed Newborn

4   baby J.A.S., have skin-to-skin contact with Newborn baby J.A.S., and consent to

5   Newborn baby J.A.S.'s medical treatment.

6   2695.  Ejecting parents from hospital property against their will and consent under threat

7   of arrest in order to separate them from their newborn baby who was in neonatal

8   intensive care was sure to cause emotional injuries to the Plaintiffs that were reasonably

9   foreseeable to the Defendants.

10   2696.  Plaintiffs Mr. and Mrs. Smith perceived "a contemporaneous perception of

11   tortuous injury to a close relative" because they knew that if they were removed from the

12   hospital grounds that Plaintiff Newborn baby J.A.S. would undergo treatments and

13   medical services not consented to, as well, it was clear that Plaintiff Mrs. Smith would

14   not be able to breastfeed Plaintiff Newborn baby J.A.S., nor would skin-to-skin contact

15   be possible between Plaintiffs Mr. or Mrs. Smith and Newborn baby J.A.S.

16   2697.  As medical providers the Defendants had a special relationship with the mother

17   and father of a child in neonatal intensive care to take care of the feelings of that mother

18   and father.

19   2698.  Any situation in which parents are being separated from their newborn baby

20   against the parents' will and consent is of the "intensely emotionally charged" sort that

21   gives rise to a duty to not negligently inflict emotional distress.

22   2699.  In the instant case, Plaintiffs Mr. and Mrs. Smith are closely related to Plaintiff

23   Newborn baby J.A.S. who is their child who was in neonatal intensive care at the time of

his removal from his parents against their will and consent, and without cause, shortly after his birth by the Defendants and their agents, employees, or assigns, which was an "intensely emotionally charged" situation.

2700.  Plaintiffs Mr. and Mrs. Smith being removed against their will and consent from Defendant St. Luke's Hospital property without cause created the type of compensable harm that is worthy of relief because the harm inflicted on Plaintiffs Mr. and Mrs. Smith was of the type that a reasonable person is not expected to bear.

2701.  Defendant's St. Luke's Hospital, Onsite Neonatal, OBHG PA, & Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team's" conduct violated Plaintiffs' rights under Pennsylvania common law negligent infliction of emotional distress.

2702.  Plaintiff Mrs. Smith has suffered the following physical manifestations of emotional distress to the Defendant's alleged negligence: nightmares, night sweats, excessive diarrhea, anxiety and panic attacks, separation anxiety from Newborn baby J.A.S., insomnia, depression, PTSD symptoms including staring into space while reliving the incident, muscle tightness and back spasms, and body tremors.

2703.  Plaintiff Mr. Smith has suffered the following physical manifestations of emotional distress due to the Defendant's alleged negligence: intense headaches, depression, stomach upset and nausea, excessive acid reflux, vomiting, symptoms of PTSD including staring into space reliving the incident, fatigue, insomnia, excessive sweating, loss of appetite, and excessive dry skin sometimes forming open sores on his scalp and face.

1   2704.  Accordingly, and in connection with the alleged negligent infliction of emotional

2   distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

3   Entities be required to adopt a third-party training program which demonstrates

4   appropriate circumstances under which a child should be reasonably separated from its

5   natural parents, and the specific legal procedures to adhere to for such a separation to

6   take place.

7   2705.  Accordingly, and in connection with the alleged negligent infliction of emotional

8   distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

9   Persons be required to attend and pass a rigorous a third-party training program which

10  demonstrates appropriate circumstances under which a child should be reasonably

11  separated from its natural parents, and the specific legal procedures to adhere to for

12  such a separation to take place.

13  2706.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

14  training course, then the Defendant Entities should create their own legal training

15  program which demonstrates appropriate circumstances under which a child should be

16  reasonably separated from its natural parents, and the specific legal procedures to

17  adhere to for such a separation to take place; and, before the created program is

18  implemented, the program must be approved by an appropriate court or federal agency

19  for review; and, the program must be implemented within 180 days of the valid

20  judgment of this honorable Court.

21  2707.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

22  conduct, including but not limited to, emotional and psychological distress, pain and

23  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

1  appropriate compensatory damages to account for PTSD therapies and other related

2  treatments as they have been and will continue to be necessary; Plaintiffs respectfully

3  request an amount of $84,800 in compensatory damages per Defendant.

4  2708.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

5  Neonatal, OBHG PA, & Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve

6  Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the

7  "Hospital Leadership Team", and therefore, their ability to afford the appropriate training

8  to avoid this egregious violation of the Pennsylvania Common Law, and, since harm

9  was actually caused to the current Plaintiff Smith Family, and since harm is likely to

10  continue to harm future postpartum families, and because the acts of the Defendants

11  and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a

12  reckless and wanton manner, the Plaintiff respectfully requests the imposition of

13  punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, &

14  Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert

15  L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

16  Team", to deter such Defendants from committing to such conduct in the future which

17  violates Commonwealth of Pennsylvania Common Law Plaintiffs respectfully request an

18  amount of $5,000,000 in punitive damages per Defendants Mr. Steve Lanshe, Esq., Mr.

19  Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

20  Team"; and $10,000,000 per Defendants St. Luke's Hospital, Onsite Neonatal, OBHG

21  PA, Ms. Teresa Marlino, MD, and Ms. Cynthia Shultz, MD.

2709.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered any actual injury despite the deprivation of their common law rights, the Plaintiffs respectfully request a nominal judgment of $1.00.

# XXIII.   Negligent Infliction of Emotional Distress II

### Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

2710.  Under Pennsylvania tort law, determination of negligent infliction of emotional distress liability depends on "whether the emotional injuries sustained by the plaintiff were reasonably foreseeable to the defendant."[213]

2711.  Pennsylvania recognizes that a plaintiff has to among other options, in order to sustain an NIED claim, have "a contemporaneous perception of tortuous injury to a close relative".[214]

2712.  An NIED claim can be supported in cases when "the  defendant assumes a duty by contract, or otherwise when the duty encompasses the plaintiff's emotional well-being." *Toney*, 36 A.3d at 92.

2713.  As well, "special relationships must encompass an implied duty to care for the plaintiff's emotional well- being." *Toney*, 36 A.3d at 95.

2714.  In *The Law of Torts*, Professor Dobbs explained that caring for the emotional

---

[213] *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672, 684 (1979).
[214] *Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

well-being of the plaintiff is a "duty to take care for the feelings of," e.g., the mother of a stillborn child. (Citing *The Law of Torts*, § 29.15 (2000)).[215]

2715.  The relationship between the Defendants and Plaintiff Mrs. Smith must be of a "intensely emotionally charged" sort for a court to recognize a pertinent "special relationship" giving rise not to negligently inflict emotional distress.  *Id* at 20-21.

2716.  Plaintiff must demonstrate "compensable emotional harm" which is harm of a type that a reasonable is not person expected to bear. *Toney*, 36 A.3d at 95.

2717.  The Plaintiff will have to demonstrate physical manifestations of emotional distress.[216]

2718.  In addition to proving elements of a valid NIED claim, the Plaintiff will first have to establish the traditional elements of a negligence claim. *Id.*

2719.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the required standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another.[217]

---

[215] *MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 at 20 (W.D. Pa. 2019).

[216] *Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

[217] *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1   2720.  Negligence (1): A private medical provider actor has a duty not to accuse a

2   mother of being a child abuser from the results of inconclusive urine drug screening

3   alone, and if such allegations are eventually to be levied, they must be done in light of

4   signs and symptoms of methamphetamine withdrawal from the newborn baby child.

5   2721.  Negligence (2): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

6   Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.

7   Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team",

8   failed to conform to the aforementioned duty when the Defendants accused Plaintiffs

9   Mrs. Smith and Newborn baby J.A.S. of having methamphetamine in their bodies

10   without any signs or symptoms of methamphetamine withdrawal.

11   2722.  Negligence (3): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

12   Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.

13   Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

14   actively and of their own volition, began asserting without cause that Mrs. Smith

15   ingested methamphetamine aloud to staff and employees (in both private and common

16   areas of the hospital), written in medical records, to police officers, and to children and

17   youth offices, and they did so without observing any signs or symptoms of

18   methamphetamine withdrawal in Newborn baby J.A.S. or Plaintiff Mrs. Smith, thereby

19   creating an atmosphere so hostile to the Plaintiff Smith Family that they were eventually

20   ejected from Defendant St. Luke's Hospital's property against their will and consent

21   under threat of arrest.

22   2723.  Negligence (4): Plaintiffs Mr. and Mrs. Smith were in fact, separated from

23   Newborn baby J.A.S. against their will and consent and were left without control over

1   the care of their son Newborn baby J.A.S., including the ability to breastfeed Newborn

2   baby J.A.S., have skin-to-skin contact with Newborn baby J.A.S., and consent to

3   Newborn baby J.A.S.'s medical treatment.

4   2724.  Sole reliance on an undifferentiated drug test for stimulants, which included legal

5   amphetamines and illegal methamphetamines without distinction; and repudiation of the

6   fact that neither Plaintiff Mrs. Smith nor Newborn baby J.A.S. demonstrated any signs or

7   symptoms of methamphetamine withdrawal, in a concerted effort to eject parents

8   against their will and consent from hospital property under threat of arrest in order to

9   separate the parents from their newborn baby who was in neonatal intensive care was

10  sure to cause emotional injuries to the Plaintiffs that were reasonably foreseeable to the

11  Defendants.

12  2725.  Plaintiffs Mr. and Mrs. Smith perceived "a contemporaneous perception of

13  tortuous injury to a close relative" because they knew that if they were removed from the

14  hospital grounds that Newborn baby J.A.S. would undergo treatments and medical

15  services not consented to, as well, it was clear that Plaintiff Mrs. Smith would not be

16  able to breastfeed Newborn baby J.A.S., nor would skin-to-skin contact be possible

17  between Mr. or Mrs. Smith and Newborn baby J.A.S.

18  2726.  As medical providers the Defendants had a special relationship with the mother

19  and father of a child in neonatal intensive care to take care of the feelings of that mother

20  and father.

21  2727.  Any situation in which parents are being separated from their newborn baby

22  against the parents' will and consent is of the "intensely emotionally charged" sort that

23  gives rise to a duty to not negligently inflict emotional distress.

2728.  In the instant case, Plaintiffs Mr. and Mrs. Smith are closely related to Newborn baby J.A.S. who is their child who was in neonatal intensive care at the time of his removal from his parents against their will and consent, without cause shortly after birth by the Defendants and their agents, employees, or assigns, which was an "intensely emotionally charged" situation.

2729.  Plaintiffs Mr. and Mrs. Smith being removed against their will and consent from Defendant St. Luke's Hospital property without cause created the type of compensable harm that is worthy of relief because the harm inflicted on Plaintiffs Mr. and Mrs. Smith was of the type that a reasonable person is not expected to bear.

2730.  Defendant's St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team's" conduct violated Plaintiffs' rights under Pennsylvania common law negligent infliction of emotional distress.

2731.  Plaintiff Mrs. Smith has suffered the following physical manifestations of emotional distress to the Defendant's alleged negligence: nightmares, night sweats, excessive diarrhea, anxiety and panic attacks, separation anxiety from newborn baby J.A.S., insomnia, depression, PTSD symptoms including staring into space while reliving the incident, muscle tightness and back spasms, and body tremors.

2732.  Plaintiff Mr. Smith has suffered the following physical manifestations of emotional distress due to the Defendant's alleged negligence: intense headaches, depression, stomach upset and nausea, excessive acid reflux, vomiting, symptoms of PTSD including staring into space reliving the incident, fatigue, insomnia, excessive sweating,

1   loss of appetite, excessive dry skin sometimes forming open sores on his scalp and

2   face.

3   2733.  Accordingly, and in connection with the alleged negligence of the Defendant

4   parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Entities be required to adopt

5   a third-party training program which demonstrates appropriate circumstances under

6   which a child should be reasonably separated from its natural parents, and the specific

7   legal procedures to adhere to for such a separation to take place, including what the

8   signs and symptoms of methamphetamine withdrawal are, and when and how to

9   appropriately attest to them in patient records, and to only separate a newborn child

10  from its parents if signs and symptoms of methamphetamine withdrawal are present.

11  2734.  Accordingly, and in connection with the alleged negligence of the Defendant

12  parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Persons be required to

13  attend and pass a rigorous a third-party training program which demonstrates

14  appropriate circumstances under which a child should be reasonably separated from its

15  natural parents, and the specific legal procedures to adhere to for such a separation to

16  take place, including what the signs and symptoms of methamphetamine withdrawal

17  are, and when and how to appropriately attest to them in patient records, and to only

18  separate a newborn child from its parents if signs and symptoms of methamphetamine

19  withdrawal are present.

20  2735.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

21  training course, then the Defendant Entities should create their own legal training

22  program which demonstrates appropriate circumstances under which a child should be

23  reasonably separated from its natural parents, and the specific legal procedures to

1   adhere to for such a separation to take place, including what the signs and symptoms of

2   methamphetamine withdrawal are, and when and how to appropriately attest to them in

3   patient records, and to only separate a newborn child from its parents if signs and

4   symptoms of methamphetamine withdrawal are present; and, before the created

5   program is implemented, the program must be approved by an appropriate court or

6   federal agency for review; and, the program must be implemented within 180 days of

7   the valid judgment of this honorable Court.

8   2736.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

9   conduct, including but not limited to, emotional and psychological distress, pain and

10  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

11  appropriate compensatory damages to account for PTSD therapies and other related

12  treatments as they have been and will continue to be necessary; Plaintiffs respectfully

13  request an amount of $84,800 in compensatory damages per Defendant.

14  2737.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

15  Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve

16  Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the

17  "Hospital Leadership Team", and therefore, their ability to afford the appropriate training

18  to avoid this egregious violation of the Pennsylvania Common Law, and, since harm

19  was actually caused to the current Plaintiff Smith Family, and since harm is likely to

20  continue to harm future postpartum families, and because the acts of the Defendants

21  and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a

22  reckless and wanton manner, the Plaintiff respectfully requests the imposition of

23  punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

1    Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.

2    Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team",

3    to deter such Defendants from committing to such conduct in the future which violates

4    Commonwealth of Pennsylvania Common Law Plaintiffs respectfully request an amount

5    of $5,000,000 in punitive damages per Defendants Mr. Steve Lanshe, Esq., Mr. Robert

6    L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

7    Team"; and $10,000,000 per Defendants St. Luke's Hospital, Onsite Neonatal, OBHG

8    PA, Ms. Teresa Marlino, MD, and Ms. Cynthia Shultz, MD.

9    2738.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

10   any actual injury despite the deprivation of their common law rights, the Plaintiffs

11   respectfully request a nominal judgment of $1.00.

## XXIV.    Negligent Infliction of Emotional Distress III

### Smith, et al. v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

### MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

### Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

16   2739.  Under Pennsylvania tort law, determination of negligent infliction of emotional

17   distress liability depends on "whether the emotional injuries sustained by the plaintiff

18   were reasonably foreseeable to the defendant."[218]

---

[218] *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672, 684 (1979).

1    2740.  Pennsylvania recognizes that a plaintiff has to among other options, in order to

2    sustain an NIED claim, have "a contemporaneous perception of tortuous injury to a

3    close relative".[219]

4    2741.  An NIED claim can be supported in cases when "the defendant assumes a duty

5    by contract, or otherwise when the duty encompasses the plaintiff's emotional well-

6    being." *Toney*, 36 A.3d at 92.

7    2742.  As well, "special relationships must encompass an implied duty to care for the

8    plaintiff's emotional well- being." *Toney*, 36 A.3d at 95.

9    2743.  In *The Law of Torts*, Professor Dobbs explained that caring for the emotional

10   well-being of the plaintiff is a "duty to take care for the feelings of," e.g., the mother of a

11   stillborn child. (Citing *The Law of Torts*, § 29.15 (2000)).[220]

12   2744.  The relationship between the Defendants and Plaintiff Mrs. Smith must be of a

13   "intensely  emotionally  charged"  sort  for  a  court  to  recognize  a  pertinent  "special

14   relationship" giving rise not to negligently inflict emotional distress.  *Id* at 20-21.

15   2745.  Plaintiff must demonstrate "compensable emotional harm" which is harm of a

16   type that a reasonable is not person expected to bear. *Toney*, 36 A.3d at 95.

17   2746.  The Plaintiff will have to demonstrate physical manifestations of emotional

18   distress.[221]

19   2747.  In addition to proving elements of a valid NIED claim, the Plaintiff will first have

20   to establish the traditional elements of a negligence claim. *Id.*

---

[219] *Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

[220] *MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 at 20 (W.D. Pa. 2019).

[221] *Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

1    2748.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

2    or obligation recognized by the law, requiring the actor to conform to a certain standard

3    of conduct; (2) a failure to conform to the required standard; (3) a causal connection

4    between the conduct and the resulting injury; and (4) actual loss or damage resulting to

5    the interests of another.[222]

6    2749.  Negligence (1): A private medical provider actor removing a newborn child from

7    the custody of its parents has a duty to only do so with a report of true and valid medical

8    information released to state authorities.

9    2750.  Negligence (2): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

10   Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.

11   Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

12   failed to conform to the aforementioned duty when the Defendants contacted state

13   authorities Northampton County CYS, Monroe County CYS, and the Bethlehem Police

14   Dept. and reported the false medical information that Plaintiff Mrs. Smith ingested illegal

15   methamphetamine and that she had passed on the deleterious effects of

16   methamphetamine use to her son Plaintiff Newborn baby J.A.S.

17   2751.  Negligence (3): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

18   Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.

19   Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

---

[222]*See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1   actively and of their own volition, contacted Northampton County CYS, Monroe County

2   CYS, and the Bethlehem Police Department and released false medical records that

3   Plaintiff Mrs. Smith had ingested illegal methamphetamine and passed the deleterious

4   effects of methamphetamine use on to her son Plaintiff Newborn baby J.A.S.

5   2752.  Negligence (4): Plaintiffs Mr. and Mrs. Smith were in fact, separated from Plaintiff

6   Newborn baby J.A.S. against their will and consent and were left without control over

7   the care of their son Plaintiff Newborn baby child J.A.S., including the ability to

8   breastfeed Newborn baby J.A.S., have skin-to-skin contact with Newborn baby J.A.S.,

9   and consent to Newborn baby J.A.S.'s medical treatment.

10  2753.  Releasing false medical record information in order to justify ejecting parents

11  against their will and consent from hospital property under threat of arrest in order to

12  separate them from their newborn baby who was in neonatal intensive care was sure to

13  cause emotional injuries to the Plaintiffs that were reasonably foreseeable to the

14  Defendants.

15  2754.  Plaintiffs Mr. and Mrs. Smith perceived "a contemporaneous perception of

16  tortuous injury to a close relative" because they knew that if they were removed from the

17  hospital grounds that Plaintiff Newborn baby J.A.S. would undergo treatments and

18  medical services not consented to, as well, it was clear that Plaintiff Mrs. Smith would

19  not be able to breastfeed Plaintiff Newborn baby J.A.S., nor would skin-to-skin contact

20  be possible between Plaintiffs Mr. or Mrs. Smith and Plaintiff Newborn baby J.A.S.

21  2755.  As medical providers the Defendants had a special relationship with the mother

22  and father of a child in neonatal intensive care to take care of the feelings of that mother

23  and father.

2756.  Any situation in which parents are being separated from their newborn baby against the parents' will and consent is of the "intensely emotionally charged" sort that gives rise to a duty to not negligently inflict emotional distress.

2757.  In the instant case, Plaintiffs Mr. and Mrs. Smith are closely related to Plaintiff Newborn baby J.A.S. who is their child who was in neonatal intensive care at the time of his removal from his parents against their will and consent, without cause shortly after birth by the Defendants and their agents, employees, or assigns, which was an "intensely emotionally charged" situation.

2758.  Plaintiffs Mr. and Mrs. Smith being removed against their will and consent from Defendant St. Luke's Hospital property without cause created the type of compensable harm that is worthy of relief because the harm inflicted on Plaintiffs Mr. and Mrs. Smith was of the type that a reasonable person is not expected to bear.

2759.  Defendant's St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team's" conduct violated Plaintiffs' rights under Pennsylvania common law negligent infliction of emotional distress.

2760.  Plaintiff Mrs. Smith has suffered the following physical manifestations of emotional distress to the Defendant's alleged negligence: nightmares, night sweats, excessive diarrhea, anxiety and panic attacks, separation anxiety from newborn baby J.A.S., insomnia, depression, PTSD symptoms including staring into space while reliving the incident, muscle tightness and back spasms, and body tremors.

2761.  Plaintiff Mr. Smith has suffered the following physical manifestations of emotional distress due to the Defendant's alleged negligence: intense headaches, depression, stomach upset and nausea, excessive acid reflux, vomiting, symptoms of PTSD including staring into space reliving the incident, fatigue, insomnia, excessive sweating, loss of appetite, excessive dry skin sometimes forming open sores on his scalp and face.

2762.  Accordingly, and in connection with the alleged negligence of the Defendant parties, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. request all Defendant Entities be required to adopt a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place, including the accurate recording of medical records bereft of bias, the prevention of rumors about patients, and the consequences of communication of false medical records to state authorities.

2763.  Accordingly, and in connection with the alleged negligence of the Defendant parties, Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S. request all Defendant Persons be required to attend and pass a rigorous a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place, with curricula including the accurate recording of medical records bereft of bias, the prevention of rumors about patients, and the consequences of communication of false medical records to state authorities.

2764.  Accordingly, if a third-party cannot be found to render the appropriately rigorous training course, then the Defendant Entities should create their own legal training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place, including the accurate recording of medical records bereft of bias, the prevention of rumors about patients, and the consequences of communication of false medical records to state authorities; and, before the created program is implemented, the program must be approved by an appropriate court or federal agency for review; and, the program must be implemented within 180 days of the valid judgment of this honorable Court.

2765.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully request an amount of $84,800 in compensatory damages per Defendant.

2766.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team", and therefore, their ability to afford the appropriate training to avoid this egregious violation of the Pennsylvania Common Law, and, since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum families, and because the acts of the Defendants

1 and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a

2 reckless and wanton manner, the Plaintiff respectfully requests the imposition of

3 punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

4 Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.

5 Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team,"

6 to deter such Defendants from committing to such conduct in the future which violates

7 Commonwealth of Pennsylvania Common Law Plaintiffs respectfully request an amount

8 of $5,000,000 in punitive damages per Defendants Mr. Steve Lanshe, Esq., Mr. Robert

9 L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

10 Team"; and $10,000,000 per Defendants St. Luke's Hospital, Onsite Neonatal, OBHG

11 PA, Ms. Teresa Marlino, MD, and Ms. Cynthia Shultz, MD.

12 2767.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

13 any actual injury despite the deprivation of their common law rights, the Plaintiffs

14 respectfully request a nominal judgment of $1.00.

15 # XXV.   <u>Negligent Infliction of Emotional Distress IV</u>

16 ## <u>Mr. & Mrs. Smith v. Anderson Labs & Ms. Emily Miller, MD</u>

17 2768.  Under Pennsylvania tort law, determination of negligent infliction of emotional

18 distress liability depends on "whether the emotional injuries sustained by the plaintiff

19 were reasonably foreseeable to the defendant."[223]

---

[223]*Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672, 684 (1979).

2769.  Pennsylvania recognizes that a plaintiff has to among other options, in order to sustain an NIED claim, have "a contemporaneous perception of tortuous injury to a close relative".[224]

2770.  An NIED claim can be supported in cases when "the defendant assumes a duty by contract, or otherwise when the duty encompasses the plaintiff's emotional well-being." *Toney*, 36 A.3d at 92.

2771.  As well, "special relationships must encompass an implied duty to care for the plaintiff's emotional well- being." *Toney*, 36 A.3d at 95.

2772.  In *The Law of Torts*, Professor Dobbs explained that caring for the emotional well-being of the plaintiff is a "duty to take care for the feelings of," e.g., the mother of a stillborn child. (Citing *The Law of Torts*, § 29.15 (2000)).[225]

2773.  The relationship between the Defendants and Plaintiff Mrs. Smith must be of a "intensely emotionally charged" sort for a court to recognize a pertinent "special relationship" giving rise not to negligently inflict emotional distress.  *Id* at 20-21.

2774.  Plaintiff must demonstrate "compensable emotional harm" which is harm of a type that a reasonable is not person expected to bear. *Toney*, 36 A.3d at 95.

2775.  The Plaintiff will have to demonstrate physical manifestations of emotional distress.[226]

2776.  In addition to proving elements of a valid NIED claim, the Plaintiff will first have to establish the traditional elements of a negligence claim. *Id.*

---

[224] *Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

[225] *MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 at 20 (W.D. Pa. 2019).

[226] *Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

1   2777.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

2   or obligation recognized by the law, requiring the actor to conform to a certain standard

3   of conduct; (2) a failure to conform to the required standard; (3) a causal connection

4   between the conduct and the resulting injury; and (4) actual loss or damage resulting to

5   the interests of another.[227]

6   2778. Negligence (1): A private medical testing provider actor, when providing drug

7   tests to a fetal care facility, knows, or should know those test results are being used to

8   determine the custodial relationship between newborn children and their parents which

9   creates a duty owed to those parents and newborn children to only use clear-cut and

10   differentiated drug tests which distinguish between results for legal amphetamines and

11   illegal methamphetamines.

12   2779.  Negligence (2): Defendants Anderson Labs, & Ms. Emily Miller, MD failed to

13   conform to the aforementioned duty when the Defendants provided a fetal medical

14   center, St. Luke's Hospital, with undifferentiated drug test results that did not distinguish

15   between legal amphetamines and illegal methamphetamines.

16   2780.  Negligence (3): Defendants Anderson Labs, & Ms. Emily Miller, MD actively and

17   of their own volition, chose to use an undifferentiated urine drug screen that did not

18   distinguish between legal amphetamines and illegal methamphetamines, and then

19   provided "positive" results to St. Luke's Hospital, its affiliates, agents, employees, and/or

---

[227] *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1   assigns for potential illegal drug use that Defendants Anderson Labs and Ms. Emily

2   Miller, MD knew or should have known would be potentially used to separate a newborn

3   baby from its parents.

4   2781. Negligence (4): Plaintiffs Mr. and Mrs. Smith were in fact, separated from

5   Newborn baby J.A.S. against their will and consent and were left without control over

6   the care of their son Newborn baby child J.A.S., including the ability to breastfeed

7   Newborn baby J.A.S., have skin-to-skin contact with Newborn baby J.A.S., and consent

8   to newborn baby J.A.S.'s medical treatment.

9   2782. Providing undifferentiated testing between legal amphetamines and illegal

10  methamphetamines, and not separating the two categories independent of one another,

11  which Anderson Labs, its agents, employees, and/or assigns, knew or reasonably

12  should have known that such tests will be used to separate parents from their newborn

13  baby child who was in neonatal intensive care was sure to cause emotional injuries to

14  the Plaintiffs that were reasonably foreseeable to the Defendants.

15  2783. Plaintiffs Mr. and Mrs. Smith perceived "a contemporaneous perception of

16  tortuous injury to a close relative" because they knew that if they were removed from

17  the hospital grounds that Newborn baby J.A.S. would undergo treatments and medical

18  services not consented to, as well, it was clear that Plaintiff Mrs. Smith would not be

19  able to breastfeed Newborn baby J.A.S., nor would skin-to-skin contact be possible

20  between Plaintiffs Mr. or Mrs. Smith and Newborn baby J.A.S.

21  2784. As medical testing providers the Defendants had a special relationship with the

22  mother and father of a child in neonatal intensive care to take care of the feelings of that

23  mother and father.

2785.  Any situation in which parents are being separated from their newborn baby against the parents' will and consent is of the "intensely emotionally charged" sort that gives rise to a duty to not negligently inflict emotional distress.

2786.  In the instant case, Plaintiffs Mr. and Mrs. Smith are closely related to Newborn baby J.A.S. who is their child who was in neonatal intensive care at the time of his removal from his parents against their will and consent, without cause shortly after birth because of undifferentiated testing between legal amphetamine and illegal methamphetamine by the Defendants and their agents, employees, or assigns, which was an "intensely emotionally charged" situation.

2787.  Plaintiffs Mr. and Mrs. Smith being removed against their will and consent from St. Luke's Hospital property due to the undifferentiated testing by Defendants created the type of compensable harm that is worthy of relief because the harm inflicted on Plaintiffs Mr. and Mrs. Smith was of the type that a reasonable person is not expected to bear.

2788.  Defendants Anderson Labs, & Ms. Emily Miller, MD's conduct violated Plaintiffs' rights under Pennsylvania common law negligent infliction of emotional distress.

2789.  Plaintiff Mrs. Smith has suffered the following physical manifestations of emotional distress to the Defendant's alleged negligence: nightmares, night sweats, excessive diarrhea, anxiety and panic attacks, separation anxiety from Newborn baby J.A.S., insomnia, depression, PTSD symptoms including staring into space while reliving the incident, muscle tightness and back spasms, and body tremors.

2790.  Plaintiff Mr. Smith has suffered the following physical manifestations of emotional distress due to the Defendant's alleged negligence: intense headaches, depression,

stomach upset and nausea, excessive acid reflux, vomiting, symptoms of PTSD including staring into space reliving the incident, fatigue, insomnia, excessive sweating, loss of appetite, excessive dry skin sometimes forming open sores on his scalp and face.

2791. Accordingly, and in connection with the alleged negligence of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request Defendant Anderson Labs be required to only use drug tests which unequivocally separate each chemical substance from one another, and to have those substances recorded in separate categories when reporting results to requesting parties, their agents, employees, or assigns.

2792. Accordingly, if it is scientifically impossible to detect the chemical difference between legal amphetamines and illegal methamphetamine then such tests not be performed by Anderson Labs, their agents, employees, or assigns under any circumstances.

2793. Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully request an amount of $84,800 in compensatory damages per Defendant.

2794. Given the substantial wealth of the Defendants Anderson Labs, & Ms. Emily Miller, MD, and therefore, their ability to afford the appropriate training to avoid this egregious violation of the Pennsylvania Common Law, and, since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm

1  future postpartum families, and because the acts of the Defendants and their agents,

2  assigns, or employees callously disregarded the Plaintiff's rights in a reckless and

3  wanton manner, the Plaintiffs respectfully request the imposition of punitive damages on

4  Defendants Anderson Labs, & Ms. Emily Miller, MD to deter such Defendants from

5  committing to such conduct in the future which violates Commonwealth of Pennsylvania

6  Common Law Plaintiffs respectfully request an amount of $5,000,000 in punitive

7  damages per Defendants Anderson Labs, and Ms. Emily Miller, MD.

8  2795.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

9  any actual injury despite the deprivation of their common law rights, the Plaintiffs

10  respectfully request a nominal judgment of $1.00.

## XXVI.  <u>Negligent Infliction of Emotional Distress V</u>

<u>Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Cynthia M.</u>

<u>Shultz, MD, Mr. Patrick Philpot, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie</u>

<u>Wheeler, DO & Ms. Patricia Bates, CRNP</u>

16  2796.  Under Pennsylvania tort law, determination of negligent infliction of emotional

17  distress liability depends on "whether the emotional injuries sustained by the plaintiff

18  were reasonably foreseeable to the defendant."[228]

19  2797.  Pennsylvania recognizes that a plaintiff has to among other options, in order to

20  sustain an NIED claim, have "a contemporaneous perception of tortuous injury to a close

---

[228]*Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672, 684 (1979).

1   relative".[229]

2   2798.  An NIED claim can be supported in cases when "the  defendant assumes a duty

3   by contract, or otherwise when the duty encompasses the plaintiff's emotional well-

4   being." Toney, 36 A.3d at 92.

5   2799. As well, "special relationships must encompass an implied duty to care for the

6   plaintiff's emotional well- being." Toney, 36 A.3d at 95.

7   2800. In The Law of Torts, Professor Dobbs explained that caring for the emotional

8   well-being of the plaintiff is a "duty to take care for the feelings of," e.g., the mother of a

9   stillborn child. (Citing The Law of Torts, § 29.15 (2000)).[230]

10   2801.  The relationship between the Defendants and Plaintiff Mrs. Smith must be of a

11   "intensely emotionally charged" sort for a court to recognize a pertinent "special

12   relationship" giving rise not to negligently inflict emotional distress.  *Id* at 20-21.

13   2802.  Plaintiff must demonstrate "compensable emotional harm" which is harm of a

14   type that a reasonable is not person expected to bear. Toney, 36 A.3d at 95.

15   2803. The Plaintiff will have to demonstrate physical manifestations of emotional

16   distress.[231]

17   2804.  In addition to proving elements of a valid NIED claim, the Plaintiff will first have

18   to establish the traditional elements of a negligence claim. Id.

19   2805.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

20   or obligation recognized by the law, requiring the actor to conform to a certain standard

---

[229] *Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

[230] *MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 at 20 (W.D. Pa. 2019).

[231] *Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

of conduct; (2) a failure to conform to the required standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another.[232]

2806. Negligence (1): A private medical provider actor has a duty not to place a newborn baby child's mother's medical information in that newborn child's medical records because to do so would betray the doctor's duty of confidentiality to the mother.

2807. Negligence (2): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, DO & Ms. Patricia Bates, CRNP failed to conform to the aforementioned duty when the Defendants St. Luke's, Onsite Neonatal, OBHG PA, and their agents, employees, and/or assigns unnecessarily placed medical information about mother Plaintiff Mrs. Smith in Plaintiff Newborn baby J.A.S.'s medical records.

2808. Negligence (3): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, DO & Ms. Patricia Bates, CRNP actively and of their own volition, placed information in notes and medical records of Plaintiff Newborn baby J.A.S. that Plaintiff Mrs. Smith had ingested methamphetamine, and passed the deleterious effects of methamphetamine use onto Plaintiff Newborn baby J.A.S. despite the fact that

---

[232]*See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1    Plaintiff Newborn baby J.A.S. did not at any time test positive for methamphetamine or

2    show signs and symptoms of methamphetamine withdrawal.

3    2809.  Negligence (4): Plaintiffs Mr. and Mrs. Smith were in fact, separated from Plaintiff

4    Newborn baby J.A.S. against their will and consent and were left without control over

5    the care of their son Plaintiff Newborn baby child J.A.S., including the ability to

6    breastfeed Newborn baby J.A.S., have skin-to-skin contact with Newborn baby J.A.S.,

7    and consent to Newborn baby J.A.S.'s medical treatment.

8    2810. Placing Plaintiff Mrs. Smith's accusations of methamphetamine ingestion in

9    Plaintiff Newborn baby J.A.S.'s medical records in order to forcibly eject parents from

10   hospital property under threat of arrest in order to separate them from their newborn

11   baby child who was in neonatal intensive care was sure to cause emotional injuries to

12   the Plaintiffs that were reasonably foreseeable to the Defendants.

13   2811. Plaintiffs Mr. and Mrs. Smith perceived "a contemporaneous perception of

14   tortuous injury to a close relative" because they knew that if they were removed from

15   the hospital grounds that Plaintiff Newborn baby J.A.S. would undergo treatments and

16   medical services not consented to, as well, it was clear that Plaintiff Mrs. Smith would

17   not be able to breastfeed Plaintiff Newborn baby J.A.S., nor would skin-to-skin contact

18   be possible between Plaintiffs Mr. or Mrs. Smith and Plaintiff Newborn baby J.A.S.

19   2812.  As medical providers the Defendants had a special relationship with the mother

20   and father of a child in neonatal intensive care to take care of the feelings of that mother

21   and father.

2813.  Any situation in which parents are being separated from their newborn baby

against the parents' will and consent is of the "intensely emotionally charged" sort that

gives rise to a duty to not negligently inflict emotional distress.

2814.  In the instant case, Plaintiffs Mr. and Mrs. Smith are closely related to Plaintiff

Newborn baby J.A.S. who is their child who was in neonatal intensive care at the time of

his removal from his parents against their will and consent, without cause shortly after

birth by the Defendants and their agents, employees, or assigns, which was an

"intensely emotionally charged" situation.

2815.  Plaintiffs Mr. and Mrs. Smith being removed against their will and consent from

Defendant St. Luke's Hospital's property without cause created the type of

compensable harm that is worthy of relief because the harm inflicted on Plaintiffs Mr.

and Mrs. Smith was of the type that a reasonable person is not expected to bear.

2816.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Cynthia M.

Shultz, MD, Mr. Patrick Philpot, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler,

DO & Ms. Patricia Bates, CRNP's conduct violated Plaintiffs' rights under Pennsylvania

common law negligent infliction of emotional distress.

2817.  Plaintiff Mrs. Smith has suffered the following physical manifestations of

emotional distress to the Defendant's alleged negligence: nightmares, night sweats,

excessive diarrhea, anxiety and panic attacks, separation anxiety from newborn baby

J.A.S., insomnia, depression, PTSD symptoms including staring into space while

reliving the incident, muscle tightness and back spasms, and body tremors.

2818.  Plaintiff Mr. Smith has suffered the following physical manifestations of emotional

distress due to the Defendant's alleged negligence: intense headaches, depression,

1    stomach upset and nausea, excessive acid reflux, vomiting, symptoms of PTSD

2    including staring into space reliving the incident, fatigue, insomnia, excessive sweating,

3    loss of appetite, excessive dry skin sometimes forming open sores on his scalp and

4    face.

5    2819.  Accordingly, and in connection with the alleged negligence of the Defendant

6    parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Entities be required to adopt

7    a third-party training program which demonstrates appropriate circumstances under

8    which a child should be reasonably separated from its natural parents, and the specific

9    legal procedures to adhere to for such a separation to take place, including the limited

10   number of circumstances under which a mother's medical information may appear in

11   her child's medical records.

12   2820.  Accordingly, and in connection with the alleged negligence of the Defendant

13   parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Persons be required to

14   attend and pass a rigorous a third-party training program which demonstrates

15   appropriate circumstances under which a child should be reasonably separated from its

16   natural parents, and the specific legal procedures to adhere to for such a separation to

17   take place, including the limited number of circumstances under which a mother's

18   medical information may appear in her child's medical records.

19   2821.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

20   training course, then the Defendant Entities should create their own legal training

21   program which demonstrates appropriate circumstances under which a child should be

22   reasonably separated from its natural parents, and the specific legal procedures to

23   adhere to for such a separation to take place, including the limited number of

1   circumstances under which a mother's medical information may appear in her child's

2   medical records; and, before the created program is implemented, the program must be

3   approved by an appropriate court or federal agency for review; and, the program must

4   be implemented within 180 days of the valid judgment of this honorable Court.

5   2822.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

6   conduct, including but not limited to, emotional and psychological distress, pain and

7   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

8   appropriate compensatory damages to account for PTSD therapies and other related

9   treatments as they have been and will continue to be necessary; Plaintiffs respectfully

10  request an amount of $84,800 in compensatory damages per Defendant.

11  2823.  Given the substantial wealth of the St. Luke's Hospital, Onsite Neonatal, OBHG

12  PA, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Mr. Gilberto Santiago, MD, Ms.

13  Chaminie Wheeler, DO & Ms. Patricia Bates, CRNP, and therefore, their ability to afford

14  the appropriate training to avoid this egregious violation of the Pennsylvania Common

15  Law, and, since harm was actually caused to the current Plaintiff Smith Family, and

16  since harm is likely to continue to harm future postpartum families, and because the

17  acts of the Defendants and their agents, assigns, or employees callously disregarded

18  the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request

19  the imposition of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal,

20  OBHG PA, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Mr. Gilberto Santiago,

21  MD, Ms. Chaminie Wheeler, DO & Ms. Patricia Bates, CRNP to deter such Defendants

22  from committing to such conduct in the future which violates Commonwealth of

23  Pennsylvania Common Law Plaintiffs respectfully request an amount of $1,000,000 in

1  punitive damages per Defendants Ms. Patricia Bates, CRNP, and Mr. Gilberto Santiago,

2  MD; $5,000,000 per Defendants Mr. Patrick Philpot, DO, and Ms. Chaminie Wheeler,

3  DO; and $10,000,000 per Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA,

4  and Ms. Cynthia M. Shultz, MD..

5  2824.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

6  any actual injury despite the deprivation of their common law rights, the Plaintiffs

7  respectfully request a nominal judgment of $1.00.

8  ## XXVII.   Negligent Infliction of Emotional Distress VI

9  Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa

10  Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R.

11  Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr.

12  Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms.

13  Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD,

14  Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, "Security Supervisor

15  'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr.

16  Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital

17  Leadership Team"

2825.  Under Pennsylvania tort law, determination of negligent infliction of emotional distress liability depends on "whether the emotional injuries sustained by the plaintiff were reasonably foreseeable to the defendant."[233]

2826.  Pennsylvania recognizes that a plaintiff has to among other options, in order to sustain an NIED claim, have "a contemporaneous perception of tortuous injury to a close relative".[234]

2827.  An NIED claim can be supported in cases when "the defendant assumes a duty by contract, or otherwise when the duty encompasses the plaintiff's emotional well-being." Toney, 36 A.3d at 92.

2828.  As well, "special relationships must encompass an implied duty to care for the plaintiff's emotional well- being." Toney, 36 A.3d at 95.

2829.  In The Law of Torts, Professor Dobbs explained that caring for the emotional well-being of the plaintiff is a "duty to take care for the feelings of," e.g., the mother of a stillborn child. (Citing The Law of Torts, § 29.15 (2000)).[235]

2830.  The relationship between the Defendants and Plaintiff Mrs. Smith must be of a "intensely emotionally charged" sort for a court to recognize a pertinent "special relationship" giving rise not to negligently inflict emotional distress.  Id at 20-21.

2831.  Plaintiff must demonstrate "compensable emotional harm" which is harm of a type that a reasonable is not person expected to bear. Toney, 36 A.3d at 95.

---

[233]*Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672, 684 (1979).
[234]*Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).
[235]*MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 at 20 (W.D. Pa. 2019).

1   2832.  The Plaintiff will have to demonstrate physical manifestations of emotional

2   distress.236

3   2833.  In addition to proving elements of a valid NIED claim, the Plaintiff will first have to

4   establish the traditional elements of a negligence claim. *Id.*

5   2834.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

6   or obligation recognized by the law, requiring the actor to conform to a certain standard

7   of conduct; (2) a failure to conform to the required standard; (3) a causal connection

8   between the conduct and the resulting injury; and (4) actual loss or damage resulting to

9   the interests of another.237

10  2835.  Negligence (1): A private medical provider actor removing a newborn child from

11  the custody of its parents has a duty to only do so with a court order or with reasonable

12  suspicion of drug abuse on the part of the mother; and, that reasonable suspicion that

13  the mother ingested an illegal substance requires a reasonable cursory investigation by

14  the hospital before contacting state authorities to allege the serious crime of child abuse

15  of a newborn baby.

16  2836.  Negligence (2): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

17  Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R.

---

[236]*Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

[237]*See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1  Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr.

2  Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms.

3  Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms.

4  Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, "Security Supervisor 'Unknown'",

5  "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,

6  Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" failed to

7  conform to the aforementioned duty when the Defendants removed Plaintiffs Mr. and

8  Mrs. Smith from Plaintiff newborn baby J.A.S. by ejecting Plaintiffs Mr. and Mrs. Smith

9  from Defendant St. Luke's Hospital's property without conducting a reasonable cursory

10  investigation to establish reasonable suspicion of illegal drug abuse by Plaintiff Mrs.

11  Smith.

12  2837.  Negligence (3): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

13  Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R.

14  Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr.

15  Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms.

16  Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms.

17  Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, "Security Supervisor 'Unknown'",

18  "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,

19  Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" actively

20  and of their own volition, chose to ignore evidence to the contrary to the allegation that

21  Plaintiff Mrs. Smith ingested methamphetamine, including but not limited to, checking to

22  see if the levels of "positive" methamphetamine in Plaintiff Mrs. Smith's urine

23  corresponded with the amount of amphetamine she was prescribed, thereby

1   demonstrating that there was not more of any substance in her urine than she was

2   legally prescribed, contacting any of the three physicians, including Plaintiff Mrs. Smith's

3   previous obstetrician to confirm Plaintiff Mrs. Smith's assertions of not ingesting

4   methamphetamine, and, observing that neither Plaintiffs Newborn baby J.A.S., nor Mrs.

5   Smith were suffering withdrawal symptoms from substance abuse.

6   2838.  Negligence (4): Plaintffs Mr. and Mrs. Smith were in fact, separated from Plaintiff

7   Newborn baby J.A.S. against their will and consent and were left without control over

8   the care of their son Plaintiff Newborn baby J.A.S., including the ability to breastfeed

9   Newborn baby J.A.S., have skin-to-skin contact with Newborn baby J.A.S., and consent

10   to Newborn baby J.A.S.'s medical treatment.

11   2839.  Defendants leveling accusations of methamphetamine ingestion on Plaintiff Mrs.

12   Smith, based solely on an undifferentiated drug test and without a reasonable cursory

13   investigation before contacting state authorities and accusing Plaintiff Mrs. Smith of

14   methamphetamine ingestion which she then supposedly passed on to Plaintiff Newborn

15   baby J.A.S., in order to eject parents from hospital property against their will and

16   consent under threat of arrest in order to separate them from their newborn baby who

17   was in neonatal intensive care was sure to cause emotional injuries to the Plaintiffs that

18   were reasonably foreseeable to the Defendants.

19   2840.  Plaintiffs Mr. and Mrs. Smith perceived "a contemporaneous perception of

20   tortuous injury to a close relative" because they knew that if they were removed from the

21   hospital grounds that Plaintiff Newborn baby J.A.S. would undergo treatments and

22   medical services not consented to, as well, it was clear that Plaintiff Mrs. Smith would

not be able to breastfeed Plaintiff Newborn baby J.A.S., nor would skin-to-skin contact

be possible between Plaintiffs Mr. or Mrs. Smith and Plaintiff Newborn baby J.A.S.

2841.  As medical providers the Defendants had a special relationship with the mother

and father of a child in neonatal intensive care to take care of the feelings of that mother

and father.

2842.  Any situation in which parents are being separated from their newborn baby

against the parents' will and consent is of the "intensely emotionally charged" sort that

gives rise to a duty to not negligently inflict emotional distress.

2843.  In the instant case, Plaintiffs Mr. and Mrs. Smith are closely related to Plaintiff

Newborn baby J.A.S. who is their child who was in neonatal intensive care at the time of

his removal from his parents against their will and consent, without cause shortly after

birth by the Defendants and their agents, employees, or assigns, which was an

"intensely emotionally charged" situation.

2844.  Plaintiffs Mr. and Mrs. Smith being removed against their will and consent from

Defendant St. Luke's Hospital property without cause created the type of compensable

harm that is worthy of relief because the harm inflicted on Plaintiffs Mr. and Mrs. Smith

was of the type that a reasonable person is not expected to bear.

2845.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, MD,

Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD,

Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms.

Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms. Chaminie Wheeler, MD, Ms.

Patricia Bates, CNRP, "Security Supervisor 'Unknown'", "Head of Hospital Security

1   'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

2   Dawn Hoffman, and the "Hospital Leadership Team's" conduct violated Plaintiffs' rights

3   under Pennsylvania common law negligent infliction of emotional distress.

4   2846.  Plaintiff Mrs. Smith has suffered the following physical manifestations of

5   emotional distress to the Defendant's alleged negligence: nightmares, night sweats,

6   excessive diarrhea, anxiety and panic attacks, separation anxiety from newborn baby

7   J.A.S., insomnia, depression, PTSD symptoms including staring into space while

8   reliving the incident, muscle tightness and back spasms, and body tremors.

9   2847.  Plaintiff Mr. Smith has suffered the following physical manifestations of emotional

10  distress due to the Defendant's alleged negligence: intense headaches, depression,

11  stomach upset and nausea, excessive acid reflux, vomiting, symptoms of PTSD

12  including staring into space reliving the incident, fatigue, insomnia, excessive sweating,

13  loss of appetite, excessive dry skin sometimes forming open sores on his scalp and

14  face.

15  2848.  Accordingly, and in connection with the alleged negligence of the Defendant

16  parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Entities be required to adopt

17  a third-party training program which demonstrates appropriate circumstances under

18  which a child should be reasonably separated from its natural parents, and the specific

19  legal procedures to adhere to for such a separation to take place, including what

20  consists of a reasonable cursory investigation into the likelihood of actual child abuse

21  before reporting the allegation that a mother has abused illegal drugs and passed the

22  deleterious effects of those drugs onto her newborn baby.

1   2849.  Accordingly, and in connection with the alleged negligence of the Defendant

2   parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Persons be required to

3   attend and pass a rigorous a third-party training program which demonstrates

4   appropriate circumstances under which a child should be reasonably separated from its

5   natural parents, and the specific legal procedures to adhere to for such a separation to

6   take place, including what consists of a reasonable cursory investigation into the

7   likelihood of actual child abuse before reporting the allegation that a mother has abused

8   illegal drugs and passed the deleterious effects of those drugs onto her newborn baby.

9   2850.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

10  training course, then the Defendant Entities should create their own legal training

11  program which demonstrates appropriate circumstances under which a child should be

12  reasonably separated from its natural parents, and the specific legal procedures to

13  adhere to for such a separation to take place, including what consists of a reasonable

14  cursory investigation into the likelihood of actual child abuse before reporting the

15  allegation that a mother has abused illegal drugs and passed the deleterious effects of

16  those drugs onto her newborn baby; and, before the created program is implemented,

17  the program must be approved by an appropriate court or federal agency for review;

18  and, the program must be implemented within 180 days of the valid judgment of this

19  honorable Court.

20  2851.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

21  conduct, including but not limited to, emotional and psychological distress, pain and

22  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

23  appropriate compensatory damages to account for PTSD therapies and other related

1  treatments as they have been and will continue to be necessary; Plaintiffs respectfully

2  request an amount of $84,800 in compensatory damages per Defendant.

3  2852.  Given the substantial wealth of the St. Luke's Hospital, Onsite Neonatal, OBHG

4  PA, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms.

5  Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD,

6  Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms.

7  Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms.

8  Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, "Security Supervisor 'Unknown'",

9  "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,

10  Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team, and

11  therefore, their ability to afford the appropriate training to avoid this egregious violation

12  of the Pennsylvania Common Law, and, since harm was actually caused to the current

13  Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum

14  families, and because the acts of the Defendants and their agents, assigns, or

15  employees callously disregarded the Plaintiff's rights in a reckless and wanton manner,

16  the Plaintiffs respectfully request the imposition of punitive damages on Defendants St.

17  Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia M.

18  Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb,

19  MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah

20  Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A.

21  Costello, DO, Mr. Gilberto I. Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia

22  Bates, CNRP, "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'",

23  Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

1   and the "Hospital Leadership Team" to deter such Defendants from committing to such

2   conduct in the future which violates Commonwealth of Pennsylvania Common Law

3   Plaintiffs respectfully request an amount of $1,000,000 in punitive damages per

4   Defendants Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E.

5   Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

6   Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I.

7   Santiago, MD, Ms. Patricia Bates, CNRP,; $5,000,000 per Defendants Mr. Patrick

8   Philpot, DO, Ms. Chaminie Wheeler, MD, "Security Supervisor 'Unknown'", "Head of

9   Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

10   Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"; and $10,000,000

11   per Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

12   MD, and Ms. Cynthia M. Shultz, MD.

13   2853.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

14   any actual injury despite the deprivation of their common law rights, the Plaintiffs

15   respectfully request a nominal judgment of $1.00.

16   ## XXVIII.   <u>Negligent Infliction of Emotional Distress VII</u>

17   <u>Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa</u>

18   <u>Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R.</u>

19   <u>Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr.</u>

20   <u>Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms.</u>

21   <u>Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD,</u>

1    <u>Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, Mr. Steve Lanshe, Esq., Mr.</u>

2    <u>Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital</u>

3    <u>Leadership Team"</u>

4    2854.  Under Pennsylvania tort law, determination of negligent infliction of emotional

5    distress liability depends on "whether the emotional injuries sustained by the plaintiff

6    were reasonably foreseeable to the defendant."[238]

7    2855.  Pennsylvania recognizes that a plaintiff has to among other options, in order to

8    sustain an NIED claim, have "a contemporaneous perception of tortuous injury to a

9    close relative".[239]

10   2856.  An NIED claim can be supported in cases when "the defendant assumes a duty

11   by contract, or otherwise when the duty encompasses the plaintiff's emotional well-

12   being." Toney, 36 A.3d at 92.

13   2857.  As well, "special relationships must encompass an implied duty to care for the

14   plaintiff's emotional well- being." Toney, 36 A.3d at 95.

15   2858.  In The Law of Torts, Professor Dobbs explained that caring for the emotional

16   well-being of the plaintiff is a "duty to take care for the feelings of," e.g., the mother of a

17   stillborn child. (Citing The Law of Torts, § 29.15 (2000)).[240]

---

[238]*Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672, 684 (1979).

[239]*Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

[240]*MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 at 20 (W.D. Pa. 2019).

2859.  The relationship between the Defendants and Plaintiff Mrs. Smith must be of a "intensely emotionally charged" sort for a court to recognize a pertinent "special relationship" giving rise not to negligently inflict emotional distress.  Id at 20-21.

2860.   Plaintiff must demonstrate "compensable emotional harm" which is harm of a type that a reasonable is not person expected to bear. Toney, 36 A.3d at 95.

2861.  The Plaintiff will have to demonstrate physical manifestations of emotional distress.[241]

2862.  In addition to proving elements of a valid NIED claim, the Plaintiff will first have to establish the traditional elements of a negligence claim. Id.

2863.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the required standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another.[242]

2864.  Negligence (1): A private medical provider actor removing a newborn child from the custody of its parents has a duty to only do so with a court order or with reasonable suspicion of drug abuse on the part of the mother, and in the absence of a court order,

---

[241]*Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

[242]*See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1  when willfully separating a newborn child from its parents, regardless of suspicions of

2  mother's guilt concerning the ingestion of methamphetamine, the private medical

3  provider has a duty to provide a viable appeals process for the decision to separate the

4  child from the parents in which the parents are appreciably heard and their perspectives

5  sincerely considered.

6  2865.  Negligence (2): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

7  Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R.

8  Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr.

9  Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms.

10  Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms.

11  Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, Mr. Steve Lanshe, Esq., Mr. Robert

12  L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

13  failed to conform to the aforementioned duty when the Defendants removed Plaintiffs

14  Mr. and Mrs. Smith from Newborn baby J.A.S. by ejecting Plaintiffs Mr. and Mrs. Smith

15  against their will and consent from Defendant St. Luke's Hospital's property without

16  reasonable suspicion of drug abuse by Plaintiff Mrs. Smith or a court order to separate

17  Newborn baby J.A.S. from his parents, and not one Defendant provided a valid appeals

18  process for the decision to separate them.

19  2866.  Negligence (3): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

20  Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R.

21  Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr.

22  Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms.

23  Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms.

1   Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, Mr. Steve Lanshe, Esq., Mr. Robert

2   L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

3   actively and of their own volition, contacted Northampton County CYS, Monroe County

4   CYS, and the Bethlehem Police Department in a concerted effort to separate Newborn

5   baby J.A.S. from his parents Plaintiffs Mr. and Mrs. Smith and to deny a valid appeals

6   process for that separation by keeping the focus of the issue on the alleged

7   methamphetamine use and implying that there was no way to overcome the decision

8   that was made because the decision made was already final, as became evident when

9   Plaintiffs Mr. and Mrs. Smith were escorted off of Defendant St. Luke's Hospital property

10   by police officers against their will and consent.

11   2867.  Negligence (4): Because there was not a valid appeals process, Plaintiffs Mr. and

12   Mrs. Smith were in fact, separated from Newborn baby J.A.S. against their will and

13   consent and were left without control over the care of their son Newborn baby J.A.S.,

14   including the ability to breastfeed Newborn baby J.A.S., have skin-to-skin contact with

15   Newborn baby J.A.S., and consent to Newborn baby J.A.S.'s medical treatment.

16   2868.  The Defendants by never providing an appeals process to the Plaintiff parents in

17   order to eject parents against their will and consent from hospital property under threat

18   of arrest in order to separate them from their newborn baby who was in neonatal

19   intensive care was sure to cause emotional injuries to the Plaintiffs that were reasonably

20   foreseeable to the Defendants.

21   2869.  Plaintiffs Mr. and Mrs. Smith perceived "a contemporaneous perception of

22   tortuous injury to a close relative" because they knew that if they were removed from the

23   hospital grounds that Newborn baby J.A.S. would undergo treatments and medical

1   services not consented to, as well, it was clear that Plaintiff Mrs. Smith would not be

2   able to breastfeed Newborn baby J.A.S., nor would skin-to-skin contact be possible

3   between Plaintiffs Mr. or Mrs. Smith and Newborn baby J.A.S.

4   2870.  As medical providers the Defendants had a special relationship with the mother

5   and father of a child in neonatal intensive care to take care of the feelings of that mother

6   and father.

7   2871.  Any situation in which parents are being separated from their newborn baby

8   against the parents' will and consent is of the "intensely emotionally charged" sort that

9   gives rise to a duty to not negligently inflict emotional distress.

10  2872.  In the instant case, Plaintiffs Mr. and Mrs. Smith are closely related to Newborn

11  baby J.A.S. who is their child who was in neonatal intensive care at the time of his

12  removal from his parents against their will and consent, without cause shortly after birth

13  by the Defendants and their agents, employees, or assigns, which was an "intensely

14  emotionally charged" situation.

15  2873.  Plaintiffs Mr. and Mrs. Smith being removed against their will and consent from

16  Defendant St. Luke's Hospital property without cause, and having no way to appeal the

17  decision to separate Plaintiffs Mr. and Mrs. Smith from Newborn baby J.A.S. created the

18  type of compensable harm that is worthy of relief because the harm inflicted on Plaintiffs

19  Mr. and Mrs. Smith was of the type that a reasonable person is not expected to bear.

20  2874.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

21  MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, MD,

22  Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD,

23  Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms.

1  Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms. Chaminie Wheeler, MD, Ms.

2  Patricia Bates, CNRP, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla

3  Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team's" conduct violated

4  Plaintiffs' rights under Pennsylvania common law negligent infliction of emotional

5  distress.

6  2875.  Plaintiff Mrs. Smith has suffered the following physical manifestations of

7  emotional distress to the Defendant's alleged negligence: nightmares, night sweats,

8  excessive diarrhea, anxiety and panic attacks, separation anxiety from newborn baby

9  J.A.S., insomnia, depression, PTSD symptoms including staring into space while

10  reliving the incident, muscle tightness and back spasms, and body tremors.

11  2876.  Plaintiff Mr. Smith has suffered the following physical manifestations of emotional

12  distress due to the Defendant's alleged negligence: intense headaches, depression,

13  stomach upset and nausea, excessive acid reflux, vomiting, symptoms of PTSD

14  including staring into space reliving the incident, fatigue, insomnia, excessive sweating,

15  loss of appetite, excessive dry skin sometimes forming open sores on his scalp and

16  face.

17  2877.  Accordingly, and in connection with the alleged negligence of the Defendant

18  parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Entities be required to adopt

19  a third-party training program which demonstrates appropriate circumstances under

20  which a child should be reasonably separated from its natural parents, and the specific

21  legal procedures to adhere to for such a separation to take place, including the

22  necessity for an impartial appeals process, as well, for when the mechanism for an

23  appeals process becomes available.

2878.  Accordingly, and in connection with the alleged negligence of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Persons be required to attend and pass a rigorous a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place, including the necessity for an impartial appeals process, as well, for when the mechanism for an appeals process becomes available.

2879.  Accordingly, if a third-party cannot be found to render the appropriately rigorous training course, then the Defendant Entities should create their own legal training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place, including the necessity for an impartial appeals process, as well, for when the mechanism for an appeals process becomes available; and, before the created program is implemented, the program must be approved by an appropriate court or federal agency for review; and, the program must be implemented within 180 days of the valid judgment of this honorable Court.

2880.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully request an amount of $84,800 in compensatory damages per Defendant.

1   2881.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

2   Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick

3   Philpot, DO, Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E.

4   Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

5   Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I.

6   Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, Mr. Steve

7   Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the

8   "Hospital Leadership Team," and therefore, their ability to afford the appropriate training

9   to avoid this egregious violation of the Pennsylvania Common Law, and, since harm

10  was actually caused to the current Plaintiff Smith Family, and since harm is likely to

11  continue to harm future postpartum families, and because the acts of the Defendants

12  and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a

13  reckless and wanton manner, the Plaintiffs respectfully request the imposition of

14  punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

15  Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R.

16  Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr.

17  Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms.

18  Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms.

19  Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, Mr. Steve Lanshe, Esq., Mr. Robert

20  L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

21  Team," to deter such Defendants from committing to such conduct in the future which

22  violates Commonwealth of Pennsylvania Common Law Plaintiffs respectfully request an

23  amount of $1,000,000 in punitive damages per Defendants Ms. Dianne R. Jacobetz,

1  MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert,

2  MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms.

3  Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, and Ms. Patricia Bates, CNRP;

4  $5,000,000 per Defendants Mr. Patrick Philpot, DO, Ms. Chaminie Wheeler, MD, Mr.

5  Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and

6  the "Hospital Leadership Team"; and $10,000,000 per Defendants St. Luke's Hospital,

7  Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, and Ms. Cynthia M. Shultz, MD.

8  2882.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

9  any actual injury despite the deprivation of their common law rights, the Plaintiffs

10  respectfully request a nominal judgment of $1.00.

11  ## XXIX.    Negligent Infliction of Emotional Distress VIII

12  ### Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, St. Luke's Physician

13  ### Group, Ms. Chaminie Wheeler, DO, Mr. Gilberto I. Santiago, MD, & Ms. Dianne R.

14  ### Jacobetz, MD

15  2883.  Under Pennsylvania tort law, determination of negligent infliction of emotional

16  distress liability depends on "whether the emotional injuries sustained by the plaintiff

17  were reasonably foreseeable to the defendant."[243]

---

[243]*Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672, 684 (1979).

1    2884.  Pennsylvania recognizes that a plaintiff has to among other options, in order to

2    sustain an NIED claim, have "a contemporaneous perception of tortuous injury to a

3    close relative".244

4    2885.  An NIED claim can be supported in cases when "the defendant assumes a duty

5    by contract, or otherwise when the duty encompasses the plaintiff's emotional well-

6    being." Toney, 36 A.3d at 92.

7    2886.  As well, "special relationships must encompass an implied duty to care for the

8    plaintiff's emotional well- being." Toney, 36 A.3d at 95.

9    2887.  In The Law of Torts, Professor Dobbs explained that caring for the emotional

10   well-being of the plaintiff is a "duty to take care for the feelings of," e.g., the mother of a

11   stillborn child. (Citing The Law of Torts, § 29.15 (2000)).245

12   2888.  The relationship between the Defendants and Plaintiff Mrs. Smith must be of a

13   "intensely emotionally charged" sort for a court to recognize a pertinent "special

14   relationship" giving rise not to negligently inflict emotional distress.  Id at 20-21.

15   2889.   Plaintiff must demonstrate "compensable emotional harm" which is harm of a

16   type that a reasonable is not person expected to bear. Toney, 36 A.3d at 95.

---

244*Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

245*MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 at 20 (W.D. Pa. 2019).

1    2890.  The Plaintiff will have to demonstrate physical manifestations of emotional

2    distress.246

3    2891.  In addition to proving elements of a valid NIED claim, the Plaintiff will first have to

4    establish the traditional elements of a negligence claim. Id.

5    2892.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

6    or obligation recognized by the law, requiring the actor to conform to a certain standard

7    of conduct; (2) a failure to conform to the required standard; (3) a causal connection

8    between the conduct and the resulting injury; and (4) actual loss or damage resulting to

9    the interests of another.247

10   2893.  Negligence (1): A private medical provider actor has a duty to convey true and

11   accurate medical information about a newborn baby to its parents.

12   2894.  Negligence (2): Defendants St. Luke's Hospital, Onsite Neonatal, St. Luke's

13   Physicians Group, Ms. Chaminie Wheeler, DO, Mr. Gilberto I. Santiago, MD, & Ms.

14   Dianne Jacobetz, MD, failed to conform to the aforementioned duty when in an effort to

15   force Plaintiffs Mr. and Mrs. Smith to stay at the hospital with Newborn baby J.A.S.

16   beyond when the Plaintiffs desired to remain, Defendants misinformed Plaintiffs Mr. and

17   Mrs. Smith that Newborn baby J.A.S. needed to be removed to the NICU because of

---

246 *Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

247 *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

breathing trouble (which was a newborn grunting to breastfeed), and Defendants never informed Plaintiffs Mr. and Mrs. Smith, and, as Plaintiffs Mr. and Mrs. Smith later discovered in medical records, that Newborn baby J.A.S. was at any point in danger of falling into life-threatening circumstances if he were not admitted to the NICU for specialized care and monitoring.

2895.  Negligence (3): Defendants St. Luke's Hospital, Onsite Neonatal, St. Luke's Physicians Group, Ms. Chaminie Wheeler, DO, Mr. Gilberto I. Santiago, MD, & Ms. Dianne Jacobetz, MD, actively and of their own volition, intentionally spoke to Mr. and Mrs. Smith one narrative about their newborn baby that he was by-and-large healthy and fine, and that his admittance to the NICU was precautionary; however, the narrative that was being written in the medical records of Newborn baby J.A.S. and Plaintiff Mrs. Smith was markedly different in tone and facts, making Newborn baby J.A.S. out to be in more need of medical care than he actually required or was at least being reported to require to Plaintiffs Mr. and Mrs. Smith.

2896.  Negligence (4): Mr. and Mrs. Smith were in fact, separated from Newborn baby J.A.S. against their will and consent and were left without control over the care of their son Newborn baby J.A.S., including the ability to breastfeed Newborn baby J.A.S., have skin-to-skin contact with Newborn baby J.A.S., and consent to Newborn baby J.A.S.'s medical treatment.

2897.  Defendants conveying one narrative to the Plaintiffs Mr. & Mrs. Smith verbally and another narrative in the medical records of both Plaintiff Mrs. Smith and Newborn baby J.A.S. was concocted in order to separate Plaintiffs Mr. and Mrs. Smith from their

1  newborn baby child who was in neonatal intensive care was sure to cause emotional

2  injuries to the Plaintiffs that were reasonably foreseeable to the Defendants.

3  2898.  Plaintiffs Mr. and Mrs. Smith perceived "a contemporaneous perception of

4  tortuous injury to a close relative" because Plaintiffs Mr. and Mrs. Smith had to witness

5  each other go through the emotional turmoil of having a child go from "healthy" to

6  necessitating treatment in the NICU.

7  2899.  As medical providers the Defendants had a special relationship with the mother

8  and father of a newborn child to take care of the feelings of that mother and father.

9  2900.  Any situation in which parents are being separated from their newborn baby

10  against the parents' will and consent is of the "intensely emotionally charged" sort that

11  gives rise to a duty to not negligently inflict emotional distress.

12  2901.  In the instant case, Plaintiffs Mr. and Mrs. Smith are closely related to Newborn

13  baby J.A.S. who is their child, who was transferred to neonatal intensive care under

14  suspicious circumstances, whose parents were separated without cause from him

15  against their will and consent shortly after birth by the Defendants and their agents,

16  employees, or assigns, which was an "intensely emotionally charged" situation.

17  2902.  Plaintiffs Mr. and Mrs. Smith being told one narrative verbally while another

18  narrative was being created about Plaintiffs Mr. and Mrs. Smith and Newborn baby

19  J.A.S. created the type of compensable harm that is worthy of relief because the harm

20  inflicted on Plaintiffs Mr. and Mrs. Smith was of the type that a reasonable person is not

21  expected to bear.

22  2903.  Defendants St. Luke's Hospital, Onsite Neonatal, St. Luke's Physicians Group,

23  Ms. Chaminie Wheeler, DO, Mr. Gilberto I. Santiago, MD, & Ms. Dianne Jacobetz, MD's

1   conduct violated Plaintiffs' rights under Pennsylvania common law negligent infliction of

2   emotional distress.

3   2904.  Plaintiff Mrs. Smith has suffered the following physical manifestations of

4   emotional distress to the Defendant's alleged negligence: nightmares, night sweats,

5   excessive diarrhea, anxiety and panic attacks, separation anxiety from newborn baby

6   J.A.S., insomnia, depression, PTSD symptoms including staring into space while

7   reliving the incident, muscle tightness and back spasms, and body tremors.

8   2905.  Plaintiff Mr. Smith has suffered the following physical manifestations of emotional

9   distress due to the Defendant's alleged negligence: intense headaches, depression,

10   stomach upset and nausea, excessive acid reflux, vomiting, symptoms of PTSD

11   including staring into space reliving the incident, fatigue, insomnia, excessive sweating,

12   loss of appetite, excessive dry skin sometimes forming open sores on his scalp and

13   face.

14   2906.  Accordingly, and in connection with the alleged negligence of the Defendant

15   parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Entities be required to adopt

16   a third-party training program which demonstrates appropriate circumstances under

17   which a child should be reasonably separated from its natural parents, and the specific

18   legal procedures to adhere to for such a separation to take place, and that employees,

19   agents, and assigns of the Defendant Entities must be consistent with the same

20   narrative in the medical records of patients as they are when speaking  to or otherwise

21   communicating with a patient.

22   2907.  Accordingly, and in connection with the alleged negligence of the Defendant

23   parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Persons be required to

1   attend and pass a rigorous a third-party training program which demonstrates

2   appropriate circumstances under which a child should be reasonably separated from its

3   natural parents, and the specific legal procedures to adhere to for such a separation to

4   take place, and that employees, agents, and assigns of the Defendant Entities must be

5   consistent with the same narrative in the medical records of patients as they are when

6   speaking  to or otherwise communicating with a patient.

7   2908.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

8   training course, then the Defendant Entities should create their own legal training

9   program which demonstrates appropriate circumstances under which a child should be

10   reasonably separated from its natural parents, and the specific legal procedures to

11   adhere to for such a separation to take place, and that employees, agents, and assigns

12   of the Defendant Entities must be consistent with the same narrative in the medical

13   records of patients as they are when speaking to or otherwise communicating with a

14   patient; and, before the created program is implemented, the program must be

15   approved by an appropriate court or federal agency for review; and, the program must

16   be implemented within 180 days of the valid judgment of this honorable Court.

17   2909.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

18   conduct, including but not limited to, emotional and psychological distress, pain and

19   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

20   appropriate compensatory damages to account for PTSD therapies and other related

21   treatments as they have been and will continue to be necessary; Plaintiffs respectfully

22   request an amount of $84,800 in compensatory damages per Defendant.

1    2910.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

2    Neonatal, St. Luke's Physicians Group, Ms. Chaminie Wheeler, DO, Mr. Gilberto I.

3    Santiago, MD, & Ms. Dianne Jacobetz, MD's and therefore, their ability to afford the

4    appropriate training to avoid this egregious violation of the Pennsylvania Common Law,

5    and, since harm was actually caused to the current Plaintiff Smith Family, and since

6    harm is likely to continue to harm future postpartum families, and because the acts of

7    the Defendants and their agents, assigns, or employees callously disregarded the

8    Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the

9    imposition of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, St.

10   Luke's Physicians Group, Ms. Chaminie Wheeler, DO, Mr. Gilberto I. Santiago, MD, &

11   Ms. Dianne Jacobetz, MD to deter such Defendants from committing to such conduct in

12   the future which violates Commonwealth of Pennsylvania Common Law Plaintiffs

13   respectfully request an amount of $1,000,000 in punitive damages per Defendants Mr.

14   Gilberto I. Santiago, MD, and Ms. Dianne R. Jacobetz, MD; $5,000,000 per Defedants

15   St. Luke's Physician Group, and Ms. Chaminie Wheeler, DO; and $10,000,000 per

16   Defendants St. Luke's Hospital, and Onsite Neonatal.

17   2911.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

18   any actual injury despite the deprivation of their common law rights, the Plaintiffs

19   respectfully request a nominal judgment of $1.00.

20   # XXX.   Negligent Inflication of Emotional Distress IX

21   ## Mr. Smith v. St. Luke's Hospital, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq.,

22   ## Ms. Darla Frack, Ms. Dawn Hoffman & the "Hospital Leadership Team"

2912.  Under Pennsylvania tort law, determination of negligent infliction of emotional distress liability depends on "whether the emotional injuries sustained by the plaintiff were reasonably foreseeable to the defendant."[248]

2913.  Pennsylvania recognizes that a plaintiff has to among other options, in order to sustain an NIED claim, have "a contemporaneous perception of tortuous injury to a close relative".[249]

2914.  An NIED claim can be supported in cases when "the defendant assumes a duty by contract, or otherwise when the duty encompasses the plaintiff's emotional well-being." *Toney*, 36 A.3d at 92.

2915.  As well, "special relationships must encompass an implied duty to care for the plaintiff's emotional well- being." Toney, 36 A.3d at 95.

2916.  In *The Law of Torts*, Professor Dobbs explained that caring for the emotional well-being of the plaintiff is a "duty to take care for the feelings of," e.g., the mother of a stillborn child. (Citing The Law of Torts, § 29.15 (2000)).[250]

2917.  The relationship between the Defendants and Plaintiff Mrs. Smith must be of a "intensely emotionally charged" sort for a court to recognize a pertinent "special relationship" giving rise not to negligently inflict emotional distress.  Id at 20-21.

---

[248]*Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672, 684 (1979).

[249]*Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

[250]*MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 at 20 (W.D. Pa. 2019).

2918.  Plaintiff must demonstrate "compensable emotional harm" which is harm of a

type that a reasonable is not person expected to bear. Toney, 36 A.3d at 95.

2919.  The Plaintiff will have to demonstrate physical manifestations of emotional

distress.251

2920.  In addition to proving elements of a valid NIED claim, the Plaintiff will first have to

establish the traditional elements of a negligence claim. Id.

2921.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

or obligation recognized by the law, requiring the actor to conform to a certain standard

of conduct; (2) a failure to conform to the required standard; (3) a causal connection

between the conduct and the resulting injury; and (4) actual loss or damage resulting to

the interests of another.252

2922.  Negligence (1): A private medical provider actor removing a newborn child from

the custody of its parents has a duty to only do so with a court order or with reasonable

suspicion of drug abuse on the part of the mother, and in the absence of either has a

duty to allow both natural parents to be with the newborn baby.

2923.  Negligence (2): Defendants St. Luke's Hospital, Mr. Steve Lanshe, Esq., Mr.

Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

---

[251] *Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12,

2017).

[252] *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933,

938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir.

1993).

Team" failed to conform to the aforementioned duty when the Defendants removed

Plaintiffs Mr. and Mrs. Smith from Newborn baby J.A.S. by ejecting Plaintiff Mr. Smith

from Defendant St. Luke's Hospital property against their will and consent without

reasonable suspicion of drug abuse by Mrs. Smith or a court order to separate Newborn

baby J.A.S. from his parents, and prohibited both parents to go back into the hospital

NICU.

2924.  Negligence (3): Defendants St. Luke's Hospital, Mr. Steve Lanshe, Esq., Mr.

Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

Team"  actively and of their own volition, contacted Northampton County CYS, Monroe

County CYS, and the Bethlehem Police Department in a concerted effort to separate

Newborn baby J.A.S. from his parents Mr. and Mrs. Smith, and after over 24-hours of

time Mrs. Smith was allowed to be in the NICU with Newborn baby J.A.S., but Plaintiff

Mr. Smith was still restricted from Defendant St. Luke's Hospital property under threat of

arrest.

2925.  Negligence (4): Mr. and Mrs. Smith were in fact, separated from Newborn baby

J.A.S. against their will and consent and were left without control over the care of their

son Newborn baby J.A.S., including the ability to have skin-to-skin contact with newborn

baby J.A.S., and consent to newborn baby J.A.S.'s medical treatment, a separation

which continued for Plaintiff Mr. Smith for a period lasting some time longer than 72

hours, and did not allow him to be in the NICU to be with his postpartum wife and child

during a particularly difficult time as a family.

2926.  Defendants refusing to let Plaintiff Mr. Smith be with his newborn baby who was in neonatal intensive care was sure to cause emotional injuries to the Plaintiffs that were reasonably foreseeable to the Defendants.

2927.  Plaintiffs Mr. Smith perceived "a contemporaneous perception of tortuous injury to a close relative" because Plaintiff Mr. Smith knew that Mrs. Smith was gravely suffering under false accusations of methamphetamine abuse, and that Defendant St. Luke's Hospital had created a hostile atmosphere towards Mrs. Smith under which Mrs. Smith was being constantly traumatized and Plaintiff Mr. Smith could not provide any in-person comfort or relief to postpartum Mrs. Smith while she struggled to care for Newborn baby J.A.S. in the NICU.

2928.  As medical providers the Defendants had a special relationship with father of a newborn child in a NICU to take care of the feelings of that father.

2929.  Any situation in which parents are being told their newborn baby has rapidly gone from "healthy" to necessitating treatment in the NICU, especially if the mother's partner is not available to comfort her due to actions taken by the medical provider, is of the "intensely emotionally charged" sort that gives rise to a duty to not negligently inflict emotional distress.

2930.  In the instant case, Plaintiff Mr. Smith is closely related to Newborn baby J.A.S. who is his natural child, who was transferred to neonatal intensive care under suspicious circumstances, whose parents were separated without cause from him against their will and consent shortly after birth by Defendants and their agents, employees, or assigns, was an "intensely emotionally charged" situation.

1    2931.  Plaintiff Mr. Smith not being available to comfort and care for his disabled

2    postpartum wife and newborn baby during a period of great emotional distress created

3    the type of compensable harm that is worthy of relief because the harm inflicted on

4    Plaintiff Mr. Smith was of the type that a reasonable person is not expected to bear.

5    2932.  Defendants St. Luke's Hospital, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,

6    Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team's"

7    conduct violated Plaintiffs' rights under Pennsylvania common law negligent infliction of

8    emotional distress.

9    2933.  Plaintiff Mr. Smith has suffered the following physical manifestations of emotional

10   distress due to the Defendant's alleged negligence: intense headaches, depression,

11   stomach upset and nausea, excessive acid reflux, vomiting, symptoms of PTSD

12   including staring into space reliving the incident, fatigue, insomnia, excessive sweating,

13   loss of appetite, excessive dry skin sometimes forming open sores on his scalp and

14   face.

15   2934.  Accordingly, and in connection with the alleged negligence of the Defendant

16   parties, Plaintiffs Mr. Smith requests all Defendant Entities be required to adopt a third-

17   party training program which demonstrates appropriate circumstances under which a

18   child should be reasonably separated from its natural parents, and the specific legal

19   procedures to adhere to for such a separation to take place, including when and when it

20   is not appropriate to remove parents from the premises altogether and what the

21   standard for allowing parents back on the property to visit their newborn children in the

22   NICU is if they have been ejected from the property.

2935.  Accordingly, and in connection with the alleged negligence of the Defendant parties, Plaintiff Mr. Smith requests all Defendant Persons be required to attend and pass a rigorous a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place, including when it is and when it is not appropriate to remove parents from the premises altogether and what the standard for allowing parents back on the property to visit their newborn children in the NICU is if they have been ejected from the property.

2936.  Accordingly, if a third-party cannot be found to render the appropriately rigorous training course, then the Defendant Entities should create their own legal training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place, including when it is and when it is not appropriate to remove parents from the premises altogether and what the standard for allowing parents back on the property to visit their newborn children in the NICU is if they have been ejected from the property; and, before the created program is implemented, the program must be approved by an appropriate court or federal agency for review; and, the program must be implemented within 180 days of the valid judgment of this honorable Court.

2937.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related

1   treatments as they have been and will continue to be necessary; Plaintiff respectfully

2   requests an amount of $59,500 in compensatory damages per Defendant.

3   2938.  Given the substantial wealth of the Defendants St. Luke's Hospital, Mr. Steve

4   Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the

5   "Hospital Leadership Team" and therefore, their ability to afford the appropriate training

6   to avoid this egregious violation of the Pennsylvania Common Law, and, since harm

7   was actually caused to the current Plaintiff Smith Family, and since harm is likely to

8   continue to harm future postpartum families, and because the acts of the Defendants

9   and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a

10  reckless and wanton manner, the Plaintiffs respectfully request the imposition of

11  punitive damages on Defendants St. Luke's Hospital, Mr. Steve Lanshe, Esq., Mr.

12  Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

13  Team" to deter such Defendants from committing to such conduct in the future which

14  violates Commonwealth of Pennsylvania Common Law Plaintiffs respectfully request an

15  amount of $5,000,000 in punitive damages per Defendants Mr. Steve Lanshe, Esq., Mr.

16  Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman & the "Hospital Leadership

17  Team"; and $10,000,000 per Defendant St. Luke's Hospital.

18  2939.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

19  any actual injury despite the deprivation of their common law rights, the Plaintiffs

20  respectfully request a nominal judgment of $1.00.

21  # XXXI.   <u>Negligent Infliction of Emotional Distress X</u>

1    Mr. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

2    MD, & Ms. Cynthia Shultz, MD

3    2940.  Under Pennsylvania tort law, determination of negligent infliction of emotional

4    distress liability depends on "whether the emotional injuries sustained by the plaintiff

5    were reasonably foreseeable to the defendant."[253]

6    2941.  Pennsylvania recognizes that a plaintiff has to among other options, in order to

7    sustain an NIED claim, have "a contemporaneous perception of tortuous injury to a

8    close relative".[254]

9    2942.  An NIED claim can be supported in cases when "the defendant assumes a duty

10   by contract, or otherwise when the duty encompasses the plaintiff's emotional well-

11   being." Toney, 36 A.3d at 92.

12   2943.  As well, "special relationships must encompass an implied duty to care for the

13   plaintiff's emotional well- being." Toney, 36 A.3d at 95.

14   2944.  In *The Law of Torts*, Professor Dobbs explained that caring for the emotional

15   well-being of the plaintiff is a "duty to take care for the feelings of," e.g., the mother of a

16   stillborn child. (Citing The Law of Torts, § 29.15 (2000)).[255]

---

[253]*Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672, 684 (1979).

[254]*Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

[255]*MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 at 20 (W.D. Pa. 2019).

2945.  The relationship between the Defendants and Plaintiff Mrs. Smith must be of a "intensely emotionally charged" sort for a court to recognize a pertinent "special relationship" giving rise not to negligently inflict emotional distress.  Id at 20-21.

2946.   Plaintiff must demonstrate "compensable emotional harm" which is harm of a type that a reasonable is not person expected to bear. Toney, 36 A.3d at 95.

2947.  The Plaintiff will have to demonstrate physical manifestations of emotional distress.[256]

2948.  In addition to proving elements of a valid NIED claim, the Plaintiff will first have to establish the traditional elements of a negligence claim. Id.

2949.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the required standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another.[257]

2950.  Negligence (1): A private medical provider actor removing a newborn child from the custody of its parents has a duty to only do so with a court order or with reasonable suspicion of drug abuse on the part of the mother, and without either the former or the

---

[256] *Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

[257] *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1  latter on behalf of Defendant actors, the parents of such allegations have a valid logical

2  and emotional basis for contesting such allegations, and have a right to do so without

3  being painted as people capable of such violence that they should be removed from

4  hospital property under threat of arrest while their newborn baby resides in a NICU.

5  2951.  Negligence (2): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

6  Teresa Marlino, MD, & Ms. Cynthia Shultz, MD failed to conform to the aforementioned

7  duty when the Defendants removed Mr. and Mrs. Smith from Newborn baby J.A.S. by

8  ejecting Mr. and Mrs. Smith from Defendant St. Luke's Hospital's property against their

9  will and consent under threat of arrest without reasonable suspicion of drug abuse by

10  Mrs. Smith or a court order to separate Newborn baby J.A.S. from his parents, by

11  proceeding to paint the color of violence on the parents Mr. and Mrs. Smith to both

12  private parties and state officials to the degree that state officials removed Mr. and Mrs.

13  Smith from Defendant St. Luke's Hospital's property under threat of arrest, as well,

14  other state officials opened up an erroneous investigation for over a month into the

15  supposed violent nature of the Plaintiff Mr. Smith.

16  2952.  Negligence (3): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

17  Teresa Marlino, MD, & Ms. Cynthia Shultz, MD actively and of their own volition,

18  contacted Northampton County CYS, Monroe County CYS, and the Bethlehem Police

19  Department in a concerted effort to separate Newborn baby J.A.S. from his parents

20  Plaintiffs Mr. and Mrs. Smith, during which process the Defendants portrayed Mr. and

21  Mrs. Smith as people who had acted in a fashion so violent towards Defendant hospital

22  agents, employees, and assigns that Mr. and Mrs. Smith were locked out of the NICU,

23  which was guarded against their presence by numerous hospital security, removed from

1  Defendant St. Luke's Hospital's property against their will and consent under threat of

2  arrest, and then had over a month long investigation opened into the nature of the

3  supposed abusive nature alleged against Plaintiff Mr. Smith by yet another state entity.

4  2953.  Negligence (4): Mr. and Mrs. Smith were in fact, separated from Newborn baby

5  J.A.S. against their will and consent and were left without control over the care of their

6  Newborn baby child J.A.S., including the ability to have skin-to-skin contact with

7  Newborn baby J.A.S., and consent to Newborn baby J.A.S.'s medical treatment.

8  2954.  Defendants alleging that Plaintiff Mr. Smith was a person of violent character and

9  refusing to let Plaintiff Mr. Smith be with his newborn baby who was in neonatal

10  intensive care was sure to cause emotional injuries to the Plaintiffs that were reasonably

11  foreseeable to the Defendants.

12  2955.  Plaintiffs Mr. Smith perceived "a contemporaneous perception of tortuous injury

13  to a close relative" because Plaintiff Mr. Smith knew that Mrs. Smith was gravely

14  suffering under false accusations of methamphetamine abuse, and that Defendant St.

15  Luke's Hospital had created a hostile atmosphere towards Mrs. Smith under which Mrs.

16  Smith was being constantly traumatized and Defendant Mr. Smith could not provide any

17  in-person comfort or relief to postpartum Mrs. Smith while she struggled to care for

18  Newborn baby J.A.S. in the NICU.

19  2956.  As medical providers the Defendants had a special relationship with father of a

20  newborn child in a NICU to take care of the feelings of that father.

21  2957.  Any situation in which parents are being told their newborn baby has rapidly gone

22  from "healthy" to necessitating treatment in the NICU, especially if the mother's partner

23  is not available to comfort her due to actions taken by the medical provider, is of the

1  "intensely emotionally charged" sort that gives rise to a duty to not negligently inflict

2  emotional distress.

3  2958.  In the instant case, Plaintiff Mr. Smith is closely related to Newborn baby J.A.S.

4  who is his natural child, who was transferred to neonatal intensive care under

5  suspicious circumstances, whose parents were separated without cause from him

6  against their will and consent shortly after birth by Defendants and their agents,

7  employees, or assigns, was an "intensely emotionally charged" situation.

8  2959.  Plaintiff Mr. Smith, by not being available to comfort and care for his disabled

9  postpartum wife and newborn baby during a period of great emotional distress created

10  the type of compensable harm that is worthy of relief because the harm inflicted on

11  Plaintiff Mr. Smith was of the type that a reasonable person is not expected to bear.

12  2960.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

13  MD, & Ms. Cynthia Shultz, MD's conduct violated Plaintiffs' rights under Pennsylvania

14  common law negligent infliction of emotional distress.

15  2961.  Plaintiff Mr. Smith has suffered the following physical manifestations of emotional

16  distress due to the Defendant's alleged negligence: intense headaches, depression,

17  stomach upset and nausea, excessive acid reflux, vomiting, symptoms of PTSD

18  including staring into space reliving the incident, fatigue, insomnia, excessive sweating,

19  loss of appetite, excessive dry skin sometimes forming open sores on his scalp and

20  face.

21  2962.  Accordingly, and in connection with the alleged negligence of the Defendant

22  parties, Plaintiffs Mr. Smith requests all Defendant Entities be required to adopt a third-

23  party training program which demonstrates appropriate circumstances under which a

1    child should be reasonably separated from its natural parents, and the specific legal

2    procedures to adhere to for such a separation to take place, including when and when it

3    is not appropriate to remove parents from the premises altogether and what the

4    standard for allowing parents back on the property to visit their newborn children in the

5    NICU is if they have been ejected from the property.

6    2963.  Accordingly, and in connection with the alleged negligence of the Defendant

7    parties, Plaintiff Mr. Smith requests all Defendant Persons be required to attend and

8    pass a rigorous a third-party training program which demonstrates appropriate

9    circumstances under which a child should be reasonably separated from its natural

10   parents, and the specific legal procedures to adhere to for such a separation to take

11   place, including when and when it is not appropriate to remove parents from the

12   premises altogether and what the standard for allowing parents back on the property to

13   visit their newborn children in the NICU is if they have been ejected from the property.

14   2964.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

15   training course, then the Defendant Entities should create their own legal training

16   program which demonstrates appropriate circumstances under which a child should be

17   reasonably separated from its natural parents, and the specific legal procedures to

18   adhere to for such a separation to take place, including accurately portraying the

19   demeanor of the parents of the newborn child as non-violent, so long as they did not act

20   in a violent manner; and, before the created program is implemented, the program must

21   be approved by an appropriate court or federal agency for review; and, the program

22   must be implemented within 180 days of the valid judgment of this honorable Court.

2965.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiff respectfully requests an amount of $59,500 in compensatory damages per Defendant.

2966.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, and Ms. Cynthia Shultz, MD and therefore, their ability to afford the appropriate training to avoid this egregious violation of the Pennsylvania Common Law, and, since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum families, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the imposition of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, and Ms. Cynthia Shultz, MD to deter such Defendants from committing to such conduct in the future which violates Commonwealth of Pennsylvania Common Law Plaintiffs respectfully request an amount of $10,000,000 in punitive damages per Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, and Ms. Cynthia Shultz, MD.

2967.  In the unlikely event that the jury does not find that Plaintiff Mr. Smith suffered any actual injury despite the deprivation of their common law rights, the Plaintiff respectfully requests a nominal judgment of $1.00.

# XXXII. <u>Negligent Infliction of Emotional Distress XI</u>

## <u>Mrs. Smith v. St. Luke's Hospital & Social Worker "Vanessa"</u>

2968.  Under Pennsylvania tort law, determination of negligent infliction of emotional distress liability depends on "whether the emotional injuries sustained by the plaintiff were reasonably foreseeable to the defendant."[258]

2969.  Pennsylvania recognizes that a plaintiff has to among other options, in order to sustain an NIED claim, have "a contemporaneous perception of tortuous injury to a close relative".[259]

2970.  An NIED claim can be supported in cases when "the defendant assumes a duty by contract, or otherwise when the duty encompasses the plaintiff's emotional well-being." Toney, 36 A.3d at 92.

2971.  As well, "special relationships must encompass an implied duty to care for the plaintiff's emotional well- being." Toney, 36 A.3d at 95.

2972.  In The Law of Torts, Professor Dobbs explained that caring for the emotional well-being of the plaintiff is a "duty to take care for the feelings of," e.g., the mother of a stillborn child. (Citing The Law of Torts, § 29.15 (2000)).[260]

---

[258] *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672, 684 (1979).
[259] *Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

[260] *MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 at 20 (W.D. Pa. 2019).

1    2973.  The relationship between the Defendants and Plaintiff Mrs. Smith must be of a

2    "intensely emotionally charged" sort for a court to recognize a pertinent "special

3    relationship" giving rise not to negligently inflict emotional distress.  Id at 20-21.

4    2974.   Plaintiff must demonstrate "compensable emotional harm" which is harm of a

5    type that a reasonable is not person expected to bear. Toney, 36 A.3d at 95.

6    2975.  The Plaintiff will have to demonstrate physical manifestations of emotional

7    distress.[261]

8    2976.  In addition to proving elements of a valid NIED claim, the Plaintiff will first have to

9    establish the traditional elements of a negligence claim. Id.

10   2977.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

11   or obligation recognized by the law, requiring the actor to conform to a certain standard

12   of conduct; (2) a failure to conform to the required standard; (3) a causal connection

13   between the conduct and the resulting injury; and (4) actual loss or damage resulting to

14   the interests of another.[262]

15   2978.  Negligence (1): A private medical provider actor removing a newborn child from

16   the custody of its parents has a duty to not increase the amount of mental anguish of

---

[261] *Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

[262] *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1   the parents by telling the parents that they retain rights to their child while the parents

2   are routinely witnessing parental rights being taken away or extinguished.

3   2979.  Negligence (2): Defendants St. Luke's Hospital and Hospital Social Worker

4   "Vanessa" failed to conform to the aforementioned duty when the Defendants attempted

5   to reaffirm to Plaintiff parents Mr. and Mrs. Smith that they had care and control over the

6   medical decisions and general welfare of their child, while simultaneously having the

7   parents removed from the property, having parental consent continually denied in favor

8   of Defendants' desires, Mr. Smith not being allowed to visit his child in the NICU after

9   April 9th at all, around the clock guarding of Plaintiff Mrs. Smith while she was in the

10  NICU, and not being able to leave the hospital with their child.

11  2980.  Negligence (3): Defendants St. Luke's Hospital and Hospital Social Worker

12  "Vanessa" actively and of her own volition, communicated to Plaintiff Mrs. Smith, upon

13  returning to the NICU to care for Newborn baby J.A.S. that Plaintiff Mrs. Smith had

14  "custody", including the right to make decisions concerning the health and well-being of

15  Newborn baby J.A.S. despite the fact that under the current circumstances and

16  atmosphere Plaintiff Mrs. Smith clearly did not have custody of her child, nor the right to

17  make decisions for child Newborn baby J.A.S. that the Defendants did not 100% agree

18  with without risk of ejection from the NICU and loss of access to Newborn baby J.A.S.

19  again.

20  2981.  Negligence (4): Mr. and Mrs. Smith were in fact, separated from Newborn baby

21  J.A.S. against their will and consent and were left without control over the care of their

22  son Newborn baby J.A.S., including the ability to breastfeed Newborn baby J.A.S., have

1   skin-to-skin contact with Newborn baby J.A.S., and consent to Newborn baby J.A.S.'s

2   medical treatment.

3   2982.  Defendants adding mental anguish through insensitive verbiage towards the

4   mother of a newborn baby who was in neonatal intensive care was sure to cause

5   emotional injuries to the Plaintiff that were reasonably foreseeable to the Defendants.

6   2983.  Plaintiff Mrs. Smith suffered the physical impact of the negligent words as the

7   emotions of those words manifested themselves through traumatic physical symptoms.

8   2984.  As medical providers the Defendants had a special relationship with the mother

9   of a newborn child in a NICU to take care of the feelings of that mother.

10  2985.  Any situation in which parents are being told they have care and control over

11  their newborn baby when the actions of the medical providers are paramount to their

12  own is one of the "intensely emotionally charged" sort that gives rise to a duty to not

13  negligently inflict emotional distress.

14  2986.  Mr. and Mrs. Smith being told one narrative verbally while another narrative was

15  being created about Mr. and Mrs. Smith and Newborn baby J.A.S. created the type of

16  compensable harm that is worthy of relief because the harm inflicted on Plaintiff Mrs.

17  Smith was of the type that a reasonable person is not expected to bear.

18  2987.  Defendants St. Luke's Hospital and Hospital Social Worker "Vanessa's" conduct

19  violated Plaintiffs' rights under Pennsylvania common law negligent infliction of

20  emotional distress.

21  2988.  Plaintiff Mrs. Smith has suffered the following physical manifestations of

22  emotional distress to the Defendant's alleged negligence: nightmares, night sweats,

23  excessive diarrhea, anxiety and panic attacks, separation anxiety from newborn baby

1   J.A.S., insomnia, depression, PTSD symptoms including staring into space while

2   reliving the incident, muscle tightness and back spasms, and body tremors.

3   2989.  Accordingly, and in connection with the alleged negligence of the Defendant

4   parties, Plaintiff Mrs. Smith and requests all Defendant Entities be required to adopt a

5   third-party training program which demonstrates appropriate circumstances under which

6   a child should be reasonably separated from its natural parents, and the specific legal

7   procedures to adhere to for such a separation to take place, including how not to inflict

8   additional trauma by making statements that are inverse to the reality facing the

9   parents.

10   2990.  Accordingly, and in connection with the alleged negligence of the Defendant

11   parties, Plaintiff Mrs. Smith and newborn baby J.A.S. request all Defendant Persons be

12   required to attend and pass a rigorous a third-party training program which

13   demonstrates appropriate circumstances under which a child should be reasonably

14   separated from its natural parents, and the specific legal procedures to adhere to for

15   such a separation to take place, including how not to inflict additional trauma by making

16   statements that are inverse to the reality facing the parents.

17   2991.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

18   training course, then the Defendant Entities should create their own legal training

19   program which demonstrates appropriate circumstances under which a child should be

20   reasonably separated from its natural parents, and the specific legal procedures to

21   adhere to for such a separation to take place, including how not to inflict additional

22   trauma by making statements that are inverse to the reality facing the parents; and,

23   before the created program is implemented, the program must be approved by an

1   appropriate court or federal agency for review; and, the program must be implemented

2   within 180 days of the valid judgment of this honorable Court.

3   2992.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

4   conduct, including but not limited to, emotional and psychological distress, pain and

5   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

6   appropriate compensatory damages to account for PTSD therapies and other related

7   treatments as they have been and will continue to be necessary; Plaintiff respectfully

8   requests an amount of $59,500 in compensatory damages per Defendant.

9   2993.  Given the substantial wealth of the Defendant St. Luke's Hospital, and therefore,

10   its ability to afford the appropriate training to avoid this egregious violation of the

11   Pennsylvania Common Law, and, since harm was actually caused to the current

12   Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum

13   families, and because the acts of the Defendants and their agents, assigns, or

14   employees callously disregarded the Plaintiff's rights in a reckless and wanton manner,

15   the Plaintiffs respectfully request the imposition of punitive damages on Defendant St.

16   Luke's Hospital to deter such Defendant from committing to such conduct in the future

17   which violates Commonwealth of Pennsylvania Common Law Plaintiffs respectfully

18   request an amount of $1,000,000 in punitive damages per Defendant Social Worker

19   "Vanessa"; and $10,000,000 per Defendant St. Luke's Hospital.

20   2994.  In the unlikely event that the jury does not find that Plaintiff Mrs. Smith suffered

21   any actual injury despite the deprivation of their common law rights, the Plaintiff

22   respectfully requests a nominal judgment of $1.00.

23   ## XXXIII.    **Negligent Infliction of Emotional Distress XII**

1   <u>Mr. & Mrs. Smith v. St. Luke's Hospital, "Security Guard 'Freddy'", "Security Guard</u>

2   <u>'Joe'", "Security Guard 'Nate'", "Security Supervisor 'Unknown'", "Head of</u>

3   <u>Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq.,</u>

4   <u>Ms. Darla Frack, Ms. Dawn Hoffman & the "Hospital Leadership Team"</u>

5   2995.  Under Pennsylvania tort law, determination of negligent infliction of emotional

6   distress liability depends on "whether the emotional injuries sustained by the plaintiff

7   were reasonably foreseeable to the defendant."[263]

8   2996.  Pennsylvania recognizes that a plaintiff has to among other options, in order to

9   sustain an NIED claim, have "a contemporaneous perception of tortuous injury to a

10   close relative".[264]

11   2997.  An NIED claim can be supported in cases when "the defendant assumes a duty

12   by contract, or otherwise when the duty encompasses the plaintiff's emotional well-

13   being." Toney, 36 A.3d at 92.

14   2998.  As well, "special relationships must encompass an implied duty to care for the

15   plaintiff's emotional well-being." Toney, 36 A.3d at 95.

---

[263]*Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672, 684 (1979).

[264]*Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

2999.  In The Law of Torts, Professor Dobbs explained that caring for the emotional well-being of the plaintiff is a "duty to take care for the feelings of," e.g., the mother of a stillborn child. (Citing The Law of Torts, § 29.15 (2000)).[265]

3000.  The relationship between the Defendants and Plaintiff Mrs. Smith must be of a "intensely emotionally charged" sort for a court to recognize a pertinent "special relationship" giving rise not to negligently inflict emotional distress.  Id at 20-21.

3001.   Plaintiff must demonstrate "compensable emotional harm" which is harm of a type that a reasonable is not person expected to bear. Toney, 36 A.3d at 95.

3002.  The Plaintiff will have to demonstrate physical manifestations of emotional distress.[266]

3003.  In addition to proving elements of a valid NIED claim, the Plaintiff will first have to establish the traditional elements of a negligence claim. Id.

3004.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the required standard; (3) a causal connection

---

[265]*MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 at 20 (W.D. Pa. 2019).

[266]*Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

1  between the conduct and the resulting injury; and (4) actual loss or damage resulting to

2  the interests of another.267

3  3005.  Negligence (1): A private medical provider actor placing security guards to watch

4  a mother, including during breastfeeding, has a duty to use security staff which identifies

5  with the female gender.

6  3006.  Negligence (2): Defendants St. Luke's Hospital, "Security Guard 'Freddy'",

7  Security Guard 'Joe'", Security Guard 'Nate'" "Security Supervisor 'Unknown'", "Head of

8  Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

9  Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" failed to conform

10  to the aforementioned duty when the Defendants placed around the clock male security

11  guards to observe Plaintiff Mrs. Smith while she was in the NICU from when she was

12  allowed to return to be with Newborn baby J.A.S. until Plaintiff Mrs. Smith and Newborn

13  baby J.A.S. were discharged two days later.

14  3007.  Negligence (3): Defendants St. Luke's Hospital, "Security Guard 'Freddy'",

15  Security Guard 'Joe'", Security Guard 'Nate'" "Security Supervisor 'Unknown'", "Head of

16  Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

17  Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" actively and of

18  their own volition, placed male security guards around the clock at Newborn baby

---

267 *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933,

938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir.

1993).

1   J.A.S.'s NICU room whenever Plaintiff Mrs. Smith was present, and who followed

2   Plaintiff Mrs. Smith to the bathroom down the hall.

3   3008.  Negligence (4): Plaintiff Mrs. Smith felt humiliated, embarrassed, helpless, and

4   ashamed to have a male security guard constantly monitoring her including when she

5   breastfed Newborn baby J.A.S.; such actions also prevented skin-to-skin contact with

6   Newborn baby J.A.S. given the aforementioned emotions elicited by the presence of the

7   male security guard; Plaintiff Mr. Smith felt humiliated, embarrassed, helpless, and

8   ashamed to have a male security guard constantly monitoring his wife, including while

9   she breastfed.

10  3009.  Defendants placing around the clock guards at Newborn baby J.A.S.'s NICU pod,

11  including while mother of a newborn baby child was breastfeeding, who was in neonatal

12  intensive care, was sure to cause emotional injuries to the Plaintiffs that were

13  reasonably foreseeable to the Defendants.

14  3010.  Plaintiff Mrs. Smith suffered the physical impact of the negligent words as the

15  emotions of those words manifested themselves through traumatic physical symptoms;

16  and, Plaintiff Mr. Smith perceived "a contemporaneous perception of tortuous injury to a

17  close relative" because he knew that although she could now be with their child in the

18  NICU, Plaintiff Mrs. Smith was constantly being humiliated by not only being treated like

19  a mother and human being who abuses babies, but he knew that as a particularly

20  conservative woman concerning nudity and privacy that the depth of embarrassment

21  and humiliation that Plaintiff Mrs. Smith was suffering was unbearably difficult, thereby

22  causing Plaintiff Mr. Smith mental anguish as well.

3011.  As medical providers the Defendants had a special relationship with the mother and father of a newborn child in a NICU to take care of the feelings of that mother and father.

3012.  Any situation in which parents are being demonstrably told that they have to be monitored for abusive behavior towards their newborn baby is one of the "intensely emotionally charged" sort that gives rise to a duty to not negligently inflict emotional distress.

3013.  Plaintiff Mrs. Smith being monitored around the clock by solely male security guards, even while she breastfed created the type of compensable harm that is worthy of relief because the harm inflicted on Plaintiff Mrs. Smith was of the type that a reasonable person is not expected to bear.

3014.  Defendants St. Luke's Hospital, "Security Guard 'Freddy'", Security Guard 'Joe'", Security Guard 'Nate'" "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team's" conduct violated Plaintiffs' rights under Pennsylvania common law negligent infliction of emotional distress.

3015.  Plaintiff Mrs. Smith has suffered the following physical manifestations of emotional distress to the Defendant's alleged negligence: nightmares, night sweats, excessive diarrhea, anxiety and panic attacks, separation anxiety from newborn baby J.A.S., insomnia, depression, PTSD symptoms including staring into space while reliving the incident, muscle tightness and back spasms, and body tremors.

3016.  Plaintiff Mr. Smith has suffered the following physical manifestations of emotional distress due to the Defendant's alleged negligence: intense headaches, depression,

1    stomach upset and nausea, excessive acid reflux, vomiting, symptoms of PTSD

2    including staring into space reliving the incident, fatigue, insomnia, excessive sweating,

3    loss of appetite, excessive dry skin sometimes forming open sores on his scalp and

4    face.

5    3017.  Accordingly, and in connection with the alleged negligence of the Defendant

6    parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Entities be required to adopt

7    a third-party training program which demonstrates appropriate circumstances under

8    which a child should be reasonably separated from its natural parents, and the specific

9    legal procedures to adhere to for such a separation to take place, including that if a

10   presence of security is deemed required by the private medical provider that such a

11   presence must be an individual who identifies with the female gender.

12   3018.  Accordingly, and in connection with the alleged negligence of the Defendant

13   parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Persons be required to

14   attend and pass a rigorous a third-party training program which demonstrates

15   appropriate circumstances under which a child should be reasonably separated from its

16   natural parents, and the specific legal procedures to adhere to for such a separation to

17   take place, including that if a presence of security is deemed required by the private

18   medical provider that such a presence must be an individual who identifies with the

19   female gender.

20   3019.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

21   training course, then the Defendant Entities should create their own legal training

22   program which demonstrates appropriate circumstances under which a child should be

23   reasonably separated from its natural parents, and the specific legal procedures to

1   adhere to for such a separation to take place, including that if a presence of security is

2   deemed required by the private medical provider that such a presence must be an

3   individual who identifies with the female gender; and, before the created program is

4   implemented, the program must be approved by an appropriate court or federal agency

5   for review; and, the program must be implemented within 180 days of the valid

6   judgment of this honorable Court.

7   3020.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

8   conduct, including but not limited to, emotional and psychological distress, pain and

9   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

10   appropriate compensatory damages to account for PTSD therapies and other related

11   treatments as they have been and will continue to be necessary; Plaintiffs respectfully

12   request an amount of $84,800 in compensatory damages per Defendant.

13   3021.  Given the substantial wealth of the Defendants St. Luke's Hospital, "Security

14   Guard 'Freddy'", Security Guard 'Joe'", Security Guard 'Nate'" "Security Supervisor

15   'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert

16   L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

17   Team," and therefore, its ability to afford the appropriate training to avoid this egregious

18   violation of the Pennsylvania Common Law, and, since harm was actually caused to the

19   current Plaintiff Smith Family, and since harm is likely to continue to harm future

20   postpartum families, and because the acts of the Defendants and their agents, assigns,

21   or employees callously disregarded the Plaintiff's rights in a reckless and wanton

22   manner, the Plaintiffs respectfully request the imposition of punitive damages on

23   Defendants St. Luke's Hospital, "Security Guard 'Freddy'", Security Guard 'Joe'",

1  Security Guard 'Nate'" "Security Supervisor 'Unknown'", "Head of Hospital Security

2  'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

3  Dawn Hoffman, and the "Hospital Leadership Team" to deter such Defendant from

4  committing to such conduct in the future which violates Commonwealth of Pennsylvania

5  Common Law Plaintiffs respectfully request an amount of $1,000,000 in punitive

6  damages per Defendants "Security Guard 'Freddy'", "Security Guard 'Joe'", and

7  "Security Guard 'Nate'"; $5,000,000 per Defendants "Security Supervisor 'Unknown'",

8  "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,

9  Esq., Ms. Darla Frack, Ms. Dawn Hoffman & the "Hospital Leadership Team"; and

10  $10,000,000 per Defendant St. Luke's Hospital.

11  3022.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

12  suffered any actual injury despite the deprivation of their common law rights, the

13  Plaintiffs respectfully request a nominal judgment of $1.00.

14  ## XXXIV.    Negligent Infliction of Emotional Distress XIII

15  ### Mr. & Mrs. Smith v. St. Luke's Hospital

16  3023.  Under Pennsylvania tort law, determination of negligent infliction of emotional

17  distress liability depends on "whether the emotional injuries sustained by the plaintiff

18  were reasonably foreseeable to the defendant."[268]

---

[268]*Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672, 684 (1979).

3024.  Pennsylvania recognizes that a plaintiff has to among other options, in order to sustain an NIED claim, have "a contemporaneous perception of tortuous injury to a close relative".[269]

3025.  An NIED claim can be supported in cases when "the defendant assumes a duty by contract, or otherwise when the duty encompasses the plaintiff's emotional well-being." Toney, 36 A.3d at 92.

3026.  As well, "special relationships must encompass an implied duty to care for the plaintiff's emotional well- being." Toney, 36 A.3d at 95.

3027.  In The Law of Torts, Professor Dobbs explained that caring for the emotional well-being of the plaintiff is a "duty to take care for the feelings of," e.g., the mother of a stillborn child. (Citing The Law of Torts, § 29.15 (2000)).[270]

3028.  The relationship between the Defendants and Plaintiff Mrs. Smith must be of a "intensely emotionally charged" sort for a court to recognize a pertinent "special relationship" giving rise not to negligently inflict emotional distress.  Id at 20-21.

3029.   Plaintiff must demonstrate "compensable emotional harm" which is harm of a type that a reasonable is not person expected to bear. Toney, 36 A.3d at 95.

---

[269]*Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

[270]*MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 at 20 (W.D. Pa. 2019).

1    3030.  The Plaintiff will have to demonstrate physical manifestations of emotional

2    distress.271

3    3031.  In addition to proving elements of a valid NIED claim, the Plaintiff will first have to

4    establish the traditional elements of a negligence claim. Id.

5    3032.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

6    or obligation recognized by the law, requiring the actor to conform to a certain standard

7    of conduct; (2) a failure to conform to the required standard; (3) a causal connection

8    between the conduct and the resulting injury; and (4) actual loss or damage resulting to

9    the interests of another.272

10   3033.  Negligence (1): A private medical provider actor has a duty to provide postpartum

11   mothers with a child in a NICU with reasonable accommodations for comfort, especially

12   if the postpartum mother has a disability that prevents the function of walking normally.

13   3034.  Negligence (2): Defendant St. Luke's Hospital failed to conform to the

14   aforementioned duty when the Defendant failed to provide Plaintiff Mrs. Smith with a

15   place to sleep in the NICU, no bathroom in Newborn baby J.A.S.'s NICU pod, forcing

16   Plaintiff Mrs. Smith to use a bathroom approximately 70-80 ft. away (given injuries to the

17   vaginal region a postpartum mother use a restroom for more than just excretion of

---

[271] *Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12,

2017).

[272] *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933,

938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir.

1993).

waste), not a single handicap accessible door in all of the NICU which could be opened by Plaintiff Mrs. Smith alone without the help of others while using a wheelchair, and no privacy to check on postpartum functions within the NICU pod because of male guards and nurse intrusions as well as one glass panel acting as a wall, on the other side of which sat the male security guards and typically one or more nurses.

3035.  Negligence (3): Defendant St. Luke's Hospital actively and of their own volition, did not provide any reasonable accommodations for a postpartum mother attending to her newborn child in a NICU who had an obvious difficulty locomoting.

3036.  Negligence (4): Plaintiff Mrs. Smith suffered both mentally and physically from the lack of reasonable accommodations provided to Plaintiff Mrs. Smith, which are, but not limited to: additional knee pain than Plaintiff Mrs. Smith typically feels, pelvic pain, increased and prolonged vaginal bleeding, depression and general feeling of disgust from not being able to regularly tend to her own postpartum needs, back and leg pain, insomnia from not having place to lay down, fatigue, and body aches.

3037.  Plaintiff Mrs. Smith has a knee injury which has required surgery in the past for which she wears an obviously recognizable knee brace whenever she walks; her knee surgery was twice performed at a St. Luke's Hospital facility.

3038.  By Defendants never providing any accommodations for Plaintiff Mrs. Smith as a postpartum mother with a knee disability, who was in neonatal intensive care with newborn baby, was sure to cause emotional injuries to the Plaintiffs that were reasonably foreseeable to the Defendants.

3039.  Plaintiff Mrs. Smith suffered the physical impact of increased pain and discomfort to her entire body, and especially in her injured knee; and, Plaintiff Mr. Smith perceived

1   "a contemporaneous perception of tortuous injury to a close relative" because he knew

2   that although she could now be with their child in the NICU Mrs. Smith was constantly in

3   non-stop pain and discomfort both physical and mental due to Plaintiff Mrs. Smith's

4   constantly poor treatment considering her disability, thereby causing Plaintiff Mr. Smith

5   mental anguish as well.

6   3040.  As medical providers the Defendants had a special relationship with the mother

7   and father of a newborn child in a NICU to take care of the feelings of that mother and

8   father.

9   3041.  Any situation in which parents are literally afraid of asking hospital staff for

10  anything, even so much as a pillow, because of a fear of being ejected from Defendant

11  St. Luke's Hospital again at any moment without her newborn baby is a situation of the

12  "intensely emotionally charged" sort that gives rise to a duty to not negligently inflict

13  emotional distress.

14  3042.  Plaintiff Mrs. Smith being in physical pain around the clock because she was

15  afraid to ask Defendant St. Luke's Hospital staff for basic accommodations created the

16  type of compensable harm that is worthy of relief because the harm inflicted on Plaintiff

17  Mrs. Smith was of the type that a reasonable person is not expected to bear.

18  3043.  Defendant St. Luke's Hospital's conduct violated Plaintiffs' rights under

19  Pennsylvania common law negligent infliction of emotional distress.

20  3044.  Plaintiff Mrs. Smith has suffered the following physical manifestations of

21  emotional distress to the Defendant's alleged negligence: nightmares, night sweats,

22  excessive diarrhea, anxiety and panic attacks, separation anxiety from newborn baby

1    J.A.S., insomnia, depression, PTSD symptoms including staring into space while

2    reliving the incident, muscle tightness and back spasms, and body tremors.

3    3045.  Plaintiff Mr. Smith has suffered the following physical manifestations of emotional

4    distress due to the Defendant's alleged negligence: intense headaches, depression,

5    stomach upset and nausea, excessive acid reflux, vomiting, symptoms of PTSD

6    including staring into space reliving the incident, fatigue, insomnia, excessive sweating,

7    loss of appetite, excessive dry skin sometimes forming open sores on his scalp and

8    face.

9    3046.  Accordingly, and in connection with the alleged negligence of the Defendant

10   parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Entities be required to adopt

11   a third-party training program which demonstrates the appropriate circumstances

12   reasonable accommodations should be offered in to a postpartum mother, and what

13   those reasonable accommodations should be.

14   3047.  Accordingly, and in connection with the alleged negligence of the Defendant

15   parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Persons be required to

16   attend and pass a rigorous a third-party training program which demonstrates the

17   appropriate circumstances reasonable accommodations should be offered in to a

18   postpartum mother, and what those reasonable accommodations should be.

19   3048.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

20   training course, then the Defendant Entities should create their own legal training

21   program on when it is it is appropriate to offer reasonable accommodations to a

22   postpartum disabled mother and what the nature of those accommodations should be;

23   and, before the created program is implemented, the program must be approved by an

1  appropriate court or federal agency for review; and, the program must be implemented

2  within 180 days of the valid judgment of this honorable Court.

3  3049.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

4  conduct, including but not limited to, emotional and psychological distress, pain and

5  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

6  appropriate compensatory damages to account for PTSD therapies and other related

7  treatments as they have been and will continue to be necessary; Plaintiffs respectfully

8  request an amount of $84,800 in compensatory damages per Defendant.

9  3050.  Given the substantial wealth of the Defendant St. Luke's Hospital, and therefore,

10  its ability to afford the appropriate training to avoid this egregious violation of the

11  Pennsylvania Common Law, and, since harm was actually caused to the current

12  Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum

13  families, and because the acts of the Defendants and their agents, assigns, or

14  employees callously disregarded the Plaintiff's rights in a reckless and wanton manner,

15  the Plaintiffs respectfully request the imposition of punitive damages on Defendant St.

16  Luke's Hospital to deter such Defendant from committing to such conduct in the future

17  which violates Commonwealth of Pennsylvania Common Law Plaintiffs respectfully

18  request an amount of $10,000,000 in punitive damages per Defendant St. Luke's

19  Hospital.

20  3051.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

21  suffered any actual injury despite the deprivation of their common law rights, the

22  Plaintiffs respectfully request a nominal judgment of $1.00.

23  **XXXV.   <u>Negligent Infliction of Emotional Distress XIV</u>**

1   Smith, *et al.* v. Monroe County, Ms. Adelaide W. Grace, Mr. Tim Shaw & Mr. Jorge

2   Manteria

3   3052.  Under Pennsylvania tort law, determination of negligent infliction of emotional

4   distress liability depends on "whether the emotional injuries sustained by the plaintiff

5   were reasonably foreseeable to the defendant."[273]

6   3053.  Pennsylvania recognizes that a plaintiff has to among other options, in order to

7   sustain an NIED claim, have "a contemporaneous perception of tortuous injury to a

8   close relative".[274]

9   3054.  An NIED claim can be supported in cases when "the defendant assumes a duty

10   by contract, or otherwise when the duty encompasses the plaintiff's emotional well-

11   being." Toney, 36 A.3d at 92.

12   3055.  As well, "special relationships must encompass an implied duty to care for the

13   plaintiff's emotional well- being." Toney, 36 A.3d at 95.

14   3056.  In *The Law of Torts*, Professor Dobbs explained that caring for the emotional

15   well-being of the plaintiff is a "duty to take care for the feelings of," e.g., the mother of a

16   stillborn child. (Citing The Law of Torts, § 29.15 (2000)).[275]

---

[273]*Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672, 684 (1979).

[274]*Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

[275]*MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 at 20 (W.D. Pa. 2019).

1  3057.  The relationship between the Defendants and Plaintiff Mrs. Smith must be of a

2  "intensely emotionally charged" sort for a court to recognize a pertinent "special

3  relationship" giving rise not to negligently inflict emotional distress.  Id at 20-21.

4  3058.  Plaintiff must demonstrate "compensable emotional harm" which is harm of a

5  type that a reasonable is not person expected to bear. Toney, 36 A.3d at 95.

6  3059.  The Plaintiff will have to demonstrate physical manifestations of emotional

7  distress.276

8  3060.  In addition to proving elements of a valid NIED claim, the Plaintiff will first have to

9  establish the traditional elements of a negligence claim. Id.

10  3061.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

11  or obligation recognized by the law, requiring the actor to conform to a certain standard

12  of conduct; (2) a failure to conform to the required standard; (3) a causal connection

13  between the conduct and the resulting injury; and (4) actual loss or damage resulting to

14  the interests of another.277

15  3062.  Negligence (1): A state actor investigating parents for illegal substance abuse

16  has a duty to only do so with a court order or with reasonable suspicion of drug abuse,

---

276 *Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

277 *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1  and, as well, has a duty not to reject and repudiate multiple sources of evidence

2  exculpating the parents suspected of substance abuse.

3  3063.  Negligence (2): Defendants Monroe County through its Offices of Children and

4  Youth Services, and its agents, employees, or assigns, Ms. Adelaide W. Grace, Mr. Tim

5  Shaw, and Mr. Jorge Manteria failed to conform to the aforementioned duties when the

6  Defendants ignored critical facts which allowed them to immediately surmise that

7  Plaintiff Mrs. Smith did not consume illegal methamphetamine, including but not limited

8  to: (1) neither Plaintiffs Mrs. Smith nor Newborn baby J.A.S. tested positive for

9  methamphetamine while at St. Luke's Hospital; (2) the umbilical cord that connected

10  Plaintiff Mrs. Smith to Plaintiff Newborn baby J.A.S. did not test positive for

11  methamphetamine; (3) neither Plaintiff Mrs. Smith nor Newborn baby J.A.S. suffered

12  any signs or symptoms of methamphetamine withdrawal; (4) Defendant Monroe County

13  CYS conducting their own urinary drug screen before Plaintiff Mrs. Smith left the

14  hospital which also tested negative for methamphetamine; (5) an inspection of the home

15  environment by Defendant Mr. Jorge Manteria who was satisfied that the home was a

16  safe place to bring a newborn baby; (6) Defendant Mr. Jorge Manteria did not suspect

17  that anyone in the Smith Family home consumed illegal methamphetamine; (7) more

18  than one home visit by Defendant Mr. Jorge Manteria who verbally concluded time and

19  again that the Smith Family home was a safe environment for children; (8) access to

20  Plaintiff Mrs. Smith's medical records which documented the fact that Mrs. Smith was

21  legally prescribed Vyvanse, an amphetamine that had been approved by three

22  independent doctors for use during her pregnancy; (9) that neither Plaintiffs Mr. nor Mrs.

23  Smith were individuals of any violent nature; (10) and ultimately without reasonable

1   suspicion of drug abuse by Plaintiffs Mr. or Mrs. Smith, and yet the investigation into the

2   Smith Family lasted week after week.

3   3064.  Negligence (3): Defendants Monroe County through its Offices of Children and

4   Youth Services, and its agents, employees, or assigns, Ms. Adelaide W. Grace, Mr. Tim

5   Shaw, and Mr. Jorge Manteria actively and of their own volition, continued to harass the

6   Smith Family through repeated home visits, multiple requests for drug tests, and by

7   invading the privacy, sanctity, and feelings of security within the household despite

8   copious amounts of evidence that neither Plaintiffs Mr. or Mrs. Smith presented a

9   danger to Plaintiff Newborn baby J.A.S. or any of their other children.

10   3065.  Negligence (4): Plaintiffs Mr. and Mrs. Smith were investigated by the state

11   agency Monroe County Office of Children and Youth services costing unnecessary

12   attorney's fees for each home visit by Defendant Mr. Jorge Manteria, mental anguish

13   and anxiety related to each home visit by Children and Youth Services which has

14   manifested in physical symptoms, as well as all fees and costs relating to present and

15   future psychological counseling for Mr. and Mrs. Smith.

16   3066.  Defendants continuing to investigate the Smith Family when the Defendants

17   knew or should have known that there was not any reasonable basis to do so, was sure

18   to cause emotional injuries to the Plaintiffs that were reasonably foreseeable to the

19   Defendants.

20   3067.  Plaintiffs Mr. & Mrs. Smith perceived "a contemporaneous perception of tortuous

21   injury to a close relative" because they had to week after week, watch each other go

22   through the unnecessary and invasive processes of having Monroe County CYS use its

23   agents, employees, or assigns to investigate the Smith Family for signs of child abuse.

1    3068.  As state actors and representatives of an organization which routinely deprives

2    parents of their children, the Defendants had a special relationship with the mother and

3    father of a newborn child to take care of the feelings of that mother and father.

4    3069.  Any situation in which parents are literally afraid of losing not only their newborn

5    child, but their other children as well at any moment is a situation of the "intensely

6    emotionally charged" sort that gives rise to a duty to not negligently inflict emotional

7    distress.

8    3070.  Plaintiffs Mr. and Mrs. Smith having to be placed in constant fear of losing their

9    children to the state without cause created the type of compensable harm that is worthy

10   of relief because the harm inflicted on Plaintiffs Mr. and Mrs. Smith was of the type that

11   a reasonable person is not expected to bear.

12   3071.  Defendant Monroe County through its Offices of Children and Youth Services,

13   and its agents, employees, or assigns, Ms. Adelaide W. Grace, Mr. Tim Shaw, and Mr.

14   Jorge Monteria's conduct violated Plaintiffs' rights under Pennsylvania common law

15   negligent infliction of emotional distress.

16   3072.

17   3073.  Plaintiff Mrs. Smith has suffered the following physical manifestations of

18   emotional distress to the Defendant's alleged negligence: nightmares, night sweats,

19   excessive diarrhea, anxiety and panic attacks, separation anxiety from newborn baby

20   J.A.S., insomnia, depression, PTSD symptoms including staring into space while

21   reliving the incident, muscle tightness and back spasms, and body tremors.

22   3074.  Plaintiff Mr. Smith has suffered the following physical manifestations of emotional

23   distress due to the Defendant's alleged negligence: intense headaches, depression,

1    stomach upset and nausea, excessive acid reflux, vomiting, symptoms of PTSD

2    including staring into space reliving the incident, fatigue, insomnia, excessive sweating,

3    loss of appetite, excessive dry skin sometimes forming open sores on his scalp and

4    face.

5    3075.  Accordingly, and in connection with the alleged negligence of the Defendant

6    parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Monroe County Children and

7    Youth Services be required to adopt a third-party training program which demonstrates

8    appropriate circumstances under which a child should be reasonably separated from its

9    natural parents, and the specific legal procedures to adhere to for such a separation to

10   take place, including when it is appropriate to terminate an investigation, as well as, not

11   rejecting and repudiating evidence that exculpates that accused and should lead to a

12   case being closed much sooner than is required by statute.

13   3076.  Accordingly, and in connection with the alleged negligence of the Defendant

14   parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Persons be required to

15   attend and pass a rigorous a third-party training program which demonstrates

16   appropriate circumstances under which a child should be reasonably separated from its

17   natural parents, and the specific legal procedures to adhere to for such a separation to

18   take place, including when it is appropriate to terminate an investigation, as well as, not

19   rejecting and repudiating evidence that exculpates that accused and should lead to a

20   case being closed much sooner than is required by statute.

21   3077.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

22   training course, then the Defendant Entities should create their own legal training

23   program which demonstrates appropriate circumstances under which a child should be

1   reasonably separated from its natural parents, and the specific legal procedures to

2   adhere to for such a separation to take place, including when it is appropriate to

3   terminate an investigation, as well as, not rejecting and repudiating evidence that

4   exculpates that accused and should lead to a case being closed much sooner than is

5   required by statute; and, before the created program is implemented, the program must

6   be approved by an appropriate court or federal agency for review; and, the program

7   must be implemented within 180 days of the valid judgment of this honorable Court.

8   3078.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

9   conduct, including but not limited to, emotional and psychological distress, pain and

10  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

11  appropriate compensatory damages to account for PTSD therapies and other related

12  treatments as they have been and will continue to be necessary; Plaintiffs respectfully

13  request an amount of $84,800 in compensatory damages per Defendant.

14  3079.  Defendant Monroe County through its Office of Children and Youth Services, is

15  legally obligated to appropriately train its state actor employees to avoid this egregious

16  violation of Pennsylvania common laws, and since harm was actually caused to the

17  current Plaintiff Smith Family, and since harm is likely to continue to harm future fathers,

18  and because the acts of the Defendants and their agents, assigns, or employees

19  callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiff

20  respectfully requests the imposition of punitive damages on Defendants Monroe

21  County, Ms. Adelaide W. Grace, and Mr. Tim Shaw to deter such Defendants from

22  committing such conduct in the future which violates the Pennsylvania Common Law

23  Plaintiffs respectfully request an amount of $1,000,000 in punitive damages per

1   Defendants Mr. Tim Shaw and Mr. Jorge Manteria; $5,000,000 per Defendant Ms.

2   Adelaide W. Grace; and $10,000,000 per Defendant Monroe County.

3   3080.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

4   any actual injury despite the deprivation of their common law rights, the Plaintiffs

5   respectfully request a nominal judgment of $1.00.

6   ## XXXVI.   __Negligent Infliction of Emotional Distress XV__

7   __Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's__

8   __Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics__

9   __and Gynecology Associates, Monroe County, Ms. Adelaide Grace, Mr. Tim Shaw,__

10  __Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms.__

11  __Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr.__

12  __Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms.__

13  __Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms.__

14  __Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP,__

15  __"Security Supervisor 'Unknown,'" "Head of Hospital Security 'Unknown', Mr.__

16  __Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,__

17  __and the "Hospital Leadership Team"__

3081.  Under Pennsylvania tort law, determination of negligent infliction of emotional distress liability depends on "whether the emotional injuries sustained by the plaintiff were reasonably foreseeable to the defendant."[278]

3082.  Pennsylvania recognizes that a plaintiff has to among other options, in order to sustain an NIED claim, have "a contemporaneous perception of tortuous injury to a close relative".[279]

3083.  An NIED claim can be supported in cases when "the defendant assumes a duty by contract, or otherwise when the duty encompasses the plaintiff's emotional well-being." Toney, 36 A.3d at 92.

3084.  As well, "special relationships must encompass an implied duty to care for the plaintiff's emotional well- being." Toney, 36 A.3d at 95.

3085.  In The Law of Torts, Professor Dobbs explained that caring for the emotional well-being of the plaintiff is a "duty to take care for the feelings of," e.g., the mother of a stillborn child. (Citing The Law of Torts, § 29.15 (2000)).[280]

3086.  The relationship between the Defendants and Plaintiff Mrs. Smith must be of a "intensely emotionally charged" sort for a court to recognize a pertinent "special relationship" giving rise not to negligently inflict emotional distress.  Id at 20-21.

---

[278]*Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672, 684 (1979).

[279]*Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

[280]*MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 at 20 (W.D. Pa. 2019).

1    3087.  Plaintiff must demonstrate "compensable emotional harm" which is harm of a

2    type that a reasonable is not person expected to bear. Toney, 36 A.3d at 95.

3    3088.  The Plaintiff will have to demonstrate physical manifestations of emotional

4    distress.281

5    3089.  In addition to proving elements of a valid NIED claim, the Plaintiff will first have to

6    establish the traditional elements of a negligence claim. Id.

7    3090.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

8    or obligation recognized by the law, requiring the actor to conform to a certain standard

9    of conduct; (2) a failure to conform to the required standard; (3) a causal connection

10    between the conduct and the resulting injury; and (4) actual loss or damage resulting to

11    the interests of another.282

12    3091.  Negligence (1): A private medical provider actor, as well as state actors

13    considering removing a newborn child from the custody of its parents have a duty to do

14    so only if actual and imminent harm will come to the child by allowing the child to be

15    cared for by its parents, and if no actual and imminent harm is present then all

16    Defendant parties had an affirmative duty to do their best to keep the family unit intact.

---

[281] *Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

[282] *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1   3092.  Negligence (2): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

2   Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics

3   and Gynecology Associates, Monroe County, Ms. Adelaide Grace, Mr. Tim Shaw, Ms.

4   Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R.

5   Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher

6   Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown,

7   MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler,

8   DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, "Security Supervisor

9   'Unknown'", "Head of Hospital Security 'Unknown', Mr. Steve Lanshe, Esq., Mr. Robert

10   L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

11   failed to conform to the aforementioned duty when instead of affirmatively acting to keep

12   the Smith Family unit intact where no actual or imminent harm would come to their child

13   due to their presence; the Defendants did the inverse and either allowed or advocated

14   for the separation of Newborn baby J.A.S. from his parents.

15   3093.  Negligence (3): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

16   Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics

17   and Gynecology Associates, Monroe County, , Ms. Adelaide Grace, Mr. Tim Shaw, Ms.

18   Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R.

19   Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher

20   Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown,

21   MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler,

22   DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, "Security Supervisor

23   'Unknown'", "Head of Hospital Security 'Unknown', Mr. Steve Lanshe, Esq., Mr. Robert

1   L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

2   of which Defendants actively and of their own volition, while others passively and of

3   their own volition, contacted Northampton County CYS, Monroe County CYS, and the

4   Bethlehem Police Department in a concerted effort to separate Newborn baby J.A.S.

5   from his parents Plaintiffs Mr. and Mrs. Smith, some not just rejecting but repudiating

6   the copious amount of evidence that Plaintiff Mrs. Smith had not ever consumed

7   methamphetamine, and that neither Plaintiffs Mr. nor Mrs. Smith were of a violent

8   character.

9   3094.  Negligence (4): Plaintiffs Mr. and Mrs. Smith were in fact, separated from

10  Newborn baby J.A.S. against their will and consent and were left without control over

11  the care of their son Newborn baby J.A.S., including the ability to breastfeed Newborn

12  baby J.A.S., have skin-to-skin contact with Newborn baby J.A.S., and consent to

13  Newborn baby J.A.S.'s medical treatment.

14  3095.  Ejecting parents from hospital property against their will and consent under threat

15  of arrest in order to separate them from their newborn baby who was in neonatal

16  intensive care, and by not providing any services to ensure that the family unit remained

17  intact was sure to cause emotional injuries to the Plaintiffs that were reasonably

18  foreseeable to the Defendants.

19  3096.  Plaintiffs Mr. and Mrs. Smith perceived "a contemporaneous perception of

20  tortuous injury to a close relative" because they knew that if they were removed from the

21  hospital grounds that Newborn baby J.A.S. would undergo treatments and medical

22  services not consented to, as well, it was clear that Plaintiff Mrs. Smith would not be

1  able to breastfeed Newborn baby J.A.S., nor would skin-to-skin contact be possible

2  between Plaintiffs Mr. or Mrs. Smith and Newborn baby J.A.S.

3  3097.  As medical providers the Defendants had a special relationship with the mother

4  and father of a child in neonatal intensive care to take care of the feelings of that mother

5  and father.

6  3098.  Any situation in which parents are being separated from their newborn baby

7  against the parents' will and consent is of the "intensely emotionally charged" sort that

8  gives rise to a duty to not negligently inflict emotional distress.

9  3099.  In the instant case, Plaintiffs Mr. and Mrs. Smith are closely related to Newborn

10  baby J.A.S. who is their child who was in neonatal intensive care at the time of his

11  removal from his parents against their will and consent, without cause shortly after birth

12  by the Defendants and their agents, employees, or assigns, which was an "intensely

13  emotionally charged" situation.

14  3100.  Plaintiffs Mr. and Mrs. Smith being removed against their will and consent from

15  St. Luke's Hospital property without cause created the type of compensable harm that is

16  worthy of relief because the harm inflicted on Plaintiffs Mr. and Mrs. Smith was of the

17  type that a reasonable person is not expected to bear.

18  3101.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

19  Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and

20  Gynecology Associates, Monroe County, Ms. Adelaide Grace, Mr. Tim Shaw, Ms.

21  Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R.

22  Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher

23  Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown,

1   MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler,

2   DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, "Security Supervisor

3   'Unknown'", "Head of Hospital Security 'Unknown', Mr. Steve Lanshe, Esq., Mr. Robert

4   L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

5   Team's" conduct violated Plaintiffs' rights under Pennsylvania common law negligent

6   infliction of emotional distress.

7   3102.  Plaintiff Mrs. Smith has suffered the following physical manifestations of

8   emotional distress to the Defendant's alleged negligence: nightmares, night sweats,

9   excessive diarrhea, anxiety and panic attacks, separation anxiety from newborn baby

10  J.A.S., insomnia, depression, PTSD symptoms including staring into space while

11  reliving the incident, muscle tightness and back spasms, and body tremors.

12  3103.  Plaintiff Mr. Smith has suffered the following physical manifestations of emotional

13  distress due to the Defendant's alleged negligence: intense headaches, depression,

14  stomach upset and nausea, excessive acid reflux, vomiting, symptoms of PTSD

15  including staring into space reliving the incident, fatigue, insomnia, excessive sweating,

16  loss of appetite, excessive dry skin sometimes forming open sores on his scalp and

17  face.

18  3104.  Accordingly, and in connection with the alleged negligence of the Defendant

19  parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Entities be required to adopt

20  a third-party training program which demonstrates appropriate circumstances under

21  which a child should be reasonably separated from its natural parents, and the specific

22  legal procedures to adhere to for such a separation to take place, including how to

23  effectively invoke the affirmative duty to keep a family with a newborn child together

1   unless an actual and/or imminent threat exists to justify separation, or as prescribed by

2   law.

3   3105.  Accordingly, and in connection with the alleged negligence of the Defendant

4   parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Persons be required to

5   attend and pass a rigorous a third-party training program which demonstrates

6   appropriate circumstances under which a child should be reasonably separated from its

7   natural parents, and the specific legal procedures to adhere to for such a separation to

8   take place, including how to effectively invoke the affirmative duty to keep a family with

9   a newborn child together unless an actual and/or imminent threat exists to justify

10  separation, or as prescribed by law.

11  3106.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

12  training course, then the Defendant Entities should create their own legal training

13  program which demonstrates appropriate circumstances under which a child should be

14  reasonably separated from its natural parents, and the specific legal procedures to

15  adhere to for such a separation to take place, including how to effectively invoke the

16  affirmative duty to keep a family with a newborn child together unless an actual and/or

17  imminent threat exists to justify separation, or as prescribed by law; and, before the

18  created program is implemented, the program must be approved by an appropriate

19  court or federal agency for review; and, the program must be implemented within 180

20  days of the valid judgment of this honorable Court.

21  3107.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

22  conduct, including but not limited to, emotional and psychological distress, pain and

23  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

1    appropriate compensatory damages to account for PTSD therapies and other related

2    treatments as they have been and will continue to be necessary; Plaintiffs respectfully

3    request an amount of $84,800 in compensatory damages per Defendant.

4    3108.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

5    Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates

6    Group, St. Luke's Obstetrics and Gynecology Associates, Monroe County, Ms. Adelaide

7    Grace, Mr. Tim Shaw, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick

8    Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

9    Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

10   Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

11   Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A.

12   Nardis, CRNP, "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown',

13   Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

14   and the "Hospital Leadership Team", and therefore, its ability to afford the appropriate

15   training to avoid this egregious violation of the Pennsylvania Common Law, and, since

16   harm was actually caused to the current Plaintiff Smith Family, and since harm is likely

17   to continue to harm future postpartum families, and because the acts of the Defendants

18   and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a

19   reckless and wanton manner, the Plaintiffs respectfully request the imposition of

20   punitive damages on Defendant St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

21   Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics

22   and Gynecology Associates, Monroe County, Ms. Adelaide Grace, Mr. Tim Shaw, Ms.

23   Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R.

1   Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher

2   Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown,

3   MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler,

4   DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, "Security Supervisor

5   'Unknown'", "Head of Hospital Security 'Unknown', Mr. Steve Lanshe, Esq., Mr. Robert

6   L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

7   to deter such Defendant from committing to such conduct in the future which violates

8   Commonwealth of Pennsylvania Common Law Plaintiffs respectfully request an amount

9   of $1,000,000 in punitive damages per Defendants Mr. Tim Shaw, Ms. Dianne R.

10  Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher

11  Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown,

12  MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Patricia Bates,

13  CRNP, and Ms. Kimberly A. Nardis, CRNP; $5,000,000 per Defendants St. Luke's

14  Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and

15  Gynecology Associates, Ms. Adelaide Grace, Mr. Patrick Philpot, DO, Ms. Chaminie

16  Wheeler, DO, "Security Supervisor 'Unknown,'" "Head of Hospital Security 'Unknown',

17  Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

18  and the "Hospital Leadership Team"; and $10,000,000 per Defendants St. Luke's

19  Hospital, Onsite Neonatal, OBHG PA, Monroe County, Ms. Teresa Marlino, MD, and

20  Ms. Cynthia Shultz, MD.

21  3109.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

22  suffered any actual injury despite the deprivation of their common law rights, the

23  Plaintiffs respectfully request a nominal judgment of $1.00.

# XXXVII.   Negligent Infliction of Emotional Distress XVI

## Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP

3110.  Under Pennsylvania tort law, determination of negligent infliction of emotional distress liability depends on "whether the emotional injuries sustained by the plaintiff were reasonably foreseeable to the defendant."[283]

3111.  Pennsylvania recognizes that a plaintiff has to among other options, in order to sustain an NIED claim, have "a contemporaneous perception of tortuous injury to a close relative".[284]

3112.  An NIED claim can be supported in cases when "the defendant assumes a duty by contract, or otherwise when the duty encompasses the plaintiff's emotional well-being." Toney, 36 A.3d at 92.

---

[283]*Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672, 684 (1979).
[284]*Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

1    3113.  As well, "special relationships must encompass an implied duty to care for the

2    plaintiff's emotional well- being." Toney, 36 A.3d at 95.

3    3114.  In The Law of Torts, Professor Dobbs explained that caring for the emotional

4    well-being of the plaintiff is a "duty to take care for the feelings of," e.g., the mother of a

5    stillborn child. (Citing The Law of Torts, § 29.15 (2000)).[285]

6    3115.  The relationship between the Defendants and Plaintiff Mrs. Smith must be of a

7    "intensely emotionally charged" sort for a court to recognize a pertinent "special

8    relationship" giving rise not to negligently inflict emotional distress.  Id at 20-21.

9    3116.   Plaintiff must demonstrate "compensable emotional harm" which is harm of a

10   type that a reasonable is not person expected to bear. Toney, 36 A.3d at 95.

11   3117.  The Plaintiff will have to demonstrate physical manifestations of emotional

12   distress.[286]

13   3118.  In addition to proving elements of a valid NIED claim, the Plaintiff will first have to

14   establish the traditional elements of a negligence claim. Id.

15   3119.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

16   or obligation recognized by the law, requiring the actor to conform to a certain standard

17   of conduct; (2) a failure to conform to the required standard; (3) a causal connection

---

[285]*MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 at 20 (W.D. Pa. 2019).

[286]*Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

1  between the conduct and the resulting injury; and (4) actual loss or damage resulting to

2  the interests of another.287

3  3120.  Negligence (1): A private medical provider actor has a duty not to ignore the will

4  and consent of that child's parents concerning medical applications and procedures for

5  their child.

6  3121.  Negligence (2): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

7  Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics

8  and Gynecology Associates, Ms.Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr.

9  Patrick Philpot, DO, Ms. DianneR. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

10  Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

11  Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

12  Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, and Ms.

13  Kimberly A. Nardis, CRNP failed to conform to the aforementioned duty because when

14  Plaintiffs Mr. and Mrs. Smith withdrew consent for the treatment of newborn baby

15  J.A.S., the Defendants physically separated Plaintiffs Mr. and Mrs. Smith from Newborn

16  baby J.A.S. by having the Bethlehem Township Police eject Plaintiffs Mr. and Mrs.

17  Smith against their will and consent from Defendant St. Luke's Hospital's property

18  without reasonable suspicion of drug abuse by Plaintiff Mrs. Smith or a court order to

19  separate Newborn baby J.A.S. from his parents under threat of arrest for trespassing,

---

[287] *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933,

938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir.

1993).

1   and Defendants thereafter medically treated Newborn baby J.A.S. against the will and

2   without the consent of his parents, Plaintiffs Mr. and Mrs. Smith, who were denied any

3   opportunity for a second medical opinion.

4   3122.  Negligence (3): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

5   Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics

6   and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr.

7   Patrick Philpot, DO, Ms. DianneR. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

8   Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

9   Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

10  Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, and Ms.

11  Kimberly A. Nardis, CRNP actively and of their own volition, continued to perform tests,

12  treatments, and procedures on Newborn baby J.A.S. against the consent and will of his

13  parents.

14  3123.  Negligence (4): Plaintiffs Mr. and Mrs. Smith were in fact, separated from

15  Newborn baby J.A.S. against their will and consent and were left without consent or

16  control over the care of their son Newborn baby J.A.S., including the ability to

17  breastfeed Newborn baby J.A.S., have skin-to-skin contact with Newborn baby J.A.S.,

18  and consent to Newborn baby J.A.S.'s medical treatment.

19  3124.  Ejecting parents from hospital property against their will and consent under threat

20  of arrest in order to separate them from their newborn baby who was in neonatal

21  intensive care, with conscious disregard for the will and against the consent of a

22  newborn child's parents was sure to cause emotional injuries to the Plaintiffs that were

23  reasonably foreseeable to the Defendants.

3125. Plaintiffs Mr. and Mrs. Smith perceived "a contemporaneous perception of tortuous injury to a close relative" because they knew that if they were removed from the hospital grounds that Newborn baby J.A.S. would undergo treatments and medical services not consented to, as well, it was clear that Plaintiff Mrs. Smith would not be able to breastfeed Newborn baby J.A.S., nor would skin-to-skin contact be possible between Plaintiffs Mr. or Mrs. Smith and Newborn baby J.A.S.

3126. As medical providers the Defendants had a special relationship with the mother and father of a child in neonatal intensive care to take care of the feelings of that mother and father.

3127. Any situation in which parents have their will circumvented and consent or lack thereof disregarded concerning their newborn baby is of the "intensely emotionally charged" sort that gives rise to a duty to not negligently inflict emotional distress.

3128. In the instant case, Plaintiffs Mr. and Mrs. Smith are closely related to Newborn baby J.A.S. who is their child, who was in neonatal intensive care at the time his removal from his parents, were separated without cause from him against their will and consent shortly after birth by Defendants and their agents, employees, or assigns, which was an "intensely emotionally charged" situation.

3129. Plaintiffs Mr. and Mrs. Smith being removed from Defendant St. Luke's Hospital property without cause against their will and consent and their newborn baby having continued to receive unnecessary medical treatment against the will and consent of the parents created the type of compensable harm that is worthy of relief because the harm inflicted on Plaintiffs Mr. and Mrs. Smith was of the type that a reasonable person is not expected to bear.

1    3130.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

2    Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and

3    Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick

4    Philpot, DO, Ms. DianneR. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

5    Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

6    Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

7    Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, and Ms.

8    Kimberly A. Nardis, CRNP's conduct violated Plaintiffs' rights under Pennsylvania

9    common law negligent infliction of emotional distress.

10    3131.  Plaintiff Mrs. Smith has suffered the following physical manifestations of

11    emotional distress to the Defendant's alleged negligence: nightmares, night sweats,

12    excessive diarrhea, anxiety and panic attacks, separation anxiety from newborn baby

13    J.A.S., insomnia, depression, PTSD symptoms including staring into space while

14    reliving the incident, muscle tightness and back spasms, and body tremors.

15    3132.  Plaintiff Mr. Smith has suffered the following physical manifestations of emotional

16    distress due to the Defendant's alleged negligence: intense headaches, depression,

17    stomach upset and nausea, excessive acid reflux, vomiting, symptoms of PTSD

18    including staring into space reliving the incident, fatigue, insomnia, excessive sweating,

19    loss of appetite, excessive dry skin sometimes forming open sores on his scalp and

20    face.

21    3133.  Accordingly, and in connection with the alleged negligence of the Defendant

22    parties, Plaintiffs Mr. and Mrs. Smith and request all Defendant Entities be required to

23    adopt a third-party training program which demonstrates appropriate circumstances

1   under which a child should be reasonably separated from its natural parents, and the

2   specific legal procedures to adhere to for such a separation to take place, including

3   when it is appropriate to relinquish a child to its birth parents and to cease all medical

4   treatments as the parents see fit.

5   3134.  Accordingly, and in connection with the alleged negligence of the Defendant

6   parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Persons be required to

7   attend and pass a rigorous a third-party training program which demonstrates

8   appropriate circumstances under which a child should be reasonably separated from its

9   natural parents, and the specific legal procedures to adhere to for such a separation to

10   take place, including when it is appropriate to relinquish a child to its birth parents and to

11   cease all medical treatments as the parents see fit.

12   3135.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

13   training course, then the Defendant Entities should create their own legal training

14   program which demonstrates appropriate circumstances under which a child should be

15   reasonably separated from its natural parents, and the specific legal procedures to

16   adhere to for such a separation to take place, including when it is appropriate to

17   relinquish a child to its birth parents and to cease all medical treatments as the parents

18   see fit; and, before the created program is implemented, the program must be approved

19   by an appropriate court or federal agency for review; and, the program must be

20   implemented within 180 days of the valid judgment of this honorable Court.

21   3136.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

22   conduct, including but not limited to, emotional and psychological distress, pain and

23   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

1   appropriate compensatory damages to account for PTSD therapies and other related

2   treatments as they have been and will continue to be necessary; Plaintiffs respectfully

3   request an amount of $84,800 in compensatory damages per Defendant.

4   3137.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

5   Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates

6   Group, St. Luke's Obstetrics and Gynecology Associates, Monroe County, Ms. Adelaide

7   Grace, Mr. Tim Shaw, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick

8   Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

9   Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

10   Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

11   Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A.

12   Nardis, CRNP, "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown',

13   Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

14   and the "Hospital Leadership Team", and therefore, its ability to afford the appropriate

15   training to avoid this egregious violation of the Pennsylvania Common Law, and, since

16   harm was actually caused to the current Plaintiff Smith Family, and since harm is likely

17   to continue to harm future postpartum families, and because the acts of the Defendants

18   and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a

19   reckless and wanton manner, the Plaintiffs respectfully request the imposition of

20   punitive damages on Defendant St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

21   Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics

22   and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr.

23   Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

1   Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

2   Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

3   Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, and Ms.

4   Kimberly A. Nardis, CRNP to deter such Defendants from committing to such conduct in

5   the future which violates Commonwealth of Pennsylvania Common Law Plaintiffs

6   respectfully request an amount of $1,000,000 in punitive damages per Defendants Ms.

7   Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr.

8   Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms.

9   Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms.

10   Patricia Bates, CRNP, and Ms. Kimberly A. Nardis, CRNP; $5,000,000 per Defendants

11   St. Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's

12   Obstetrics and Gynecology Associates, Mr. Patrick Philpot, DO, and Ms. Chaminie

13   Wheeler, DO; and $10,000,000 per Defendants St. Luke's Hospital, Onsite Neonatal,

14   OBHG PA, Ms. Teresa Marlino, MD, and Ms. Cynthia Shultz, MD.

15   3138.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

16   suffered any actual injury despite the deprivation of their common law rights, the

17   Plaintiffs respectfully request a nominal judgment of $1.00.

18   ## XXXVIII.   Negligent Infliction of Emotional Distress XVII

19   Mr. & Mrs. Smith v. St. Luke's Hospital, OBHG PA, Onsite Neonatal & Ms. Teresa

20   Marlino, MD

3139.  Under Pennsylvania tort law, determination of negligent infliction of emotional distress liability depends on "whether the emotional injuries sustained by the plaintiff were reasonably foreseeable to the defendant."[288]

3140.  Pennsylvania recognizes that a plaintiff has to among other options, in order to sustain an NIED claim, have "a contemporaneous perception of tortuous injury to a close relative".[289]

3141.  An NIED claim can be supported in cases when "the defendant assumes a duty by contract, or otherwise when the duty encompasses the plaintiff's emotional well-being." Toney, 36 A.3d at 92.

3142.  As well, "special relationships must encompass an implied duty to care for the plaintiff's emotional well-being." Toney, 36 A.3d at 95.

3143.  In *The Law of Torts*, Professor Dobbs explained that caring for the emotional well-being of the plaintiff is a "duty to take care for the feelings of," e.g., the mother of a stillborn child. (Citing The Law of Torts, § 29.15 (2000)).[290]

3144.  The relationship between the Defendants and Plaintiff Mrs. Smith must be of a "intensely emotionally charged" sort for a court to recognize a pertinent "special relationship" giving rise not to negligently inflict emotional distress.  Id at 20-21.

3145.  Plaintiff must demonstrate "compensable emotional harm" which is harm of a type that a reasonable is not person expected to bear. Toney, 36 A.3d at 95.

---

[288]*Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672, 684 (1979).

[289]*Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

[290]*MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 at 20 (W.D. Pa. 2019).

1    3146.  The Plaintiff will have to demonstrate physical manifestations of emotional

2    distress.291

3    3147.  In addition to proving elements of a valid NIED claim, the Plaintiff will first have to

4    establish the traditional elements of a negligence claim. Id.

5    3148.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

6    or obligation recognized by the law, requiring the actor to conform to a certain standard

7    of conduct; (2) a failure to conform to the required standard; (3) a causal connection

8    between the conduct and the resulting injury; and (4) actual loss or damage resulting to

9    the interests of another.292

10   3149.  Negligence (1): A private medical provider actor accusing a mother of illegal

11   methamphetamine use has a duty to only do so with a court order or with reasonable

12   suspicion of drug abuse on the part of the mother, including signs and symptoms of

13   methamphetamine withdrawal in the newborn baby and the mother, and a drug test with

14   positive and distinguishable results for methamphetamine alone.

15   3150.  Negligence (2): Defendants St. Luke's Hospital, OBHG PA, Onsite Neonatal, and

16   Ms. Teresa Marlino, MD unequivocally accused Plaintiff Mrs. Smith of ingesting illegal

17   methamphetamine in her effort to separate Newborn baby J.A.S. from his parents failed

---

291 *Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12,

2017).

292 *See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933,

938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir.

1993).

1   to conform to the aforementioned duty when, without a court order, any reasonable

2   suspicion of methamphetamine use by Plaintiff Mrs. Smith, nor a drug test with positive

3   and distinguishable results for methamphetamine alone.

4   3151.  Negligence (3): Defendants St. Luke's Hospital, OBHG, Onsite Neonatal, and

5   Ms. Teresa Marlino, MD actively and of her own volition, accused Plaintiff Mrs. Smith of

6   methamphetamine ingestion, and implied that the deleterious effects of

7   methamphetamine ingestion by Plaintiff Mrs. Smith were passed on to Newborn baby

8   J.A.S. in an effort to separate Newborn baby J.A.S. from his parents Plaintiffs Mr. and

9   Mrs. Smith.

10  3152.  Negligence (4): Plaintiffs Mr. and Mrs. Smith were in fact, separated from

11  Newborn baby J.A.S. against their will and consent and were left without control over

12  the care of their son Newborn baby J.A.S., including the ability to breastfeed Newborn

13  baby J.A.S., have skin-to-skin contact with Newborn baby J.A.S., and consent to

14  Newborn baby J.A.S.'s medical treatment.

15  3153.  Accusing a mother of a newborn child of illegal methamphetamine use by falsely

16  stating to Plaintiffs Mr. and Mrs. Smith that Plaintiff Mrs. Smith tested positive for

17  methamphetamine was sure to cause emotional injuries to the Plaintiffs that were

18  reasonably foreseeable to the Defendants.

19  3154.  Plaintiffs Mr. and Mrs. Smith perceived "a contemporaneous perception of

20  tortuous injury to a close relative" because they knew that if they were removed from the

21  hospital grounds that Newborn baby J.A.S. would undergo treatments and medical

22  services not consented to, as well, it was clear that Plaintiff Mrs. Smith would not be

1    able to breastfeed Newborn baby J.A.S., nor would skin-to-skin contact be possible

2    between Plaintiffs Mr. or Mrs. Smith and Newborn baby J.A.S.

3    3155.  As medical providers the Defendants had a special relationship with the mother

4    and father of a child in neonatal intensive care to take care of the feelings of that mother

5    and father.

6    3156.  Any situation in which a mother of a newborn child is accused of

7    methamphetamine ingestion by a medical provider--the deleterious effects of which

8    have supposedly been passed on to her newborn baby--is of the "intensely emotionally

9    charged" sort that gives rise to a duty to not negligently inflict emotional distress.

10   3157.  In the instant case, Plaintiffs Mr. and Mrs. Smith are closely related to Newborn

11   baby J.A.S. who is their child, who was in neonatal intensive care at the time that

12   Plaintiff Mrs. Smith was accused by Defendant Ms. Teresa Marlino, MD of ingesting

13   illegal methamphetamine, passing that methamphetamine along to her newborn baby,

14   and supposedly buying methamphetamine "off the street" was an "intensely emotionally

15   charged" situation.

16   3158.  Plaintiff Mrs. Smith being accused of methamphetamine ingestion and then being

17   removed from Defendant St. Luke's Hospital property against her will and consent

18   without cause is worthy of relief because the harm inflicted on Plaintiffs Mr. and Mrs.

19   Smith was of the type that a reasonable person is not expected to bear.

20   3159.  Defendants St. Luke's Hospital, OBHG PA, Onsite Neonatal, and Ms. Teresa

21   Marlino, MD's conduct violated Plaintiffs' rights under Pennsylvania common law

22   negligent infliction of emotional distress.

3160.  Plaintiff Mrs. Smith has suffered the following physical manifestations of emotional distress to the Defendant's alleged negligence: nightmares, night sweats, excessive diarrhea, anxiety and panic attacks, separation anxiety from newborn baby J.A.S., insomnia, depression, PTSD symptoms including staring into space while reliving the incident, muscle tightness and back spasms, and body tremors.

3161.  Plaintiff Mr. Smith has suffered the following physical manifestations of emotional distress due to the Defendant's alleged negligence: intense headaches, depression, stomach upset and nausea, excessive acid reflux, vomiting, symptoms of PTSD including staring into space reliving the incident, fatigue, insomnia, excessive sweating, loss of appetite, excessive dry skin sometimes forming open sores on his scalp and face.

3162.  Accordingly, and in connection with the alleged negligence of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Entities be required to adopt a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place, including only accusing a mother of illegal methamphetamine use with a court order or signs and symptoms of methamphetamine withdrawal in both the mother and the newborn child.

3163.  Accordingly, and in connection with the alleged negligence of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Persons be required to attend and pass a rigorous a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to

1   take place, including only accusing a mother of illegal methamphetamine use with a

2   court order or signs and symptoms of methamphetamine withdrawal in both the mother

3   and the newborn child.

4   3164.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

5   training course, then the Defendant Entities should create their own legal training

6   program which demonstrates appropriate circumstances under which a child should be

7   reasonably separated from its natural parents, and the specific legal procedures to

8   adhere to for such a separation to take place, including only accusing a mother of illegal

9   methamphetamine use with a court order or signs and symptoms of methamphetamine

10  withdrawal in both the mother and the newborn child; and, before the created program

11  is implemented, the program must be approved by an appropriate court or federal

12  agency for review; and, the program must be implemented within 180 days of the valid

13  judgment of this honorable Court.

14  3165.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

15  conduct, including but not limited to, emotional and psychological distress, pain and

16  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

17  appropriate compensatory damages to account for PTSD therapies and other related

18  treatments as they have been and will continue to be necessary; Plaintiffs respectfully

19  request an amount of $84,800 in compensatory damages per Defendant.

20  3166.  Given the substantial wealth of the Defendants St. Luke's Hospital, OBHG PA,

21  Onsite Neonatal, and Ms. Teresa Marlino, MD, and therefore, their ability to afford the

22  appropriate training to avoid this egregious violation of the Pennsylvania Common Law,

23  and, since harm was actually caused to the current Plaintiff Smith Family, and since

1   harm is likely to continue to harm future postpartum families, and because the acts of

2   the Defendants and their agents, assigns, or employees callously disregarded the

3   Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the

4   imposition of punitive damages on Defendants St. Luke's Hospital, OBHG PA, Onsite

5   Neonatal, and Ms. Teresa Marlino, MD to deter such Defendants from committing to

6   such conduct in the future which violates Commonwealth of Pennsylvania Common Law

7   Plaintiffs respectfully request an amount of $10,000,000 in punitive damages per

8   Defendants St. Luke's Hospital, OBHG PA, Onsite Neonatal, and Ms. Teresa Marlino,

9   MD.

10   3167.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

11   suffered any actual injury despite the deprivation of their common law rights, the

12   Plaintiffs respectfully request a nominal judgment of $1.00.

13   # XXXIX.    Negligent Infliction of Emotional Distress XVIII

14   Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

15   Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics

16   and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr.

17   Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms.

18   Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe,

19   MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello,

20   DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates,

21   CRNP, & Ms. Kimberly A. Nardis, CRNP

1   3168.  Under Pennsylvania tort law, determination of negligent infliction of emotional

2   distress liability depends on "whether the emotional injuries sustained by the plaintiff

3   were reasonably foreseeable to the defendant."[293]

4   3169.  Pennsylvania recognizes that a plaintiff has to among other options, in order to

5   sustain an NIED claim, have "a contemporaneous perception of tortuous injury to a

6   close relative".[294]

7   3170.  An NIED claim can be supported in cases when "the defendant assumes a duty

8   by contract, or otherwise when the duty encompasses the plaintiff's emotional well-

9   being." Toney, 36 A.3d at 92.

10  3171.  As well, "special relationships must encompass an implied duty to care for the

11  plaintiff's emotional well- being." Toney, 36 A.3d at 95.

12  3172.  In The Law of Torts, Professor Dobbs explained that caring for the emotional

13  well-being of the plaintiff is a "duty to take care for the feelings of," e.g., the mother of a

14  stillborn child. (Citing The Law of Torts, § 29.15 (2000)).[295]

15  3173.  The relationship between the Defendants and Plaintiff Mrs. Smith must be of a

16  "intensely emotionally charged" sort for a court to recognize a pertinent "special

17  relationship" giving rise not to negligently inflict emotional distress.  Id at 20-21.

---

[293]*Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672, 684 (1979).

[294]*Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

[295]*MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 at 20 (W.D. Pa. 2019).

1   3174.   Plaintiff must demonstrate "compensable emotional harm" which is harm of a

2   type that a reasonable is not person expected to bear. Toney, 36 A.3d at 95.

3   3175.  The Plaintiff will have to demonstrate physical manifestations of emotional

4   distress.296

5   3176.  In addition to proving elements of a valid NIED claim, the Plaintiff will first have to

6   establish the traditional elements of a negligence claim. Id.

7   3177.  Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty

8   or obligation recognized by the law, requiring the actor to conform to a certain standard

9   of conduct; (2) a failure to conform to the required standard; (3) a causal connection

10   between the conduct and the resulting injury; and (4) actual loss or damage resulting to

11   the interests of another.297

12   3178.  Negligence (1): A private medical provider actor treating a newborn baby has a

13   duty not to give that child antibiotics that they do not require, especially if those

14   antibiotics could lead to life threatening conditions in the newborn.

15   3179.  Negligence (2): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

16   Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics

17   and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr.

---

[296]*Thompson v. United States*, CIVIL ACTION NO.: 16-3287 at 3 (E.D. Pa. July 12, 2017).

[297]*See Rabutino v. Freedom State Realty Co., Inc.,* 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993).

1   Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

2   Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

3   Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

4   Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, and Ms.

5   Kimberly A. Nardis, CRNP failed to conform to the aforementioned duty when the

6   Defendants administered antibiotics against the consent and will of Plaintiffs Mr. and

7   Mrs. Smith, and in doing so caused  Plaintiff Newborn baby J.A.S. to suffer the life-

8   threatening condition of pyloric stenosis.

9   3180.  Negligence (3): Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

10  Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics

11  and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr.

12  Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

13  Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

14  Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

15  Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, and Ms.

16  Kimberly A. Nardis, CRNP actively and of their own volition, gave without valid cause a

17  copious amount of antibiotics to Newborn baby J.A.S. in his first few days of life, which

18  later caused the life-threatening condition of pyloric stenosis wherein Newborn baby

19  J.A.S. could not process any food or liquid from his stomach to his intestines, causing

20  Newborn baby J.A.S. to vomit copiously, lose weight, and steadily dehydrate.

21  3181.  Negligence (4): Newborn baby J.A.S. did in fact suffer severe dehydration

22  stemming from his inability to maintain fluids, leading to his eventual hospitalization and

23  surgery at Lehigh Valley Medical Center to correct the pyloric stenosis.

1    3182.  With conscious disregard for the will and against the consent of the newborn

2    child's parents, Defendants administered such copious amounts of antibiotics to

3    Newborn baby J.A.S. that such injections led to the life-threatening condition of pyloric

4    stenosis was sure to cause emotional injuries to the Plaintiffs that were reasonably

5    foreseeable to the Defendants.

6    3183.  Plaintiffs Mr. and Mrs. Smith perceived "a contemporaneous perception of

7    tortuous injury to a close relative" because they slowly watched their child dying of

8    dehydration over the course of several weeks leading to his near death from

9    dehydration.

10   3184.  As medical providers the Defendants had a special relationship with the mother

11   and father of a child in neonatal intensive care to take care of the feelings of that mother

12   and father.

13   3185.  Any situation in which parents have to watch their newborn baby slowly die is of

14   the "intensely emotionally charged" sort that gives rise to a duty to not negligently inflict

15   emotional distress.

16   3186.  In the instant case, Plaintiffs Mr. and Mrs. Smith are closely related to Newborn

17   baby J.A.S. who is their child, who was in neonatal intensive care at the time that the

18   copious and unnecessary antibiotics were injected into Newborn baby J.A.S., which was

19   from start to finish an "intensely emotionally charged" situation.

20   3187.  Plaintiffs Mr. and Mrs. Smith being forcefully removed from Defendant St. Luke's

21   Hospital property without cause, and their newborn baby child having continued to

22   receive unnecessary medical treatment against the will and consent of the parents,

23   created the type of compensable harm that is worthy of relief because the harm inflicted

1   on Plaintiffs Mr. and Mrs. Smith was of the type that a reasonable person is not

2   expected to bear.

3   3188.  **Defendants** St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

4   Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and

5   Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick

6   Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

7   Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

8   Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

9   Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, and Ms.

10   Kimberly A. Nardis, CRNP's conduct violated Plaintiffs' rights under Pennsylvania

11   common law negligent infliction of emotional distress.

12   3189.  Plaintiff Mrs. Smith has suffered the following physical manifestations of

13   emotional distress to the Defendant's alleged negligence: nightmares, night sweats,

14   excessive diarrhea, anxiety and panic attacks, separation anxiety from newborn baby

15   J.A.S., insomnia, depression, PTSD symptoms including staring into space while

16   reliving the incident, muscle tightness and back spasms, and body tremors.

17   3190.  Plaintiff Mr. Smith has suffered the following physical manifestations of emotional

18   distress due to the Defendant's alleged negligence: intense headaches, depression,

19   stomach upset and nausea, excessive acid reflux, vomiting, symptoms of PTSD

20   including staring into space reliving the incident, fatigue, insomnia, excessive sweating,

21   loss of appetite, excessive dry skin sometimes forming open sores on his scalp and

22   face.

3191.  Accordingly, and in connection with the alleged negligence of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Entities be required to adopt a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place, and that under no circumstances should any child receive any medication, antibiotic, or treatment of any sort whatsoever, unless absolutely necessary to maintain that child from actually falling into a life-threatening condition, and not to maintain a narrative based on some hypothetical possibility that is in reality highly improbable.

3192.  Accordingly, and in connection with the alleged negligence of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Persons be required to attend and pass a rigorous a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place, and that under no circumstances should any child receive any medication, antibiotic, or treatment of any sort whatsoever, unless absolutely necessary to maintain that child from actually falling into a life-threatening condition, and not to maintain a narrative based on some hypothetical possibility that is in reality highly improbable.

3193.  Accordingly, if a third-party cannot be found to render the appropriately rigorous training course, then the Defendant Entities should create their own legal training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place, and that under no circumstances should

1   any child receive any medication, antibiotic, or treatment of any sort whatsoever, unless

2   absolutely necessary to maintain that child from actually falling into a life-threatening

3   condition, and not to maintain a narrative based on some hypothetical possibility that is

4   in reality highly improbable; and, before the created program is implemented, the

5   program must be approved by an appropriate court or federal agency for review; and,

6   the program must be implemented within 180 days of the valid judgment of this

7   honorable Court.

8   3194.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

9   conduct, including but not limited to, emotional and psychological distress, pain and

10  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

11  appropriate compensatory damages to account for PTSD therapies and other related

12  treatments as they have been and will continue to be necessary; Plaintiffs respectfully

13  request an amount of $84,800 in compensatory damages per Defendant.

14  3195.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

15  Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates

16  Group, St. Luke's Obstetrics and Gynecology Associates, Ms. Teresa Marlino, MD, Ms.

17  Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N.

18  Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah

19  Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A.

20  Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia

21  Bates, CRNP, and Ms. Kimberly A. Nardis, CRNP, and therefore, their ability to afford

22  the appropriate training to avoid this egregious violation of the Pennsylvania Common

23  Law, and, since harm was actually caused to the current Plaintiff Smith Family, and

1   since harm is likely to continue to harm future postpartum families, and because the

2   acts of the Defendants and their agents, assigns, or employees callously disregarded

3   the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request

4   the imposition of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal,

5   OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates Group, St.

6   Luke's Obstetrics and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia

7   Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD,

8   Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD,

9   Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr.

10  Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, and Ms.

11  Kimberly A. Nardis, CRNP to deter such Defendants from committing to such conduct in

12  the future which violates Commonwealth of Pennsylvania Common Law Plaintiffs

13  respectfully request an amount of $3,000,000 in punitive damages per Defendants Ms.

14  Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr.

15  Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms.

16  Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms.

17  Patricia Bates, CRNP, and Ms. Kimberly A. Nardis, CRNP; $15,000,000 per Defendants

18  St. Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's

19  Obstetrics and Gynecology Associates, Mr. Patrick Philpot, DO, and Ms. Chaminie

20  Wheeler, DO; and $30,000,000 per Defendants St. Luke's Hospital, Onsite Neonatal,

21  OBHG PA, Ms. Teresa Marlino, MD, and Ms. Cynthia Shultz, MD.

1  3196.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

2  suffered any actual injury despite the deprivation of their common law rights, the

3  Plaintiffs respectfully request a nominal judgment of $1.00.

# XL.   Intentional Infliction of Emotional Distress I

### Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team", & Mr. Jerry Hric, MD

9  3197.  To plead an intentional infliction of emotional distress claim under Pennsylvania

10  law, [Plaintiffs] must allege the Defendant's conduct (1) was intentional or reckless; (2)

11  was extreme and outrageous; (3) actually caused the distress; and (4) caused distress

12  that was severe.[298]

13  3198.  "In Pennsylvania, '[l]iability on an intentional infliction of emotional distress claim

14  has been found only where the conduct has been so outrageous in character, and so

15  extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

16  as atrocious, and utterly intolerable in a civilized community.'"[299]

---

[298]*Davenport v. Pottstown Hosp. Co.*, CIVIL ACTION NO. 17-1616 at 10 (E.D. Pa. Jul. 18, 2017), *citing*, *Regan v. Township of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D. Pa. 1999).

[299]*Id, citing, Kasper v. Cnty. of Bucks*, 514 Fed. App'x. 210, 217 (3d Cir. 2013) (internal citations and quotations omitted).

1  3199.  To maintain [their] claim for intentional infliction of emotional distress, [Plaintiffs],

2  must allege that [they] suffered "severe" emotional distress resulting from the

3  Defendant's conduct.300

4  3200.  "Fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin,

5  disappointment, worry and nausea" all indicate "severe" emotional distress[,]301 as well

6  as, "fear, anxiety, stress, anger, headaches, nightmares, humiliation, emotional distress

7  [and] mental anguish also indicate "severe emotional distress."302

8  3201.  "The extreme and outrageous character of conduct may arise from an abuse by a

9  person in a position of actual or apparent authority over another, or by one with the

10  power to affect the other's interests." 303

11  3202.  IIED (1): The Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

12  Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.

13  Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team's"

14  actions were intentional and/or reckless when as agents, employees, or assigns of a

15  medical provider Defendants separated a newborn child in a NICU from the custody,

---

300 *Id at \*10-11, citing, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000); *See also, Corbett v. Morgenstern*, 934 F. Supp. 680, 684-85 (E.D. Pa. 1996) ([in which] symptoms of severe depression, nightmares, anxiety and ongoing mental or physical harm suffice).

301 *Id, quoting, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000).

302 *Id.*

303  *Id* at \*8.

1   care, and control of its parents Plaintiffs Mr. and Mrs. Smith without a court order or

2   reasonable suspicion of drug abuse of the part of the mother Plaintiff Mrs. Smith.

3   3203.  IIED (2): The Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

4   Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.

5   Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team's"

6   actions were extreme and outrageous because to separate a mother and father from a

7   newborn child in a NICU without a court order or reasonable suspicion of abusive

8   conduct was so outrageous in character, and so extreme in degree, as to go beyond all

9   possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

10  a civilized community.

11  3204.  IIED (3):  The Defendants' actions actually caused the distress to the Plaintiffs

12  when Plaintiffs Mr. and Mrs. Smith were removed from Defendant St. Luke's Hospital

13  property against their will and consent under threat of arrest, and when Defendants St.

14  Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia

15  Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

16  Dawn Hoffman, and the "Hospital Leadership Team" made it clear that Plaintiffs Mr. and

17  Mrs. Smith would not even be allowed to say goodbye to their newborn baby before

18  being ejected unjustifiably and against their will and consent, causing the Plaintiffs Mr.

19  and Mrs. Smith to feel grief, fear, anxiety, stress, chagrin, disappointment, worry,

20  shame, humiliation, depression, and embarrassment.

21  3205.  IIED (4):  The stress to the Plaintiffs caused by Defendants was and continues to

22  be extremely severe, in that the distress has manifested itself in physical symptoms that

23  include, but are not limited to: Plaintiff Mrs. Smith has suffered the following physical

1    manifestations of emotional distress to the Defendant's alleged intentional infliction of

2    emotional distress: nightmares, night sweats, excessive diarrhea, anxiety and panic

3    attacks, separation anxiety from Newborn baby J.A.S., insomnia, depression, PTSD

4    symptoms including staring into space while reliving the incident, muscle tightness and

5    back spasms, and body tremors; Plaintiff Mr. Smith has suffered the following physical

6    manifestations of emotional distress due to the Defendant's alleged intentional infliction

7    of emotional distress: intense headaches, depression, stomach upset and nausea,

8    excessive acid reflux, vomiting, symptoms of PTSD including staring into space reliving

9    the incident, fatigue, insomnia, excessive sweating, loss of appetite, excessive dry skin

10   sometimes forming open sores on his scalp and face.

11   3206.  Plaintiffs Mr. and Mrs. Smith require and attend regular sessions with a

12   specialized PTSD therapist to process and heal from the emotional distress foisted

13   upon them.

14   3207.  Upon information and belief, each of the listed Defendants in this claim, St.

15   Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia

16   Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

17   Dawn Hoffman, and the "Hospital Leadership Team," were in a position of actual or

18   apparent authority over the Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S., and

19   each Defendant had the power to affect the interest of the Smith Family to remain intact.

20   3208.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

21   MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

22   Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team's" conduct violated

1   Plaintiffs' rights under Pennsylvania common law intentional infliction of emotional

2   distress.

3   3209.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

4   evidence that each of the listed Defendants conspired with at least one other Defendant

5   elsewhere listed in this complaint via an overt act with malice or an intent to injure the

6   Plaintiffs.

7   3210.  The conspiracy between the Defendant parties and their agents, employees,

8   assigns, or other Defendants violates Pennsylvania common law against conspiracies;

9   thereby, causing actual damages to Plaintiffs Mr. & Mrs. Smith.

10  3211.  Upon information and belief, Plaintiff can demonstrate by a preponderance of

11  evidence that the Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, and Mr.

12  Jerry Hric, MD supervised Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve

13  Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the

14  "Hospital Leadership Team," in connection with this allegation and are therefore liable

15  under a legal theory of respondeat superior.

16  3212.  Accordingly, and in connection with the alleged intentional infliction of emotional

17  distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

18  Entities be required to adopt a third-party training program which demonstrates

19  appropriate circumstances under which a child should be reasonably separated from its

20  natural parents, and the specific legal procedures to adhere to for such a separation to

21  take place.

22  3213.  Accordingly, and in connection with the alleged intentional infliction of emotional

23  distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

1  Persons be required to attend and pass a rigorous a third-party training program which

2  demonstrates appropriate circumstances under which a child should be reasonably

3  separated from its natural parents, and the specific legal procedures to adhere to for

4  such a separation to take place.

5  3214.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

6  training course, then the Defendant Entities should create their own legal training

7  program which demonstrates appropriate circumstances under which a child should be

8  reasonably separated from its natural parents, and the specific legal procedures to

9  adhere to for such a separation to take place; and, before the created program is

10  implemented, the program must be approved by an appropriate court or federal agency

11  for review; and, the program must be implemented within 180 days of the valid

12  judgment of this honorable Court.

13  3215.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

14  conduct, including but not limited to, emotional and psychological distress, pain and

15  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

16  appropriate compensatory damages to account for PTSD therapies and other related

17  treatments as they have been and will continue to be necessary; Plaintiffs respectfully

18  request an amount of $84,800 in compensatory damages per Defendant.

19  3216.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

20  Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve

21  Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the

22  "Hospital Leadership Team", and therefore, their ability to afford the appropriate training

23  to avoid this egregious violation of the Pennsylvania Common Law, and, since harm

1  was actually caused to the current Plaintiff Smith Family, and since harm is likely to

2  continue to harm future postpartum families, and because the acts of the Defendants

3  and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a

4  reckless and wanton manner, the Plaintiffs respectfully request the imposition of

5  punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

6  Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.

7  Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" to

8  deter such Defendants from committing to such conduct in the future which violates

9  Commonwealth of Pennsylvania Common Law Plaintiffs respectfully request an amount

10  of $5,000,000 in punitive damages per Defendants Mr. Jerry Hric, MD Mr. Steve

11  Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the

12  "Hospital Leadership Team"; and $10,000,000 per Defendants St. Luke's Hospital,

13  Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, and Ms. Cynthia Shultz, MD.

14  3217.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

15  suffered any actual injury despite the deprivation of their common law rights, the

16  Plaintiffs respectfully request a nominal judgment of $1.00.

17  ## XLI.    <u>Intentional Infliction of Emotional Distress II</u>

18  <u>Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa</u>

19  <u>Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,</u>

20  <u>Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team", & Mr.</u>

21  <u>Jerry Hric, MD</u>

1    3218.  To plead an intentional infliction of emotional distress claim under Pennsylvania

2    law, [Plaintiffs] must allege the Defendant's conduct (1) was intentional or reckless; (2)

3    was extreme and outrageous; (3) actually caused the distress; and (4) caused distress

4    that was severe.304

5    3219.  "In Pennsylvania, '[l]iability on an intentional infliction of emotional distress claim

6    has been found only where the conduct has been so outrageous in character, and so

7    extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

8    as atrocious, and utterly intolerable in a civilized community.'"305

9    3220.  To maintain [their] claim for intentional infliction of emotional distress, [Plaintiffs],

10   must allege that [they] suffered "severe" emotional distress resulting from the

11   Defendant's conduct.306

12   3221.  "Fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin,

13   disappointment, worry and nausea" all indicate "severe" emotional distress[,]"307 as well

---

304*Davenport v. Pottstown Hosp. Co.*, CIVIL ACTION NO. 17-1616 at 10 (E.D. Pa. Jul.

18, 2017), *citing*, *Regan v. Township of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D.

Pa. 1999).

305*Id, citing, Kasper v. Cnty. of Bucks*, 514 Fed. App'x. 210, 217 (3d Cir. 2013) (internal

citations and quotations omitted).

306*Id at *10-11, citing, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000); *See also,*

*Corbett v. Morgenstern*, 934 F. Supp. 680, 684-85 (E.D. Pa. 1996) ([in which] symptoms

of severe depression, nightmares, anxiety and ongoing mental or physical harm suffice).

307*Id, quoting, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000).

as, "fear, anxiety, stress, anger, headaches, nightmares, humiliation, emotional distress

[and] mental anguish also indicate "severe emotional distress."[308]

3222. "The extreme and outrageous character of conduct may arise from an abuse by a

person in a position of actual or apparent authority over another, or by one with the

power to affect the other's interests." [309]

3223. IIED (1): The Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.

Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team" and

Mr. Jerry Hric, MD's actions were intentional and/or reckless when as agents,

employees, or assigns of a medical provider, Defendants separated a newborn child in

a NICU from the custody, care and control of its parents Plaintiffs Mr. and Mrs. Smith

based entirely on an undifferentiated urinary drug screen, and repudiation of all

exculpating evidence, including the fact that there were not any signs or symptoms of

methamphetamine withdrawal in either Plaintiff Mrs. Smith or Newborn baby J.A.S.

3224. IIED (2): The Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.

Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team" and

Mr. Jerry Hric, MD's actions were extreme and outrageous because to separate a

mother and father from a newborn child in a NICU without a court order or reasonable

suspicion, and based solely on an undifferentiated urinary drug screen and repudiation

---

[308] *Id.*

[309] *Id* at *8.

1   of the fact that neither Plaintiff Mrs. Smith nor Newborn baby J.A.S. was experiencing

2   methamphetamine withdrawal was so outrageous in character, and so extreme in

3   degree, as to go beyond all possible bounds of decency, and to be regarded as

4   atrocious, and utterly intolerable in a civilized community.

5   3225.  IIED (3):  The Defendants actions actually caused the distress to the Plaintiffs

6   when Plaintiffs Mr. and Mrs. Smith were removed against their will and consent from

7   Defendants St. Luke's Hospital property under threat of arrest, because Defendants St.

8   Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia

9   Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

10  Dawn Hoffman, the "Hospital Leadership Team" and Mr. Jerry Hric, MD refused to

11  acknowledge Plaintiffs Mr. and Mrs. Smith's parental rights to remain with their child,

12  causing the Plaintiffs Mr. and Mrs. Smith to feel grief, fear, anxiety, stress, chagrin,

13  disappointment, worry, shame, humiliation, and, embarrassment.

14  3226.  IIED (4):  The stress to the Plaintiffs caused by Defendants was and continues to

15  be severe, in that the distress has manifested itself physical symptoms that include, but

16  are not limited to: Plaintiff Mrs. Smith has suffered the following physical manifestations

17  of emotional distress to the Defendant's alleged intentional infliction of emotional

18  distress: nightmares, night sweats, excessive diarrhea, anxiety and panic attacks,

19  separation anxiety from Newborn baby J.A.S., insomnia, depression, PTSD symptoms

20  including staring into space while reliving the incident, muscle tightness and back

21  spasms, and body tremors; Plaintiff Mr. Smith has suffered the following physical

22  manifestations of emotional distress due to the Defendant's alleged intentional infliction

23  of emotional distress: intense headaches, depression, stomach upset and nausea,

1  excessive acid reflux, vomiting, symptoms of PTSD including staring into space reliving

2  the incident, fatigue, insomnia, excessive sweating, loss of appetite, excessive dry skin

3  sometimes forming open sores on his scalp and face.

4  3227.  Plaintiffs Mr. and Mrs. Smith require and attend regular sessions with a

5  specialized PTSD therapist to process and heal from the emotional distress foisted

6  upon them.

7  3228.  Upon information and belief, each of the listed Defendants in this claim, St.

8  Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia

9  Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

10  Dawn Hoffman, the "Hospital Leadership Team" and Mr. Jerry Hric, MD, were in a

11  position of actual or apparent authority over the Plaintiffs Mr. and Mrs. Smith and

12  Newborn baby J.A.S., and each Defendant had the power to affect the interest of the

13  Smith Family to remain intact.

14  3229.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

15  MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

16  Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team" and Mr. Jerry Hric,

17  MD's conduct violated Plaintiffs' rights under Pennsylvania common law intentional

18  infliction of emotional distress.

19  3230.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

20  evidence that each of the listed Defendants conspired with at least one other Defendant

21  elsewhere listed in this complaint via an overt act with malice or an intent to injure the

22  Plaintiffs.

1    3231.  The conspiracy between the Defendant parties and their agents, employees,

2    assigns, or other Defendants violates Pennsylvania common law against conspiracies;

3    thereby, causing actual damages to Plaintiffs Mr. & Mrs. Smith.

4    3232.  Upon information and belief, Plaintiff can demonstrate by a preponderance of

5    evidence that the Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, and Mr.

6    Jerry Hric, MD supervised Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve

7    Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the

8    "Hospital Leadership Team," in connection with this allegation and are therefore liable

9    under a legal theory of respondeat superior.

10   3233.  Accordingly, and in connection with the alleged intentional infliction of emotional

11   distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

12   Entities be required to adopt a third-party training program which demonstrates

13   appropriate circumstances under which a child should be reasonably separated from its

14   natural parents, and the specific legal procedures to adhere to for such a separation to

15   take place, including what the signs and symptoms of methamphetamine withdrawal

16   are, when and how to appropriately attest to those symptoms in patient records, and to

17   only separate a newborn child from its parents if signs and symptoms of

18   methamphetamine withdrawal are present.

19   3234.  Accordingly, and in connection with the alleged intentional infliction of emotional

20   distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

21   Persons be required to attend and pass a rigorous a third-party training program which

22   demonstrates appropriate circumstances under which a child should be reasonably

23   separated from its natural parents, and the specific legal procedures to adhere to for

1   such a separation to take place, including what the signs and symptoms of

2   methamphetamine withdrawal are, when and how to appropriately attest to those

3   symptoms in patient records, and to only separate a newborn child from its parents if

4   signs and symptoms of methamphetamine withdrawal are present.

5   3235.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

6   training course, then the Defendant Entities should create their own legal training

7   program which demonstrates appropriate circumstances under which a child should be

8   reasonably separated from its natural parents, and the specific legal procedures to

9   adhere to for such a separation to take place, including what the signs and symptoms of

10  methamphetamine withdrawal are, when and how to appropriately attest to those

11  symptoms in patient records, and to only separate a newborn child from its parents if

12  signs and symptoms of methamphetamine withdrawal are present; and, before the

13  created program is implemented, the program must be approved by an appropriate

14  court or federal agency for review; and, the program must be implemented within 180

15  days of the valid judgment of this honorable Court.

16  3236.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

17  conduct, including but not limited to, emotional and psychological distress, pain and

18  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

19  appropriate compensatory damages to account for PTSD therapies and other related

20  treatments as they have been and will continue to be necessary; Plaintiffs respectfully

21  request an amount of $84,800 in compensatory damages per Defendant.

22  3237.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

23  Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve

1   Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the

2   "Hospital Leadership Team", and therefore, their ability to afford the appropriate training

3   to avoid this egregious violation of the Pennsylvania Common Law, and, since harm

4   was actually caused to the current Plaintiff Smith Family, and since harm is likely to

5   continue to harm future postpartum families, and because the acts of the Defendants

6   and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a

7   reckless and wanton manner, the Plaintiffs respectfully request the imposition of

8   punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

9   Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.

10  Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" to

11  deter such Defendants from committing to such conduct in the future which violates

12  Commonwealth of Pennsylvania Common Law Plaintiffs respectfully request an amount

13  of $5,000,000 in punitive damages per Defendants Mr. Jerry Hric, MD Mr. Steve

14  Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the

15  "Hospital Leadership Team"; and $10,000,000 per Defendants St. Luke's Hospital,

16  Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, and Ms. Cynthia Shultz, MD.

17  3238.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

18  suffered any actual injury despite the deprivation of their common law rights, the

19  Plaintiffs respectfully request a nominal judgment of $1.00.

20  ## XLII.    Intentional Infliction of Emotional Distress III

21  Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

22  MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

1  <u>Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team", & Mr. Jerry Hric,</u>

2  <u>MD</u>

3  3239.  To plead an intentional infliction of emotional distress claim under Pennsylvania

4  law, [Plaintiffs] must allege the Defendant's conduct (1) was intentional or reckless; (2)

5  was extreme and outrageous; (3) actually caused the distress; and (4) caused distress

6  that was severe.310

7  3240.  "In Pennsylvania, '[l]iability on an intentional infliction of emotional distress claim

8  has been found only where the conduct has been so outrageous in character, and so

9  extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

10  as atrocious, and utterly intolerable in a civilized community.'"311

11  3241.  To maintain [their] claim for intentional infliction of emotional distress, [Plaintiffs],

12  must allege that [they] suffered "severe" emotional distress resulting from the

13  Defendant's conduct.312

---

310*Davenport v. Pottstown Hosp. Co.*, CIVIL ACTION NO. 17-1616 at 10 (E.D. Pa. Jul.

18, 2017), *citing*, *Regan v. Township of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D.

Pa. 1999).

311*Id, citing, Kasper v. Cnty. of Bucks*, 514 Fed. App'x. 210, 217 (3d Cir. 2013) (internal

citations and quotations omitted).

312*Id at *10-11, citing, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000); *See also,*

*Corbett v. Morgenstern*, 934 F. Supp. 680, 684-85 (E.D. Pa. 1996) ([in which] symptoms

of severe depression, nightmares, anxiety and ongoing mental or physical harm suffice).

1  3242. "Fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin,

2  disappointment, worry and nausea" all indicate "severe" emotional distress[,]"[313] as well

3  as, "fear, anxiety, stress, anger, headaches, nightmares, humiliation, emotional distress

4  [and] mental anguish also indicate "severe emotional distress."[314]

5  3243. "The extreme and outrageous character of conduct may arise from an abuse by a

6  person in a position of actual or apparent authority over another, or by one with the

7  power to affect the other's interests." [315]

8  3244. IIED (1): The Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

9  Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.

10  Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team's"

11  actions were intentional and/or reckless when as agents, employees, or assigns of a

12  medical provider, separated a newborn child in a NICU from the custody of its parents

13  Plaintiffs Mr. and Mrs. Smith by falsifying medical information to state authorities by

14  erroneously stating that Plaintiff Mrs. Smith ingested methamphetamine and that she

15  passed the deleterious effects of methamphetamine ingestion on to her child Plaintiff

16  Newborn baby J.A.S.

17  3245. IIED (2): The Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

18  Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L.

19  Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team's"

---

[313]*Id, quoting, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000).

[314]*Id.*

[315] *Id* at *8.

actions were extreme and outrageous because to separate a mother and father from a newborn child in a NICU by conveying false medical records to state authorities with an intent to have Plaintiffs Mr. and Mrs. Smith separated from Plaintiff Newborn baby J.A.S.  was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

3246.  IIED (3):  The Defendants' actions actually caused the distress to the Plaintiffs when Plaintiffs Mr. and Mrs. Smith were removed from Defendant's St. Luke's Hospital property against their will and consent under threat of arrest, because Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team,", contacted local police and two different counties of children and youth services and conveyed the false information that Plaintiff Mrs. Smith ingested methamphetamine and that she and Plaintiff Mr. Smith should be separated from Plaintiff Newborn baby J.A.S., causing the Plaintiffs Mr. and Mrs. Smith to feel grief, fear, anxiety, stress, chagrin, disappointment, worry, shame, humiliation, and, embarrassment.

3247.  IIED (4):  The stress caused to the Plaintiffs by Defendants was and continues to be severe, in that the distress has manifested itself physical symptoms that include, but are not limited to: Plaintiff Mrs. Smith has suffered the following physical manifestations of emotional distress to the Defendant's alleged intentional infliction of emotional distress: nightmares, night sweats, excessive diarrhea, anxiety and panic attacks, separation anxiety from Newborn baby J.A.S., insomnia, depression, PTSD symptoms

1   including staring into space while reliving the incident, muscle tightness and back

2   spasms, and body tremors; Plaintiff Mr. Smith has suffered the following physical

3   manifestations of emotional distress due to the Defendant's alleged intentional infliction

4   of emotional distress: intense headaches, depression, stomach upset and nausea,

5   excessive acid reflux, vomiting, symptoms of PTSD including staring into space reliving

6   the incident, fatigue, insomnia, excessive sweating, loss of appetite, excessive dry skin

7   sometimes forming open sores on his scalp and face.

8   3248.  Plaintiffs Mr. and Mrs. Smith require and attend regular sessions with a

9   specialized PTSD therapist to process and heal from the emotional distress foisted

10  upon them.

11  3249.  Upon information and belief, each of the listed Defendants in this claim, St.

12  Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia

13  Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

14  Dawn Hoffman, the "Hospital Leadership Team" and Mr. Jerry Hric, MD, were in a

15  position of actual or apparent authority over the Plaintiffs Mr. and Mrs. Smith and

16  Newborn baby J.A.S., and each Defendant had the power to affect the interest of the

17  Smith Family to remain intact.

18  3250.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

19  MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

20  Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team" and Mr. Jerry Hric,

21  MD's conduct violated Plaintiffs' rights under Pennsylvania common law intentional

22  infliction of emotional distress.

3251.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of evidence that each of the listed Defendants conspired with at least one other Defendant elsewhere listed in this complaint via an overt act with malice or an intent to injure the Plaintiffs.

3252.  The conspiracy between the Defendant parties and their agents, employees, assigns, or other Defendants violates Pennsylvania common law against conspiracies; thereby, causing actual damages to Plaintiffs Mr. & Mrs. Smith.

3253.  Upon information and belief, Plaintiff can demonstrate by a preponderance of evidence that the Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, and Mr. Jerry Hric, MD supervised Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team," in connection with this allegation and are therefore liable under a legal theory of respondeat superior.

3254.  Accordingly, and in connection with the alleged intentional infliction of emotional distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Entities be required to adopt a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place, including the accurate recording of medical records bereft of bias, the prevention of rumors about patients, and the consequences of communication of false medical records to state authorities.

3255.  Accordingly, and in connection with the alleged intentional infliction of emotional distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

1  Persons be required to attend and pass a rigorous a third-party training program which

2  demonstrates appropriate circumstances under which a child should be reasonably

3  separated from its natural parents, and the specific legal procedures to adhere to for

4  such a separation to take place, including the accurate recording of medical records

5  bereft of bias, the prevention of rumors about patients, and the consequences of

6  communication of false medical records to state authorities.

7  3256.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

8  training course, then the Defendant Entities should create their own legal training

9  program which demonstrates appropriate circumstances under which a child should be

10  reasonably separated from its natural parents, and the specific legal procedures to

11  adhere to for such a separation to take place, including the accurate recording of

12  medical records bereft of bias, the prevention of rumors about patients, and the

13  consequences of communication of false medical records to state authorities; and,

14  before the created program is implemented, the program must be approved by an

15  appropriate court or federal agency for review; and, the program must be implemented

16  within 180 days of the valid judgment of this honorable Court.

17  3257.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

18  conduct, including but not limited to, emotional and psychological distress, pain and

19  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

20  appropriate compensatory damages to account for PTSD therapies and other related

21  treatments as they have been and will continue to be necessary; Plaintiffs respectfully

22  request an amount of $84,800 in compensatory damages per Defendant.

3258.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team," and Mr. Jerry Hric, MD and therefore, their ability to afford the appropriate training to avoid this egregious violation of the Pennsylvania Common Law, and, since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum families, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the imposition of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team," and Mr. Jerry Hric, MD to deter such Defendants from committing to such conduct in the future which violates Commonwealth of Pennsylvania Common Law Plaintiffs respectfully request an amount of $5,000,000 in punitive damages per Defendants Mr. Jerry Hric, MD Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team"; and $10,000,000 per Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, and Ms. Cynthia Shultz, MD.

3259.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith suffered any actual injury despite the deprivation of their common law rights, the Plaintiffs respectfully request a nominal judgment of $1.00.

## XLIII.   <u>Intentional Infliction of Emotional Distress IV</u>

## Mr. & Mrs. Smith v. Anderson Labs & Ms. Emily Miller, MD

3260.  To plead an intentional infliction of emotional distress claim under Pennsylvania law, [Plaintiffs] must allege the Defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; (3) actually caused the distress; and (4) caused distress that was severe.[316]

3261.  "In Pennsylvania, '[l]iability on an intentional infliction of emotional distress claim has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"[317]

3262.  To maintain [their] claim for intentional infliction of emotional distress, [Plaintiffs], must allege that [they] suffered "severe" emotional distress resulting from the Defendant's conduct.[318]

---

[316]*Davenport v. Pottstown Hosp. Co.*, CIVIL ACTION NO. 17-1616 at 10 (E.D. Pa. Jul. 18, 2017), *citing*, *Regan v. Township of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D. Pa. 1999).

[317]*Id, citing, Kasper v. Cnty. of Bucks*, 514 Fed. App'x. 210, 217 (3d Cir. 2013) (internal citations and quotations omitted).

[318]*Id at *10-11, citing, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000); *See also, Corbett v. Morgenstern*, 934 F. Supp. 680, 684-85 (E.D. Pa. 1996) ([in which] symptoms of severe depression, nightmares, anxiety and ongoing mental or physical harm suffice).

3263. "Fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea" all indicate "severe" emotional distress[,]"[319] as well as, "fear, anxiety, stress, anger, headaches, nightmares, humiliation, emotional distress [and] mental anguish also indicate "severe emotional distress."[320]

3264. "The extreme and outrageous character of conduct may arise from an abuse by a person in a position of actual or apparent authority over another, or by one with the power to affect the other's interests."[321]

3265. IIED (1): The Defendants Anderson Labs and Ms. Emily Miller, MD's actions were intentional and/or reckless when as agents, employees, or assigns of a medical testing provider, separated a newborn child in a NICU from the custody, care and control of its parents Plaintiffs Mr. and Mrs. Smith by administering a test that did not differentiate between legal amphetamines and illegal methamphetamines, and which Defendants knew or reasonably should have known would be used by St. Luke's Hospital, its affiliates, employees, agents, and/or assigns to accuse Plaintiff Mrs. Smith of illegal methamphetamine ingestion, and by extension to separate Plaintiff Mrs. Smith from her newborn baby.

3266. IIED (2): The Defendants Anderson Labs and Ms. Emily Miller, MD, & actions were extreme and outrageous because to separate a mother and father from a newborn child in a NICU by providing undifferentiated drug tests which the Defendants knew or reasonably should have known would be communicated to state authorities as testing

---

[319] *Id, quoting, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000).

[320] *Id.*

[321] *Id* at *8.

1   positive for methamphetamine without actually testing positive for methamphetamine,

2   was so outrageous in character, and so extreme in degree, as to go beyond all possible

3   bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

4   community.

5   3267.  IIED (3):  The Defendants' actions actually caused the distress to the Plaintiffs

6   when Plaintiffs Mr. and Mrs. Smith were removed from St. Luke's Hospital property

7   against their will and consent under threat of arrest, because Defendants Anderson

8   Labs and Ms. Emily Miller, MD, produced undifferentiated drug tests which were meant

9   to convey the false information that Plaintiff Mrs. Smith ingested methamphetamine, and

10  by implication that she and Plaintiff Mr. Smith should be separated from Newborn baby

11  J.A.S., causing the Plaintiffs Mr. and Mrs. Smith to feel grief, fear, anxiety, stress,

12  chagrin, disappointment, worry, shame, humiliation, and, embarrassment.

13  3268.  IIED (4):  The stress caused to the Plaintiffs by Defendants was and continues to

14  be severe, in that the distress has manifested itself physical symptoms that include, but

15  are not limited to: Plaintiff Mrs. Smith has suffered the following physical manifestations

16  of emotional distress to the Defendant's alleged intentional infliction of emotional

17  distress: nightmares, night sweats, excessive diarrhea, anxiety and panic attacks,

18  separation anxiety from newborn baby J.A.S., insomnia, depression, PTSD symptoms

19  including staring into space while reliving the incident, muscle tightness and back

20  spasms, and body tremors; Plaintiff Mr. Smith has suffered the following physical

21  manifestations of emotional distress due to the Defendant's alleged intentional infliction

22  of emotional distress: intense headaches, depression, stomach upset and nausea,

23  excessive acid reflux, vomiting, symptoms of PTSD including staring into space reliving

1   the incident, fatigue, insomnia, excessive sweating, loss of appetite, excessive dry skin

2   sometimes forming open sores on his scalp and face.

3   3269.  Plaintiffs Mr. and Mrs. Smith require and attend regular sessions with a

4   specialized PTSD therapist to process and heal from the emotional distress foisted

5   upon them.

6   3270.  Upon information and belief, each of the listed Defendants in this claim,

7   Anderson Labs and Ms. Emily Miller, MD were in a position of actual or apparent

8   authority over the Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S., and each

9   Defendant had the power to affect the interest of the Smith Family to remain intact.

10  3271.  Defendants Anderson Labs and Ms. Emily Miller, MD's conduct violated Plaintiffs'

11  rights under Pennsylvania common law intentional infliction of emotional distress.

12  3272.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

13  evidence that each of the listed Defendants conspired with at least one other Defendant

14  elsewhere listed in this complaint via an overt act with malice or an intent to injure the

15  Plaintiffs.

16  3273.  The conspiracy between the Defendant parties and their agents, employees,

17  assigns, or other Defendants violates Pennsylvania common law against conspiracies;

18  thereby, causing actual damages to Plaintiffs Mr. & Mrs. Smith.

19  3274.  Upon information and belief, Plaintiff can demonstrate by a preponderance of

20  evidence that the Defendant Anderson Labs supervised Ms. Emily Miller, MD in

21  connection with this allegation and is therefore liable under a legal theory of respondeat

22  superior.

3275.  Accordingly, and in connection with the alleged intentional infliction of emotional distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request Anderson Labs be required to adopt a third-party training program demonstrates the appropriate need for accurate differential testing between legal amphetamines and illegal methamphetamines.

3276.  Accordingly, and in connection with the alleged intentional infliction of emotional distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request Anderson Labs be required to immediately cease undifferentiated testing between legal amphetamines and illegal methamphetamines, and, in addition, both categories of indication (amphetamine and methamphetamine) must be clearly separated in lab reports.

3277.  Accordingly, and in connection with the alleged intentional infliction of emotional distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Persons be required to attend and pass a rigorous a third-party training program which demonstrates the appropriate need for accurate differential testing between legal amphetamines and illegal methamphetamines.

3278.  Accordingly, if a third-party cannot be found to render the appropriately rigorous training course, then Anderson Labs should create their own legal training program on when it is appropriate to separate a child from its parents including training which demonstrates the appropriate need for accurate differential testing between legal amphetamines and illegal methamphetamines; and, before the created program is implemented, the program must be approved by an appropriate court or federal agency for review; and, the program must be implemented within 180 days of the valid judgment of this honorable Court.

3279.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully request an amount of $84,800 in compensatory damages per Defendant.

3280.  Given the substantial wealth of the Defendants Anderson Labs and Ms. Emily Miller, MD and therefore, their ability to afford the appropriate training to avoid this egregious violation of the Pennsylvania Common Law, and, since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum families, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the imposition of punitive damages on Defendants Anderson Labs and Ms. Emily Miller, MD to deter such Defendants from committing to such conduct in the future which violates Commonwealth of Pennsylvania Common Law Plaintiffs respectfully request an amount of $5,000,000 in punitive damages per Defendants Anderson Labs, and Ms. Emily Miller, MD.

3281.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith suffered any actual injury despite the deprivation of their common law rights, the Plaintiffs respectfully request a nominal judgment of $1.00.

## XLIV.    <u>Intentional Infliction of Emotional Distress V</u>

<u>Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, DO & Ms. Patricia Bates, CRNP</u>

3282.  To plead an intentional infliction of emotional distress claim under Pennsylvania law, [Plaintiffs] must allege the Defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; (3) actually caused the distress; and (4) caused distress that was severe.[322]

3283.  "In Pennsylvania, '[l]iability on an intentional infliction of emotional distress claim has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"[323]

---

[322]*Davenport v. Pottstown Hosp. Co.*, CIVIL ACTION NO. 17-1616 at 10 (E.D. Pa. Jul. 18, 2017), *citing*, *Regan v. Township of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D. Pa. 1999).

[323]*Id, citing, Kasper v. Cnty. of Bucks*, 514 Fed. App'x. 210, 217 (3d Cir. 2013) (internal citations and quotations omitted).

1  3284.  To maintain [their] claim for intentional infliction of emotional distress, [Plaintiffs],

2  must allege that [they] suffered "severe" emotional distress resulting from the

3  Defendant's conduct.324

4  3285.  "Fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin,

5  disappointment, worry and nausea" all indicate "severe" emotional distress[,]325 as well

6  as, "fear, anxiety, stress, anger, headaches, nightmares, humiliation, emotional distress

7  [and] mental anguish also indicate "severe emotional distress."326

8  3286.  "The extreme and outrageous character of conduct may arise from an abuse by a

9  person in a position of actual or apparent authority over another, or by one with the

10  power to affect the other's interests." 327

11  3287.  IIED (1): The Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

12  Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Mr. Gilberto Santiago, MD, Ms.

13  Chaminie Wheeler, DO, and Ms. Patricia Bates, CRNP's actions were intentional and/or

14  reckless when as agents, employees, or assigns of a medical provider, included in

15  Newborn baby J.A.S.'s medical records the false medical information erroneously

16  stating that Plaintiff Mrs. Smith ingested methamphetamine.

---

324*Id at *10-11, citing, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000); *See also, Corbett v. Morgenstern*, 934 F. Supp. 680, 684-85 (E.D. Pa. 1996) ([in which] symptoms of severe depression, nightmares, anxiety and ongoing mental or physical harm suffice).

325*Id, quoting, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000).

326*Id.*

327 *Id* at *8.

3288.  IIED (2): The Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, DO, and Ms. Patricia Bates, CRNP's actions were extreme and outrageous because these false statements were repeated and reinforced in Newborn baby J.A.S.'s medical records in an attempt to vitiate the actions of Plaintiffs Mr. and Mrs. Smith and to justify the atrocious behavior of the Defendants, which was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

3289.  IIED (3):  The Defendants actions actually caused the distress to the Plaintiffs when Plaintiffs Mr. and Mrs. Smith were forcibly and against their will removed from Defendant St. Luke's Hospital property under threat of arrest, because Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, DO, and Ms. Patricia Bates, CRNP, concocted and/or ratified the conveyed false information that Plaintiff Mrs. Smith ingested methamphetamine and that she and Plaintiff Mr. Smith should be separated from Newborn baby J.A.S. because they are abusive people towards newborn children, causing the Plaintiffs Mr. and Mrs. Smith to feel grief, fear, anxiety, stress, chagrin, disappointment, worry, shame, humiliation, and, embarrassment.

3290.  IIED (4):  The stress caused to the Plaintiffs by Defendants was and continues to be severe, in that the distress has manifested itself physical symptoms that include, but are not limited to: Plaintiff Mrs. Smith has suffered the following physical manifestations of emotional distress to the Defendant's alleged intentional infliction of emotional

distress: nightmares, night sweats, excessive diarrhea, anxiety and panic attacks, separation anxiety from Newborn baby J.A.S., insomnia, depression, PTSD symptoms including staring into space while reliving the incident, muscle tightness and back spasms, and body tremors; Plaintiff Mr. Smith has suffered the following physical manifestations of emotional distress due to the Defendant's alleged intentional infliction of emotional distress: intense headaches, depression, stomach upset and nausea, excessive acid reflux, vomiting, symptoms of PTSD including staring into space reliving the incident, fatigue, insomnia, excessive sweating, loss of appetite, excessive dry skin sometimes forming open sores on his scalp and face.

3291. Plaintiffs Mr. and Mrs. Smith require and attend regular sessions with a specialized PTSD therapist to process and heal from the emotional distress foisted upon them.

3292. Upon information and belief, each of the listed Defendants in this claim, St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, DO, and Ms. Patricia Bates, CRNP, were in a position of actual or apparent authority over the Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S., and each Defendant had the power to affect the interest of the Smith Family to remain intact.

3293. Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, DO, and Ms. Patricia Bates, CRNP's conduct violated Plaintiffs' rights under Pennsylvania common law intentional infliction of emotional distress.

1   3294.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

2   evidence that each of the listed Defendants conspired with at least one other Defendant

3   elsewhere listed in this complaint via an overt act with malice or an intent to injure the

4   Plaintiffs.

5   3295.  The conspiracy between the Defendant parties and their agents, employees,

6   assigns, or other Defendants violates Pennsylvania common law against conspiracies;

7   thereby, causing actual damages to Plaintiffs Mr. & Mrs. Smith.

8   3296.  Upon information and belief, Plaintiff can demonstrate by a preponderance of

9   evidence that the Defendants St. Luke's Hospital, Onsite Neonatal, and OBHG PA

10  supervised Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Mr. Gilberto Santiago,

11  MD, Ms. Chaminie Wheeler, DO, and Ms. Patricia Bates, CRNP in connection with this

12  allegation and are therefore liable under a legal theory of respondeat superior.

13  3297.  Accordingly, and in connection with the alleged intentional infliction of emotional

14  distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

15  Entities be required to adopt a third-party training program which demonstrates

16  appropriate circumstances under which a child should be reasonably separated from its

17  natural parents, and the specific legal procedures to adhere to for such a separation to

18  take place.

19  3298.  Accordingly, and in connection with the alleged intentional infliction of emotional

20  distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

21  Persons be required to attend and pass a rigorous a third-party training program which

22  demonstrates appropriate circumstances under which a child should be reasonably

1   separated from its natural parents, and the specific legal procedures to adhere to for

2   such a separation to take place.

3   3299.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

4   training course, then the Defendant Entities should create their own legal training

5   program which demonstrates appropriate circumstances under which a child should be

6   reasonably separated from its natural parents, and the specific legal procedures to

7   adhere to for such a separation to take place, including ; and, before the created

8   program is implemented, the program must be approved by an appropriate court or

9   federal agency for review; and, the program must be implemented within 180 days of

10  the valid judgment of this honorable Court.

11  3300.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

12  conduct, including but not limited to, emotional and psychological distress, pain and

13  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

14  appropriate compensatory damages to account for PTSD therapies and other related

15  treatments as they have been and will continue to be necessary; Plaintiffs respectfully

16  request an amount of $84,800 in compensatory damages per Defendant.

17  3301.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

18  Neonatal, and OBHG PA supervised Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot,

19  DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, DO, and Ms. Patricia Bates,

20  CRNP and therefore, their ability to afford the appropriate training to avoid this

21  egregious violation of the Pennsylvania Common Law, and, since harm was actually

22  caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm

23  future postpartum families, and because the acts of the Defendants and their agents,

1   assigns, or employees callously disregarded the Plaintiff's rights in a reckless and

2   wanton manner, the Plaintiffs respectfully request the imposition of punitive damages on

3   Defendants St. Luke's Hospital, Onsite Neonatal, and OBHG PA supervised Ms.

4   Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Mr. Gilberto Santiago, MD, Ms.

5   Chaminie Wheeler, DO, and Ms. Patricia Bates, CRNP to deter such Defendants from

6   committing to such conduct in the future which violates Commonwealth of Pennsylvania

7   Common Law Plaintiffs respectfully request an amount of $1,000,000 in punitive

8   damages per Defendants Mr. Gilberto Santiago, MD, and Ms. Patricia Bates, CRNP;

9   $5,000,000 per Defendants Mr. Patrick Philpot, DO, and Ms. Chaminie Wheeler, DO;

10  and $10,000,000 per Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, and

11  Ms. Cynthia M. Shultz, MD.

12  3302.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

13  suffered any actual injury despite the deprivation of their common law rights, the

14  Plaintiffs respectfully request a nominal judgment of $1.00.

15  ## XLV.   <u>Intentional Infliction of Emotional Distress VI</u>

16  <u>Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Bethlehem</u>

17  <u>Neonatal, St. Luke's Physician's Group, St. Luke's Obstetrics and Gynecological</u>

18  <u>Assoc., Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot,</u>

19  <u>DO, Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E.</u>

20  <u>Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms.</u>

21  <u>Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr.</u>

1    <u>Gilberto I. Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP,</u>

2    <u>"Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr.</u>

3    <u>Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,</u>

4    <u>the "Hospital Leadership Team" & Mr. Jerry Hric, MD</u>

5    3303.  To plead an intentional infliction of emotional distress claim under Pennsylvania

6    law, [Plaintiffs] must allege the Defendant's conduct (1) was intentional or reckless; (2)

7    was extreme and outrageous; (3) actually caused the distress; and (4) caused distress

8    that was severe.[328]

9    3304.  "In Pennsylvania, '[l]iability on an intentional infliction of emotional distress claim

10   has been found only where the conduct has been so outrageous in character, and so

11   extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

12   as atrocious, and utterly intolerable in a civilized community.'"[329]

---

[328]*Davenport v. Pottstown Hosp. Co.*, CIVIL ACTION NO. 17-1616 at 10 (E.D. Pa. Jul.

18, 2017), *citing*, *Regan v. Township of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D.

Pa. 1999).

[329]*Id, citing, Kasper v. Cnty. of Bucks*, 514 Fed. App'x. 210, 217 (3d Cir. 2013) (internal

citations and quotations omitted).

1   3305.  To maintain [their] claim for intentional infliction of emotional distress, [Plaintiffs],

2   must allege that [they] suffered "severe" emotional distress resulting from the

3   Defendant's conduct.330

4   3306.  "Fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin,

5   disappointment, worry and nausea" all indicate "severe" emotional distress[,]331 as well

6   as, "fear, anxiety, stress, anger, headaches, nightmares, humiliation, emotional distress

7   [and] mental anguish also indicate "severe emotional distress."332

8   3307.  "The extreme and outrageous character of conduct may arise from an abuse by a

9   person in a position of actual or apparent authority over another, or by one with the

10   power to affect the other's interests." 333

11   3308.  IIED (1): The Defendants, St. Luke's Hospital, Onsite Neonatal, OBHG PA,

12   Bethlehem Neonatal, St. Luke's Physician's Group, St. Luke's Obstetrics and

13   Gynecological Assoc., Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick

14   Philpot, DO, Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E.

15   Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

16   Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I.

---

330 *Id at \*10-11, citing, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000); *See also, Corbett v. Morgenstern*, 934 F. Supp. 680, 684-85 (E.D. Pa. 1996) ([in which] symptoms of severe depression, nightmares, anxiety and ongoing mental or physical harm suffice).

331 *Id, quoting, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000).

332 *Id.*

333 *Id* at \*8.

1  Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, "Security

2  Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq.,

3  Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital

4  Leadership Team" actions were intentional and/or reckless when as agents, employees,

5  or assigns of a medical provider, accused Mrs. Smith of illegal drug use, separated both

6  Plaintiffs Mr. & Mrs. Smith from Newborn baby J.A.S., and ejected Plaintiffs Mr. and

7  Mrs. Smith against their will and consent from Defendant St. Luke's Hospital before

8  performing any cursory investigation into the likelihood that Plaintiff Mrs. Smith had

9  actually ingested methamphetamine.

10  3309.  IIED (2): The Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA,

11  Bethlehem Neonatal, St. Luke's Physician's Group, St. Luke's Obstetrics and

12  Gynecological Assoc., Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick

13  Philpot, DO, Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E.

14  Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

15  Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I.

16  Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, "Security

17  Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq.,

18  Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital

19  Leadership Team's" actions were extreme and outrageous because Defendant St.

20  Luke's Hospital, its affiliates, employees, agents, and/or assigns who were in a position

21  to preserve the Smith Family Unit with a mere cursory investigation into whether Plaintiff

22  Mrs. Smith actually ingested methamphetamine—simply chose not to do so and further

23  repudiated obvious exculpating evidence including the lack of withdrawal of

1   methamphetamine symptoms in both Plaintiff Mrs. Smith and Newborn baby J.A.S.—

2   actions which were so outrageous in character, and so extreme in degree, as to go

3   beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

4   intolerable in a civilized community.

5   3310.  IIED (3):  Upon information and belief, the Defendants actions actually caused

6   the distress to the Plaintiffs when Plaintiffs Mr. and Mrs. Smith were forcibly and against

7   their will removed from Defendant St. Luke's Hospital property under threat of arrest,

8   because Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Bethlehem

9   Neonatal, St. Luke's Physician's Group, St. Luke's Obstetrics and Gynecological

10  Assoc., Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO,

11  Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis,

12  MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD,

13  Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD,

14  Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, "Security Supervisor

15  'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert

16  L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

17  Team", in an effort to be intentionally obtuse to the Smith Family situation, in an attempt

18  to exculpate themselves from liability concerning the Smith Family—actively turned a

19  blind eye to a reasonable investigation into whether Plaintiff Mrs. Smith actually

20  ingested methamphetamine, causing the Plaintiffs Mr. and Mrs. Smith to feel grief, fear,

21  anxiety, stress, chagrin, disappointment, worry, shame, humiliation, and,

22  embarrassment.

1   3311.  IIED (4):  The stress caused to the Plaintiffs by Defendants was and continues to

2   be severe, in that the distress has manifested itself physical symptoms that include, but

3   are not limited to: Plaintiff Mrs. Smith has suffered the following physical manifestations

4   of emotional distress to the Defendant's alleged intentional infliction of emotional

5   distress: nightmares, night sweats, excessive diarrhea, anxiety and panic attacks,

6   separation anxiety from Newborn baby J.A.S., insomnia, depression, PTSD symptoms

7   including staring into space while reliving the incident, muscle tightness and back

8   spasms, and body tremors; Plaintiff Mr. Smith has suffered the following physical

9   manifestations of emotional distress due to the Defendant's alleged intentional infliction

10   of emotional distress: intense headaches, depression, stomach upset and nausea,

11   excessive acid reflux, vomiting, symptoms of PTSD including staring into space reliving

12   the incident, fatigue, insomnia, excessive sweating, loss of appetite, excessive dry skin

13   sometimes forming open sores on his scalp and face.

14   3312.  Plaintiffs Mr. and Mrs. Smith require and attend regular sessions with a

15   specialized PTSD therapist to process and heal from the emotional distress foisted

16   upon them.

17   3313.  Upon information and belief, each of the listed Defendants in this claim, St.

18   Luke's Hospital property under threat of arrest, because Defendants St. Luke's Hospital,

19   Onsite Neonatal, OBHG PA, Bethlehem Neonatal, St. Luke's Physician's Group, St.

20   Luke's Obstetrics and Gynecological Assoc., Ms. Teresa Marlino, MD, Ms. Cynthia M.

21   Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb,

22   MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah

23   Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A.

1   Costello, DO, Mr. Gilberto I. Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia

2   Bates, CNRP, "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'",

3   Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

4   the "Hospital Leadership Team", and Mr. Jerry Hric, MD were in a position of actual or

5   apparent authority over the Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S., and

6   each Defendant had the power to affect the interest of the Smith Family to remain intact.

7   3314.  Defendants St. Luke's Hospital property under threat of arrest, because

8   Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Bethlehem Neonatal, St.

9   Luke's Physician's Group, St. Luke's Obstetrics and Gynecological Assoc., Ms. Teresa

10  Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R.

11  Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr.

12  Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms.

13  Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms.

14  Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, "Security Supervisor 'Unknown'",

15  "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,

16  Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team", and Mr.

17  Jerry Hric, MD's conduct violated Plaintiffs' rights under Pennsylvania common law

18  intentional infliction of emotional distress.

19  3315.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

20  evidence that each of the listed Defendants conspired with at least one other Defendant

21  elsewhere listed in this complaint via an overt act with malice or an intent to injure the

22  Plaintiffs.

1   3316.  The conspiracy between the Defendant parties and their agents, employees,

2   assigns, or other Defendants violates Pennsylvania common law against conspiracies;

3   thereby, causing actual damages to Plaintiffs Mr. & Mrs. Smith.

4   3317.  Upon information and belief, Plaintiff can demonstrate by a preponderance of

5   evidence that the Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA,

6   Bethlehem Neonatal, St. Luke's Physician's Group, St. Luke's Obstetrics and

7   Gynecological Assoc., and Mr. Jerry Hric, MD supervised Ms. Teresa Marlino, MD, Ms.

8   Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, MD, Mr. Shadi

9   N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms.

10  Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly

11  A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia

12  Bates, CNRP, "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'",

13  Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

14  and the "Hospital Leadership Team," in connection with this allegation and are therefore

15  liable under a legal theory of respondeat superior.

16  3318.  Accordingly, and in connection with the alleged intentional infliction of emotional

17  distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

18  Entities be required to adopt a third-party training program which demonstrates

19  appropriate circumstances under which a child should be reasonably separated from its

20  natural parents, and the specific legal procedures to adhere to for such a separation to

21  take place, including.

22  3319.  Accordingly, and in connection with the alleged intentional infliction of emotional

23  distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

1   Persons be required to attend and pass a rigorous a third-party training program which

2   demonstrates appropriate circumstances under which a child should be reasonably

3   separated from its natural parents, and the specific legal procedures to adhere to for

4   such a separation to take place, including.

5   3320.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

6   training course, then the Defendant Entities should create their own legal training

7   program which demonstrates appropriate circumstances under which a child should be

8   reasonably separated from its natural parents, and the specific legal procedures to

9   adhere to for such a separation to take place, including; and, before the created

10  program is implemented, the program must be approved by an appropriate court or

11  federal agency for review; and, the program must be implemented within 180 days of

12  the valid judgment of this honorable Court.

13  3321.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

14  conduct, including but not limited to, emotional and psychological distress, pain and

15  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

16  appropriate compensatory damages to account for PTSD therapies and other related

17  treatments as they have been and will continue to be necessary; Plaintiffs respectfully

18  request an amount of $84,800 in compensatory damages per Defendant.

19  3322.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

20  Neonatal, OBHG PA, Bethlehem Neonatal, St. Luke's Physician's Group, St. Luke's

21  Obstetrics and Gynecological Assoc., and Mr. Jerry Hric, MD supervised Ms. Teresa

22  Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R.

23  Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr.

1   Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms.

2   Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms.

3   Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, "Security Supervisor 'Unknown'",

4   "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,

5   Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team," and Mr.

6   Jerry Hric, MD and therefore, their ability to afford the appropriate training to avoid this

7   egregious violation of the Pennsylvania Common Law, and, since harm was actually

8   caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm

9   future postpartum families, and because the acts of the Defendants and their agents,

10   assigns, or employees callously disregarded the Plaintiff's rights in a reckless and

11   wanton manner, the Plaintiffs respectfully request the imposition of punitive damages on

12   Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Bethlehem Neonatal, St.

13   Luke's Physician's Group, St. Luke's Obstetrics and Gynecological Assoc., and Mr.

14   Jerry Hric, MD supervised Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr.

15   Patrick Philpot, DO, Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms.

16   Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD,

17   Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr.

18   Gilberto I. Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP,

19   "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve

20   Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the

21   "Hospital Leadership Team," and Mr. Jerry Hric, MD to deter such Defendants from

22   committing to such conduct in the future which violates Commonwealth of Pennsylvania

23   Common Law Plaintiffs respectfully request an amount of $1,000,000 in punitive

1  damages per Defendants Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms.

2  Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD,

3  Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr.

4  Gilberto I. Santiago, MD, and Ms. Patricia Bates, CNRP; $5,000,000 per Defendants

5  Bethlehem Neonatal, St. Luke's Physician's Group, St. Luke's Obstetrics and

6  Gynecological Assoc., Mr. Patrick Philpot, DO, Ms. Chaminie Wheeler, MD, "Security

7  Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq.,

8  Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership

9  Team", and Mr. Jerry Hric, MD; and $10,000,000 per Defendants St. Luke's Hospital,

10  Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, and Ms. Cynthia M. Shultz, MD.

11  3323.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

12  suffered any actual injury despite the deprivation of their common law rights, the

13  Plaintiffs respectfully request a nominal judgment of $1.00.

14  ## XLVI.    Intentional Infliction of Emotional Distress VII

15  Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Bethlehem

16  Neonatal, St. Luke's Physician's Group, St. Luke's Obstetrics and Gynecological

17  Assoc., Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot,

18  DO, Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E.

19  Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms.

20  Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr.

21  Gilberto I. Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP,

1    <u>Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn</u>

2    <u>Hoffman, the "Hospital Leadership Team" & Mr. Jerry Hric, MD</u>

3    3324.  To plead an intentional infliction of emotional distress claim under Pennsylvania

4    law, [Plaintiffs] must allege the Defendant's conduct (1) was intentional or reckless; (2)

5    was extreme and outrageous; (3) actually caused the distress; and (4) caused distress

6    that was severe.[334]

7    3325.  "In Pennsylvania, '[l]iability on an intentional infliction of emotional distress claim

8    has been found only where the conduct has been so outrageous in character, and so

9    extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

10   as atrocious, and utterly intolerable in a civilized community.'"[335]

11   3326.  To maintain [their] claim for intentional infliction of emotional distress, [Plaintiffs],

12   must allege that [they] suffered "severe" emotional distress resulting from the

13   Defendant's conduct.[336]

---

[334]*Davenport v. Pottstown Hosp. Co.*, CIVIL ACTION NO. 17-1616 at 10 (E.D. Pa. Jul.

18, 2017), *citing*, *Regan v. Township of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D.

Pa. 1999).

[335]*Id, citing, Kasper v. Cnty. of Bucks*, 514 Fed. App'x. 210, 217 (3d Cir. 2013) (internal

citations and quotations omitted).

[336]*Id at *10-11, citing, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000); *See also,

Corbett v. Morgenstern*, 934 F. Supp. 680, 684-85 (E.D. Pa. 1996) ([in which] symptoms

of severe depression, nightmares, anxiety and ongoing mental or physical harm suffice).

3327.  "Fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea" all indicate "severe" emotional distress[,]"[337] as well as, "fear, anxiety, stress, anger, headaches, nightmares, humiliation, emotional distress [and] mental anguish also indicate "severe emotional distress."[338]

3328.  "The extreme and outrageous character of conduct may arise from an abuse by a person in a position of actual or apparent authority over another, or by one with the power to affect the other's interests." [339]

3329.  IIED (1): The Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Bethlehem Neonatal, St. Luke's Physician's Group, St. Luke's Obstetrics and Gynecological Assoc., Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team's" actions were intentional and/or reckless when as agents, employees, or assigns of a medical provider, accused, separated, and ejected Plaintiffs Mr. and Mrs. Smith from Defendant St. Luke's Hospital before offering any appeals process for the decision to break up the Smith Family Unit.

---

[337] *Id, quoting, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000).

[338] *Id.*

[339] *Id* at *8.

3330.  IIED (2): The Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA,

Bethlehem Neonatal, St. Luke's Physician's Group, St. Luke's Obstetrics and

Gynecological Assoc., Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick

Philpot, DO, Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E.

Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I.

Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, Mr. Steve

Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the

"Hospital Leadership Team's" actions were extreme and outrageous because

Defendant St. Luke's Hospital, its affiliates, employees, agents, and/or assigns who

were in a position to preserve the Smith Family Unit with an appropriate appeals

process—simply chose not to do so—actions which were so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized community.

3331.  IIED (3):  The Defendants' actions actually caused the distress to the Plaintiffs

when Plaintiffs Mr. and Mrs. Smith were forcibly and against their will removed from

Defendant St. Luke's Hospital property under threat of arrest, because Defendants St.

Luke's Hospital, Onsite Neonatal, OBHG PA, Bethlehem Neonatal, St. Luke's

Physician's Group, St. Luke's Obstetrics and Gynecological Assoc., Ms. Teresa Marlino,

MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, MD,

Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD,

Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms.

Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms. Chaminie Wheeler, MD, Ms.

1  Patricia Bates, CNRP, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla

2  Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" did not offer any type of

3  appeals process for the outlandish and grievous accusations of child abuse being levied

4  at the Plaintiff Smith Family, causing the Plaintiffs Mr. and Mrs. Smith to feel grief, fear,

5  anxiety, stress, chagrin, disappointment, worry, shame, humiliation, confusion,

6  frustration, disbelief, and embarrassment.

7  3332.  IIED (4):  The stress caused to the Plaintiffs by Defendants was and continues to

8  be severe, in that the distress has manifested itself physical symptoms that include, but

9  are not limited to: Plaintiff Mrs. Smith has suffered the following physical manifestations

10  of emotional distress to the Defendant's alleged intentional infliction of emotional

11  distress: nightmares, night sweats, excessive diarrhea, anxiety and panic attacks,

12  separation anxiety from newborn baby J.A.S., insomnia, depression, PTSD symptoms

13  including staring into space while reliving the incident, muscle tightness and back

14  spasms, and body tremors; Plaintiff Mr. Smith has suffered the following physical

15  manifestations of emotional distress due to the Defendant's alleged intentional infliction

16  of emotional distress: intense headaches, depression, stomach upset and nausea,

17  excessive acid reflux, vomiting, symptoms of PTSD including staring into space reliving

18  the incident, fatigue, insomnia, excessive sweating, loss of appetite, excessive dry skin

19  sometimes forming open sores on his scalp and face.

20  3333.  Plaintiffs Mr. and Mrs. Smith require and attend regular sessions with a

21  specialized PTSD therapist to process and heal from the emotional distress foisted

22  upon them.

1    3334.  Upon information and belief, each of the listed Defendants in this claim, St.

2    Luke's Hospital, Onsite Neonatal, OBHG PA, Bethlehem Neonatal, St. Luke's

3    Physician's Group, St. Luke's Obstetrics and Gynecological Assoc., Ms. Teresa Marlino,

4    MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, MD,

5    Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD,

6    Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms.

7    Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms. Chaminie Wheeler, MD, Ms.

8    Patricia Bates, CNRP, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla

9    Frack, Ms. Dawn Hoffman, the "Hospital Leadership Team," and Mr. Jerry Hric, MD,

10   were in a position of actual or apparent authority over the Plaintiffs Mr. and Mrs. Smith

11   and Newborn baby J.A.S., and each Defendant had the power to affect the interest of

12   the Smith Family to remain intact.

13   3335.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Bethlehem

14   Neonatal, St. Luke's Physician's Group, St. Luke's Obstetrics and Gynecological

15   Assoc., Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO,

16   Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis,

17   MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD,

18   Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD,

19   Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, Mr. Steve Lanshe, Esq., Mr.

20   Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, the "Hospital Leadership

21   Team," and Mr. Jerry Hric, MD's conduct violated Plaintiffs' rights under Pennsylvania

22   common law intentional infliction of emotional distress.

3336.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of evidence that each of the listed Defendants conspired with at least one other Defendant elsewhere listed in this complaint via an overt act with malice or an intent to injure the Plaintiffs.

3337.  The conspiracy between the Defendant parties and their agents, employees, assigns, or other Defendants violates Pennsylvania common law against conspiracies; thereby, causing actual damages to Plaintiffs Mr. & Mrs. Smith.

3338.  Upon information and belief, Plaintiff can demonstrate by a preponderance of evidence that the Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Bethlehem Neonatal, St. Luke's Physician's Group, St. Luke's Obstetrics and Gynecological Assoc., and Mr. Jerry Hric, MD, supervised Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team," in connection with this allegation and are therefore liable under a legal theory of respondeat superior.

3339.  Accordingly, and in connection with the alleged intentional infliction of emotional distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Entities be required to adopt a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its

1  natural parents, and the specific legal procedures to adhere to for such a separation to

2  take place.

3  3340.  Accordingly, and in connection with the alleged intentional infliction of emotional

4  distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

5  Persons be required to attend and pass a rigorous a third-party training program which

6  demonstrates appropriate circumstances under which a child should be reasonably

7  separated from its natural parents, and the specific legal procedures to adhere to for

8  such a separation to take place.

9  3341.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

10  training course, then the Defendant Entities should create their own legal training

11  program which demonstrates appropriate circumstances under which a child should be

12  reasonably separated from its natural parents, and the specific legal procedures to

13  adhere to for such a separation to take place, including; and, before the created

14  program is implemented, the program must be approved by an appropriate court or

15  federal agency for review; and, the program must be implemented within 180 days of

16  the valid judgment of this honorable Court.

17  3342.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

18  conduct, including but not limited to, emotional and psychological distress, pain and

19  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

20  appropriate compensatory damages to account for PTSD therapies and other related

21  treatments as they have been and will continue to be necessary; Plaintiffs respectfully

22  request an amount of $84,800 in compensatory damages per Defendant.

3343.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

Neonatal, OBHG PA, Bethlehem Neonatal, St. Luke's Physician's Group, St. Luke's

Obstetrics and Gynecological Assoc., Ms. Teresa Marlino, MD, Ms. Cynthia M. Shultz,

MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, MD, Mr. Shadi N. Malaeb, MD,

Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe,

MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO,

Mr. Gilberto I. Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia Bates, CNRP,

Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

the "Hospital Leadership Team," and Mr. Jerry Hric, MD and therefore, their ability to

afford the appropriate training to avoid this egregious violation of the Pennsylvania

Common Law, and, since harm was actually caused to the current Plaintiff Smith

Family, and since harm is likely to continue to harm future postpartum families, and

because the acts of the Defendants and their agents, assigns, or employees callously

disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs

respectfully request the imposition of punitive damages on Defendants St. Luke's

Hospital, Onsite Neonatal, OBHG PA, Bethlehem Neonatal, St. Luke's Physician's

Group, St. Luke's Obstetrics and Gynecological Assoc., Ms. Teresa Marlino, MD, Ms.

Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, MD, Mr. Shadi

N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms.

Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly

A. Costello, DO, Mr. Gilberto I. Santiago, MD, Ms. Chaminie Wheeler, MD, Ms. Patricia

Bates, CNRP, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

Dawn Hoffman, the "Hospital Leadership Team," and Mr. Jerry Hric, MD to deter such

1   Defendants from committing to such conduct in the future which violates

2   Commonwealth of Pennsylvania Common Law Plaintiffs respectfully request an amount

3   of $1,000,000 in punitive damages per Defendants Ms. Dianne R. Jacobetz, MD, Mr.

4   Shadi N. Malaeb, MD, Ms. Marilyn E. Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms.

5   Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly

6   A. Costello, DO, Mr. Gilberto I. Santiago, MD, and Ms. Patricia Bates, CNRP;

7   $5,000,000 per Defendants Bethlehem Neonatal, St. Luke's Physician's Group, St.

8   Luke's Obstetrics and Gynecological Assoc., Mr. Patrick Philpot, DO, Ms. Chaminie

9   Wheeler, MD, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

10  Dawn Hoffman, the "Hospital Leadership Team", and Mr. Jerry Hric, MD; and

11  $10,000,000 per Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

12  Teresa Marlino, MD, and Ms. Cynthia M. Shultz, MD.

13  3344.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

14  suffered any actual injury despite the deprivation of their common law rights, the

15  Plaintiffs respectfully request a nominal judgment of $1.00.

16  ## XLVII.   <u>Intentional Infliction of Emotional Distress VIII</u>

17  <u>Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, St. Luke's Physician</u>

18  <u>Group, Ms. Chaminie Wheeler, DO, Mr. Gilberto I. Santiago, MD, & Ms. Dianne R.</u>

19  <u>Jacobetz, MD</u>

20  3345.  To plead an intentional infliction of emotional distress claim under Pennsylvania

21  law, [Plaintiffs] must allege the Defendant's conduct (1) was intentional or reckless; (2)

1  was extreme and outrageous; (3) actually caused the distress; and (4) caused distress

2  that was severe.[340]

3  3346.  "In Pennsylvania, '[l]iability on an intentional infliction of emotional distress claim

4  has been found only where the conduct has been so outrageous in character, and so

5  extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

6  as atrocious, and utterly intolerable in a civilized community.'"[341]

7  3347.  To maintain [their] claim for intentional infliction of emotional distress, [Plaintiffs],

8  must allege that [they] suffered "severe" emotional distress resulting from the

9  Defendant's conduct.[342]

10  3348.  "Fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin,

11  disappointment, worry and nausea" all indicate "severe" emotional distress[,]"[343] as well

---

[340]*Davenport v. Pottstown Hosp. Co.*, CIVIL ACTION NO. 17-1616 at 10 (E.D. Pa. Jul. 18, 2017), *citing*, *Regan v. Township of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D. Pa. 1999).

[341]*Id, citing, Kasper v. Cnty. of Bucks*, 514 Fed. App'x. 210, 217 (3d Cir. 2013) (internal citations and quotations omitted).

[342]*Id at *10-11, citing, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000); *See also, Corbett v. Morgenstern*, 934 F. Supp. 680, 684-85 (E.D. Pa. 1996) ([in which] symptoms of severe depression, nightmares, anxiety and ongoing mental or physical harm suffice).

[343]*Id, quoting, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000).

1  as, "fear, anxiety, stress, anger, headaches, nightmares, humiliation, emotional distress

2  [and] mental anguish also indicate "severe emotional distress."344

3  3349.  "The extreme and outrageous character of conduct may arise from an abuse by a

4  person in a position of actual or apparent authority over another, or by one with the

5  power to affect the other's interests." 345

6  3350.  IIED (1): The Defendants St. Luke's Hospital, Onsite Neonatal, St. Luke's

7  Physicians Group, Ms. Chaminie Wheeler, DO, Mr. Gilberto I. Santiago, MD, and Ms.

8  Dianne Jacobetz, MD's actions were intentional and/or reckless when as agents,

9  employees, or assigns of a medical provider, did not ever, in any form of

10  communication, convey the statement that Newborn baby J.A.S. was in a potential life-

11  threatening condition to Plaintiff parents Mr. and Mrs. Smith, while actively recording

12  such a potential in Newborn baby J.A.S.'s medical records in order to ensure that

13  Plaintiffs Mr. and Mrs. Smith could be restricted from access to their child upon a whim

14  of the Defendants.

15  3351.  IIED (2): The Defendants St. Luke's Hospital, Onsite Neonatal, St. Luke's

16  Physicians Group, Ms. Chaminie Wheeler, DO, Mr. Gilberto I. Santiago, MD, and Ms.

17  Dianne Jacobetz, MD's actions were extreme and outrageous because the Defendants

18  were actively deceiving Plaintiffs Mr. and Mrs. Smith as to the potentially grave medical

19  status of their newborn baby—actions which were so outrageous in character, and so

---

344 *Id.*

345 *Id* at *8.

1  extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

2  as atrocious, and utterly intolerable in a civilized community.

3  3352.  IIED (3):  The Defendants actions actually caused the distress to the Plaintiffs

4  when Plaintiffs Mr. and Mrs. Smith were removed against their will and consent from St.

5  Luke's Hospital property under threat of arrest, because Defendants St. Luke's Hospital,

6  Onsite Neonatal, St. Luke's Physicians Group, Ms. Chaminie Wheeler, DO, Mr. Gilberto

7  I. Santiago, MD, and Ms. Dianne Jacobetz, MD, began the process of breaking up the

8  Smith Family Unit by making the Smith Family appear to want to expedite themselves

9  home to consume methamphetamine by writing grievous assertions in Newborn baby

10  J.A.S.'s medical records that Plaintiffs Mr. and Mrs. Smith appeared to be outright

11  ignoring when discussing the status of Newborn baby J.A.S., causing the Plaintiffs Mr.

12  and Mrs. Smith to feel grief, fear, anxiety, stress, chagrin, disappointment, worry,

13  shame, humiliation, confusion, disbelief, and embarrassment.

14  3353.  IIED (4):  The stress caused to the Plaintiffs by Defendants was and continues to

15  be severe, in that the distress has manifested itself physical symptoms that include, but

16  are not limited to: Plaintiff Mrs. Smith has suffered the following physical manifestations

17  of emotional distress to the Defendant's alleged intentional infliction of emotional

18  distress: nightmares, night sweats, excessive diarrhea, anxiety and panic attacks,

19  separation anxiety from Newborn baby J.A.S., insomnia, depression, PTSD symptoms

20  including staring into space while reliving the incident, muscle tightness and back

21  spasms, and body tremors; Plaintiff Mr. Smith has suffered the following physical

22  manifestations of emotional distress due to the Defendant's alleged intentional infliction

23  of emotional distress: intense headaches, depression, stomach upset and nausea,

1   excessive acid reflux, vomiting, symptoms of PTSD including staring into space reliving

2   the incident, fatigue, insomnia, excessive sweating, loss of appetite, excessive dry skin

3   sometimes forming open sores on his scalp and face.

4   3354.  Plaintiffs Mr. and Mrs. Smith require and attend regular sessions with a

5   specialized PTSD therapist to process and heal from the emotional distress foisted

6   upon them.

7   3355.  Upon information and belief, each of the listed Defendants in this claim, St.

8   Luke's Hospital, Onsite Neonatal, St. Luke's Physicians Group, Ms. Chaminie Wheeler,

9   DO, Mr. Gilberto I. Santiago, MD, and Ms. Dianne Jacobetz, MD, were in a position of

10   actual or apparent authority over the Plaintiffs Mr. and Mrs. Smith and Newborn baby

11   J.A.S., and each Defendant had the power to affect the interest of the Smith Family to

12   remain intact.

13   3356.  Defendants St. Luke's Hospital, Onsite Neonatal, St. Luke's Physicians Group,

14   Ms. Chaminie Wheeler, DO, Mr. Gilberto I. Santiago, MD, and Ms. Dianne Jacobetz,

15   MD's conduct violated Plaintiffs' rights under Pennsylvania common law intentional

16   infliction of emotional distress.

17   3357.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

18   evidence that each of the listed Defendants conspired with at least one other Defendant

19   elsewhere listed in this complaint via an overt act with malice or an intent to injure the

20   Plaintiffs.

21   3358.  The conspiracy between the Defendant parties and their agents, employees,

22   assigns, or other Defendants violates Pennsylvania common law against conspiracies;

23   thereby, causing actual damages to Plaintiffs Mr. & Mrs. Smith.

1    3359.  Upon information and belief, Plaintiff can demonstrate by a preponderance of

2    evidence that the Defendants St. Luke's Hospital, Onsite Neonatal, and St. Luke's

3    Physicians Group, supervised Ms. Chaminie Wheeler, DO, Mr. Gilberto I. Santiago, MD,

4    and Ms. Dianne Jacobetz, MD in connection with this allegation and are therefore liable

5    under a legal theory of respondeat superior.

6    3360.  Accordingly, and in connection with the alleged intentional infliction of emotional

7    distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

8    Entities be required to adopt a third-party training program which demonstrates

9    appropriate circumstances under which a child should be reasonably separated from its

10   natural parents, and the specific legal procedures to adhere to for such a separation to

11   take place.

12   3361.  Accordingly, and in connection with the alleged intentional infliction of emotional

13   distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

14   Persons be required to attend and pass a rigorous a third-party training program which

15   demonstrates appropriate circumstances under which a child should be reasonably

16   separated from its natural parents, and the specific legal procedures to adhere to for

17   such a separation to take place.

18   3362.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

19   training course, then the Defendant Entities should create their own legal training

20   program which demonstrates appropriate circumstances under which a child should be

21   reasonably separated from its natural parents, and the specific legal procedures to

22   adhere to for such a separation to take place, including; and, before the created

23   program is implemented, the program must be approved by an appropriate court or

1   federal agency for review; and, the program must be implemented within 180 days of

2   the valid judgment of this honorable Court.

3   3363.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

4   conduct, including but not limited to, emotional and psychological distress, pain and

5   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

6   appropriate compensatory damages to account for PTSD therapies and other related

7   treatments as they have been and will continue to be necessary; Plaintiffs respectfully

8   request an amount of $84,800 in compensatory damages per Defendant.

9   3364.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

10  Neonatal, St. Luke's Physicians Group, Ms. Chaminie Wheeler, DO, Mr. Gilberto I.

11  Santiago, MD, and Ms. Dianne Jacobetz, MD and therefore, their ability to afford the

12  appropriate training to avoid this egregious violation of the Pennsylvania Common Law,

13  and, since harm was actually caused to the current Plaintiff Smith Family, and since

14  harm is likely to continue to harm future postpartum families, and because the acts of

15  the Defendants and their agents, assigns, or employees callously disregarded the

16  Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the

17  imposition of punitive damages on Defendants St. Luke's Hospital, Onsite Neonatal, St.

18  Luke's Physicians Group, Ms. Chaminie Wheeler, DO, Mr. Gilberto I. Santiago, MD, and

19  Ms. Dianne Jacobetz, MD to deter such Defendants from committing to such conduct in

20  the future which violates Commonwealth of Pennsylvania Common Law Plaintiffs

21  respectfully request an amount of $1,000,000 in punitive damages per Defendants Mr.

22  Gilberto I. Santiago, MD, and Ms. Dianne R. Jacobetz, MD; $5,000,000 per Defendants

1   St. Luke's Physician Group, and Ms. Chaminie Wheeler, DO; and $10,000,000 per

2   Defendants St. Luke's Hospital, and Onsite Neonatal.

3   3365.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

4   suffered any actual injury despite the deprivation of their common law rights, the

5   Plaintiffs respectfully request a nominal judgment of $1.00.

6   ## XLVIII.    <u>Intentional Infliction of Emotional Distress IX</u>

7   <u>Mr. & Mrs. Smith v. St. Luke's Hospital, Mr. Steve Lanshe, Esq., Mr Robert L. Wax,</u>

8   <u>Esq., Ms. Darla Frack, Ms Dawn Hoffman, and the "Hospital Leadership Team"</u>

9   3366.  To plead an intentional infliction of emotional distress claim under Pennsylvania

10  law, [Plaintiffs] must allege the Defendant's conduct (1) was intentional or reckless; (2)

11  was extreme and outrageous; (3) actually caused the distress; and (4) caused distress

12  that was severe.[346]

13  3367.  "In Pennsylvania, '[l]iability on an intentional infliction of emotional distress claim

14  has been found only where the conduct has been so outrageous in character, and so

15  extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

16  as atrocious, and utterly intolerable in a civilized community.'"[347]

---

[346]*Davenport v. Pottstown Hosp. Co.*, CIVIL ACTION NO. 17-1616 at 10 (E.D. Pa. Jul. 18, 2017), *citing*, *Regan v. Township of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D. Pa. 1999).

[347]*Id, citing, Kasper v. Cnty. of Bucks*, 514 Fed. App'x. 210, 217 (3d Cir. 2013) (internal citations and quotations omitted).

1   3368.  To maintain [their] claim for intentional infliction of emotional distress, [Plaintiffs],

2   must allege that [they] suffered "severe" emotional distress resulting from the

3   Defendant's conduct.[348]

4   3369.  "Fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin,

5   disappointment, worry and nausea" all indicate "severe" emotional distress[,]"[349] as well

6   as, "fear, anxiety, stress, anger, headaches, nightmares, humiliation, emotional distress

7   [and] mental anguish also indicate "severe emotional distress."[350]

8   3370.  "The extreme and outrageous character of conduct may arise from an abuse by a

9   person in a position of actual or apparent authority over another, or by one with the

10   power to affect the other's interests." [351]

11   3371.  IIED (1): The Defendants St. Luke's Hospital, Mr. Steve Lanshe, Esq., Mr. Robert

12   L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

13   Team's" actions were intentional and/or reckless when as agents, employees, or

14   assigns of a medical provider, did not ever allow Plaintiff Mr. Smith to return to

15   Defendant St. Luke's Hospital to be with his postpartum wife Plaintiff Mrs. Smith and

---

[348]*Id at \*10-11, citing, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000); *See also, Corbett v. Morgenstern*, 934 F. Supp. 680, 684-85 (E.D. Pa. 1996) ([in which] symptoms of severe depression, nightmares, anxiety and ongoing mental or physical harm suffice).

[349]*Id, quoting, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000).

[350]*Id.*

[351] *Id* at \*8.

1    Newborn baby J.A.S., even though there was not any valid cause to prevent Plaintiff Mr.

2    Smith from being with his family.

3    3372.  IIED (2): The Defendants St. Luke's Hospital, Mr. Steve Lanshe, Esq., Mr. Robert

4    L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, & the "Hospital Leadership Team's"

5    actions were extreme and outrageous because physically separating a newborn child in

6    a NICU from its father under threat of arrest of the father without any cause are actions

7    which were so outrageous in character, and so extreme in degree, as to go beyond all

8    possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

9    a civilized community.

10    3373.  IIED (3):  The Defendants actions actually caused the distress to the Plaintiffs

11    when Plaintiffs Mr. and Mrs. Smith were removed against their will and consent from

12    Defendant St. Luke's Hospital property under threat of arrest, because Defendants St.

13    Luke's Hospital, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

14    Dawn Hoffman, & the "Hospital Leadership Team", threatened to have Plaintiff Mr.

15    Smith arrested if he ever returned to Defendant St. Luke's Hospital's property, causing

16    the Plaintiffs Mr. and Mrs. Smith to feel grief, fear, anxiety, stress, chagrin,

17    disappointment, worry, shame, humiliation, and, embarrassment.

18    3374.  IIED (4):  The stress caused to the Plaintiffs by Defendants was and continues to

19    be severe, in that the distress has manifested itself physical symptoms that include, but

20    are not limited to: Plaintiff Mrs. Smith has suffered the following physical manifestations

21    of emotional distress to the Defendant's alleged intentional infliction of emotional

22    distress: nightmares, night sweats, excessive diarrhea, anxiety and panic attacks,

23    separation anxiety from Newborn baby J.A.S., insomnia, depression, PTSD symptoms

1  including staring into space while reliving the incident, muscle tightness and back

2  spasms, and body tremors; Plaintiff Mr. Smith has suffered the following physical

3  manifestations of emotional distress due to the Defendant's alleged intentional infliction

4  of emotional distress: intense headaches, depression, stomach upset and nausea,

5  excessive acid reflux, vomiting, symptoms of PTSD including staring into space reliving

6  the incident, fatigue, insomnia, excessive sweating, loss of appetite, excessive dry skin

7  sometimes forming open sores on his scalp and face.

8  3375.  Plaintiffs Mr. and Mrs. Smith require and attend regular sessions with a

9  specialized PTSD therapist to process and heal from the emotional distress foisted

10  upon them.

11  3376.  Upon information and belief, each of the listed Defendants in this claim, St.

12  Luke's Hospital, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

13  Dawn Hoffman, and the "Hospital Leadership Team," were in a position of actual or

14  apparent authority over the Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S., and

15  each Defendant had the power to affect the interest of the Smith Family to remain intact.

16  3377.  Defendants St. Luke's Hospital, Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,

17  Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team's"

18  conduct violated Plaintiffs' rights under Pennsylvania common law intentional infliction

19  of emotional distress.

20  3378.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

21  evidence that each of the listed Defendants conspired with at least one other Defendant

22  elsewhere listed in this complaint via an overt act with malice or an intent to injure the

23  Plaintiffs.

1   3379.  The conspiracy between the Defendant parties and their agents, employees,

2   assigns, or other Defendants violates Pennsylvania common law against conspiracies;

3   thereby, causing actual damages to Plaintiffs Mr. & Mrs. Smith.

4   3380.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

5   evidence that the Defendant St. Luke's Hospital supervised Mr. Steve Lanshe, Esq., Mr.

6   Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

7   Team" in connection with this allegation and is therefore liable under a legal theory of

8   respondeat superior.

9   3381.  Accordingly, and in connection with the alleged intentional infliction of emotional

10  distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

11  Entities be required to adopt a third-party training program which demonstrates

12  appropriate circumstances under which a child should be reasonably separated from its

13  natural parents, and the specific legal procedures to adhere to for such a separation to

14  take place, including.

15  3382.  Accordingly, and in connection with the alleged intentional infliction of emotional

16  distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

17  Persons be required to attend and pass a rigorous a third-party training program which

18  demonstrates appropriate circumstances under which a child should be reasonably

19  separated from its natural parents, and the specific legal procedures to adhere to for

20  such a separation to take place, including.

21  3383.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

22  training course, then the Defendant Entities should create their own legal training

23  program which demonstrates appropriate circumstances under which a child should be

1   reasonably separated from its natural parents, and the specific legal procedures to

2   adhere to for such a separation to take place, including; and, before the created

3   program is implemented, the program must be approved by an appropriate court or

4   federal agency for review; and, the program must be implemented within 180 days of

5   the valid judgment of this honorable Court.

6   3384.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

7   conduct, including but not limited to, emotional and psychological distress, pain and

8   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

9   appropriate compensatory damages to account for PTSD therapies and other related

10  treatments as they have been and will continue to be necessary; Plaintiffs respectfully

11  request an amount of $84,800 in compensatory damages per Defendant.

12  3385.  Given the substantial wealth of the Defendants St. Luke's Hospital, Mr. Steve

13  Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the

14  "Hospital Leadership Team" and therefore, their ability to afford the appropriate training

15  to avoid this egregious violation of the Pennsylvania Common Law, and, since harm

16  was actually caused to the current Plaintiff Smith Family, and since harm is likely to

17  continue to harm future postpartum families, and because the acts of the Defendants

18  and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a

19  reckless and wanton manner, the Plaintiffs respectfully request the imposition of

20  punitive damages on Defendants St. Luke's Hospital, Mr. Steve Lanshe, Esq., Mr.

21  Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

22  Team" to deter such Defendants from committing to such conduct in the future which

23  violates Commonwealth of Pennsylvania Common Law Plaintiffs respectfully request an

1 amount of $5,000,000 in punitive damages per Defendants Mr. Steve Lanshe, Esq., Mr.

2 Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

3 Team"; and $10,000,000 per Defendant St. Luke's Hospital.

4 3386.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

5 suffered any actual injury despite the deprivation of their common law rights, the

6 Plaintiffs respectfully request a nominal judgment of $1.00.

7 ## XLIX.    <u>Intentional Infliction of Emotional Distress X</u>

8 <u>Mr. & Mrs. Smith v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa</u>

9 <u>Marlino, MD, & Ms. Cynthia Shultz, MD</u>

10 3387.  To plead an intentional infliction of emotional distress claim under Pennsylvania

11 law, [Plaintiffs] must allege the Defendant's conduct (1) was intentional or reckless; (2)

12 was extreme and outrageous; (3) actually caused the distress; and (4) caused distress

13 that was severe.352

14 3388.  "In Pennsylvania, '[l]iability on an intentional infliction of emotional distress claim

15 has been found only where the conduct has been so outrageous in character, and so

---

352*Davenport v. Pottstown Hosp. Co.*, CIVIL ACTION NO. 17-1616 at 10 (E.D. Pa. Jul.

18, 2017), *citing*, *Regan v. Township of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D.

Pa. 1999).

1  extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

2  as atrocious, and utterly intolerable in a civilized community.'"353

3  3389.  To maintain [their] claim for intentional infliction of emotional distress, [Plaintiffs],

4  must allege that [they] suffered "severe" emotional distress resulting from the

5  Defendant's conduct.354

6  3390.  "Fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin,

7  disappointment, worry and nausea" all indicate "severe" emotional distress[,]"355 as well

8  as, "fear, anxiety, stress, anger, headaches, nightmares, humiliation, emotional distress

9  [and] mental anguish also indicate "severe emotional distress."356

10  3391.  "The extreme and outrageous character of conduct may arise from an abuse by a

11  person in a position of actual or apparent authority over another, or by one with the

12  power to affect the other's interests." 357

13  3392.  IIED (1): The Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

14  Teresa Marlino, MD, and Ms. Cynthia Shultz, MD, actions were intentional and/or

---

353*Id, citing, Kasper v. Cnty. of Bucks*, 514 Fed. App'x. 210, 217 (3d Cir. 2013) (internal

citations and quotations omitted).

354*Id at *10-11, citing, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000); *See also,*

*Corbett v. Morgenstern*, 934 F. Supp. 680, 684-85 (E.D. Pa. 1996) ([in which] symptoms

of severe depression, nightmares, anxiety and ongoing mental or physical harm suffice).

355*Id, quoting, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000).

356*Id.*

357 *Id* at *8.

1    reckless when as agents, employees, or assigns of a medical provider, did not ever

2    allow Plaintiffs Mr. Smith and Mrs. Smith to object to the care Newborn baby J.A.S. was

3    receiving, and when the Plaintiffs did object to the care being given to Newborn baby

4    J.A.S., Mr. and Mrs. Smith were labeled as too violent to remain in the hospital, and

5    were subsequently ejected from the premises even though there was not any valid

6    cause or legal basis to break up the Smith Family Unit.

7    3393.  IIED (2): The Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

8    Teresa Marlino, MD, and Ms. Cynthia Shultz, MD's actions were extreme and

9    outrageous because physically separating a newborn child in a NICU from its parents

10   merely because of a personal dislike of the parents are actions which were so

11   outrageous in character, and so extreme in degree, as to go beyond all possible bounds

12   of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

13   community.

14   3394.  IIED (3):  The Defendants' actions actually caused the distress to the Plaintiffs

15   when Plaintiffs Mr. and Mrs. Smith were removed against their will and consent from

16   Defendant St. Luke's Hospital property under threat of arrest, because Defendants St.

17   Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, and Ms. Cynthia

18   Shultz, MD, threatened to have Plaintiffs Mr. and Mrs. Smith arrested upon withdrawing

19   consent for Newborn baby J.A.S.'s treatment, causing the Plaintiffs Mr. and Mrs. Smith

20   to feel grief, fear, anxiety, stress, chagrin, disappointment, worry, shame, humiliation,

21   and, embarrassment.

22   3395.  IIED (4):  The stress caused to the Plaintiffs by Defendants was and continues to

23   be severe, in that the distress has manifested itself physical symptoms that include, but

1  are not limited to: Plaintiff Mrs. Smith has suffered the following physical manifestations

2  of emotional distress to the Defendant's alleged intentional infliction of emotional

3  distress: nightmares, night sweats, excessive diarrhea, anxiety and panic attacks,

4  separation anxiety from Newborn baby J.A.S., insomnia, depression, PTSD symptoms

5  including staring into space while reliving the incident, muscle tightness and back

6  spasms, and body tremors; Plaintiff Mr. Smith has suffered the following physical

7  manifestations of emotional distress due to the Defendant's alleged intentional infliction

8  of emotional distress: intense headaches, depression, stomach upset and nausea,

9  excessive acid reflux, vomiting, symptoms of PTSD including staring into space reliving

10  the incident, fatigue, insomnia, excessive sweating, loss of appetite, excessive dry skin

11  sometimes forming open sores on his scalp and face.

12  3396.  Plaintiffs Mr. and Mrs. Smith require and attend regular sessions with a

13  specialized PTSD therapist to process and heal from the emotional distress foisted

14  upon them.

15  3397.  Upon information and belief, each of the listed Defendants in this claim, St.

16  Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, and Ms. Cynthia

17  Shultz, MD were in a position of actual or apparent authority over the Plaintiffs Mr. and

18  Mrs. Smith and Newborn baby J.A.S., and each Defendant had the power to affect the

19  interest of the Smith Family to remain intact.

20  3398.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino,

21  MD, and Ms. Cynthia Shultz, MD's conduct violated Plaintiffs' rights under Pennsylvania

22  common law intentional infliction of emotional distress.

3399.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of evidence that each of the listed Defendants conspired with at least one other Defendant elsewhere listed in this complaint via an overt act with malice or an intent to injure the Plaintiffs.

3400.  The conspiracy between the Defendant parties and their agents, employees, assigns, or other Defendants violates Pennsylvania common law against conspiracies; thereby, causing actual damages to Plaintiffs Mr. & Mrs. Smith.

3401.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of evidence that the Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, supervised Ms. Teresa Marlino, MD, and Ms. Cynthia Shultz, MD in connection with this allegation and are therefore liable under a legal theory of respondeat superior.

3402.  Accordingly, and in connection with the alleged intentional infliction of emotional distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Entities be required to adopt a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place, including.

3403.  Accordingly, and in connection with the alleged intentional infliction of emotional distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Persons be required to attend and pass a rigorous a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place, including.

1    3404.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

2    training course, then the Defendant Entities should create their own legal training

3    program which demonstrates appropriate circumstances under which a child should be

4    reasonably separated from its natural parents, and the specific legal procedures to

5    adhere to for such a separation to take place, including; and, before the created

6    program is implemented, the program must be approved by an appropriate court or

7    federal agency for review; and, the program must be implemented within 180 days of

8    the valid judgment of this honorable Court.

9    3405.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

10   conduct, including but not limited to, emotional and psychological distress, pain and

11   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

12   appropriate compensatory damages to account for PTSD therapies and other related

13   treatments as they have been and will continue to be necessary; Plaintiffs respectfully

14   request an amount of $84,800 in compensatory damages per Defendant.

15   3406.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

16   Neonatal, OBHG PA, Ms. Teresa Marlino, MD, and Ms. Cynthia Shultz, MD and

17   therefore, their ability to afford the appropriate training to avoid this egregious violation

18   of the Pennsylvania Common Law, and, since harm was actually caused to the current

19   Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum

20   families, and because the acts of the Defendants and their agents, assigns, or

21   employees callously disregarded the Plaintiff's rights in a reckless and wanton manner,

22   the Plaintiffs respectfully request the imposition of punitive damages on Defendants St.

23   Luke's Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, and Ms. Cynthia

1  Shultz, MD to deter such Defendants from committing to such conduct in the future

2  which violates Commonwealth of Pennsylvania Common Law Plaintiffs respectfully

3  request an amount of $10,000,000 in punitive damages per Defendants St. Luke's

4  Hospital, Onsite Neonatal, OBHG PA, Ms. Teresa Marlino, MD, and Ms. Cynthia Shultz,

5  MD.

6  3407.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

7  suffered any actual injury despite the deprivation of their common law rights, the

8  Plaintiffs respectfully request a nominal judgment of $1.00.

9  ## L.   <u>**Intentional Infliction of Emotional Distress XI**</u>

10  <u>Mr. & Mrs. Smith v. St. Luke's Hospital & Hospital Social Worker "Vanessa"</u>

11  3408.  To plead an intentional infliction of emotional distress claim under Pennsylvania

12  law, [Plaintiffs] must allege the Defendant's conduct (1) was intentional or reckless; (2)

13  was extreme and outrageous; (3) actually caused the distress; and (4) caused distress

14  that was severe.[358]

15  3409.  "In Pennsylvania, '[l]iability on an intentional infliction of emotional distress claim

16  has been found only where the conduct has been so outrageous in character, and so

---

[358]*Davenport v. Pottstown Hosp. Co.*, CIVIL ACTION NO. 17-1616 at 10 (E.D. Pa. Jul. 18, 2017), *citing*, *Regan v. Township of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D. Pa. 1999).

1  extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

2  as atrocious, and utterly intolerable in a civilized community.'"359

3  3410.  To maintain [their] claim for intentional infliction of emotional distress, [Plaintiffs],

4  must allege that [they] suffered "severe" emotional distress resulting from the

5  Defendant's conduct.360

6  3411.  "Fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin,

7  disappointment, worry and nausea" all indicate "severe" emotional distress[,]"361 as well

8  as, "fear, anxiety, stress, anger, headaches, nightmares, humiliation, emotional distress

9  [and] mental anguish also indicate "severe emotional distress."362

10  3412.  "The extreme and outrageous character of conduct may arise from an abuse by a

11  person in a position of actual or apparent authority over another, or by one with the

12  power to affect the other's interests." 363

13  3413.  IIED (1): The Defendants St. Luke's Hospital and Hospital Social Worker

14  "Vanessa's" actions were intentional and/or reckless when as agents, employees, or

15  assigns of a medical provider, gaslit the Plaintiff parents Mr. and Mrs. Smith by stating

---

359*Id, citing, Kasper v. Cnty. of Bucks*, 514 Fed. App'x. 210, 217 (3d Cir. 2013) (internal

citations and quotations omitted).

360*Id at *10-11, citing, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000); *See also,*

*Corbett v. Morgenstern*, 934 F. Supp. 680, 684-85 (E.D. Pa. 1996) ([in which] symptoms

of severe depression, nightmares, anxiety and ongoing mental or physical harm suffice).

361*Id, quoting, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000).

362*Id.*

363 *Id* at *8.

1   to Plaintiff Mrs. Smith in Newborn baby J.A.S.'s NICU "pod" on April 11th, 2021 that

2   Mrs. Smith still had "custody" and control over the care of Newborn baby J.A.S. despite

3   the mountain of evidence and official actions to the contrary, including but not limited to

4   a male security guard stationed merely feet away from Plaintiff Mrs. Smith when the

5   statement was rendered, not to mention that the last time that Plaintiff Mrs. Smith

6   objected to care of Newborn baby J.A.S. she was ejected from Defendant St. Luke's

7   Hospital's property under threat of arrest, and medical notes in Newborn baby J.A.S.'s

8   medical records indicate if Plaintiff Mrs. Smith behaved "inappropriately" she would be

9   removed, again, from the NICU and away from Newborn baby J.A.S.

10   3414.  IIED (2): The Defendants St. Luke's Hospital and Hospital Social Worker

11   "Vanessa's" actions were extreme and outrageous because as a hospital social worker

12   who is supposed to have increased sensitivity to delicate family situations, violated such

13   delicate sensibilities when her "faux" reassurances to Plaintiff Mrs. Smith flew in the

14   face of reality which were actions so outrageous in character, and so extreme in degree,

15   as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

16   utterly intolerable in a civilized community.

17   3415.  IIED (3):  The Defendants' actions actually caused the distress to the Plaintiffs

18   when Defendants St. Luke's Hospital and Hospital Social Worker "Vanessa," personally

19   spoke to Plaintiff Mrs. Smith false reassurances and then that conversation was

20   conveyed to Plaintiff Mr. Smith via a phone call immediately after Hospital Social

21   Worker "Vanessa" left the NICU pod, causing the Plaintiffs Mr. and Mrs. Smith to feel

22   grief, fear, anxiety, stress, chagrin, disappointment, worry, shame, humiliation, and,

23   embarrassment.

1   3416.  IIED (4):  The stress caused to the Plaintiffs by Defendants was and continues to

2   be severe, in that the distress has manifested itself physical symptoms that include, but

3   are not limited to: Plaintiff Mrs. Smith has suffered the following physical manifestations

4   of emotional distress to the Defendant's alleged intentional infliction of emotional

5   distress: nightmares, night sweats, excessive diarrhea, anxiety and panic attacks,

6   separation anxiety from newborn baby J.A.S., insomnia, depression, PTSD symptoms

7   including staring into space while reliving the incident, muscle tightness and back

8   spasms, and body tremors; Plaintiff Mr. Smith has suffered the following physical

9   manifestations of emotional distress due to the Defendant's alleged intentional infliction

10  of emotional distress: intense headaches, depression, stomach upset and nausea,

11  excessive acid reflux, vomiting, symptoms of PTSD including staring into space reliving

12  the incident, fatigue, insomnia, excessive sweating, loss of appetite, excessive dry skin

13  sometimes forming open sores on his scalp and face.

14  3417.  Plaintiffs Mr. and Mrs. Smith require and attend regular sessions with a

15  specialized PTSD therapist to process and heal from the emotional distress foisted

16  upon them.

17  3418.  Upon information and belief, each of the listed Defendants in this claim, St.

18  Luke's Hospital and Hospital Social Worker "Vanessa," were in a position of actual or

19  apparent authority over the Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S., and

20  each Defendant had the power to affect the interest of the Smith Family to remain intact.

21  3419.  Defendants St. Luke's Hospital and Hospital Social Worker "Vanessa's" conduct

22  violated Plaintiffs' rights under Pennsylvania common law intentional infliction of

23  emotional distress.

3420.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of evidence that each of the listed Defendants conspired with at least one other Defendant elsewhere listed in this complaint via an overt act with malice or an intent to injure the Plaintiffs.

3421.  The conspiracy between the Defendant parties and their agents, employees, assigns, or other Defendants violates Pennsylvania common law against conspiracies; thereby, causing actual damages to Plaintiffs Mr. & Mrs. Smith.

3422.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of evidence that the Defendant St. Luke's Hospital supervised Hospital Social Worker "Vanessa" in connection with this allegation and are therefore liable under a legal theory of respondeat superior.

3423.  Accordingly, and in connection with the alleged intentional infliction of emotional distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Entities be required to adopt a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place.

3424.  Accordingly, and in connection with the alleged intentional infliction of emotional distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Persons be required to attend and pass a rigorous a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place.

3425.  Accordingly, if a third-party cannot be found to render the appropriately rigorous training course, then the Defendant Entities should create their own legal training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place, including; and, before the created program is implemented, the program must be approved by an appropriate court or federal agency for review; and, the program must be implemented within 180 days of the valid judgment of this honorable Court.

3426.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully request an amount of $84,800 in compensatory damages per Defendant.

3427.  Given the substantial wealth of the Defendant St. Luke's Hospital, and therefore, its ability to afford the appropriate training to avoid this egregious violation of the Pennsylvania Common Law, and, since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum families, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the imposition of punitive damages on Defendants St. Luke's Hospital to deter such Defendant from committing to such conduct in the future which violates Commonwealth of Pennsylvania Common Law Plaintiffs respectfully

1   request an amount of $1,000,000 in punitive damages per Defendant Hospital Social

2   Worker "Vanessa"; and $10,000,000 per Defendant St. Luke's Hospital.

3   3428.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

4   suffered any actual injury despite the deprivation of their common law rights, the

5   Plaintiffs respectfully request a nominal judgment of $1.00.

6   ## LI.   <u>Intentional Infliction of Emotional Distress XII</u>

7   <u>Mr. & Mrs. Smith v. St. Luke's Hospital, "Security Guard 'Freddy'", Security Guard</u>

8   <u>'Joe'", Security Guard 'Nate'" "Security Supervisor 'Unknown'", "Head of Hospital</u>

9   <u>Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla</u>

10   <u>Frack, Ms. Dawn Hoffman & the "Hospital Leadership Team"</u>

11   3429.  To plead an intentional infliction of emotional distress claim under Pennsylvania

12   law, [Plaintiffs] must allege the Defendant's conduct (1) was intentional or reckless; (2)

13   was extreme and outrageous; (3) actually caused the distress; and (4) caused distress

14   that was severe.[364]

15   3430.  "In Pennsylvania, '[l]iability on an intentional infliction of emotional distress claim

16   has been found only where the conduct has been so outrageous in character, and so

---

[364] *Davenport v. Pottstown Hosp. Co.*, CIVIL ACTION NO. 17-1616 at 10 (E.D. Pa. Jul. 18, 2017), *citing*, *Regan v. Township of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D. Pa. 1999).

1  extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

2  as atrocious, and utterly intolerable in a civilized community.'"365

3  3431.  To maintain [their] claim for intentional infliction of emotional distress, [Plaintiffs],

4  must allege that [they] suffered "severe" emotional distress resulting from the

5  Defendant's conduct.366

6  3432.  "Fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin,

7  disappointment, worry and nausea" all indicate "severe" emotional distress[,]"367 as well

8  as, "fear, anxiety, stress, anger, headaches, nightmares, humiliation, emotional distress

9  [and] mental anguish also indicate "severe emotional distress."368

10  3433.  "The extreme and outrageous character of conduct may arise from an abuse by a

11  person in a position of actual or apparent authority over another, or by one with the

12  power to affect the other's interests." 369

13  3434.  IIED (1): The Defendants St. Luke's Hospital, "Security Guard 'Freddy'", Security

14  Guard 'Joe'", Security Guard 'Nate'" "Security Supervisor 'Unknown'", "Head of Hospital

15  Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack,

---

365*Id, citing, Kasper v. Cnty. of Bucks*, 514 Fed. App'x. 210, 217 (3d Cir. 2013) (internal

citations and quotations omitted).

366*Id at *10-11, citing, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000); *See also,*

*Corbett v. Morgenstern*, 934 F. Supp. 680, 684-85 (E.D. Pa. 1996) ([in which] symptoms

of severe depression, nightmares, anxiety and ongoing mental or physical harm suffice).

367*Id, quoting, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000).

368*Id.*

369 *Id* at *8.

1   Ms. Dawn Hoffman, and the "Hospital Leadership Team's" actions were intentional

2   and/or reckless when as agents, employees, or assigns of a medical provider,

3   beginning on April 10th, 2021 placed male security guards around the clock at Newborn

4   baby J.A.S.'s NICU pod, even while Plaintiff Mrs. Smith was breastfeeding Newborn

5   baby J.A.S.

6   3435.  IIED (2): The Defendants St. Luke's Hospital, "Security Guard 'Freddy'", Security

7   Guard 'Joe'", Security Guard 'Nate'" "Security Supervisor 'Unknown'", "Head of Hospital

8   Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack,

9   Ms. Dawn Hoffman, and the "Hospital Leadership Team's" actions were extreme and

10  outrageous because not placing individuals identifying as female to "guard" Newborn

11  baby J.A.S.'s NICU pod was obviously going to cause indignity and humiliation to a

12  breastfeeding mother—such actions are so outrageous in character, and so extreme in

13  degree, as to go beyond all possible bounds of decency, and to be regarded as

14  atrocious, and utterly intolerable in a civilized community.

15  3436.  IIED (3):  The Defendants actions actually caused the distress to the Plaintiffs

16  when Defendants St. Luke's Hospital, "Security Guard 'Freddy'", Security Guard 'Joe'",

17  Security Guard 'Nate'" "Security Supervisor 'Unknown'", "Head of Hospital Security

18  'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

19  Dawn Hoffman, and the "Hospital Leadership Team" either ordered or were present as

20  security guards outside of Newborn baby J.A.S.'s NICU pod, causing the Plaintiffs Mr.

21  and Mrs. Smith to feel grief, fear, anxiety, stress, chagrin, disappointment, worry,

22  shame, humiliation, and, embarrassment.

3437.  IIED (4):  The stress caused to the Plaintiffs by Defendants was and continues to be severe, in that the distress has manifested itself physical symptoms that include, but are not limited to: Plaintiff Mrs. Smith has suffered the following physical manifestations of emotional distress to the Defendant's alleged intentional infliction of emotional distress: nightmares, night sweats, excessive diarrhea, anxiety and panic attacks, separation anxiety from newborn baby J.A.S., insomnia, depression, PTSD symptoms including staring into space while reliving the incident, muscle tightness and back spasms, and body tremors; Plaintiff Mr. Smith has suffered the following physical manifestations of emotional distress due to the Defendant's alleged intentional infliction of emotional distress: intense headaches, depression, stomach upset and nausea, excessive acid reflux, vomiting, symptoms of PTSD including staring into space reliving the incident, fatigue, insomnia, excessive sweating, loss of appetite, excessive dry skin sometimes forming open sores on his scalp and face.

3438.  Plaintiffs Mr. and Mrs. Smith require and attend regular sessions with a specialized PTSD therapist to process and heal from the emotional distress foisted upon them.

3439.  Upon information and belief, each of the listed Defendants in this claim, St. Luke's Hospital, "Security Guard 'Freddy'", Security Guard 'Joe'", Security Guard 'Nate'" "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" were in a position of actual or apparent authority over the Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S., and each Defendant had the power to affect the interest of the Smith Family to remain intact.

1    3440.  Defendants St. Luke's Hospital, "Security Guard 'Freddy'", Security Guard 'Joe'",

2    Security Guard 'Nate'" "Security Supervisor 'Unknown'", "Head of Hospital Security

3    'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

4    Dawn Hoffman, and the "Hospital Leadership Team's" conduct violated Plaintiffs' rights

5    under Pennsylvania common law intentional infliction of emotional distress.

6    3441.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

7    evidence that each of the listed Defendants conspired with at least one other Defendant

8    elsewhere listed in this complaint via an overt act with malice or an intent to injure the

9    Plaintiffs.

10   3442.  The conspiracy between the Defendant parties and their agents, employees,

11   assigns, or other Defendants violates Pennsylvania common law against conspiracies;

12   thereby, causing actual damages to Plaintiffs Mr. & Mrs. Smith.

13   3443.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

14   evidence that the Defendant St. Luke's Hospital supervised "Security Guard 'Freddy'",

15   Security Guard 'Joe'", Security Guard 'Nate'" "Security Supervisor 'Unknown'", "Head of

16   Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

17   Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" in connection with

18   this allegation and is therefore liable under a legal theory of respondeat superior.

19   3444.  Accordingly, and in connection with the alleged intentional infliction of emotional

20   distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

21   Entities be required to adopt a third-party training program which demonstrates

22   appropriate circumstances under which a child should be reasonably separated from its

1  natural parents, and the specific legal procedures to adhere to for such a separation to

2  take place.

3  3445.  Accordingly, and in connection with the alleged intentional infliction of emotional

4  distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

5  Persons be required to attend and pass a rigorous a third-party training program which

6  demonstrates appropriate circumstances under which a child should be reasonably

7  separated from its natural parents, and the specific legal procedures to adhere to for

8  such a separation to take place.

9  3446.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

10  training course, then the Defendant Entities should create their own legal training

11  program which demonstrates appropriate circumstances under which a child should be

12  reasonably separated from its natural parents, and the specific legal procedures to

13  adhere to for such a separation to take place, including; and, before the created

14  program is implemented, the program must be approved by an appropriate court or

15  federal agency for review; and, the program must be implemented within 180 days of

16  the valid judgment of this honorable Court.

17  3447.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants'

18  conduct, including but not limited to, emotional and psychological distress, pain and

19  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

20  appropriate compensatory damages to account for PTSD therapies and other related

21  treatments as they have been and will continue to be necessary; Plaintiffs respectfully

22  request an amount of $84,800 in compensatory damages per Defendant.

1    3448.  Given the substantial wealth of the Defendant St. Luke's Hospital, "Security

2    Supervisor 'Unknown'", "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq.,

3    Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital

4    Leadership Team" and therefore, their ability to afford the appropriate training to avoid

5    this egregious violation of the Pennsylvania Common Law, and, since harm was

6    actually caused to the current Plaintiff Smith Family, and since harm is likely to continue

7    to harm future postpartum families, and because the acts of the Defendants and their

8    agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless

9    and wanton manner, the Plaintiffs respectfully request the imposition of punitive

10    damages on Defendants St. Luke's Hospital, "Security Supervisor 'Unknown'", "Head of

11    Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

12    Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" to deter such

13    Defendant from committing to such conduct in the future which violates Commonwealth

14    of Pennsylvania Common Law Plaintiffs respectfully request an amount of $1,000,000 in

15    punitive damages per Defendants "Security Guard 'Freddy'", "Security Guard 'Joe'",

16    "Security Guard 'Nate'"; $5,000,000 per Defendants "Security Supervisor 'Unknown'",

17    "Head of Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax,

18    Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"; and

19    $10,000,000 per Defendant St. Luke's Hospital.

20    3449.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

21    suffered any actual injury despite the deprivation of their common law rights, the

22    Plaintiffs respectfully request a nominal judgment of $1.00.

23    ## LII.    Intentional Infliction of Emotional Distress XIII

1        <u>Mr. & Mrs. Smith v. St. Luke's Hospital</u>

2    3450.  To plead an intentional infliction of emotional distress claim under Pennsylvania

3    law, [Plaintiffs] must allege the Defendant's conduct (1) was intentional or reckless; (2)

4    was extreme and outrageous; (3) actually caused the distress; and (4) caused distress

5    that was severe.370

6    3451.  "In Pennsylvania, '[l]iability on an intentional infliction of emotional distress claim

7    has been found only where the conduct has been so outrageous in character, and so

8    extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

9    as atrocious, and utterly intolerable in a civilized community.'"371

10   3452.  To maintain [their] claim for intentional infliction of emotional distress, [Plaintiffs],

11   must allege that [they] suffered "severe" emotional distress resulting from the

12   Defendant's conduct.372

---

370*Davenport v. Pottstown Hosp. Co.*, CIVIL ACTION NO. 17-1616 at 10 (E.D. Pa. Jul.

18, 2017), *citing*, *Regan v. Township of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D.

Pa. 1999).

371*Id, citing, Kasper v. Cnty. of Bucks*, 514 Fed. App'x. 210, 217 (3d Cir. 2013) (internal

citations and quotations omitted).

372*Id at *10-11, citing, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000); *See also,

Corbett v. Morgenstern*, 934 F. Supp. 680, 684-85 (E.D. Pa. 1996) ([in which] symptoms

of severe depression, nightmares, anxiety and ongoing mental or physical harm suffice).

1    3453.  "Fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin,

2    disappointment, worry and nausea" all indicate "severe" emotional distress[,]"[373] as well

3    as, "fear, anxiety, stress, anger, headaches, nightmares, humiliation, emotional distress

4    [and] mental anguish also indicate "severe emotional distress."[374]

5    3454.  "The extreme and outrageous character of conduct may arise from an abuse by a

6    person in a position of actual or apparent authority over another, or by one with the

7    power to affect the other's interests." [375]

8    3455.  IIED (1): The Defendant St. Luke's Hospital's actions were intentional and/or

9    reckless when Defendant St. Luke's Hospital did not provide reasonable

10   accommodations for comfort for postpartum Plaintiff Mrs. Smith while in Newborn baby

11   J.A.S.'s NICU pod, especially considering that Plaintiff Mrs. Smith has an obvious pre-

12   existing knee injury and difficulty walking without a brace, which was worn a great deal

13   of the time Plaintiff Mrs. Smith was staying at Defendant St. Luke's Hospital.

14   3456.  IIED (2): The Defendant St. Luke's Hospital's actions were extreme and

15   outrageous because not providing reasonable accommodations for a postpartum

16   mother, in a NICU pod, with a walking disability, are actions so outrageous in character,

17   and so extreme in degree, as to go beyond all possible bounds of decency, and to be

18   regarded as atrocious, and utterly intolerable in a civilized community.

---

[373]*Id, quoting, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000).

[374]*Id.*

[375] *Id* at *8.

1    3457.  IIED (3):  The Defendants actions actually caused the distress to the Plaintiffs

2    when Defendant St. Luke's Hospital's did not provide any accommodations for sleep,

3    comfort, or privacy while Mrs. Smith remained in the NICU for days without family

4    support, causing the Plaintiffs Mr. and Mrs. Smith to feel grief, fear, anxiety, stress,

5    chagrin, disappointment, worry, shame, humiliation, and, embarrassment.

6    3458.  IIED (4):  The stress caused to the Plaintiffs by Defendants was and continues to

7    be severe, in that the distress has manifested itself physical symptoms that include, but

8    are not limited to: Plaintiff Mrs. Smith has suffered the following physical manifestations

9    of emotional distress to the Defendant's alleged intentional infliction of emotional

10   distress: nightmares, night sweats, excessive diarrhea, anxiety and panic attacks,

11   separation anxiety from newborn baby J.A.S., insomnia, depression, PTSD symptoms

12   including staring into space while reliving the incident, muscle tightness and back

13   spasms, and body tremors; Plaintiff Mr. Smith has suffered the following physical

14   manifestations of emotional distress due to the Defendant's alleged intentional infliction

15   of emotional distress: intense headaches, depression, stomach upset and nausea,

16   excessive acid reflux, vomiting, symptoms of PTSD including staring into space reliving

17   the incident, fatigue, insomnia, excessive sweating, loss of appetite, excessive dry skin

18   sometimes forming open sores on his scalp and face.

19   3459.  Plaintiffs Mr. and Mrs. Smith require and attend regular sessions with a

20   specialized PTSD therapist to process and heal from the emotional distress foisted

21   upon them.

22   3460.  Upon information and belief, Defendant St. Luke's Hospital was in a position of

23   actual or apparent authority over the Plaintiffs Mr. and Mrs. Smith and Newborn baby

1  J.A.S., and Defendant St. Luke's Hospital had the power to affect the interest of the

2  Smith Family to remain intact.

3  3461.  Defendant St. Luke's Hospital's conduct violated Plaintiffs' rights under

4  Pennsylvania common law intentional infliction of emotional distress.

5  3462.  Accordingly, and in connection with the alleged intentional infliction of emotional

6  distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

7  Entities be required to adopt a third-party training program which demonstrates

8  appropriate circumstances under which a child should be reasonably separated from its

9  natural parents, and the specific legal procedures to adhere to for such a separation to

10  take place, including.

11  3463.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

12  training course, then the Defendant Entities should create their own legal training

13  program which demonstrates appropriate circumstances under which a child should be

14  reasonably separated from its natural parents, and the specific legal procedures to

15  adhere to for such a separation to take place, including; and, before the created

16  program is implemented, the program must be approved by an appropriate court or

17  federal agency for review; and, the program must be implemented within 180 days of

18  the valid judgment of this honorable Court.

19  3464.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendant's

20  conduct, including but not limited to, emotional and psychological distress, pain and

21  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

22  appropriate compensatory damages to account for PTSD therapies and other related

1   treatments as they have been and will continue to be necessary; Plaintiffs respectfully

2   request an amount of $84,800 in compensatory damages per Defendant.

3   3465.  Given the substantial wealth of the Defendant St. Luke's Hospital, and therefore,

4   its ability to afford the appropriate training to avoid this egregious violation of the

5   Pennsylvania Common Law, and, since harm was actually caused to the current

6   Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum

7   families, and because the acts of the Defendants and their agents, assigns, or

8   employees callously disregarded the Plaintiff's rights in a reckless and wanton manner,

9   the Plaintiffs respectfully request the imposition of punitive damages on Defendant St.

10  Luke's Hospital to deter such Defendant from committing to such conduct in the future

11  which violates Commonwealth of Pennsylvania Common Law Plaintiffs respectfully

12  request an amount of $10,000,000 in punitive damages per Defendant St. Luke's

13  Hospital.

14  3466.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

15  suffered any actual injury despite the deprivation of their common law rights, the

16  Plaintiffs respectfully request a nominal judgment of $1.00.

17  ## LIII.    <u>Intentional Infliction of Emotional Distress XIV</u>

18  <u>Mr. & Mrs. Smith v. Monroe County, Ms. Adelaide W. Grace, Mr. Tim Shaw & Mr.</u>

19  <u>Jorge Manteria</u>

20  3467.  To plead an intentional infliction of emotional distress claim under Pennsylvania

21  law, [Plaintiffs] must allege the Defendant's conduct (1) was intentional or reckless; (2)

1   was extreme and outrageous; (3) actually caused the distress; and (4) caused distress

2   that was severe.376

3   3468.  "In Pennsylvania, '[l]iability on an intentional infliction of emotional distress claim

4   has been found only where the conduct has been so outrageous in character, and so

5   extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

6   as atrocious, and utterly intolerable in a civilized community.'"377

7   3469.  To maintain [their] claim for intentional infliction of emotional distress, [Plaintiffs],

8   must allege that [they] suffered "severe" emotional distress resulting from the

9   Defendant's conduct.378

10   3470.  "Fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin,

11   disappointment, worry and nausea" all indicate "severe" emotional distress[,]"379 as well

---

376*Davenport v. Pottstown Hosp. Co.*, CIVIL ACTION NO. 17-1616 at 10 (E.D. Pa. Jul.

18, 2017), *citing*, *Regan v. Township of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D.

Pa. 1999).

377*Id, citing, Kasper v. Cnty. of Bucks*, 514 Fed. App'x. 210, 217 (3d Cir. 2013) (internal

citations and quotations omitted).

378*Id at *10-11, citing, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000); *See also,*

*Corbett v. Morgenstern*, 934 F. Supp. 680, 684-85 (E.D. Pa. 1996) ([in which] symptoms

of severe depression, nightmares, anxiety and ongoing mental or physical harm suffice).

379*Id, quoting, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000).

1   as, "fear, anxiety, stress, anger, headaches, nightmares, humiliation, emotional distress

2   [and] mental anguish also indicate "severe emotional distress."[380]

3   3471.  "The extreme and outrageous character of conduct may arise from an abuse by a

4   person in a position of actual or apparent authority over another, or by one with the

5   power to affect the other's interests." [381]

6   3472.  IIED (1): Defendants Monroe County through its Offices of Children and Youth

7   Services, and its agents, employees, or assigns, Ms. Adelaide W. Grace, Mr. Tim Shaw,

8   and Mr. Jorge Manteria's actions were intentional and/or reckless when as agents,

9   employees, or assigns of the state invaded the privacy of the innocent Smith Family,

10   when without a court order or reasonable suspicion of abuse, and, while actively

11   rejecting and repudiating all exculpating evidence, did investigate, invade, and

12   negatively pervade the Smith Family Unit with unnecessary and unfounded accusations

13   of methamphetamine ingestion and child abuse.

14   3473.  IIED (2): The Defendants Monroe County through its Offices of Children and

15   Youth Services, and its agents, employees, or assigns, Ms. Adelaide W. Grace, Mr. Tim

16   Shaw, and Mr. Jorge Manteria's actions were extreme and outrageous because Mrs.

17   Smith had taken three urinary drug screens, two by St. Luke's Hospital, and one by

18   CYS itself—none of which tested positive for methamphetamine—Newborn baby J.A.S.

19   had not ever tested positive in his urinary drug screens, nor was methamphetamine

20   detected in the umbilical cord that connected Plaintiff Mrs. Smith to in-utero baby J.A.S.;

---

[380]*Id.*

[381] *Id* at *8.

1  nor were there any signs or symptoms of methamphetamine withdrawal in either

2  Plaintiff Mrs. Smith or Newborn baby J.A.S., and still the Smith Family Unit, including

3  Plaintiffs Mr. and Mrs. Smith's three other children, were in constant fear of the Smith

4  Family Unit being separated without cause or proper procedure—and still the Smith

5  Family was investigated for over a month by Monroe County CYS, its agents,

6  employees, or assigns—such actions are so outrageous in character, and so extreme in

7  degree, as to go beyond all possible bounds of decency, and to be regarded as

8  atrocious, and utterly intolerable in a civilized community.

9  3474.  IIED (3):  The Defendants' actions actually caused the distress to the Plaintiffs

10  when Defendants Monroe County through its Offices of Children and Youth Services,

11  and its agents, employees, or assigns, Ms. Adelaide W. Grace, Mr. Tim Shaw, and Mr.

12  Jorge Manteria, either ordered, consented to, or were present as investigators of the

13  Smith Family, causing the Plaintiffs Mr. and Mrs. Smith to feel grief, fear, anxiety, stress,

14  chagrin, disappointment, worry, shame, humiliation, and, embarrassment.

15  3475.  IIED (4):  The stress caused to the Plaintiffs by Defendants was and continues to

16  be severe, in that the distress has manifested itself physical symptoms that include, but

17  are not limited to: Plaintiff Mrs. Smith has suffered the following physical manifestations

18  of emotional distress to the Defendant's alleged intentional infliction of emotional

19  distress: nightmares, night sweats, excessive diarrhea, anxiety and panic attacks,

20  separation anxiety from Newborn baby J.A.S., insomnia, depression, PTSD symptoms

21  including staring into space while reliving the incident, muscle tightness and back

22  spasms, and body tremors; Plaintiff Mr. Smith has suffered the following physical

23  manifestations of emotional distress due to the Defendant's alleged intentional infliction

of emotional distress: intense headaches, depression, stomach upset and nausea,

excessive acid reflux, vomiting, symptoms of PTSD including staring into space reliving

the incident, fatigue, insomnia, excessive sweating, loss of appetite, excessive dry skin

sometimes forming open sores on his scalp and face.

3476.  Plaintiffs Mr. and Mrs. Smith require and attend regular sessions with a

specialized PTSD therapist to process and heal from the emotional distress foisted

upon them.

3477.  Upon information and belief, each of the listed Defendants in this claim,

Defendants Monroe County through its Offices of Children and Youth Services, and its

agents, employees, or assigns, Ms. Adelaide W. Grace, Mr. Tim Shaw, and Mr. Jorge

Manteria, were in a position of actual or apparent authority over the Plaintiffs Mr. and

Mrs. Smith and Newborn baby J.A.S., and each Defendant had the power to affect the

interest of the Smith Family to remain intact.

3478.  Defendants Monroe County through its Offices of Children and Youth Services,

and its agents, employees, or assigns, Ms. Adelaide W. Grace, Mr. Tim Shaw, and Mr.

Jorge Manteria conduct violated Plaintiffs' rights under Pennsylvania common law

intentional infliction of emotional distress.

3479.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

evidence that the Defendant Monroe County supervised Ms. Adelaide W. Grace, Mr.

Tim Shaw, and Mr. Jorge Manteria in connection with this allegation and is therefore

liable under a legal theory of respondeat superior.

3480.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

evidence that the Defendant Adelaide W. Grace Mr. Tim Shaw, and Mr. Jorge Manteria

1    in connection with this allegation and is therefore liable under a legal theory of

2    respondeat superior.

3    3481.  Accordingly, and in connection with the alleged intentional infliction of emotional

4    distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

5    Entities be required to adopt a third-party training program which demonstrates

6    appropriate circumstances under which a child should be reasonably separated from its

7    natural parents, and the specific legal procedures to adhere to for such a separation to

8    take place.

9    3482.  Accordingly, and in connection with the alleged intentional infliction of emotional

10   distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

11   Persons be required to attend and pass a rigorous a third-party training program which

12   demonstrates appropriate circumstances under which a child should be reasonably

13   separated from its natural parents, and the specific legal procedures to adhere to for

14   such a separation to take place.

15   3483.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

16   training course, then the Defendant Entities should create their own legal training

17   program which demonstrates appropriate circumstances under which a child should be

18   reasonably separated from its natural parents, and the specific legal procedures to

19   adhere to for such a separation to take place, including; and, before the created

20   program is implemented, the program must be approved by an appropriate court or

21   federal agency for review; and, the program must be implemented within 180 days of

22   the valid judgment of this honorable Court.

3484.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendants' conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully request an amount of $84,800 in compensatory damages per Defendant.

3485.  Defendant Monroe County through its Office of Children and Youth Services, is legally obligated to appropriately train its state actor employees to avoid this egregious violation of Pennsylvania common laws, and since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm future fathers, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiff respectfully requests the imposition of punitive damages on Defendants Monroe County, Ms. Adelaide W. Grace, and Mr. Tim Shaw to deter such Defendants from committing such conduct in the future which violates the Pennsylvania Common Law Plaintiffs respectfully request an amount of $1,000,000 in punitive damages per Defendants Mr. Tim Shaw, and Mr. Jorge Manteria; $5,000,000 per Defendants Ms. Adelaide W. Grace; and $10,000,000 per Defendant Monroe County.

3486.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered any actual injury despite the deprivation of their common law rights, the Plaintiffs respectfully request a nominal judgment of $1.00.

## LIV.    <u>Intentional Infliction of Emotional Distress XV</u>

1   Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians

2       Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and

3       Gynecology Associates,  Monroe County, Northampton County, Ms. Adelaide

4        Grace, Mr. Tim Shaw, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr.

5        Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms.

6        Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe,

7        MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello,

8        DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates,

9        CRNP, Ms. Kimberly A. Nardis, CRNP, "Security Supervisor 'Unknown'", "Head of

10      Hospital Security 'Unknown', Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

11              Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team"

12   3487.  To plead an intentional infliction of emotional distress claim under Pennsylvania

13   law, [Plaintiffs] must allege the Defendant's conduct (1) was intentional or reckless; (2)

14   was extreme and outrageous; (3) actually caused the distress; and (4) caused distress

15   that was severe.[382]

16   3488.  "In Pennsylvania, '[l]iability on an intentional infliction of emotional distress claim

17   has been found only where the conduct has been so outrageous in character, and so

---

[382] *Davenport v. Pottstown Hosp. Co.*, CIVIL ACTION NO. 17-1616 at 10 (E.D. Pa. Jul.

18, 2017), *citing*, *Regan v. Township of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D.

Pa. 1999).

1  extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

2  as atrocious, and utterly intolerable in a civilized community.'"383

3  3489.  To maintain [their] claim for intentional infliction of emotional distress, [Plaintiffs],

4  must allege that [they] suffered "severe" emotional distress resulting from the

5  Defendant's conduct.384

6  3490.  "Fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin,

7  disappointment, worry and nausea" all indicate "severe" emotional distress[,]"385 as well

8  as, "fear, anxiety, stress, anger, headaches, nightmares, humiliation, emotional distress

9  [and] mental anguish also indicate "severe emotional distress."386

10  3491.  "The extreme and outrageous character of conduct may arise from an abuse by a

11  person in a position of actual or apparent authority over another, or by one with the

12  power to affect the other's interests." 387

13  3492.  IIED (1): The Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

14  Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics

---

383*Id, citing, Kasper v. Cnty. of Bucks*, 514 Fed. App'x. 210, 217 (3d Cir. 2013) (internal

citations and quotations omitted).

384*Id at *10-11, citing, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000); *See also,*

*Corbett v. Morgenstern*, 934 F. Supp. 680, 684-85 (E.D. Pa. 1996) ([in which] symptoms

of severe depression, nightmares, anxiety and ongoing mental or physical harm suffice).

385*Id, quoting, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000).

386*Id.*

387*Id* at *8.

1  and Gynecology Associates, Monroe County, Northampton County, Ms. Adelaide

2  Grace, Mr. Tim Shaw, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick

3  Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

4  Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

5  Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

6  Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A.

7  Nardis, CRNP, "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown',

8  Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

9  and the "Hospital Leadership Team's" actions were intentional and/or reckless when as

10  agents, employees, or assigns of a medical provider, Defendants did not ever advocate

11  of behalf of Plaintiffs Mr. and Mrs. Smith, and no reasonable advocate was provided for

12  them before they were separated from their newborn baby, and instead Defendants

13  tailored their actions towards a narrative that Plaintiff Mrs. Smith ingested

14  methamphetamine and that the deleterious effects of methamphetamine ingestion were

15  passed on to Newborn baby J.A.S., and that Plaintiff Mr. Smith was too violent to be

16  present on Defendant St. Luke's Hospital property; this overall narrative, allegedly

17  supported by Defendants was designed to separate Plaintiffs Mr. and Mrs. Smith from

18  Plaintiff Newborn baby J.A.S.

19  3493.  IIED (2): The Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

20  Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics

21  and Gynecology Associates, Monroe County, Northampton County, Ms. Adelaide

22  Grace, Mr. Tim Shaw, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick

23  Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

1  Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

2  Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

3  Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A.

4  Nardis, CRNP, "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown',

5  Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

6  and the "Hospital Leadership Team's" actions were extreme and outrageous because to

7  physically separate a newborn child in a NICU from its parents without any signs of past

8  or imminent harm to the newborn child due to its parents are actions which were so

9  outrageous in character, and so extreme in degree, as to go beyond all possible bounds

10  of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

11  community.

12  3494.  IIED (3):  The Defendants' actions actually caused the distress to the Plaintiffs

13  when Plaintiffs Mr. and Mrs. Smith were removed against their will and consent from

14  Defendant St. Luke's Hospital property under threat of arrest, because of Defendants

15  St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group,

16  Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and Gynecology

17  Associates, Monroe County, Northampton County, Ms. Adelaide Grace, Mr. Tim Shaw,

18  Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne

19  R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher

20  Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown,

21  MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler,

22  DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, "Security Supervisor

23  'Unknown'", "Head of Hospital Security 'Unknown', Mr. Steve Lanshe, Esq., Mr. Robert

L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team's" false narrative regarding Plaintiff Mrs. Smith's alleged methamphetamine ingestion despite no actual or imminent harm coming to Plaintiff Newborn baby J.A.S. via his parents, causing the Plaintiffs Mr. and Mrs. Smith to feel grief, fear, anxiety, stress, chagrin, disappointment, worry, shame, humiliation, and, embarrassment.

3495.  IIED (4):  The stress caused to the Plaintiffs by Defendants was and continues to be severe, in that the distress has manifested itself physical symptoms that include, but are not limited to: Plaintiff Mrs. Smith has suffered the following physical manifestations of emotional distress to the Defendant's alleged intentional infliction of emotional distress: nightmares, night sweats, excessive diarrhea, anxiety and panic attacks, separation anxiety from Newborn baby J.A.S., insomnia, depression, PTSD symptoms including staring into space while reliving the incident, muscle tightness and back spasms, and body tremors; Plaintiff Mr. Smith has suffered the following physical manifestations of emotional distress due to the Defendant's alleged intentional infliction of emotional distress: intense headaches, depression, stomach upset and nausea, excessive acid reflux, vomiting, symptoms of PTSD including staring into space reliving the incident, fatigue, insomnia, excessive sweating, loss of appetite, excessive dry skin sometimes forming open sores on his scalp and face.

3496.  Plaintiffs Mr. and Mrs. Smith require and attend regular sessions with a specialized PTSD therapist to process and heal from the emotional distress foisted upon them.

3497.  Upon information and belief, each of the listed Defendants in this claim, St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem

1   Neonatal Associates Group, St. Luke's Obstetrics and Gynecology Associates, Monroe

2   County, Northampton County, Ms. Adelaide Grace, Mr. Tim Shaw, Ms. Teresa Marlino,

3   MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr.

4   Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms.

5   Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly

6   A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia

7   Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, "Security Supervisor 'Unknown'", "Head

8   of Hospital Security 'Unknown', Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

9   Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" were in a position

10   of actual or apparent authority over the Plaintiffs Mr. and Mrs. Smith and Newborn baby

11   J.A.S., and each Defendant had the power to affect the interest of the Smith Family to

12   remain intact.

13   3498.  Defendants , St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

14   Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and

15   Gynecology Associates, Monroe County, Northampton County, Ms. Adelaide Grace, Mr.

16   Tim Shaw, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO,

17   Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr.

18   Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms.

19   Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms.

20   Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP,

21   "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown', Mr. Steve

22   Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the

1  "Hospital Leadership Team's" conduct violated Plaintiffs' rights under Pennsylvania

2  common law intentional infliction of emotional distress.

3  3499.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

4  evidence that each of the listed Defendants conspired with at least one other Defendant

5  elsewhere listed in this complaint via an overt act with malice or an intent to injure the

6  Plaintiffs.

7  3500.  The conspiracy between the Defendant parties and their agents, employees,

8  assigns, or other Defendants violates Pennsylvania common law against conspiracies;

9  thereby, causing actual damages to Plaintiffs Mr. & Mrs. Smith.

10  3501.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

11  evidence that the Defendant St. Luke's Hospital supervised "Security Guard 'Freddy'",

12  Security Guard 'Joe'", Security Guard 'Nate'" "Security Supervisor 'Unknown'", "Head of

13  Hospital Security 'Unknown'", Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms.

14  Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership Team" in connection with

15  this allegation and is therefore liable under a legal theory of respondeat superior.

16  3502.  Accordingly, and in connection with the alleged intentional infliction of emotional

17  distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

18  Entities be required to adopt a third-party training program which demonstrates

19  appropriate circumstances under which a child should be reasonably separated from its

20  natural parents, and the specific legal procedures to adhere to for such a separation to

21  take place.

22  3503.  Accordingly, and in connection with the alleged intentional infliction of emotional

23  distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

1   Persons be required to attend and pass a rigorous a third-party training program which

2   demonstrates appropriate circumstances under which a child should be reasonably

3   separated from its natural parents, and the specific legal procedures to adhere to for

4   such a separation to take place.

5   3504.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

6   training course, then the Defendant Entities should create their own legal training

7   program which demonstrates appropriate circumstances under which a child should be

8   reasonably separated from its natural parents, and the specific legal procedures to

9   adhere to for such a separation to take place, including; and, before the created

10   program is implemented, the program must be approved by an appropriate court or

11   federal agency for review; and, the program must be implemented within 180 days of

12   the valid judgment of this honorable Court.

13   3505.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendant's

14   conduct, including but not limited to, emotional and psychological distress, pain and

15   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

16   appropriate compensatory damages to account for PTSD therapies and other related

17   treatments as they have been and will continue to be necessary; Plaintiffs respectfully

18   request an amount of $84,800 in compensatory damages per Defendant.

19   3506.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

20   Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates

21   Group, St. Luke's Obstetrics and Gynecology Associates, Monroe County, Northampton

22   County, Ms. Adelaide Grace, Mr. Tim Shaw, Ms. Teresa Marlino, MD, Ms. Cynthia

23   Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD,

1  Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD,

2  Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr.

3  Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms.

4  Kimberly A. Nardis, CRNP, "Security Supervisor 'Unknown'", "Head of Hospital Security

5  'Unknown', Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms.

6  Dawn Hoffman, and the "Hospital Leadership Team", and therefore, their ability to afford

7  the appropriate training to avoid this egregious violation of the Pennsylvania Common

8  Law, and, since harm was actually caused to the current Plaintiff Smith Family, and

9  since harm is likely to continue to harm future postpartum families, and because the

10 acts of the Defendants and their agents, assigns, or employees callously disregarded

11 the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request

12 the imposition of punitive damages on Defendant St. Luke's Hospital, Onsite Neonatal,

13 OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates Group, St.

14 Luke's Obstetrics and Gynecology Associates, Monroe County, Northampton County,

15 Ms. Adelaide Grace, Mr. Tim Shaw, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD,

16 Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

17 Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

18 Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

19 Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A.

20 Nardis, CRNP, "Security Supervisor 'Unknown'", "Head of Hospital Security 'Unknown',

21 Mr. Steve Lanshe, Esq., Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman,

22 and the "Hospital Leadership Team" to deter such Defendant from committing to such

23 conduct in the future which violates Commonwealth of Pennsylvania Common Law

1    Plaintiffs respectfully request an amount of $1,000,000 in punitive damages per

2    Defendants Mr. Tim Shaw, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms.

3    Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms.

4    Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert

5    I. Santiago, MD, Ms. Patricia Bates, CRNP, and Ms. Kimberly A. Nardis, CRNP;

6    $5,000,000 per Defendants St. Luke's Physicians Group, Bethlehem Neonatal

7    Associates Group, St. Luke's Obstetrics and Gynecology Associates, Ms. Adelaide

8    Grace, Mr. Patrick Philpot, DO, Ms. Chaminie Wheeler, DO, "Security Supervisor

9    'Unknown'", "Head of Hospital Security 'Unknown', Mr. Steve Lanshe, Esq., Mr. Robert

10   L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, and the "Hospital Leadership

11   Team"; and $10,000,000 per Defendants St. Luke's Hospital, Onsite Neonatal, OBHG

12   PA, Monroe County, Northampton County, Ms. Teresa Marlino, MD, and Ms. Cynthia

13   Shultz, MD.

14   3507.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

15   any actual injury despite the deprivation of their common law rights, the Plaintiffs

16   respectfully request a nominal judgment of $1.00.


17   ## LV.    __Intentional Infliction of Emotional Distress XVI__

18   Smith, _et al._ v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians

19       Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and

20       Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr.

21       Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms.

22       Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe,

MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello,

DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates,

CRNP, Ms. Kimberly A. Nardis, CRNP, & Mr. Jerry Hric, MD

3508.  To plead an intentional infliction of emotional distress claim under Pennsylvania law, [Plaintiffs] must allege the Defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; (3) actually caused the distress; and (4) caused distress that was severe.[388]

3509.  "In Pennsylvania, '[l]iability on an intentional infliction of emotional distress claim has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"[389]

---

[388]*Davenport v. Pottstown Hosp. Co.*, CIVIL ACTION NO. 17-1616 at 10 (E.D. Pa. Jul. 18, 2017), *citing*, *Regan v. Township of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D. Pa. 1999).

[389]*Id, citing, Kasper v. Cnty. of Bucks*, 514 Fed. App'x. 210, 217 (3d Cir. 2013) (internal citations and quotations omitted).

1    3510.  To maintain [their] claim for intentional infliction of emotional distress, [Plaintiffs],

2    must allege that [they] suffered "severe" emotional distress resulting from the

3    Defendant's conduct.390

4    3511.  "Fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin,

5    disappointment, worry and nausea" all indicate "severe" emotional distress[,]391 as well

6    as, "fear, anxiety, stress, anger, headaches, nightmares, humiliation, emotional distress

7    [and] mental anguish also indicate "severe emotional distress."392

8    3512.  "The extreme and outrageous character of conduct may arise from an abuse by a

9    person in a position of actual or apparent authority over another, or by one with the

10   power to affect the other's interests." 393

11   3513.  IIED (1): The Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

12   Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics

13   and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr.

14   Patrick Philpot, DO, Ms. DianneR. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

15   Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

16   Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

---

390 *Id at *10-11, citing, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000); *See also, Corbett v. Morgenstern*, 934 F. Supp. 680, 684-85 (E.D. Pa. 1996) ([in which] symptoms of severe depression, nightmares, anxiety and ongoing mental or physical harm suffice).

391 *Id, quoting, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000).

392 *Id.*

393 *Id* at *8.

1   Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A.

2   Nardis, CRNP, & Mr. Jerry Hric, MD's actions were intentional and/or reckless when as

3   agents, employees, or assigns of a medical provider, constantly asked for consent for

4   medical treatments for Plaintiff Newborn baby J.A.S., and when consent was not given,

5   Mr. and Mrs. Smith were ignored actively, and medical procedures and medications

6   were administered to Plaintiff Newborn baby J.A.S. against the will, consent, and at

7   times, even knowledge of Plaintiffs Mr. and Mrs. Smith.

8   3514.  IIED (2): The Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

9   Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics

10  and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr.

11  Patrick Philpot, DO, Ms. DianneR. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

12  Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

13  Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

14  Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A.

15  Nardis, CRNP, and Mr. Jerry Hric, MD's actions were extreme and outrageous because

16  to ignore the reasonable will and consent of parents for a newborn baby, and to do

17  whatever the medical provider and its representatives desire, including injecting copious

18  amounts of unnecessary antibiotics into Plaintiff Newborn baby J.A.S. are actions which

19  were so outrageous in character, and so extreme in degree, as to go beyond all

20  possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

21  a civilized community.

22  3515.  IIED (3):  The Defendants' actions actually caused the distress to the Plaintiffs

23  when Plaintiffs Mr. and Mrs. Smith were ignored time and again as to their opinions

1  concerning their newborn baby because Defendants St. Luke's Hospital, Onsite

2  Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates

3  Group, St. Luke's Obstetrics and Gynecology Associates, Ms.Teresa Marlino, MD, Ms.

4  Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N.

5  Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah

6  Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A.

7  Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia

8  Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, and Mr. Jerry Hric, MD, were conforming

9  to a narrative that Mr. and Mrs. Smith were not reasonable and capable decision

10  makers, causing the Plaintiffs Mr. and Mrs. Smith to feel grief, fear, anxiety, stress,

11  chagrin, disappointment, worry, shame, humiliation, and, embarrassment.

12  3516.  IIED (4):  The stress caused to the Plaintiffs by Defendants was and continues to

13  be severe, in that the distress has manifested itself physical symptoms that include, but

14  are not limited to: Plaintiff Mrs. Smith has suffered the following physical manifestations

15  of emotional distress to the Defendant's alleged intentional infliction of emotional

16  distress: nightmares, night sweats, excessive diarrhea, anxiety and panic attacks,

17  separation anxiety from Newborn baby J.A.S., insomnia, depression, PTSD symptoms

18  including staring into space while reliving the incident, muscle tightness and back

19  spasms, and body tremors; Plaintiff Mr. Smith has suffered the following physical

20  manifestations of emotional distress due to the Defendant's alleged intentional infliction

21  of emotional distress: intense headaches, depression, stomach upset and nausea,

22  excessive acid reflux, vomiting, symptoms of PTSD including staring into space reliving

1  the incident, fatigue, insomnia, excessive sweating, loss of appetite, excessive dry skin

2  sometimes forming open sores on his scalp and face.

3  3517.  Plaintiffs Mr. and Mrs. Smith require and attend regular sessions with a

4  specialized PTSD therapist to process and heal from the emotional distress foisted

5  upon them.

6  3518.  Upon information and belief, each of the listed Defendants in this claim, St.

7  Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem

8  Neonatal Associates Group, St. Luke's Obstetrics and Gynecology Associates, Ms.

9  Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R.

10  Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher

11  Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown,

12  MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler,

13  DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, and Mr. Jerry Hric, MD,

14  were in a position of actual or apparent authority over the Plaintiffs Mr. and Mrs. Smith

15  and Plaintiff Newborn baby J.A.S., and each Defendant had the power to affect the

16  interest of the Smith Family to remain intact.

17  3519.  Defendants , St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

18  Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and

19  Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick

20  Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

21  Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

22  Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

23  Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A.

1   Nardis, CRNP, and Mr. Jerry Hric, MD's conduct violated Plaintiffs' rights under

2   Pennsylvania common law intentional infliction of emotional distress.

3   3520.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

4   evidence that each of the listed Defendants conspired with at least one other Defendant

5   elsewhere listed in this complaint via an overt act with malice or an intent to injure the

6   Plaintiffs.

7   3521.  The conspiracy between the Defendant parties and their agents, employees,

8   assigns, or other Defendants violates Pennsylvania common law against conspiracies;

9   thereby, causing actual damages to Plaintiffs Mr. & Mrs. Smith.

10  3522.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

11  evidence that the Defendants , St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

12  Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics

13  and Gynecology Associates, and Mr. Jerry Hric, MD supervised Ms. Teresa Marlino,

14  MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr.

15  Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms.

16  Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly

17  A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia

18  Bates, CRNP, and Ms. Kimberly A. Nardis, CRNP in connection with this allegation and

19  is therefore liable under a legal theory of respondeat superior.

20  3523.  Accordingly, and in connection with the alleged intentional infliction of emotional

21  distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

22  Entities be required to adopt a third-party training program which demonstrates

23  appropriate circumstances under which a child should be reasonably separated from its

1   natural parents, and the specific legal procedures to adhere to for such a separation to

2   take place.

3   3524.  Accordingly, and in connection with the alleged intentional infliction of emotional

4   distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

5   Persons be required to attend and pass a rigorous a third-party training program which

6   demonstrates appropriate circumstances under which a child should be reasonably

7   separated from its natural parents, and the specific legal procedures to adhere to for

8   such a separation to take place.

9   3525.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

10   training course, then the Defendant Entities should create their own legal training

11   program which demonstrates appropriate circumstances under which a child should be

12   reasonably separated from its natural parents, and the specific legal procedures to

13   adhere to for such a separation to take place, including; and, before the created

14   program is implemented, the program must be approved by an appropriate court or

15   federal agency for review; and, the program must be implemented within 180 days of

16   the valid judgment of this honorable Court.

17   3526.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendant's

18   conduct, including but not limited to, emotional and psychological distress, pain and

19   suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

20   appropriate compensatory damages to account for PTSD therapies and other related

21   treatments as they have been and will continue to be necessary Plaintiffs respectfully

22   request an amount of $84,800 in compensatory damages per Defendant.

3527.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, and Mr. Jerry Hric, MD, and therefore, their ability to afford the appropriate training to avoid this egregious violation of the Pennsylvania Common Law, and, since harm was actually caused to the current Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum families, and because the acts of the Defendants and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a reckless and wanton manner, the Plaintiffs respectfully request the imposition of punitive damages on Defendant St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, and Mr. Jerry Hric, MD to deter such Defendant from committing to such conduct in the future which violates Commonwealth of Pennsylvania Common Law Plaintiffs respectfully request an amount

of $1,000,000 in punitive damages per Defendants Ms. Cynthia Shultz, MD, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Patricia Bates, CRNP, and Ms. Kimberly A. Nardis, CRNP; $5,000,000 per Defendants St. Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and Gynecology Associates, Mr. Patrick Philpot, DO, Ms. Chaminie Wheeler, DO, and Mr. Jerry Hric, MD; and $10,000,000 per Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, and Ms. Teresa Marlino, MD.

3528.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered any actual injury despite the deprivation of their common law rights, the Plaintiffs respectfully request a nominal judgment of $1.00.

# LVI. <u>Intentional Infliction of Emotional Distress XVII</u>

## <u>Mr. & Mrs. Smith v. St. Luke's Hospital, OBHG PA, & Ms. Teresa Marlino, MD</u>

3529.  To plead an intentional infliction of emotional distress claim under Pennsylvania law, [Plaintiffs] must allege the Defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; (3) actually caused the distress; and (4) caused distress that was severe.[394]

---

[394] *Davenport v. Pottstown Hosp. Co.*, CIVIL ACTION NO. 17-1616 at 10 (E.D. Pa. Jul. 18, 2017), *citing*, *Regan v. Township of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D. Pa. 1999).

1  3530.  "In Pennsylvania, '[l]iability on an intentional infliction of emotional distress claim

2  has been found only where the conduct has been so outrageous in character, and so

3  extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

4  as atrocious, and utterly intolerable in a civilized community.'"[395]

5  3531.  To maintain [their] claim for intentional infliction of emotional distress, [Plaintiffs],

6  must allege that [they] suffered "severe" emotional distress resulting from the

7  Defendant's conduct.[396]

8  3532.  "Fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin,

9  disappointment, worry and nausea" all indicate "severe" emotional distress[,]"[397] as well

10  as, "fear, anxiety, stress, anger, headaches, nightmares, humiliation, emotional distress

11  [and] mental anguish also indicate "severe emotional distress."[398]

12  3533.  "The extreme and outrageous character of conduct may arise from an abuse by a

13  person in a position of actual or apparent authority over another, or by one with the

14  power to affect the other's interests." [399]

---

[395] *Id, citing, Kasper v. Cnty. of Bucks*, 514 Fed. App'x. 210, 217 (3d Cir. 2013) (internal

citations and quotations omitted).

[396] *Id at *10-11, citing, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000); *See also,*

*Corbett v. Morgenstern*, 934 F. Supp. 680, 684-85 (E.D. Pa. 1996) ([in which] symptoms

of severe depression, nightmares, anxiety and ongoing mental or physical harm suffice).

[397] *Id, quoting, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000).

[398] *Id.*

[399] *Id* at *8.

1  3534.  IIED (1): The Defendants St. Luke's Hospital, OBHG PA, and Ms. Teresa

2  Marlino, MD's actions were intentional and/or reckless when as a agent, employee, or

3  assign of a medical provider, unequivocally accused Plaintiff Mrs. Smith of

4  methamphetamine ingestion, and that she abused her newborn baby child by passing

5  the methamphetamine on to Newborn baby J.A.S.; and Defendant Ms. Marlino, MD did

6  so without a court order or reasonable suspicion that Plaintiff Mrs. Smith had in fact

7  ingested methamphetamine.

8  3535.  IIED (2): The Defendants St. Luke's Hospital, OBHG PA, Ms. Teresa Marlino,

9  MD's actions were extreme and outrageous because to ignore that neither Plaintiff Mrs.

10  Smith, nor Newborn baby J.A.S. suffered from methamphetamine withdrawal, and

11  instead to solely rely on undifferentiated urinary drug screenings which do not

12  differentiate between legally prescribed amphetamines and illegal methamphetamines

13  are actions which were so outrageous in character, and so extreme in degree, as to go

14  beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

15  intolerable in a civilized community.

16  3536.  IIED (3):  The Defendants' actions actually caused the distress to the Plaintiffs

17  when Plaintiffs Mr. and Mrs. Smith were ignored time and again as to their opinions

18  concerning Plaintiff Mrs. Smith and their newborn baby because Defendants St. Luke's

19  Hospital, OBHG PA, and Ms. Teresa Marlino, MD, callously spoke words to Plaintiffs

20  Mr. and Mrs. Smith in Plaintiff Mrs. Smith's postpartum hospital room which Defendant

21  Ms. Teresa Marlino, MD, clearly conveyed that she believed that Plaintiff Mrs. Smith

22  ingested methamphetamine, going so far as to ask Mrs. Smith if she, "Had a

23  prescription for methamphetamine?"; when Plaintiff Mrs. Smith told Defendant Ms.

1  Teresa Marlino, MD that Plaintiff Mrs. Smith had not ever consumed methamphetamine

2  but prescription Vyvanse, a known amphetamine, and a fact known to Defendant Ms.

3  Marlino, MD, actions which caused the Plaintiffs Mr. and Mrs. Smith to feel grief, fear,

4  anxiety, stress, chagrin, disappointment, worry, shame, humiliation, and,

5  embarrassment.

6  3537.  IIED (4):  The stress caused to the Plaintiffs by Defendants was and continues to

7  be severe, in that the distress has manifested itself physical symptoms that include, but

8  are not limited to: Plaintiff Mrs. Smith has suffered the following physical manifestations

9  of emotional distress to the Defendant's alleged intentional infliction of emotional

10  distress: nightmares, night sweats, excessive diarrhea, anxiety and panic attacks,

11  separation anxiety from Newborn baby J.A.S., insomnia, depression, PTSD symptoms

12  including staring into space while reliving the incident, muscle tightness and back

13  spasms, and body tremors; Plaintiff Mr. Smith has suffered the following physical

14  manifestations of emotional distress due to the Defendant's alleged intentional infliction

15  of emotional distress: intense headaches, depression, stomach upset and nausea,

16  excessive acid reflux, vomiting, symptoms of PTSD including staring into space reliving

17  the incident, fatigue, insomnia, excessive sweating, loss of appetite, excessive dry skin

18  sometimes forming open sores on his scalp and face.

19  3538.  Plaintiffs Mr. and Mrs. Smith require and attend regular sessions with a

20  specialized PTSD therapist to process and heal from the emotional distress foisted

21  upon them.

22  3539.  Upon information and belief, each of the listed Defendants in this claim, St.

23  Luke's Hospital, OBHG PA, Ms. Teresa Marlino, MD, were in a position of actual or

1    apparent authority over the Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S., and

2    each Defendant had the power to affect the interest of the Smith Family to remain intact.

3    3540.  Defendants St. Luke's Hospital, OBHG PA, and Ms. Teresa Marlino, MD's

4    conduct violated Plaintiffs' rights under Pennsylvania common law intentional infliction

5    of emotional distress.

6    3541.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

7    evidence that each of the listed Defendants conspired with at least one other Defendant

8    elsewhere listed in this complaint via an overt act with malice or an intent to injure the

9    Plaintiffs.

10    3542.  The conspiracy between the Defendant parties and their agents, employees,

11    assigns, or other Defendants violates Pennsylvania common law against conspiracies;

12    thereby, causing actual damages to Plaintiffs Mr. & Mrs. Smith.

13    3543.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

14    evidence that the Defendants, St. Luke's Hospital and OBHG PA supervised Ms.

15    Teresa Marlino, MD, in connection with this allegation and is therefore liable under a

16    legal theory of respondeat superior.

17    3544.  Accordingly, and in connection with the alleged intentional infliction of emotional

18    distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant

19    Entities be required to adopt a third-party training program which demonstrates

20    appropriate circumstances under which a child should be reasonably separated from its

21    natural parents, and the specific legal procedures to adhere to for such a separation to

22    take place.

3545.  Accordingly, and in connection with the alleged intentional infliction of emotional distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Persons be required to attend and pass a rigorous a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place.

3546.  Accordingly, if a third-party cannot be found to render the appropriately rigorous training course, then the Defendant Entities should create their own legal training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place, including; and, before the created program is implemented, the program must be approved by an appropriate court or federal agency for review; and, the program must be implemented within 180 days of the valid judgment of this honorable Court.

3547.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendant's conduct, including but not limited to, emotional and psychological distress, pain and suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests appropriate compensatory damages to account for PTSD therapies and other related treatments as they have been and will continue to be necessary; Plaintiffs respectfully request an amount of $84,800 in compensatory damages per Defendant.

3548.  Given the substantial wealth of the Defendants St. Luke's Hospital, OBHG PA, and Ms. Teresa Marlino, MD, and therefore, their ability to afford the appropriate training to avoid this egregious violation of the Pennsylvania Common Law, and, since harm

1   was actually caused to the current Plaintiff Smith Family, and since harm is likely to

2   continue to harm future postpartum families, and because the acts of the Defendants

3   and their agents, assigns, or employees callously disregarded the Plaintiff's rights in a

4   reckless and wanton manner, the Plaintiffs respectfully request the imposition of

5   punitive damages on Defendant St. Luke's Hospital, OBHG PA,  and Ms. Teresa

6   Marlino, MD to deter such Defendant from committing to such conduct in the future

7   which violates Commonwealth of Pennsylvania Common Law Plaintiffs respectfully

8   request an amount of $10,000,000 in punitive damages per Defendants St. Luke's

9   Hospital, OBHG PA, and Ms. Teresa Marlino, MD.

10   3549.  In the unlikely event that the jury does not find that Plaintiffs Mr. & Mrs. Smith

11   suffered any actual injury despite the deprivation of their common law rights, the

12   Plaintiffs respectfully request a nominal judgment of $1.00.

13   ## LVII.   Intentional Infliction of Emotional Distress XVIII

14   Mr. & Mrs. Smith, *et al.* v. St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

15   Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's

16   Obstetrics and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia

17   Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb,

18   MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah

19   Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A.

20   Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia

21   Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, & Mr. Jerry Hric, MD

1    3550.  To plead an intentional infliction of emotional distress claim under Pennsylvania

2    law, [Plaintiffs] must allege the Defendant's conduct (1) was intentional or reckless; (2)

3    was extreme and outrageous; (3) actually caused the distress; and (4) caused distress

4    that was severe.400

5    3551.  "In Pennsylvania, '[l]iability on an intentional infliction of emotional distress claim

6    has been found only where the conduct has been so outrageous in character, and so

7    extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

8    as atrocious, and utterly intolerable in a civilized community.'"401

9    3552.  To maintain [their] claim for intentional infliction of emotional distress, [Plaintiffs],

10   must allege that [they] suffered "severe" emotional distress resulting from the

11   Defendant's conduct.402

12   3553.  "Fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin,

13   disappointment, worry and nausea" all indicate "severe" emotional distress[,]"403 as well

---

400 *Davenport v. Pottstown Hosp. Co.*, CIVIL ACTION NO. 17-1616 at 10 (E.D. Pa. Jul.

18, 2017), *citing*, *Regan v. Township of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D.

Pa. 1999).

401 *Id, citing, Kasper v. Cnty. of Bucks*, 514 Fed. App'x. 210, 217 (3d Cir. 2013) (internal

citations and quotations omitted).

402 *Id at *10-11, citing, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000); *See also,

Corbett v. Morgenstern*, 934 F. Supp. 680, 684-85 (E.D. Pa. 1996) ([in which] symptoms

of severe depression, nightmares, anxiety and ongoing mental or physical harm suffice).

403 *Id, quoting, Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000).

1   as, "fear, anxiety, stress, anger, headaches, nightmares, humiliation, emotional distress

2   [and] mental anguish also indicate "severe emotional distress."[404]

3   3554.  "The extreme and outrageous character of conduct may arise from an abuse by a

4   person in a position of actual or apparent authority over another, or by one with the

5   power to affect the other's interests." [405]

6   3555.  IIED (1): The Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

7   Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics

8   and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr.

9   Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

10   Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

11   Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

12   Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A.

13   Nardis, CRNP, and Mr. Jerry Hric, MD's actions were intentional and/or reckless when

14   as agents, employees, or assigns of a medical provider, administered life-threatening

15   doses of antibiotics to Plaintiff Newborn baby J.A.S.

16   3556.  IIED (2): The Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St.

17   Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics

18   and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr.

19   Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

20   Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

---

[404]*Id.*

[405] *Id* at *8.

1   Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

2   Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A.

3   Nardis, CRNP, and Mr. Jerry Hric, MD's actions were extreme and outrageous because

4   to feign a reason to give a newborn antibiotics, and then to proceed to give a life-

5   threatening dosage of said antibiotics to Plaintiff Newborn baby J.A.S. are actions which

6   were so outrageous in character, and so extreme in degree, as to go beyond all

7   possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

8   a civilized community.

9   3557.  IIED (3):  The Defendants' actions actually caused the distress to the Plaintiffs

10  when Plaintiffs Mr. and Mrs. Smith were ignored time and again as to their opinions

11  concerning their newborn baby because Defendants St. Luke's Hospital, Onsite

12  Neonatal, OBHG, St. Luke's Physicians Group, Bethlehem Neonatal Associates Group,

13  St. Luke's Obstetrics and Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia

14  Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD,

15  Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD,

16  Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr.

17  Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms.

18  Kimberly A. Nardis, CRNP, and Mr. Jerry Hric, MD, were conforming to a narrative that

19  Plaintiffs Mr. and Mrs. Smith were not reasonable and capable decision makers, leading

20  Defendants to over-medicate Plaintiff newborn baby J.A.S., which lead Plaintiff

21  Newborn baby J.A.S. to develop the condition of pyloric stenosis which almost caused

22  the death of Plaintiff Newborn baby J.A.S., and required emergency corrective surgery,

1   causing the Plaintiffs Mr. and Mrs. Smith to feel grief, fear, anxiety, stress, chagrin,

2   disappointment, worry, shame, humiliation, and, embarrassment.

3   3558.  IIED (4):  The stress caused to the Plaintiffs by Defendants was and continues to

4   be severe, in that the distress has manifested itself physical symptoms that include, but

5   are not limited to: Plaintiff Mrs. Smith has suffered the following physical manifestations

6   of emotional distress to the Defendant's alleged intentional infliction of emotional

7   distress: nightmares, night sweats, excessive diarrhea, anxiety and panic attacks,

8   separation anxiety from Newborn baby J.A.S., insomnia, depression, PTSD symptoms

9   including staring into space while reliving the incident, muscle tightness and back

10  spasms, and body tremors; Plaintiff Mr. Smith has suffered the following physical

11  manifestations of emotional distress due to the Defendant's alleged intentional infliction

12  of emotional distress: intense headaches, depression, stomach upset and nausea,

13  excessive acid reflux, vomiting, symptoms of PTSD including staring into space reliving

14  the incident, fatigue, insomnia, excessive sweating, loss of appetite, excessive dry skin

15  sometimes forming open sores on his scalp and face.

16  3559.  Plaintiffs Mr. and Mrs. Smith require and attend regular sessions with a

17  specialized PTSD therapist to process and heal from the emotional distress foisted

18  upon them.

19  3560.  Upon information and belief, each of the listed Defendants in this claim,

20  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians

21  Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and Gynecology

22  Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO,

23  Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr.

1   Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms.

2   Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms.

3   Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, and

4   Mr. Jerry Hric, MD, were in a position of actual or apparent authority over the Plaintiffs

5   Mr. and Mrs. Smith and Plaintiff Newborn baby J.A.S., and each Defendant had the

6   power to affect the interest of the Smith Family to remain intact.

7   3561.  Upon information and belief, each of the listed Defendants in this claim, St.

8   Luke's Hospital, OBHG PA, Ms. Teresa Marlino, MD, were in a position of actual or

9   apparent authority over the Plaintiffs Mr. and Mrs. Smith and Newborn baby J.A.S., and

10   each Defendant had the power to affect the interest of the Smith Family to remain intact.

11   3562.  Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's

12   Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and

13   Gynecology Associates, Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick

14   Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn

15   Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A.

16   Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I.

17   Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A.

18   Nardis, CRNP, and Mr. Jerry Hric, MD's conduct violated Plaintiffs' rights under

19   Pennsylvania common law intentional infliction of emotional distress.

20   3563.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of

21   evidence that each of the listed Defendants conspired with at least one other Defendant

22   elsewhere listed in this complaint via an overt act with malice or an intent to injure the

23   Plaintiffs.

3564.  The conspiracy between the Defendant parties and their agents, employees, assigns, or other Defendants violates Pennsylvania common law against conspiracies; thereby, causing actual damages to Plaintiffs Mr. & Mrs. Smith.

3565.  Upon information and belief, Plaintiffs can demonstrate by a preponderance of evidence that the Defendants, St. Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates Group, St. Luke's Obstetrics and Gynecology Associates, and Mr. Jerry Hric, MD supervised Ms. Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, and Mr. Jerry Hric, MD, in connection with this allegation and are therefore liable under a legal theory of respondeat superior.

3566.  Accordingly, and in connection with the alleged intentional infliction of emotional distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Entities be required to adopt a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably separated from its natural parents, and the specific legal procedures to adhere to for such a separation to take place.

3567.  Accordingly, and in connection with the alleged intentional infliction of emotional distress of the Defendant parties, Plaintiffs Mr. and Mrs. Smith request all Defendant Persons be required to attend and pass a rigorous a third-party training program which demonstrates appropriate circumstances under which a child should be reasonably

1   separated from its natural parents, and the specific legal procedures to adhere to for

2   such a separation to take place.

3   3568.  Accordingly, if a third-party cannot be found to render the appropriately rigorous

4   training course, then the Defendant Entities should create their own legal training

5   program which demonstrates appropriate circumstances under which a child should be

6   reasonably separated from its natural parents, and the specific legal procedures to

7   adhere to for such a separation to take place, including; and, before the created

8   program is implemented, the program must be approved by an appropriate court or

9   federal agency for review; and, the program must be implemented within 180 days of

10  the valid judgment of this honorable Court.

11  3569.  Plaintiffs Mr. & Mrs. Smith suffered substantial harm as a result of Defendant's

12  conduct, including but not limited to, emotional and psychological distress, pain and

13  suffering, fear, humiliation, chagrin, and anguish; and, therefore respectfully requests

14  appropriate compensatory damages to account for PTSD therapies and other related

15  treatments as they have been and will continue to be necessary; Plaintiffs respectfully

16  request an amount of $84,800 in compensatory damages per Defendant.

17  3570.  Given the substantial wealth of the Defendants St. Luke's Hospital, Onsite

18  Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem Neonatal Associates

19  Group, St. Luke's Obstetrics and Gynecology Associates, Ms. Teresa Marlino, MD, Ms.

20  Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R. Jacobetz, Mr. Shadi N.

21  Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah

22  Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A.

23  Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler, DO, Ms. Patricia

1  Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, and Mr. Jerry Hric, MD, and therefore,

2  their ability to afford the appropriate training to avoid this egregious violation of the

3  Pennsylvania Common Law, and, since harm was actually caused to the current

4  Plaintiff Smith Family, and since harm is likely to continue to harm future postpartum

5  families, and because the acts of the Defendants and their agents, assigns, or

6  employees callously disregarded the Plaintiff's rights in a reckless and wanton manner,

7  the Plaintiffs respectfully request the imposition of punitive damages on Defendants St.

8  Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem

9  Neonatal Associates Group, St. Luke's Obstetrics and Gynecology Associates, Ms.

10  Teresa Marlino, MD, Ms. Cynthia Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne R.

11  Jacobetz, Mr. Shadi N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher

12  Gilbert, MD, Ms. Hannah Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown,

13  MD, Ms. Kimberly A. Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Chaminie Wheeler,

14  DO, Ms. Patricia Bates, CRNP, Ms. Kimberly A. Nardis, CRNP, and Mr. Jerry Hric, MD

15  to deter such Defendant from committing to such conduct in the future which violates

16  Commonwealth of Pennsylvania Common Law Plaintiffs respectfully request an amount

17  of $3,000,000 in punitive damages per Defendants Ms. Dianne R. Jacobetz, Mr. Shadi

18  N. Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah

19  Milthorpe, MD, Ms. Beth A. Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly A.

20  Costello, DO, Mr. Gilbert I. Santiago, MD, Ms. Patricia Bates, CRNP, and Ms. Kimberly

21  A. Nardis, CRNP; $15,000,000 per Defendants St. Luke's Physicians Group, Bethlehem

22  Neonatal Associates Group, St. Luke's Obstetrics and Gynecology Associates, Mr.

23  Patrick Philpot, DO, Ms. Chaminie Wheeler, DO, and Mr. Jerry Hric, MD; and

1   $30,000,000 per Defendants St. Luke's Hospital, Onsite Neonatal, OBHG PA, Ms.

2   Teresa Marlino, MD, and Ms. Cynthia Shultz, MD.

3   3571.  In the unlikely event that the jury does not find that Plaintiff Smith Family suffered

4   any actual injury despite the deprivation of their common law rights, the Plaintiffs

5   respectfully request a nominal judgment of $1.00.

# Requests for Damages

## Policy Change Requests

8   3572.  In addition to any requested damages aforementioned listed in any particular

9   claim, Plaintiffs respectfully request the following policy changes of the Defendants St.

10   Luke's Hospital, Onsite Neonatal, OBHG PA, St. Luke's Physicians Group, Bethlehem

11   Neonatal, St. Luke's Obstetrics & Gynecology Associates, Ms. Teresa Marlino, MD, Ms.

12   Cynthia M. Shultz, MD, Mr. Patrick Philpot, DO, Ms. Dianne Jacobetz, MD, Mr. Shadi N.

13   Malaeb, MD, Ms. Marilyn Ekonomidis, MD, Mr. Christopher Gilbert, MD, Ms. Hannah

14   Milthorpe, MD, Ms. Beth Maisel, MD, Ms. Denese Brown, MD, Ms. Kimberly Costello,

15   DO, Mr. Gilberto Santiago, MD, Ms. Chaminie Wheeler, MD, Mr. Steve Lanshe, Esq.,

16   Mr. Robert L. Wax, Esq., Ms. Darla Frack, Ms. Dawn Hoffman, "Hospital Leadership

17   Team", Mr. Jerry Hric, MD, "Security Guard 'Freddy'", "Security Guard 'Joe'", "Security

18   Guard 'Nate'", "Security Guard(s) 'Unknown'", "Security Supervisor 'Unknown'", "Head

19   of Hospital Security 'Unknown'", Anderson Labs, and Ms. Emily Miller, MD to apply to

20   each claim in which one of these Defendants are listed:

21   3573.  (1) In each postpartum hospital room and NICU pod, in poster form, in a

22   conspicuous location, Defendant St. Luke's Hospital and its Affiliates, Agents,

1    Employees, and Assigns should place full notice of policies and procedures regarding

2    consent for treatment and appeals processes for when parental consent conflicts with

3    the intent of the medical provider(s); such notice shall be provided in every postpartum

4    hospital room and NICU pod.

5    3574.  (2) Defendant St. Luke's Hospital and its Affiliates, Agents, Employees, and

6    Assigns should at all times maintain an independent hotline which can be used by staff

7    or patients to report abuse or misconduct on the part of St. Luke's Hospital and its

8    Affiliates, Agents, Employees, and Assigns to be internally investigated and results

9    communicated to the reporting party; such hotline should be maintained off the medical

10    provider premises from which the complaint is being asserted.

11    3575.  (3) Each individual Defendant and their superiors who had active knowledge of

12    the Smith Family situation should be mandated to immediately disassociate from one

13    another in all professional capacities; this disassociation extends to any future letters of

14    recommendation provided by any medical provider to any Defendant employee, agent

15    or assign.

16    3576.  (4) All Defendants with a license to practice medicine, to practice law, or to

17    operate a medical facility or any portion thereof should immediately have such licenses

18    revoked permanently and without ability to have such licenses reinstated in the future.

19    3577.  (5) All Defendant facilities shall have any licenses required for the facility to

20    operate temporarily suspended until St. Luke's staff has been appropriately trained on

21    the proper legal procedure for separating a parent or parents from their child.

3578.  (6) All Defendants that engaged in child abuse via the practice of unnecessary medical care on newborn baby J.A.S. should be barred from providing any further care, treatment or service to children because of their acts of child abuse.

3579.  (7) Defendants St. Luke's Hospital and its Affiliates, Agents, Employees, and Assigns, and Defendants Anderson Labs and Emily Miller, MD should be barred from using drug tests that do not differentiate between amphetamine and methamphetamine for any reason.

3580.  (8) Because Defendants St. Luke's Hospital and its Affiliates demonstrated egregious levels of mistrust, all such Defendants and affiliates should be barred from using any advertisement including the word "Trust" or implying in any way that Defendants can be trusted.

3581.  (9) Any security personnel assigned by Defendants to a situation in which a breastfeeding mother is present must be female by sex or identify with the female gender; in no such circumstances shall male security guards be assigned to monitor breastfeeding mothers.

3582.  (10) Defendants St. Luke's Hospital and its Affiliates must provide good cause in writing to any patient or guardian of a patient who will be placed under security monitoring explaining why and under what authority.

3583.  (11) Whenever Defendants St. Luke's Hospital and its Affiliates considers the termination of parental rights Defendant must first provide the option to transfer the patient to a separate hospital of the patient or guardian's choice for a second opinion without delay.

1    3584.  (12) All individual Defendants holding professional licenses or empowered by a

2    professional licensing agency should be required to be investigated by their respective

3    licensing authority for moral, ethical and legal violations as relates to the Smith family

4    case.

5    3585.  (13) All Defendants herein should be thoroughly trained and annually reeducated

6    on when it is appropriate and legal to disclose confidential medical information outside

7    the doctor-patient relationship.

8    3586.  (14) All Defendants herein should be thoroughly trained by an independent third-

9    party organization at the cost of the Defendants on how to treat all patients and their

10   family with appropriate dignity and respect in all situations, regardless of how sensitive

11   or emotionally charged.

12   3587.  (15) Defendants St. Luke's Hospital and its Affiliates should provide all forms and

13   disclaimers in writing to all patients in physical paper form, not electronically, prior to

14   requiring any patient signature or endorsement, and a physical copy of any form signed

15   should be immediately provided to the patient.

16   3588.  (16) Full medical records should be provided upon request in one conspicuous

17   location—not in portions, segments, or sections—but as one whole document for easy

18   review.

19   3589.  (17) Hospital discharge papers should provide names and titles of all medical

20   providers and hospital staff that were responsible for the care and maintenance of the

21   patients during the period of their medical treatment (including all administrators that

22   made decisions affecting any patient's situation).

3590.  In addition to any requested damages aforementioned listed in any particular claim, Plaintiffs respectfully request the following policy changes of the Defendants Northampton County, Bethlehem Township, and all of their subordinate officers:

3591.  (1) Each Defendant officer and their superiors who had active knowledge of the Smith Family situation should be immediately dismissed from their positions at the Bethlehem Police Department;

3592.  (2) That each dismissed employee should lose the value of any accrued benefits in association with the Commonwealth of Pennsylvania that would extend to the former employees after dismissal;

3593.  (3) An independent criminal investigation by the Commonwealth into not only the role the Bethlehem Police Department played in the Smith Case, but into the overall patterns and practices of the Bethlehem Police Department to ensure that all employees and staff are indeed trained well enough for the weight of the positions that they bear concerning matters of maintaining family integrity;

3594.  (4) Northampton County and/or Bethlehem Township should be forced to hire an independent evaluator(s) to investigate training for employees in the Bethlehem Police Department to determine if employees know what laws they are actually enforcing, and what they actually have jurisdiction over;

3595.  (5) Require police to investigate beyond the scope of an alleged drug test into whether or not there are actual signs or symptoms of methamphetamine abuse and withdrawal in the accused mother and child prior to enforcement of separation of a parent and child; and,

3596.  (6) Any other meritorious remedy that this Honorable Court sees fit.

3597.  In addition to any requested damages aforementioned listed in any particular claim, Plaintiffs respectfully request the following policy changes of the Defendant Monroe County and all of their subordinate Officer of Children and Youth Services employees:

3598.  (1) Each Defendant involved in requesting drug testing from Plaintiff Mrs. Smith be immediately dismissed from their positions at Monroe County Children and Youth Services;

3599.  (2) That each dismissed employee should lose the value of any accrued benefits in association with the Commonwealth of Pennsylvania that would extend to the former employees after dismissal;

3600.  (3) An independent criminal investigation by the Commonwealth into not only the role CYS played in the Smith Case, but into the overall patterns and practices of Monroe County CYS to ensure that all employees and staff are indeed trained well enough for the weight of the positions that they bear;

3601.  (4) Monroe County be forced to hire an independent evaluator(s) to investigate if training for employees in the Monroe County Office of Children and Youth Services to determine if employees know what laws they are actually enforcing, and what they actually have jurisdiction over;

3602.  (5) Require all Commonwealth CYS employees to read *Miranda* or *Miranda-like* rights to individuals being investigated by CYS at the initiation of an investigation:

3603.  (6) Prohibit threats of further uses of force against a family if a mother or father refuses to comply with a drug test (*i.e.,* CYS cannot call the police because of refusal to take a drug test):

1   3604.  (7) Provides a public defender to any Monroe County citizen whom Monroe

2   County CYS claims a need to physically see children associated with a particular

3   allegation;

4   3605.  (8) Any Pennsylvania citizen should have access to an immediate appeals

5   process for technical violations of PA statutory, constitutional, and common laws

6   concerning Children and Youth Services and while such an appeals process is being

7   undergone the claim at hand should be investigated by a magisterial court, during which

8   period all investigations into the individual(s) being conducted by CYS should be

9   suspended until a valid judgement from the magisterial court allowing the case to

10  proceed if technical legal violations were not actually found by the magistrate;

11  3606.  (9) Any other meritorious remedy that this Honorable Court sees fit.

12

13

14

15

16

17

18

19

20

21

1

2

3

4

5

# **<u>VERIFICATION</u>**

6

7   I, Michael O. Smith, J.D., have reviewed the attached complaint and hereby verify that the

8   information contained therein is true and correct to the best of my knowledge and/or information

9   and belief, subject to the penalties imposed by 18 Pa.C.S § 4904 relating to unsworn falsification

10  to authorities.

11

12

13

14

15                                                           *Michael O. Smith*

16                                                           Michael O. Smith, J.D., Plaintiff

17

1

2

3

4

5

# **<u>VERIFICATION</u>**

6

7  I, Grace Smith, Esq., have reviewed the attached complaint and hereby verify that the

8  information contained therein is true and correct to the best of my knowledge and/or information

9  and belief, subject to the penalties imposed by 18 Pa.C.S § 4904 relating to unsworn falsification

10  to authorities.

11

12

13

14

15  _____

16  Grace Smith, Esq., Plaintiff

17

18